IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> PLAINTIFF, <br><br> V. <br><br> CITY OF NEW YORK, <br><br> DEFENDANT. | CIV. ACTION NO. 07-CV-2067 (NGG)(RLM) |

**PLAINTIFF UNITED STATES' MEMORANDUM IN RESPONSE TO THE
UNIFORMED FIREFIGHTERS ASSOCIATION'S MOTION TO INTERVENE**

**I.    INTRODUCTION**

The United States respectfully submits this memorandum in opposition to the motion filed by the Uniformed Firefighters Association (the "UFA") seeking to intervene as a defendant in this case pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure.

The Court should deny the UFA's motion to intervene pursuant to Rule 24(a) because the "safety" interest asserted by the UFA is not a legally cognizable interest that would support intervention as a party defendant in the liability phase of this case.[1]  Moreover, the UFA does not explain how the safety of its members would be endangered by a determination that the practices challenged by the United States in this case are not job related and consistent with business necessity.[2]  In fact, firefighter safety will not be affected by such a determination because the

---

[1]  As explained, infra, the parties have agreed to request that the Court bifurcate all proceedings in this case, including discovery, into liability and relief phases, with relief proceedings to commence only after a liability finding.

[2]  If the Court finds that the challenged practices are job related and consistent with business necessity, they would be unlawful only if the Court also found that there are other

1

City already has determined that it will cease using the employment practices the UFA seeks to defend, regardless of the outcome of this case. In addition, the Court should deny the UFA's request to intervene pursuant to Rule 24(a) because the UFA has provided no basis for its assertion that the City will not adequately defend itself against a liability finding.

The Court should not permit the UFA to intervene in the liability phase of this case pursuant to Rule 24(b) because the UFA has no "claim or defense" in common with the United States or the City. See Fed. R. Civ. P. 24(b). In addition, intervention will unduly delay the "adjudication of the rights of the original parties." See id. If the Court were to grant the UFA's motion to intervene as a full party defendant, the UFA would be able to take discovery, present evidence at trial, and even force a trial on the merits notwithstanding any future negotiated settlement between the United States and the City. Accordingly, as explained in more detail below, the United States requests that the Court deny the UFA's motion to intervene pursuant to Rule 24.

However, the United States believes that the UFA should be joined as a non-liability party pursuant to Rule 19 of the Federal Rules of Civil Procedure because some forms of relief sought by the United States, such as retroactive seniority, may affect rights and obligations of the UFA's members under the union contract.[3]  Accordingly, the United States requests that the

---

practices that would serve the same purposes with less disparate impact. See 42 U.S.C. § 2000e-2(k)(1)(a).

[3] The UFA never asserts that its interest in enforcing its members' seniority rights supports intervention in the liability phase of this case, although the UFA does refer to seniority at one point in its memorandum, see Proposed Intervenor's Memorandum of Law in Support of Motion, ("UFA Mem.") at 8. In fact, the UFA's interest in enforcing seniority rights would be implicated only in the relief phase, and, as explained infra, does not entitle the UFA to intervene as a full party defendant in the liability phase of this case.

Court join the UFA as a non-liability party pursuant to Rule 19(a).

## II.     BACKGROUND

### A.     The United States Alleges that Specific Employment Practices Used by the City as Part of Two Particular Selection Processes Are Unlawful

Before addressing the UFA's assertion that it has an interest in the subject matter of this lawsuit, it is necessary to understand what that subject matter is – i.e., the specific claims made by the United States.  The United States alleges that the City's use of the written examination portion of Exam 7029 and Exam 2043[4] as a pass/fail screening device resulted in an unlawful disparate impact upon black and Hispanic applicants.  The United States also alleges that the City's processing of applicants who passed that written examination and a physical performance test ("PPT") in descending rank order, based on a combination of applicants' scores on the written examination and the PPT, had an unlawful disparate impact upon black and Hispanic applicants.[5]  In other words, the subject of this lawsuit is the City's use of a particular written

---

[4] An open competitive examination process for the entry-level firefighter position in the FDNY consists of several steps, including a written examination and a physical performance test.  The City refers to the whole process (not just the written examination portion of an open competitive process) as an "Examination."  The last two open competitive examination processes were Examination No. 7029 ("Exam 7029") and Examination No. 2043 ("Exam 2043").  According to the City, the written examinations used for Exam 7029 and Exam 2043 were substantially identical.  See Attachment A (Letter from G. Pestana to E. Yorke, dated January 9, 2004).

[5] It must be noted that the UFA's various characterizations of the United States' claims are inaccurate.  For example, in its memorandum, the UFA asserts that the "Complaint challenges the testing and rank order hiring by the City for the FDNY," and "the concept of rank order hiring."  UFA Mem. at 5.  To the extent that such characterizations are intended to imply that the United States challenges the "concept" of pass/fail use of written examinations or rank order hiring in general, such an implication is incorrect.  In addition, the UFA presumes that the United States "seeks a simple 'pass/fail' written examination system coupled with a physical examination that serves to differentiate between candidates."  Id.  Similarly, the UFA's president states that the UFA " believe[s] that a . . . quota system for the increased selection of minorities"

examination and the City's rank order processing of applicants based on a combination of scores on the particular written examination and PPT used for Exam 7029 and 2043.

      B.      <u>This Case Should Be Bifurcated into Liability and Relief Proceedings</u>

As counsel for the United States indicated at the initial conference with the Court on June 5, 2007, in order to expedite this case and avoid unnecessary expenditure of the parties' and the Court's time and resources, the United States and the City will request that proceedings in this case be bifurcated into liability and relief phases.[6]  <u>See</u> <u>Teamsters v. United States</u>, 431 U.S. 324, 360-61 (1977).  Rule 42(b) of the Federal Rules of Civil Procedure provides that the Court "may order a separate trial" of any claims or issues "when separate trials will be conducive to expedition and economy."  Thus, "[o]n its face, Rule 42(b) encourages the severing of issues for trial, guaranteeing trial judges optimum flexibility in structuring litigation with an eye toward providing a fair and efficient remedy."  <u>Simon v. Philip Morris Inc.</u>, 200 F.R.D. 21, 27 (E.D.N.Y. 2001).  Indeed, the advisory committee notes to Rule 42 state that "it is important that [bifurcation] be encouraged where experience has demonstrated its worth."  Advisory

---

would be improper.  To be clear, the United States challenges the City's use of a <u>particular</u> written examination (with the cutoff scores the City used) and the City's rank-order hiring of applicants based on scores on the particular written examination and PPT.  The United States has not alleged that no written examination can be used as a pass/fail screening device in the selection of firefighters for the City's Fire Department ("FDNY") or that the "concept" of rank order hiring is unlawful.  The United States also has not sought that any particular examination or ranking process be used in the future and does not intend to request a "quota system," as that phrase is commonly interpreted.

     [6] In addition to the UFA, the Vulcan Society, Inc., and certain individuals (collectively "the Vulcans") have moved to intervene in this case.  Prior to the parties scheduling conference on July 18, 2007, counsel for all proposed intervenors were provided, among other things, a draft request that the Court order bifurcation of liability and relief proceedings.  Counsel for the UFA and Vulcans indicated that they would have no objection.

Committee Note to Fed. R. Civ. P. 42(b) (1966).

Experience has demonstrated the value of bifurcation in pattern or practice employment discrimination cases such as this. See Manual for Complex Litigation (4th) § 32.45 ("Employment discrimination class actions have commonly been tried in separate stages under Rule 42(b).") As the Second Circuit has stated, "litigating the pattern-or-practice liability phase [first] . . . would both reduce the range of issues in dispute and promote judicial economy." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 168 (2d Cir. 2001) (Title VII pattern or practice disparate treatment lawsuit). Obviously, if liability and relief proceedings were not bifurcated, the substantial time and expense necessary for discovery and trial of relief issues would be wasted if the City were to prevail on liability.[7] Moreover, if the United States prevails with respect to liability, the Court's findings in the liability phase may affect the number of applicants eligible for relief, so that relief phase proceedings may be streamlined. See id. ("For example, if the [plaintiffs] should succeed[,] . . . evidence relevant to these individual adjudications would be substantially narrowed"). Indeed, when the United States obtains a liability judgment in a case of this nature, the parties frequently settle the relief phase issues. Accordingly, the United States and the City believe that this case should be bifurcated pursuant to Rule 42(b), with the relief phase to commence only if there is a finding in favor of the United

---

[7] Clearly, the time and expense will be substantial. Over 7,000 black and Hispanic applicants took the written examination at issue in this case. If the United States prevails with respect to liability, each of the approximately 1,500 of those applicants who failed the written examination will be potentially entitled to individual relief. Moreover, because the United States also challenges the City's method of processing applicants in rank order based on their scores on the written examination at issue and the PPT, thousands of additional black and Hispanic applicants who passed the written examination but either were never reached for processing or waited an inordinate length of time before being reached also would be potentially entitled to relief following a liability judgment.

States on the issue of liability.

### III.   ARGUMENT

    A.    In Ruling on a Motion to Intervene in a Bifurcated Case, the Court Should Apply a Two-Part Analysis, Separately Considering the Liability and Relief Phases[8]

In cases in which liability and relief proceedings have been bifurcated, a court should allow intervention only in the portion of the litigation in which the intervenor has a legally cognizable interest, such as an interest in enforcing seniority rights, see Brennan v. New York City Bd. of Educ., 260 F.3d 123, 131 (2d Cir. 2001) (citing Thomas v. Bakery, Confectionery and Tobacco Workers Int'l Union, Local No. 433, 982 F.2d 1215, 1220 (8th Cir. 1992), for the proposition that seniority rights are a legally cognizable interest).  For example, if the seniority rights of proposed intervenors are not at issue in the liability phase, but may be implicated in the relief phase, it is appropriate to allow intervention only in the relief phase.  See Thomas, 982 F.2d at 1220 (interests of employer and proposed intervenor employees diverged only in relief phase because the employer might seek to lessen damages by providing relief that would negatively affect seniority rights of the employees).  Thus, in a bifurcated case, determining whether an entity has a right to intervene involves a two-part analysis, asking whether the proposed intervenor has a right to:  (1) intervene in the liability stage; or (2) participate in the remedy stage.  See Brody v. Spang, 957 F.2d 1108, 1116 and 1124 (3d Cir. 1992) (denying intervention in merits stage but remanding for determination whether intervenors had legally cognizable interest in relief phase); see also Harris v. Pernsley, 820 F.2d 592, 599 (3d Cir. 1987)

---

[8] The following argument assumes that the Court will bifurcate liability and relief proceedings.  However, even if the Court were not to bifurcate proceedings, for the reasons set forth infra, the Court should not allow the UFA to intervene as a defendant for purposes of liability issues.

("[G]iven the nature of an applicant's interest, he or she may have a sufficient interest to intervene as to certain issues . . . without having an interest in the litigation as a whole").

This approach – i.e., granting intervention only in the portion of a case in which the intervenor has a legally cognizable interest – has been approved by the Second Circuit and utilized by the district courts in this Circuit.  See United States v. Yonkers Bd. of Educ., 801 F.2d 593, 596 n.6 (2d Cir. 1986) (discussing with approval district court's decision to delay intervention until a proposed relief plan was submitted to the court and it became apparent that the proposed remedy could implicate the intervenor's contractual rights under a collective bargaining agreement); Alston v. Coughlin, 109 F.R.D. 609, 613-14 (S.D. N.Y. 1986) (denying a union intervention in the liability phase because the union's seniority and other collective bargaining rights only related to the liability portion of the lawsuit in an "indirect and hypothetical manner," but stating that the court would consider a renewed application for intervention in the remedial phase); Pogliani v. U.S. Army Corps of Eng'rs, 166 F. Supp. 2d 673, 701-02 (N.D. N.Y. 2001) (denying motion for intervention as defendant in the liability phase, but noting the court would entertain a renewed motion if a legally protectable interest became implicated due to a particular liability finding).

    B.    <u>The UFA Has Not Established a Right to Intervene with Respect to Liability</u>

Rule 24(a) states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  In the Second Circuit, in order to intervene under Rule 24(a)(2) as a

matter of right, a proposed intervenor must make a timely application and show that: (1) it has a sufficient interest in the action; (2) its interest may be impaired by the disposition of the action; and (3) its interest is not protected adequately by the parties to the action. Brennan, 260 F.3d at 129. Failure to satisfy any one of these requirements is a sufficient ground to deny the application. United States v. City of New York, 198 F.3d 360, 364 (2d Cir. 1999) (quoting Farmland Dairies v. Commissioner, 847 F.3d 1038, 1043 (2d Cir. 1988)). As the UFA acknowledges in its memorandum, in order to support intervention pursuant to Rule 24(a), an intervenor's interest "must be direct, substantial and legally protectable. An interest that is remote from the subject matter of the proceeding or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." UFA Mem. at 7 (quoting Bridgeport Guardians v. Delmont, 227 F.R.D. 32 (D. Conn. 2005)); see also Brennan, 260 F.3d at 129 (quoting Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)); New York Reg'l Interconnect, Inc. v. Pataki, No. 07-CV-122, 2007 WL 1490823, at *2-3 (N.D. N.Y. 2007) (same). Conclusory allegations are insufficient to establish a right to intervene under Rule 24(a). United Parcel Serv. of America, Inc. v. The Net, Inc., 225 F.R.D. 416, 421 (E.D. N.Y. 2005).

The UFA has not identified any substantial and direct legal interest in the liability phase of this case. In this regard, it should be recognized that the UFA cannot be held liable for the City's use of the practices challenged by the United States. The United States has no authority to sue the UFA under Section 707 of Title VII because the UFA is not a state or local governmental entity. See 42 U.S.C. § 2000e-6. Nor can the United States sue the UFA under Section 706 of Title VII because no charge of discrimination against the union has been referred to the United

States. See 42 U.S.C. § 2000e-5(f)(1). Indeed, as the UFA itself states, "[t]he UFA was not, in any way, involved in the formulation" of the written examination used for Exams 7029 and 2043. Affidavit of Stephen J. Cassidy ("Cassidy Aff."), p. 9 ¶ 15. "Nor was the UFA involved in the creation of the rank order hiring lists resulting from" Exam 7029 and Exam 2043. Id. Thus, there is no way in which a liability finding against the City could subject the UFA to liability. Conversely, the UFA has not identified any potential claim that the UFA could bring against the City that would be impaired by a finding that the City has violated Title VII. The UFA has simply not identified a legally cognizable interest giving it a right to become a defendant in this case. See Harris, 820 F.2d at 601 (the "interest must be [a] legal interest as distinguished from interests of a general and indefinite character") (citations omitted).

As indicated previously, the only interest asserted by the UFA is its interest in the safety of its members. However, as a practical matter, firefighter safety will not be affected by a liability judgment in this case. In this regard, the UFA fails to acknowledge that the City already has administered a different written examination and a different ranking procedure than those it used for Exam 7029 and Exam 2043, which are the subject of this lawsuit. In fact, as the Court is aware, the City has begun a new open competitive examination process ("Exam 6019"). See Attachment B (Notice of Examination, Firefighter Exam. No. 6019, Second Amended Notice 11/1/06). The written examination administered as part of Exam 6019 is not the same as the written examination at issue in this case, and the City is not using the same method of ranking applicants that it used for Exam 7029 and Exam 2043. Compare Attachment B, p.2 to Attachment C (Notice of Examination, Firefighter Exam. No. 7029, Third Amended Notice, October 17, 2001), pp. 2 and 3 (describing the written examination and ranking based on

9

combined scores) and Attachment D (Notice of Examination, Firefighter Exam. No. 2043, Second Amended Notice, September 25, 2002), p.3. Thus, the City has decided that, in the future,[9] it will not use the practices challenged by the United States regardless of any liability judgment in this case. The UFA's assertion that, in order to protect the safety of incumbent FDNY firefighters, the City should continue to use the challenged practices cannot support the UFA's intervention in the liability phase of this case.

Finally, any interest the UFA might have in defending the challenged employment practices during the liability phase will be adequately protected by the City. The test of whether a proposed intervenor's interests are protected adequately by the parties to the action is whether the interests of a party and proposed intervenor are so similar that adequacy of representation is assured. Brennan, 260 F.3d at 132-33. Certainly, the City has at least as strong an interest as the UFA in defending this case on the merits. Indeed, if firefighter safety required that the City use the challenged practices, City would vigorously contend that safety concerns justify the practices. Since the City has "as direct a legal and economic interest" as the UFA in the liability phase of this case, there is no need for the UFA to intervene. United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). In support of its assertion that the City will not adequately represent its interest in firefighter safety, the UFA argues only that the "City is interested in public safety and managerial efficiency and not primarily how the safety of firefighters may be affected by the diminishment of hiring standards." UFA Mem. at 8.

---

[9] The eligibility list that resulted from Exam 7029 expired in 2004. See Answer ¶ 10. Although the City currently continues to hire from the eligibility list that resulted from Exam 2043, the list will expire in May 2008. Id. ¶¶ 10 and 11. As counsel for the United States informed the Court on June 5, 2007, the United States does not intend to seek preliminary injunctive relief to prevent the City from continuing to hire from the Exam 2043 eligibility list.

According to the UFA, in order to "avoid[] the embarrassment of being found to have discriminated," the City may not vigorously defend the challenged employment practices and, instead, may "enter into a settlement adverse to the safety concerns of the UFA." Cassidy Aff., pp 9-10 ¶ 16. The UFA's assertions, accusing the City of placing more importance on "managerial efficiency" and avoiding "embarrassment" than on the safety of its firefighters, are unsupported and illogical. Logically, a threat to firefighter safety also would threaten public safety and managerial efficiency. More importantly, the UFA's assertion boils down to an argument that the <u>relief</u> that may be obtained by the United States in a settlement (or in a litigated relief proceeding) may be adverse to the interests of the UFA's members.[10] Such an assertion cannot support intervention as a defendant in the <u>liability</u> phase of this case. To the contrary, it highlights the fact that the UFA's interest is in the relief phase – whether it is a litigated relief phase or a consent decree that provides relief agreed upon by the parties.

    C.    The UFA Has Not Established that it Should
            Be Permitted to Intervene pursuant to Rule 24(b)

Rule 24(b) provides, in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). If a proposed intervenor likely will duplicate representation by an original

---

[10] It should be noted that any suggestion that the United States has no concern for the safety of FDNY firefighters is unsupported and incorrect. Underlying the UFA's argument is the contention that the United States seeks to "diminish" hiring standards and require the City to hire black and Hispanic applicants who cannot safely perform the firefighter job. In fact, the United States has not sought and will not seek any form of relief requiring the City to hire individuals who are not qualified to perform the job safely.

11

party, the proposed intervention may be considered to unduly delay or prejudice the rights of the original parties.  See American Lung Ass'n v. Reily, 141 F.R.D. 19, 23 (E.D. N.Y. 1992).

In support of its request that it be permitted to intervene pursuant to Rule 24(b), the UFA asserts that "its defenses . . . are 'common' to those of the City" because the UFA proposes to argue that "the written portion of the FDNY entrance exam[ is] . . . job-related."  UFA Mem. at 10.[11]  As discussed previously, however, the UFA has not identified any legally cognizable claim against the UFA that it would defend by arguing that the written examination at issue in this case is job-related.  Instead, UFA simply argues that it has defenses in common with the City's because the UFA intends to argue that the City is not liable under Title VII.  The UFA's desire to support the City's defenses in the liability phase of this case [12] is not a claim or defense of the UFA that would support intervention as a party defendant pursuant to Rule 24(b).

The UFA also asserts, without explanation, that "no party will be delayed from its day in Court nor prejudiced by the intervention" of the UFA.  UFA Mem. at 10.  To the contrary, however, there is every reason to believe that intervention by the UFA in the liability phase

---

[11] The UFA also proposes to argue that the written examination at issue should not "be made purely 'pass/fail.'"  Id.  As explained previously, however, the City already has determined that it will not use the written examination portion of Exams 7029 and 2043 in the future.

[12] According to the UFA's memorandum, the UFA's role in the liability phase of this litigation would be:  (1) to "voice our concerns and submit proofs, along with the City, supportive of merit selection and rank order hiring," UFA Mem. at 16; and (2) to offer "evidence attesting to the importance of written examinations in evaluating potential firefighters," id. at 19.  Similarly, an affidavit submitted by its counsel states that "UFA would produce witnesses from the firefighting ranks to testify concerning the skills necessary for the job, including skills that are tested by the written examination."  Affidavit of Michael Block, p. 9 ¶ 12.  It is inconceivable that the City, in mounting a defense to liability by attempting to show that the challenged practices are job-related and consistent with business necessity, will not submit the same type of evidence described in UFA's papers.

would result in substantial delay. If the UFA were allowed to intervene as a full party defendant in the liability phase of this case, the UFA would have the right to serve written discovery, to take depositions, to retain its own expert witnesses and to present evidence at trial. In addition, if such unconditional intervention were permitted, the UFA could force a trial on the merits even if the United States and the City negotiated a settlement. Absent the UFA's agreement to the terms of the settlement, the UFA could insist on a full trial to defend the job-relatedness of the examinations at issue (as opposed to a hearing to allow the Court to determine whether the terms of the settlement are reasonable and legal). See Kirkland v. New York State Dept. Of Corr. Servs., 711 F.2d 1117, 1125-28 (2d Cir. 1983) (not permitting unconditional intervention such that intervenors could force trial to defend validity of examination if they were dissatisfied with settlement agreement.) Given that the UFA has proposed no conditions or limits on the intervention it requests and, instead, seeks the rights of a full party defendant in the liability stage of this case, it is a virtual certainty that its intervention as a defendant would delay proceedings.

        D.        The UFA Should Be Joined as a Non-Liability Party pursuant to Rule 19(a)

Although the UFA mentions seniority rights only in passing, it appears that the UFA has an interest in the seniority rights of its members under the collective bargaining agreement between the UFA and the City. Such an interest is sufficient to justify the UFA's limited participation in this case. See Brennan, 260 F.3d at 131 (proposed intervenors' seniority rights constitute an interest relating to the settlement agreement that is not too remote or speculative). Seniority rights of incumbent firefighters may be affected by the relief sought by the United States in this case, which will include hiring relief, with retroactive seniority, for individual

victims of the discrimination alleged by the United States.  In addition, the United States acknowledges that the City's interests in the relief phase of this case may not coincide with the UFA's interest in protecting the seniority rights of incumbent firefighters.  See id. at 133.

Accordingly, the United States does not object to the UFA's limited participation in relief proceedings in this case (including any proceedings relating to approval and entry of a consent decree by the Court) pursuant to Rule 19 of the Federal Rules of Civil Procedure.  Moreover, the United States believes that the UFA's presence in the case for the purpose of objecting to the reasonableness or legality of any potential settlement agreed to by the United States and the City is appropriate even prior to the beginning of the relief phase.  However, because the UFA has not established that it has a right to intervene pursuant to Rule 24(a), or that it should be permitted to intervene as a party defendant pursuant to Rule 24(b), the most appropriate course would be to join the UFA as a non-liability party pursuant to Rule 19(a).

Rule 19(a) provides, in pertinent part:

> [A] person . . . shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring . . . inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).  Here, as indicated above, the UFA apparently has a contractual interest relating to the seniority relief that will be sought by the United States.  An award of retroactive seniority in this case may impair the UFA's ability to protect that interest.  Such an award also may subject the City to inconsistent obligations under the collective bargaining agreement and

any relief order or consent decree entered in this case.[13]  However, the Court should make clear that the UFA's participation as a Rule 19(a) party will not include taking liability phase discovery or participating as a party in the liability phase trial, and that the consent of the UFA to the terms of any potential settlement between the United States and the City is not required.  In the alternative, the Court should permit the UFA to intervene only in the relief phase of this case for similarly limited purposes.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny the UFA's motion to intervene pursuant to Rule 24(a) and (b).  The United States respectfully requests that, to avoid undue delay and prejudice to the original parties, the Court instead join the UFA as a non-liability party pursuant to Rule 19(a) and make clear that:  (1) the UFA's participation will not include taking liability phase discovery or participating as a party in the liability phase trial in this case; and (2) the consent of the UFA to the terms of any potential settlement between the United States and the City is not required.  In the alternative, the Court should permit the UFA to intervene pursuant to Rule 24(b) only in the relief phase of this case for the limited purpose of objecting to elements of relief requested by the United States.

---

[13]  In cases such as this, the United States therefore commonly names the union that is a party to the collective bargaining agreement with the defendant employer as a Rule 19 party. For an example in this district, see Attachment E ¶ 9 (Complaint in United States v. Nassau County, et al., naming union as a defendant pursuant to Rule 19).  In this case, the United States had intended to seek discovery regarding the union representing incumbent firefighters, including a copy of the applicable collective bargaining agreement, prior to requesting joinder pursuant to Rule 19.  However, given the UFA's allegation that it is the union representing incumbent FDNY firefighters and a party to the relevant collective bargaining agreement, joinder appears to be  appropriate at this time.

Date: July 20, 2007

Respectfully submitted,

Wan J. Kim
Assistant Attorney General

/s/Sharon A. Seeley
Clare Geller
David Reese
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Room 4908
Washington, D.C.  20530
Telephone:  (202) 514-4761
Facsimile:   (202) 514-1005

Roslynn R. Mauskopf
United States Attorney

/s/Elliot M. Schachner
Kenneth Stahl
Assistant United States Attorneys
Eastern District of New York
147 Pierrepont Street
Brooklyn, New York  11201
Telephone:  (718) 254-7000
Facsimile:   (718) 254-6479