UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,

                              Plaintiff,

          -against-

                                        **Docket No. 1:07-cv-02067**

CITY OF NEW YORK,

                              Defendant,

UNIFORMED FIREFIGHTERS ASSOCIATION,

                              Intervenor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**REPLY MEMORANDUM IN SUPPORT OF
MOTION BY THE UNIFORMED FIREFIGHTERS
<u>ASSOCIATION TO INTERVENE</u>**


OF COUNSEL:

MICHAEL N. BLOCK, ESQ.


**SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.**
Attorneys for Proposed Intervenor - **UNIFORMED
FIREFIGHTERS ASSOCIATION**
Office & P.O. Address
120 Broadway - 18th Floor
New York, New York  10271
(212) 732-9000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

                         Plaintiff,

          -against-

                                        **Docket No. 1:07-cv-02067**
CITY OF NEW YORK,

                         Defendant,

UNIFORMED FIREFIGHTERS ASSOCIATION,

                         Intervenor.
------------------------------------X

### REPLY MEMORANDUM IN SUPPORT OF MOTION BY THE UNIFORMED FIREFIGHTERS ASSOCIATION TO INTERVENE

The Uniformed Firefighters Association (hereinafter "UFA") respectfully submits this Memorandum in support of its motion to intervene as a defendant in this action and in reply to the opposition papers filed by the plaintiff, UNITED STATES OF AMERICA (hereinafter "USA").

The plaintiff argues that the UFA's motion to intervene, brought under F.R.C.P. Rule 24(a)(2) and 24(b)(2) should be denied in all respects regarding the liability issues of this case.

Alternatively, the USA recognizes the UFA's right to participate in the remedy phase of this case and proposes either that the UFA be joined as a "non-liability" party under F.R.C.P.

Rule 19(a) or that the UFA's intervention be limited to the remedy phase of the case.   In either instance, plaintiff USA argues that the UFA not be permitted to participate in any discovery during the liability phase of the case[1] and that the UFA's consent not be required for approval of any proposed settlement.   Instead, plaintiff urges that the UFA's role be limited to commenting upon, or objecting to, any "elements of relief requested by the United States."

We urge, however, that the UFA does, indeed, have the right to intervene or, at the least, should be granted permissive intervention pursuant to Rule 24(b)(2).

A.   THE UFA HAS A LEGALLY COGNIZABLE INTEREST IN THIS CASE - THE PROTECTION OF THE SAFETY OF ITS MEMBERS

Opposing the UFA's application to intervene as of right, plaintiff asserts that the UFA has not identified any substantial direct legal interests in the outcome of the liability phase of this case (see Opposition Memorandum, p. 8).

Contrary to that assertion, the papers submitted in support of the UFA's motion identified its valid concern for the safety of its members.   The UFA argued that a substantial weakening of the written portion of Fire Department entrance exams, pursuant to the allegation that the written portion of Exam Nos. 7029 and

---

[1] The USA's position is based upon the assumption that the Court would bifurcate the liability and remedy phases of this case.   The UFA does not oppose any such bifurcation.

2043 were not job-related, might allow lesser-qualified candidates to be hired as firefighters. As stated in the Affidavit of UFA President Stephen J. Cassidy submitted in support of the intervention motion, firefighters today must have sufficient ability to read and comprehend sophisticated training materials and to fight hazards unheard of years ago (see paragraphs 9-11 of the Cassidy Affidavit submitted in support of the motion).

In response to that argument, the USA urges that "firefighter's safety will not be affected by a liability judgment in this case" (Opposition Memorandum, p. 9). Annexed hereto as **Exhibit "A"** are the Examination Notices for the two tests directly at issue, Exam Nos. 7029 and 2043, as well as the Examination Notice for the current F.D.N.Y. exam, designated as Exam No. 6019. The USA asserts that a comparison of these Notices of Examination illustrates that "the City has decided that, in the future, it will not use the practices challenged by the United States regardless of any liability judgment in this case" (Opposition Memorandum, p. 10).

We submit, however, that the Notice of Examination for Exam No. 6019 actually heightens the concerns of the UFA that a dilution of the standards imposed by the written portion of Exam Nos. 2043 and 7029 in the liability phase of this case would,

potentially, be applied to any future Fire Department examinations, including Exam No. 6019.

As noted in the Notices of Examination for Exam Nos. 7029 and 2043, the scores of candidates on both the written and physical portion of those tests would be counted and weighted, resulting in a "combined weighted standardized score." It is that score that ultimately determines the ranking of a candidate on the eligible lists derived from those examinations (together with other credits, which are not relevant herein).

On the other hand, the Notice for Examination No. 6019 makes clear that the physical portion of the examination is to be scored purely on a "pass/fail" basis and that it is the written portion of that examination alone (together with other credits not relevant herein) that "would be used to determine" the place of a candidate on an eligible list.

Thus, contrary to the assertions in the plaintiff's Opposition Memorandum, the importance of the determination of whether the written portion of Exam Nos. 2043 and 7029 were job-related or illegally discriminated against minority candidates has been increased by the scoring method employed for the latest Fire Department examination.

Thus, we submit that the UFA's interest in safety as affected by the qualifications of candidates selected for the

position of firefighter is a real and substantial interest that serves as a basis for intervention under Rule 24(a)(2).

B.   THE UFA'S SAFETY CONCERNS MAY NOT BE
     ADEQUATELY PROTECTED BY THE CITY

Further contesting the UFA's intervention motion, plaintiff USA argues that the concerns about safety expressed by the UFA are shared by the CITY OF NEW YORK (hereinafter "CITY"). Thus, the USA asserts that those concerns would be adequately defended during the liability phase of the case without the need for intervention by the UFA.

However, as noted during the recent conference in Court on July 24, 2007, the CITY often does not share the same safety concerns as the UFA.

As pointed out by the Court, the UFA and the CITY have been at odds for years over the necessity of better and stronger radios for firefighters.

Similarly, in the late 1990's, the CITY took away safety ropes from firefighters despite pleas by the UFA that the CITY was putting firefighters' safety at risk. (Annexed hereto as **Exhibit "B"** is a letter dated July 13, 1998 from the UFA's Sergeant-at-Arms Charles J. Bohan to the New York City Fire Commissioner expressing concern over removal of the ropes.) Those concerns were unfortunately confirmed on January 23, 2005 when six New York City firefighters had to jump approximately

six stories from a burning building in the Bronx because they lacked safety ropes to lower themselves safely to the ground. Two of those firefighters were killed and the other four received grievous injuries.  (Annexed hereto as **Exhibit "C"** is a copy of a *New York Times* article dated January 30, 2005 referring to that occurrence and the rope issue.)

Another example of the divergent views of the CITY and the UFA regarding safety issues is that a firefighter had to sue the CITY for burn injuries he suffered due to the CITY's failure to provide "bunker gear" protection to firefighters.  Studies performed prior to this firefighter's injuries showed the need for bunker gear and yet the CITY ignored requests to obtain the gear until many years later.  [See Lyall v. City of New York, 288 A.D.2d 566, 645 N.Y.S.2d 34 (2nd Dep't.), lv. to app. den'd., 88 N.Y.2d 816, 651 N.Y.S.2d 406 (1996).]

Thus, the UFA is justifiably skeptical that the CITY will adequately represent its safety interests in the liability phase of this case as it concerns the level of difficulty and weight to be given to the written portion of an F.D.N.Y. entrance exam.

Unless the UFA can present its views through competent evidence during the liability portion of this case to show the job-related nature of the challenge examinations, its safety concerns may not be adequately protected.

Finally, we note that the UFA's burden to show that its interests may not be adequately represented by the CITY "should be treated as minimal" [Dow Jones & Co., Inc. v. U.S. Department of Justice, 161 F.R.D. 247, 254 (SDNY 1995)].

C.   THERE WILL BE NEITHER DELAY NOR PREJUDICE IF THE UFA INTERVENES

The plaintiff USA argues that if the UFA intervenes on liability, it is likely there will be a substantial delay in these proceedings. It asserts that the UFA could then conduct extensive discovery and present evidence at trial, which would delay the resolution of this matter.

The simple answer to these concerns is that the UFA has agreed to be bound by the discovery schedule recently ordered by Magistrate Mann and will not seek extension thereof solely for UFA-related discovery requests.

With regard to the plaintiff's concern that the UFA, if a party during the liability phase, could prevent a settlement between the USA and the CITY by insisting upon a trial on the job-related nature of the written tests at issue, we submit that the UFA should have that right, if necessary, to vindicate its safety concerns (as apart from any concerns over seniority rights). If, as we contend, the UFA has a valid cognizable legal right to protect the safety of its members, it should be able to vindicate that right at trial.

8

D.  IF INTERVENTION IS DENIED ON LIABILITY,
    THE USA CONCEDES THAT THE UFA SHOULD BE
    A PARTY TO THE REMEDY PHASE OF THIS
    CASE

Although maintaining that the UFA has no right to intervene under either Rule 24(a) or 24(b), USA does concede that the UFA should be heard on the relief phase of this case because, at a minimum, any resolution of this matter might involve impairment of seniority rights of UFA members.  It suggests, therefore, that the UFA be permitted to join the proceeding as a Rule 19(a) "non-liability" party.  Indeed, the USA concedes that it is appropriate for the UFA to be able to object to the legality or reasonableness of any potential settlement between the USA and the CITY even prior to the beginning of the relief phase in this case.

Should this Court determine that the UFA is not entitled to intervene during the liability phase of this action, we agree and urge that the UFA be permitted to intervene during the remedy phase or to join as a "non-liability" party pursuant to Rule 19(a).  We also ask that the UFA be permitted to attend (if not participate in) liability discovery proceedings and receive copies of discovery materials so the UFA can intelligently comment upon the reasonableness or legality of any potential settlement, as well as fully participate in the remedy phase of this case.

## CONCLUSION

For the foregoing reasons, we submit that the UFA's motion to intervene, pursuant to Rule 24(a) and 24(b), be granted.   In the alternative, we request that the UFA be permitted to fully join the proceedings during the remedy phase of this action and to observe discovery proceedings and receive copies of discovery materials during the liability phase of this matter, as well as to comment on any proposed settlement on the liability phase before it is approved by the Court.

DATED:  New York, New York
        July 29, 2007

SULLIVAN PAPAIN BLOCK
McGRATH & CANNAVO P.C.

By: _____
    MICHAEL N. BLOCK (0957)
    Attorneys for Proposed
     Intervenor - UNIFORMED
     FIREFIGHTERS ASSOCIATION
    Office & P.O. Address
    120 Broadway - 18th Floor
    New York, New York  10271
    (212) 732-9000

(F-068518/017131/MNB)

10

# EXHIBIT "A"



THE CITY OF NEW YORK
DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES
APPLICATIONS SECTION
18 WASHINGTON STREET
NEW YORK, NY 10004

| REQUIRED FORMS |
| --- |
| APPLICATION FORM |

RUDOLPH W. GIULIANI
Mayor

WILLIAM J. DIAMOND
Commissioner

# NOTICE
# OF
# EXAMINATION

---

**FIREFIGHTER**
**Exam. No.  7029**
**Third Amended Notice (October 17, 2001)**

---

**WHEN TO APPLY:**  From: September 2, 1998      **APPLICATION FEE: $35.00**
                              To:    October 16, 1998       *Payable only by money order to D.C.A.S. (DOP)*

**THE TEST DATE:** Multiple-choice test expected to be held on **Saturday, February 27, 1999.**

---

The Notice of Examination is amended to revise the information regarding the qualifications for college credits
and Certified First Responder Certification with Defibrillation under the How To Qualify section.

**HAT THE JOB INVOLVES:** Under supervision, Firefighters assist in the control and extinguishment of fires, in providing
pre-hospital emergency medical care, and in the enforcement of laws, ordinances, rules and regulations regarding the
prevention, control and extinguishment of fires, as well as perform Fire Safety Education activities; and perform related
work.

Some of the physical activities performed by Firefighters and environmental conditions experienced are: wearing protective
clothing, such as bunker suit, helmet, boots and breathing apparatus; crawling, crouching and standing, often for prolonged
periods, while extinguishing fires; driving fire apparatus; climbing stairs, ladders and fire escapes; raising portable ladders;
using forcible entry tools, such as axes, sledge hammers, power saws and hydraulic tools; searching for victims in smoke-
filled hostile environments; carrying or dragging victims from dangerous locations; connecting, stretching and operating
hose lines; locating hidden fire by feel and smell; providing medical assistance to injured or ill citizens; and providing
control and mitigation of hazardous materials incidents while wearing chemical protective clothing.

(This is a brief description of what you might do in this position and does not include all the duties of this position.)

**IE SALARY:** The current minimum salary is $30,872 per annum. This rate is subject to change. In addition, employees
will receive holiday pay and night differential.

**OW TO APPLY:** If you believe you meet the requirements in the "How to Qualify" section, refer to the "Required Forms"
section below for the form(s) that you must fill out. Return all completed form(s) and the application fee to the above
address **by mail only**. Applications will not be accepted in person.

**OW TO QUALIFY:**
**Education and Experience Requirements:** Except as noted below, by the **date of appointment**, you must have

   1)   successfully completed 30 semester credits from an accredited college or university, or

   2)   a four year high school diploma or its educational equivalent and have completed two years of honorable
        full-time U.S. military service.

**For appointments between October 15, 2001 and December 31, 2002:** For appointments made between October
15, 2001, and December 31, 2002, where qualification for Education and Experience Requirements is based upon
the successful completion of semester credits, you must have, by the time of appointment, successfully completed
a minimum of 15 semester credits from an accredited college or university. **However,** in order to successfully
complete your probationary period, you must, no later than 30 days prior to the completion of your probationary
period, have completed a minimum of 30 semester credits, in total, from an accredited college or university. A
failure to possess a minimum of 30 semester credits no later than 30 days prior to the completion of your
probationary period will result in termination.

---

**READ CAREFULLY AND SAVE FOR FUTURE REFERENCE**

A - 00017

Kam. No. 7029 – Page 2

**Certification Requirement:** Except as noted below, by the date of appointment, you must have a minimum of a Certified First Responder Certification with Defibrillation. This certification must be maintained for the duration of your employment.

> **For appointments between October 15, 2001 and December 31, 2002:** For appointments made between October 15, 2001, and December 31, 2002, a minimum of a Certified First Responder Certification with Defibrillation must be obtained no later than 30 days prior to the completion of your probationary period. A failure to obtain such Certification no later than 30 days prior to the completion of your probationary period will result in termination.

**Age Requirement:** Pursuant to Section 54 of the New York Civil Service Law and Section 15-103 of the Administrative Code, you must be at least 17 ½ years of age by the end of the application period and you must not have reached your twenty-ninth birthday by the beginning of the application period to be eligible to take this examination. However, you must have reached your twenty-first birthday to be eligible for appointment.

**Exception to the Age Requirement:** All persons who were engaged in military duty as defined in Section 243 of the New York State Military Law may deduct from their actual age the length of time spent in such military duty provided the total deduction for military duty does not exceed six years.

**Driver's License Requirement:** At the time of appointment, you must possess a motor vehicle driver's license valid in the State of New York. This license must be maintained for the duration of your employment.

**Medical and Psychological Requirements:** You must take medical and psychological tests.

**Drug/alcohol Screening Requirement:** You must pass a drug/alcohol screening in order to be appointed. Drug/alcohol tests will also be administered to all probationary Firefighters as part of the medical examination prior to the completion of probation.

**Character and Background:** Proof of good character and satisfactory background will be an absolute prerequisite to appointment. In accordance with provisions of law, persons convicted of a felony or who have received a dishonorable discharge from the Armed Forces are not eligible for appointment to this position.

**Residency Requirement:** The New York Public Officers Law requires that any person employed as a Firefighter in the Fire Department of New York be a resident of the City of New York or of Nassau, Westchester, Suffolk, Orange, Rockland or Putnam Counties.

**English Requirement:** Candidates must be able to understand and be understood in English.

**Proof of Identity:** Under the Immigration Reform and Control Act of 1986, you must be able to prove your identity and your right to obtain employment in the United States prior to employment with the City of New York.

**Citizenship Requirement:** United States citizenship is required at the time of appointment.

**REQUIRED FORM(S):**

**Application for Examination:** Make sure that you follow all instructions included with your application form, including payment of fee. Save the instructions for future reference.

**ADMISSION CARD:** You should receive an Admission Card in the mail about 10 days before the date of the test. If you do not receive an Admission Card at least 4 days before the test date, you must go to the Examining Service Section, 2 Washington Street, 17th floor, Manhattan, to obtain a duplicate card.

**THE TEST:** There will be a written multiple-choice test, weight 50, and a physical test, weight 50. The pass mark for the written test will be determined after an analysis of the test results.

The written test is designed to test the candidate's ability to learn and to perform the work of a Firefighter. It may include questions involving the understanding of written language and information, using language to communicate information or ideas to other people, memorizing information, recognizing or identifying the existence of problems, applying general rules to specific situations, applying prioritized rules to specific situations, determining position or spatial orientation within a larger area, visualizing how objects or structures might appear from different perspectives or after changes, finding a rule or concept which fits or describes a situation, and other related areas.

The physical test will consist of a series of events designed to test the candidate's capacity to perform the physical aspects of a Firefighter's job. A more detailed description of the physical test will be made available at a later date. Candidates called to participate in the physical test will be required to pay an additional fee prior to taking the physical test and will be notified of the method of payment prior to the physical test. Failure to pay the additional application fee, in a timely manner, will result in disqualification from further participation in the examination. The additional application fee for the physical test will be waived for a New York City resident receiving public assistance who submits a clear photocopy of a current Benefit Card at the time of the physical test.

A - 00018

.29 - Page 3

.dates must pass the written test to be summoned for the physical test. Medical evidence to allow participation in the .ical test may be required. Candidates will be required to undergo a drug screening on the day of the physical test. .r candidates who pass both the written and physical tests, scores on the written and physical tests will be converted to .andard scores. The standard score on each test will then be multiplied by the weight of that test, and these products will .e added resulting in a combined weighted standardized score. Ranking of candidates will be based on this combined .eighted standardized score. This combined weighted standardized score will then be transformed to scores between 70 .nd 100. Only those candidates who receive a score between 70 and 100 will be credited with Veterans' credit, if .pplicable, and New York City Residency credit, if applicable.

.lew York City Residency Credit: Five points will be added to the final exam score of those candidates who qualify for .lew York City Residency Credit. To be eligible for the residency credit, a candidate must achieve a passing score on both .he written test and the physical test, and must maintain a continuous period of residency in New York City from August ., 1999 through August 1, 2000. Candidates interested in seeking the residency credit will be given an opportunity to .equest the credit at the written examination. Candidates who pass the written test will also be provided with an opportunity .o request the credit at the time of the physical test. In any event, all requests for the residency credit must be received by .he Department of Citywide Administrative Services, Bureau of Examinations, 2 Washington Street, New York, NY 10004, .n writing, prior to the establishment of the list.

Eligibility for the residency credit will be investigated by the Fire Department of New York. Candidates will be required .o produce written verification of the candidate's New York City residency from August 1, 1999 through August 1, 2000. The documents presented must represent the period of time for which you are claiming City residency. Inability to produce the required verification of residence documents for the continuous period of residency will result in the forfeiture of the New York City Residency Credit and an adjustment in the final score. Documents that will be investigated to prove New York City residency will include, but are not limited to, a copy of a lease or mortgage in the candidate's name plus one of the following (also in the candidate's name): telephone bills; gas, electric or water utility bills; checking or savings account statements; cable TV bills; or credit card statements. The Fire Department of New York reserves the right to accept other documents; in lieu of the above, under special circumstances which validate various living credit, such as residing with parents, etc., as determined by the Department. As in the case of any intentional misrepresentation of a material fact on an employment application, candidates who claim New York City residency credit and who are determined to have intentionally misrepresented facts concerning New York City residency shall be disqualified and their names shall be removed from the eligible list, and they may be subject to criminal sanctions.

Legacy Credit: Five points will be added to the final score of those candidates who qualify for the "Legacy Credit". A candidate shall qualify for the "Legacy Credit" if his or her parent has died while engaged in the discharge of his or her duties as a uniformed member of the New York City Fire Department, New York City Police Department, NYC Transit Police Department or NYC Housing Authority Police Department.

To be eligible for this credit, a candidate must achieve a passing score on both the written and the physical tests.

Candidates who pass the written test and are summoned to the physical test will be able to claim legacy credit at the physical test site. All such claims will be investigated.

.IE TEST RESULTS: If you pass both the multiple-choice test and physical test, your name will be placed in score order on an eligible list and you will be given a list number. You will be notified by mail of your test results. If you meet all requirements and conditions, you will be considered for appointment when your name is reached on the eligible list.

DDITIONAL INFORMATION:

Investigation: This position is subject to investigation before appointment. At the time of investigation, eligibles will be required to pay a $50.00 fee for fingerprint screening.

At the time of investigation and at the time of appointment, eligibles must present originals or certified copies of all required documents and proof, including, but not limited to, proof of date and place of birth by transcript of record of the Bureau of Vital Statistics or other satisfactory evidence, naturalization papers if necessary, proof of any military service, and proof of meeting educational requirements.

Any willful misstatement or failure to present any documents required for investigation will be cause for disqualification.

Probationary Period: The probationary period is 12 months. As part of the probationary period, probationers will be required to successfully complete a prescribed training course. Probationers who fail to complete successfully such training course, at the close of such training course, may be terminated by the agency head.

List Termination: The eligible list resulting from this examination will be terminated one year from the date it is established, unless extended by the Commissioner.

**A - 0001**

xam. No. 7029 - Page 4

**ECIAL TEST ACCOMMODATIONS:** If you plan to request special testing accommodations due to disability or an alternate test date due to your religious belief, follow the instructions included with the "Application for Examination."

---

The General Examination Regulations of the Department of Citywide Administrative Services apply to this examination and are part of this Notice of Examination. They are posted and copies are available in the Applications Section of the Division of Citywide Personnel Services, 18 Washington Street, NY, NY.

The City of New York is an Equal Opportunity Employer.

Title Code No. 70310;  Fire Service.

For Recorded Information or Instructions (and also for Other City Jobs) Call 212-487-JOBS

A - 00020



THE CITY OF NEW YORK
DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES
APPLICATIONS CENTER
18 WASHINGTON STREET
NEW YORK, NY 10004

| REQUIRED FORMS |
| --- |
| APPLICATION FORM |

MICHAEL R. BLOOMBERG
Mayor

MARTHA K. HIRST
Commissioner

# NOTICE
# OF
# EXAMINATION

## FIREFIGHTER

### Exam. No. 2043
### Second Amended Notice (September 25, 2002)

**WHEN TO APPLY:**   From: June 28, 2002        **APPLICATION FEE:** $35.00
                            To:    October 31, 2002

**THE TEST DATE:** Multiple-choice test expected to be held on **Saturday, December 14, 2002.**

The Notice of Examination is amended to:
1. extend the end of the filing period from September 30, 2002 to October 31, 2002;
2. change the test date from November 23, 2002 to December 14, 2002; and
3. add references to online filing to the "HOW TO APPLY" and "SPECIAL TEST ACCOMMODATIONS" sections.

**WHAT THE JOB INVOLVES:** Under supervision, Firefighters assist in the control and extinguishment of fires, in providing pre-hospital emergency medical care, and in the enforcement of laws, ordinances, rules and regulations regarding the prevention, control and extinguishment of fires, as well as perform Fire Safety Education activities; perform inspections and related enforcement duties to assure compliance with provision of Fire Prevention Code and applicable section of Building Code, multiple Dwelling Code, Housing Maintenance Code, Labor Law and other laws, rules, regulations, within enforcement purviews of Fire Department; perform inspection of equipment and schedule as necessary the maintenance of various tools and equipment, including but not limited to S.C.B.A. power tools, company apparatus, and personal safety equipment; and perform related work.

Some of the physical activities performed by Firefighters and environmental conditions experienced are: wearing protective clothing, such as bunker suit, helmet, boots and breathing apparatus; crawling, crouching and standing, often for prolonged periods, while extinguishing fires; driving fire apparatus and other Department vehicles; climbing stairs, ladders and fire escapes; raising portable ladders; using forcible entry tools, such as axes, sledge hammers, power saws and hydraulic tools; searching for victims in smoke-filled hostile environments; carrying or dragging victims from dangerous locations; connecting, stretching and operating hose lines; locating hidden fire by feel and smell; providing medical assistance to injured or ill citizens; and providing control and mitigation of hazardous materials incidents while wearing chemical protective clothing.

(This is a brief description of what you might do in this position and does not include all the duties of this position.)

**THE SALARY:** The current minimum salary is $32,724 per annum. This rate is subject to change. In addition, employees will receive holiday pay and night differential.

**HOW TO APPLY:** There are two ways to apply for this exam:

1.  **Online at the DCAS Website:** If you wish to apply online, browse to Online-Apps at **http://nyc.gov/applyforexams,** and follow the on-screen application instructions for filling out any required forms and electronically submitting your application. Fees for applications submitted online are payable only with a valid credit card.

| READ CAREFULLY AND SAVE FOR FUTURE REFERENCE |
| --- |

A - 00013

Exam. No. 2043 - Page 2

2.    **By mail:** If you believe you meet the requirements in the "How to Qualify" section, refer to the "Required Forms" section below for the form (s) that you must fill out. Return all completed form (s) and the application fee to DCAS Applications Section, 1 Centre Street, 14th floor, New York, NY 10007.   Fees for applications submitted by mail are payable only by money order to D.C.A.S. (EXAMS).

Applications will not be accepted in person.

**CFR-D REQUIREMENT:** You will be required to possess Certified First Responder Certification with Defibrillation (CFR-D) by the end of your probationary period.  This certification must be maintained for the duration of employment.

**Note:** If you do not possess a CFR-D at the time of appointment, you will be required to obtain CFR-D training <u>at your own expense</u>, either at a training program of your own choosing or a training program provided by FDNY. The training course provided by FDNY will cost $775, although that cost is subject to change based upon the latest collective bargaining agreements regarding uniformed services salaries and the number of training hours in effect at the time of training. Upon successful completion of FDNY's CFR-D course and receipt of your CFR-D certificate, payroll deductions will commence at a rate of $30 per pay period until the total cost is recouped by FDNY.

## HOW TO QUALIFY:

**Education and Experience Requirements:** By the **date of appointment,** you must have

    (1)    successfully completed 30 semester credits from an accredited college or university, or

    (2)    a four year high school diploma or its educational equivalent and have completed two years of honorable full-time U.S. military service.

You may be given the test before we check your qualifications.

**Driver License Requirement:** By the time you are appointed to this position, you must have a motor vehicle driver license valid in the State of New York.  This license must be maintained for the duration of your employment.

**Medical and Psychological Requirements:** Medical and psychological guidelines have been established for the position of Firefighter.  Candidates will be examined to determine whether they can perform the essential functions of the position of Firefighter.  Additionally, employees will be expected to continue to perform the essential functions of the position of Firefighter throughout their careers, and may, therefore, be medically tested periodically throughout their careers.  Where appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take these medical and psychological examinations, and/or to perform the essential functions of the job.

**Drug Screening Requirement:** You must pass a drug screening in order to be appointed.  Drug tests will also be administered to all probationary Firefighters as part of the medical examination prior to the completion of probation.

**Residency Requirement:**  The New York Public Officers Law requires that any person employed as a Firefighter in the Fire Department of New York be a resident of the City of New York or of Nassau, Westchester, Suffolk, Orange, Rockland or Putnam Counties.

**English Requirement:**  Candidates must be able to understand and be understood in English.

**Proof of Identity:**  Under the Immigration Reform and Control Act of 1986, you must be able to prove your identity and your right to obtain employment in the United States prior to employment with the City of New York.

**Citizenship Requirement:** United States citizenship is required at the time of appointment.

**Age Requirement:** Pursuant to Section 54 of the New York Civil Service Law and Section 15-103 of the Administrative Code, you must be at least 17½ years of age by the end of the application period and you must not have reached your twenty-ninth birthday by the beginning of the application period to be eligible to take this examination.  However, you must have reached your twenty-first birthday to be eligible for appointment.

**Exception to the Age Requirement:** All persons who were engaged in military duty as defined in Section 243 of the New York State Military Law may deduct from their actual age the length of time spent in such military duty provided the total deduction for military duty does not exceed six years.

**Character and Background:** Proof of good character and satisfactory background will be an absolute prerequisite to appointment.  In accordance with provisions of law, persons convicted of a felony or who have received a dishonorable discharge from the Armed Forces are not eligible for appointment to this position.

A - 00014

. . .А3 - Page 3

**.ÆD FORM(S):**

**Application for Examination:** Make sure that you follow all instructions included with your application form, including payment of fee. Save a copy of the instructions for future reference.

**THE TEST:** There will be a written multiple-choice test, weight 50, and a physical test, weight 50. The pass mark for the written test will be determined after an analysis of the test results.

The written test is designed to test the candidate's ability to learn and to perform the work of a Firefighter. It may include questions involving the understanding of written language and information, using language to communicate information or ideas to other people, memorizing information, recognizing or identifying the existence of problems, applying general rules to specific situations, applying prioritized rules to specific situations, determining position or spatial orientation within a larger area, visualizing how objects or structures might appear from different perspectives or after changes, finding a rule or concept which fits or describes a situation, and other related areas.

The physical test will consist of a series of events designed to test the candidate's capacity to perform the physical aspects of a Firefighter's job. A more detailed description of the physical test will be made available at a later date. Candidates called to participate in the physical test will be required to pay an additional fee prior to taking the physical test and will be notified of the method of payment prior to the physical test. Failure to pay the additional application fee, in a timely manner, will result in disqualification from further participation in the examination. The additional application fee for the physical test will be waived for a New York City resident receiving public assistance who submits a clear photocopy of a current Benefit Card at the time of the physical test.

Candidates must pass the written test to be summoned for the physical test. Medical evidence to allow participation in the physical test may be required.

For candidates who pass both the written and physical tests, scores on the written and physical tests will be converted to standard scores. The standard score on each test will then be multiplied by the weight of that test, and these products will be added resulting in a combined weighted standardized score. Ranking of candidates will be based on this combined weighted standardized score. This combined weighted standardized score will then be transformed to scores between 70 and 100. Only those candidates who receive a score between 70 and 100 will be credited with Veterans' credit, if applicable, and New York City Residency credit, if applicable.

**New York City Residency Credit:** Five points will be added to the final exam score of those candidates who qualify for New York City Residency Credit. To be eligible for the residency credit, a candidate must achieve a passing score on both the written test and the physical test, and must maintain a continuous period of residency in New York City from March 1, 2003 through March 1, 2004. Candidates interested in seeking the residency credit will be given an opportunity to request the credit at the written examination. Candidates who pass the written test will also be provided with an opportunity to request the credit at the time of the physical test. In any event, all requests for the residency credit must be received by the Department of Citywide Administrative Services, Bureau of Examinations, 1 Centre Street, 14th floor, New York, NY 10007, in writing, prior to the establishment of the list.

Eligibility for the residency credit will be investigated by the Fire Department of New York. Candidates will be required to produce written verification of the candidate's New York City residency from March 1, 2003 through March 1, 2004. The documents presented must represent the period of time for which you are claiming City residency. Inability to produce the required verification of residence documents for the continuous period of residency will result in the forfeiture of the New York City Residency Credit and an adjustment in the final score. Documents that will be investigated to prove New York City residency will include, but are not limited to, a copy of a lease or mortgage in the candidate's name plus one of the following (also in the candidate's name): telephone bills; gas, electric or water utility bills; checking or savings account statements; cable TV bills; or credit card statements. The Fire Department of New York reserves the right to accept other documents, in lieu of the above, under special circumstances which validate various living arrangements, such as residing with parents, etc., as determined by the Department. As in the case of any intentional misrepresentation of a material fact on an employment application, candidates who claim New York City residency credit and who are determined to have intentionally misrepresented facts concerning New York City residency shall be disqualified and their names shall be removed from the eligible list, and they may be subject to criminal sanctions.

**Legacy Credit:** Five points will be added to the final score of those candidates who qualify for the "Legacy Credit." A candidate shall qualify for the "Legacy Credit" if his or her parent has died while engaged in the discharge of his or her duties as a uniformed member of the New York City Fire Department, New York City Police Department, New York City Transit Police Department, New York City Housing Authority Police Department, or New York City Department of Correction.

To be eligible for this credit, a candidate must achieve a passing score on both the written and the physical tests.

Candidates who pass the written test and are summoned to the physical test will be able to claim legacy credit at the physical test site. Candidates who become qualified for "Legacy Credit" after taking the physical test, but before the date the eligible list is established, can apply by writing to DCAS, Examining Service Section, 1 Centre Street, 14th floor, New York, NY 10007. Claims for "Legacy Credit" cannot be made once the eligible list is established. All such claims will be investigated.

Exam. No. 2043 - Page 4

**ADMISSION CARD:** You should receive an Admission Card in the mail about 10 days before the date of the written test. If you do not receive an Admission Card at least 4 days before the test date, you must go to the Examining Service Section, 1 Centre Street, 14th floor, Manhattan, to obtain a duplicate card.

**THE TEST RESULTS:** If you pass the multiple-choice test and physical test, your name will be placed in score order on an eligible list and you will be given a list number. You will be notified by mail of your test results. If you meet all requirements and conditions, you will be considered for appointment when your name is reached on the eligible list.

**ADDITIONAL INFORMATION:**

**Investigation:** This position is subject to investigation before appointment. At the time of investigation, eligibles will be required to pay a $50.00 fee for fingerprint screening.

At the time of investigation and at the time of appointment, eligibles must present originals or certified copies of all required documents and proof, including, but not limited to, proof of date and place of birth by transcript of record of the Bureau of Vital Statistics or other satisfactory evidence, naturalization papers if necessary, proof of any military service, and proof of meeting educational requirements.

Any willful misstatement or failure to present any documents required for investigation will be cause for disqualification.

**Probationary Period:** The probationary period is 12 months. As part of the probationary period, probationers will be required to successfully complete a prescribed training course. Probationers who fail to complete successfully such training course, at the close of such training course, may be terminated by the agency head.

**List Termination:** The eligible list resulting from this examination will be terminated one year from the date it is established, unless extended by the Commissioner.

**Promotion Test:** A promotion examination for this title is being held for eligible City employees. The names appearing on the promotion list will be considered first in filling vacancies.

**SPECIAL TEST ACCOMMODATIONS:** If you plan to request special testing accommodations due to disability or an alternate test date due to your religious belief, and

1. you are filing an application online, follow the on-screen instructions, or

2. you are filing an application by mail, follow the instructions included with the "Application for Examination."

---

The General Examination Regulations of the Department of Citywide Administrative Services apply to this examination and are part of this Notice of Examination. They are posted and copies are available in the Applications Center of the Division of Citywide Personnel Services, 18 Washington Street, NY, NY.

The City of New York is an Equal Opportunity Employer.

Title Code No. 70310;  Fire Service.

For Information About Other Exams and Your Exam or List Status, Call 212-669-1357
Internet:  nyc.gov/html/dcas

A - 00016



**THE CITY OF NEW YORK**
**DEPARTMENT OF CITYWIDE**
**ADMINISTRATIVE SERVICES**
**APPLICATIONS CENTER**
**18 WASHINGTON STREET**
**NEW YORK, NY 10004**

| REQUIRED FORMS |
|---|
| APPLICATION FORM |

MICHAEL R. BLOOMBERG
Mayor

MARTHA K. HIRST
Commissioner

# N O T I C E
# O F
# E X A M I N A T I O N

---

**FIREFIGHTER**
**Exam. No. 6019**

**Second Amended Notice 11/1/06**

---

**WHEN TO APPLY:**   From: **August 7, 2006**        **APPLICATION FEE:  $30.00**
                                To:      **November 3, 2006**      *Payable only by money order to D.C.A.S. (EXAMS)*

**THE TEST DATE:**  The multiple-choice test is expected to be held on **Saturday, January 20, 2007.**

---

**The Notice of Examination is amended to change the scheduling of the physical ability test.**

---

### READ THIS NOTICE IN ITS ENTIRETY BEFORE YOU SUBMIT YOUR APPLICATION

**WHAT THE JOB INVOLVES:** Under supervision, Firefighters assist in the control and extinguishment of fires, in providing pre-hospital emergency medical care, and in the enforcement of laws, ordinances, rules and regulations regarding the prevention, control and extinguishment of fires, as well as perform Fire Safety Education activities; perform inspections and related enforcement duties to assure compliance with provisions of the Fire Prevention Code and applicable sections of the Building Code, Multiple Dwelling Code, Housing Maintenance Code, Labor Law and other laws, rules and regulations, within enforcement purviews of the New York City Fire Department; perform inspections of equipment and schedule as necessary the maintenance of various tools and equipment, including but not limited to power tools, company apparatus, Self-Contained Breathing Apparatus (S.C.B.A.) and other personal safety equipment; and perform related work.

Some of the physical activities performed by Firefighters and environmental conditions experienced are: wearing protective clothing, such as bunker suit, helmet, boots and breathing apparatus; crawling, crouching and standing, often for prolonged periods, while extinguishing fires; driving fire apparatus and other Department vehicles; climbing stairs, ladders and fire escapes; raising portable ladders; using forcible entry tools, such as axes, sledge hammers, power saws and hydraulic tools; searching for victims in smoke-filled environments; carrying or dragging victims from dangerous locations; connecting, stretching and operating hose lines; locating hidden fire by feel and smell; providing medical assistance to injured or ill citizens; and providing control and mitigation of hazardous materials incidents while wearing chemical protective clothing.

(This is a brief description of what you might do in this position and does not include all the duties.)

**THE SALARY:**  The current minimum salary is $25,100 per annum.  Upon completion of 13 weeks employment, the salary will rise to $32,700.  Incumbents will receive salary increments reaching $63,309 per annum at the completion of five and one half years employment.  All rates are subject to change.  In addition, employees receive holiday, night shift and overtime pay.

**HOW TO APPLY**:  If you believe that you meet the requirements in the "How to Qualify" section, refer to the "Required Form" section below for the form that you must fill out.  Return the completed form and the $30.00 application fee, payable only by money order to D.C.A.S. (EXAMS), to DCAS Applications Section, 1 Centre Street, 14th floor, New York, NY 10007 **by mail only**.  DCAS will not accept applications in person from candidates.

### HOW TO QUALIFY TO TAKE THE TEST:

**Age Requirement**: Pursuant to Section 54 of the New York Civil Service Law and Section 15-103 of the Administrative Code, you must be at least 17½ years of age by the end of the application period and you must not have reached your 29th birthday by the beginning of the application period to be eligible to take this examination. However, you must have reached your 21st birthday to be eligible for appointment.

**Exception to the Age Requirement**: All persons who were engaged in military duty as defined in Section 243 of the New York State Military Law may deduct from their actual age the length of time spent in such military duty up to a maximum deduction of six years.

### REQUIRED FORM:

**Application for Examination**: Make sure that you follow all instructions included with your Application for Examination form, including payment of fee.  Save a copy of the instructions for future reference.

---

### READ CAREFULLY AND SAVE FOR FUTURE REFERENCE

**THE EXAMINATION**: There will be a written multiple-choice test and a qualifying physical ability test, as described below. You must achieve a score of at least 70% to pass the written test, and you must satisfactorily complete all events of the physical ability test within a prescribed time frame to pass the physical ability test. Your score on the written test will be used to determine your place on an eligible list.

**THE WRITTEN TEST**: The written test is designed to assess your ability to learn and to perform the work of a Firefighter. It will include multiple-choice questions which may assess the following abilities: Written Comprehension, Memorization, Problem Sensitivity, Number Facility, Deductive Reasoning, Inductive Reasoning, Information Ordering, Spatial Orientation, Visualization, Perceptual Speed, Adaptability, Tenacity, Integrity, Work Standards, Resilience, Coordination, Establishing and Maintaining Interpersonal Relationships, and other abilities.

**THE PHYSICAL ABILITY TEST**: Candidates who pass the written test will be scheduled to take the physical ability test in score order prior to admission to the Fire Academy as vacancies occur. The physical ability test used will be the Candidate Physical Ability Test (CPAT), which is scored on a pass/fail basis. This test consists of a series of 8 events designed to assess your capacity to perform the physical aspects of the job of a Firefighter. The test events are: stair climb, hose drag, equipment carry, ladder raise and extension, forcible entry, search, rescue, and ceiling breach and pull. A more detailed description of the physical test will be mailed to candidates before they are scheduled for the physical ability test.

**You will be required to pay an additional fee of $25.00 prior to taking the physical ability test.** Failure to pay the additional fee on the date you are scheduled to take the physical ability test will result in disqualification from further participation in the examination. The additional fee for the physical ability test will be waived for a New York City resident receiving public assistance who submits a clear photocopy of a current Benefit Card at the time of the physical ability test. Medical evidence to allow participation in the physical ability test may be required and the Department of Citywide Administrative Services reserves the right to exclude from the physical ability test any candidates who are medically unfit.

**NEW YORK CITY RESIDENCY CREDIT**: Five points will be added to the final exam score of those candidates who qualify for New York City Residency Credit. To be eligible for the residency credit, a candidate must achieve a passing score on the examination, and must maintain a continuous period of residency in New York City from March 1, 2007 through March 1, 2008. Candidates interested in seeking the residency credit must apply by following the instructions which will be provided on the date of the written test. **Merely supplying a New York City address on the application form for this examination <u>does not</u> serve as a request for the residency credit. Requests for residency credit must be received by DCAS before the eligible list is established.**

Eligibility for the residency credit will be investigated by the Fire Department of New York. Candidates will be required to produce written verification of the candidate's New York City residency from March 1, 2007 through March 1, 2008. The documents presented must represent the period of time for which you are claiming City residency. Inability to produce the required verification of residence documents for the continuous period of residency will result in the forfeiture of the New York City Residency Credit and an adjustment in the final score. Documents that will be investigated to prove New York City residency will include, but are not limited to, an "<u>original</u>" lease or mortgage in the candidate's name plus one of the following (also in the candidate's name): telephone bills; gas, electric or water utility bills; checking or savings account statements; cable TV bills; or credit card statements. The Fire Department of New York reserves the right to accept other documents, in lieu of the above, under special circumstances which validate various living arrangements, as determined by the Department. **As in the case of any intentional misrepresentation of a material fact on an employment application, candidates who claim New York City residency credit and who are determined to have intentionally misrepresented facts concerning New York City residency shall be disqualified and their names shall be removed from the eligible list, and they may be subject to criminal sanctions.**

**VETERAN'S PREFERENCE CREDITS AND LEGACY CREDITS:** The New York State Civil Service Law provides that additional points can be added to the final score of a candidate who is, or by the date of appointment expects to be, an honorably discharged veteran or disabled veteran of the Armed Forces of the United States who has served during a time of war, as specified in New York State law; a candidate whose parent has died while engaged in the discharge of his or her duties as a Police Officer or Firefighter; or a candidate who is the sibling of a Police Officer or Firefighter who was killed in the service of New York City as a result of the World Trade Center attack on September 11, 2001. To be eligible for any of these credits, a candidate must achieve a passing score on the examination. **This is only an overview**; specific conditions and instructions for requesting Veteran Preference Credits and/or Legacy Credits and additional information are indicated in the Special Circumstances Sheet included in the Application Package.

**ADMISSION CARD**: You should receive an Admission Card in the mail about 10 days before the date of the test. If you do not receive an Admission Card at least 4 days before the test date, you must go to the Examining Service Section, 1 Centre Street, 14th floor, Manhattan, to obtain a duplicate card.

**THE TEST RESULTS**: If you pass the written test, your name will be placed in final score order on an eligible list and you will be given a list number. You will be notified by mail of your test results. If you pass the physical ability test and meet all requirements and conditions, you will be considered for appointment when your name is reached on the eligible list.

**HOW TO QUALIFY FOR APPOINTMENT**:

**Education and Experience Requirements**: By the **date of appointment**, you must have a four-year high school diploma or its educational equivalent, and:

1.  15 college semester credits earned as a result of satisfactory completion of course work at a college or university accredited by an accrediting body recognized by the U.S. Secretary of Education and the Council for Higher Education Accreditation ("CHEA"); or
2.  full-time U.S. military service with an honorable discharge; or
3.  6 months of full-time, satisfactory paid work experience.

You may be given the exam before we verify your qualifications. You are responsible for determining whether or not you meet the qualification requirements for this examination prior to submitting your application. If you are found to be "Not Qualified," your application fee will not be refunded and you will not receive a score.

**Driver License Requirement**: You must have a motor vehicle driver license valid in the State of New York at the time of appointment. This license must be maintained for the duration of your employment.

**Medical and Psychological Requirements**: Medical and psychological guidelines have been established for the position of Firefighter. You will be examined to determine whether you can perform the essential functions of the position of Firefighter. Additionally, since employees are expected to continue to perform the essential functions of the position of Firefighter throughout their careers, you may be medically tested periodically throughout your career. Where appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take these medical and psychological examinations, and/or to perform the essential functions of the job.

**Drug Screening Requirement**: You must pass a drug screening in order to be appointed. Drug tests will also be administered to all probationary Firefighters as part of the medical examination prior to the completion of probation. Additionally, Firefighters will be subject to periodic random drug testing throughout their careers.

**Residency Requirement**: The New York Public Officers Law requires that any person employed as a Firefighter in the Fire Department of New York be a resident of the City of New York or of Nassau, Westchester, Suffolk, Orange, Rockland or Putnam Counties.

**English Language Requirement**: You must be able to understand and be understood in English.

**Proof of Identity**: Under the Immigration Reform and Control Act of 1986, you must be able to prove your identity and your right to obtain employment in the United States prior to employment with the City of New York.

**Citizenship Requirement**: United States citizenship is required at the time of appointment.

**Character and Background**: Proof of good character and satisfactory background will be an absolute prerequisite to appointment. Persons convicted of a felony or who have received a dishonorable discharge from the Armed Forces are not eligible for appointment to this position.

**CFR-D REQUIREMENT**: You will be required to possess Certified First Responder Certification with Defibrillation (CFR-D) by the end of your probationary period. This certification must be maintained for the duration of employment.

If you do not possess a CFR-D certificate at the time of appointment, you will be required to obtain the CFR-D certificate by the end of your probationary period. FDNY provides a CFR-D training program during the probationary Firefighter training course at a cost of $775. Upon successful completion of FDNY's CFR-D course and receipt of your CFR-D certificate, payroll deductions will commence at a rate of $30 per pay period until the total cost is recouped by FDNY.

Probationary Firefighters who fail to obtain a CFR-D certificate by the end of their probationary period will be terminated.

**ADDITIONAL INFORMATION**:

**Investigation**: This position is subject to investigation before appointment. At the time of investigation, you will be required to pay a $75.00 fee for fingerprint screening.

At the time of investigation and at the time of appointment, you must present originals or certified copies of all required documents and proof, including, but not limited to: proof of date and place of birth, such as an official Birth Certificate or other satisfactory evidence, naturalization papers if necessary, proof of any military service, and proof of meeting educational requirements.

Any willful misstatement or failure to present any documents required for investigation will be cause for disqualification.

**Probationary Period**: The probationary period is 12 months. As part of the probationary period, probationers will be required to successfully complete a prescribed training course. Probationers who fail to complete successfully such training course may be terminated by the agency head.

**Promotion Test**: A promotion examination for this title is being held for eligible City employees. The names appearing on the promotion list will be considered first in filling vacancies.

**SPECIAL TEST ACCOMMODATIONS**: If you plan to request special testing accommodations due to disability or an alternate test date due to your religious belief, follow the instructions included with the "Application for Examination."

---

**The General Examination Regulations of the Department of Citywide Administrative Services apply to this examination and are part of this Notice of Examination. They are posted and copies are available in the Applications Center of the Division of Citywide Personnel Services, 18 Washington Street, NY, NY.**

The City of New York is an Equal Opportunity Employer.
Title Code No. 70310;  Fire Service.

**For information about other exams, and your exam or list status, call 212-669-1357.
Internet:  nyc.gov/dcas**

# EXHIBIT "B"

KEVIN E. GALLAGHER
*President*                    TRS. 280

MICHAEL A. CARTER
*Vice-President*          ENG. 36

WILLIAM F. MIRRO
*Recording Secretary*     LAD. 126

THOMAS LoMACCHIA
*Treasurer*                LAD. 40

CHARLES J. BOHAN
*Sergeant-at-Arms*        LAD. 29

**Uniformed Firefighters Association**

OF GREATER NEW YORK
Local 94 I.A.F.F. AFL-CIO
204 EAST 23rd STREET, NEW YORK, N.Y. 10010
(212) 683-4832



DANIEL J. LYNCH, JR.
*Trustee-Manhattan*
*Chairman, Board of Trustees*   LAD. 7

JEROME V. HUNTZINGER
*Trustee-Staten Island*     LAD. 78

MATTHEW JAMES
*Trustee-Brooklyn*         LAD. 170

THOMAS LYNCH
*Trustee-Bronx*             LAD. 18

THOMAS DAPARMA
*Trustee-Queens*           ENG. 315

JOHN E. KNOX
*Fire Marshal Representative*

July 13, 1998

Tom Von Essen, Commissioner
New York City Fire Department
9 Metro Tech
Brooklyn, New York 11201

Dear Commissioner Von Essen,

Having spoken to any and all that could possibly help in respect to our safety harnesses and personal ropes, I am appealing to you as a last resort. To reiterate our need and inherent dependency on this equipment after all this time would be redundant.

Day after day I am besieged with calls from members who have had harnesses and ropes confiscated and not replaced. Most of these firefighters have never done without the security of their harness. To see the newly established "squads" issued brand new harnesses and ropes while ignoring the firefighter who has grown up with this equipment is unfair.

-2-

You don't see ESU losing any of their life dependent equipment, why should we?  We respond to the same emergencies!

Tom, I am sick of telling our guys to have patience.

They feel that their department has put their personal safety at risk and if we procrastinate any longer, I am afraid that I agree.

Sincerely,

Charles J. Behan

cc:   Chief Stephen King, Safety
      Tom Galvin, OSHA

# EXHIBIT "C"

# Deaths of Two Firefighters Raise Issue of Safety Ropes

### By MICHELLE O'DONNELL

Besides hoses bearing water, few tools have proved as durable and as useful to New York City firefighters as rope. In longstanding rescue practices and on-the-spot improvisations, firefighters have relied on rope since the days when horses pulled engines and volunteers fought fires, right through last Sunday when two firefighters used a rope to escape a burning building in the Bronx.

In that fire, however, four other firefighters did not have ropes and jumped from the fourth floor. Two died. In the aftermath, Fire Commissioner Nicholas Scoppetta said that that he would consider making ropes standard gear for every firefighter. Doing so would give them a tool with a rich history, but would add more weight to what is already a hefty load.

The uses of ropes by firefighters have expanded for more than a century, just as the city has. With buildings rising to greater heights, firefighters used ropes to lower people to safety. They still do. Firefighters also tie a rope when they enter a vast smoke-filled space and hold the line so they can find their way out. And ropes are used to hoist equipment at emergencies.

But perhaps the most crucial use of rope is as a self-contained fire escape for firefighters themselves. Fire Department ladders outside buildings cannot always be mounted in time to reach trapped firefighters. But a rope, carried in a firefighter's coat pocket, can be quickly unfurled.

The lifesaving utility of a rope was apparent last Sunday. Two firefighters from Rescue 3 who were trapped by fire in a room on the fourth floor of 236 East 178th Street, Jeffrey G. Cool and Joseph P. DiBernardo, quickly fastened a length of rope to child safety bars attached to a window, each taking a turn to lower himself part of the way to the ground.

That sort of desperate utility led the department in 1990 to order that all 11,000 firefighters be equipped with a personal safety rope, but the department abandoned that regulation in 2000.

The nylon ropes, which were three-eighths of an inch thick and 40 feet long, came coiled in a pouch that could be stored in the jacket pockets of the gear that firefighters wore and were attached to harnesses around their waists.

Some firefighters liked carrying a safety rope for emergencies. "You knew that you had a way out," said one former firefighter.

But some firefighters complained about the rope's bulk, especially after 1994, when the department issued heavier protective bunker gear with jackets that had shallower pockets than the old coats.

---

## A renewed debate over the need for a traditional piece of lifesaving equipment.

---

Other equipment changes during the 1990's required firefighters to carry more, including tools to break down doors, infrared cameras to search for fire through walls, fire protective hoods and harnesses that looped around a firefighter's waist and bunker pants. A firefighting coat, pants, boots and a helmet weigh a total of 29½ pounds. Adding an oxygen tank brings the weight of basic equipment to 56½ pounds. But some firefighters bearing additional tools can carry as much as 94½ pounds

In 2000, the department recalled all the ropes close to the expiration date of their safety certification and did not issue new ones. At the same time, the department reduced the number of personal safety harnesses it issued; these are used to attach to the two-person rescue rope that each company carries. The two unions that represents firefighters and officers filed a contract grievance against the city over the reduction of the harnesses, but an independent arbitrator ruled in favor of the city in August 2001, said Michael Axelrod, a lawyer for the Uniformed Firefighters Association.

Although the unions complained that the department was continuing a pattern of not investing in vital equipment, Thomas Von Essen, the fire commissioner when the ropes were withdrawn, said the reaction of some firefighters to the ropes led to the decision to discontinue their use.

"There were a lot of complaints in the field about the extra weight," Mr. Von Essen said. "It was one of the areas we felt the least critical at the time, to take these out.

"There was no reason for a lot of people to use them. We wish every firefighter could be carrying his own infrared camera and roof rope, but there's a limit to how much each man can carry."

Daniel Nigro, who retired as chief of the department in 2002, said he had heard complaints that the use of the personal harnesses was wearing out firefighting pants for which the department had paid $10 million. But he said he did not know if cost concerns had played a role in the decision to withdraw the ropes. "That's something they have to look at now when they revisit why the department went away from that and should they go back," Mr. Nigro said.

The city has opened several inquiries into the problems at the Bronx fire, including investigating why a loss of water pressure left firefighters on the third floor without water, requiring firefighters with a hose on the fourth floor to go down and help douse the fire.

Investigators are also trying to determine who built an illegal partition in a fourth-floor apartment that prevented six firefighters from reaching a fire escape. While there is little doubt that a series of failures left the firefighters trapped, it is clear that ropes proved critical as the drama on the fourth floor unfolded.

A breathing mask was lowered from the roof to the trapped men by what is believed to be a utility rope, said Chief Joseph Joseph Callan, the Bronx borough commander. Moments later the fire from the third floor burst through to the fourth, and that is when Firefighters Cool and DiBernardo lashed onto the window bars a rope that Firefighter Cool happened to be carrying.

For reasons not yet known, both men fell during their descent. Firefighter Cool, who went first, fell half-way down, and Firefighter DiBernardo fell when he was just 10 feet below the window, according to Firefighter DiBernardo's father, Joseph DiBernardo Sr., a retired deputy chief. Both men were critically injured.

Fire officials said they were still investigating the falls and could not say if the rope had snapped, how long it was or if the men had instinctively let go because the ropes burned their hands as they slid down.

Trapped in another room were the four firefighters who did not have rope and who jumped. Lt. Curtis W. Meyran and Firefighter John G. Bellew died as a result of their fall.

The two other firefighters, Brendan K. Cawley and Eugene Stolowski, suffered critical injuries and are still in a hospital.

From the roof, a firefighter from Squad 41 — using a two-person rescue rope issued by the department, called a lifesaving rope — was lowering himself to the fourth floor when the last of the men fell.

Of the six firefighters, all but Firefighter Cawley wore a safety harness, a Fire Department official said.

In 1980, two firefighters, Lawrence Fitzpatrick and Gerard Frisby, fell to their deaths in Harlem when the rope they were holding snapped. A five-month inquiry by the city's Department of Investigation faulted the department for "unprofessionally" handling its investigation of the accident and ignoring reports that the rope it had issued was insufficient.

Mayor Michael R. Bloomberg, speaking on Friday on his weekly radio program on WABC-AM, said it was impossible to say for sure whether ropes would have saved the lives of the two firefighters in the Bronx.

"So we'll see whether they want to change it," the mayor said, referring to top Fire Department officials.

"But you know, sometimes things help, and sometimes they don't, and you have to look at it on balance, and you pray that the right decision was made for the right time. Unfortunately, there's no one answer for everything."



Timothy Fadek for The New York Times

On Monday, a day after two firefighters were forced into making fatal leaps to escape a blaze in the Bronx, investigators examined the scene.

```
STATE OF NEW YORK     )
                      )SS:
COUNTY OF NEW YORK    )
```

LINDA A. WEISINGER, being duly sworn, deposes and says:

I am not a party to this action and am over 18 years of age. I have a business address at 120 Broadway, New York, New York 10271.

On the 29th day of July, 2007, deponent served the within **REPLY MEMORANDUM IN SUPPORT OF MOTION BY THE UNIFORMED FIREFIGHTERS ASSOCIATION TO INTERVENE** by transmitting the papers via the internet at the e-mail addresses listed on the attached Service List, which e-mail addresses were designated by the attorneys for such purpose. I also deposited a true copy of said papers, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service addressed to the attorneys at the addresses also set forth on said attached Service List.

LINDA A. WEISINGER

Sworn to before me this
29th day of July, 2007.

Notary Public

BARBARA STERLING
Notary Public, State of New York
No. 24-4962776
Qualified in Kings County
Commission Expires 02-26-10

<u>SERVICE LIST RE:  U.S.A. vs. CITY OF NEW YORK</u>

<u>(AS OF JULY 2007)</u>

<u>PLAINTIFF USA'S ATTORNEYS:</u>

**CLARE F. GELLER, ESQ.**
U.S. Department of Justice
601 D Street - Room 4926
Washington, D.C.  20004
(202) 353-1817
[FAX NO.:  (202) 514-1005]
<u>clare.geller@usdoj.gov</u>

**MICHAEL J. GOLDBERGER, ESQ.**
United States Attorneys Office
Eastern District of New York
One Pierrepont Plaza - 14th Floor
Brooklyn, New York  11201
(718) 254-6052
[FAX NO.:  (718) 254-6083]
<u>Michael.Goldberger@usdoj.gov</u>

**DAVID NATHAN REESE, ESQ.**
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
PHB 4031
Washington, D.C.  20530
(202) 514-3851
[FAX NO.:  (202) 353-8961]
<u>david.reese@usdoj.gov</u>

**ELLIOT M. SCHACHNER, ESQ.**
United States Attorneys Office
147 Pierrepont Plaza - 14th Floor
Brooklyn, New York  11201
(718) 254-6053
[FAX NO.:  (718) 254-6081]
<u>Elliot.Schachner@usdoj.gov</u>

<u>SERVICE LIST RE:  U.S.A. vs. CITY OF NEW YORK</u>

<u>(CONTINUATION)</u>

**SHARON SEELEY, ESQ.**
U.S. Department of Justice
Civil Rights Division - Employment Litigation
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530
(202) 514-4761
[FAX NO.:  (202) 514-1005]
*sharon.seeley@usdoj.gov*

**KENNETH A. STAHL, ESQ.**
United States Attorneys Office
One Pierrepont Plaza - 14th Floor
Brooklyn, New York  11201
(718) 254-6519
[FAX NO.:  (718) 254-6081]
*Kenneth.Stahl@usdoj.gov*

<u>INTERVENOR PLAINTIFFS, VULCAN SOCIETY, MARCUS
HAYWOOD, CANDIDO NUNEZ and ROGER GREGG'S ATTORNEYS:</u>

**RICHARD A. LEVY, ESQ.**
Levy Ratner, P.C.
80 Eighth Avenue - 8th Floor
New York, New York  10011
(212) 627-8100
[FAX NO.:  (212) 627-8182]
rlevy@lrbpc.com

**RICHARD DORN, ESQ.**
Levy Ratner, P.C.
80 Eighth Avenue - 8th Floor
New York, New York  10011
(212) 627-8100
[FAX NO.:  (212) 627-8182]
rdorn@lrbpc.com

<u>SERVICE LIST RE:  U.S.A. vs. CITY OF NEW YORK</u>

<u>(CONTINUATION)</u>

**DANA LOSSIA, ESQ.**
Levy Ratner, P.C.
80 Eighth Avenue - 8th Floor
New York, New York  10011
(212) 627-8100
[FAX NO.:  (212) 627-8182]
dlossia@lrbpc.com

**SHAYANA KADIDAL, ESQ.**
Center for Constitutional Rights
666 Broadway - 7th Floor
New York, New York  10012
(212) 614-6438
[FAX NO.:  (212) 614-6499]

<u>DEFENDANT'S ATTORNEY:</u>

**GEORGIA MARY PESTANA, ESQ.**
Office of the Corporation Counsel
100 Church Street
New York, New York  10007
(212) 788-0862
[FAX NO.:  (212) 788-0940]
*gpestana@law.nyc.gov*