UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

  -against-

CITY OF NEW YORK,

                Defendant.
----------------------------------------------------------------X

MEMORANDUM & ORDER

07-CV-2067 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

This Complaint is brought against the City of New York ("Defendant" or "City") seeking enforcement of a provision of Title VII of the Civil Rights Act of 1964, specifically Section 707 of Title VII, codified at 42 U.S.C. § 2000e-6. Plaintiff United States alleges, *inter alia*: (1) that, in selecting firefighters, Defendant's use of a written examination portion as a pass/fail screening device resulted in an unlawful disparate impact upon Black and Hispanic applicants, and (2) that the City's processing of applicants who passed that written examination and a physical performance test in descending rank order, based on a combination of applicants' scores on the written exam and physical performance test, had an unlawful disparate impact upon Black and Hispanic applicants.

At this time, the court considers two motions to intervene and a motion for bifurcation. The Uniformed Firefighters Association ("UFA") moves to intervene as a defendant. The UFA is the union and collective bargaining agent representing all members of the New York City Fire Department ("FDNY") in the rank of firefighter. (Affidavit of Stephen J. Cassidy in Support of Motion to Intervene ("Cassidy Aff.") at 5 (Docket Entry #15).) In its opposition to that motion,

Plaintiff United States of America ("Plaintiff" or "United States") argues that the UFA should be joined instead as a non-liability party pursuant to Fed R. Civ. P. ("Rule") 19(a).

The Vulcan Society ("Vulcans") and three individuals – Candido Nunez ("Nunez"), Roger Gregg ("Gregg"), and Marcus Haywood ("Haywood") – move to intervene as plaintiffs. The Vulcan Society is "an organization of black firefighters first constituted in the 1940s in response to what was then quite blatant and open discrimination against firefighters of color." (Intervenor's Complaint ¶ 18.) The three individuals seek to represent a certified class consisting of all Black individuals who are, have, sought or will seek to become firefighters employed by the FDNY who have been or will be subjected to discrimination on the basis of color, race, or national origin because of the allegedly unlawful criteria and selection process utilized by Defendants. The Vulcan Society and the three individuals seek to intervene as party plaintiffs and also to expand the nature of the claims and relief sought in the case, though the Defendant and proposed plaintiff-intervenors have agreed to waive their right to a jury trial. Specifically, in addition to the Title VII disparate impact claims alleged by the United States, the proposed Complaint in Intervention alleges that the City has engaged in intentional discrimination in violation of Title VII, 42 U.S.C. §§ 1982 and 1983 and various state and local laws.

Finally, as briefed by Plaintiff, the existing parties have requested that the court bifurcate all proceedings in this case, including discovery, into liability and relief phases, with relief proceedings to commence only in the event of a liability finding.

For the reasons that follow, I GRANT Plaintiff's uncontested motion to bifurcate all proceedings in this case into a liability phase and, if necessary, a relief phase. Furthermore, for the liability phase, the UFA's motion to intervene is DENIED; however, recognizing the

2

important work this union undertakes and the critical perspective it brings to this litigation, the court invites the UFA to participate in the liability phase as a friend of the court. The motion to intervene by the Vulcan Society, Nunez, Gregg, and Haywood is GRANTED. At this time, the court does not consider the issue of class certification raised by Nunez, Gregg, and Haywood.

**I.      Bifurcation**

Before addressing the parties' intervention motions, I first address the uncontested request that I bifurcate these proceedings into two phases. Specifically, the parties have requested that I bifurcate all proceedings in this case into liability and relief phases, with relief proceedings to commence only after a liability finding. I agree with the parties that bifurcation will save the parties and the court substantial time and expense and will streamline this case significantly. Thus, I grant the United States' uncontested request to bifurcate these proceedings into separate liability and relief phases. I note that on July 24, 2007, Magistrate Judge Mann bifurcated discovery in this case into liability and damages phases, and I now do so for all purposes.

Rule 42(b) provides that the court "may order a separate trial" of any claims or issues "when separate trials will be conducive to expedition and economy." Accordingly, "[o]n its face, Rule 42(b) encourages the severing of issues for trial, guaranteeing trial judges optimum flexibility in structuring litigation with an eye toward providing a fair and efficient remedy." Simon v. Philip Morris Inc., 200 F.R.D. 21, 27 (E.D.N.Y. 2001). This court agrees that "it is important that [bifurcation] be encouraged where experience has demonstrated its worth." Advisory Committee Note to Fed. R. Civ. P. 42(b) (1966). Plaintiff correctly notes that "[e]xperience has demonstrated the value of bifurcation in pattern or practice employment

discrimination cases such as this." (Pl. Opposition Brief at 5 (citing Manual for Complex Litigation (4th) § 32.45 ("Employment discrimination class actions have commonly been tried in separate stages under Rule 42(b)")).) In general, "litigating the pattern-or-practice liability phase [first] . . . would both reduce the range of issues in dispute and promote judicial economy." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 168 (2d Cir. 2001).

Here, without bifurcation, substantial time and expense necessary for trial of relief issues would be wasted if Defendant New York City were to prevail on liability. The court's findings in the liability phase may also reeduce the number of firefighter applicants who are eligible for relief, thus streamlining the second phase of the proceedings. As Plaintiff notes, approximately 1,500 of the more than 7,000 Black and Hispanic applicants who took the written exam failed it. (Pl. Opposition Brief at 5 n.7.) Each of them might be entitled to individual relief. The possibility of reducing that number supports bifurcation. In addition, as Plaintiff correctly notes, "when the United States obtains a liability judgment in a case of this nature, the parties frequently settle the relief phase issues." (Id. at 5.)

Accordingly, I order that these proceedings be bifurcated into liability and relief phases, with relief proceedings to commence only after a liability finding, if any.

**II.     Intervention by Uniformed Firefighters Association as a Party Defendant**

By motion dated July 11, 2007, the UFA seeks to intervene as a party defendant as of right pursuant to Rule 24(a) or, in the alternative, by permission pursuant to Rule 24(b). (Docket Entry #15.) At this stage of the proceedings, I hold that the UFA may not intervene under either theory and thus deny its motion to intervene in its entirety. However, I grant the UFA leave to reapply to the court for intervention at a later time in this litigation as appropriate. Furthermore,

recognizing the extremely important role that the UFA plays in protecting and enhancing the safety of all its members, I invite the UFA to participate in the entirety of this litigation as a friend of the court.

### A. Intervention as of Right

The UFA first seeks to intervene as of right. Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The UFA does not rely on subdivision (1), as there exists no statute entitling the UFA to intervene. Because the UFA relies on subdivision (2). If so, it bears the burden of demonstrating that (1) the motion is timely, (2) it has an interest in the litigation, (3) the interest may be impaired by the outcome of the litigation, and (4) the interest will not be adequately represented by the existing parties. See D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001); New York News, Inc. v. Kheel, 972 F.2d 482, 485-88 (2d Cir. 1992). I find the UFA's motion is timely under Fed. R. Civ. P. 24 and that the UFA has not waited an unreasonable amount of time to apply for intervention. However, I find that the UFA's interest in the litigation, at the liability stage, is not cognizable and, for that reason, it may not join as a defendant at this time.

A proposed intervenor, in order to show sufficient interest in the outcome of the litigation, must demonstrate an interest that is "direct, substantial, and legally protectable." New York News, Inc., 972 F.2d at 486 (quoting Washington Elec. Coop., Inc. v. Mass. Mun.

5

Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)); see also Donaldson v. United States, 400 U.S. 517, 531 (1971) (holding that interest must be "significantly protectable"). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Wash. Elec., 922 F.2d at 97; Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984). "Intervention . . . cannot be used as a means to inject collateral issues into an existing action." New York News, Inc., 972 F.2d at 486 (internal quotation marks omitted); see also United States v. City of N.Y., 198 F.3d 360, 365 (2d Cir. 1999).

The UFA contends that its interest in this litigation is demonstrated by the fact that, "given the assertions of the Complaint that the written portions of Examination Nos. 7029 and 2043 were not job-related and that the rank order hiring system was discriminatory, the UFA has a definite interest in this action and may be negatively affected by an outcome that either diminishes the importance of the written examination or imposes a preferential hiring system that departs from rank order merit selection." (Cassidy Aff. at 9.)

I find that the UFA has failed to meet its burden of showing that Defendant City does not adequately represent its interests in the liability phase of this litigation. The burden of demonstrating the inadequacy of the representation of a proposed intervenor's interests by an existing party rests with the proposed intervenor. While that burden is generally "minimal," Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972), that burden may be "more rigorous" if the proposed intervenor and an existing party share "the same ultimate objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179-80 (2d Cir. 2001). Where such an identity of interest exists, the proposed intervenor must rebut a presumption of adequate

6

representation by the existing party. Id. (citing U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir.1978)).

The UFA has failed to meet its burden. "So long as the representative party will vigorously litigate, a difference in motive does not preclude adequate representation." Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., 96-CV-2064, 1996 WL 346352 (S.D.N.Y. June 25, 1996) (citing Washington Elec., 922 F.2d at 98, and Natural Resources Defense Council, Inc. v. New York State Dep't of Env'tal Conservation, 834 F.2d 60, 62 (2d Cir. 1987)). A threat to firefighter safety threatens public safety and managerial efficiency, interests that the City embraces. The City also faces potential financial exposure if it fails adequately to protect the safety of its employees, particularly those functioning in a high-risk capacity. While issues of pay, seniority and assignments are indisputably important interests of the UFA that the City may not necessarily share, for the liability stage in the litigation, the UFA has not shown that the City does not share the same ultimate objective of the UFA and will not adequately represent the union's interest in safety concerns and managerial efficiency. See Liz Claiborne, Inc., 1996 WL 346352 at *3 (finding a presumption of adequate representation where the union and plaintiff had the same ultimate objective) (citing United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978)); Amato v. Western Union Intern., Inc., 102 F.R.D. 268 (D.C.N.Y. 1984) (denying union right to intervene where any interest local might have had in the action was adequately represented by existing plaintiffs); cf. Ionian Shipping Co. v. British Law Ins. Co., 426 F.2d 186, 191 (2d Cir. 1970) (upholding a denial of intervention where the intervenor and plaintiff both had the same interest in recovering under an insurance policy and the plaintiff arguably had a more powerful incentive as its risk of loss was greater). "Determination of the adequacy of existing

7

representation necessarily involves an assessment of factors which are within the discretion of the district court." U. S. Postal Service v. Brennan, 579 F.2d 188 (2d Cir. 1978) (citing Rios v. Enterprise Association Steamfitters Local Union # 638, 520 F.2d 352, 355 (2d Cir. 1975); Chance v. Board of Education, 496 F.2d 820, 826 (2d Cir. 1974)).

Moreover, safety concerns may not be implicated in this litigation. Defendant City has already administered a different written examination and a different ranking procedure from the one it used in Exams 7029 and 2043, which are the subject of this litigation. The City has already begun a new open competitive examination process. (See Notice of Examination, Firefighter Exam. No. 6019, Second Amended Notice 11/1/06.) The City is no longer using the same method of ranking applicants that it used for the two examinations at issue. (Compare id. with Notice of Examination, Firefighter Exam. No. 7029, Third Amended Notice, 10/17/01.) The eligibility list that resulted from Exam 7029 expired in 2004 (see Answer ¶ 10), and the United States "does not intend to seek preliminary injunctive relief to prevent the City from continuing to hire from the Exam 2043 eligibility list" that expires in May 2008 (Pl. Opposition Brief at 10 n. 9.) Thus, it is not entirely clear whether the UFA's members' safety would be endangered by a determination that the practices challenged by the United States in this case are neither job related nor consistent with business necessity since the tests at issue in this litigation are no longer being used.

Even if the UFA's alleged interest would not be adequately represented by existing parties, as indicated above, I would still deny its motion to intervene because the UFA has not identified a direct legal interest in the liability phase of this case. It simply cannot be held liable for the City's use of the practices challenged by the United States. Plaintiff cannot even sue UFA

under § 707 of Title VII because UFA is not a state or local governmental entity. See 42 U.S.C. § 2000e-6. As the UFA itself concedes: "The UFA was not, in any way, involved in the formulation of the two examinations in question. Nor was the UFA involved in the creation of the rank order hiring lists resulting from those tests." (Cassidy Aff. at 9-10.)

At this stage, having had no role in the creation or use of these exams and being a party that the United States may not sue under this statute, the UFA may not legally be exposed to damages. I agree with Plaintiff that the UFA's "assertion boils down to an argument that relief that may be obtained by the United States in a settlement (or in a litigated relief proceeding) may be adverse to the interests of the UFA's members," (Pl. Opposition Brief at 11 (footnote and emphasis omitted)), and that such an assertion cannot support intervention in this first liability phase.

That said, the court recognizes that a large component of the important work of unions is to deal with the health and safety of their constituents. Plaintiff United States has argued that firefighter safety concerns are not implicated in this litigation, but the UFA has argued otherwise. What is undisputed is that this union represents thousands of brave individuals who risk their lives each day for their fellow New Yorkers. Hence, to the extent that firefighter safety is involved in this case, I can see no reason why the court would not involve this union in determining how best to effectuate firefighters' important concerns. Firefighters have a critical perspective on what it means to undertake risk, and it is one that the court values. The exquisite nature of this representative responsibility is underscored by our collective memory of the catastrophe of September 11, 2001 during which 343 firefighters lost their lives and, more recently, the loss of two firefighters in a fire last month at the building demolition site located at

130 Liberty Street in Manhattan. Thus, the court will consider briefings by the UFA even in the initial liability phase of this action as *amicus curiae*. See, e.g., United States v. Ahmed, 788 F. Supp. 196, 198 n. 1 (S.D.N.Y. 1992) ("District courts have broad discretion to permit or deny the appearance of amici curiae in a given case"); accord United States v. Gotti, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991). Inviting the UFA to participate as a friend of the court will allow the presentation of potentially divergent professional viewpoints regarding issues raised by this litigation, particularly the safety of firefighters.

I hereby direct the Clerk of Court to place the UFA on the court's electronic filing system as part of this case so it may receive and view all the parties' filings and make filings as a friend of the court. Secondly, if circumstances of the litigation change such that it would become appropriate for the UFA to intervene in the liability phase as a party defendant, I grant the UFA leave to reapply to the court. Finally, and importantly, because the UFA clearly has an abiding interest in the implementation of a remedy, I want to make it clear that the court would be reluctant to approve any settlement containing any remedy that affects the safety of the firefighters without the participation of the UFA. This union deserves a place at the bargaining table.

### B. Permissive Intervention

In the alternative, UFA seeks intervention by permission under Rule 24(b)(2), which states in pertinent part that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." An application for permissive intervention requires the court to consider "substantially the same factors" as does an application for intervention as of right. See In re

10

Bank of N.Y. Derivative Litigation, 320 F.3d 291, 300 & n. 5 (2d Cir. 2003). Permissive intervention, however, is committed to the discretion of the trial court. See Brennan, 579 F.2d at 191. Rule 24(b) and decisions of the Second Circuit direct a court to consider a variety of factors in addition to those considered under Rule 24(a)(2) in exercising that discretion. These include whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med., 797 F.2d 85, 89 (2d Cir. 1986); Ass'n of Conn. Lobbyists LLC v. Garfield, 2007 WL 613856, at *2 (D. Conn. Feb. 27, 2007). Thus, the discussion above of the factors considered under Rule 24(a)(2) would generally control whether to allow UFA to intervene by permission, and I deny the UFA's request for the reasons set forth above.

### C. Intervention in Next Phase

I will not, at this time, rule on whether the UFA may intervene in the remedy stage of these proceedings, if one occurs. I note that the parties agree that UFA should be allowed to join as a non-liability party under Fed. R. Civ. P. 19(a)[1] "because some forms of relief sought by the United States, such as retroactive seniority, may affect rights and obligations of the UFA's

---

[1] Rule 19(a) provides as follows in pertinent part:

> A person . . . shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring . . . inconsistent obligations by reason of the claimed interest.

11

members under the union contract." (Pl. Opposition Br. at 2 (footnote omitted).)

In a bifurcated case, determining whether an entity has a right to intervene involves a two-part analysis: whether the proposed intervenor has the right to "(1) intervene in the liability stage; or (2) participate in the remedy stage." See, e.g., Brody v. Spang, 957 F.2d 1108, 1116 and 1124 (3d Cir. 1992) (denying intervention in liability stage but remanding for determination on whether intervenors had a legally cognizable interest in relief phase). The Second Circuit has affirmed a decision to grant intervention only in the portion of a case in which the intervenor has a legally cognizable interest. United States v. Yonkers Bd. Of Educ., 801 F.2d 593, 596 n.6 (2d Cir. 1986) (discussing with approval district court's decision to delay intervention until a proposed relief plan was submitted to the court and it became apparent that the proposed remedy could implicate the intervenor's rights)).

As discussed above, I agree with Plaintiff that the UFA "has not identified any substantial and direct interest in the liability phase of this case. In this regard, it should be recognized that the UFA cannot be held liable for the City's use of the practices challenged by the United States." (Pl. Opposition Br. at 8.) As Plaintiff argues, the United States has no authority to sue UFA under § 707 of Title VII because UFA is not a state or local governmental entity (id. (citing 42 U.S.C. § 2000e-6)) and because no charge of discrimination against the union has been referred to the United States (id. at 8-9 (citing 42 U.S.C. § 2000e-5(f)(1)).

However, it may be that the UFA does have a financial interest in the outcome of the case, as the UFA has an interest in the seniority rights of its members under the collective bargaining agreement between the UFA and the City. See Brennan, 260 F.3d at 131 (proposed intervenors' seniority rights constitute an interest relating to the settlement agreement that is not

too remote or speculative). Incumbent firefighters' seniority rights may be affected in this case because individuals given hiring relief may be granted retroactive seniority. The UFA has an interest in such relief. The United States has acknowledged "that the City's interest in the relief phase of this case may not coincide with the UFA's interest in protecting the seniority rights of incumbent firefighters." (Id. at 13-14.)

Accordingly, I grant the UFA leave to renew its intervention motion should it become appropriate at a later date.

### III. Intervention by the Vulcan Society and Three Individuals Seeking to Represent a Certified Class as Party Plaintiffs

By letter motion dated July 17, 2007, the Vulcan Society and three individuals, Nunez, Gregg, and Haywood, who seek to represent a certified class (collectively "Individuals"), move to intervene as plaintiffs. The Vulcans and Individuals seek to intervene as of right, pursuant to Section 706(f) of Title VII. That statute reads in pertinent part:

> In the case of a respondent which is a government, governmental agency, or political subdivision, if the [Equal Employment Opportunity Commission ("Commission")] has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision.

42 U.S.C. § 2000e-5(f)(1). Because the EEOC – and subsequently the Department of Justice – elected to bring suit, the Vulcans and Individuals have the statutory right to intervene if they are

found to be aggrieved parties.[2] See Fed. R. Civ. P. 24(a); 42 U.S.C. § 2000e-5(f)(1). Thus, an "aggrieved person" may intervene in an enforcement action brought under Title VII by the government. See also EEOC v. Service Systems Corp., 83-CV-766, 1983 WL 576, at *1 (W.D.N.Y. Aug.5, 1983) ("It is well-established that an 'aggrieved person' may intervene in an enforcement action brought under [§ 2000e-5] by the EEOC."). Defendant City has opposed this motion to intervene to the extent that the Vulcans and Individuals "wish to assert additional claims with different legal theories against defendant." (Docket Entry # 33.)

Furthermore, the proposed plaintiff-intervenors seek to expand the nature of the claims and relief sought in the case. Specifically, in addition to the Title VII disparate impact claims alleged by the United States, the proposed Complaint in Intervention alleges that the City has engaged in intentional discrimination in violation of Title VII, 42 U.S.C. §§ 1982 and 1983 and various state and local laws.

### A. The Parties

The Vulcans are "an organization of black firefighters first constituted in the 1940s in response to what was then quite blatant and open discrimination against firefighters of color." (Intervenor's Compl. ¶ 18.) "[O]ver the years, the Vulcans have been the primary voice within the FDNY challenging discrimination in hiring and at the workplace against minority firefighters." (Id.) The Vulcans filed the EEOC charge underlying this case in August 2002. (Id. ¶ 19.)

---

[2] The Vulcans and the Individuals do not have a right-to-sue-letter from the EEOC as would typically be required in a Title VII suit. Under such circumstances, receipt of a right-to-sue letter is not a jurisdictional prerequisite. See General Tel. Co. v. EEOC, 446 U.S. 318, 326 (1980).

Nunez is a 31-year-old Black and Latino man who registered and sat for the December 2002 written exam. (Id. ¶ 21.) He received a passing raw score of 81.176 and an adjusted score of 83.529 on the written exam, and a "perfect 100"on the physical agility test, for an overall score of 94.199. (Id.) Nunez is currently number 5003 on the list of eligibles. (Id.)

Gregg is a 32-year-old black man who registered and sat for the December 2002 written exam. (Id. ¶ 22.) He received a passing raw score of 78.823 and a "perfect 100" on the physical agility test, for an overall score of 91.107. (Id.) Gregg is currently number 6017 on the list of eligibles.

Haywood is a 26-year-old black man, who sat for the December 2002 written exam. (Id. ¶ 23.) He received a raw score of 70.588 and an adjusted score of 85.713 and a "perfect 100" on the physical agility test. (Id.) His papers do not indicate what his final overall score was, but they indicate that he was placed at number 6990 on the list of eligibles. (Id.) The Individuals filed EEOC complaints in February 2005. (Id. ¶ 6.)

The Individuals "seek to represent a certified plaintiff class consisting of all black individuals who are, sought to or will seek to become firefighters employed by the FDNY who have been or will be subjected to discrimination on the basis of color, race, or national origin because of the unlawful criteria and selection process utilized by Defendants." (Intervenor's Compl. ¶ 11.) The Individuals argue:

> The members of this class are too numerous to be joined in one action. There are approximately three hundred thirty five (335) black employees of the FDNY, many of whom were and continue to be affected by the fact that they were delayed and impeded in their ability to obtain employment with the FDNY, and thousands of others who were prevented or discouraged from obtaining or seeking such employment because of the discriminatory

15

> conditions, criteria and practices of the FDNY in their hiring process. Most, if not all, of the currently-employed black firefighters are members of the Vulcan Society. On information and belief, many of those individuals were victimized by Defendants' practices, and many of those who are still seeking employment and/or who have been adversely affected by these practices are hesitant to bring individual claims for fear of retaliation and reprisal by Defendants.

(Id. ¶ 4.)

### B. Intervention Standard

Rule 24(a)(1) provides that "[u]pon timely application anyone shall be permitted to intervene in an action . . . when a statute of the United States confers an unconditional right to intervene." Fed. R. Civ. P. 24(a)(1). Title VII of the Civil Rights Act of 1964 provides such an unconditional right: "the person or persons aggrieved shall have the right to intervene in a civil action by the [EEOC]." 42 U.S.C. § 2000e-5(f)(1). See also Spirt v. Teachers Ins. and Annuity Assoc., 93 F.R.D. 627, 640 (S.D.N.Y. 1982) ("Title VII does confer upon certain persons an unconditional right to intervene in an enforcement action brought by the EEOC"), rev'd in part on other grounds, 691 F.2d 1054 (2d Cir. 1982); EEOC v. Die Fliedermaus, LLC, 77 F. Supp. 2d 460, 469 (S.D.N.Y. 1999) ("Title VII does not foreclose an individual claim simply because the action was instituted by the EEOC. Rather 'the EEOC's civil suit [is] intended to supplement, not replace, the private action.'") (quoting General Tel. Co. v. EEOC, 446 U.S. 318, 326 (1980)). The term "person aggrieved" in 42 U.S.C. § 2000e-5(f)(1) includes those who filed a charge with the EEOC. See Spirt, 93 F.R.D. at 640-41.

### C. Analysis

Importantly, Defendant City does not dispute the unconditional right of the Vulcans and

16

Individuals to intervene in this action with regard to the Title VII disparate impact claim raised by the United States. (See Defendant's Opposition to Motion to Intervene by Vulcan Society and Individuals ("Def. Opp. Br.") at 7 ("Defendant does not challenge the timeliness of Proposed Plaintiff-Intervenors' application. Defendant also concedes that, as the charging parties in the underlying EEOC proceedings, Proposed Plaintiffs-Intervenors have an interest in the disparate impact claims asserted in this action.") (Docket Entry #33).) Defendant argues that the proposed plaintiff-intervenors "are not actually seeking to intervene *in this action*." (Id. at 7 (emphasis in original).) I reject that characterization.

In this case, the United States, the Vulcans, and the Individuals plead a single set of operative facts underlying conduct by the City. Indeed, the proposed intervenors are attempting to show that the City had direct knowledge, for years, of the written examinations' disparate impact on Black applicants for the position of entry-level firefighter and continued to use the same allegedly discriminatory examinations with intentional or reckless disregard as to the impact on Black applicants. Thus, in this case, the court must first find that the exams caused a disparate impact in order to rule for the proposed plaintiff-intervenors' disparate treatment claim. See EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458, 461 (E.D.N.Y. 2006) (granting an individual's motion to intervene in a Title VII action and to add additional defendants and state and city law claims because the additional "claims against the defendant . . . derive from the same operative facts that form the basis of this action"); EEOC v. Die Fliedermaus, 77 F. Supp. 2d 460, 469-70 (S.D.N.Y. 1999) (consolidating Title VII and § 1981 claims in the same action).

Proposed plaintiff-intervenors argue that they "will pursue their Title VII disparate impact

17

claims alongside the United States from discovery through trial.  If, at that point, the Court does not find disparate impact, the case is over from the perspective of all parties.  If, however, there is a finding of disparate impact . . . Plaintiffs-Intervenors would then try the issue of disparate treatment[.]" (Proposed Plaintiffs-Intervenors' Reply Memorandum of Law in Further Support of their Motion to Intervene ("Proposed Intervenors' Reply Memorandum") at 3.)

Furthermore, Defendant and proposed plaintiff-intervenors have both agreed to waive their right to a jury trial, and the United States does not oppose their intervention.  As the Vulcans and Individuals note: "[I]t is expected that disparate treatment discovery would not likely involve, or involve only minimal use of, expert witnesses or statisticians, whose reports are time-consuming to compile, review, and rebut. . . . Discovery on Plaintiffs-Intervenors' disparate treatment claims will be conducted entirely within the discovery schedule already agreed-to [sic] by the parties and approved by the Magistrate Judge, thereby preventing delay during the discovery phase."  (Id. at 4.)

In this case, it is undoubtedly true that the proposed plaintiff-intervenors will bring additional claims into the litigation, but it is not expected to change the litigation radically.  See Washington Elec. Coop., Inc. v. Mas. Municipal Wholesale Elec. Co., 922 F.2d 92 (2d Cir. 1990).  In Washington Elec., the Court noted that the purpose of Fed. R. Civ. P. 24 is to "prevent a multiplicity of suits where common questions of fact or law are involved." Id. at 97.  The Court ultimately upheld the denial of the potential plaintiff's intervention motion, and Defendant cites this case for the proposition that intervenors must take the pleadings as they find them; however, the court found that the motion would change the case "radically."  Here, intervention would present no such difficulties and would, in fact, satisfy the Court of Appeals' concern that

18

multiple suits would stem from this case, where, without a doubt, common questions of fact and law are involved. As the Vulcans and Individuals write, "Plaintiffs-Intervenors are taking the pleadings as they find them, as the City argues that they must, and are simply seeking to raise one additional question for the Judge: Did the proposed Defendants' knowledge of ongoing disparate impact, and their repeated failures to respond to requests for relief from harmed parties and others, constitute disparate treatment, for which additional remedies may be available?" (Proposed Intervenors' Reply Memorandum at 6.) I agree with the proposed plaintiff-intervenors that these issues are closely interconnected and that the parties and court would benefit greatly by hearing them in a common forum.

Finally, I address a point raised by the City in its opposition to the Vulcans' and Individuals' motion to intervene, namely that their claims are time-barred because the "Vulcan Society did not file EEOC charges within 300 days of the release of the results of Exam 7029 and consequently, this Court will lack jurisdiction to hear its Title VII claims with respect to Exam 7029." (Def. Opp. Br at 10 n. 4.) I agree with the Vulcans and Individuals that the City may raise these issues in the form of a motion to dismiss or a motion for summary judgment but that these issues are not properly before the court at the present time. For purposes of the present intervention motion, I find that issues of timeliness and amenability to suit are not at issue at this stage in the litigation, before an Intervenors' Complaint has even been filed. See Zipes v. Trans World Airlines, Inc., 455 U.S. 285, 393 (1982) (charge being filed in a timely manner is not a jurisdictional prerequisite); Francis v. City of New York, 253 F.2d 763, 766-68 (2d Cir. 2000) ("presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court").

Accordingly, I do not reach the question of whether the Vulcans' and Individuals' claims are time-barred in deciding on this intervention motion.

Thus, the motion to intervene by the Vulcan Society, Haywood, Nunez, and Gregg is GRANTED. Finally, at this time, I do not consider the issue of class certification as no such motion is currently before the court.

### III. CONCLUSION

For the foregoing reasons, I GRANT Plaintiff's uncontested motion to bifurcate all proceedings in this case into a liability phase and, if necessary, a relief phase. Furthermore, for the liability phase, the UFA's motion to intervene is DENIED; however, recognizing the important work this union undertakes and the critical perspective it brings to this litigation, the court the court invites the UFA to participate in the first phase as a friend of the court. I hereby direct the Clerk of Court to place the UFA on the court's electronic filing system as part of this case so it may receive and view all the parties' filings and make filings as a friend of the court. The motion to intervene by the Vulcan Society, Nunez, Gregg, and Haywood is GRANTED. At this time, the court does not consider the class certification issue for Nunez, Gregg, and Haywood.

SO ORDERED.

Dated: September 5, 2007        /s Nicholas G. Garaufis  
Brooklyn, N.Y.                   NICHOLAS G. GARAUFIS  
                                   United States District Judge