**U.S. Department of Justice**

Civil Rights Division

---

JMG:SAS:CG:ES:DNR:CW
DJ 170-51-358

*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp*

April 1, 2008

Magistrate Judge Roanne L. Mann
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:    Motion for Sanctions in <u>United States v. City of New York</u>, 07-CV-2067 (NGG) (RLM)
             **EXPEDITED CONSIDERATION REQUESTED**

Dear Magistrate Judge Mann:

      The United States has been forced to again seek relief from this Court because of the City's ongoing failure to produce relevant documents, in violation of this Court's orders, resulting in delays in discovery and prejudice to the United States. The United States respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), issue an order:  (1) directing that it is established for purposes of this action that use of Written Exam 6019 in place of Written Exams 7029 and 2043 would have resulted in less disparate impact upon black and Hispanic candidates, and that Written Exam 6019 is at least as job related as Written Exams 7029 and 2043; (2) precluding the City from relying on any documents relating to the job relatedness of Written Exam 7029 or 2043, or the manner in which they were used as part of Exams 7029 and 2043, that the City has not produced to the United States as of April 8, 2008; and (3) modifying the current scheduling order as set forth in Ex. A.

      As the Court is aware, once the United States establishes that the City's challenged employment practices have resulted in disparate impact, the City must prove that those practices are job related and consistent with business necessity. 42 U.S.C. § 2000e-2(k)(1)(A)(i). If the City somehow could establish job relatedness/business necessity, the United States still would prevail by establishing the existence of a less discriminatory alternative employment practice that the City refused to adopt. 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

      Representatives of the City have asserted publicly that this action should not have been brought because the City has improved its firefighter selection process. One of the principal changes has been the replacement of the previous cognitive written examinations with Written Exam 6019, which, in addition to a cognitive component, includes measures of many non-cognitive/personality attributes necessary for successful performance as an FDNY firefighter. Nonetheless, the City previously rejected the United States' proposal that the parties resolve their discovery disputes regarding Exam 6019 by stipulating to the facts the United States requests that the Court deem established. <u>See</u> Ex. B. Thus, it appears that the City will argue that Written Exam 6019, developed by Dr. Catherine Cline and Dr. Philip Bobko, one of the City's expert witnesses, results in <u>at least as much disparate impact</u> as Written Exams 7029 and 2043 and/or is <u>less job related</u> than those written examinations.

      Information and documents obtained in discovery suggest that, to the contrary, Written Exam 6019 results in <u>less disparate impact</u> and is <u>more job related</u> than Written Exams 7029 and 2043. Accordingly, the United States may assert that use of Written Exam 6019 (or a similar examination) in place of Written Exams 7029 and 2043 is a less discriminatory alternative employment practice. The reports of the United States' experts with respect to alternatives currently are due on April 14, 2008. <u>See</u> Ex. C (Doc # 86), ¶ 6. The City continues to withhold documents and information relevant to the United States' experts' opinions regarding the job relatedness and disparate impact of Written Exam 6019. Indeed, the United States three times was forced to move to compel, <u>inter alia</u>, documents and information related to Exam 6019. Each of those motions was granted in whole or in part. In its order entered March 10, the Court granted the United States' second motion to compel, which had

asked the Court to order the City to produce "documents relating to Written Exam 6019 . . . that were reviewed, generated, consulted, relied upon or received by" Dr. Bobko, and to "provide complete responses to" certain discovery requests "to the extent they seek information and documents related to Exam 6019." Doc. # 77, p. 1. In granting the United States' motion, the Court ordered the City to produce documents related to Exam 6019 to the United States by March 11, 2008. Doc. # 82. The documents sought included Dr. Cline's and Dr. Bobko's documents related to Exam 6019. On March 11, the City provided a CD containing documents from Dr. Cline's electronic files. In violation of the Court's March 10 order, the City did not produce various documents and information, including the Exam 6019 eligibility list and the information necessary to read and understand Dr. Cline's electronic files. This led to the United States' third motion to compel, filed on March 20. See Doc. # 89, pp. 3-4.

Since Dr. Bobko's deposition was scheduled to begin five days after the third motion to compel was filed, one of the most urgent deficiencies in the City's March 11 production appeared to be that the City had not produced any documents related to Exam 6019 from Dr. Bobko's files, although he was involved in every step of the development and validation of Written Exam 6019. After the City repeatedly refused to state clearly whether the City had produced to the United States all documents generated, reviewed or received by Dr. Bobko relating to Exam 6019, the United States, in its March 20 motion, requested that the Court order the City to: "(1) produce immediately all documents retained by its experts relating to Exam 6019 . . . ; or (2) immediately inform the United States clearly that no such documents exist." Doc. # 89, p. 1. The Court considered the motion on an expedited basis and held a telephonic hearing on March 20. During the hearing, the Court asked counsel for the City to state clearly whether the City had produced all Exam 6019 documents in the possession of the City or its expert witness:

THE COURT: . . . So let's move on to . . . [t]he United States' request that the court order the City to produce all documents retained by its experts relating to exam 6019 . . . or to immediately inform the United States clearly that no such documents exist. . . .
MS. PESTANA: No such documents exist. We've given them all we have; all that Dr. Bobko has. I believe they have everything that Dr. Cline has. I don't believe that there is another piece of paper, or electronic file that they don't have.
THE COURT: So when you say "we," you're talking about within the custody, care or control of the City, as well as the witness?
MS. PESTANA: Drs. Bobko and Cline, yes.

Ex. D, pp. 15-16 (emphasis added).[1] The Court accepted the City's representation and considered the issue resolved. Id., p. 16.

However, on the afternoon of Friday, March 21, with the continuation of Dr. Cline's deposition scheduled to begin at 9:30 a.m. on the following Monday, the City produced additional documents from Dr. Cline's files that relate to Exam 6019. Ex. E. Thus, contrary to the representations that the City made to this Court one day earlier, the City had not previously produced all of Dr. Cline's documents concerning Exam 6019. Moreover, on March 24, Dr. Cline testified that she had retained drafts of reports that she and Dr. Bobko prepared and that the draft reports were not produced to the United States because counsel for the City had told her that they were privileged and should be withheld. Ex. F, pp. 224-26, 236-37. These drafts apparently include Dr. Cline's first drafts. Id., pp. 152-53. When Dr. Cline was asked by counsel for the Plaintiffs-Intervenors when counsel for the City had told her to withhold the documents, she responded that, during a break in the deposition that day, one of the City's attorneys had again told her that the documents were privileged and not to be disclosed. Id., pp. 244-45. At the conclusion of the deposition, counsel for the City nonetheless maintained that the drafts that Dr. Cline had testified

---

[1] Dr. Bobko's and Dr. Cline's names are misspelled in the transcripts of the March 20, 2008 hearing, as well as a telephonic hearing held on March 7. See, e.g., Ex. D, p. 16. To avoid confusion, the United States has corrected the spelling in quotations from the transcripts.

2

were in her possession were "hypothetical" Id., pp. 283, 290. However, counsel admitted that, if the documents exist, they should have been produced to the United States or listed on a privilege log. Id., pp. 287-89. The City already had provided a privilege log for other materials from Dr. Cline's files. See Ex. G.

The following day, counsel for the City admitted that the documents are in the possession of the City's employee, Dr. Cline, and were neither produced nor identified on a privilege log:

> Some of [Dr. Cline's] drafts contain attorney work product and attorney-client communication. . . .[and] will not be produced. . . . Later this week we will provide you with a privilege log. Moreover, none of the drafts will be produced . . . It is our understanding of the Magistrate Judge's [March 10] order that you were to be provided with final copies of the reports. Only if those final documents could not be provided by March 11th were drafts to be produced. . . . Therefore, defendant was not obligated to provide drafts and will not do so.

Ex. H.

The City's current contentions are incorrect. The documents are not privileged and do not constitute attorney work product. Neither Dr. Cline nor Dr. Bobko is an attorney. Dr. Cline is an employee of the City's Department of Citywide Administrative Services ("DCAS") responsible for developing examinations. See, Ex. F, pp. 159-60. Dr. Bobko is an independent consultant who was retained by the City to develop Exam 6019. See Ex. I. They produced the draft reports in order to develop Exam 6019 and document the development of that exam, and not for purposes of this litigation. See Fed. R. Civ. P. 26(b)(3)(A). It bears noting that Dr. Cline testified that she was directed not to communicate directly with Dr. Bobko as she normally would have in developing and documenting an employment examination. See Ex. F, pp. 154, 160-62. Rather, Georgia Pestana, one of the City's attorneys, apparently served as a conduit for Dr. Bobko's input concerning the development of Exam 6019. Id., pp. 150-53. Moreover, it appears that Dr. Cline provided at least one draft of the Exam 6019 test development report to other DCAS employees before sending it to Ms. Pestana. See Ex. J. Finally, the draft reports are not protected as work product for an additional reason – Dr. Bobko is one of the City's expert witnesses in this action. See Manufacturing Admin. & Mgmt. Sys. v. IGT Group, 212 F.R.D. 110, 115-17 (E.D.N.Y. 2002).

On March 26, 2008, the United States and the Plaintiffs-Intervenors telephonically contacted attorneys for the City. In an attempt to resolve the matter without seeking further action by the Court, the United States suggested that, to the extent that the documents contained any core attorney work product (i.e., the strategies or impressions of counsel), the City redact those portions of the documents. The City refused, stating that the draft reports include comments written by Georgia Pestana, and that "the comments of Georgia Pestana and those of Dr. Bobko are integrated beyond extraction." Ex. K (emphasis added). Even if true as a factual matter, these assertions in no way affect the conclusion that the draft reports are subject to discovery. See Sparks v. Seltzer, 2007 WL 295603 at *1 (E.D.N.Y. 2007). Most importantly, the City has waived any claim of work product and attorney-client privilege by not timely asserting such a claim and identifying the draft reports in a privilege log. See Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 236 (E.D.N.Y. 2007).

The City also misconstrues the Magistrate Judge's March 10 order granting the United States' March 4 motion to compel. During the telephonic hearing on March 7, the Court addressed one particular document, the test development report regarding Exam 6019. The City had long represented to the United States that Dr. Cline was working on a draft of that report, and that the City would produce the report when it was completed. See Ex. L, p. 1; Ex. M, p. 3. During Dr. Cline's February 21 deposition, Dr. Cline testified that she was waiting for some minor information from the City that she needed to complete her report. See Ex. N, pp. 17-18. In that context, the following exchange occurred during the March 7 hearing:

MR. FRAENKEL:   Your Honor, they do have the test development report, or at least one chapter of it, and the job analysis for that. That would be the basis for someone to be able to question the experts concerning it.

3

| | |
|---|---|
| MS. SEELEY: | Your Honor, that's incorrect. We don't have a chapter of the test development report, and even if we did, one out of six chapters is not sufficient. |
| THE COURT: | Well, I agree and . . . since apparently the timing of the completion of this report is within the City's control, it may suggest that the existing draft ought to be turned over. . . if the [United States is] entitled to this document, but it just hasn't been completed because there's information within the City's control that has not yet been provided to the person finalizing the exam, then maybe the draft has to be turned over. |

Ex. O, p. 14-15. The Court's statement that the City would have to produce a particular draft of one document cannot reasonably be read as a ruling that it did not have to produce any other drafts of admittedly relevant documents that were shared with the City's expert. The Court's March 10 written order included no such ruling. See Doc. # 82. Moreover, the drafts are of particular importance because the City claims that Dr. Bobko did not retain any documents of his own.[2] The City's assertion that "the drafts are not necessarily reflective of the final examination that was given" misses the point. The drafts reflect Dr. Bobko's analyses and comments about the development of Exam 6019, and that is sufficient to meet the relevance standard of Rule 26.

By failing to produce all relevant documents concerning Written Exam 6019 in violation of prior Court orders, the City has made it impossible for the United States to prepare to depose Dr. Bobko and develop its position with respect to alternative employment practices. The Court should therefore issue an order directing that it be established for purposes of this action that Written Exam 6019 would have resulted less disparate impact than and is at least as job related as Written Exams 7029 and 2043.

The United States also requests that the Court issue an order precluding the City from relying on any documents responsive to the United States' discovery requests concerning the job relatedness of Written Exam 7029 or 2043, or the manner in which the City used them as part of its selection process, that are not produced within one week after the filing of this motion, so that the City – and not the United States – will pay the price for further evasions and delays. On August 9, 2007, the United States served on the City document requests that, collectively, sought all documents relating to the job relatedness/business necessity of those examinations. Ex. P, Request Nos. 53-79 and 96. As the United States explained in its first motion to compel, documents relating to Written Exam 6019 are relevant not only to the issue of alternatives, but also to Dr. Bobko's opinions regarding

---

[2] In her February 21 deposition, Dr. Cline testified that Dr. Bobko reviewed and provided input into draft reports relating to Exam 6019. Ex. N, pp. 20-21. That testimony was confirmed by Dr. Bobko's invoices, many of which the City produced only on March 18, 2008. See, e.g., Ex. I, pp. NYCEXPERT 0000371, 0000380-81. During the March 20 hearing, counsel for the City stated that Dr. Bobko did not retain any documents he generated, received or reviewed in connection with his work on Exam 6019. When asked by the Court whether counsel for the City knew whether Dr. Bobko "may have disposed of certain documents," counsel for the City responded: "We've learned that Dr. Bobko doesn't keep very much, but I do know from looking at the materials that were produced to the United States after the March 11th order [that] what was in those files were documents that he sent back to Dr. Cline. So he sent back a lot of his materials to Dr. Cline and they were in her file. He says he has nothing – he didn't keep anything else." Ex. D, p. 16 (emphasis added). Indeed, a few minutes later, when counsel for the United States referred to the documents "[t]he City said [are] in Dr. Cline's files," counsel for the City stated, "I can tell you what the Bate stamp numbers are . . . ." Id., p. 19. During the continuation of Dr. Cline's deposition on March 24, the United States requested that the City identify by Bates number the documents Dr. Bobko had "sent back" to Dr. Cline. Ex. F, p. 158. Counsel for the City, who was present during the hearing on March 20, responded: "Absolutely, certainly." Id. However, on March 27, the City stated: "After conferring with both Drs. Bobko and Cline, both have assured me that with the exception of one document, Dr. Bobko never forwarded or provided any documents to Dr. Cline. The lone document which Dr. Bobko did send Dr. Cline consists of 4 paragraphs . . ." Ex. K (emphasis added).

4

the job relatedness of the very different examinations previously used by the City. Doc. #63, pp. 2-3. Even aside from documents relating to Exam 6019, many other responsive documents have been produced by the City months late, often only after the existence of the documents has been revealed by a witness during a deposition and the United States then has made a specific written request for the documents. See, e.g., Ex. Q, pp. 3-4; Ex. R, p. 2; Ex. S, p. 2; Ex. T, p. 4. At least one such document specifically requested by the United States, the evaluation form(s) used by the City to conduct annual evaluations of incumbent firefighters, see Ex. S, p. 2, has never been produced. Moreover, amidst the thousands of pages of documents produced by the City on March 11, 2008, were documents directly relevant to the job relatedness of the City's use of Exams 7029 and 2043. See, e.g., Ex. U; Ex. V. One of these documents alludes to a DCAS survey apparently conducted by DCAS in 2005 to "determine the weight of cognitive abilities vs. physical abilities in the job of firefighter," Ex. V, p. 2, which clearly is relevant to the job relatedness of the way in which the City combined scores Written Exams 7029 and 2043 with physical examination scores for purposes of ranking. The City has produced no documents related to that survey. In order to prevent further delay in the production of documents responsive to the United States' discovery requests related to the job relatedness of Written Exams 7029 and 2043, and resulting prejudice to the United States, the United States requests that the Court preclude the City from relying on any such documents not produced by April 8, 2008.

With respect to the requested modification of the discovery schedule, at the conclusion of the March 20 hearing, the Court directed the parties to cooperate to modify the discovery schedule by agreement so that the United States would not be required to take the depositions of Dr. Bobko and the City's other expert, Dr. F. Mark Schemmer, who submitted a joint report with Dr. Bobko, without having an opportunity to review and discuss with its experts documents related to Exam 6019. After the hearing, the United States immediately discussed with the City rescheduling the depositions to the week of March 31. See Ex. W. That subsequently became impossible when Dr. Cline revealed during her March 24 deposition that additional documents concerning Exam 6019 have not been produced. Those documents still have not been produced, and, in part because of that fact, Dr. Cline's deposition remains uncompleted. The United States is aware of and shares the Court's desire that discovery in this case be conducted expeditiously. As the Court knows, the discovery schedule always has been very ambitious for a case of this nature, and the expert discovery deadlines could be met only if the City timely responded to discovery requests and complied with the Court's orders. The City has not done so. The United States requests that the Court enter one of the proposed modified schedules set forth in Ex. A. Under the proposed schedule set forth in Ex. A-1, the July 29 (and, if necessary, July 30), 2008 settlement conference will still occur as currently scheduled. All expert reports will have been submitted and all expert depositions will have been completed before that date, so that the parties will have the information necessary to develop their settlement positions and to agree to an appropriate settlement, if one can be reached. However, discovery will continue for a short period following the settlement conference. This will allow the parties until August 25, 2008 to complete "clean-up" discovery following the last of the expert depositions. A small amount of fact discovery often is necessary in light of the expert deposition testimony. Under the alternative proposed schedule set forth in Ex. A-2, discovery also will continue until August 25, 2008 to allow for such discovery. However, under this schedule, the settlement conference would be rescheduled and held in early September, or at Your Honor's earliest convenience following the close of discovery. The proposed alternative modifications to the schedule are justified by the severe prejudice to the United States that otherwise will result.

As counsel for the United States stated during the March 7 hearing, the United States has been "aiming at a moving target" for months. Ex. O, p. 7 The City's delays and evasions continue, and the prejudice to the United States continues to mount. Given the City's pattern of conduct with respect to documents relating to Exams 7029, 2043 and 6019, including its failure to timely provide relevant documents even after the Court ordered their production, the United States asks that the Court issue an order: (1) directing that it be taken as established for purposes of this action that use of Written Exam 6019 in place of Written Exams 7029 and 2043 would have resulted in less disparate impact upon black and Hispanic candidates and that Written Exam 6019 is at least as job related as Written Exams 7029 and 2043; (2) precluding the City from relying on any documents relating to the job relatedness of Written Exam 7029 or 2043, or the way in which the City used each, that the City

5

has not produced to the United States by April 8, 2008; and (3) modifying the current scheduling order as set forth in Ex. A-1 or, alternatively, A-2.

                Sincerely,

                John M. Gadzichowski
                Acting Chief
                Employment Litigation Section

By:

                /s Sharon Seeley
                Special Litigation Counsel
                Employment Litigation Section
                (202) 514-4761

                Benton J. Campbell
                United States Attorney

By:

                /s Elliot M. Schachner
                Assistant U.S. Attorney
                (718) 254-6053