IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                    Plaintiff,

        -and-

THE VULCAN SOCIETY, INC., ET AL,              Civil Action No. 07-CV-2067
                                                          (NGG)(RLM)
                        Plaintiffs-Intervenors,
                                                          ECF Case
        -against-

THE CITY OF NEW YORK, ET AL,

                                  Defendants.
------------------------------------------------------------------X

STATE OF NEW YORK    )
                                 ) ss.:
COUNTY OF NEW YORK  )

### AFFIDAVIT OF JOEL P. WIESEN, PH.D.

    I, JOEL P. WIESEN, being duly sworn state the following:

    1.    I have been retained by counsel to the plaintiffs-intervenors in this matter for the purpose of studying the adverse impact of several components of the New York City Fire Department's ("FDNY") open competitive examination processes 7029 and 2043, as well as the job relatedness and validity of Exams 7029 and 2043.

    2.    A true and correct copy of my Expert Report Concerning a Study of Possible Adverse Impact of the 1999 and 2002 Examinations for Firefighter, NYC Fire Department, as corrected January 4, 2008, hereinafter "Report," is annexed hereto as Ex. A. The Report includes my current resume and a list of my publications.

    3.    After analyzing Exam 7029 and Exam 2043, I concluded that both had practically and highly statistically significant adverse impact against black test takers in, among other areas,

(1) passing the written tests, (2) rank on the resulting eligibility lists, and (3) ultimate appointment to firefighter positions. Report at 4. Indeed, I am advised by counsel that the City, in response to a Request for Admissions propounded by Plaintiff United States, has admitted statistically significant adverse impact against black test takers in their pass rates on both Exams 7029 and 2043. See Ex. 1 to the Declaration of Richard A. Levy, dated April 10, 2008.

4.  There was also practically and highly statistically significant adverse impact against black applicants, and potential black applicants, as a result of the 30 college credit requirement for appointment from the Exam 2043 eligibility list. Report at 60-61.

5.  I also found that within the FDNY's discretionary appointment process – a closed-door review of candidate files by the Personnel Review Board ("PRB") – there is statistically significant adverse impact against black candidates. Report at 35-36.

6.  Finally, I found that, at least with respect to Exam 7029, the City's own analysis of scores by black and white applicants revealed the large adverse impact of the written test. Report at 36-38. Thus, the City was well-aware that this adverse impact against black test takers existed, and yet it used a very similar written test again four years later in 2002 for Exam 2043.

## EXAM 7029

7.  Defendant offered positions to proximately 3,101 entry-level firefighters from the eligibility list that resulted from Exam 7029, of whom 115 (6.7%) were black. Report at 14.

Adverse Impact in Passing Written Test 7029

8.  Among test-takers, only 60.3% of blacks passed Written Test 7029, whereas 89.9% of whites passed. Report at 18-19. Since blacks passed Written Test 7029 at a rate that is 67% the passing rate for whites, the adverse impact ratio for passing Written Test 7029 is .67. Id. This adverse impact ratio is highly statistically significant and corresponds to 33.9 units of standard deviation.[1] Id. The practical import of this disparity is obvious. It amounts to a

---

[1] Anything equal to or above two (2) units of standard deviation is regarded by experts and the courts as a legally significant impact.

"shortfall" of 457 black test passers. Id. By shortfall, I mean that if all things were equal, we would expect 457 additional blacks to have passed the written test.

### Rank Order on Eligibility List for Exam 7029

9.  There is also adverse impact in rank order placement on the eligibility list resulting from Exam 7029. Report at 27-28. Thus, 30.4% of the whites who passed Exam 7029 took spots in the top 2,000 ranks on the Exam 7029 eligibility list, while only 19.1% of the black test passers were in the top 2,000 ranks. Report at 28-9. Similarly, I found 30.8% of all black test passers, and only 20.7% of white test passers, in the bottom two groupings of ranks on the eligibility list. Id. In fact, among applicants who passed Exam 7029, the mean ranking on the eligibility list for black candidates was 630 spots lower than the mean ranking of white candidates. Report at 27. This disparity is highly statistically significant and corresponds to a 6.5 units of standard deviation. Id. The practical import of lower ranking on the list is a delay in appointment, as well as the corresponding loss of seniority among black firefighters as compared to white firefighters, on average, who were hired from this Exam. Report at 28.

### Adverse Impact in Appointment for Exam 7029

10. Among those people who took Exam 7029, 6.7% of blacks were appointed, compared to 23.6% of whites. Report at 13-16. In other words, black test takers were appointed at only 28% of the rate at which white test takers were appointed. Id. The resulting adverse impact ratio of .28. is highly statistically significant and corresponds to 15.9 units of standard deviation. Id. This large adverse impact also has clear practical significance, as it creates a shortfall of 254 black firefighter appointments. Id.

### Adverse Impact in Discretionary Screening Process for Exam 7029

11. In hiring from the eligibility list for Exam 7029, a disproportionate number of black applicants were reviewed by the FDNY's Personnel Review Board ("PRB") and not hired as a result. Report at 35-36. While blacks made up only 6.2% of all applicants certified to the FDNY for consideration for appointment, they make up 23.1% of the applicants who are

3

considered and rejected by the PRB. Id. This disparity between black and white applicants being rejected by the PRB is highly statistically significant and corresponds to 6 units of standard deviation.

12. A partial explanation for this was offered by Sherry Ann Kavaler, the former Deputy Commissioner for Human Resources at the FDNY, who was a member of the PRB. I am advised by counsel that Ms. Kavaler gave deposition testimony in which she stated that at every other PRB meeting, at least, an applicant before the PRB was known to a voting member of the PRB. See Ex. B at 367. She testified that if a candidate being reviewed by the PRB was related to someone within the Fire Department that a PRB member knew, that candidate would be more likely to be passed through the PRB. Id. Given that only around 3% of firefighters are black, there were likely very few black candidates on review at the PRB who were related to someone within the FDNY. So, the benefit of such relations clearly flowed to white candidates.

<u>The City was Aware of the Adverse Impact of Written Test 7029</u>

13. Plaintiff's Exhibit 26 shows the City's own records of the number of test takers, by race, who would pass the examination at various contemplated pass marks. At a pass mark of 84.705, which was ultimately set by defendants, there is a .68 adverse impact ratio between white passers (89.84%) and black passers (61.19%). Report at 36-37. Thus, anyone with even rudimentary understanding of the "80% Rule" set forth in the EEOC's *Uniform Guidelines on Employee Selection Procedures* – such as the EEO officers employed by the FDNY – would have been well-aware that Written Test 7029 had a substantial adverse impact on black test takers. This impact is highly statistically significant and corresponds to 32.6 units of standard deviation. Id.

## EXAM 2043

14. As of the date of the City's last production, defendants had offered positions to approximately 2,355 entry-level firefighters from the eligibility list that resulted from Exam

2043, of whom 101 (or 7.3%) were black. Report at 39.

### Adverse Impact in Passing Written Test 2043

15.     Among test-takers, 85.4% of blacks passed Written Test 2043, whereas 97.2% of whites passed. Report at 42-43. Thus, the adverse impact ratio for passing Written Test 2043 is .88. This adverse impact ratio is highly statistically significant, and corresponds to 21.8 units of standard deviation. Id. The practical import is a shortfall of 150 black test passers. Id.

### Rank Order on Eligibility List for Exam 2043

16.     There is also adverse impact in rank order placement on the eligibility list resulting from Exam 2043. Report at 51-53. Thus, 27.3% of white test passers took spots in the top 2,000 ranks on the Exam 2043 eligibility list, while only 18.1% of black test passers were in the top 2,000. Report at 53. Likewise, the bottom two groupings of test passers are composed of 17.0% of the white test passers and 36.4% of the black test passers. Id. In fact, among applicants who passed Exam 2043, the mean ranking on the eligibility list for black candidates is 974 spots lower than the mean ranking of white candidates. Report at 51-2. This disparity is highly statistically significant and corresponds to 9.6 units of standard deviation. Id. The practical import of lower ranking on the list is a delay in appointment, as well as the corresponding loss of seniority among black firefighters as compared to white firefighters, on average, who were hired from this Exam. Report at 52.

17.     Delays in appointment, which affect black test passers more greatly than white test passers due to the rank ordering use of the list, can have the serious practical effect of discouraging black passers from continuing on to take the PPT in order to complete the exam and to pursue employment with the FDNY. Most job applicants, of any race, will lose the motivation to seek appointment for a position when their expectation of being appointed to the position is low. This means that, in addition to the barriers to appointment of blacks that are inherent in the City's testing and selection process, black applicants are also discouraged from continuing to seek such appointment, further reducing their likelihood of being hired.

{Worldox Files\NU537\001\04\08005565.DOC}

<u>Adverse Impact in Appointment for Exam 2043</u>

18. Among those people who took Exam 2043, 7.3% of blacks were appointed, compared to 16.5% of whites. <u>Report</u> at 39-41. In other words, black test takers had less than ½ the chance of being appointed as white test takers. <u>Id</u>. The resulting adverse impact ratio of .44 is highly statistically significant and corresponds to 8.9 units of standard deviation. <u>Id</u>. This large adverse impact also has clear practical significance, as it corresponds to a shortfall of 114 appointments of black firefighters. <u>Id</u>.

## **EXAM 6019**

19. I have also reviewed the scores on the City's most recent open competitive firefighter examination, Exam 6019. Although there have been improvements over Exams 7029 and 2043, there remains statistically significant adverse impact against black test takers in their pass rates on the exam, as well as statistically significant adverse impact against black test passers with respect to their rank ordering on the Exam 6019 eligibility list.

_____
JOEL P. WIESEN, Ph.D

Dated: April 9, 2008

Sworn to before me this
9th day of April, 2008

_____
NOTARY PUBLIC

ROBERT HOLSEN
Commission # 1658036
Notary Public - California
San Francisco County
My Comm. Expires May 9, 2010

6

{Worldox Files\NU537\001\04\08005565.DOC}