IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                    Plaintiff,

                           -and-

THE VULCAN SOCIETY, INC., ET AL,                        Civil Action No. 07-CV-2067
                                                                        (NGG)(RLM)
                            Plaintiffs-Intervenors,
                                                                           ECF Case

                           -against-

THE CITY OF NEW YORK, ET AL,

                                        Defendants.
-----------------------------------------------------------------X

STATE OF NEW YORK    )
                                ) ss.:
COUNTY OF NEW YORK  )

## DECLARATION OF RICHARD A. LEVY

Richard A. Levy, pursuant to 28 U.S.C. ¶1746, hereby declares:

1.    I am a member of Levy Ratner, P.C., and co-counsel, along with Scott + Scott LLP and the Center for Constitutional Rights to the plaintiffs-intervenors, the Vulcan Society, Inc. (the "Vulcans"), Marcus Haywood, Candido Nuñez and Roger Gregg. I submit this affidavit in support of plaintiffs-intervenors motion for the certification of a class.

2.    As set forth in the accompanying affidavit of Fire Captain Paul Washington, former President of the Vulcan Society, the defendants have been engaged in decades-long discrimination against black applicants for entry-level firefighter positions, and the Vulcans have represented the interest of black applicants harmed by this discrimination for more than fifty (50) years. The Vulcans were the plaintiffs in a prior case against the FDNY in the 1970s, in which

{Worldox Files\NU537\001\04\08004800.DOC}

Judge Weinfeld of the Southern District found that the FDNY's written entry-level firefighter examination had a racially discriminatory impact and was insufficiently job related to withstand attack under 42 U.S.C. § 1983. That decision was affirmed by the Second Circuit Court of Appeals in 1973, which also upheld the District Court's injunction requiring the City to hire one (1) minority candidate for every three (3) white candidates. See Vulcan Soc. of New York City Fire Dept., Inc. v. Civil Service Com., 490 F.2d 387 (2d Cir. 1973) ("Vulcans I"). In the early 1970s, five percent (5%) of New York City firefighters were minorities. After the expiration of the Court's injunction in 1977, the hiring of black firefighters plummeted to the point that today black firefighters make up only 2.9% of the force, although the City of New York is made up of 28% black residents according to the most recent U.S. census data.

3. The individual plaintiff-intervenors here, Marcus Haywood, Roger Gregg and Candido Nuñez, are each applicants for entry-level firefighter positions. Mr. Nuñez, age 31, took Exam 2043 and was ranked 5003 on the resulting eligibility list. He is currently a probationary firefighter in the firefighter academy, although because of defendants' discriminatory ranking system he waited more than five (5) years for that appointment. Mr. Haywood, age 26, and Mr. Gregg, age 32, also took Exam 2043 and were ranked at 6990 and 6017, respectively. These candidates will almost certainly not be appointed by the time that the Exam 2043 eligibility list expires in May 2008. As the age limit for taking the entry-level firefighter exam is 28, neither Mr. Haywood nor Mr. Gregg will have another opportunity to compete for an entry-level firefighter position, which are normally administered only once every four years.

4. The Vulcan Society and the individual plaintiffs-intervenors filed the original charges of discrimination with the U.S. Equal Employment Opportunity Commission regarding

the FDNY's testing and appointment procedures in 2002 and 2005. These charges were found to have merit by the EEOC and, based upon the charges and the EEOC's findings, Plaintiff United States' filed its complaint in this matter. Plaintiffs-intervenors had a statutory right to intervene in the action to ensure the representation of their interests. See Exhibit A to plaintiffs-intervenors' complaint, Dkt No. 48.

5. On September 5, 2007, the Court granted the plaintiffs-intervenors leave to intervene not only with respect to the issues raised in the United States' complaint but also with respect to their additional claims of disparate impact and disparate treatment against the City, the Fire Department of the City of New York ("FDNY"), the Department of Citywide Administrative Serices ("DCAS"), Fire Commissioner Nicholas Scoppetta and Mayor Michael Bloomberg. See Dkt No.47.

6. Plaintiffs-intervenors now respectfully move this Court for the certification of a class pursuant to FRCP 23(a), b(2) and b(3).

## The Class Meets the Requirements of Rule 23(a)

### Numerosity

7. More than 3,000 black applicants took Written Exams 7029 and 2043, both of which had an adverse impact on black applicants, are not job related for the position in question or consistent with business necessity, and do not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law. Each of these applicants was harmed by the discriminatory nature of these examinations, as well as other discriminatory entrance requirements that have an adverse impact on blacks and are not job related, such as the requirement that firefighters obtain thirty (30) college credits – in any subject, however unrelated

to firefighting – prior to appointment, that they maintain a valid driver's license, and that they pay for a costly certified first responder with defibrillation ("CFR-D") course. These 3,000+ individuals are all proper class members, and the proposed class is so numerous that joinder of its members would be impracticable.

8. Moreover, many potential black applicants for firefighter positions were discouraged from pursuing appointment due to the well-known unfairness of the written examinations, as well as the difficultly and expense of obtaining the required college credits, drivers license and expensive CFR-D training. These individuals, who did not sit for the Written Exams, are difficult to count with precision. Their existence makes it even less practicable to utilize individual joinder here.

9. Also, plaintiffs-intervenors will seek permission to amend the complaint to include claims involving discrimination in the administration of Exam 6019, the most recent test for entry-level firefighter. Thus, there are thousands of additional black applicants who took Exam 6019 in or after January 2007, or who were discouraged from doing so, whose joinder in this action is impracticable.

10. Finally, there are future applicants who will be affected if the defendants' selection devices and procedures are not modified to eliminate unwarranted adverse impact.

<u>Commonality</u>

11. Each member of the class has a common primary claim, i.e., (1) that Exam 7029, given in 1999, Exam 2043, given in 2002, and Exam 6019, given in 2007, had adverse impact on black applicants, are not job related or valid, and are have a higher disparate impact than other

available alternatives; (2) that the FDNY's other minimum appointment requirements were discriminatory; and (3) that these unlawful selection devices and procedures were perpetuated purposefully or with a reckless disregard for the law that rises to the level of discriminatory treatment.

12. This litigation does not address issues of promotion, discipline, termination, or other discriminatory treatment in the workplace. The core issue here, common to all members of the class, is the discriminatory testing and selection process utilized by defendants, satisfying the requirement of commonality.

13. Indeed, the City has already admitted, in response to requests for admission propounded by plaintiff United States, that in comparing the proportion of white candidates who passed Written Exams 7029 and 2043 with the proportion of black candidates who passed Written Exams 7029 and 2043, "there was a difference greater than three units of standard error." See Objection and Response to Admission No. 1 & 3, annexed hereto as Exhibit 1. Standard error is the City's expert's term for what is also commonly referred to as standard deviation. The Courts have fairly consistently held standard deviations of two (2) or greater to be sufficient to make out a statistical showing of adverse impact. Accompanying this motion is the affidavit of plaintiffs-intervenors' expert, Dr. Joel P. Wiesen, who has further analyzed the gross disparities in the hiring of white and black applicants to entry level firefighter jobs. In addition, annexed hereto as Exhibit 3 is the report of the United States' expert Bernard Siskin, who also found highly significant patterns of adverse impact.

14. The determination by the Court of these issues will resolve the claims of each member of the class; they are the very sort of "common" questions that Court have looked for in certifying a class under Title VII of the Civil Rights Act of 1964 and similar federal law.

### Typicality

15. The proposed class representatives here, the Vulcan Society, Marcus Haywood, Roger Gregg and Candido Nuñez have claims that are typical of the class. Their claims, as well as those of all members of the class, arise from the same open competitive examination processes and the related criteria utilized by the FDNY in selecting and appointing firefighters. The harm to the named class representatives and to the members of the class result from the same conduct by the same set of actors, and the named class representatives will assert the same legal theories of recovery that would be asserted by class members generally. Moreover, the defendants will likely assert the same legal defenses to the claims of the representatives as they would against the claims of any other member of the class. While the amount of damages awarded to each member of the class may differ, this does not defeat a finding of typicality. See Robertson v. Nat'l Basketball Ass'n, 389 F. Supp. 867, 898 n. 57 (S.D.N.Y. 1975).

16. Moreover, unlike disparate treatment claims that present discrete events impacting only few individuals, the disparate treatment alleged here occurred in the context of the City's maintenance of the challenged discriminatory testing and selection mechanisms. Therefore class certification on the treatment claims is as appropriate as class certification on the impact claims.

### Adequacy

17. The Vulcans, the named class representatives and their counsel are adequately qualified to represent the class members. The Vulcans have been involved in similar successful

litigation, see Vulcans I, 490 F.2d 387, and their members (most of the black firefighters in the FDNY) have suffered from the same discrimination as the individual named plaintiffs-intervenors. The Vulcan Society itself has suffered as its time and resources have been drawn into this challenge over the years, to the detriment of its other social and charitable goals. Moreover, the Vulcan Society's members have been adversely affected by being such a tiny minority within the FDNY; acts of racism are difficult to oppose and the value of a diverse workplace is lost. The Vulcan Society has been in constant telephone communication with counsel, and members of its leadership have attended several of the depositions that have been held in this matter.

18. The individual named representatives have been conscientious in their pursuit of this action, have been forthright with counsel and have demonstrated a vigorous desire to protect the interests of the class. The named representatives – with the assistance of the Vulcan Society – filed Charges of Discrimination with the EEOC in February 2005, and have since then had regular meetings and telephone calls with attorneys from Levy Ratner, P.C., Scott + Scott LLP and the Center for Constitutional Rights to discuss their claims as well as the underlying facts of the case.

19. There are no known or anticipated conflicts or antagonistic interests among the members of the putative class. The interest of each class member is to gain the opportunity to compete for appointment on the basis of an exam that measures actual aptitudes required for the position in a way that does not discriminate on the basis of race.

20. Sufficient financial resources and competent legal representation are available to the named plaintiffs-intervenors to fully pursue the class claims to resolution. The law firm of

Levy Ratner, P.C. has successfully litigated similar Title VII race discrimination actions in federal court. Mr. Levy has been litigating discrimination cases since the early 1970s. In 2004, he settled the class action matter entitled <u>Latino Officers Association of N.Y., et al. v. City of New York, et al.</u>, No. 99-9568 (S.D.N.Y. 2004) (<u>see</u> class certification decision at 209 F.R.D. 79 (S.D.N.Y. 2002)), which resulted in awards of damages to more than 500 New York City police officers, amounting to $17 million and other important affirmative relief. The law firm of Scott + Scott, LLP also brings a wealth of relevant experience with federal class action litigation. The Center for Constitutional rights has been litigating civil rights actions in the federal courts for more than forty years (40) and has spent the last seven years advocating for the increased representation of African Americans in the New York City Fire Department. The firm resumes of Levy Ratner, P.C., Scott + Scott LLP and the Center for Constitutional Rights are annexed hereto as Exhibit 2. All three firms have agreed to pursue this case without payment at this time and shall seek payment only through the recovery of attorneys fees in the course of this litigation.

## **The Class Meets the Requirements of Rule 23(b)(2)**

21.   Cases of discriminatory conduct by governmental defendants, particularly where injunctive relief is sought, are the paradigmatic Rule 23(b)(2) matters. The defendants in this matter have acted or refused to act on grounds generally applicable to the class, and all persons similarly situated (i.e., all black firefighter applicants for Exams 7029, 2043 and 6019, and future applicants for firefighter positions) have been or will be impacted by defendants' conduct in a way that pertains to the class as a whole. The fact that plaintiffs-intervenors seek both monetary and injunctive relief does not negate the appropriateness of class certification pursuant to Rule

23(b)(2). See Wright v. Stern, 2003 WL 21543539, at *8 (S.D.N.Y. July 9, 2003), citing Parker v. Time Warner Entm't Co., 331 F.3d 13, 20 (2d Cir.2003).

### The Class Meets the Requirements of Rule 23(b)(3)

22. Class certification is also proper under Rule 23(b)(3) because of the common questions of law and fact that predominate here, and because the class method is superior to other methods of resolving this controversy. The certification of a class will enable a uniform resolution to a dispute that, if litigated separately, would involve great waste of time, effort and expense. The economies of scale achieved through the certification of a class here will benefit not only the class members but also the defendants and the Court.

23. For all of these reasons, the proposed class meets each of the requirements of FRCP 23(a), b(2) and b(3), and we ask that the Court grant plaintiffs-intervenors' motion for class certification.

Dated: New York, New York
April 10, 2008

_____
RICHARD A. LEVY