# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK,

Defendant.

------------------------------------------------------------------------ x

**DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF UNITED STATES' FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-23) AND SECOND SET OF INTERROGATORIES (NO. 33)**

Civil Action No.: 07-CV-2067
(Garaufis, J.)(Mann, M.J.)

Pursuant to Rule 33 and 36 of the Federal Rules of Civil Procedure, defendant responds and objects to plaintiff the United States' First Set of Requests for Admission (Nos. 1-23) Second Set of Interrogatories (NO. 33)as follows:

## GENERAL STATEMENT

1.     By responding to any request, defendant does not concede the materiality of the subject to which it refers.  Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information produced, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

2.     Defendant objects to these Requests to the extent the demand documents and information which are protected by the attorney-client or work-product privilege, or which constitute material prepared for litigation purposes.

3.    Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of defendants' right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

4.    Defendant objects in the entirety to any request for information from entities not represented by the Corporation Counsel of the City of New York.

5.    The fact that defendant objects to any interrogatory should not be construed to mean that information or documents responsive to such request exist. Similarly, the statement that defendant will undertake to search for information or documents in response to a particular interrogatory should not be construed to mean that information sought in the request in fact exist. Furthermore, the production of any documents or information that are otherwise subject to an objection is not a waiver of any objection as to any other information or document not produced.

6.    Defendant's responses should be interpreted consistent with the agreements of the parties set forth in III-V of the Attachment to the Initial Conference Questionnaire filed on July 20, 2007.

7.    These general objections apply to all of the interrogatories in addition to defendant's specific objections, and are incorporated by reference into each and every response set forth below.

## REQUESTS FOR ADMISSION

### ADMISSION NO. 1:

The disparity between the pass rate of black candidates on Written Exam 7029 and the pass rate of white candidates on Written Exam 7029 is equivalent to more than three (3) units of standard deviation.

### OBJECTION AND RESPONSE TO ADMISSION NO. 1:

Admits that in comparing the proportion of those White candidates who passed Written Exam 7029 with the proportion of Black candidates who passed Written Exam 7029, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

### ADMISSION NO. 2:

The disparity between the pass rate of Hispanic candidates on Written Exam 7029 and the pass rate of white candidates on Written Exam 7029 is equivalent to more than three (3) units of standard deviation.

### OBJECTION AND RESPONSE TO ADMISSION NO. 2:

Admits that in comparing the proportion of those White candidates who passed Written Exam 7029 with the proportion of Hispanic candidates who passed Written Exam 7029, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

- 3 -

## ADMISSION NO. 3:

The disparity between the pass rate of black candidates on Written Exam 2043 and the pass rate of white candidates on Written Exam 2043 is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 3:

Admits that in comparing the proportion of those White candidates who passed Written Exam 2043 with the proportion pf Black candidates who passed Written Exam 2043, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

## ADMISSION NO. 4:

The disparity between the pass rate of Hispanic candidates on Written Exam 2043 and the pass rate of white candidates on Written Exam 2043 is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 4:

Admits that in comparing the proportion of those White candidates who passed written Exam 2043 with the proportion of Hispanic candidates who passed written Exam 2043, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

## ADMISSION NO. 5:

As a group, black candidates on the eligibility list resulting from Exam 7029 were ranked statistically significantly lower (i.e., had statistically significantly higher list numbers) than white candidates on the eligibility list. For purposes of this Request, "statistically significant" means that there is a 5% or lower likelihood that so large a disparity would occur by chance.

## OBJECTION AND RESPONSE TO ADMISSION NO. 5:

Admits that a statistically significant difference exists between the ranked positions of Black candidates, as a group, and the ranked positions of White candidates, as a group, on the eligibility list relating to Exam 7029 but defendant does not admit that any such difference was caused by the Exam.

## ADMISSION NO. 6:

The disparity between the ranks of black candidates on the eligibility list resulting from Exam 7029 and the ranks of white candidates on the eligibility list is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 6:

Admits that the difference between the ranks of Black candidates on the eligibility list relating to Exam 7029 and the ranks of White candidates on the eligibility list is equivalent to more than three (3) units of standard error so long as there are no controls for sample size, however when controls for sample size, such as those used by plaintiff's expert, are used in analyzing the rankings of these groups then the difference is less than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard

- 5 -

error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

## ADMISSION NO. 7:

As a group, Hispanic candidates on the eligibility list resulting from Exam 7029 were ranked statistically significantly lower (i.e., had statistically significantly higher list numbers) than white candidates on the eligibility list. For purposes of this Request, "statistically significant" means that there is a 5% or lower likelihood that so large a disparity would occur by chance.

## OBJECTION AND RESPONSE TO ADMISSION NO. 7:

Admits that a statistically significant difference exists between the ranked positions of Hispanic candidates, as a group, and the ranked positions of White candidates, as a group, on the eligibility list relating to Exam 7029 but defendant does not admit that any such difference was caused by the Exam.

## ADMISSION NO. 8:

The disparity between the ranks of Hispanic candidates on the eligibility list resulting from Exam 7029 and the ranks of white candidates on the eligibility list is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 8:

Admits that the difference between the ranks of Hispanic candidates on the eligibility list relating to Exam 7029 and the ranks of White candidates on the eligibility list is equivalent to more than three (3) units of standard error so long as there are no controls for sample size, however when controls for sample size, such as those used by plaintiff's expert, are

- 6 -

used in analyzing the rankings of these groups then the difference is less than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

## ADMISSION NO. 9:

On average, the list numbers of black candidates on the eligibility list resulting from Exam 7029 were statistically significantly higher than the list numbers of white candidates on the eligibility list. For purposes of this Request, "statistically significant" means that there is a 5% or lower likelihood that so large a disparity would occur by chance.

## OBJECTION AND RESPONSE TO ADMISSION NO. 9:

Admits that the statistical mean of the list numbers of Black candidates on the eligibility list relating to Exam 7029 was statistically significantly higher than the statistical mean of the list numbers of White candidates on the eligibility list but defendant does not admit that any such difference was caused by the Exam.

## ADMISSION NO. 10:

The disparity between the list numbers of black candidates on the eligibility list resulting from Exam 7029 and the list numbers of white candidates on the eligibility list is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 10:

Admits that the difference between the list numbers of Black candidates on the eligibility list relating to Exam 7029 and the list numbers of White candidates on the eligibility

list is equivalent to more than three (3) units of standard error so long as there are no controls for sample size, however when controls for sample size, such as those used by plaintiff's expert, are used in analyzing the rankings of these groups then the difference is less than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

## ADMISSION NO. 11:

On average, the list numbers of Hispanic candidates on the eligibility list resulting from Exam 7029 were statistically significantly higher than the list numbers of white candidates on the eligibility list. For purposes of this Request, "statistically significant" means that there is a 5% or lower likelihood that so large a disparity would occur by chance.

## OBJECTION AND RESPONSE TO ADMISSION NO. 11:

Admits that the statistical mean of the list numbers of Hispanic candidates on the eligibility list relating to Exam 7029 was statistically significantly higher than the statistical mean of the list numbers of White candidates on the eligibility list so long as there are no controls for sample size, however when controls for sample size are used, such as those used by plaintiff's expert, in analyzing the statistical mean of the list numbers of these groups, then the difference is not statistically significant, but if any result has statistical significance, defendants do not admit that such a difference was caused by the Exam.

- 8 -

## ADMISSION NO. 12:

The disparity between the list numbers of Hispanic candidates on the eligibility list resulting from Exam 7029 and the list numbers of white candidates on the eligibility list is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 12:

Admits that the difference between the ranks of Hispanic candidates on the eligibility list relating to Exam 7029 and the ranks of White candidates on the eligibility list is equivalent to more than three (3) units of standard error so long as there are no controls for sample size, however when controls for sample size are used, such as those used by plaintiff's expert, in analyzing the rankings of these groups then the difference is less than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."


## ADMISSION NO. 13:

The ratio of the pass rate of black candidates to the pass rate of white candidates on Written Exam 7029 is less than 80%.

## OBJECTION AND RESPONSE TO ADMISSION NO. 13:

Admits that the ratio of the pass rate of Black candidates to the pass rate of White candidates on Written Exam 7029 is less than .80.

## ADMISSION NO. 14:

The ratio of the effective pass rate of black candidates to the effective pass rate of white candidates on Written Exam 2043 is less than 80%. For purposes of this Request, a candidate "effectively passed" Written Exam 2043 if the candidate scored high enough on Written Exam 2043 to have scored at or above the Written Exam score of the lowest-scoring individual appointed from the eligibility list resulting from Written Exam 2043 if the candidate had scored 100 on the PPT, given the candidates' total number of bonus points (i.e., total of veterans', legacy and residency credits).

## OBJECTION AND RESPONSE TO ADMISSION NO. 14:

The request is objected to on grounds that the phrase "effectively passed" is ambiguous, or rather, opaque. The "effective pass rate" could be determined by a number a methods which could result in varying "effective pass rates". So long as the method by which the determination of the "effective pass rate" is unclear, defendants do not have the ability to analyze the assertion.

## ADMISSION NO. 15:

Assuming that the City were to hire candidates down to list number 5,862 on the Exam 2043 eligibility list, the ratio of the effective pass rate of black candidates to the effective pass rate of white candidates on Written Exam 2043 would be less than 80%. For purposes of this Request, a candidate "effectively passed" Written Exam 2043 if the candidate scored high enough on Written Exam 2043 to have scored at or above the Written Exam score of the lowest-scoring individual appointed from the eligibility list resulting from Written Exam 2043 if the candidate had scored 100 on the PPT, given the candidates' total number of bonus points (i.e., total of veterans', legacy and residency credits).

- 10 -

## OBJECTION AND RESPONSE TO ADMISSION NO. 15:

The request is objected to on grounds that the phrase "effectively passed" is ambiguous, or rather, opaque. The "effective pass rate" could be determined by a number a methods which could result in varying "effective pass rates" So long as the means by which the determination of the "effective pass rate" is unclear, defendants do not have the ability to analyze the assertion. .

## ADMISSION NO. 16:

The ratio of the rate at which black candidates on the eligibility list for Exam 2043 passed what Dr. Siskin refers to in his expert report as "the ranking test" to the rate at which white candidates on the eligibility list for Exam 2043 passed the ranking test is less than 80%. For purposes of this Request, "ranking test" means ranked at or above the rank of the last person appointed from the Exam 2043 eligibility list as of the date of the data provided to the United States.

## OBJECTION AND RESPONSE TO ADMISSION NO. 16:

Admits that if the "the ranking test" used by Dr. Siskin in his expert report is applied to those persons on the eligibility list relating to Exam 2043, then the proportion of Black candidates on that eligibility list who passed Dr. Siskin's "ranking test" is less than 80% of the proportion of White candidates on that eligibility list who passed.

## ADMISSION NO. 17:

Assuming that the City were to hire candidates down to list number 5,862 on the Exam 2043 eligibility list, the ratio of the rate at which black candidates on the eligibility list for Exam 2043 would pass what Dr. Siskin refers to in his expert report as "the ranking test" to the

rate at which white candidates on the eligibility list would pass the ranking test would be less than 80%. For purposes of this Request, "ranking test" means ranked at or above the rank of the last person appointed from the Exam 2043 eligibility list as of the date of the data provided to the United States.

## OBJECTION AND RESPONSE TO ADMISSION NO. 17:

Admits that were the City to hire candidates as far down on the eligibility list relating to Exam 2043 as the candidate with the list number 5,862, as of the date that the data provided to the plaintiff, then the proportion of Black candidates passing what Dr. Siskin refers to in his expert report as "the ranking test," would be less than 80% of the proportion of White candidates passing what Dr. Siskin refers to in his expert report as "the ranking test."

## ADMISSION NO. 18:

To the City's knowledge, no content validation study or analysis has been conducted for Written Exam 7029.

## OBJECTION AND RESPONSE TO ADMISSION NO. 18:

Denied

## ADMISSION NO. 19:

To the City's knowledge, no construct validation study or analysis has been conducted for Written Exam 7029.

## OBJECTION AND RESPONSE TO ADMISSION NO. 19:

To the extent the request seeks an admission that construct validity methodology, as that term is used in the EEOC Guidelines, was absent from the validation study for Exam

7029, the request is denied, but otherwise admit that no validation study or analysis solely utilizing construct validation methods was conducted for exam 7029.

## ADMISSION NO. 20:

To the City's knowledge, no criterion-related validation study or analysis has been conducted for Written Exam 7029.

## OBJECTION AND RESPONSE TO ADMISSION NO. 20:

Admit

## ADMISSION NO. 21:

To the City's knowledge, no content validation study or analysis has been conducted for Written Exam 2043.

## OBJECTION AND RESPONSE TO ADMISSION NO. 21:

Denied

## ADMISSION NO. 22:

To the City's knowledge, no construct validation study or analysis has been conducted for Written Exam 2043.

## OBJECTION AND RESPONSE TO ADMISSION NO. 22:

To the extent the request seeks an admission that construct validity methodology was absent from the validation study for exam 2043, the request is denied, but otherwise admit that no validation study or analysis solely utilizing construct validation methods was conducted for exam 2043.

## ADMISSION NO. 23:

To the City's knowledge, no criterion-related validation study or analysis has been conducted for Written Exam 2043.

## OBJECTION AND RESPONSE TO ADMISSION NO. 23:

Admit

## INTERROGATORIES

## INTERROGATORY NO. 33:

For each Request for Admission contained in Plaintiff United States' First Set of Requests for Admission (Nos. 1 to 23) which the City denies in whole or in part, state all facts and identify all documents on which the City's denial is based or otherwise relating to the City's denial and identify all persons with knowledge of the facts stated.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 33:

Defendant objects to this request to the extent it seeks disclosure of attorney work-product and attorney-client communications. Notwithstanding the forgoing objections, Defendant states that:

With regard to Request for Admission Numbers 18 and 19, Plaintiff is referred to the documents bearing the Bate stamp numbers USA004811 to USA004918; USA000329 to USA000404 which are the Test Development Report for Exam 7029; USA004357 to USA004918 which are documents relating to the Linking Panel for Exam 7029; USA004937, USA004938 to USA006229, which are Item Records for Exam 7029; USA006432 to USA006672 which are the Job Analysis Report for Written Exam 0084 and USA006287 to USA006431 which are the Final Report for Physical Exam 0084.

With regard to Request for Admission Number 21 and 22, Plaintiff is referred to the documents bearing the Bate stamp numbers USA004811 to USA004918; USA000329 to USA000404 which are the Test Development Report for Exam 7029 ; USA004357 to USA004918 which are documents relating to the Linking Panel for Exam 7029; USA004937, USA004938 to USA006229, which are Item Records for Exam 7029;  USA006432 to USA006672 which are the Job Analysis Report for Written Exam 0084 and USA006287 to USA006431 which are the Final Report for Physical Exam 0084; and DCAS-007045-007048 which is a report concerning the task list for Exam 2043/0532; DCAS-AJ-00050 to DCAS-AJ-00061 which are the Task Lists for Exam 2043/0532 and 7029, respectively.


Dated:        New York, New York
              March 5, 2008


                          MICHAEL A. CARDOZO
                          Corporation Counsel of the City of New York
                          Attorney for Defendant
                          100 Church Street, Room 2-100
                          New York, New York 10007
                          (212) 788-0862
                          gpestana@law.nyc.gov


                     By:  _____
                          GEORGIA PESTANA
                          Assistant Corporation Counsel

## <u>VERIFICATION</u>

**GEORGIA PESTANA**, declares under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

She has been duly designated as Assistant Corporation Counsel of The City of New York, and as such that she is an officer of The City of New York in the within action. That the foregoing Defendant's <u>Amended</u> Objections and Responses to Plaintiff's the United States' First Set Of Requests For Admission (Nos. 1-23) and Second Set Of Interrogatories (No. 33), are true to her knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters she believes it to be true. Declarant further says that the reason why this verification is not made by The City of New York is that the City of New York is a corporation; that the grounds of her belief as to all matters is information obtained from the books and records of departments of the city government and from statements made to her by certain officers or agents of The City of New York.

Dated:        New York, New York
              March 5, 2008

                                    _____
                                    GEORGIA PESTANA

- 16 -