IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                        Plaintiff,

            -and-

THE VULCAN SOCIETY, INC., ET AL,                    Civil Action No. 07-CV-2067
                                                              (NGG)(RLM)
                            Plaintiffs-Intervenors,
                                                                ECF Case
            -against-

THE CITY OF NEW YORK, ET AL,

                                        Defendants.
---------------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )


### DECLARATION OF RICHARD A. LEVY

        Richard A. Levy, pursuant to 28 U.S.C. ¶1746, hereby declares:

        1.      I am a member of Levy Ratner, P.C., and co-counsel, along with Scott + Scott

LLP and the Center for Constitutional Rights, to Plaintiffs-Intervenors the Vulcan Society, Inc.,

Roger Gregg, Marcus Haywood and Candido Nuñez.  I submit this declaration to provide the

Court with true and correct copies of certain documents referred to in Plaintiffs-Intervenors'

memorandum of law in opposition to Defendants' motion to dismiss, including the following:

                a.      Annexed hereto as Exhibit A are Plaintiffs-Intervenors' Responses to

                Defendants' Interrogatories No. 1, 41-42, and 52-54.

b.    Annexed hereto as Exhibit B are the final amended Notices of Examination for Exam 7029 and Exam 2043.

c.    Annexed hereto as Exhibit C is the notice received by candidates who passed Written Exam 7029 informing them of the procedures for participating in the physical examination component of Exam 7029.

d.    Annexed hereto as Exhibit D are the "Explanation of Test Scores" forms for Exams 7029 and 2043.

e.    Annexed hereto as Exhibit E are two "Notice of Personnel Action" forms that indicate that candidates who had passed the written and physical portions of Exam 7029 and Exam 2043 were delayed in hiring because they did not have either sufficient college credits or CFR-D training.

f.    Annexed hereto as Exhibit F are transcript pages 366-367 from the deposition of the FDNY's former Assistant Commissioner for Personnel, Sherry Kavaler.

g.    Annexed hereto as Exhibit G are pages of an excel spreadsheet produced by the City entitled "CID_DOJ_7029_qualapptd.xls" which show the last 143 appointments from the Exam 7029 eligibility list. Pursuant to the Agreed Protective Order in place between Plaintiffs-Intervenors and Defendants, identifying names and social security numbers been redacted.

h.    Annexed hereto as Exhibit H is a DCAS analysis of passing scores on Exam 7029 by race.

i.   Annexed hereto as Exhibit I are the City's Amended Responses to the United States' Requests for Admissions No. 1 & 3, dealing with the adverse impact against blacks of Exams 7029 and 2043.

j.   Annexed hereto as Exhibit J is a Summary Compliance Report from the Equal Employment Practices Commission ("EEPC") to the FDNY recommending various actions including, at No. 10 & 13, adverse impact studies on the college credit requirement and the written exam.

k.   Annexed hereto as Exhibit K is a letter from Fire Commissioner Nicholas Scoppetta to the EEPC indicating that the FDNY has not complied with the Recommendations No. 10 & 13 to conduct adverse impact studies.

l.   Annexed hereto as Exhibit L are transcript pages 148-152 from the deposition of DCAS's former Assistant Commissioner Carol Wachter.

m.   Annexed hereto as Exhibit M are transcript pages 147-149 from the deposition of DCAS Tests and Measurements Specialist Alberto Johnston, who created Exam 2043 based on the same job analysis and test development report that had been used for Exam 7029.

2.   For the reasons set forth in Plaintiffs-Intervenors' memorandum of law, we respectfully ask that the Court deny Defendants' motion in its entirety.

Dated: New York, New York
        May 23, 2008

_Richard A. Levy_
RICHARD A. LEVY

**Exhibit A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

Plaintiff,

-and-                                          07-CV-2067 (NGG)(RLM)

THE VULCAN SOCIETY, INC., for itself and on behalf
of its members; MARCUS HAYWOOD, CANDIDO
NUÑEZ, and ROGER GREGG, individually and on behalf          **PLAINTIFF VULCAN**
of a class of all others similarly situated,                **SOCIETY, INC.'S**
                                                            **RESPONSES AND**
Plaintiffs-Intervenors,                                     **OBJECTIONS TO**
                                                            **DEFENDANTS' FIRST SET OF**
-against-                                                   **INTERROGATORIES**

THE CITY OF NEW YORK; THE FIRE DEPARTMENT
OF THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, MAYOR MICHAEL BLOOMBERG and
NEW YORK CITY FIRE COMMISSIONER NICHOLAS
SCOPPETTA, in their individual and official capacities,

Defendants.

----------------------------------------------------------------------X

Pursuant to Federal Rule of Civil Procedure 33 and the Local Civil Rules of the United

States District Court for the Eastern District of New York, Plaintiff the Vulcan Society, Inc.

("Plaintiff" or the "Vulcans"), by and through its attorneys, hereby responds to Defendants' First

Set of Interrogatories as follows:

Several of Defendants' interrogatories to Plaintiff are identical to those which Defendants

served on Plaintiff the United States of America, and Plaintiff's responses to such interrogatories

therefore often rely on and contain identical information to the information contained in the

United States' responses to such interrogatories.  In such cases, Plaintiff's responses incorporate

the United States' interrogatory responses by reference.

## GENERAL OBJECTIONS

Plaintiff makes the following general objections to the interrogatories. The assertion of the same, similar, or additional objections in the specific responses to these interrogatories or failure to assert any objections in the specific responses does not waive any of the general objections set forth below:

1. Plaintiff objects to the interrogatories to the extent that they exceed the scope of discovery permitted by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of New York, the Court's Scheduling Order, and the questionnaire and written agreement of the parties submitted to the Court prior to the initial scheduling conference.

2. Plaintiff objects to all interrogatories that seek information that is beyond the possession and control of the Vulcans or their counsel.

3. Plaintiff objects to the interrogatories and the applicable Definitions and Instructions to the extent that they attempt to impose a continuing duty on Plaintiff other than that set forth in F.R.C.P. 26(e). Plaintiff will supplement its responses in accordance with F.R.C.P. 26(e).

4. Plaintiff reserves the right to challenge the competency, relevancy, materiality, and admissibility at trial, or any subsequent proceeding, of this or any other action, of information provided in response to these interrogatories.

## INTERROGATORY #1:

Identify each and every screening and selection criterion that Plaintiff contends is not job related or otherwise fails to meet the requirements of Title VII and has an adverse impact on black applicants for the position of firefighter as alleged in paragraph 2 of the Complaint.

## RESPONSE #1:

Plaintiff contends that the following selection and screening criteria used by the New York City Fire Department ("FDNY") are not job related and otherwise fail to meet the

2

requirements of Title VII and have had an adverse impact on black applicants for the position of firefighter:

   a)  all written open competitive firefighter exams ever given by the FDNY, up to the present time;

   b)  the requirements that firefighter applicants obtain college credits and a driver's license;

   c)  the requirement that each firefighter applicant complete a certified first responder with defibrillator ("CFR-D") course at his or her own expense before the end of his or her probationary period as a firefighter;

   d)  manner of administering, timing, scoring and all other related issues regarding physical performance tests for firefighter applicants on Exam 7029 and all prior firefighter exams;

   e)  the maximum age eligibility cut-off for firefighter applicants;

   f)  application of the residency credit to certain firefighter applicants; and

   g)  all criteria used by the FDNY's Personnel Review Board and Candidate Investigation Unit to disqualify or refuse appointment to otherwise qualified applicants for the position of firefighter.

**INTERROGATORY #2:**

     State all facts and identify all persons with knowledge of facts concerning Plaintiff's allegations in paragraph 3 of the Complaint.

**RESPONSE # 2:**

     Plaintiff objects to this interrogatory because it is overly broad and seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, Plaintiff notes that persons having knowledge of facts concerning the allegations in paragraph 3 of the Complaint include, but are not limited to:

- Defendant Nicholas Scoppetta

- Former FDNY Commissioner Thomas Von Essen

- FDNY Deputy Commissioner of Administration Douglas White

- Mayor Michael Bloomberg

- FDNY has never taken steps to improve residency verification process despite repeated requests to do so from the Vulcans.

Persons with knowledge of these facts include but are not limited to Douglas White and Paul Washington.

## INTERROGATORY #41:

For Exam 7029, state whether Plaintiff contends that any of the minimum qualifications for the position set forth in the Notice of Exam (Bates No. DCAS 007023-28; USA002574-77) has an adverse impact on black candidates for the position of firefighter. If Plaintiff contends that any of such minimum qualifications has an adverse impact on black candidates, identify each and every such minimum qualification that Plaintiff contends has an adverse impact on black candidates and state all facts and identify all persons, documents, and other evidence which support Plaintiff's contention.

## RESPONSE #41:

Plaintiff contends that the requirements that firefighter applicants (a) obtain college credits and a driver's license, and (b) complete a certified first responder with defibrillator ("CFR-D") course at his or her own expense before the end of his or her probationary period as a firefighter, and (c) be under a certain age, have had an adverse impact on black applicants for the position of firefighter who took Exam 7029. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33.

Without waiving such objections, Plaintiff notes that facts supporting this contention include, but are not limited to the following:

- Black firefighter applicants and potential applicants are disproportionately less likely than white applicants to have completed the required college credits prior to applying to be a New York City firefighter;

- Black firefighter applicants and potential applicants are disproportionately less likely than white applicants to have owned cars or obtained driver's licenses prior to applying to be a New York City firefighter;

- Black firefighter applicants and potential applicants on average have lower incomes than white applicants at the time they apply to be New York City firefighters;

- The expense of obtaining thirty college credits is an artificial, unfair barrier;

- The expense of taking a driver's education course and driver's training in New York City is an artificial, unfair barrier; and

21

- The expense of a CFR-D course in New York City is an artificial, unfair barrier.

In addition, information requested by this interrogatory is contained in the November 2007 report of Dr. Joel Wiesen.

**INTERROGATORY #42:**

For Exam 2043, state whether Plaintiff contends that any of the minimum qualifications for the position set forth in the Notice of Exam (Bates No. DCAS 007029-36; USA002570-73) has an adverse impact on black candidates for the position of firefighter. If Plaintiff contends that any of such minimum qualifications has an adverse impact on black candidates, identify each and every such minimum qualification that Plaintiff contends has an adverse impact on black candidates and state all facts and identify all persons, documents, and other evidence which support Plaintiff's contention.

**RESPONSE #42:**

Plaintiff contends that the requirements that firefighter applicants (a) obtain 30 college credits and a driver's license and (b) be under a certain age have had an adverse impact on black applicants for the position of firefighter who took Exam 2043. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, Plaintiff notes that facts supporting this contention include, but are not limited to, the facts set forth in the response to Interrogatory 41, as well as the information contained in the November 23, 2007 report of Dr. Joel Wiesen.

**INTERROGATORY #43:**

Separately for Exam 7029 and 2043 state whether Plaintiff contends that the rank ordering of candidates on the eligible list based on the adjusted final averages has an adverse impact on black candidates for the position of firefighter. If Plaintiff contends that such rank ordering has an adverse impact on black candidates, state the basis for such contention and state all facts and identify all persons, documents, and other evidence which support Plaintiff's contention.

**RESPONSE #43:**

Plaintiff does contend that the rank ordering of candidates on the eligible lists used to select candidates for Exams 7029 and 2043 based on the adjusted final averages has had an adverse impact on black candidates for the position of firefighter. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, some of the information requested by this interrogatory is contained in the November 23, 2007 report of Dr. Joel Wiesen.

**INTERROGATORY #44:**

22

Plaintiff does not contend that Defendant's practice of processing candidates who successfully achieved a passing score on a promotional examination for appointment to the position of firefighter before processing candidates who successfully achieved passing scores on either Exam 7029 or 2043 has an adverse impact on blacks.

## INTERROGATORY #51:

State whether Plaintiff contends that Defendant's practice of administering open examinations for the position of firefighter approximately every four years has an adverse impact on blacks. If Plaintiff contends that Defendant's practice of administering open examinations for the position of firefighter approximately every four years has an adverse impact on blacks, state the basis for Plaintiff's contention and identify all facts, persons, documents, and other evidence that support Plaintiff's contention.

## RESPONSE #51:

Plaintiff does contend that Defendant's practice of administering open examinations for the position of firefighter approximately every four years has an adverse impact on blacks. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, the Plaintiffs are investigating whether the practice of administering open examinations for the position of firefighter approximately every four years causes a disproportionate effect on blacks, by among other things causing blacks to disproportionately "age out," move on to other jobs, lose hope and become less likely to retake the test, thereby creating an artificial barrier to entry of blacks into the FDNY.

## INTERROGATORY #52:

State whether Plaintiff contends that the background investigation conducted on all candidates for the position of firefighter has an adverse impact on blacks. If Plaintiff contends that the background investigation has an adverse impact on blacks, state the basis for Plaintiff's contention and identify all facts, persons, documents and other evidence that support Plaintiff's contention.

## RESPONSE #52:

Plaintiff does contend that the background investigation conducted on all candidates for the position of firefighter has an adverse impact on blacks. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, Plaintiff states that it lacks all the information from the City needed to thoroughly analyze the background investigation for adverse impact. In addition, some of the information requested by this interrogatory is contained in Dr. Joel Wiesen's November 23, 2007 report.

26

Persons with knowledge of the above-mentioned facts include, but are not limited to Sherry Kavaler and the Commissioner and former Commissioners of the FDNY.

**INTERROGATORY #53:**

State whether Plaintiff contends the defendants use the background investigation conducted on all candidates for the position of firefighter to intentionally discriminate against blacks. If Plaintiff contends that the background investigation is used to intentionally discriminate against blacks, state the basis for Plaintiff's contention and identify all facts, persons, documents and other evidence that support Plaintiff's contention.

**RESPONSE #53:**

Plaintiff does contend the Defendants use the background investigation conducted on all candidates for the position of firefighter to intentionally discriminate against blacks. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, Plaintiff incorporates by reference its response to Interrogatory No. 52.

**INTERROGATORY #54:**

State whether Plaintiff contends that arrest and conviction records are used to intentionally discriminate against black candidates for the position of firefighter. If Plaintiff contends that arrest and conviction records are used to intentionally discriminate against black candidates, state the basis for Plaintiff's contention and identify all facts, persons, documents and other evidence that support Plaintiff's contention.

**RESPONSE #54:**

Plaintiff does contend that arrest and conviction records are used to intentionally discriminate against black candidates for the position of firefighter. Plaintiff objects to the remainder of this interrogatory because it seeks information which is privileged work product and/or which may not be obtained through interrogatories served pursuant to Fed.R.Civ.P. 33. Without waiving such objections, Plaintiff incorporates by reference its response to Interrogatory No. 52.

**INTERROGATORY #55:**

Identify any and all objective or subjective factors that Plaintiff contends are used to intentionally discriminate against black candidates for the position of firefighter. For each such factor, please state the basis of Plaintiff's contention that it is used to discriminate against black candidates and identify all facts, persons, documents and other evidence that support Plaintiff's contention.

**RESPONSE #55:**

**Exhibit B**



THE CITY OF NEW YORK
DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES
APPLICATIONS SECTION
18 WASHINGTON STREET
NEW YORK, NY 10004

| REQUIRED FORMS |
| --- |
| APPLICATION FORM |

RUDOLPH W. GIULIANI
Mayor

WILLIAM J. DIAMOND
Commissioner

# NOTICE
# OF
# EXAMINATION

---

**FIREFIGHTER**
**Exam. No.  7029**
**Third Amended Notice (October 17, 2001)**

---

**WHEN TO APPLY:**   From: September 2, 1998      **APPLICATION FEE: $35.00**
                  To:   October 16, 1998      *Payable only by money order to D.C.A.S. (DOP)*

**THE TEST DATE:** Multiple-choice test expected to be held on **Saturday, February 27, 1999.**

---

The Notice of Examination is amended to revise the information regarding the qualifications for college credits and Certified First Responder Certification with Defibrillation under the How To Qualify section.

**HAT THE JOB INVOLVES:** Under supervision, Firefighters assist in the control and extinguishment of fires, in providing pre-hospital emergency medical care, and in the enforcement of laws, ordinances, rules and regulations regarding the prevention, control and extinguishment of fires, as well as perform Fire Safety Education activities; and perform related work.

Some of the physical activities performed by Firefighters and environmental conditions experienced are: wearing protective clothing, such as bunker suit, helmet, boots and breathing apparatus; crawling, crouching and standing, often for prolonged periods, while extinguishing fires; driving fire apparatus; climbing stairs, ladders and fire escapes; raising portable ladders; using forcible entry tools, such as axes, sledge hammers, power saws and hydraulic tools; searching for victims in smoke-filled hostile environments; carrying or dragging victims from dangerous locations; connecting, stretching and operating hose lines; locating hidden fire by feel and smell; providing medical assistance to injured or ill citizens; and providing control and mitigation of hazardous materials incidents while wearing chemical protective clothing.

(This is a brief description of what you might do in this position and does not include all the duties of this position.)

**IE SALARY:** The current minimum salary is $30,872 per annum. This rate is subject to change. In addition, employees will receive holiday pay and night differential.

**OW TO APPLY:** If you believe you meet the requirements in the "How to Qualify" section, refer to the "Required Forms" section below for the form(s) that you must fill out. Return all completed form(s) and the application fee to the above address **by mail only.** Applications will not be accepted in person.

**OW TO QUALIFY:**
**Education and Experience Requirements:** Except as noted below, by the date of appointment, you must have

  1)      successfully completed 30 semester credits from an accredited college or university, or

  2)      a four year high school diploma or its educational equivalent and have completed two years of honorable full-time U.S. military service.

**For appointments between October 15, 2001 and December 31, 2002:** For appointments made between October 15, 2001, and December 31, 2002, where qualification for Education and Experience Requirements is based upon the successful completion of semester credits, you must have, by the time of appointment, successfully completed a minimum of 15 semester credits from an accredited college or university. **However,** in order to successfully complete your probationary period, you must, no later than 30 days prior to the completion of your probationary period, have completed a minimum of 30 semester credits, in total, from an accredited college or university. A failure to possess a minimum of 30 semester credits no later than 30 days prior to the completion of your probationary period will result in termination.

*Exh. 2*

---

| READ CAREFULLY AND SAVE FOR FUTURE REFERENCE |
| --- |

A - 00017

USA002574

Cam. No. 7029 - Page 2

**Certification Requirement:** Except as noted below, by the date of appointment, you must have a minimum of a Certified First Responder Certification with Defibrillation. This certification must be maintained for the duration of your employment.

> **For appointments between October 15, 2001 and December 31, 2002:** For appointments made between October 15, 2001, and December 31, 2002, a minimum of a Certified First Responder Certification with Defibrillation must be obtained no later than 30 days prior to the completion of your probationary period. A failure to obtain such Certification no later than 30 days prior to the completion of your probationary period will result in termination.

**Age Requirement:** Pursuant to Section 54 of the New York Civil Service Law and Section 15-103 of the Administrative Code, you must be at least 17 ½ years of age by the end of the application period and you must not have reached your twenty-ninth birthday by the beginning of the application period to be eligible to take this examination. However, you must have reached your twenty-first birthday to be eligible for appointment.

**Exception to the Age Requirement:** All persons who were engaged in military duty as defined in Section 243 of the New York State Military Law may deduct from their actual age the length of time spent in such military duty provided the total deduction for military duty does not exceed six years.

**Driver's License Requirement:** At the time of appointment, you must possess a motor vehicle driver's license valid in the State of New York. This license must be maintained for the duration of your employment.

**Medical and Psychological Requirements:** You must take medical and psychological tests.

**Drug/alcohol Screening Requirement:** You must pass a drug/alcohol screening in order to be appointed. Drug/alcohol tests will also be administered to all probationary Firefighters as part of the medical examination prior to the completion of probation.

**Character and Background:** Proof of good character and satisfactory background will be an absolute prerequisite to appointment. In accordance with provisions of law, persons convicted of a felony or who have received a dishonorable discharge from the Armed Forces are not eligible for appointment to this position.

**Residency Requirement:** The New York Public Officers Law requires that any person employed as a Firefighter in the Fire Department of New York be a resident of the City of New York or of Nassau, Westchester, Suffolk, Orange, Rockland or Putnam Counties.

**English Requirement:** Candidates must be able to understand and be understood in English.

**Proof of Identity:** Under the Immigration Reform and Control Act of 1986, you must be able to prove your identity and your right to obtain employment in the United States prior to employment with the City of New York.

**Citizenship Requirement:** United States citizenship is required at the time of appointment.

**REQUIRED FORM(S):**

**Application for Examination:** Make sure that you follow all instructions included with your application form, including payment of fee. Save the instructions for future reference.

**ADMISSION CARD:** You should receive an Admission Card in the mail about 10 days before the date of the test. If you do not receive an Admission Card at least 4 days before the test date, you must go to the Examining Service Section, 2 Washington Street, 17th floor, Manhattan, to obtain a duplicate card.

**THE TEST:** There will be a written multiple-choice test, weight 50, and a physical test, weight 50. The pass mark for the written test will be determined after an analysis of the test results.

The written test is designed to test the candidate's ability to learn and to perform the work of a Firefighter. It may include questions involving the understanding of written language and information, using language to communicate information or ideas to other people, memorizing information, recognizing or identifying the existence of problems, applying general rules to specific situations, applying prioritized rules to specific situations, determining position or spatial orientation within a larger area, visualizing how objects or structures might appear from different perspectives or after changes, finding a rule or concept which fits or describes a situation, and other related areas.

The physical test will consist of a series of events designed to test the candidate's capacity to perform the physical aspects of a Firefighter's job. A more detailed description of the physical test will be made available at a later date. Candidates called to participate in the physical test will be required to pay an additional fee prior to taking the physical test and will be notified of the method of payment prior to the physical test. Failure to pay the additional application fee, in a timely manner, will result in disqualification from further participation in the examination. The additional application fee for the physical test will be waived for a New York City resident receiving public assistance who submits a clear photocopy of a current Benefit Card at the time of the physical test.

**A - 00018**

USA002575

,29 - Page 3

...dates must pass the written test to be summoned for the physical test. Medical evidence to allow participation in the ...ical test may be required. Candidates will be required to undergo a drug screening on the day of the physical test. ...r candidates who pass both the written and physical tests, scores on the written and physical tests will be converted to ...andard scores. The standard score on each test will then be multiplied by the weight of that test, and these products will ...e added resulting in a combined weighted standardized score. Ranking of candidates will be based on this combined ...eighted standardized score. This combined weighted standardized score will then be transformed to scores between 70 ...nd 100. Only those candidates who receive a score between 70 and 100 will be credited with Veterans' credit, if ...pplicable, and New York City Residency credit, if applicable.

...ew York City Residency Credit: Five points will be added to the final exam score of those candidates who qualify for ...ew York City Residency credit. To be eligible for the residency credit, a candidate must achieve a passing score on both ...he written test and the physical test, and must maintain a continuous period of residency in New York City from August ..., 1999 through August 1, 2000. Candidates interested in seeking the residency credit will be given an opportunity to ...equest the credit at the time of the written examination. Candidates who pass the written test will also be provided with an opportunity ...o request the credit at the time of the physical test. In any event, all requests for the residency credit must be received by ...he Department of Citywide Administrative Services, Bureau of Examinations, 2 Washington Street, New York, NY 10004, ...n writing, prior to the establishment of the list.

Eligibility for the residency credit will be investigated by the Fire Department of New York. Candidates will be required ...o produce written verification of the candidate's New York City residency from August 1, 1999 through August 1, 2000. The documents presented must represent the period of time for which you are claiming City residency. Inability to produce the required verification of residence documents for the continuous period of residency will result in the forfeiture of the New York City Residency Credit and an adjustment in the final score. Documents that will be investigated to prove New York City residency will include, but are not limited to, a copy of a lease or mortgage in the candidate's name plus one of the following (also in the candidate's name): telephone bills; gas, electric or water utility bills; checking or savings account statements; cable TV bills; or credit card statements. The Fire Department of New York reserves the right to accept other documents, in lieu of the above, under special circumstances which validate various living arrangements, such as residing with parents, etc., as determined by the Department. As in the case of any intentional misrepresentation of a material fact on an employment application, candidates who claim New York City residency credit and who are determined to have intentionally misrepresented facts concerning New York City residency shall be disqualified and their names shall be removed from the eligible list, and they may be subject to criminal sanctions.

Legacy Credit: Five points will be added to the final score of those candidates who qualify for the "Legacy Credit". A candidate shall qualify for the "Legacy Credit" if his or her parent has died while engaged in the discharge of his or her duties as a uniformed member of the New York City Fire Department, New York City Police Department, NYC Transit Police Department or NYC Housing Authority Police Department.

To be eligible for this credit, a candidate must achieve a passing score on both the written and the physical tests.

Candidates who pass the written test and are summoned to the physical test will be able to claim legacy credit at the physical test site. All such claims will be investigated.

HE TEST RESULTS: If you pass both the multiple-choice test and physical test, your name will be placed in score order on an eligible list and you will be given a list number. You will be notified by mail of your test results. If you meet all requirements and conditions, you will be considered for appointment when your name is reached on the eligible list.

DDITIONAL INFORMATION:

Investigation: This position is subject to investigation before appointment. At the time of investigation, eligibles will be required to pay a $50.00 fee for fingerprint screening.

At the time of investigation and at the time of appointment, eligibles must present originals or certified copies of all required documents and proof, including, but not limited to, proof of date and place of birth by transcript of record of the Bureau of Vital Statistics or other satisfactory evidence, naturalization papers if necessary, proof of any military service, and proof of meeting educational requirements.

Any willful misstatement or failure to present any documents required for investigation will be cause for disqualification.

Probationary Period: The probationary period is 12 months. As part of the probationary period, probationers will be required to successfully complete a prescribed training course. Probationers who fail to complete successfully such training course, at the close of such training course, may be terminated by the agency head.

List Termination: The eligible list resulting from this examination will be terminated one year from the date it is established, unless extended by the Commissioner.

A - 00019

USA002576

xam. No. 7029 - Page 4

**ECIAL TEST ACCOMMODATIONS:** If you plan to request special testing accommodations due to disability or an alternate test date due to your religious belief, follow the instructions included with the "Application for Examination."

The General Examination Regulations of the Department of Citywide Administrative Services apply to this examination and are part of this Notice of Examination. They are posted and copies are available in the Applications Section of the Division of Citywide Personnel Services, 18 Washington Street, NY, NY.

The City of New York is an Equal Opportunity Employer.
Title Code No. 70310;  Fire Service.

For Recorded Information about Jobs and Examinations, Outside City Jobs, Call 212-487-JOBS

A - 00020

USA002577



MICHAEL R. BLOOMBERG
Mayor

MARTHA K. HIRST
Commissioner

**THE CITY OF NEW YORK
DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES
APPLICATIONS CENTER
18 WASHINGTON STREET
NEW YORK, NY 10004**

# NOTICE
# OF
# EXAMINATION

| REQUIRED FORMS |
|---|
| APPLICATION FORM |

## FIREFIGHTER

**Exam. No.   2043**
**Second Amended Notice (September 25, 2002)**

**WHEN TO APPLY:**  From: June 28, 2002          **APPLICATION FEE: $35.00**
                    To:    October 31, 2002

**THE TEST DATE:**  Multiple-choice test expected to be held on Saturday, December 14, 2002.

The Notice of Examination is amended to:
1.  extend the end of the filing period from September 30, 2002 to October 31, 2002;
2.  change the test date from November 23, 2002 to December 14, 2002; and
3.  add references to online filing to the  "HOW TO APPLY" and "SPECIAL TEST ACCOMMODATIONS" sections.

**WHAT THE JOB INVOLVES:** Under supervision, Firefighters assist in the control and extinguishment of fires, in providing pre-hospital emergency medical care, and in the enforcement of laws, ordinances, rules and regulations regarding the prevention, control and extinguishment of fires, as well as perform Fire Safety Education activities; perform inspections and related enforcement duties to assure compliance with provision of Fire Prevention Code and applicable section of Building Code, multiple Dwelling Code, Housing Maintenance Code, Labor Law and other laws, rules, regulations, within enforcement purviews of Fire Department; perform inspection of equipment and schedule as necessary the maintenance of various tools and equipment, including but not limited to S.C.B.A. power tools, company apparatus, and personal safety equipment; and perform related work.

Some of the physical activities performed by Firefighters and environmental conditions experienced are: wearing protective clothing, such as bunker suit, helmet, boots and breathing apparatus; crawling, crouching and standing, often for prolonged periods, while extinguishing fires; driving fire apparatus and other Department vehicles; climbing stairs, ladders and fire escapes; raising portable ladders; using forcible entry tools, such as axes, sledge hammers, power saws and hydraulic tools; searching for victims in smoke-filled hostile environments; carrying or dragging victims from dangerous locations; connecting, stretching and operating hose lines; locating hidden fire by feel and smell; providing medical assistance to injured or ill citizens; and providing control and mitigation of hazardous materials incidents while wearing chemical protective clothing.

(This is a brief description of what you might do in this position and does not include all the duties of this position.)

**THE SALARY:**  The current minimum salary is $32,724 per annum.  This rate is subject to change.  In addition, employees will receive holiday pay and night differential.

**HOW TO APPLY:** There are two ways to apply for this exam:

1.   Online at the DCAS Website: If you wish to apply online, browse to Online-Apps at http://nyc.gov/applyforexams, and follow the on-screen application instructions for filling out any required forms and electronically submitting your application. Fees for applications submitted online are payable only with a valid credit card.

*Exh. 4*

| READ CAREFULLY AND SAVE FOR FUTURE REFERENCE |
|---|

**A - 00013**

USA002570

Exam. No. 2043 - Page 2

2.    **By mail:** If you believe you meet the requirements in the "How to Qualify" section, refer to the "Required Forms" section below for the form (s) that you must fill out. Return all completed form (s) and the application fee to DCAS Applications Section, 1 Centre Street, 14th floor, New York, NY 10007. Fees for applications submitted by mail are payable only by money order to D.C.A.S. (EXAMS).

Applications will not be accepted in person.

**CFR-D REQUIREMENT:** You will be required to possess Certified First Responder Certification with Defibrillation (CFR-D) by the end of your probationary period. This certification must be maintained for the duration of employment.

Note: If you do not possess a CFR-D at the time of appointment, you will be required to obtain CFR-D training at your own expense, either at a training program of your own choosing or a training program provided by FDNY. The training course provided by FDNY will cost $775, although that cost is subject to change based upon the latest collective bargaining agreements regarding uniformed services salaries and the number of training hours in effect at the time of training. Upon successful completion of FDNY's CFR-D course and receipt of your CFR-D certificate, payroll deductions will commence at a rate of $30 per pay period until the total cost is recouped by FDNY.

**HOW TO QUALIFY:**

**Education and Experience Requirements:** By the date of appointment, you must have

(1)    successfully completed 30 semester credits from an accredited college or university, or

(2)    a four year high school diploma or its educational equivalent and have completed two years of honorable full-time U.S. military service.

You may be given the test before we check your qualifications.

**Driver License Requirement:** By the time you are appointed to this position, you must have a motor vehicle driver license valid in the State of New York. This license must be maintained for the duration of your employment.

**Medical and Psychological Requirements:** Medical and psychological guidelines have been established for the position of Firefighter. Candidates will be examined to determine whether they can perform the essential functions of the position of Firefighter. Additionally, employees will be expected to continue to perform the essential functions of the position of Firefighter throughout their careers, and may, therefore, be medically tested periodically throughout their careers. Where appropriate, a reasonable accommodation will be provided for a person with a disability to enable him or her to take these medical and psychological examinations, and/or to perform the essential functions of the job.

**Drug Screening Requirement:** You must pass a drug screening in order to be appointed. Drug tests will also be administered to all probationary Firefighters as part of the medical examination prior to the completion of probation.

**Residency Requirement:** The New York Public Officers Law requires that any person employed as a Firefighter in the Fire Department of New York be a resident of the City of New York or of Nassau, Westchester, Suffolk, Orange, Rockland or Putnam Counties.

**English Requirement:** Candidates must be able to understand and be understood in English.

**Proof of Identity:** Under the Immigration Reform and Control Act of 1986, you must be able to prove your identity and your right to obtain employment in the United States prior to employment with the City of New York.

**Citizenship Requirement:** United States citizenship is required at the time of appointment.

**Age Requirement:** Pursuant to Section 54 of the New York Civil Service Law and Section 15-103 of the Administrative Code, you must be at least 17½ years of age by the end of the application period and you must not have reached your twenty-ninth birthday by the beginning of the application period to be eligible to take this examination. However, you must have reached your twenty-first birthday to be eligible for appointment.

**Exception to the Age Requirement:** All persons who were engaged in military duty as defined in Section 243 of the New York State Military Law may deduct from their actual age the length of time spent in such military duty provided the total deduction for military duty does not exceed six years.

**Character and Background:** Proof of good character and satisfactory background will be an absolute prerequisite to appointment. In accordance with provisions of law, persons convicted of a felony or who have received a dishonorable discharge from the Armed Forces are not eligible for appointment to this position.

**A - 00014**

USA002571

- M3 - Page 3

ED FORM(S):

**Application for Examination:** Make sure that you follow all instructions included with your application form, including payment of fee. Save a copy of the instructions for future reference.

**THE TEST:** There will be a written multiple-choice test, weight 50, and a physical test, weight 50. The pass mark for the written test will be determined after an analysis of the test results.

The written test is designed to test the candidate's ability to learn and to perform the work of a Firefighter. It may include questions involving the understanding of written language and information, using language to communicate information or ideas to other people, memorizing information, recognizing or identifying the existence of problems, applying general rules to specific situations, applying prioritized rules to specific situations, determining position or spatial orientation within a larger area, visualizing how objects or structures might appear from different perspectives or after changes, finding a rule or concept which fits or describes a situation, and other related areas.

The physical test will consist of a series of events designed to test the candidate's capacity to perform the physical aspects of a Firefighter's job. A more detailed description of the physical test will be made available at a later date. Candidates called to participate in the physical test will be required to pay an additional fee prior to taking the physical test and will be notified of the method of payment prior to the physical test. Failure to pay the additional application fee, in a timely manner, will result in disqualification from further participation in the examination. The additional application fee for the physical test will be waived for a New York City resident receiving public assistance who submits a clear photocopy of a current Benefit Card at the time of the physical test.

Candidates must pass the written test to be summoned for the physical test. Medical evidence to allow participation in the physical test may be required.

For candidates who pass <u>both</u> the written and physical tests, scores on the written and physical tests will be converted to standard scores. The standard score on each test will then be multiplied by the weight of that test, and these products will be added resulting in a combined weighted standardized score. Ranking of candidates will be based on this combined weighted standardized score. This combined weighted standardized score will then be transformed to scores between 70 and 100. Only those candidates who receive a score between 70 and 100 will be credited with Veterans' credit, if applicable, and New York City Residency credit, if applicable.

**New York City Residency Credit:** Five points will be added to the final exam score of those candidates who qualify for New York City Residency Credit. To be eligible for the residency credit, a candidate must achieve a passing score on both the written test and the physical test, and must maintain a continuous period of residency in New York City from March 1, 2003 through March 1, 2004. Candidates interested in seeking the residency credit will be given an opportunity to request the credit at the written examination. Candidates who pass the written test will also be provided with an opportunity to request the credit at the time of the physical test. In any event, all requests for the residency credit must be received by the Department of Citywide Administrative Services, Bureau of Examinations, 1 Centre Street, 14th floor, New York, NY 10007, in writing, prior to the establishment of the list.

Eligibility for the residency credit will be investigated by the Fire Department of New York. Candidates will be required to produce written verification of the candidate's New York City residency from March 1, 2003 through March 1, 2004. The documents presented must represent the period of time for which you are claiming City residency. Inability to produce the required verification of residence documents for the continuous period of residency will result in the forfeiture of the New York City Residency Credit and an adjustment in the final score. Documents that will be investigated to prove New York City residency will include, but are not limited to, a copy of a lease or mortgage in the candidate's name plus one of the following (also in the candidate's name): telephone bills; gas, electric or water utility bills; checking or savings account statements; cable TV bills; or credit card statements. The Fire Department of New York reserves the right to accept other documents, in lieu of the above, under special circumstances which validate various living arrangements, such as residing with parents, etc., as determined by the Department. As in the case of any intentional misrepresentation of a material fact on an employment application, candidates who claim New York City residency credit and who are determined to have intentionally misrepresented facts concerning New York City residency shall be disqualified and their names shall be removed from the eligible list, and they may be subject to criminal sanctions.

**Legacy Credit:** Five points will be added to the final score of those candidates who qualify for the "Legacy Credit." A candidate shall qualify for the "Legacy Credit" if his or her parent has died while engaged in the discharge of his or her duties as a uniformed member of the New York City Fire Department, New York City Police Department, New York City Transit Police Department, New York City Housing Authority Police Department, or New York City Department of Correction.

To be eligible for this credit, a candidate must achieve a passing score on both the written and the physical tests.

Candidates who pass the written test and are summoned to the physical test will be able to claim legacy credit at the physical test site. Candidates who become qualified for "Legacy Credit" after taking the physical test, but before the date the eligible list is established, can apply by writing to DCAS, Examining Service Section, 1 Centre Street, 14th floor, New York, NY 10007. Claims for "Legacy Credit" cannot be made once the eligible list is established. All such claims will be investigated.

**A - 00015**

USA002572

Exam. No. 2043 - Page 4

**ADMISSION CARD:** You should receive an Admission Card in the mail about 10 days before the date of the written test. If you do not receive an Admission Card at least 4 days before the test date, you must go to the Examining Service Section, 1 Centre Street, 14th floor, Manhattan, to obtain a duplicate card.

**THE TEST RESULTS:** If you pass the multiple-choice test and physical test, your name will be placed in score order on an eligible list and you will be given a list number. You will be notified by mail of your test results. If you meet all requirements and conditions, you will be considered for appointment when your name is reached on the eligible list.

**ADDITIONAL INFORMATION:**

**Investigation:** This position is subject to investigation before appointment. At the time of investigation, eligibles will be required to pay a $50.00 fee for fingerprint screening.

At the time of investigation and at the time of appointment, eligibles must present originals or certified copies of all required documents and proof, including, but not limited to, proof of date and place of birth by transcript of record of the Bureau of Vital Statistics or other satisfactory evidence, naturalization papers if necessary, proof of any military service, and proof of meeting educational requirements.

Any willful misstatement or failure to present any documents required for investigation will be cause for disqualification.

**Probationary Period:** The probationary period is 12 months. As part of the probationary period, probationers will be required to successfully complete a prescribed training course. Probationers who fail to complete successfully such training course, at the close of such training course, may be terminated by the agency head.

**List Termination:** The eligible list resulting from this examination will be terminated one year from the date it is established, unless extended by the Commissioner.

**Promotion Test:** A promotion examination for this title is being held for eligible City employees. The names appearing on the promotion list will be considered first in filling vacancies.

**SPECIAL TEST ACCOMMODATIONS:** If you plan to request special testing accommodations due to disability or an alternate test date due to your religious belief, and

1. you are filing an application online, follow the on-screen instructions, or

2. you are filing an application by mail, follow the instructions included with the "Application for Examination."

The General Examination Regulations of the Department of Citywide Administrative Services apply to this examination and are part of this Notice of Examination. They are posted and copies are available in the Applications Center of the Division of Citywide Personnel Services, 18 Washington Street, NY, NY.

The City of New York is an Equal Opportunity Employer.

Title Code No. 70310; Fire Service.

For Information About Other Exams and Your Exam or List Status, Call 212-669-1357
Internet: nyc.gov/html/dcas

A - 00016

USA002573

**Exhibit C**



**DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES**
DIVISION OF CITYWIDE PERSONNEL SERVICES

MUNICIPAL BUILDING, 21ˢᵗ Floor South
NEW YORK, N.Y. 10007
(212) 669-2244 Fax (212) 669-3101/2

WILLIAM J. DIAMOND            JOSEPH A. DeMARCO
*Commissioner*                *Deputy Commissioner*

TO:       Candidates for Firefighter Physical Test

FROM:     NYC Department of Citywide Administrative Services

---

Congratulations! You have passed the written test for Firefighter Examination No. 7029/Promotion to Firefighter, Examination No. 7514. The passmark for the written test is 84.705. Since you achieved a written test score of 84.705 or higher, you are being scheduled for the physical test.

You should receive an Admission Card in the mail in mid-fall of this year.

Enclosed are the following:

- a description of the test
- a Medical Certification Form which your doctor <u>must</u> sign and which you <u>must</u> submit when you arrive at the physical test site
- a Medical Advisory memo and
- a Physical Fitness Test Release Form which you <u>must</u> submit when you arrive at the physical test site.

**TEST TIME AND DATE:**      The date and time you are summoned for the physical test, along with the location of the test site, will appear on your Admission Card. Starting on October 1, 1999, you can call (212) 487-6430 for recorded information on the physical test scheduling.

**EXAMINATION FEE:**         On the date you are scheduled to take this test, you must bring with you to the test site a money order for $25.00, payable to D.C.A.S (EXAMS). Your social security number and "Firefighter Physical Test" must be written on the money order. <u>CASH AND CHECKS WILL NOT BE ACCEPTED.</u>

<u>**CANDIDATES WITHOUT APPROPRIATE MONEY ORDERS WILL NOT BE TESTED.**</u>

This examination fee will be waived <u>only</u> for New York City residents who are receiving public assistance, and who submit a clear copy of their Benefit cards (formerly known as Medicaid cards) in place of the money order.

Exh. 21

00921

USA001477

**TEST RESCHEDULING:** If you are unable to take this test at the time indicated on your Admission Card due to one of the reasons listed below, you must notify our Examining Service Section, 2 Washington Street, 17th Floor, Manhattan, as soon as possible, in person, or by certified or registered mail.

According to the Department of Citywide Administrative Services General Examination Regulations (Section E.11), in order to have a test rescheduled, a candidate must provide at the earliest possible date documentation of a valid reason (e.g., religious observances, military service, compulsory court appearance, death in the immediate family), for the inability to attend the test session. We cannot reschedule tests for reasons of personal convenience.

**LOCKERS:** Small lockers will be available for you to store your belongings while you are taking the test. **You must, however, bring your own combination lock to put on the locker.** Please do not bring any valuables with you to the test site.

**TRAINING GUIDE:** Starting on August 2, 1999, you may pick up one copy of the Training Guide for the Physical Test between the hours of 10:00 AM and 4:00 PM, Monday through Friday, at the New York City Department of Citywide Administrative Services, 18 Washington St., New York, NY 10004. The last day the Training Guide will be available is August 31, 1999. **You must present the receipt at the bottom of this page when you pick up your Training Guide.**

**NOTE:** This test involves physical activity and exertion. You are advised to wear sneakers and comfortable clothing, including long pants. You should wear this clothing to the test site, since facilities that allow you to change may not be available. Work gloves will be supplied at the test site.

Since the test involves physical exertion, you are also advised to not eat or drink large quantities of food or liquids for at least two hours before the test. You should, however, avoid becoming dehydrated.

ANY CANDIDATE WHO COMMENCES THE PHYSICAL TEST IS REQUIRED TO COMPLETE IT ON SCHEDULE IN THE PRESCRIBED MANNER. NO SECOND OPPORTUNITY WILL BE OFFERED UNLESS A MANIFEST ERROR BY THE DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES HAS OCCURRED.

YOU SHOULD NOT BRING CHILDREN, FRIENDS, OR FAMILY MEMBERS WITH YOU TO THE TEST SITE, SINCE THEY WILL NOT BE ADMITTED TO THE BUILDING, AND THERE ARE NO OTHER FACILITIES FOR THEIR ACCOMMODATION DURING YOUR TEST.

- - - - - - - - - - - - - - - - - - (Detach here) - - - - - - - - - - - - - - - - - -

### RECEIPT FOR TRAINING GUIDE FOR THE FIREFIGHTER PHYSICAL

I, _____, have received a copy of the Training Guide
(Print name)

for the Firefighter Physical.

_____                    _____
(Monitor's initials)                                            (Date)

00922

USA001478

FIREFIGHTER
EXAM. NO. 7029
EXPLANATION OF TEST SCORES

Congratulations, you passed the examination for Firefighter, Exam. No. 7029. You had to achieve a written test score of 84.705 or greater in order to be eligible to take the physical test part of this examination. In order to pass the physical test, you had to pass 6 out of the 8 physical test events (75%). You had to pass both the written and physical tests in order to pass the overall examination. The enclosed Notice of Result card includes the following test information:

> Final Average (Part H)
> Written Test Score (Part E)
> Physical Test Score (Part U)
> Residency Credit, if applicable (Part R)
> Legacy Credit, if applicable (Part Y)
> Veterans Preference, if applicable
> Adjusted Final Average
> List Number

## I.  COMPUTING YOUR FINAL AVERAGE (Part H)

### A.  Computing your Standardized Written Test Score

Your standardized written test score was computed by subtracting the average of all candidates' written test scores (91.230) from your written test score (Part E), and dividing the result by the standard deviation of the written test (9.308). Round the product to 5 decimal places. Note that your standardized written test score may be either a positive or a negative number.

### B.  Computing your Standardized Physical Test Score

Your standardized physical test score was computed by subtracting the average of all candidates' physical test scores (87.262) from your physical test score (Part U), and dividing the result by the standard deviation of the physical test (15.582). Round to 5 decimal places. Note that your standardized physical test score may be either a positive or a negative number.

### C.  Computing your Combined Weighted Standard Score

1. Your Standardized Written Test Score was multiplied by the weight of the written test (.50) to produce your Weighted Standardized Written Test Score. Round to 5 decimal places.

2. Your Standardized Physical Test Score was multiplied by the weight of the physical test (.50) to produce your Weighted Standardized Physical Test Score. Round to 5 decimal places.

3. Your Weighted Standardized Written Test Score and your Weighted Standardized Physical Test Score were then added together to produce your Combined Weighted Standard Score. Round to 3 decimal places.

### D.  Computing your Transformed Score

Your Transformed Score was computed by multiplying your Combined Weighted Standard Score by 18.47290640394088699 and rounding the product to 3 decimal places. The product was then added to 83.74384236453 and rounded to 3 decimal places to produce your Transformed Score.

### E.  Computing your Final Average (Part H)

Your Final Average (Part H) was computed by adding your Residency Credit, if applicable (5 points) and Legacy Credit, if applicable (5 points) to your Transformed Score.

## II.  COMPUTING YOUR ADJUSTED FINAL AVERAGE

Your Adjusted Final Average was computed by adding your Veterans Preference, if applicable (5 points for Veterans; 10 points for Disabled Veterans) to your Final Average.

*Exh 35*            B-000007

USA004935

EXAMPLE OF HOW TO COMPUTE YOUR ADJUSTED FINAL AVERAGE

| Written Test Score (Part E) (50%) | Physical Test Score (Part U) (50%) | Residency Credit (Part R) | Legacy Credit (Part Y) | Veterans Preference |
|---|---|---|---|---|
| 96.750 | 100.000 | 5.000 | 5.000 | V |

**I.    COMPUTING YOUR FINAL AVERAGE (Part H)**

**A.    Computing your Standardized Written Test Score**

Standardized Written Test Score $= \dfrac{\text{Written Test Score (Part E) - 91.230}}{9.308}$

Standardized Written Test Score $= \dfrac{96.750 - 91.230}{9.308} = 0.59304$ (Round to 5 decimal places)

**B.    Computing your Standardized Physical Test Score**

Standardized Physical Test Score $= \dfrac{\text{Physical Test Score (Part U) - 87.262}}{15.582}$

Standardized Physical Test Score $= \dfrac{100.000 - 87.262}{15.582} = 0.81748$ (Round to 5 decimal places)

**C.    Computing your Combined Weighted Standard Score**

1.    Weighted Standardized Written Test Score = Standardized Written Test Score x .50

Weighted Standardized Written Test Score = 0.59304 x .50 = 0.29652 (Round to 5 decimal places)

2.    Weighted Standardized Physical Test Score = Standardized Physical Test Score x .50

Weighted Standardized Physical Test Score = 0.81748 x .50 = 0.40874 (Round to 5 decimal places)

3.    Combined Weighted Standard Score = Weighted Standardized Written Test Score + Weighted Standardized Physical Test Score

Combined Weighted Standard Score = 0.29652 + 0.40874 = 0.705 (Round to 3 decimal places)

**D.    Computing your Transformed Score**

Transformed Score = (Combined Weighted Standard Score x 18.472906403940886699) (Round to 3 decimal places) + 83.74384236453

Transformed Score = (0.705 x 18.472906403940886699) (Round to 3 decimal places) + 83.74384236453 = 96.767 (Round to 3 decimal places)

**D.    Computing your Final Average (Part H)**

Final Average = Transformed Score + Residency Credit, if applicable + Legacy Credit, if applicable

Final Average = 96.767 + 5.000 + 5.000 = 106.767

**II.    COMPUTING YOUR ADJUSTED FINAL AVERAGE**

Adjusted Final Average = Final Average + Veterans Preference points, if applicable

Adjusted Final Average = 106.767 + 5 = 111.767

B-000008

USA004936

FIREFIGHTER, EXAM. NO. 2043
EXPLANATION OF TEST SCORES

$\mathcal{E} \not{\varphi} h. \ 36$

Congratulations. You have passed the examination for Firefighter, Exam. No. 2043. In order to have been eligible to take the physical test part of this examination, you had to achieve a written test score of 70.000 or greater. In order to pass the physical test, you had to pass 6 out of the 8 physical test events (75%). You had to pass both the written and physical tests in order to pass the overall examination. The enclosed Notice of Result card includes the following test information:

    Final Average (Part H)
    Written Test Score (Part E)
    Physical Test Score (Part U)
    Residency Credit, if applicable (Part R)
    Legacy Credit, if applicable
    Veteran's Preference, if applicable
    Adjusted Final Average
    List Number

I.    COMPUTING YOUR FINAL AVERAGE (Part H)

    You must "round off" all calculations to 3 decimal places as indicated below.

    A.    Computing your Standardized Written Test Score

        Your standardized written test score was computed by subtracting the average of all candidates' written test scores (89.263) from your written test score (Part E), rounding to 3 decimal places, and dividing the result by the standard deviation of the written test (9.699). Again, round the product to 3 decimal places. Note that your standardized written test score may be either a positive or a negative number.

    B.    Computing your Standardized Physical Test Score

        Your standardized physical test score was computed by subtracting the average of all candidates' physical test scores (89.494) from your physical test score (Part U), rounding to 3 decimal places, and dividing the result by the standard deviation of the physical test (14.855). Again, round to 3 decimal places. Note that your standardized physical test score may be either a positive or a negative number.

    C.    Computing your Combined Weighted Standard Score

        1.    Your Standardized Written Test Score was multiplied by the weight of the written test (.50) to produce your Weighted Standardized Written Test Score.

        2.    Your Standardized Physical Test Score was multiplied by the weight of the physical test (.50) to produce your Weighted Standardized Physical Test Score.

        3.    Your Weighted Standardized Written Test Score and your Weighted Standardized Physical Test Score were then added together to produce your Combined Weighted Standard Score. Round to 3 decimal places.

    D.    Computing your Transformed Score

        Your Transformed Score was computed by multiplying your Combined Weighted Standard Score by 12.7226, then adding 88.4606 and rounding to 3 decimal places.

    E.    Computing your Final Average (Part H)

        Your Final Average (Part H) was computed by adding your Residency Credit, if applicable (5 points) to your Transformed Score.

II.   COMPUTING YOUR ADJUSTED FINAL AVERAGE

        Your Adjusted Final Average was computed by adding your Veteran's Preference, if applicable (5 points for Veterans; 10 points for Disabled Veterans) and Legacy Credit, if applicable (10 points) to your Final Average.

B-000003

USA004931

EXAMPLE OF HOW TO COMPUTE YOUR ADJUSTED FINAL AVERAGE

| Written Test Score (Part E) (50%) | Physical Test Score (Part U) (50%) | Residency Credit (Part R) | Legacy Credit | Veterans Preference |
|---|---|---|---|---|
| 96.750 | 100.000 | 5.000 | 10.000 | V |

I.    COMPUTING YOUR FINAL AVERAGE (Part H)

    A.    Computing your Standardized Written Test Score

$$\text{Standardized Written Test Score} = \frac{\text{Written Test Score (Part E)} - 89.263}{9.699}$$

$$\text{Standardized Written Test Score} = \frac{96.750 - 89.263}{9.699} = 0.772$$

    B.    Computing your Standardized Physical Test Score

$$\text{Standardized Physical Test Score} = \frac{\text{Physical Test Score (Part U)} - 89.494}{14.855}$$

$$\text{Standardized Physical Test Score} = \frac{100.000 - 89.494}{14.855} = 0.707$$

    C.    Computing your Combined Weighted Standard Score

        1.    Weighted Standardized Written Test Score = Standardized Written Test Score x .50

            Weighted Standardized Written Test Score = 0.772 x .50 = 0.386

        2.    Weighted Standardized Physical Test Score = Standardized Physical Test Score x .50

            Weighted Standardized Physical Test Score = 0.707 x .50 = 0.354

        3.    Combined Weighted Standard Score = Weighted Standardized Written Test Score + Weighted Standardized Physical Test Score

            Combined Weighted Standard Score = 0.386 + 0.354 = 0.740

    D.    Computing your Transformed Score

        Transformed Score = (Combined Weighted Standard Score x 12.7226) + 88.4606

        Transformed Score = (0.740 x 12.7226) + 88.4606 = 97.875

    E.    Computing your Final Average (Part H)

        Final Average = Transformed Score + Residency Credit, if applicable

        Final Average = 97.875 + 5.000 = 102.875

II.    COMPUTING YOUR ADJUSTED FINAL AVERAGE

        Adjusted Final Average = Final Average + Veteran's Preference points, if applicable + Legacy Credit, if applicable

    Adjusted Final Average = 112.875 + 5.000 + 10.000 = 117.875

**B-000004**

USA004932

**Exhibit E**



FIRE DEPARTMENT
9 METROTECH CENTER      BROOKLYN, N.Y. 11201-3857

CANDIDATE INVESTIGATION DIVISION      ROOM 6N-5

ᴍᴡ

3083
7029

February 24, 2003

### NOTICE OF PERSONNEL ACTION

Re:    Title: **FIREFIGHTER**
Exam:    **7029**
List Num:  3083
Soc.Sec.No:

THE FIRE COMMISSIONER HAS MADE THE DECISION AND TAKEN THE ACTION(S) INDICATED BELOW IN CONNECTION WITH THE ABOVE-MENTIONED POSITION.

DECISION:   **NOT QUALIFIED; REQUIREMENTS**

REASONS:    **CFRD & COLLEGE CREDITS**

If and when you correct the reason for your disqualification, you may request reconsideration by contacting the New York City Fire Department, Candidate Investigation Division, 6th floor, 9 Metro Tech Center, Brooklyn, NY 11201. Your case will then be reconsidered, provided the list upon which your name appears is still in existence, and provided further that you submit a satisfactory explanation for your failure to appear or cooperate.

Exh 91

**FDNY 002594**



# FIRE DEPARTMENT
9 MetroTech Center        Brooklyn, N.Y. 11201-3857

CANDIDATE INVESTIGATION DIVISION    Room 6N-5



June 27, 2005

## NOTICE OF PERSONNEL ACTION

**Re:**    Title: **FIREFIGHTER**
**Exam:**    2043
**List Num:** 1069
**Soc.Sec.No:** ████████████

THE FIRE COMMISSIONER HAS MADE THE DECISION AND TAKEN THE ACTION(S) INDICATED BELOW IN CONNECTION WITH THE ABOVE-MENTIONED POSITION.

DECISION:    **NOT QUALIFIED; REQUIREMENTS**

REASONS:    **INSUFFICIENT COLLEGE CREDITS**

If and when you correct the reason for your disqualification, you may request reconsideration by contacting the New York City **Fire Department, Candidate Investigation Division, 6th floor, 9 Metro Tech Center, Brooklyn, NY 11201.** Your case will then be reconsidered, provided the list upon which your name appears is still in existence, and provided further that you submit a satisfactory explanation for your failure to appear or cooperate.

*Exh 42*

mw

**Exhibit F**

Sherry Kavaler                                    February 22, 2008

Page 256

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------
UNITED STATES OF AMERICA,

          Plaintiff,

                    Civil Action No.
   - and -           07-CV-2067
                    (NGG)(RLM)
VULCAN SOCIETY, INC., for itself
and on behalf of its members,
MARCUS HAYWOOD, CANDIDA NUNEZ
and ROGER GREGG, individually and
on behalf of a class of all
others similarly situated,

          Plaintiff's-Intervenors,

     -against-

THE CITY OF NEW YORK, THE FIRE
DEPARTMENT OF THE CITY OF NEW YORK,
NEW YORK CITY DEPARTMENT OF CITYWIDE
ADMINISTRATIVE SERVICES, MAYOR
MICHAEL BLOOMBERG and NEW YORK CITY
FIRE COMMISSIONER NICHOLAS
SCOPPETTA, in their individual
and official capacities,

          Defendants.
--------------------------------------

      CONTINUED DEPOSITION OF SHERRY

KAVALER, taken by Plaintiff, at the offices of

Levy Ratner, PC, 80 Eighth Avenue, New York,

New York, on Friday, February 22, 2008, at

10:00 a.m., before ROBERT BLOOM, a Shorthand

Reporter and notary public, within and for the

State of New York.

815affc6-22cd-4b3f-be7d-fbc1d4511ce0

Sherry Kavaler                          February 22, 2008

Page 366

1                      S. Kavaler

2    go and do some outside research?

3         A.   They were free, if they wanted to do

4    outside research and make some calls by

5    reading the package and they wanted to do

6    research to bring more information to the PRB

7    they could do that.

8         Q.   How frequently did that occur?

9         A.   That I don't remember.

10        Q.   Was there any procedure in place for

11   somebody recusing themselves if they knew the

12   candidate or knew a relative of the candidate?

13        A.   No.   They didn't want to be there --

14   Commissioner Feehan would recuse himself when

15   his son came up with the PRB.   He said I

16   don't want to be around when you're talking

17   about my son.   I'm walking out the door.

18        Q.   Was there any inquiry made whether

19   anyone at the PRB panel knew the candidate?

20        A.   If they knew the candidate that would

21   be a positive thing because they would bring

22   insight into what was just on paper.

23        Q.   So it did happen that people knew the

24   candidate?

25        A.   Yes.

Sherry Kavaler

February 22, 2008

Page 367

S. Kavaler

1

2    Q.   How frequently did that happen?

3    A.   I'm sure probably at every one or

4    every other meeting there is some candidate

5    that is known.

6    Q.   And did it ever happen that someone

7    was a relative of someone on the PRB?

8    A.   Not so much the relative of the PRB

9    but maybe a relative of someone within the

10   Fire Department that the PRB people knew.

11   Q.   Were those people given extra

12   consideration?

13   A.   Yes.

14   Q.   And they were more likely to be

15   passed?

16   A.   Yes.

17   Q.   Were those people usually white?

18   A.   Oh, that I wouldn't remember.

19   Q.   Do you remember any black candidate

20   being given extra consideration because they

21   were known?

22   A.   I'm going to be very honest with you,

23   I think there were more white candidates

24   before the PRB than black candidates, and I

25   honestly do not remember specifics.

Exam Num:7029

| List Num | Ssn | Fname | Mname | Lname | Gender | Inv Desc | Certification | Appt Date |
|---|---|---|---|---|---|---|---|---|
| 00020V | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 01083 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 01643 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 02089 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 02218 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 02263.5 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 02308 | | | | | M | Qualified Appointed | | 09/12/04 |
| 02536.5 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 02543 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 02559 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 02584 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 02625 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 02817 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 02841V | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 02928 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03014 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03029 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03108 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 03124 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03341 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 03359 | | REDACTED | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03375 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03382 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03421 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03487.5 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 03496.7 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 03496.8 | | | | | M | Qualified Appointed | EMT-D | 09/12/04 |
| 03557 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03565 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03631 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03753.5 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03825 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03869 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03887V | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03920.2 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03922 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03925 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03970.5 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03977 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 03988 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04023 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04115 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04128 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04129.5 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04214 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04311 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04386 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04437 | | | | | M | Qualified Appointed | CFR-D | 09/12/04 |

| | | | | |
|---|---|---|---|---|
| 04483 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04516 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04517 | F | Qualified Appointed | CFR-D | 09/12/04 |
| 04561 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04594.3 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04658 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04673 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 04692 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04749 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04753 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04758 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 04810 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04917 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04958 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04995.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05035 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05044 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05062 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05063.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05070 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05110 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 05111 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 05186 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05189 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05211 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05257 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05265 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05300 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 05326 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05350 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05353 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05412 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 05415 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05480 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05505.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05534 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05571.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05676 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05720 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05731 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05778 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05786 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05792 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05799 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05822 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05846 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05848 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05911 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05913.2 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05921 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05952.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 05997 | M | Qualified Appointed | CFR-D | 09/12/04 |

REDACTED

| | | | | |
|---|---|---|---|---|
| 06012 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06034 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06036 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06040 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06051 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06073 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06090 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06110.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06140.5 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06152 | M | Qualified Appointed | A-EMT-4-Paramedic | 09/12/04 |
| 06158 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06171 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06193 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06197.1 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06206 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06207 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06215 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06223.5 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06281 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06308.5 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 06359.7 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06361 | M | Qualified Appointed | EMT-D | 09/12/04 |
| 06366 | M | Qualified Appointed | CFR-D | 09/12/04 |
| 04534 | M | Qualified Appointed | EMT-D | 12/05/04 |
| 06196.5 | M | Qualified Appointed | EMT-D | 12/05/04 |
| 01154.5 | M | Qualified Appointed | | 03/08/05 |
| 02025 | M | Qualified Appointed | CFR-D | 03/08/05 |
| 03097.7 | M | Qualified Appointed | CFR-D | 03/08/05 |
| 03477 | M | Qualified Appointed | CFR-D | 03/08/05 |
| 04594.1 | M | Qualified Appointed | EMT-D | 03/08/05 |
| 05176V | M | Qualified Appointed | CFR-D | 03/08/05 |
| 04951 | M | Qualified Appointed | CFR-D | 05/31/05 |
| 02371.5 | M | Qualified Appointed | | 09/25/05 |
| 04147.5 | M | Qualified Appointed | CFR-D | 09/25/05 |
| 04783 | M | Qualified Appointed | CFR-D | 09/25/05 |
| 04854.5 | M | Qualified Appointed | | 09/25/05 |
| 05973 | M | Qualified Appointed | | 01/15/06 |
| 03349 | M | Qualified Appointed | CFR-D | 04/11/06 |
| 05659 | M | Qualified Appointed | CFR-D | 04/11/06 |
| 05710 | M | Qualified Appointed | | 04/11/06 |
| 04161 | M | Qualified Appointed | CFR-D | 11/17/06 |
| 04403 | M | Qualified Appointed | EMT-D | 11/19/06 |
| 04765 | M | Qualified Appointed | | 11/19/06 |

REDACTED

**Exhibit H**

Firefighter, #7029 and Pro. to Firefighter, #7514
Passmarks and gender and ethnic information (based on proposed key)

| Passmark | | White (# taking O.C. = 12,820) (# taking Pro. = 343) | | Black (# taking O.C. = 1,724) (# taking Pro. = 79) | | Hispanic (# taking O.C. = 2,097) (# taking Pro. = 99) | | Asian (# taking O.C. = 178) (# taking Pro. = 9) | | Nat. Amer. (# taking O.C. = 37) (# taking Pro. = 0) | | Unknown (# taking O.C. = 315) (# taking Pro. = 4) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | # Passing | % Passing | # Passing | % Passing | # Passing | % Passing | # Passing | % Passing | # Passing | % Passing | # Passing | % Passing |
| 95.294 | O.C. | 6,662 | 51.97 % | 336 | 19.49 % | 625 | 29.80 % | 74 | 41.57 % | 17 | 45.95 % | 140 | 44.44 % |
| | Pro. | 241 | 70.26 % | 30 | 37.97 % | 40 | 40.40 % | 1 | 11.11 % | - | - | 3 | 75.00 % |
| 94.117 | O.C. | 7,739 | 60.37 % | 422 | 24.48 % | 779 | 37.15 % | 85 | 47.75 % | 22 | 59.46 % | 167 | 53.02 % |
| | Pro. | 266 | 77.55 % | 32 | 40.51 % | 50 | 50.51 % | 2 | 22.22 % | - | - | 3 | 75.00 % |
| 92.941 | O.C. | 8,595 | 67.04 % | 510 | 29.58 % | 928 | 44.25 % | 101 | 56.74 % | 24 | 64.86 % | 185 | 58.73 % |
| | Pro. | 288 | 83.97 % | 40 | 50.63 % | 58 | 58.59 % | 3 | 33.33 % | - | - | 3 | 75.00 % |
| 91.764 | O.C. | 9,299 | 72.54 % | 596 | 34.57 % | 1,063 | 50.69 % | 111 | 62.36 % | 25 | 67.57 % | 196 | 62.22 % |
| | Pro. | 301 | 87.76 % | 44 | 55.70 % | 69 | 69.70 % | 4 | 44.44 % | - | - | 3 | 75.00 % |
| 90.588 | O.C. | 9,879 | 77.06 % | 683 | 39.62 % | 1,188 | 56.65 % | 120 | 67.42 % | 27 | 72.97 % | 203 | 64.44 % |
| | Pro. | 308 | 89.80 % | 49 | 62.03 % | 76 | 76.77 % | 5 | 55.56 % | - | - | 3 | 75.00 % |
| 89.411 | O.C. | 10,357 | 80.79 % | 768 | 44.55 % | 1,300 | 62.00 % | 127 | 71.35 % | 29 | 78.38 % | 215 | 68.25 % |
| | Pro. | 315 | 91.84 % | 54 | 68.35 % | 81 | 81.82 % | 7 | 77.78 % | - | - | 3 | 75.00 % |
| 88.235 | O.C. | 10,764 | 83.96 % | 857 | 49.71 % | 1,397 | 66.62 % | 133 | 74.72 % | 30 | 81.08 % | 228 | 72.38 % |
| | Pro. | 326 | 95.04 % | 55 | 69.62 % | 83 | 83.84 % | 8 | 88.89 % | - | - | 4 | 100.00 % |
| 87.058 | O.C. | 11,056 | 86.24 % | 932 | 54.06 % | 1,465 | 69.86 % | 135 | 75.84 % | 30 | 81.08 % | 237 | 75.24 % |
| | Pro. | 329 | 95.92 % | 55 | 69.62 % | 90 | 90.91 % | 8 | 88.89 % | - | - | 4 | 100.00 % |
| 85.882 | O.C. | 11,300 | 88.14 % | 992 | 57.54 % | 1,542 | 73.53 % | 141 | 79.21 % | 30 | 81.08 % | 239 | 75.87 % |
| | Pro. | 332 | 96.79 % | 63 | 79.75 % | 92 | 92.93 % | 8 | 88.89 % | - | - | 4 | 100.00 % |
| 84.705 | O.C. | 11,518 | 89.84 % | 1,055 | 61.19 % | 1,608 | 76.68 % | 145 | 81.46 % | 30 | 81.08 % | 247 | 78.41 % |
| | Pro. | 335 | 97.67 % | 65 | 82.28 % | 93 | 93.94 % | 8 | 88.89 % | - | - | 4 | 100.00 % |

DCAS 004507

Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                       Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK,

                       Defendant.

------------------------------------------------------------------------ x

**DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF UNITED STATES' FIRST SET OF REQUESTS FOR ADMISSION (NOS. 1-23) AND SECOND SET OF INTERROGATORIES (NO. 33)**

Civil Action No.: 07-CV-2067
(Garaufis, J.)(Mann, M.J.)

Pursuant to Rule 33 and 36 of the Federal Rules of Civil Procedure, defendant responds and objects to plaintiff the United States' First Set of Requests for Admission (Nos. 1-23) Second Set of Interrogatories (NO. 33)as follows:

## GENERAL STATEMENT

1.     By responding to any request, defendant does not concede the materiality of the subject to which it refers. Defendant's responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information produced, or of the subject matter thereof, in any proceeding including the trial of this action or any subsequent proceeding.

2.     Defendant objects to these Requests to the extent the demand documents and information which are protected by the attorney-client or work-product privilege, or which constitute material prepared for litigation purposes.

3.     Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or of another ground for objecting to discovery with respect to that document or any other document, or its subject matter, or the information contained therein, or of defendants' right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

4.     Defendant objects in the entirety to any request for information from entities not represented by the Corporation Counsel of the City of New York.

5.     The fact that defendant objects to any interrogatory should not be construed to mean that information or documents responsive to such request exist. Similarly, the statement that defendant will undertake to search for information or documents in response to a particular interrogatory should not be construed to mean that information sought in the request in fact exist. Furthermore, the production of any documents or information that are otherwise subject to an objection is not a waiver of any objection as to any other information or document not produced.

6.     Defendant's responses should be interpreted consistent with the agreements of the parties set forth in III-V of the Attachment to the Initial Conference Questionnaire filed on July 20, 2007.

7.     These general objections apply to all of the interrogatories in addition to defendant's specific objections, and are incorporated by reference into each and every response set forth below.

## REQUESTS FOR ADMISSION

### ADMISSION NO. 1:

The disparity between the pass rate of black candidates on Written Exam 7029 and the pass rate of white candidates on Written Exam 7029 is equivalent to more than three (3) units of standard deviation.

### OBJECTION AND RESPONSE TO ADMISSION NO. 1:

Admits that in comparing the proportion of those White candidates who passed Written Exam 7029 with the proportion of Black candidates who passed Written Exam 7029, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

### ADMISSION NO. 2:

The disparity between the pass rate of Hispanic candidates on Written Exam 7029 and the pass rate of white candidates on Written Exam 7029 is equivalent to more than three (3) units of standard deviation.

### OBJECTION AND RESPONSE TO ADMISSION NO. 2:

Admits that in comparing the proportion of those White candidates who passed Written Exam 7029 with the proportion of Hispanic candidates who passed Written Exam 7029, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

- 3 -

## ADMISSION NO. 3:

The disparity between the pass rate of black candidates on Written Exam 2043 and the pass rate of white candidates on Written Exam 2043 is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 3:

Admits that in comparing the proportion of those White candidates who passed Written Exam 2043 with the proportion pf Black candidates who passed Written Exam 2043, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

## ADMISSION NO. 4:

The disparity between the pass rate of Hispanic candidates on Written Exam 2043 and the pass rate of white candidates on Written Exam 2043 is equivalent to more than three (3) units of standard deviation.

## OBJECTION AND RESPONSE TO ADMISSION NO. 4:

Admits that in comparing the proportion of those White candidates who passed written Exam 2043 with the proportion of Hispanic candidates who passed written Exam 2043, there was a difference greater than three units of standard error. As explained in the appendix to defendant's expert report when comparing two groups, the appropriate measure of difference in ranking would be designated by "units of standard error," which although being a subset of "standard deviation" is not synonymous with the term "standard deviation."

- 4 -

**Exhibit J**

 **EQUAL EMPLOYMENT PRACTICES COMMISSION**

## SUMMARY COMPLIANCE REPORT

**Agency:** New York City Fire Department

**Agency Head:** Nicholas Scoppetta, Commissioner        **EEO Officer:** Paulette Lundy

**Audit:**    New York City Fire Department's Recruitment Program for Examination No. 7029 (February 27, 1999)

| | |
|---|---|
| Date of Preliminary Findings Letter: | *May 25, 2000* |
| Date of Response Letter: | *September 14, 2000* |
| Compliance Initiated: | *May 2001* |
| Compliance Completed: | *October 2002* |
| Covering Months: | *April 2001 – October 2002* |

**Date: December 10, 2002**

   Pursuant to the findings and recommendations of the Equal Employment Practices Commission's (EEPC) Audit of the New York City Fire Department's (FDNY) Recruitment Program for Examination No. 7029 (February 27, 1999), EEPC initiated Audit Compliance with FDNY on May 1, 2001. The delay in initiating Audit Compliance was due to a series of letters after the Letter of Preliminary Determination was issued and a meeting with Fire Commissioner Von Essen. Audit Compliance was also suspended from October 18, 2001 to June 2002 due to the World Trade Center Disaster. FDNY's Final Compliance Report was submitted on October 29, 2002. Eleven of the seventeen required actions were completed. The following is a summary of the compliance reports.

## FDNY has implemented the following corrective actions:

2.   **The Department should grant five transfer points to field personnel who work as recruiters for at least two years.**

The FDNY stated that uniformed personnel who volunteer to work off their line in recruitment are awarded points for their service. The FDNY submitted a list of fifteen Firefighters and Officers who worked on the 1999 recruitment campaign. Five of the field personnel on the list received points. Those who did not meet the criteria were not given points, but received consideration when they requested a transfer or an assignment.

**EEPC 0271**

4.   The Advisory Committee should consist of one representative from each of the following FDNY fraternal organizations: the Vulcan Society, Hispanic Society, and United Women Firefighters.  One representative from each of three other fraternal organizations selected by the Fire Commissioner should also serve on this Committee.

FDNY said that Commissioner Scoppetta has selected three other fraternal organizations: Fire Flag EMS-NY, Columbian Society, and Emerald Society to be members of the Advisory Committee.

The required action was completed in July 2002.

5.   FDNY should have a designated annual budget to cover all recruitment expenses. This budget, at a minimum, should provide for approximately 25 employees and all Other Than Personnel Services (OTPS) expenses.

The FDNY submitted a breakdown of the Recruitment and Diversity Initiatives Unit operating budget.  It included $1,613,281 for 39 Personnel: 1 Battalion Chief; 15 Firefighters; 1 Captain; 20 Fire Cadets; 2 Civilians. Database and Web development Technicians were included as well. In addition, there was an additional $200,000 available for overtime.

The required action was completed in September 2002.

6.   The five-point residency bonus should be awarded after firefighter applicants pass the written portion of the exam.

FDNY said that it will follow DCAS' policy to add credits for residency to the final adjusted score of an applicant, not the mid-score.

The response to the required action was accepted in July 2002.

7.   Fire Marshals should be authorized to conduct field investigations of their residencies of firefighter applicants and these investigations should be conducted with the intent to remove applicants from the list who defraud the City.

The Fire Department stated that the mission of the Fire Marshal is to investigate cause and origin of fires.  The FDNY Bureau of Personnel's Candidate Investigation Unit conducts background investigations on all eligible applicants pending possible appointment from the civil service Firefighter list.  The Candidate Investigation Unit has strict criteria for awarding points.  The lack of adequate proof of residence will prevent the candidate from receiving residency credit; any falsification of records would result in disqualification of the candidates.  If the Department learns that a Firefighter misrepresented his/her residency status as an applicant he/she will be dismissed.

On November 27, 2002, this Commission requested in writing, the following information from the FDNY:

1.   The total number of applicants for the last exam;
2.   How the Candidate Investigation Unit determined proof of residence;

2

EEPC 0272

3.  How many candidates were found to have falsified their records;
4.  What happened to the candidates who were dismissed as a result of falsifying residence status; and
5.  How many candidates were dismissed or disqualified as a result of falsifying residence status.

FDNY submitted its response by fax on December 10, 2002 at 5:01 p.m.

The response to the required action was accepted in December 2002.

8.  **Training for CFRD should be included in the Fire Academy curriculum, as it was in the past.**

The Fire Department said that it still requires individuals to obtain their CFR-D certification by the end of their probationary period. However, if a probationary firefighter does not possess a CFR-D at the time of appointment, they will be required to obtain CFR-D training at their own expense, either at a training program of their own choice or a training provided by the Fire Department. The training course provided by the Department will cost $775. Upon successful completion of FDNY's CFR-D course and receipt of their CFR-D certificate, payroll deductions will commence at a rate of $30 per pay period until the total cost is recouped by the Fire Department.

The response to the required action was accepted in October 2002.

11. **The Department should retain a consultant to develop the tutorial for the next written firefighter's examination.    The members of the Advisory Committee should be involved in the selection of that consultant.**

The FDNY said that its Recruitment and Diversity Initiatives Unit has organized a free written examination training courses to assist candidates who filed to take the firefighter's exam. The training will cover general test taking information, nine ability areas, self study tips, multiple choice test strategies, preparation and review firefighter practice test. A copy of the Recruitment Unit Newsletter was submitted which listed the firefighter written exam training locations.

The required action was completed in October 2002.

12. **FDNY should develop a plan, which allows graduates of the Cadet Corps program to take a promotional test for firefighter.  This test offered annually, should also be given in January, allowing adequate time for background investigations prior to graduation from the Cadet Corps the following June.**

The FDNY said that it had petitioned NYS Civil Service Commission to deem the Fire Cadet title to a non-competitive title. The Department was also working with DCAS to issue an annual promotion exam that would cover Cadets and EMS personnel who wish to transition to firefighter. However, in the recent decision, Gallagher v. The City of New York, the FDNY was enjoined from using a separate promotional list for EMS personnel.

Per the court decision, the FDNY must merge the lists of candidates who took the open and the

**EEPC 0273**

promotional examinations. The court also stated that the position of firefighter is entry-level and there is not enough overlap for EMS workers to be promoted to the position of firefighter.

The response to the required action was accepted in October 2002.

14.  **The open-competitive exam for firefighters should be held biannually.**

The FDNY stated that while the open competitive exam for Firefighters is currently held every four years, it is examining the possibility of offering the exam every two years.

The response to the required action was accepted in October 2002.

15.  **All firefighter recruitment literature, including recruitment posters, should indicate that the Department is an equal opportunity employer.**

The FDNY said that all its recruitment literature, including recruitment posters, will indicate that the Department is an equal opportunity employer. FDNY submitted "Heroes Wanted" posters and a copy of their latest FDNY newsletter, which contained the slogan.

The required action was completed in October 2002.

16.  **The Department should develop and administer a training program for the physical portion of the firefighters' exam.**

The FDNY said that it cannot establish such a program, however, it encourages non-profit organizations and sports clubs, particularly New York's Sports Club, to assist candidates with their agility training.

The response to the required action was accepted in October 2002.

17.  **The Commissioner of the FDNY should disseminate an agency-wide memorandum to discuss audit findings.**

The attached memorandum from ACS' Commissioner to the staff was distributed on October 25, 2002.

The required action was completed in October 2002.


**FDNY has failed to implement the following corrective actions:**

1.  **There should be a year-round recruitment team for each borough. All recruitment teams should include at least one African-American, one Hispanic, one Asian-American and one Caucasian. No less than one recruiter should be a female.**

The Department stated that it continues to strive to assemble multi-cultural teams for recruitment on a year round basis. The present recruitment team includes persons of races and genders as specified in the recommendation.

4

**EEPC 0274**

This Commission requested the race and gender breakdown of the recruitment team. To date the FDNY has not provided this information. FDNY stated that the recruitment team changes on a daily basis and that it could not provide a breakdown of race and gender because it would not be accurate.

The FDNY is in partial compliance with this recommendation.

3.    **The Advisory Committee should be fully involved in all firefighter recruitment strategies and related decisions. In addition, management of the Fire Department should meet with the Committee at least on a quarterly basis and more frequently during the height of the recruitment campaign.**

The FDNY said that the last meeting of the Advisory Committee was held on August 19, 2002. The FDNY said that over the last several months the Commissioner, Deputy Commissioner for Administration, and Assistant Commissioner for EEO have met with the Vulcan Society, Hispanic Society and United Women Firefighters Association on separate occasions to discuss, among other matters, the strategy and operations of the Recruitment Unit. Meetings will continue to be held on a quarterly basis and the committee will be invited to comment and provide input on recruitment issues.

The FDNY has given no indication that the Advisory Committee is fully involved in all firefighter recruitment strategies and related decisions. The Commission requested verification in the form of a sign-in sheet, agenda, minutes or memo-to-file for the quarterly meetings. However, the FDNY said that no documentation was kept of the meeting. Documentation was not submitted.

The response to the required action was not accepted.

9.    **FDNY, specifically its Office of Employment Initiatives, should assume prime responsibility for developing and implementing a program or strategy to reduce attrition by applicants in the underutilization groups--minorities and women.**

The FDNY said that the Recruitment Unit with the assistance of various fraternal associations will encourage, orient and train potential candidates as well as create, maintain and track a database of potential candidates for information and continuous follow-up. The Recruitment Unit will also work with various organizations to assist in training and mentoring women candidates.

This Commission requested documentation on all its mentoring activities. The Department has yet to submit this information.

FDNY has not fully implemented this recommendation.

10.   **The Department should conduct an adverse impact study to determine if the new educational requirement disproportionately screens out members of historically**

5

EEPC 0275

under-represented groups. If the study reveals such disparate impact, the Department should conduct a validation study in accordance with the federal government's "Uniform Guidelines on Employee Selection Procedures."

The FDNY said that while it believes that the college requirement is relevant, they are giving the recommendation of conducting an adverse impact study ongoing consideration.

FDNY has not implemented this recommendation or provided a satisfactory alternative.

13. **The Fire Department should conduct an adverse impact study based on the results of the written examination. If the Department's study reveals that the test disproportionately screens out minority or female candidates, FDNY should conduct a validation study in accordance with the federal government's "Uniform Guidelines on Employee Selection Procedures."**

The Fire Department said that it is giving this recommendation ongoing consideration.

FDNY has not implemented this recommendation or provided a satisfactory alternative.


**Recommendation**

Based on the above information, we recommend that the Equal Employment Practices Commission issue a Letter of Final Determination to the Commissioner of the New York City Fire Department (FDNY), Nicholas Scoppetta, informing him that the agency has only implemented eleven of the seventeen recommended corrective actions. Regarding the outstanding corrective actions, and to ensure full compliance with the equal employment opportunity requirements of Chapters 35 and 36 of the City Charter, the Letter should request that FDNY's Commissioner respond, within thirty days, in detail with his intention to implement the outstanding corrective actions.

Based on FDNY's response this Commission should establish a post-compliance period of no more than sixty days for the implementation of these outstanding corrective actions. If after the post-compliance period, the Commission determines that the FDNY has not taken appropriate and effective corrective action(s), this Commission shall notify Commissioner Scoppetta in writing of this determination and the Commission should thereafter publish a report and recommend to the Mayor whatever appropriate corrective action(s) the Commission deems necessary to ensure compliance with equal employment opportunity pursuant to the requirements of Chapter 35 and 36 of the New York City Charter.

**EEPC 0276**

Respectfully Submitted,

Michelle M-Antoine
Compliance Coordinator

Lisa Badner, Counsel

Abraham May, Jr.
Executive Director

Attachment

7

EEPC 0277

**Exhibit K**



FIRE DEPARTMENT
9 MetroTech Center        Brooklyn, N.Y. 11201-3857

NICHOLAS SCOPPETTA
Fire Commissioner

January 14, 2003

Abraham May, Jr.
Executive Director
Equal Employment Practices Commission
253 Broadway, Suite 301
New York, New York 10007

Dear Mr. May:

I am writing in response to your December 11, 2002 Final Determination of the Audit concerning the New York City Fire Department's Recruitment Program for Examination 7029. I am pleased to learn that the Equal Employment Practices Commission (EEPC) has approved and accepted the many corrective actions implemented by the Fire Department. To follow-up on some of the actions considered outstanding by the EEPC, I have outlined some information below.

**Recommendation #1**
There should be year-round recruitment team for each borough. All recruitment teams should include at least one African American, one Hispanic, one Asian American and one Caucasian. No less than one recruiter should be a female.

**FDNY Response**
As previously stated, the Recruitment Unit is a dynamic unit and the composition therein changes on a daily/monthly basis. For your convenience, attached is a partial list of events along with the ethnicity/race and gender of the recruitment unit personnel who hosted the events/ presentations. See Attachment A.

**Recommendation #3**
The Advisory Committee should be fully involved in all firefighter recruitment strategies and related decisions. In addition, management of the Fire Department should meet with the Committee at least on a quarterly basis and more frequently during the height of the recruitment campaign.

**EEPC 0303**

**FDNY Response**
The last Advisory Committee meeting was held on August 19, 2002. An additional meeting was scheduled for December 5, 2002, after the scheduled written exam for firefighters on November 23, 2002. The December 5th meeting was cancelled due to the extension of the deadline for filing for the firefighter exam on October 31, 2002, and the written exam on December 14, 2002. A meeting of the Advisory Committee has been scheduled for January 30, 2003 at 2:00pm. A copy of the memo-to-file regarding the August 19, 2002 Advisory Committee meeting is attached. See Attachment B

**Recommendation #9**
FDNY, specifically its Office of Employment Initiatives, should assume prime responsibility for developing and implementing a program or strategy to reduce attrition by applicants in the underutilized groups-minorities and women.

**FDNY Response**
The Office of Recruitment and Diversity Initiatives is primarily responsible for developing and implementing a program to reduce attrition and has devised an "Attrition Prevention Plan" to respond to the attrition by applicants in the underutilized groups – minorities and women. Documents that summarize the "Attrition Prevention Plan, Mentoring Activities and various recruitment related activities are attached. See Attachment C.

**Recommendation #10**
The Department should conduct an adverse impact study to determine if the new educational requirement disproportionately screens out members of historically underrepresented groups. If the study reveals such disparate impact, the Department should conduct a validation study in accordance with the federal government's "Uniform Guidelines on Employee Selection Procedures."

**FDNY Response**
The Fire Department has not yet made a final determination concerning this study.

**Recommendation #13**
The Fire Department should conduct an adverse impact study based on the results of the written examination. If the Department's study reveals that the test disproportionately screens out minority or female candidates, FDNY should conduct a validation study in accordance with the federal government's guidelines on Employee Selection Procedures."

**FDNY Response**
The Fire Department has not yet made a final determination concerning this study.

Sincerely yours,

Nicholas Scoppetta

cc: Douglas White, Deputy Commissioner
    Paulette Lundy, Assistant Commissioner

**EEPC 0304**

**Exhibit L**

1                                                           1

2          IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF NEW YORK
3                Civil Action No. 07-CV-2067
        - - - - - - - - - - - - - - - - - - -x
4    UNITED STATES OF AMERICA,

5                      PLAINTIFF,

6    AND

7    VULCAN SOCIETY, INC., FOR ITSELF AND ON
     BEHALF OF ITS MEMBERS, CANDIDO NUNEZ,
8    MARCUS HAYWOOD AND ON BEHALF OF A CLASS
     OF ALL OTHERS SIMILARLY SITUATED,

9
                    PLAINTIFF-INTERVENORS,
10
     V.
11
     CITY OF NEW YORK, FIRE DEPARTMENT OF THE
12   CITY OF NEW YORK, NEW YORK CITY
     DEPARTMENT OF CITYWIDE ADMINISTRATIVE
13   SERVICES, MAYOR MICHAEL BLOOMBERG AND NEW
     YORK CITY FIRE COMMISSIONER NICHOLAS
14   SCOPPETTA, IN THEIR INDIVIDUAL AND
     OFFICIAL CAPACITIES,
15
                    DEFENDANTS.
16   - - - - - - - - - - - - - - - - - - -x
                         January 17, 2008
17                       9:47 a.m.
18
19       DEPOSITION of CAROL WACHTER, taken by
     Plaintiff, pursuant to Rule 30(b)(6)
20   Notice, held at the United States
     Attorney for the Eastern District of New
21   York, 271 Cadman Plaza East, Brooklyn,
     New York, before Jamie Ann Stanton, a
22   Shorthand Reporter and Notary Public of
     the State of New York
23               *       *       *
24
25

148

1                  C. Wachter

2    physical tests for firefighters?

3         A      I'm not sure what you mean.

4         Q      Well, are you aware that in

5    addition to passing the physical, passing

6    the written, getting an adjusted score,

7    there were certain criteria that a

8    candidate had to meet before he or she

9    could be appointed a firefighter?

10        A      Right.  They had to pass

11   medical, psychological investigations.

12   Yes.

13        Q      Were you aware of an education

14   requirement?

15        A      Yes.

16        Q      Were you aware of a requirement

17   that they have to have a driver's license?

18        A      If it's in the Notice of

19   Examination, then I was aware of it.  I

20   don't remember it offhand, but if it's in

21   the Notice, then, yes, I was aware of it.

22        Q      That's what I am interested in.

23   What was DCAS's role with regard to those

24   other criteria of selection?

25        A      In terms of the education

149

1                    C. Wachter

2    requirement, there was something that

3    Commissioner Von Essen was extremely

4    hepped up about.  He insisted that an

5    education requirement be added.  What

6    Commissioner Von Essen wanted,

7    Commissioner Von Essen got.

8         Q        Did DCAS question this

9    requirement?

10        A        Yes.  I'm pretty sure he did.

11        Q        Who at DCAS questioned it?

12        A        We did.  I did.  Tom Patitucci

13    did.

14        Q        What were you told?

15        A        As I said, what Commissioner Von

16    Essen wants, Commissioner Von Essen gets.

17        Q        So you were told to accept it?

18        A        Yes.

19        Q        Did you ever have any

20    conversations with Commissioner Von Essen

21    about the education requirement?

22        A        I attended meetings that he was

23    at where he said he wanted this.

24        Q        And could you tell me who was at

25    the meetings, and generally what was said

150

C. Wachter

1   at the meetings?

2       A       I will try to remember who -- I

3   mean, he -- Feehan would have been at the

4   meeting.  Whoever was Chief of Department

5   at the time would have been at the

6   meeting.  It was not Nigro.  It was two or

7   three people before him.  Fire

8   Department's Counsel would have been

9   there.  I don't remember his name.

10  Probably Sherry Kavaler.  From our side, I

11  was there, Tom Patitucci.  I don't know if

12  any other staff members would have been

13  there.  I think our legal person was

14  there.  I don't really remember who else.

15  I'm sure there were other people there

16  from the Fire Department.  Maybe their

17  medical director possibly?  I'm not sure.

18      Q       It's fair to say that you were

19  opposed to the education requirement?

20      A       You could say that.

21      Q       Is that a fair statement?

22      A       Yes, that's a fair statement.

23      Q       And Tom Patitucci was also

24  opposed to it?

25

151

1                      C. Wachter

2        A        I believe so.

3        Q        What was the basis of your

4    opposition?

5        A        We didn't see specific

6    justification for it.

7        Q        Anything else?

8        A        That was mainly the reason.

9        Q        Were you concerned about

10    increasing adverse impact?

11        A        Yes.

12        Q        Did you say anything about that?

13        A        Yes.

14        Q        What did you say?

15        A        Exactly that.

16        Q        What?

17        A        That we were concerned about its

18    effect on increasing adverse impact.  I

19    believe the Commissioner's position was

20    that he wanted to see a better educated

21    force the way the Police Department had

22    increased its education requirements for

23    entry-level as well as for the promotion

24    levels.  And the Fire Department did bring

25    in education requirements gradually for

152

C. Wachter

1   the higher officer positions as well.

2

3       Q      But you did raise the argument

4   about adverse impact?

5       A      Yes.  I'm pretty sure we did.

6       Q      And what were you told?

7       A      He wanted it.

8       Q      And he got it.

9              Do you know whether there was

10  any education requirement for 0084?

11      A      I don't think there was, but I

12  really don't remember offhand.  I would

13  have to see the Notice of Examination.  My

14  recollection is it was introduced for

15  7029.

16      Q      For these discussions that you

17  were having, can you give me some general

18  time frame about when they were?

19      A      I don't remember when the exam

20  was given.  I don't remember the time

21  frame of the exam itself.  But these

22  discussions would have been probably six

23  months to a year before the Notice of

24  Examination came out.  At least six months

25  before the Notice of Examination.

**Exhibit M**

1

2    IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF NEW YORK
3        Civil Action No. 07-CV-2067
     - - - - - - - - - - - - - - - - - - - -x
4  UNITED STATES OF AMERICA,

5            PLAINTIFF,

6  AND

7  VULCAN SOCIETY, INC., FOR ITSELF AND ON
   BEHALF OF ITS MEMBERS, CANDIDO NUNEZ,
8  MARCUS HAYWOOD AND ON BEHALF OF A CLASS
   OF ALL OTHERS SIMILARLY SITUATED,
9
            PLAINTIFF-INTERVENORS,
10
   V.
11
   CITY OF NEW YORK, FIRE DEPARTMENT OF THE
12  CITY OF NEW YORK, NEW YORK CITY
   DEPARTMENT OF CITYWIDE ADMINISTRATIVE
13  SERVICES, MAYOR MICHAEL BLOOMBERG AND NEW
   YORK CITY FIRE COMMISSIONER NICHOLAS
14  SCOPPETTA, IN THEIR INDIVIDUAL AND
   OFFICIAL CAPACITIES,
15
            DEFENDANTS.
16  - - - - - - - - - - - - - - - - - - - -x
                January 15, 2008
17                9:18 a.m.

18

19    DEPOSITION of ALBERTO JOHNSTON, taken
   by Plaintiff, pursuant to Rule 30(b)(6)
20  Notice, held at the United States
   Attorney for the Eastern District of New
21  York, 271 Cadman Plaza East, Brooklyn,
   New York, before Jamie Ann Stanton, a
22  Shorthand Reporter and Notary Public of
   the State of New York
23        *   *   *

24

25

\* \* \* \*

147

1        A. Johnston

2   this.  I've seen, just turning through the

3   events, I have seen whatever was used from

4   the previous exam, but not this.

5   Q    But not that study?

6   A    No.  Never.

7   Q    And I have already given it to

8   you, Plaintiff's Exhibit 54, which says on

9   the first page:  "Firefighter Exam No.

10   7029, Test Development Report."

11        Do you recognize this document

12   other than the fact that you have been

13   using it in this deposition?

14   A    (Reviewing exhibit.)  Yeah.

15   This is probably the job analysis report

16   that I assume that Matt did for the exam

17   that I took over -- I mean, that I used.

18   So yes, I definitely would have seen parts

19  of these, especially the results part.

20  That's what I used, right?

21    Q    But were you given a copy of

22  this --

23    A    I think I would speculate it had

24  to be somewhere in the file or something,

25  if I had it.  There was a lot of stuff

148

1        A. Johnston

2  there.  Sometimes we can't -- we don't

3  have enough -- part of the problem we have

4  is we don't have enough file spaces for

5  this stuff sometimes.  So this I think I

6  had access to.  Had to have had access to.

7    Q    Did you use it?

8    A    I probably looked over some of

9  it definitely.  Especially the results

10  part, because that's what I used.  So this

11  document, yes.  I mean, looking at it

12  right now, it just jumped right at me,

13  unlike these two foreign documents.  This

14  is -- yes, I had access to this, I think.

15      I might not have focused on all

16   the details because, as I mentioned

17   earlier, once I found that I am not

18   getting any people that are changing the

19   tasks or anything, I'm not looking to just

20   say, hey, I'm up here to go against what

21   these people are finding.  Right?

22      So yeah, this -- this is

23   different.  I have seen this before, I

24   think.

25   Q    Now, in terms of Exhibit 54, is

149

1      A. Johnston

2   there a similar report for Exam 2043?

3   A    Okay.  Because it was using a

4   previous job analysis, as far as I know, I

5   don't have to write up a job analysis

6   report because I am basically using the

7   test plan from a previous exam.

8   Q    Okay.

9   A    So this would probably be the --

10   because this is like, so-to-speak, this is

11    my bible saying that, hey, if something's

12    wrong, then it started right here

13    (indicating).  Right?  So I did not.  I

14    might have started first maybe to just put

15    something together and then I said it

16    makes no sense, there is no need for that.

17    Q    So you would consider this

18    document, Exhibit 54, to be the test

19    development report for 2043 as well?

20    A    Yes.  Because I have -- just to

21    digress.  I have people tests like traffic

22    enforcement agent, and sometimes they come

23    to me and say Alberto, I have got all this

24    stuff and missing here, can you find?  And

25    I would say yes, it should be the four