UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VULCAN SOCIETY INC., for itself and on behalf of its
members; MARCUS HAYWOOD, CANDIDO NUÑEZ,
and ROGER GREGG, individually and on behalf of a
class of all others similarly situated,

                                                        Plaintiffs,

                            -against-

THE CITY OF NEW YORK; THE FIRE DEPARTMENT
OF THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, MAYOR MICHAEL BLOOMBERG and
NEW YORK CITY FIRE COMMISSIONER NICHOLAS
SCOPPETTA, in their individual and official Capacities,

                                                        Defendants.
------------------------------------------------------------------X

**PLAINTIFFS-INTERVENORS'
[PROPOSED] AMENDED
COMPLAINT**

Civ. Action No. 07-CV-2067
(NGG)(RLM)

        The Vulcan Society Inc. (the "Vulcans") and Plaintiffs-Intervenors Marcus Haywood,

Candido Nuñez and Roger Gregg (collectively "Plaintiffs"), by and through their attorneys, Levy

Ratner, P.C., and the Center for Constitutional Rights, allege the following upon information and

belief against the City of New York ("City"), the New York Fire Department a/k/a the Fire

Department of the City of New York ("FDNY"), the New York City Department of Citywide

Administrative Services ("DCAS"), Mayor Michael Bloomberg and Fire Commissioner Nicholas

Scoppetta (collectively referred to as "Defendants").

## NATURE OF THE ACTION

        1.       This is an action brought to remedy discrimination in employment on the basis of

race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), as amended, 42 U.S.C. §§ 2000e, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New

York State Human Rights Law, New York Executive Law §§ 290 and 296, and New York City

{08013397}

Administrative Code §§ 8-101, et seq.  The action seeks declaratory and injunctive relief and compensatory and punitive damages both to secure future protection and to redress the past deprivation of rights secured to Plaintiffs under these local, state and federal laws.

2.      Plaintiffs allege that the Defendants have used screening and selection criteria and devices in appointing entry-level firefighters which have an adverse impact upon black applicants, which are not job related for the position in question and do not otherwise meet the requirements of Title VII, and which violate the above-mentioned federal, state and local anti-discrimination laws.  These criteria and devices have included written examinations, mandatory college credit, driver's license and certified first responder license requirements, and an arbitrary candidate background and character investigation process, all of which are used to screen out and/or rank applicants for hiring purposes, have not been validated and are not job related, and which create unwarranted and discriminatory obstacles to the hiring of black firefighters.

3.      On information and belief, these screening and selection devices and criteria have been utilized with the intention of discriminating against black applicants or with reckless disregard of the fact that these devices and criteria have that unlawful effect.

4.      Plaintiffs seek: (a) declaratory and injunctive relief, including but not limited to the issuance of a class-wide judgment declaring that the policies, practices and/or customs described here violate federal, state and local laws; (b) injunctive relief to halt the practice of using hiring criteria which adversely impact minority applicants; (c) an order establishing procedures to correct the present effects of Defendants' discriminatory policies and practices; (d) compensation and other relief to make whole black applicants for appointment who have been injured by the Defendants' unlawful hiring practices.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), and 28 U.S.C. § 1367(a) for claims arising under the New York State Human Rights Law and the New York City Administrative Code, based on supplemental jurisdiction over claims that arise from a common nucleus of operative fact and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

6.      Plaintiffs have fully complied with all prerequisites to jurisdiction in this Court under Title VII.    This action is founded on charges filed with the United States Equal Employment Opportunity Commission ("EEOC") by the Vulcans in or about August of 2002 (charge no. 160-2002-01828) and by three individual charging parties, Candido Nuñez (charge no. 160-2005-01288), Roger Gregg (charge no. 160-2005-01289) and Marcus Haywood (charge no. 160-2005-01291), in or about February 2005.

7.      In each case, the EEOC found probable cause to believe that Defendants' written tests are discriminatory.

8.      This lawsuit is commenced within ninety (90) days of Plaintiffs' receipt of a notice from the United States Department of Justice ("DOJ") that they have a right to sue and to intervene in the suit commenced by the DOJ on or about May 21, 2007, which challenges these same testing and ranking procedures which Plaintiffs complain of here.  A copy of the notice is annexed hereto as Exhibit "A".

{08013397}                                        3

## CLASS ACTION ALLEGATIONS

9.      Plaintiffs bring this action pursuant to Rule 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on their own behalf and on behalf of a class of all other persons similarly situated.

10.      The named Plaintiffs seek to represent a certified plaintiff class consisting of all black individuals who are, sought to or will seek to become firefighters employed by the FDNY who have been or will be subjected to discrimination on the basis of color, race, or national origin because of the unlawful criteria and selection process utilized by Defendants.

11.      The members of this class are too numerous to be joined in one action.  There are approximately three hundred thirty five (335) black employees of the FDNY, many of whom were and continue to be affected by the fact that they were delayed and impeded in their ability to obtain employment with the FDNY, and thousands of others who were prevented or discouraged from obtaining or seeking such employment because of the discriminatory conditions, criteria and practices of the FDNY in their hiring process.  Most, if not all, of the currently-employed black firefighters are members of the Vulcan Society.  On information and belief, many of those individuals were victimized by Defendants' practices, and many of those who are still seeking employment and/or who have been adversely affected by these practices are hesitant to bring individual claims for fear of retaliation and reprisal by Defendants.

12.      The class members share a number of common questions of law and fact, including but not limited to: (a) whether members of the class have been deprived by Defendants of the right to be free of discrimination in employment and hiring on the basis of race, color and national origin; (b) whether the criteria used by Defendants to rank and select firefighters

{08013397}                                              4

unlawfully discriminate against black applicants; and, (c) whether such conduct represents a deprivation of the rights guaranteed to the class members by the Constitutions of the United States and of the State of New York, as well as federal, state and local laws.

13.     The claims of the named Plaintiffs (including other Vulcan Society members) are typical of those of members of the class they seek to represent.  Plaintiffs, like other members of the class, have suffered from Defendants' discriminatory hiring practices in that they were discouraged, prevented, impeded, or delayed in obtaining employment as firefighters with the FDNY.

14.     The legal theories under which the named Plaintiffs seek declaratory and injunctive relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the named Plaintiffs are typical of the harms suffered by the class members.

15.     The named Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class.  The individual named Plaintiffs are all black applicants or black firefighters who seek to be, or have been, employed by the FDNY and have been subjected to Defendants' discriminatory hiring practices and have been adversely affected thereby.  The Vulcans have represented the named Plaintiffs and scores of other minority firefighters and applicants to the FDNY in matters of discrimination and have actively engaged in recruiting minority applicants and preparing them for the entrance tests.  That the named Plaintiffs are seeking compensatory and punitive damages on an individual basis strengthens the adequacy of their representation of the class.

16.    Plaintiffs are represented by attorneys from the law firms of Levy Ratner, P.C. and Scott & Scott, LLP, and the Center for Constitutional Rights ("CCR"), all of whom are experienced civil rights and labor attorneys with extensive experience in employment litigation, including Title VII race discrimination litigation, and have litigated a wide range of class action lawsuits.  Counsel for Plaintiffs have the resources, expertise, and experience to prosecute this action.  Counsel for Plaintiffs know of no conflicts among members of the class or between the attorneys and members of the class.

17.    The plaintiff class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure for determination of liability because Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.  The plaintiff class should be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for determination of the damage claims of individual class members.

## **PARTIES**

18.    The Vulcan Society Inc. is an organization of black firefighters first constituted in the 1940s in response to what was then quite blatant and open discrimination against firefighters of color, not only in their selection, but in their treatment in the firehouses, where they were separately assigned to sleep in "black beds," use separate plates and dinnerware, eat their meals in the kitchen and were otherwise ostracized by their white colleagues.  Although those conditions no longer exist, over the years the Vulcans have been the primary voice within the FDNY challenging discrimination in hiring and at the workplace against minority firefighters.  It assists firefighters and applicants who claim to have been discriminated against at work or in the hiring process.

19.     The Vulcans not only filed the underlying EEOC charge in this case, but also brought the other charging parties to the attention of the Center for Constitutional Rights, which assisted all of the Plaintiffs in the development of their cases before the EEOC.

20.     The mission of the Vulcan Society is to work to end discrimination in hiring and in employment in the FDNY, and to act as a liaison with minority communities, where they run youth programs and other community outreach initiatives.  The continuous need to respond to discrimination at the FDNY has significantly drained the Vulcans' resources.  The work of the Vulcans has been consumed by responding to the discriminatory practices of the FDNY and other aspects of the mission of the organization have suffered.

21.     <u>Candido Nuñez</u>:  Mr. Nuñez is a 31-year old black and Latino man.  He was born in Honduras, emigrated to the United States in 1998 and has lived in New York City since that time.  He was naturalized as a United States Citizen on April 25, 2004.  He is married with a four-year old son and currently is employed full-time in a civil service job with the City.  Mr. Nuñez is fluent in English but speaks Spanish at home.

Mr. Nuñez registered and sat for the December 2002 open competitive written examination, receiving a passing raw score of 81.176 and an adjusted score of 83.529.  He then took the physical agility test, scoring a perfect 100.  His combined written examination and agility test scores, with an added 5-point bonus for New York City residency, gave him an adjusted overall score of 94.199.  Mr. Nuñez is currently number 5003 on the list of eligibles.

22.    <u>Roger Gregg</u>:  Mr. Gregg is a 32-year old black man.  He is a United States citizen by birth and was raised and currently lives in the Bronx.  He is single, with no children and currently works at a credit union.

Mr. Gregg registered and sat for the December 2002 open competitive written examination, receiving a passing raw score and an adjusted score of 78.823.  He scored a perfect 100 on the physical agility test.  His combined written examination and agility test scores, with an added 5-point bonus for New York City residency, gave him an adjusted overall score of 91.107.  Mr. Gregg is currently number 6017 on the list of eligibles.

23.    <u>Marcus Haywood</u>:  Mr. Haywood is a 26-year old black man.  He was born and raised in Brooklyn, and is married with three young sons.  He currently works as a barber.

Mr. Haywood sat for the December 2002 open competitive examination.  He earned a raw score of 70.588 and an adjusted score of 85.713.  He took the physical test and scored a perfect 100.  With the 5-point New York City residency bonus, his final score placed him at number 6990 on the eligibles list.

## **<u>DEFENDANTS</u>**

24.    Defendant City of New York ("City") is a municipal corporation duly organized and existing under the laws of the State of New York.  Defendant City is an employer as defined by Title VII.  Defendant City is a "person" for purposes of enforcement of the  rights guaranteed under 42 U.S.C. §§ 1981 and 1983.  Defendant City was or is the employer of Defendants Bloomberg and Scoppetta.

{08013397}

8

25.     Defendant City of New York maintains a fire department, the New York Fire Department, a/k/a the Fire Department of the City of New York ("FDNY"), and employs firefighters who, among other things, are responsible for protecting individuals and property in the City of New York.

26.     Defendant FDNY is a department, agency, bureau and/or subdivision of the City. Defendant FDNY is a local government agency of New York City and is the employer of some of the members of the Vulcan Society and Defendant Scoppetta.

27.     Defendant Department of Citywide Administrative Services ("DCAS") is a department, agency, bureau and/or subdivision of the City.  Defendant DCAS is responsible for administering all civil service examinations, including the open competitive examination for appointment to entry-level firefighter positions.

28.     Defendant Michael Bloomberg is the Mayor of the City of New York and the chief policymaking official for the City and its departments, including the FDNY.  Upon information and belief, Defendant Bloomberg has routinely met with the Fire Commissioner and has known of the discriminatory practices in hiring that have adversely affected black applicants for employment in the FDNY and has condoned, ratified and authorized such conduct, notwithstanding numerous reports from City civil rights agencies investigating the matter which have demanded reform in the hiring process.

29.     Defendant Nicholas Scoppetta has been the Fire Commissioner of New York City from December 30, 2001 through the present.  He is an employee of the City and is the principal administrator of Defendant FDNY.  He is responsible for the institution and application of the

FDNY's hiring policies and for ensuring that the actions of the FDNY do not deprive any individual of the rights secured by the Constitution and laws of the United States, as well as the Constitution and laws of the State and City of New York. Defendant Scoppetta knew or should have known of the discriminatory practices and wrongful acts of the Defendants described in this Complaint, and condoned, ratified and/or authorized such conduct and recklessly disregarded the resulting unlawful consequences. He is sued in both his individual and official capacities.

## ALLEGATIONS OF FACT

30.    The FDNY is the largest fire department in the United States. It currently employs in excess of 11,000 uniformed firefighters in all ranks, of whom approximately 2.9% are black.

31.    The FDNY has a long history of unlawfully discriminating against blacks in its hiring process and of maintaining the number of black firefighters at its disproportionately low level compared to their representation in the population of the City as a whole. In 1973, the Second Circuit Court of Appeals affirmed a decision by Judge Weinfeld of the Southern District finding that the FDNY's written entry-level firefighters examination had an adverse impact on black applicants and was not job related. At that time, only five percent (5%) of firefighters were minorities, a fact that the Court of Appeals held supported Judge Weinfeld's decision to impose a three-to-one (3:1, whites to minorities) hiring requirement upon the City. Today, the percentage of black firefighters is down to 2.9%.

32.    For more than a decade, the City's own Equal Employment Practices Commission ("EEPC"), which monitors discrimination in the City, has conducted audits finding that the FDNY's recruitment and hiring practices were deficient, leading to a disproportionately low

number of black firefighters, and the FDNY has consistently failed and refused to comply with many of the EEPC's recommendations, particularly with regard to its hiring criteria.

33.    Despite the numerous EEPC recommendations and reports of the New York City Council urging the City to take action to end the disparate impact of its examination processes on black applicants and potential applicants, and the EEOC's probable cause finding on Plaintiffs' complaints, the City and the FDNY have repeatedly failed and refused to remedy this obviously discriminatory situation.    Defendants have thus intentionally – or with reckless disregard – perpetuated a racially discriminatory hiring system.

**Testing:**

34.    Defendants are responsible for establishing the terms, conditions and other practices which bear upon the selection and employment of FDNY firefighters.

35.    Defendants City of New York, FDNY and DCAS have maintained and continue to maintain an open competitive examination process by which applicants for appointment to the rank of entry-level firefighter in the FDNY are screened and selected.

Exams 7029, 2043 and 6019

36.    Since 1999, Defendants have used three open competitive examination processes in the screening and selection of applicants for appointment to the rank of entry-level firefighter in the FDNY.    Each of these open competitive examination processes has involved the administration of a written examination as well as a physical performance test ("PPT").

37.    In February 1999, Defendants administered an open competitive examination process, involving a written examination designated as Exam 7029.    Defendants then used the

eligibility list generated from Exam 7029 from February 2001 until December 2004. In December 2002, Defendants administered a written examination designated as Exam 2043. Defendants then used the eligibility list generated from Exam 2043 from May 2004 until May 2008.

38.     In January 2007, Defendants administered a new entry-level firefighter written examination, Exam 6019. Upon information and belief, Defendants will begin using the eligibility list generated from Exam 6019 in the summer of 2008 and will continue to use it for the next four years.

39.     Defendants used Exam 7029, 2043, and 6019 as "pass/fail" screening devices. As such, only those applicants who passed the written examination were eligible to take a physical performance test ("PPT").

40.     Defendants also used Exams 7029, 2043 and 6019 as part of its "rank-order" processing of applicants. As such, applicants who passed both the written examination and the PPT were placed on an eligibility list in descending rank order of their combined written examination and PPT scores ("combined score"), plus bonus points. As the FDNY has needed to appoint additional entry-level firefighters, Defendants have processed applicants from the eligibility lists in descending rank order. As part of that processing, Defendants have verified that applicants meet Defendant City of New York's other qualifications for employment.

Exam 7029

41.     Defendants appointed approximately 3,207 entry-level firefighters from the eligibility list that resulted from Exam 7029, of whom 99 (or 3.1%) were black.

42.    Defendants set the passing score for Exam 7029 at 84.705.  The pass rate of whites on that examination was 89.9%, while the pass rates of blacks on that examination was only 61.2%.  The difference in pass rates between whites and blacks is statistically significant.

43.    Further, among those applicants who passed Exam 7029, the mean examination score of whites was higher than the mean score of blacks.  These differences in mean scores are statistically significant.  Thus, while 57.9% of all white examination passers scored at or above 95.0, only 31.5% of all black passers scored at or above 95.0.  So also, while 85.9% of all white examination passers scored at or above 90.0, only 64.5% of all black examination passers scored at or above 90.0.

44.    Among those applicants who passed both Exam 7029 and the PPT and were ranked on the eligibility list, the mean written examination score of whites was higher than the mean examination score of blacks.   These differences in mean examination scores are statistically significant.   Thus, blacks were under-represented among the higher-scoring applicants on the eligibility list, and over-represented among the lower-scoring applicants.  For example, only 7.3% of black applicants on the eligibility list obtained written examination scores in the top 20% of all applicants on the eligibility list, 66.0% of black applicants on the list scored in the bottom 40%, and 42.3% of black applicants on the list scored in the bottom 20%.

45.    These differences are reflected in the combined scores of whites and blacks who passed Exam 7029.  The mean combined score of whites who passed Exam 7029 and the PPT was higher than the mean combined score of blacks.  This difference in mean combined scores is statistically significant.  Thus, for example, only 8.4% of blacks on the eligibility list had a combined score in the top 20% of all applicants on the eligibility list, while 61.7% of blacks on

the list had a combined score in the bottom 40%, and 34.2% of blacks on the list had combined scores in the bottom 20%.

Exam 2043

46.    As of February 2, 2007, Defendants had appointed approximately 1,549 entry-level firefighters from the eligibility list that resulted from Exam 2043, of whom 51 (or 3.3%) were black.

47.    Defendants set the passing score for Exam 2043 at 70.000.  The pass rate of whites on that examination was 97.2%, while the pass rate of blacks was only 85.6%.  This difference in pass rates between whites and blacks is statistically significant.

48.    Further, among those applicants who passed Exam 2043, the mean score of whites on the examination was higher than the mean examination score of blacks.  This difference in mean examination scores is statistically significant.  Thus, for example, while 35.2% of all white examination passers scored at or above 95.0, only 12.2% of all black passers scored at or above 95.0.  So also, while 67.3% of all white examination passers scored at or above 90.0, only 35.0% of all black passers scored at or above 90.0.

49.    Among those applicants who passed Exam 2043 and the PPT and were ranked on the eligibility list, the mean written examination score of whites was higher than the mean written examination score of blacks.  This difference in mean written examination scores is statistically significant.  Thus, blacks are under-represented among the higher-scoring applicants on the eligibility list, and over-represented among the lower-scoring applicants.  For example, only 6.8% of black applicants on the eligibility list obtained written examination scores in the top

20% of all applicants on the eligibility list, while 66.9% of black applicants on the list scored in the bottom 40%, and 45.9% of black applicants on the list scored in the bottom 20%.

50.     These differences are reflected in the combined scores of whites and blacks who were ranked on the eligibility list resulting from Exam 2043.  The mean combined score of whites who passed Exam 2043 and the PPT was higher than the mean combined score of blacks. This difference in mean combined scores is statistically significant.  Thus, for example, only 6.0% of blacks on the eligibility list have a combined score in the top 20% of all applicants on the eligibility list, while 67.5% of blacks on the list have combined scores in the bottom 40%, and 42.9% of blacks on the list have combined scores in the bottom 20%.

Exam 6019

51.     Defendants set the passing score for Exam 6019 at 70.000.  The pass rate of whites on the examination was 98.6%, while the pass rate of blacks was only 90.9%.  This exam has had an adverse impact on blacks as the difference in pass rates between whites and blacks is statistically significant.

52.     Among those applicants who passed the written portion of Exam 6019 and were ranked on the eligibility list, the mean written examination score of whites was higher than the mean written examination score of blacks.  This difference in mean written examination scores is statistically significant.  Thus, blacks are under-represented among the higher-scoring applicants on the eligibility list, and over-represented among the lower-scoring applicants.  For example, only 14.1% of black applicants on the eligibility list obtained written examination scores in the top 4000 of the 21,183 applicants on the eligibility list, while roughly 51% of all black applicants

on the list scored in the bottom 8000, and roughly 30.9% of black applicants on the list scored in the bottom 4000.

53.    Because Defendants have been long-aware of the discriminatory impact on blacks of their examination processes, their continued reliance on and perpetuation of these racially discriminatory hiring processes constitute intentional race discrimination in violation of the above-mentioned federal and state statutes.

Defendants' Unlawful use of Exams 7029, 2043 and 6019

54.    Defendants' use of Exam 7029 as a pass/fail screening device with a cutoff score of 84.705 has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law.

55.    Defendants' rank-order processing of applicants who passed Exam 7029 and the PPT has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law.

56.    Defendants' use of Exam 2043 as a pass/fail screening device with a cutoff score of 70.000 has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question or consistent

with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law.

57.     Defendants' rank-order processing of applicants who passed Exam 2043 and the PPT has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law.

58.      Defendants' use of Exam 6019 as a pass/fail screening device with a cutoff score of 70.000 has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law.

59.     Defendants' rank-order processing of applicants who passed Exam 6019 has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter in the FDNY, is not job related for the position in question or consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. §2000e-2(k) and other applicable law.

60.     Defendants' use of Exam 7029, 2043 and 6019 as described above, with knowledge and in disregard of the discriminatory impact of that conduct, violated the above-mentioned federal and state statutes.

**Other Discriminatory Employment Practices:**

61.    In addition to the aforementioned discriminatory written exams, Defendants have since 1999 used several other screening and selection criteria which have had a disparate impact on black applicants for appointment to the rank of entry-level firefighter in the FDNY and are not job related for the position in question or consistent with business necessity.  These criteria include requirements that all applicants obtain at their own expense before appointment as firefighters a certain number of college course credits, a driver's license, and a certified first responder with defibrillation ("CFR-D") license, as well as the criteria which Defendants use to determine eligibility for the five-point New York City resident bonus to applicants' firefighter exam scores.

62.    Defendants have also since 1999 continued to use an arbitrary and subjective applicant background and character investigation process involving the FDNY's Candidate Investigation Division and Personnel Review Board in which black firefighter applicants are regularly disqualified for relatively minor transgressions while white firefighter applicants who commit similar or more serious transgressions are hired.

63.    In addition, in 2002, Defendants discontinued the FDNY's Fire Cadet Program, which had for several years provided a separate hiring track to the job of New York City firefighter  for New York City public high school students, the majority of whom were African-American and Latino and who otherwise would not have been hired as firefighters because of the aforementioned discriminatory hiring processes.  Thus, the discontinuance of the Cadet Program had a disproportionately harmful impact on blacks

64.    Because Defendants have been long-aware of the discriminatory impact on blacks of these additional employment practices, their continued reliance on and perpetuation of these

racially discriminatory practices constitutes intentional race discrimination in violation of the above-mentioned federal and state statutes.

## AS AND FOR A FIRST CAUSE OF ACTION

65.    The actions of the Defendants as set forth above constitute a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq.

## AS AND FOR A SECOND CAUSE OF ACTION

66.    The actions of the Defendants as set forth above constitute a violation of 42 U.S.C. § 1981.

## AS AND FOR A THIRD CAUSE OF ACTION

67.    The actions of the Defendants as set forth above constitute a violation of 42 U.S.C. § 1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

68.    The actions of the Defendants as set forth above constitute a violation of New York Executive Law §§ 290 and 296.

## AS AND FOR A FIFTH CAUSE OF ACTION

69.    The actions of the Defendants as set forth above constitute a violation of New York City Local Law 59 of 1986, as amended by Local Rule 39 of 1991, §§ 8-101, et seq.

## STATEMENT OF CLAIM FOR RELIEF

70.    By the actions and omissions described above, Defendants have violated, and continue to violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983 and state and local law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will:

1.      Certify this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, with the named Plaintiffs as the class representatives;

2.      Enter a class-wide judgment declaring that the acts and practices of Defendants are in violation of the laws of the United States, New York State and New York City;

3.      Issue a permanent injunction requiring Defendants to abolish discrimination on the basis of race and national origin within and among their departments and requiring Defendants to:

      a.   appoint blacks to the rank of entry-level firefighter on the same basis as whites, through the open competitive examination process or some other process that does not discriminate against blacks;

      b.   cease their use of written examinations as pass/fail screening devices in the screening and selection of applicants for appointment to the rank of entry-level firefighter, where such use of the written examinations results in disparate impact upon blacks;

      c.   cease their rank-order processing of applicants for appointment to the rank of entry-level firefighter based on the applicants' combined written examination and PPT scores, plus bonus points, where such use of applicants' combined scores results in disparate impact upon blacks, is not job related for the position

in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k) and other applicable law;

d.  cease their use of the college credit, driver's license and CFR-D license requirements, their current manner for determining eligibility for the five-point residency bonus to the firefighter exam score, and the current process for investigating the character and background of firefighter applicants;

e.  appoint entry-level firefighters from among qualified black applicants in sufficient numbers to offset the historic pattern and practice of discrimination against blacks in testing and appointment to that position;

f.  reinstate the FDNY's Fire Cadet Program;

g.  recruit black candidates and implement and improve long-range recruitment programs; and

h.  provide to Plaintiffs all future test scores, appointment criteria, eligibility lists, appointment data, and all other information necessary to conduct an adverse impact and job-relatedness analysis of the examination and selection process.

4.    Order that Defendants immediately reimburse, and make whole those black applicants for appointment to the rank of entry-level firefighter who have been harmed by the unlawful use of written examinations, including but not limited to the following relief:  back pay with interest, benefits, and seniority from the time of Defendants' illegal actions;

5.      Order that Defendants immediately reimburse, and make whole those potential black applicants who have been deterred from applying for appointment based upon unlawful aspects of the entry-level firefighter examination process, including but not limited to the following relief:  back pay with interest, benefits, and seniority from the time of Defendants' illegal actions;

6.      Award compensatory damages for the pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiffs and members of the class in amounts that are fair, just and reasonable, to be determined at trial;

7.      Award Plaintiffs and class members punitive damages in an amount to be determined at trial;

8.      Award Plaintiffs all reasonable attorneys' fees and costs, including expert fees, of this action and ensuring compliance with any order for injunctive relief, as provided for in 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k); and

9.      Grant Plaintiffs and class members such other and further relief as the Court deems appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

Dated: June 25, 2008
        New York, New York

                                LEVY RATNER, P.C

                        By:    _____/s/_____
                                Richard A. Levy (RL5154)
                                Dana Lossia

80 Eighth Avenue, 8th Floor
New York, NY 10011
(212) 627-8100
(212) 627-8182 (fax)
rlevy@lrbpc.com
dlossia@lrbpc.com

CENTER FOR CONSTITUTIONAL RIGHTS
Darius Charney (DC1619)
666 Broadway, 7th Floor
New York, NY 10012-2399
(212) 614-6438
(212) 614-6499 (fax)
dcharney@ccrjustice.org

SCOTT + SCOTT, LLP
Judy S. Scolnick
Beth A. Kaswan
29 West 57th Street
New York, New York  10019
(212) 223-6444
(212) 223-6334 (fax)
jscolnick@scott-scott.com
bkaswan@scott-scott.com

*Attorneys for Plaintiffs-Intervenors*