UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

      Plaintiff,

 -and-

THE VULCAN SOCIETY, INC., MARCUS
HAYWOOD, CANDIDO NUÑEZ,

      Plaintiffs-Intervenors,

 -against-

THE CITY OF NEW YORK, FIRE
DEPARTMENT OF THE CITY OF NEW
YORK, NEW YORK CITY DEPARTMENT
OF CITYWIDE ADMINISTRATIVE
SERVICES, and MAYOR MICHAEL
BLOOMBERG and NEW YORK CITY FIRE
COMMISSIONER NICHOLAS SCOPPETTA,
in their individual and official capacities,

      Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
07-cv-2067 (NGG) (RLM)

NICHOLAS G. GARAUFIS, United States District Judge:

  This action was originally brought by the United States of America (the "Federal Government") to challenge the use by the City of New York (the "City") of two written examinations—Written Examination 7029 and Written Examination 2043—in the screening and selection of applicants for entry-level firefighter positions in the Fire Department of New York ("FDNY"). As set forth in previous decisions, the court permitted intervention in this action by the Vulcan Society, Inc. (the "Vulcan Society"), Marcus Haywood, Candido Nuñez, and Roger Gregg (the "Individual Intervenors," and, together with the Vulcan Society, "Intervenors"). (See Docket Entry # 47.) On July 23, 2008, the court denied Intervenors' motion to amend their

1

Plaintiffs-Intervenors' Complaint (Docket Entry # 48) ("Intervenors' Complaint") to challenge elements of the City's hiring practices other than its use of the two written examinations. (See Docket Entry # 182.)

Defendants have moved for partial dismissal of the claims in Intervenors' Complaint on timeliness grounds.[1] For the reasons stated below, the motion is DENIED.

I.  BACKGROUND

In February 1999, the City administered Written Examination 7029, which it used to generate a rank-order list of applicants eligible to be entry-level firefighters. (Intervenors' Compl. ¶ 37.) In the years that followed, from February 2001 until December 2004, the City hired firefighters from this list in descending order of ranking. (Id.) Applicants who did not pass the Written Examination were not placed on the eligibility list. (Id. ¶ 39-40.) In December 2002, the City administered a new written examination, Written Examination 2043. The City hired new firefighters from the resulting rank-order list from May 2004 through some time in 2008. (Id. ¶ 37.)[2]

Each of the Individual Intervenors sat for Written Examination 2043, administered in December 2002. (See id. ¶¶ 21, 22, 23.) Each Individual Intervenor passed Written Examination 2043 and, after a physical examination, each was placed on the new-hire eligibility

---

[1] Intervenors bring claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, New York Executive Law §§ 290 and 296 ("HRL"), and New York City Administrative Code §§ 8-101 ("NYCHRL"). Defendants claim that all of Intervenors' claims are time-barred, with the exception of the Vulcan Society's Title VII claims relating to Examination 2043.

[2] The City points out that notices advising applicants of their scores were mailed on August 3, 1999 for Written Examination 7029, and by March 27, 2003 for Written Examination 2043. (See Defendant's Memorandum of Law (Docket Entry # 156) ("Def. Mem.") 2, 3.)

list resulting from that examination. (Id.) Intervenors have informed the court that, although one of these individuals was eventually hired from the eligibility list, the others were not.

On August 9, 2002, the Vulcan Society filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on behalf of black and African-American applicants for the position of firefighter.[3] The Vulcan Society alleged, among other things, that the City's written examinations for entry-level firefighters adversely affected black and African-American applicants in violation of Title VII. (See Declaration of Kami Z. Barker (Docket Entry # 157) ("Barker Decl.") Ex. B.) On February 22, 2005, the Individual Intervenors filed their charge of discrimination against the City also challenging the City's written examination policy. (See id. Ex. G.)

In their subsequent complaint, Intervenors have challenged the City's use of:

(1) Written Examination 7029 "as a pass/fail screening device with a cutoff score of 84.705 [that] has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter[;]"

(2) Written Examination 7029 for "rank-order processing of applicants who passed [the examination]" resulting in "disparate impact upon black applicants for appointment to the rank of entry-level firefighter[;]"

(3) Written Examination 2043 "as a pass/fail screening device with a cutoff score of 70.000 [that] has resulted in disparate impact upon black applicants for appointment to the rank of entry-level firefighter[;]"

(4) Written Examination 7029 for "rank-order processing of applicants who passed [the examination]" resulting in "disparate impact upon black applicant upon black applicants for appointment to the rank of entry-level firefighter[;]"

(5) Both examinations "with knowledge and in disregard of the discriminatory impact of that conduct."

(Intervenors' Compl. ¶¶ 52-55.) Intervenors allege that these uses of the written examinations have had an "adverse impact" on black applicants and were not "job-related for the position in

---

[3] According to Intervenors' Complaint, the mission of the Vulcan Society is "to work to end discrimination in hiring and in employment in the FDNY, and to act as liaison with minority communities . . . ." (Id. ¶ 20.)

question" or otherwise "consistent with business necessity." (Id. ¶¶ 52-55.)[4]

## II. DISCUSSION

### A. Title VII

Before bringing suit under Title VII, a plaintiff must first file an administrative charge within a statutorily prescribed time period, in this case 300 days. See 42 U.S.C. § 2000e-5(e)(1). Claims not included in such a charge are time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). At issue in this motion is the point at which the time for filing begins.

#### 1. The Parties' Positions

The City argues that the filing period for challenging either examination began to run no later than the date on which test-takers received their examination results. (See Def. Mem. 5, 7.) Based on this approach, the City argues that any administrative charge based on Written Examination 7029 should have been filed by May 29, 2000—i.e., 300 days after "the candidates received their scores." (Id. at 5.) Based on parallel reasoning, the City argues that any charge based on Written Examination 2043 should have been filed by January 21, 2004. (Id. at 7.) Because the Individual Intervenors' charge was filed after the expiration of these periods, the City argues that their claims are time-barred. Regarding the Vulcan Society, the City argues that its charge was filed <u>within</u> the period for Written Examination 2043,[5] but <u>after</u> the period for Written Examination 7029. Accordingly, the City argues that the Vulcan Society's challenge to Written Examination 7029 is time-barred.

---

[4] Intervenors filed their opposition papers before the court denied their Motion to Amend their Complaint. The court considers the arguments set forth in those papers in accordance with the allegations in the unamended Intervenors' Complaint.

[5] Thus, the City does not challenge the timeliness of the Vulcan Society's charge regarding its "Title VII claims relating to [Written Examination] 2043." (Id. at 1 n.1.)

In response, Intervenors argue that the City incorrectly identifies the start of the filing period. (Plaintiffs-Intervenors' Memorandum of Law (Docket Entry # 159) ("Intervenor Mem.") 2-3.) They argue that the period for filing begins on the last date on which the City used the eligibility lists to hire new firefighters. This is because, they contend, the City's use of the hiring lists amounted to a policy, or "pattern or practice," of discrimination that was a "continuing violation" of Title VII. (Id. at 9-10.) Because the City's use of the eligibility lists resulting from Written Examination 7029 and 2043 continued through November 2006 and May 2008, respectively, the Intervenors argue that their charges were timely filed.[6]

Underlying this dispute about the proper accrual date for the charge filing period is the parties' disagreement about the effect of the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162 (2006), on Second Circuit precedent regarding the "continuing violation theory." Under that theory, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks and ellipsis omitted); see also Cornwell v. Robinson, 23 F.3d 694, 70304 (2d Cir. 1994) (same).

According to Intervenors, longstanding Second Circuit precedent dictates that the continuing violation theory applies to their claims. (Intervenor Mem. 12-14 (citing, inter alia, Guardians Association of the New York City Police Dep't, Inc. v. Civil Serv. Comm'n, 633 F.2d 232 (2d Cir. 1980) ("Guardians").) According to the City, however, this precedent has been

---

[6] The Federal Government notes that the timeliness determination does not affect its claims brought pursuant to Section 707 of Title VII, and there is no motion by the City challenging the Federal Government's prosecution of this action. (See Plaintiff United States' Response (Docket Entry # 161) ("USA Br.") 7.) Nonetheless, the Federal Government joins Intervenors' position that a continuing violation theory is applicable to extend the filing period to encompass Intervenors' claims.

overruled by Ledbetter, which "put to an end . . . the continuing violation theory when, as here, the purported continuing violations are unintentional effects of a prior discrete discriminatory act." (Defendants' Reply Memorandum (Docket Entry # 162) ("Def. Reply") 1.)

As set forth below, the court concludes that Ledbetter does not overrule the continuing violation theory in the context of this case, and that the City's motion should therefore be denied.

2. Second Circuit Precedent and Ledbetter

The parties appear to agree that, in Guardians, the Second Circuit directly addressed the timeliness issue before the court. (See Intervenor Mem. 12-14; Def. Reply 5 n.4; USA Br. 8-10.) In that case, the Second Circuit "considered the repeated use of a hiring list, compiled by using a discriminatory examination, to decide hiring priority for the New York Police Department." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (describing Guardians). The defendants had argued, like the City does here, that "the 'operative' event in the hiring procedure under scrutiny . . . was the promulgation of the eligibility lists reflecting the applicants' scores on the challenged exams." Guardians, 633 F.2d at 248. The defendants went on to argue, therefore, that "the fact that . . . the lists determined the order in which all appointments were made constituted merely the non-actionable perpetuation of the effects of past, non-actionable discrimination." Id. at 248-49.

The Second Circuit disagreed, concluding that "[t]hese refusals were not discrete acts; they were carried out pursuant to a conceded and consistent policy." Id. at 251. In reaching this conclusion, the court explained that by repeatedly utilizing the test results, defendants had "continued a course of discriminatory conduct that . . . did not cease until defendants abandoned the practice of making hiring decisions in this manner." Id. at 249.

6

A year later, relying in part on Guardians, the Second Circuit again applied a "continuing violation" theory to a city's policy of hiring from discriminatory civil service examinations. See Assoc. Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 274-75 (2d Cir. 1981). In addressing the charge filing period, the court began by observing that, "[a]s a general matter, the mere continuation of a discriminatory act's effects, when the act itself occurred prior to the pertinent limitations period, is not sufficient to support recovery under Title VII." Id. at 274. The court went on to state, however, that "[w]here . . . the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation. In such circumstances if the charge has been filed no later than 300 days after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well." Id. (citing Guardians, 633 F.3d at 249). Such was the case in City of Bridgeport.[7]

That these decisions speak to the issue before the court is not at issue. The City does not dispute that, pursuant to policy, it continued to hire from the challenged eligibility lists beyond the dates on which the Intervenors filed their respective charges.[8] At issue is whether Guardians and City of Bridgeport survive recent Supreme Court rulings, Ledbetter and National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). In Ledbetter, the Supreme Court concluded that a disparate treatment claim challenging a pay decision under Title VII accrues when the pay-setting decision is made, not each time the aggrieved employee subsequently

---

[7] In Guardians and City of Bridgeport, the Second Circuit also considered whether there could be liability for conduct preceding the applicability of Title VII to the defendants. 647 F.2d 274-75; 647 F.2d at 272-74.

[8] Thus, according to Intervenors, the final refusal to hire did not occur until, in the case of Written Examination 7029, November 2004 (when the test's resulting eligibility list formally expired), and in the case of Written Examination 2043, in 2008. (Intervenor Mem. 7, 8.)

7

receives a paycheck. 127 S. Ct. at 2172.⁹ In doing so, the Court rejected the proposition that "an employment practice committed with no improper purpose and no discriminatory intent is rendered unlawful nonetheless because it gives some effect to an intentional discriminatory act that occurred outside the charging period." Id. According to the Court, "current effects alone cannot breathe life into prior, uncharged discrimination." Id. at 2169 (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)).

In deciding Ledbetter, the Supreme Court relied on, among other cases, its recent decision in Morgan. In that case, the Court had specifically rejected a "serial violation" theory, under which repeated, discrete violations falling outside the charge filing period are considered timely if they are sufficiently related to acts within the filing period. 536 U.S. at 114. As explained in Ledbetter, Morgan held that "the time for filing a charge of employment discrimination with the [EEOC] begins when the discriminatory act occurs. . . . [T]his rule applies to any 'discrete act' of discrimination, including discrimination in 'termination, failure to promote, denial of transfer, and refusal to hire.'" 127 S. Ct. at 2165 (quoting Morgan, 536 U.S. at 114) (alterations omitted).

As the City points out, courts have repeatedly recognized that Morgan and Ledbetter have "largely curtailed the continuing-violations theory when applied to 'discrete discriminatory

---

⁹ The court notes the "Lily Ledbetter Fair Pay Act of 2009," which rejects the Supreme Court's holding in Ledbetter, has recently passed the House and Senate. See S. 181, 111th Cong. (2009), available at www.thomas.gov. If signed by President Obama, the Act would provide that:

> an unlawful employment practice [would] occur[], with respect to discrimination in compensation . . . when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

Id. § 3. This legislation, addressing discrimination in compensation, does not appear to affect the court's analysis of the employment practice challenged here and, to the extent it does, would likely support denial of the City's motion.

acts[.]'" Austion v. City of Clarksville, 244 Fed. Appx. 639, 647 (6th Cir. 2007); Nakis v. Potter, 422 F. Supp. 2d 398, 409 (S.D.N.Y. 2006) ("the scope of the continuing violation doctrine was substantially restricted by the Supreme Court's decision in Morgan"); see also Rosario v. New York City Dep't. of Homeless Servs., No. 06-CV-7197(PAC)(GWG), 2008 WL 449675, at *5 n.3 (S.D.N.Y. Feb. 19, 2008) ("Since Ledbetter, some courts have expressed doubt as to whether the "continuing violations" doctrine even applies to disparate treatment claims."). The City argues that those cases also overrule application of the continuing violation theory under Guardians and City of Bridgeport.

The court declines to reach this conclusion. Although Ledbetter and Morgan take a narrow view of when the Title VII charging period begins, those cases addressed claims distinct from those presented here. Ledbetter involved one individual's "disparate treatment" claim based on discrete compensation decisions, while Morgan involved an individual's disparate treatment claim for various discrete discriminatory acts. Neither involved a "pattern or practice" (or disparate impact) claim. See Morgan, 536 U.S. at 115 n.9 ("[w]e have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here"); Ledbetter, 127 S. Ct. at 2175 (addressing "a series of discrete discriminatory acts, each of which was independently identifiable and actionable") (emphasis omitted).

As the Supreme Court explained in Ledbetter, "[a] disparate-treatment claim comprises two elements: an employment practice, and discriminatory intent." Id. at 2171. Accordingly, a central concern of the Ledbetter Court was to avoid the combination of a discriminatory intent that was outside the charging period with a discrete employment practice that was within the

9

charging period. In that case, the pay-setting decision committed with discriminatory intent was outside the filing period, while the conduct constituting the employment practice was within the charge filing period (but was without discriminatory intent). To combine these acts, the Court explained, would result in the imposition of liability "in the absence of the requisite intent." Id. at 2170.

That concern is not implicated by Intervenors' Complaint, which does not allege disparate treatment based on discrete acts. (See Intervenors' Compl. ¶¶ 52-55.) Instead, invoking Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k), Intervenors allege "disparate impact," which, as the Federal Government points out, does "not require a showing of discriminatory intent." (USA Br. 10 (citing Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001).) "[D]isparate impact claims are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on the protected group." Robinson, 267 F.3d at 160.[10]

Unlike Ledbetter and Morgan, Guardians and City of Bridgeport each involved similar claims to those here—i.e., allegations by a group of individuals that a city's policy of hiring from a racially discriminatory written examination had a disparate impact on minority applicants. In Guardians, the defendants had administered written examinations, the results from which were "used in making appointments to the New York City Police Department." 633 F.2d at 235. The

---

[10] To the extent that Intervenors also allege that these policies were intentional acts of discrimination under a pattern or practice theory (See Intervenors' Compl. ¶ 55), the Court explicitly reserved ruling on this theory in Morgan, and did not appear to address it in Ledbetter. Pattern-or-practice claims involve "widespread," not discrete, acts. See Robinson, 267 F.3d at 158 ("Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals. To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'").

10

Second Circuit held that defendants' ongoing refusal to hire the plaintiffs based on the resulting list during that period "continued a course of discriminatory conduct" that "did not cease until defendants abandoned the practice of making hiring decisions in this manner." Id. at 249. Likewise, in City of Bridgeport, the court determined that the city's continued hiring from the results of a 1971 civil service examination for entry-level firefighters was part of a "continuously maintained illegal employment policy" that extended the charge filing period. 647 F.2d at 275. Unlike Morgan and Ledbetter, these cases address claims like those in the instant dispute— claims that a city policy of hiring from a racially discriminatory written examination adversely impacted a group of applicants.

The City does not provide the court with any basis on which to apply Ledbetter's analysis relating to discrete disparate treatment claims, which depend on a showing of intentional discrimination, to Intervenors' disparate impact claims, which do not. Instead, the City appears to read Ledbetter as if it were the first case to consider whether claimed violations of Title VII are merely the "continuing effects" of prior discriminatory acts. (Def. Reply 1 (arguing that Ledbetter "put an end" to claims based on unintentional effects).) It was not. Both Guardians and City of Bridgeport explicitly considered and rejected the proposition, urged by the City, that the selection of candidates from a rank-order hiring list can be nothing more than the effects of past discrimination. See Guardians, 633 F.3d at 251 ("the district court properly rejected the view that the department's discriminatory refusals to hire were merely effects of earlier discriminatory conduct"); City of Bridgeport, 647 F.2d at 274 (recognizing that "the mere continuation of a discriminatory act's effects, when the act itself occurred prior to the pertinent limitations period, is not sufficient to support recovery under Title VII"). The court does not

11

read Ledbetter as overruling these decisions addressing an entirely distinct employment practice—i.e., just because the Ledbetter Court concluded that the employment practice in that case involved the effects of prior discrimination does not necessarily mean that the employment practice involved in this case should be treated that way.[11] Second Circuit precedent suggests that that they should not be.

In sum, the court cannot conclude that Guardians and City of Bridgeport are overruled by recent Supreme Court precedent. The court is aware of the City's position that recent Title VII precedent may have eroded the basis for those thirty year-old decisions. The court is also aware that other circuits have reached a different conclusion about whether employment practices similar to the one here should be considered under the "continuing violation" theory. See Cox v. City of Memphis, 230 F.3d 199, 204 (6th Cir. 2000) ("This Court believes the better view is that promotion or hiring from an allegedly tainted promotions roster is not a 'continuing act' but is merely the effect of previous discrimination."); Lewis v. City of Chicago, 528 F.3d 488, 491 (7th Cir. 2008) (similar).

Nonetheless, the Second Circuit has yet to determine whether decisions subsequent to Guardians and City of Bridgeport have undermined their continuing viability, and the court is not convinced that they have. Accordingly, the court is inclined to follow cases addressing the same

---

[11] Although some courts have read Morgan and Ledbetter broadly, see, e.g., Dickens v. Dep't of Consumer and Regulatory Affairs, No. 06-7028, 2008 WL 4844971, at *1 (D.C. Cir. Oct. 14, 2008) ("Morgan . . . establishes that for statute-of-limitations purposes there are only two kinds of Title VII violations: 'discrete acts' and 'hostile work environments'"), the court does not conclude that those decisions, sub silentio, wiped away years of Second Circuit precedent on the continuing violation theory. See Alleyne v. Am. Airlines, Inc., 548 F.3d 219, 222 n.2 (2d Cir. 2008) (referring to continuing violation theory post-Ledbetter); Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004) (recognizing continuing violation theory post-Morgan); see also Moreno v. Town of Huntington, No. CV 05-2627(LDW)(AKT), 2008 WL 746830, at *5 (E.D.N.Y. Mar. 18, 2008) ("[T]he Morgan case did not extend to 'pattern-or-practice' claims. . . . A continuing violation may be found where there is specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.") (internal citation and quotation marks omitted).

employment practice at issue in this case, rather than to assume those cases have been overruled by decisions addressing entirely different practices.

Applying the continuing violation theory here, the court concludes that Intervenors' claims are timely. "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Patterson, 375 F.3d at 220. The Vulcan Society's charge regarding Written Examination 7029 was filed before the City stopped making hiring decisions based on that examination's resulting eligibility list. Its claims are therefore timely. The Individual Intervenors filed their charge of discrimination before the City stopped making hiring decisions based upon the test they sat for, Written Examination 2043. Individual Intervenors' claims are also timely.

  **B.**   **Remaining Claims**

The City seeks to dismiss on timeliness grounds Intervenors' claims under 42 U.S.C. §§ 1981 & 1983, as well as their claims under state and local law. The parties agree that a four-year state of limitations applies to Intervenors' § 1981 claims and a three-year statute of limitations applies to their § 1981 and state and local claims. As with Intervenors' Title VII claims, however, the parties' dispute the accrual date for that filing period. This dispute also centers on the applicability of a continuing violation theory—with the City arguing for the date the results of the examinations were received, and Intervenors arguing for the last date on which the examinations' results were used for hiring.

The continuing violation principles applicable to Title VII are also applicable to Intervenors' remaining claims. See Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004) (applying Title VII continuing violation principles in §§ 1981 & 1983 discrimination case); Wise v. New York City Police Dep't, 928 F. Supp. 355, 366 (S.D.N.Y. 1996) (same for § 1983 discrimination case); Fleming v. Verizon New York, Inc., 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) ("New York courts have embraced the continuing violation doctrine with respect to HRL and NYCHRL claims."). Because the court has concluded that the continuing violation theory is applicable to the hiring practices at issue in this case, Intervenors' remaining claims are also timely.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
January 28, 2009

/s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge