UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

   -and-

THE VULCAN SOCIETY, INC., for itself and
on behalf of its members; MARCUS
HAYWOOD, CANDIDO NUÑEZ,
ROGER GREGG, individually and on
behalf of a class of all others similarly
situated,

      Plaintiffs-Intervenors,

   -against-

THE CITY OF NEW YORK, FIRE
DEPARTMENT OF THE CITY OF NEW
YORK, NEW YORK CITY DEPARTMENT
OF CITYWIDE ADMINISTRATIVE
SERVICES, and MAYOR MICHAEL
BLOOMBERG and NEW YORK CITY FIRE
COMMISSIONER NICHOLAS SCOPPETTA,
in their individual and official capacities,

      Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
07-cv-2067 (NGG) (RLM)

NICHOLAS G. GARAUFIS, United States District Judge:

  Plaintiffs-Intervenors (the "Intervenors") have moved under Federal Rule of Civil

Procedure 72(a) to set aside the June 3, 2009 order by Magistrate Judge Roanne L. Mann

denying their Motion to Compel the Deposition of Defendant Mayor Michael Bloomberg

("Mayor Bloomberg" or "Mayor").  (Docket Entry # 288.)  The Intervenors have supplemented

their Motion with a renewed request to compel the Mayor's deposition based on his recent

testimony before the Judiciary Committee of the United States Senate.  (Docket Entry # 298.)

On account of the Mayor's testimony before the Senate, subsequent to Judge Mann's ruling, and other relevant considerations, the court grants the Motion.

I.    BACKGROUND

The court assumes the parties' familiarity with the factual and procedural background of the case. On September 29, 2008, the Intervenors moved before Magistrate Judge Mann to compel the deposition of Mayor Bloomberg. (Docket Entries ## 190, 232.) Following oral argument, Judge Mann denied the Motion to Compel without prejudice, but permitted the Intervenors to serve interrogatories with the questions they wished the Mayor to answer. (Docket Entry # 242.) The Intervenors were not satisfied with the Mayor's responses and renewed their Motion to Compel his deposition on May 27, 2009. (Docket Entry # 282.) Pursuant to a Memorandum and Order dated June 3, 2009 ("June 3 M&O"), Magistrate Judge Mann denied the renewed request. (Docket Entry # 285.)

The Intervenors now seek to set aside Judge Mann's decision under Federal Rule of Civil Procedure 72(a). Under that rule, a district court will set aside or modify a magistrate judge's nondispositive discovery order if it is "clearly erroneous or is contrary to law." Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008). In response to the Intervenors' Motion, the Defendants argue that the Mayor's responses have been adequate and that the Intervenors' dissatisfaction with them does not mean that Judge Mann's decision was erroneous under Rule 72(a). (See Defendants' Opposition to Intervenors' Motion (Docket Entry # 292) 6-10.) The Intervenors have also filed a supplemental letter directing the court to the Mayor's recent testimony before the Senate Judiciary Committee, in which he

offered sworn testimony regarding this case; they assert that the Mayor's testimony supports their request to compel his deposition. (Docket Entry # 298.)[1]

## II.    DISCUSSION

In deciding whether to compel the deposition of a high-ranking government official, courts in this Circuit require that: (1) the deposition be "necessary in order to obtain relevant information that cannot be obtained from any other source," and that (2) the deposition not "significantly interfere with the ability of the official to perform his governmental duties." Ebbert v. Nassau County, No. 05-cv-5445(FB)(AKT), 2007 WL 674725, at *5 (E.D.N.Y. Mar. 5, 2007) (quoting Toussie v. County of Suffolk, No. 05-cv-1814(JS)(ARL), 2006 WL 1982687, at *1 (E.D.N.Y. July 13, 2006)); see also Victory v. Pataki, No. 02-cv-0031S(WMS)(HKS), 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008); Kingsley v. New York City Police Dep't, No. 07-cv-7629(NRB), 2008 WL 5215648, at *2 (S.D.N.Y. Dec. 9, 2008); New York v. Nat'l R.R. Passenger Corp., No. 04-cv-962(DNH)(RFT), 2007 WL 4377721, at *1 (N.D.N.Y. Dec. 12, 2007); Gordon v. Housing Auth., No. 06-cv-1433(RNC), 2007 WL 4287470, at *1 (D. Conn. Dec. 5, 2007). These requirements reflect the need for a high-ranking public official to have "unique personal knowledge" about a case before he or she is burdened with a deposition. See Bey v. City of New York, No. 99-cv-3873(LMM)(RLE), 2007 WL 1893723, at *1 (S.D.N.Y. June 28, 2007) (internal quotation mark omitted).

This court need not decide whether Judge Mann correctly applied the standard for deposing high-ranking officials in her prior orders. This is because, by letter dated July 31,

---

[1] An unofficial transcript of the fourth day of hearings before the Senate Judiciary Committee, held on July 16, 2009, is available at http://www.nytimes.com/2009/07/16/us/politics/16confirm-text.html (last visited on August 5, 2009) ("Senate Tr.").

2009, the Intervenors identified new information that was unavailable at the time of Judge Mann's decision: Mayor Bloomberg's sworn testimony before the Senate. (<u>See</u> Docket Entry # 298.) After Judge Mann made her decision—and while the appeal of that decision was pending before this court—the Mayor voluntarily testified in a sworn proceeding that he personally chose to fight this lawsuit, and that he personally believed the examinations at issue were job related.

Specifically, the Mayor appeared before the Senate Judiciary Committee on July 16, 2009 in connection with the nomination of Judge Sonia Sotomayor to serve as an Associate Justice of the United States Supreme Court. During those proceedings, the Mayor was asked by Senator Lindsey Graham of South Carolina, "Mayor: Having to govern a city as diverse as New York must be very, very difficult. Is it also a pleasure?" (Senate Tr. 61.) The Mayor responded to this question by affirmatively volunteering his views about the litigation pending in this court:

> MAYOR BLOOMBERG: It is a pleasure. And we—I said before you came in that some of Judge Sotomayor's views I don't happen to agree with. Some of her decisions I think were wrong. We, for example—I disagreed with what the City of New Haven did. And New York City—you should know that our city is a defendant in a case, a class action suit from the Justice Department, where the challenge is two entry-level tests for our fire department, one given in 1999, before I became mayor, and one afterwards, in 2002. And we're defending it on the grounds—the suit alleges that the written portions of the tests were not germane to the job and had a disparate impact.
>
> I've chosen to fight this. I think that in fact the tests were job related and were consistent with business necessity. This is a case that's going to go to trial sometime later this year
>
> What we've tried to do is to approach it from a different point of view— aggressive recruiting to try to get more minorities to apply to be firefighters, and we have revised our test. We've had a substantial increase in the number of minorities taking the test, passing the test and joining our fire department. And I really do believe that that's a better way to solve the diversity problem, which does affect an awful lot of fire departments around this country, rather than throwing out tests and thereby penalizing those who pass the test.

(Senate Tr. 62.)  The Mayor was not compelled to offer this sworn testimony, and it suggests his direct involvement in the events at issue in the case.  Since the personal involvement of a high-ranking public official is a central consideration in deciding whether to compel a deposition, the Mayor's testimony is crucial to that determination here.[2]

On account of this new evidence, the court has considered sending the matter back to Judge Mann for reconsideration,[3] but has concluded that it would be inefficient to do so at this late stage in the litigation.  Discovery has long been completed, and the court has already ruled on disparate impact liability.  (See Memorandum & Order dated July 22, 2009 (Docket Entry # 294).)  The disparate treatment liability phase and the remedial stage remain pending, and a timely ruling on this open issue is necessary to expedite a resolution of the merits.  It is most expedient for this court to consider the new testimony and to resolve the matter now.

Having considered the Mayor's Senate testimony, along with the parties' submissions, the court concludes that a three-hour deposition of Mayor Bloomberg requested by the Intervenors is warranted.  The Mayor's sworn testimony before Congress indicates his personal

---

[2] In addition to the Mayor's statement before Congress, there is other evidence that he possesses "unique personal knowledge" about the events at issue in the case.  See Bey, 2007 WL 1893723, at *1.  In April 2003, the New York City Equal Employment Practices Commission ("EEPC") forwarded to the Mayor a "Report" regarding the failure of the New York City Fire Department ("FDNY") to "implement certain corrective actions" in response to an EEPC audit of FDNY hiring practices.  (See Affidavit of Paul Washington dated April 20, 2008 (Docket Entry # 125) ("Washington Aff.") Ex. 12.)  In the Vice-Chairman's cover letter, the EEPC requested that the Mayor direct the Fire Commissioner to "[c]onduct an adverse impact study on" Written Examination 7029.  (Id.)  In response to this request, the Mayor wrote to the EEPC stating that "I am satisfied that the Fire Department has adequately addressed the points raised in the EEPC's report."  (See Declaration of Dana E. Lossia dated June 17, 2009 (Docket Entry # 290) ("Lossia Decl.") Ex. H.)  In addition to this official correspondence, the Mayor has had other direct involvement with the issue of the New York City's written examinations.  For example, he has held meetings with the Vulcan Society (see Washington Aff. ¶¶ 19, 22, 27-28), and has received letters about firefighter testing and hiring from various high-ranking government officials, including members of the City Council, then-State Senator David Paterson, as well as members of the U.S. Congress (see id. Exs. 18, 20, 21, 22).

[3] In light of the Senate testimony, Judge Mann would need to reconsider her decision that the interrogatories are adequate.  The Mayor's sworn statement that "I think . . . the tests were job related and were consistent with business necessity" appears to be somewhat inconsonant with his responses to several of the interrogatories in which he indicates a lack of recollection about the written examinations.  (See Lossia Decl. Ex. D, at 16-20 (Interrogatories ## 34, 39-43).)

involvement in the events at issue in this litigation and raises the question of the basis for the Mayor's belief that the challenged examinations were job related. Based on that testimony—coupled with other record evidence of the Mayor's involvement in the facts underlying this dispute—it is apparent that the Mayor possesses "relevant information that cannot be obtained from any other source." Marisol A. v. Giuliani, No. 95-cv- 10533(RJW), 1998 WL 132810, at *2 (S.D.N.Y. Mar. 23, 1998).

Furthermore, a time-limited deposition of the Mayor would not "significantly interfere with [his] ability . . . to perform his governmental duties." Ebbert, 2007 WL 674725, at *5. The Intervenors have indicated that a three-hour deposition would be sufficient (see June 3 M&O 2 n.2), and the court concludes that this modest amount of time would allow the Intervenors to question the Mayor without significantly interfering with his official duties.[4] The Mayor has probably already devoted more than three hours to answering interrogatories and providing testimony about this case on Capitol Hill. Ordering a deposition at this time is a more efficient means of resolving this open dispute than burdening the parties and the Mayor with further rounds of interrogatories, and, possibly, further court rulings and appeals. Moreover, the Defendants do not argue that a three-hour deposition would unduly interfere with the Mayor's official duties.[5]

---

[4] The Intervenors have also indicated that a standard seven-hour deposition under Rule 30(d)(1) is warranted (see June 3 M&O 2), but the court deems a deposition of more limited duration to be appropriate and sufficient in the unique circumstances of this case. See Arista Records LLC v. Lime Group LLC, No. 06-cv-5936(GEL), 2008 WL 1752254, at *1 (S.D.N.Y. Apr. 16, 2008) ("A district court has broad discretion to set the length of depositions appropriate to the circumstances of the case.").

[5] As the Intervenors point out, the Mayor was recently able to sit for a deposition in a case involving a private party in which, unlike in this case, he is not named as a defendant. See EEOC v. Bloomberg LP, No. 07-cv-8383(LAP), Docket Entry # 54, (S.D.N.Y. May 5, 2009) (notice of deposition); see also David W. Chen, Bloomberg Testifies in Bias Suit Brought Against His Company, N.Y. Times, July 28, 2009, A20, available at http://www.nytimes.com/2009/07/28/nyregion/28depose.html (last visited on Aug. 5, 2009).

## III.   CONCLUSION

For the foregoing reasons, the court GRANTS the Intervenors' motion to set aside Magistrate Judge Mann's order denying their request to compel the deposition of Mayor Bloomberg.   The Intervenors' Motion to Compel the deposition of Mayor Bloomberg is GRANTED.   The parties shall coordinate a convenient time and place at which to conduct a deposition of Mayor Bloomberg that is no longer than three hours in duration.

SO ORDERED.

_/s/ Nicholas G. Garaufis____
NICHOLAS G. GARAUFIS
United States District Judge

Dated: Brooklyn, New York
     August 5, 2009