# SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

120 BROADWAY • NEW YORK • NEW YORK 10271
TELEPHONE: (212) 732-9000
FACSIMILE: (212) 266-4141
SPBMC-NY@TrialLaw1.com
www.TrialLaw1.com

| | | | | |
|---|---|---|---|---|
| Robert G. Sullivan | Marie Ng | | Cheol I. Kim | Jeffrey B. Bromfeld |
| Nicholas Papain | Eleni Coffinas | | Eric K. Schwarz | Wendell Y. Tong |
| Michael N. Block | David J. Dean | | Mary Anne Walling | Benjamin J. Wolf |
| Christopher T. McGrath | Hugh M. Turk | | Elizabeth Montesano | Terrence L. Tarver |
| Vito A. Cannavo | Albert B. Aquila | PLEASE REPLY TO: | Matthew J. Jones | Michael J. Wells |
| John F. Nash | Brian J. Shoot | | Deanne M. DiBlasi | Noemi Puntier |
| Frank V. Floriani | Andrew J. Carboy | New York City Office | Beth N. Jablon | Clifford S. Argintar |
| | | | Liza A. Milgrim | Jocelyn E. Lupetin |
| | | | Susan M. Jaffe | Kerry A. McManus |
| | | | Donte Mills | Thomas J. McManus |
| | | | Christopher P. Spina | |
| John M. Tomsky | Herman Badillo | | | |
| George J. Pfluger | Hon. Joseph N. Giamboi (ret.) | | | |
| *Counsel to the Firm* | Stephen C. Glasser | | | |
| | *Of Counsel* | | August 10, 2009 | |

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East - Room 659
Brooklyn, New York  11201


      Re:  U.S.A. and Vulcan Society, et al. vs. City, et al.
           Civil Action No.:  07-cv-2067 (NGG) (RLM)


Dear Honorable Garaufis:


     The undersigned are attorneys for the Uniformed Firefighters Association (hereinafter "UFA") in the above captioned proceeding.  We are submitting this letter, with the Court's permission, as a motion by the UFA to intervene as a party defendant in the remedy phase of this action, pursuant to Rules 24(a)(2) and 24(b)(2) of the F.R.C.P.

## BACKGROUND

     This action, initially brought by the United States of America (hereinafter "U.S.A.") asserts that two New York City Fire Department ("FDNY") entry level examinations for the position of firefighter (Exams designated as Nos. 7029 and 2043) had a disparate impact on black and Hispanic candidates and violated Title VII of the Civil Rights Act of 1964.  In addition, plaintiff-intervenors (hereinafter collectively, the "Vulcans") assert a claim of disparate treatment against the defendants.

SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.

Re:  *U.S.A. vs. City*
August 10, 2009
Page 2 of 6

        This Court, in a Memorandum and Order dated July 22, 2009, granted
summary judgment to the U.S.A. and the Vulcans on their disparate impact
claims and noted that "an appropriate remedy must now be considered by the
court" (Memorandum and Order, Docket Entry #294, p. 93).  The UFA seeks to
be a party in the Court's consideration of that appropriate remedy.

                    THE UFA'S PRIOR INTERVENTION MOTION

        Shortly after this action was commenced and prior to the intervention
by the Vulcans, the UFA moved to intervene as a party defendant in the
liability phase of the case.   The UFA requested both intervention as of
right [F.R.C.P. Rule 24(a)(2)] and permissive intervention [F.R.C.P. Rule
24(b)(2)].   Essentially, the UFA argued that its intervention was proper
to protect the safety of firefighters and the public by preserving hiring
based upon merit.   [See UFA's Motion to Intervene (Docket Entry #15); its
Supporting Memorandum of Law (Docket Entry #16); and its Reply Memorandum
of Law (Docket Entry #28).   The UFA's Motion to Intervene was opposed by
the U.S.A. but its Memorandum in Response to the UFA's motion also stated:

              However, the United States believes that the UFA
              should be joined as a non-liability party pursuant to
              Rule 19 of the Federal Rules of Civil Procedure
              because some forms of relief sought by the United
              States, such as retroactive seniority, may affect
              rights and obligations of the UFA's members under the
              union contract (Docket Entry #22, p.2).

        The plaintiff's Memorandum also successfully urged bifurcation of the
liability and relief phases of the case.   It argued that if bifurcation
was granted, the relevant authority supported denial of the UFA's
intervention in the liability phase.   However, again the government
recognized the union's right to intervention in the relief phase to
protect any legally cognizable interest the UFA might have in a possible
remedy (Docket Entry #22, pp. 6-7).   The plaintiff's Memorandum also noted
that "it appears that the UFA has an interest in the seniority rights of
its members under the collective bargaining agreement between the UFA and
the City" and that "[s]eniority rights of incumbent firefighters may be
affected by the relief sought by the United States in this case. . ."
(Docket Entry #22, p. 13).   The Memorandum further recognized that the
City's interest in the relief phase "may not coincide with the UFA's
interest in protecting the seniority rights of incumbent firefighters"
(Docket Entry #22, p. 14).

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

Re: *U.S.A. vs. City*
August 10, 2009
Page 3 of 6

The U.S.A. did not object to the UFA's "limited participation in relief proceedings in this case [including any proceedings related to approval and entry of a consent decree by the Court] pursuant to Rule 19 of the Federal Rules of Civil Procedure" (Docket Entry #22, p. 14). Alternatively, it suggested that the UFA be permitted to intervene only in the relief phase of the case "for similarly limited purposes" (Docket Entry #22, p. 15).

Counsel for the Vulcans also recognized the UFA's right to intervene in the remedy phase in their letter to this Court dated August 17, 2007 (Docket Entry #41). That letter opposed the UFA's intervention in the liability phase, but stated:

> This is not to say that they should not be involved at a remedy stage, if liability is proven in the first phase of this litigation (Docket Entry #41, p. 1).

### THE COURT'S DENIAL OF THE UFA'S INTERVENTION REQUEST

In a Memorandum and Order (Docket Entry #47) dated September 5, 2007 this Court granted bifurcation of the liability and relief phases of the case. It also denied the UFA's motion to intervene as a party defendant. However, the Court invited the UFA to participate as a friend of the Court regarding issues raised in the litigation, "particularly the safety of firefighters" (Docket Entry #47, p. 10). The Court also recognized the UFA's interest in the remedy phase of this case. It stated:

> Finally, and importantly, because the UFA clearly has an abiding interest in the implementation of a remedy, I want to make it clear that the court would be reluctant to approve any settlement containing any remedy that affects the safety of the firefighters without the participation of the UFA. This union deserves a place at the bargaining table (Docket Entry #47, p. 10).

Although the Court did not actually issue a ruling on whether the UFA could intervene in the remedy phase, it recognized the potential interest of the UFA in the outcome of the case as it may affect the seniority rights of its members. The Court stated:

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

Re:  *U.S.A. vs. City*
August 10, 2009
Page 4 of 6

> Incumbent firefighters' seniority rights may be
> affected in this case because individuals given hiring
> relief may be granted retroactive seniority.  The UFA
> has an interest in such relief (Docket Entry #47, p.
> 13).

Accordingly, the Court granted the right to the UFA to renew its intervention motion at a later date.

<u>THE UFA SHOULD BE PERMITTED TO INTERVENE IN THE REMEDY PHASE</u>

As noted in the Court's recent decision granting summary judgment, the U.S.A. and the Vulcans seek various forms of injunctive and monetary relief.  Among the remedies they desire is some form of preferential hiring with retroactive seniority for individuals found to have been victims of discrimination in the City's hiring procedures (Docket Entry #22, pp. 13-14).

As noted in the accompanying Affidavit of UFA President, Stephen J. Cassidy, seniority has a definite impact upon the ability of firefighters to be promoted, as well as upon the right to transfer and the ability to be selected to work on special assignments.

For example, under the rules currently governing eligibility to participate in the promotional exam to the rank of Lieutenant, an individual must first have served for three years as a firefighter. Moreover, to actually be promoted to that rank, the firefighter must have reached 1st grade - a process that takes five years from the date of hire. Candidates for promotion to Lieutenant can receive credit for up to 10 years of seniority to improve their position on the rank order promotional hiring list.

It is certainly likely that plaintiffs and plaintiff-intervenors will seek the benefit of retroactive seniority for promotional purposes, as well as pension and pay purposes.  If successful, persons granted the retroactive seniority could, in effect, leap-frog over incumbents who have actually served as firefighters for the full term of their seniority claim.  Such incumbents could, therefore, be denied promotion or suffer a significant delay in moving to a higher rank.  Similarly, the ability of incumbents to transfer to more desirable fire companies or to obtain higher paying special assignments could be adversely affected.

SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.

Further, as noted, the U.S.A. has already conceded that the City's interest may not coincide with the UFA's interest in protecting the seniority rights of its members (Docket Entry #22, p. 14).  As the exclusive bargaining agent for firefighters, the UFA has a greater concern than the City that its members' rights not be unfairly trampled by the mechanism of retroactive seniority granted to individuals who receive benefits in the remedy phase of this case.  The City may very well have little interest in preventing those granted retroactive seniority in this case from using that seniority for promotional purposes.  Such use might, in fact, reduce any monetary damages the City could owe those individuals for delaying not only their hiring, but their promotion.

Moreover, in <u>Brennan v. N.Y. City Bd. of Educ.</u>, 260 F.3d 123, 133 (2nd Cir., 2001), the Second Circuit expressly recognized the possibility that a municipality could have a greater interest in ending litigation by settlement "involving the displacement of employees who are not parties to the action" than in avoiding such potential discrimination.

The UFA is also entitled to permissive intervention under F.R.C.P. Rule 24(b)(2) as its defenses on the issue of retroactive seniority have common questions of law and fact as may be interposed by the City of New York.

THE UFA DOES NOT OPPOSE MONETARY
<u>RELIEF FOR THE VICTIMS OF DISCRIMINATION</u>

At the conference before this Court on August 6, 2009, counsel for the Vulcans stated:

> MR. LEVY:     I don't object to them intervening and being involved with certain aspects of the remedy phase that effect the members of the union.  But there are parts of the remedy that really have nothing to do with the union; back pay and other kinds of damages that may float to members of the class.
>
> Frankly, it's hard enough to have the discussions with us and the government and the city and bringing in another party in that doesn't really have a

SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.

Re:  *U.S.A. vs. City*
August 10, 2009
Page 6 of 6

stake in those issues, is not helpful,
I think.

(Transcript of the conference of August 6, 2009, p. 18 - the entire
transcript is annexed hereto as **"Exhibit "A"**.

The UFA is unclear about the basis for the concern expressed by
Vulcans' counsel.  The UFA has no objection to the award of monetary
damages to the victims of discrimination, including back pay.  The
presence of the UFA in the remedy phase will not interfere with such
relief.

Accordingly, for the reasons stated above, the UFA respectfully
requests this Court for permission to intervene as a party defendant in
the remedy phase of this case.

Respectfully yours,

SULLIVAN PAPAIN BLOCK
McGRATH & CANNAVO P.C.

By:  _____
Michael N. Block (MNB/0957)

MNB:law

cc:  Magistrate Roanne L. Mann
     Service List

(UF-068518)

# EXHIBIT "A"

1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA
4                        :
               Plaintiff        07-CV-2067
5
      -against-          :       U.S. Courthouse
6                                Brooklyn, N.Y.
   THE CITY OF NEW YORK  :
7
               Defendant  :
8                                August 6, 2009
   - - - - - - - - - - - - - - - X   2:30 p.m.
9
   BEFORE:
10
           HONORABLE NICHOLAS G. GARAUFIS
11           United States District Judge

12

13  APPEARANCES:

14  For the Plaintiff:       UNITED STATES DEPARTMENT OF JUSTICE
                             Civil Rights Division
15                           Employment Litigation Section
                             P.O. Box 65968
16                           Washington, D.C. 20035-5968
                             BY:  SHARON A. SEELEY
17                                VARDA HUSSAIN

18                                   AND

19                           BENTON J. CAMPBELL
                             United States Attorney
20                           271 Cadman Plaza East
                             Brooklyn, New York 11201
21                           BY:  ELLIOT M. SCHACHNER
                                  DAVID M. ESKEW
22

23  For the Intervenors:     LEVY RATNER, P.C.
    Vulcans                  80 Eighth Avenue
24                           New York, New York 10011-5126
                             BY:  RICHARD A. LEVY
25                                DANA E. LOSSIA

2

```
 1   For the Intervenors:     CENTER FOR CONSTITUTIONAL RIGHTS
     Vulcans                  666 Broadway
 2                            Seventh Floor
                              New York, New York 10012
 3                            BY:  ANJANA SAMANT

 4                            VULCAN SOCIETY, INC.
                              Fire Department City of New York
 5                            739 Eastern Parkway
                              Brooklyn, New York 11213
 6                            BY:  JOHN COOMBS, President
                                   PAUL WASHINGTON
 7

 8   For the Defendant:       NEW YORK CITY LAW DEPARTMENT
     City of New York         Office of the Corporation Counsel
 9                            100 Church Street
                              New York, New York 10007-2601
10                            BY:  GEORGIA PESTANA
                                   Chief, Labor and Employment
11                                 Law Division
                                        AND
12                            JAMES M. LEMONEDES
                              Senior Counsel/Trial Specialist
13                                      AND
                              WILLIAM S.J. FRAENKEL
14

15

16   For the UFA:             SULLIVAN PAPAIN BLOCK
                              McGRATH & CANNAVO, P.C.
17                            120 Broadway
                              New York, New York 10271
18                            BY:  MICHAEL N. BLOCK

19

20

21   Court Reporter:          RONALD E. TOLKIN, RMR, CRR
                              225 Cadman Plaza East
22                            Brooklyn, New York 11201
                              718-613-2647
23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by Computer-Assisted Transcript.
```

U.S.A. v. CITY OF NEW YORK                              3

1          THE CLERK:  Counsel, please state your appearances.

2          MS. SEELEY:  Good afternoon, Your Honor.

3          Sharon Seeley for the United States.

4          MR. SCHACHNER:  Good afternoon, Your Honor.

5          Elliot Schachner, Assistant United States Attorney.

6          MS. HUSSAIN:  Good afternoon, Your Honor.

7          Varda Hussain for the United States.

8          MR. ESKEW:  Good afternoon, Your Honor.

9          David M. Eskew for the government.

10         MR. LEVY:  Richard Levy on behalf of Vulcan.

11         MS. LOSSIA:  Dana E. Lossia on behalf of the

12    Intervenors, Vulcan.

13         MS. SAMANT:  Anjana Samant on behalf of the

14    intervenors Vulcan from the Center for Constitutional Rights.

15         MR. COOMBS:  Good afternoon, Your Honor.

16         I am John Coombs, president of Vulcan Society, Inc.

17         MR. WASHINGTON:  Good afternoon, Your Honor.

18         Paul Washington of Vulcan Society.

19         THE COURT:  For the defense?

20         MS. PESTANA:  Good afternoon, Your Honor.

21         For the City of New York, I am Georgia Pestana.

22         THE COURT:  Good afternoon.

23         MR. LEMONEDES:  James M. Lemonedes on behalf of the

24    City of New York, as well, Your Honor.

25         MR. FRAENKEL:  William Fraenkel for the City of New

1    York.

2            THE COURT:  Okay.  Well, we know where we are.

3    Let's find out where we're going.  Let me hear from the

4    government first.

5            MS. SEELEY:  Your Honor, in response to the question

6    of Your Honor's order, there is discovery that will be needed

7    for the relief phase.  But the discovery that we need depends,

8    we believe, on a few preliminary issues that should be decided

9    early so we know what discovery is necessary and exactly how

10   we'll go about it.

11           And those issues are, first, in a case such as this,

12   where we're seeking both injunctive relief and individual

13   relief for the individuals who are harmed by the unlawful

14   practices that would consist of monetary relief and priority

15   hiring relief.

16           When it comes to the monetary relief and priority

17   hiring relief, there are essentially two ways that the Court

18   can go about the relief phase.  The first of those ways is to

19   essentially take an approach of individualized hearings where

20   all of the potential individuals who would get relief, we need

21   to do discovery with respect to them ad the Court essentially

22   holds mini hearings for each of them to determine how much

23   money they made in the interim, their employment history, how

24   much they would have made had they been hired, when they would

25   have been hired, and all of the things for each of the

1    individuals in this case.

2           In this case, we have somewhere between 35 hundred

3    and well over 7,000 potential individuals who would be

4    entitled to relief.  So what we would request is that the

5    Court take the second approach to individual relief, which is

6    to order relief on essentially a class wide basis.  And what

7    the Court can do there is to determine a total amount of

8    monetary relief to be shared by all the individuals eligible

9    for that relief, as well as a total number of priority hires

10   for the individuals who are seeking and qualified for priority

11   hiring.

12          That can be done without getting information about

13   each individual and their employment history and all of that,

14   and it's much more efficient.  Other Courts have taken this

15   approach either when the parties have agreed to it or when the

16   Court has found it would be impossible to determine with any

17   reasonable degree of certainty who would have actually got the

18   limited number of jobs that, absent discrimination, would have

19   gone to blacks and Hispanics, for example.

20          So that's the first preliminary issue that we think

21   should be addressed and we think would change what discovery

22   has to be done.

23          The second issue is actually the issue that was

24   raised in the City's letter to the Court of July 31st, where

25   the City said that there are equal protection issues and due

1   process issues that they think, I guess, would stand in the

2   way of settlement.  And it seems it would also perhaps change

3   the direction of discovery here depending on what kind of

4   relief might be available given whatever the equal protection

5   and due process concerns are.

6              And I'll be honest, I'm not sure I understand

7   exactly what those are, given the liability judgment, which

8   means there has been actual discrimination here, what those

9   concerns are.  But if they're legal concerns, then we think

10  they should be dealt with up front so we know what kinds of

11  relief will be available in this case and we can limit our

12  discovery to those kind of reliefs.

13             THE COURT:  Well, wouldn't it be useful to send you

14  back to the Magistrate Judge to complete discovery?

15             MS. SEELEY:  It may well, Your Honor.  But some of

16  these issues, this Court may need to make determinations with

17  respect to before we go back to the Magistrate Judge and do

18  that discovery.

19             THE COURT:  Okay.

20             MS. SEELEY:  The last issue that I see kind of as a

21  preliminary issue that effects everything else is the issue of

22  class certification.  I know in Your Honor's previous order

23  certifying the class with the Vulcans and the individuals as

24  class representatives, Your Honor left some issues to be open

25  to be revisited when we reached the relief phase.  And

1    obviously, we are there now.

2                THE COURT:  Of your case?

3                MS. SEELEY:  Of the disparate treatment case,

4    correct, Your Honor.

5                So we think that that should be addressed early,

6    right up front as well.  Because depending who Mr. Levy and

7    the Vulcans may be representing, it may change how we have to

8    go about discovery with respect to individuals.

9                THE COURT:  Okay.

10                MS. SEELEY:  So those are the preliminary issues.

11   The only other thing that I guess I wanted to raise is the

12   question Your Honor just raised, actually, the disparate

13   treatment claims still need to be decide.  And what we would

14   request is that essentially relief discovery, relief

15   proceedings on the disparate impact claims go on a parallel

16   track with the remainder of discovery and any other

17   proceedings in the liability phase of disparate treatment

18   claims, so that we can not delay relief and hopefully get

19   everything wrapped up as quickly as possible.

20                THE COURT:  Thank you.

21                Let me hear from Mr. Levy.

22                MR. LEVY:  Judge, we're in substantial agreement

23   with the government on the positions that you just heard

24   about.  On the discovery, I think we can do this with the

25   Magistrate.  I completely agree that we should go ahead with

1  relief discovery now, even while we're still working out the

2  disparate treatment case.  Because if we prevail there, I

3  think it would just potentially add to the relief and we can

4  look at it then.  But we wouldn't want to hold this case up

5  anymore, so I would like to see us proceed on discovery.

6          On the equal protection argument, I agree that we

7  should get that resolved as quickly as we can and bring in any

8  parties at this time who may have an objection, whether that

9  be the union or the white firefighters who are on the 6019

10 list, or whoever.

11         On class cert, I'm not sure that I think there's a

12 substantial question.  We have individuals who took Exam 2043

13 as class representatives.  I think they can certainly

14 represent those who took 7029, because they were, essentially,

15 identical tests under identical circumstances.  The Vulcans

16 involvement, I think, is essential.  Certainly with respect to

17 how we work out priority hires and other issues that may

18 affect hiring and the current exam.

19         THE COURT:  Are you ready to go forward on the

20 disparate treatment?

21         MR. LEVY:  Pending only the deposition of Mayor

22 Bloomberg which, I think, is quite an important element of the

23 disparate treatment case.  And it also may be -- and I don't

24 want to promise it, but it may something that can be decided

25 on a motion.  I'm not sure, but there's an awful lot of

1   evidence that might be sufficient to establish that case on a

2   motion.  I'd have to take that deposition first to know.

3              THE COURT:  Let me hear from the City.

4              MS. PESTANA:  We are in some agreement with the

5   plaintiffs and the intervenors, in that we are interested in

6   getting this case to closure sooner rather than later.

7              The equal protection concerns that I alluded to in

8   my letter really have nothing to do with the monetary part of

9   the case.  But if we are contemplating priority hires that

10  include the granting of competitive seniority to anybody who

11  is hired or is currently in the Fire Department, that will

12  impact the rights of the whites who are already in the

13  department and implicates the equal protection.

14             I think that in order to address at least the

15  members of the department that are currently there, it's time

16  for the unions to be allowed to intervene.  And I know that

17  they are here.

18             THE COURT:  And I wish they would come up to

19  counsel's table.

20             MR. BLOCK:  Michael Block on behalf of the UFA, and

21  Steven Cassidy, the president of the union.

22             THE COURT:  Have a seat, both of you.  Thank you.

23             MS. PESTANA:  With respect to the minority hires,

24  we've always taken the position -- while up until the New

25  Haven decision, we've always argued that someone's appearance

1   on the list is not a right to anything, it's just an

2   expectation to be considered.  But there's some troubling

3   language in the Richie decision which seems to indicate that

4   people on the list have something a little bit more tangible.

5          We're concerned that -- not in that decision, but

6   another decision that may come down before Your Honor's

7   decision or this case comes to a closure, may interpret the

8   people on the list have a stronger right than we previously

9   thought.

10          So it may be beneficial to either include everyone

11   on the 6019 list, depending on where the priority hires come

12   from, and who will be impacted by the priority hires.  We

13   would have to think about whether we need to bring those

14   people in because the union represent applicants.  So their

15   interests need to be represented.

16          THE COURT:  I understand.  I read the Richie

17   decision, and I read the concurrences as well.  Everybody has

18   -- on the majority side, has its own prospective on where this

19   area of law is moving.  I don't have a crystal ball.

20          And I think we're going to have a new justice on the

21   Supreme Court, hopefully by the end of the day.  So I can't

22   operate, nor can any of us operate on what may be some day in

23   the future on this case, should it go up, when it gets to the

24   appellate level.  So that's my only comment on all of that.

25          I understand that there is language in the decision

1    that you allude to.  I am concerned about the affect that any

2    relief will have on incumbent fire fighters, in terms of their

3    seniority and any other rights that they have under the union

4    contract.

5           This is not an easy situation, and I'm wondering

6    whether there has been any effort -- I know you've done it in

7    the past, but whether there's been any effort to achieve a

8    solution that doesn't require a judicial decree.  Because it's

9    very complicated, a lot of people's rights are affected by

10   anything that happens.

11          So I'm wondering whether it might not be useful for

12   you to visit with Judge Mann one more time and bring her up on

13   the current status of the case.  At least have a sit down as

14   to whether there's anything that can be done, including the

15   UFA.  That would protect the rights of the current fire

16   fighters and provide relief to the class represented by the

17   Vulcans.

18          Have you had any discussion about this, or am I the

19   only one who has been working on this for the last three

20   months?

21          MS. PESTANA:  We had many discussions in December

22   and January.  I think in late January is the last time that we

23   talked.  The wall we kept hitting was equal protection

24   concerns and the competitive seniority and our resistance to

25   that because of the City's resistance to competitive

1   seniority, as well as a couple of other minor things that

2   probably could be resolved.  But that's the issue that really

3   blocked things.

4          Magistrate Mann was helpful in getting us talking,

5   but I think we were more fruitful when we sat down over

6   Christmas and New Years together and tried to hammer out

7   language.  And we were pretty far along before we hit that

8   wall the last time.

9          In so far as in terms of the disparate treatment

10  claim, I think the Mayor's deposition is already scheduled for

11  two weeks from now.  So that will be going forward and

12  Mr. Levy can then decide whether he can make a motion.  We

13  think we may want to make a motion on qualified immunity after

14  that deposition.

15         I know that Commissioner Scoppetta was the other

16  individually named defendant who was already deposed.  I don't

17  know if Mr. Levy needs to redepose him on the disparate

18  treatment claim.  But if we're going to make that qualified

19  immunity motion, wait for both of them to be ready.

20         THE COURT:  That's fine.

21         MR. LEVY:  I don't want to get mixed into what the

22  settlement discussions have been and so on, that wouldn't be

23  appropriate.  But if the issue is equal protection, then I

24  think that the suggestion made by Ms. Seeley earlier could

25  really help to resolve that.

1          In other words, we could try to reach a resolution

2     with an understanding that we will come back to you if there

3     is an equal protection question and let you decide it right

4     off the bat.

5          In other words, we could have a settlement agreement

6     that we all thought was appropriate.  And if we think there is

7     a potential for a challenge, we bring that agreement to you

8     and we offer briefs, and the unions can brief, and the white

9     fire fighters can brief that issue.  You could decide it and

10    we'll see if we have a settlement on it.

11          MR. LEMONEDES:  I'm not quite understanding what

12    Mr. Levy is saying.  It seems to me the big roadblock all

13    along has been the equal protection issue.  To attempt to

14    suggest that we could come to an agreement about that, I mean,

15    that is the most significant issue present.  If Mr. Levy is

16    suggesting we will deal with only the economic issues and then

17    come to Your Honor for the equal protection, I guess we can

18    consider that.

19          But if what I'm hearing is that Mr. Levy is saying

20    that we should come to some sort of resolution including

21    everything before we come to Your Honor, I think I have an

22    obligation to say to Your Honor that it's very difficult for

23    the City to be able to do that.  I don't know that we can

24    accomplish that.

25          THE COURT:  I understand.  Could you sort of clarify

1   your suggestion, taking into account Mr. Lemonedes' comment?

2        MR. LEVY:  Yes.  Let me just say two things.  One of

3   them is, maybe the easiest thing to do is to present to you

4   now the equal protection issue, and work out everything else

5   in the agreement and try to get as early a decision from you

6   on the basic equal protection question.

7        Which, I think is, is there an equal protection

8   problem on guarded hiring, which we don't think exists.  Is

9   there an equal protection problem on seniority, which we don't

10  think exists.  And we can just present that to you.  I mean, I

11  don't know if we have a difference with the City on where we

12  stand on those questions.  We may have a difference with the

13  union, I don't know.  But that could be presented.

14        The other way we had thought about this, and which I

15  was really talking about when I first got up is, in the

16  settlement, working out a process to have that question very

17  quickly decided.  So that -- and I don't think I'd be

18  revealing anything to say that we have talked about this

19  before.  I mean, the two sides had talked about the

20  possibility of settlement agreements that included expedited

21  methods for getting a resolution to any question that may be

22  raised by equal protection.

23        But in any event --

24        THE COURT:  You can't have a settlement without --

25        MR. LEVY:  It would be contingent.  Or a part of it.

1   Maybe it would all be contingent.  We could reach a lot of

2   agreements on this.

3           Maybe you're right, Your Honor.  Maybe the only

4   thing to do to is either see if the things we can work out

5   that don't raise that issue.  It's very hard to imagine.  I

6   mean, there are groups out there that exist for the purpose of

7   challenging these kinds of cases and the priority hiring and

8   the seniority issues, and they may become involved.

9           THE COURT:  Well, we have the UFA here and I'm sure

10  they have a strong view on the subject.

11          MR. LEVY:  I don't know what their view is on it,

12  really.

13          THE COURT:  Well, I can imagine.

14          MR. BLOCK:  Your Honor, just to say this, we have

15  not been a part of any of these discussions.

16          THE COURT:  I understand that.

17          MR. BLOCK:  Certainly the union has great concerns,

18  particularly on the issue of seniority safety issues that

19  might affect the rights of existing fire fighters to

20  promotions or to transfers.  Seniority has a lot to do with

21  that.  There may be others as well that don't come to mind at

22  the moment.  But certainly the union has a real interest in

23  those issues.

24          THE COURT:  Well, my sense is that it might be

25  useful for you to spend just a little bit of time with the

1  Magistrate Judge and fine tune where you think there is

2  difficulty.  Then come back to me with a proposal as to how to

3  proceed on the remedy phase.  You may disagree, but at least

4  I'll know where you stand.

5          And with respect to disparate treatment, after the

6  Mayor is deposed -- and let me say that the Court very much

7  appreciates the Mayor's cooperation in scheduling an early

8  deposition in this matter.  I wish that you would send that

9  message along.

10         MS. SEELEY:  I will, Your Honor.

11         THE COURT:  We'll be done with that and then you'll

12  know whether you want to move for summary judgment on

13  disparate treatment or not, and we'll be off.  Then we can go

14  along.

15         In the meantime, we can discuss how to proceed on

16  the remedy phase.  I'm willing to establish a remedy, but my

17  feeling is it's in everyone's best interest to find the remedy

18  that does the most good and the least damage to the interested

19  parties.  It may be a Pollyanna, but it's been done before.

20  And it really depends on a number of factors and the good

21  faith of all the parties, as well as the UFA, which is going

22  to be a party with respect to the remedy phase.

23         So I'm going to send you to Judge Mann.  She's here

24  for another week.  She said she can meet with you once before

25  she goes on vacation.  It may be that when you finish talking

1   to her, you come back to me and say it's back.  It's back in

2   my court, so to speak, and I'll accept that.  But I would at

3   least like you to have that discussion with Judge Mann because

4   she is the person who's been engaged in the settlement

5   discussions and she has indicated to me a willingness to be

6   helpful, if at all possible.  So that's where I am.

7           Then what I'd like from you, from the parties, a

8   plan, in writing.  And where you disagree on how to proceed,

9   you'll tell me.  Where you agree on how to proceed, you'll

10  tell me.  And then I can call you all together and we can have

11  an intelligent discussion on the next steps.

12          This is complicated, obviously, because we have

13  disparate interests at play here.  I'm very well aware of

14  that.  If we were to have a disparate treatment trial, I would

15  schedule it for September 21st. If you believe that we should

16  have a trial, I would like to know how long the plaintiff's

17  intervenors case will be, who the witnesses would be.  And I

18  would like the same information from the defendant.

19          Any other issues that we need to discuss today?

20          MR. LEVY:  Do we have a date to appear before the

21  Magistrate?

22          THE COURT:  I didn't get a date but it will be

23  sometime next week.  You can check with her chambers when you

24  leave here.  I'm sure she'll give you a day and time.

25          MR. BLOCK:  Your Honor, you may recall you denied

1   our intervention motion saying we could renew that at the

2   remedy phase.  I don't know if you would consent for us to now

3   intervene strictly on the remedy phase and the disparate

4   impact case.

5               THE COURT:  Does anyone object?

6               MR. LEVY:  I don't object to them intervening and

7   being involved with certain aspects of the remedy phase that

8   effect the members of the union.  But there are parts of the

9   remedy that really have nothing to do with the union; back pay

10  and other kinds of damages that may float to members of the

11  class.

12              Frankly, it's hard enough to have the discussions

13  with us and the government and the city and bringing in

14  another party in that doesn't really have a stake in those

15  issues, is not helpful, I think.

16              THE COURT:  In that case, why don't you make a

17  formal application.  It can be in the form of a letter, if you

18  wish.

19              MR. BLOCK:  Yes.

20              THE COURT:  When can you have that to me?

21              MR. BLOCK:  By the end of this week, early next

22  week.  Let's say Tuesday of next week.

23              THE COURT:  That's fine.  And responses from the

24  parties by a week from Tuesday.

25              All right?

1          MR. BLOCK:  Thank you.

2          THE COURT:  That way I will know what the issues are

3  with regard to the nature of the intervention.

4          MS. SEELEY:  Your Honor, one other question:  Do we

5  have a date for the submission of the written plan if we come

6  back from the Magistrate Judge or do you intend to set that

7  after you hear what happens with the Magistrate Judge?

8          THE COURT:  As much as I would like to believe that

9  you will be successful, I think I need to operate on the

10  theory that you won't be successful and set a date for the

11  plan.

12          Do you have a date in mind?

13          MS. SEELEY:  Your Honor, I would suggest three

14  weeks, but I know some other people have vacations and other

15  issues this month.

16          MS. PESTANA:  I'm going on vacation.  I'll be gone

17  after next week.  So anytime after Labor Day would be fine.

18          THE COURT:  You're so fortunate, there are three of

19  you.

20          MS. PESTANA:  They want to go on vacation the last

21  week in August after the Mayor's deposition.

22          MR. LEMONEDES:  Which has been interrupted for the

23  deposition.

24          THE COURT:  What?

25          MS. PESTANA:  He didn't get to try the disparate

1    treatment case, so he's getting to defend the Mayor as a

2    consolation prize.

3            THE COURT:  I see.

4            MR. LEMONEDES:  As Your Honor thinks of that, also,

5    can I just ask you to consider, if we're talking about a

6    September 21 trial, and there may possibly be motions, can you

7    calculate that into when you expect the motions to be

8    presented to Your Honor.

9            THE COURT:  I think that you can provide me with the

10   proposed plan by the 11th of September.  It's a Friday.  It's

11   the Friday after Labor Day.

12           MR. LEVY:  Could I ask that we do that -- give us

13   one more week.  Because Dana, who's been most involved in this

14   case, is away the first two weeks, getting married in

15   September.

16           THE COURT:  Fine.  The 18th.  I'll reschedule the

17   trial to a date in October.  I don't need to do that now.

18           MR. LEMONEDES:  I do have another commitment in

19   October which I'm already committed to.  If I could just point

20   that out to you.

21           THE COURT:  Fortunately, there are 800 lawyers in

22   the Corporation Counsel office.

23           MR. LEMONEDES:  There are.

24           THE COURT:  You have a lot more flexibility than

25   anyone else in this room.  So I'm sure you'll avail yourselves

1   of the talent that you have over there.  You may even get some

2   of the supervisors to take on a litigation.  There are many

3   talented people there, I know.  So you all will figure it out.

4              MR. LEMONEDES:  Thank you.

5              THE COURT:  Sure.

6              Is there anything else for today?  Is everything

7   clear?

8              MR. SCHACHNER:  One question, Your Honor, in terms

9   of when we see Magistrate Judge Mann next week, should the UFA

10  be present or by the time we see her, Your Honor will decide

11  the intervention motion?

12             THE COURT:  They will be involved in some manner,

13  shape or form so I would like the UFA to be present for that

14  discussion, rather than to have to do it twice.

15             MS. SEELEY:  The first thing we're going to have

16  talk about is the equal protection issue, which Magistrate

17  Judge Mann herself said goes to the competitive seniority

18  question.  So they should be there.

19             THE COURT:  So there you go.  That's fine.

20             Do you have anything else, Mr. Levy?

21             MR. LEVY:  No, Your Honor.

22             THE COURT:  Do you have anything else?

23             MS. SEELEY:  No, Your Honor.

24             THE COURT:  Does the City have anything else?

25             MS. PESTANA:  No.

1           THE COURT:  Would it be useful to set a date for

2     another conference so we know that we have that.  Why don't I

3     have a status conference with you after Labor Day, just to

4     find out where you are on the various issues.

5           How about Monday, September 14th at 11:00 a.m. I'm

6     trying a case that day, but a Magistrate Judge is selecting

7     the jury so I will have the morning available.  We may have to

8     meet in a different courtroom, the Magistrate Judge is using

9     this courtroom for jury selection.

10          All right.  Anything else from anybody?

11          MS. SEELEY:  No.

12          THE COURT:  Okay.  If I think of anything, you'll be

13    informed presently.  Those of you who are going on vacation,

14    rest up.  Thank you.

15          MS. SEELEY:  Thank you, Your Honor.

16          MR. LEVY:  Thank you, Your Honor.

17

18

19

20

21

22

23

24

25