UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

-and-

THE VULCAN SOCIETY, INC., MARCUS
HAYWOOD, CANDIDO NUÑEZ,
ROGER GREGG,

                Plaintiff-Intervenors,

-against-

THE CITY OF NEW YORK, FIRE
DEPARTMENT OF THE CITY OF NEW
YORK, NEW YORK CITY DEPARTMENT
OF CITYWIDE ADMINISTRATIVE
SERVICES, and MAYOR MICHAEL
BLOOMBERG and NEW YORK CITY FIRE
COMMISSIONER NICHOLAS SCOPPETTA,
in their individual and official capacities,

                Defendants.
-------------------------------------------------------------------X

**ORDER**
07-cv-2067 (NGG)(RLM)

NICHOLAS G. GARAUFIS, United States District Judge.

      Following the court's finding of disparate impact liability, the Uniformed Firefighters Association (the "UFA") has moved to intervene in the remedial phase of the litigation. (See Letter dated Aug. 10, 2009 (Docket Entry # 303) ("UFA Letter").) The court previously denied the UFA's motion to intervene, but allowed the union to participate as amicus curiae in the liability phase of the proceedings. (See Memorandum & Order dated Sept. 5, 2007 (Docket Entry # 47), 4-13).) In doing so, the court recognized the UFA's interest in remedial issues, should a remedial phase be reached. (See id. at 12-13.) That phase is here, and the UFA asserts an interest in participating as a defendant in the litigation. (See UFA Letter 1, 4-5.)

1

Specifically, the UFA claims an interest in relation to retroactive competitive seniority that may be implicated in any remedial order. (Id. at 4-5.) It asserts:

> It is certainly likely that plaintiffs and plaintiff-intervenors will seek the benefit of retroactive seniority for promotional purposes, as well as pension and pay purposes. If successful, persons granted the retroactive seniority could, in effect, leap-frog over incumbents who have actually served as firefighters for the full term of their seniority claim. Such incumbents could, therefore, be denied promotion or suffer a significant delay in moving to a higher rank. Similarly, the ability of incumbents to transfer to more desirable fire companies or to obtain higher paying special assignments could be adversely affected.

(Id. at 4.) The UFA has also asserted an interest relating to issues of safety and firefighter age that might be implicated by a remedial order. (Tr. dated Sept. 14, 2009 ("Tr."), at 33-34.)[1] Plaintiffs and Plaintiffs-Intervenors do not oppose intervention for the limited purpose of allowing consideration of the union's perspective on issues of retroactive competitive seniority. (See Plaintiff's Letter dated August 18, 2009 (Docket Entry # 310); Plaintiffs-Intervenors' Letter dated August 18, 2009 (Docket Entry # 311).) Plaintiffs-Intervenors point out, however, that should the UFA be allowed to intervene, it should come into the case as an unaligned party, rather than as a defendant, as the UFA proposes. (See Tr. at 34.)

At the status conference with the parties held on September 14, 2009, the court raised a concern posed by the UFA's proposed intervention in this matter. The Federal Government's Proposed Relief Order (Docket Entry # 315 ("PRO")) recommends relief that would provide retroactive seniority to incumbent black and Hispanic firefighters whose hiring dates were delayed on account of Exams 7029 and 2043. At the conference, the court pointed out that, of the approximately 5,300 individuals hired from Written Examinations 7029 and 2043, there are 645 black or Hispanic firefighters. (Tr. at 37; see Memorandum & Order dated July 22, 2009

---

[1] The UFA does not oppose monetary relief for the victims of discrimination. (UFA Letter at 5-6.)

2

(Docket Entry # 294 ), at 3 (reciting figures).) Those 645 firefighters are represented by the UFA. (Tr. at 37.) Accordingly, the court raised the following concern about the UFA's opposition to retroactive competitive seniority:

> THE COURT: My question is, inasmuch as some of those 645 people may be benefited by the relief that I'm being asked to impose here, how does the UFA, which represents them, as well as the other 4,655 firefighters – who I would imagine an overwhelming majority of whom are white – how can the UFA take a position [as] to what ought to be done with regard to seniority, where the position that you take may disparage some of your own members?
>
> MR. BLOCK: I think that is a valid concern, Your Honor, as to the delayed hires, as opposed to the non-hires. And I have to consider that with our clients. It's an issue I've discussed with them, that I'm not fully – I don't have a great answer for you at this time, Judge.

(Tr. at 37-38.)[2] Since that time, the UFA has not made any submission addressed to the court's concern.

At this time, the court will not grant intervention to the UFA without any explanation of why it should be permitted to take a position that favors some of its members at the expense of others. As far as this court is concerned, the UFA has an obligation to fairly represent the interests of all of its members. While it may be that the UFA has a response to the concern raised by the court, it has never provided an answer in spite of the opportunity to do so. The court declines to rule on the UFA's motion without the benefit of its view on this important issue. Accordingly, the court DENIES the UFA's motion to intervene at this time without prejudice to the UFA renewing its motion with a response addressing the court's concerns. In

---

[2] The PRO proposes that the court set a "presumptive hiring date" for each of the two challenged examinations. The presumptive hiring date for Exam 7029 is proposed as February 2, 2003, and June 11, 2006 for Exam 2043. (See PRO ¶ 9.) According to an expert report previously submitted by the Federal Government, 50 black and 121 Hispanic firefighters were appointed from Exam 7029 after February 2, 2003; and 35 black and 68 Hispanic firefighters were appointed from Exam 2043 after June 11, 2006. (See Report of Bernard R. Siskin, Ph.D. (Docket Entry # 254), tbls. 3, 4, 12, 14.) Accordingly, it would appear that these 274 minority union members would stand to gain from the imposition of the retroactive seniority that the UFA opposes.

3

the interim, the court shall permit the UFA to continue to participate in the case at the remedial phase as <u>amicus</u> <u>curiae</u>.

SO ORDERED.

Dated: Brooklyn, New York
September 24, 2009

s/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge

4