Civil Action No. 07 CV 2067 (NGG) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-and-

VULCAN SOCIETY, INC., for itself and on behalf of its
members; MARCUS HAYWOOD, CANDIDO NUNEZ,
and ROGER GREGG, individually and on behalf of a
class of all others similarly situated,

Plaintiffs-Intervenors,

-against-

CITY OF NEW YORK; THE FIRE DEPARTMENT OF
THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES; MAYOR MICHAEL BLOOMBERG and
NEW YORK CITY FIRE COMMISSIONER
NICHOLAS SCOPPETTA, in their individual and
official capacities,

Defendants

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS-INTERVENORS'
MOTION FOR SUMMARY JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  William S.J. Fraenkel*
*Tel:  (212) 788-1247*
*Law Dept. No.:  2007-017441-LE*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

ARGUMENT

           PLAINTIFFS-INTERVENORS'   SUMMARY
           JUDGMENT MOTION ON THEIR CLAIMS OF
           INTENTIONAL DISCRIMINATION MUST BE
           DENIED FOR FAILING TO PROVE THAT
           DEFENDANTS INTENDED TO DISCRIMINATE ................................. 1

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                    **<u>Pages</u>**

<u>Ashcroft v. Iqbal</u>,
   ____ U.S. ____, 129 S. Ct. 1937 (2009)...................................................................3, 5

<u>Collier v. Barnhart</u>,
   473 F.3d 444 (2d Cir. 2007)...........................................................................2, 8

<u>Farrugia v. North Shore Univ. Hosp.</u>,
   13 Misc. 3d 740, 820 N.Y.S.2d 718 (Sup. Ct., N.Y. Co. 2006) ................................3

<u>Ferrill v. Parker Group, Inc.</u>,
   168 F.3d 468 (11th Cir. 1999) .......................................................................3, 4

<u>General Building Contractors Association v. Pennsylvania</u>,
   458 U.S. 375, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) ..........................................3

<u>Hazen Paper Co. v. Biggins</u>,
   507 U.S. 604 (1993)........................................................................................2

<u>Krulik v. Board of Education</u>,
   781 F.2d 15 (2d Cir. 1986)...............................................................................3

<u>International Brotherhood of Teamsters v. United States</u>,
   431 U.S. 324, 97S. Ct. 1843 (1977).....................................................................3

<u>Lowe v. Commack Union Free Sch. District</u>,
   886 F.2d 1364 (2d Cir. 1989)............................................................................2

<u>Maresco v. Evans Chemetics, Div. of W.R. Grace</u>,
   964 F.2d 106 (2d Cir. 1992)..............................................................................4

<u>Patterson v. County of Oneida</u>,
   375 F.3d 206 (2d Cir. 2004).............................................................................1, 3

<u>Raytheon Co. v. Hernandez</u>,
   540 U.S. 44, 124 S. Ct. 513 (2003)......................................................................2

<u>Robinson v. New York State Div. of Human Rights</u>,
   277 A.D.2d 76, 716 N.Y.S.2d 47 (1st Dep't 2000) ................................................4

<u>Rossini v. Ogilvy & Mather, Inc.</u>,
   798 F.2d 590 (2d Cir. 1986)..............................................................................2

**Cases**                                                                                                      **Pages**

<u>SCR Joint Venture L.P. v. Warshawsky</u>,
    559 F.3d 133 (2d Cir. 2009)..........................................................................................6

<u>Soberal-Perez v. Heckler</u>,
    717 F.2d 36 (2d Cir. 1983),
    <u>cert.</u> <u>denied</u>, 466 U.S. 929, 104 S. Ct. 1713 (1984) .................................................8

<u>Tu v. Loan Pricing Corp.</u>,
    21 Misc. 3d 1104A, 873 N.Y.S.2d 238, 2008 NY Op 51 945U, 9 (Sup. Ct., N.Y. Co.
    2008) ...................................................................................................................3, 4

<u>U.S. v. City of New York</u>,
    2009 U.S. Dist. LEXIS 63153 (E.D.N.Y. July 22, 2009) ........................................6

<u>Wards Cove Packing Co. v. Atonio</u>,
    490 U.S. 642, 109 S. Ct. 2115 (1989)......................................................................2

<u>Washington v. Davis</u>,
    426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)...........................................3

**Statutes**

42 U.S.C. § 1981..............................................................................................1, 3, 4

42 U.S.C. § 1983..................................................................................................1, 3

Administrative Code §8-107................................................................................1, 2, 3

Executive Law § 296 .............................................................................................1, 3

New York City Charter Section 832(c) ....................................................................7

Defendants respectfully submit this memorandum of law in opposition to plaintiffs-intervenors' motion for summary judgment concerning the claims of intentional discrimination/disparate treatment under Title VII, the New York State Human Rights Law (Executive Law § 296), the New York City Human Rights Law (Administrative Code §§ 8-107, et seq., and 42 U.S.C. §§ 1981 and 1983[1]. Plaintiffs-intervenors' motion must be denied because they fail to establish the sine qua non of intentional discrimination. Plaintiffs-intervenors fail to establish an intent to discriminate. Consequently, the claims must be dismissed.

## ARGUMENT

**PLAINTIFFS-INTERVENORS' SUMMARY JUDGMENT MOTION ON THEIR CLAIMS OF INTENTIONAL DISCRIMINATION MUST BE DENIED FOR FAILING TO PROVE THAT DEFENDANTS INTENDED TO DISCRIMINATE**

For this motion, the only material issue is whether defendants acted with an intent to discriminate. All the statutes under which plaintiff-intervenors bring their intentional discrimination/disparate treatment claims, Title VII, the New York State and City Human Rights Laws[2], and 42 U.S.C. §§ 1981 and 1983, require proving an intent to discriminate due to a

---

[1]   Section 1983 of Title 42 of the United States Code does not provide any substantive rights but is merely a vehicle for enforcement of rights coffered elsewhere. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). Plaintiffs-intervenors, however, fail to identify what federal right they are attempting to vindicate via section 1983.

[2]   New York State Executive Law § 296(1), reads, in pertinent part that:

It shall be an unlawful discriminatory practice:

(a)   For an employer or licensing agency, *because of* an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such

protected status.  Plaintiffs-intervenors have not, either directly or by inference, provided facts which would prove an intent to discriminate.  Plaintiff-intervenors have not demonstrated that defendants acted, not in spite of the adverse effect on the blacks, but rather, *because* the action would have adverse effect on the blacks. Collier v. Barnhart, 473 F.3d 444, 449 (2d Cir. 2007). Therefore, plaintiff-intervenors' summary judgment motion must be denied.

Under Title VII "[l]iability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'" Raytheon Co. v. Hernandez, 540 U.S. 44, 53, 124 S. Ct. 513, 519 (2003)(quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  Although under Title VII, "disparate-impact" may be proven without evidence of the employer's subjective intent to discriminate, such evidence of a subjective intent to discriminate is required in a "disparate-treatment" case. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 646, 109 S. Ct. 2115, 2118 (1989); Lowe v. Commack Union Free Sch. Dist., 886 F.2d 1364, 1370 (2d Cir. 1989); see also, Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 605 (2d Cir. 1986)("An important difference between the two approaches is that discriminatory motive need not be proved to make out a case of unlawful discrimination under the disparate impact analysis,

---

> individual in compensation or in terms, conditions or privileges of employment. (emphasis added.)

New York City Administrative Code § 8–107 reads in pertinent part that:

> It shall be an unlawful discriminatory practice:
>
> (a)  For an employer or an employee or agent thereof, *because of* the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment. (emphasis added.)

while such motive is an essential element of a discriminatory treatment case.")(Citing International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335, n.15, 97 S. Ct. 1843, 1854 (1977)).

"The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases." Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). "[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional...." Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004)(citation omitted). See also Krulik v. Board of Education, 781 F.2d 15, 21 (2d Cir. 1986)("a plaintiff must prove discriminatory intent in order to prevail on employment discrimination claims under § 1981, see General Building Contractors Association v. Pennsylvania, 458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982), and § 1983, see Washington v. Davis, 426 U.S. 229, 240-41, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976).") And see Ashcroft v. Iqbal, ____ U.S. ____, 129 S. Ct. 1937, 1948-9 (2009)(to prevail in a section 1983 suit or a Bivens action a plaintiff must plead and prove sufficient factual matter to show that the policies at issue were adopted and implemented *for the purpose of* discriminating on account of race.)

The standards for recovery under the New York State and New York City Human Rights Laws Executive Law § 296, N.Y.C. Administrative Code §§ 8-107, et seq., are in accord with Federal standards under Title VII. Tu v. Loan Pricing Corp., 21 Misc. 3d 1104A, 873 N.Y.S.2d 238, 2008 NY Slip Op 51945U, 9 (Sup. Ct., N.Y. Co. 2008). See also Farrugia v. North Shore Univ. Hosp., 13 Misc. 3d 740, 751, 820 N.Y.S.2d 718, 726-727 (Sup. Ct., N.Y. Co. 2006). Under the New York State and City Human Rights Laws the plaintiff has the burden of proving discriminatory intent. Indeed, even if a plaintiff establishes that an employer's

explanations are pretextual, the plaintiff must still prove that the employer's real reason was discrimination. Tu v. Loan Pricing Corp., 21 Misc. 3d 1104A, 873 N.Y.S.2d 238, 2008 NY Slip Op 51945U, 9 (Sup. Ct., N.Y. Co. 2008).

      Despite the length of plaintiffs-intervenors' statement of facts, it is devoid of facts which would show that defendants intended to discriminate on the basis of race. Rather, plaintiffs-intervenors produce evidence of disparate impact rather than disparate treatment. Yet, "[a] showing of disparate impact through a neutral practice is insufficient to prove a § 1981 violation because proof of discriminatory intent is essential." Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). Compare, Robinson v. New York State Div. of Human Rights, 277 A.D.2d 76, 78, 716 N.Y.S.2d 47, 49 (1st Dep't 2000) ("Absent the necessary evidence of discrimination, enforcement of a facially neutral rule does not comprise a continuing practice of intentional discrimination....")(citation omitted). And See Maresco v. Evans Chemetics, Div. of W.R. Grace, 964 F.2d 106, 115 (2d Cir. 1992)("Since evidence of the employer's subjective intent to discriminate must be provided to support a claim of disparate treatment, allowing the disparate impact doctrine to be invoked as [plaintiff] proposes would simply provide a means to circumvent the subjective intent requirement in any disparate treatment case.")(citations and internal quotation marks omitted).

      Defendants in their motion for qualified immunity demonstrate that neither the Mayor nor the Fire Commissioner intended to discriminate against black applicants. These individuals reasonably relied on DCAS to develop a lawful and appropriate examination for firefighter. The principle DCAS developers of Examinations 7029 and 2043, Messrs. Matthew Morrongiello and Alberto Johnston, have stated, under penalty of perjury, that in developing the examination they did not intend to discriminate against any protected group. The Morrongiello

and Johnston declarations establish that there was not any intent to discriminate. In the alternative, the declarations, at the very least, establish a dispute concerning a material fact precluding summary judgment.

Although Plaintiffs-intervenors concede in their memorandum of law in Opposition to Judgment on the Pleadings at 13-14, that to establish the "intent" element of their intentional discrimination claim they must prove that the defendants took a course of action *because of, not merely in spite of* the action's adverse effects upon blacks, see, <u>Iqbal</u>, ____ U.S. at ____, 129 S. Ct. at 1948, they nonetheless fail to bring forth such evidence. As noted above, the statistical disparities alone, which were used to support a finding of disparate impact, cannot establish intentional discrimination. Plaintiffs-Intervenors must prove that defendants created deficiencies in the examinations, and then used the examination, *in order to* discriminate against blacks. Plaintiffs-intervenors' efforts fall far short of meeting this burden and amount to nothing more than efforts to create liability from inference and innuendo.

Plaintiffs-Intervenors' ask that the court infer that defendants intended to discriminate against blacks from the failure to follow the requirements set out in the <u>Guardians</u> decision. However, no such inference is permissible or possible in light of the testimony from the principle designers of the examinations. The principle designers of the examinations give sworn testimony that in developing the tests they did not intend to discriminate against any protected group. Rather, they attempted to develop the examination in accord with what they believed were appropriate and acceptable test development methods. The fact that neither they, nor the testing supervisors, consulted with legal counsel nor reviewed the <u>Guardians</u> decision, is at worst a display of bureaucratic failure and of aspects of the test preparation 'falling through the cracks' rather than a demonstration of an intent to discriminate.

Plaintiffs-intervenors also ignore that soon after <u>Guardians</u> the City made efforts to comply with the Circuit's instructions. The City went forth and retained Dr. Landy to develop a new examination. That examination has never been challenged. From the City's retention of Dr. Landy it can be inferred that the City was seeking to adhere to <u>Guardians</u>. That as years passed and administrations came and went, Dr. Landy's work was not properly utilized, does not give rise to inference to discriminate.

In an effort to have the Court draw inferences favorable to them, plaintiffs-intervenors distort the facts.[3] For example, plaintiffs-intervenors assert that the FDNY and the Administration for Children Services ("ACS"), are the only agencies that disagreed with EEPC recommendations to the point that the EEPC took the matter to the Mayor. Plaintiffs-intervenors assert that when the EEPC investigated ACS, its Commissioner was Nicolas Scoppetta. Plaintiffs-intervenors then state that "[t]hus, Scoppetta's history of non-compliance with anti-discrimination policy pre-dates his tenure at the FDNY."[4] But as can be seen from page 3 of the EEPC report concerning ACS, the disagreements between ACS and the EEPC arose in 2002, *after* Commissioner Scoppetta became Fire Commissioner. There is no evidence that Commissioner Scoppetta has a history of non-compliance with anti-discrimination policy.

Similarly, the plaintiffs-intervenors assert that some statistics show the percentage of black FDNY firefighters is lower under the current administration then it had been in the

---

[3]   As this Court noted in its July 2009 opinion: "[i]n considering a motion for summary judgment, the court construes the facts in the light most favorable to the nonmoving party, and draws all reasonable inferences in its favor." (Citing <u>SCR Joint Venture L.P. v. Warshawsky</u>, 559 F.3d 133, 137 (2d Cir. 2009))(internal quotation marks omitted). <u>U.S. v. City of New York</u>, 2009 U.S. Dist. LEXIS 63153 at *17 (E.D.N.Y. July 22, 2009). Thus, if any inferences are to be drawn, they are to be drawn in favor of defendants' and not plaintiffs-intervenors.

[4]   <u>See</u> Plaintiffs-Intervenors' memorandum of law at 39-40 in Opposition to Qualified Immunity.

1990s.    Plaintiffs-intervenors accuse the current administration, the Mayor and Fire Commissioner, of engaging in intentional discrimination.  What plaintiffs-intervenors fail to state is that those same statistics show the decrease in black firefighters occurred *prior* to the current administration.  What plaintiffs-intervenors fail to state is that those same statistics show that during the current administration the number and percentage of black firefighters has consistently *increased*.    According to the statistics set out in paragraph 156 of plaintiffs-intervenors' Rule 56.1 statement, in 2001 the percentage of black firefighters was 2.87%.  Mayor Bloomberg took office on the first day of 2002.  Those same statistics show that by the year 2006, the percentage of black firefighters was 3.31%.  Further, those same statistics show that during the current administration, the number and percentage of black firefighters has been restored to the levels of 1996/1997.

Plaintiffs-intervenors continually mischaracterize the nature of the EEPC and its findings.  The EEPC report was forwarded to Mayor Bloomberg on April 8, 2003.  The EEPC report reviews only Examination 7029, which was administered in 1999 under the Giuliani administration.    The EEPC did not review the examination given in December 2002, examination 2043, given under the current administration.  The EEPC report never finds or suggests that Exam 2043 is not related to the job of firefighter and consistent with business necessity.  Indeed, the EEPC report never finds or suggests that Exam 7029 is not related to the job of firefighter and consistent with business necessity.  The EEPC recommended a disparate impact analysis, and possibly a validity study, be performed on the Giuliani era examination that was no longer being used.  New York City Charter section 832 (c) gives the Mayor the authority to decide what action to take concerning recommendations of the EEPC.

The Mayor's decision not to follow the EEPC's recommendations does not give rise to a cause of action, let alone liability, under any statute. Nor does the Mayor's decision lend itself to an inference of discrimination. What effect would there have been had the Mayor followed the EEPC's recommendation and conducted a study on the 1999 exam no longer in use? None has been identified by the Plaintiffs-intervenors. It would have been an intellectual exercise lacking practical benefit. Instead, the Mayor chose to spend public resources to move forward and create a new examination, Exam 6019, to build for the future. A decision not to use scarce public money to study past exams does not lend itself to an inference of discrimination. The Mayor's explanation is both rationale and reasonable. Plaintiffs-intervenors' assertion that the explanation is false and pretextual is not supported by any evidence in the record whatsoever.

Plaintiffs-intervenors assert that the City should have known that Examination 2043 had an impact on black candidates and therefore prevented it use. Plaintiffs-intervenors assert that the Mayor's decision to use Exam 2043 can be used to infer an intent to discriminate. However, plaintiffs-intervenors overlook, as explained in defendants' motion for Qualified Immunity, that the Mayor reasonably believed Examination 2043 was a valid test which could be used despite its effect. Such actions are permissible in this Circuit. See e.g., Collier v. Barnhart, 473 F.3d 444, 449 (2d Cir. 2007)("the requirement of purposeful discrimination means that equal protection is not violated unless the challenged provision was enacted not in spite of its adverse effect on the identifiable group *but rather because it* would have that effect.")(brackets, citations, and internal quotation marks omitted, emphasis added.); Soberal-Perez v. Heckler, 717 F.2d 36, 41-42 (2d Cir. 1983), cert. denied, 466 U.S. 929, 104 S. Ct. 1713 (1984). Until this Court's

decision in July 2009, the City and the Mayor thought Examination 2043 was valid.[5] That the City continued to use a test it thought was valid to hire replacement firefighters does not support an inference in an intent to discriminate.

Plaintiffs-intervenors also ignore the efforts the current administration has made in recruitment. The current administration has devoted increased manpower and funds, spending millions on advertising, in an effort to reach out to all communities, and increase the number of blacks taking the entry level examination. The frequency of the examination for promotion to firefighter which draws on larger minority pool of EMTs and paramedics has also increased. The current administration has been very vocal about its desires to increase the number of minorities serving as firefighters. These actions are inconsistent with the inferences of discrimination which plaintiffs-intervenors ask the Court to make.

For this motion, the only material issue of is whether defendants acted with an intent to discriminate. Plaintiffs-intervenors must prove an intent to discriminate. They must prove that all the actions complained of were taken "because of," and not despite, the adverse effect the actions would have on blacks. Plaintiffs-intervenors have not provided facts to that effect. Nor have plaintiffs-intervenors provided facts so compelling as to prompt this court to infer, and thus only indirectly conclude, that defendants acted with the intent to discriminate against black candidates for firefighter.

Plaintiffs-intervenors have not proved that defendants acted with an intent to discriminate. Plaintiffs-intervenors have not proved their claims of intentional/disparate treatment and summary judgment must be denied.

---

[5]   Plaintiffs-intervenors also strenuously avoid any explanation of how they would have replenished the decimated ranks of the FDNY in the aftermath of September 11, 2001 if Examination 2043 had been scraped.

## CONCLUSION

For the foregoing reasons defendants respectfully request that plaintiffs-intervenors' motion for summary judgment be denied.

Dated:     New York, New York
             December 1, 2009

                                      Respectfully Submitted,

                                        **MICHAEL A. CARDOZO**
                                        Corporation Counsel of the City of New York
                                        Attorney for Defendants
                                        100 Church Street, Room 2-105
                                        New York, New York 10007
                                        (212) 788-1247
                                        wfraenke@law.nyc.gov

By:    _William Fraenkel_
                              William S.J. Fraenkel
                              Assistant Corporation Counsel

James M. Lemonedes,
William S.J. Fraenkel,
Of Counsel.

Civil Action No. 07 CV 2067 (NGG) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-and-

VULCAN SOCIETY, INC., for itself and on behalf of its members;
MARCUS HAYWOOD, CANDIDO NUNEZ, and ROGER
GREGG, individually and on behalf of a class of all others similarly
situated,

Plaintiffs-Intervenors,

-against-

CITY OF NEW YORK; THE FIRE DEPARTMENT OF THE CITY
OF NEW YORK; NEW YORK CITY DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES; MAYOR MICHAEL
BLOOMBERG and NEW YORK CITY FIRE COMMISSIONER
NICHOLAS SCOPPETTA, in their individual and official capacities,

Defendants

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS-INTERVENORS'
MOTION FOR SUMMARY JUDGMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: William S.J. Fraenkel*
*Tel: (212) 788-1247*
*Law Dept. No. 2007-017441-LE*

*Due and timely service is hereby admitted.*

*New York, N.Y. ............................................................................................ , 200...*

*............................................................................................................... Esq.*

*Attorney for ............................................................................................*