**U.S. Department of Justice**

Civil Rights Division

JMG:SAS:MLB:es
DJ 170-51-358

*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp*

July 28, 2010

Honorable District Judge Nicholas G. Garaufis
United States District Court
  for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>United States, et al. v. City of New York, et al.</u>, 07-CV-2067 (NGG) (RLM)

Dear Judge Garaufis:

    The United States and the Plaintiffs-Intervenors respectfully submit this letter in response to the letter filed by defendant City of New York on July 27, 2010 (Dkt. No. 497). In its letter, the City proposes that, if the Court finds that the City's use of Written Exam 6019 is not job related and consistent with business necessity, the Court nonetheless allow the City to use the examination in rank order to hire a class of three hundred firefighters at the end of August, and then to continue using the examination (in an altered manner) to hire additional firefighters until a new selection procedure is developed. Clearly, if the Court finds that continued use Written Exam 6019 is not job related and consistent with business necessity, continued use of the examination would discriminate against minority candidates in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. The City's proposed "solution," which would require that the Court authorize continuing unlawful discrimination, is no solution at all.

    The City's position, as stated in its letter of July 27, 2010, is that, if the Court finds that the City's use of Written Exam 6019 does not meet the job relatedness/business necessity standard of Title VII, the Court has only two choices: (1) allow the City to continue discriminating against African-American and Hispanic applicants in violation of Title VII; or (2) delay the hiring of new firefighters. According to the City, the latter course would create a risk to public safety because incumbent firefighters would have to work overtime.

    The Court should not uncritically accept the City's assertion that any delay, however brief, in hiring the class the City proposes to begin on August 30 would result in a risk to public safety. The only evidence the City has presented to support its assertion regarding public safety is the testimony of Donay Queenan that, during any period of delay, incumbent firefighters would have to work overtime. The City has presented no evidence regarding the amount of overtime firefighters currently work, whether "mandatory" overtime (*i.e.*, overtime that the firefighters do not volunteer to work) would be required, or whether there are limits on the amount of overtime firefighters are allowed to work under normal circumstances to avoid any risk to public safety. In

this regard, it must be noted that there are nearly 9,000 experienced firefighters in the FDNY. *See* Dkt. No. 294, p. 2. The City proposes to hire and begin an academy class of approximately 300 new firefighters at the end of August. If the hiring of 300 firefighters were delayed by three months to allow the City to process additional candidates in a non-discriminatory manner, that would mean that for three months approximately 9,000 experienced FDNY firefighters would have to perform the work that otherwise would be performed by 300 probationary firefighters. *See* Attachment A (Letter from J. Lemonedes to Special Master stating that additional processing would require "three to six months"). On average, this would amount to an hour or two of overtime each week for three months.[1] To be clear, the United States and Plaintiffs-Intervenors are sensitive to the City's desire to hire firefighters as soon as possible. They wish only to point out that the City has provided no evidence to substantiate its assertion that public safety would be threatened by a brief delay in the next academy class.[2]

In addition, it must be recognized that, although the City now asserts that even a brief delay cannot be considered, it is the City – and the City alone – that has created the possibility of such a delay. In September 2009, the United States' statistical expert, Dr. Siskin, submitted an affidavit in which he concluded that the City's use of Written Exam 6019 resulted in and would continue to result in a statistically significant disparate impact. As counsel for the City acknowledged during the recent evidentiary hearing, the City has never contested that finding. Based on Dr. Siskin's uncontested findings, in its January 21, 2010 initial remedial order this Court clearly put the City on notice of the possibility that the City would not be allowed to hire in

---

[1] This assumes, of course, that the entire class would be delayed for three months. In fact, however, it may be possible for the Court to allow the City to hire, from among those candidates already processed, a substantial number of firefighters – though less than 300 – to begin academy training next month without creating disparate impact. Moreover, the time required to process additional applicants could likely be reduced if the Court so ordered. In this regard, it should be noted that, as the United States pointed out during the parties' most recent telephone conference with the Special Master, it appears that the information the City has provided regarding the status of processing of candidates appears to be incomplete and, in some instances, inconsistent. The Special Master directed the City to determine and inform the Special Master whether additional information regarding the processing status of applicants could be provided.

[2] At the close of the recent evidentiary hearing, on July 21, 2010, the Plaintiffs-Intervenors proffered evidence that delaying a class would not result in involuntary overtime that would endanger public safety. Specifically, Plaintiffs-Intervenors stated that Captain Paul Washington was prepared to testify regarding the use of overtime in the FDNY. Capt. Washington is a former President of the Vulcan Society who currently is a Captain in the FDNY. He has decades of experience as an FDNY firefighter and fire officer. Plaintiffs-Intervenors requested that, if the Court finds that the City has failed to prove that its use of Written Exam 6019 is job related and consistent with business necessity, the Court allow the Plaintiffs-Intervenors an opportunity to present Capt. Washington's testimony.

its usual fashion from the Exam 6019 eligibility list well over six months ago. Dkt. No. 390, p. 31 ("Although the City has developed a new examination that has not been at issue in this litigation – Written Examination 6019 – that examination must be validated before it is utilized"). Nothing that has occurred since January has reduced the likelihood of that result. Indeed, as the City has asserted previously, by January 2010, Dr. Cline had prepared and submitted to the City reports regarding the job analysis, test development, test validation, scoring analyses and "modified Angoff" procedures she had performed on Written Exam 6019. Dkt. No. 404 (listing Dr. Cline's reports). Her summary report, which was submitted on March 18, 2010, contained no new opinions or analyses. *See* Attachment B (Cline 04/14/10 Dep.), pp. 80:15-81:5. Thus, the City was aware several months ago of all of the validity evidence it could muster. Moreover, based on this Court's July 22, 2009 liability order (Dkt. No. 294), the City was certainly aware of the standards to which that evidence would be held and the real possibility that the City's use of Written Exam 6019 would be found invalid.

Nonetheless, as Ms. Queenan testified during the recent evidentiary hearing, the City simply continued processing applicants from the Exam 6019 eligibility list in its usual manner. *See* Attachment C, pp. 253-255. Although Ms. Queenan testified that the City has "to be ready at any point to put in a class," *id.*, pp. 229-230, the City took no steps to prepare to hire firefighters promptly if the Court held that the City could not hire in rank-order from the eligibility list. Moreover, prior to June 2010, the City never informed the Court that the City would need a minimum of three months to process candidates for an academy class if the Court were to hold that the City could not hire in its usual manner from the Exam 6019 eligibility list. Indeed, during a hearing on May 3, 2010, counsel for the United States pointed out that, if the City found that it had the funds to hire firefighters in July, the Court could advance the date for the hearing regarding the validity of Exam 6019. Counsel for the City did not suggest at that time that three to six months would be required after the hearing to process candidates for hire. *See* Attachment D, pp. 27-32. The City's failure to inform the Court of the alleged three-month delay casts additional doubt on its claim that any delay in the commencement of a new academy class would threaten public safety. Certainly, if delay in the hiring of new firefighters would create a risk to public safety, the City would have taken steps to prepare for an alternative method of promptly hiring firefighters.

For the foregoing reasons, the United States and Plaintiffs-Intervenors request that the Court: (1) order the City to produce by close of business on Friday, July 30, complete and accurate information regarding the processing status of all candidates with list numbers on the Exam 6019 eligibility list of 2121 or lower, as well as any other candidates on the list whom the City has begun to process; (2) order the City to produce evidence of the effect of any delay in the hiring of firefighters; and (3) if the Court finds that the City has failed to prove that its use of Written Exam 6019 is job related and consistent with business necessity, as Title VII requires, allow the other parties to present evidence, including the testimony of Capt. Washington, in response to the City's evidence regarding the effect of delay.

The United States and Plaintiffs-Intervenors further request that, once evidence regarding the effect of any delay and an accurate statement of the processing status has been produced, the Court allow the United States and Plaintiffs-Intervenors to present their proposals regarding the

interim remedy that should be ordered, including but not limited to hiring based on applicant flow.

                              Sincerely,

                      John M. Gadzichowski
                             Chief
                        Civil Rights Division

By:      s/ Sharon Seeley
           Acting Deputy Chief
      Employment Litigation Section
           Civil Rights Division
             (202) 514-4761

            Loretta E. Lynch
         United States Attorney

By:      s/ Elliot M. Schachner
        Assistant U.S. Attorney
          (718) 254-6053

cc: All counsel of record (via ECF)