# LEVY RATNER, P.C.
Attorneys at Law
80 Eighth Avenue, 8th Floor
New York, New York  10011-5126

Telephone (212) 627-8100
Telecopier (212) 627-8182
www.levyratner.com

Richard A. Levy
Daniel J. Ratner
Daniel Engelstein°
Gwynne A. Wilcox ᐃ
Pamela Jeffrey
Owen M. Rumelt
Kevin Finnegan
Carl J. Levine ᐃ
David Slutsky ᐃ
Allyson L. Belovin
Suzanne Hepner •
Richard Dorn
Robert H. Stroup

Dana E. Lossia ᐃ
Susan J. Cameron ᐃ
Micah Wissinger •
Ryan J. Barbur
Vanessa Flores ᐃ
Alexander Rabb
Nicole Grunfeld

Counsel:
Paul Schachter ᐃ
Anthony DiCaprio
Michael Steven Smith
David P. Horowitz †

September 30, 2010

**ELECTRONICALLY FILED**

Hon. Nicholas G. Garaufis, U.S.D.J.
United States District Court for the
    Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

> Re:  **United States, et al. v. City of New York**
>      **Civ. Action No. 07-cv-2067 (NGG) (RLM)**

Dear Judge Garaufis:

Plaintiffs-Intervenors have joined the United States' letter motion submitted to the Court today (Dkt. No. 558) pursuant to the Court's Order of September 21, 2010 (Dkt. No. 554).  In that letter motion, the United States and the Plaintiffs-Intervenors specify the nature, scope and basis of the permanent injunctive relief they are requesting.  Specifically, we ask the Court to enjoin the City from hiring from the Exam 6019 eligibility list or in any way using the results of Written Exam 6019 except in connection with proposals 2, 4, 5 or 7 authorized by the Court's September 13, 2010 Order (Dkt. No. 527) and to grant certain interim injunctive relief in the event that the City is permitted to process and appoint candidates from the Exam 6019 list (Dkt. No. 558-1, Attachment A).

Plaintiffs-Intervenors write separately to move the Court for limited additional injunctive relief, beyond that jointly requested with the United States, relating to the FDNY's candidate screening process.  If the City chooses (and is permitted) to hire Exam 6019 candidates in a manner that requires further processing of candidates, the Plaintiffs-Intervenors have serious concerns that the FDNY's screening process will improperly exclude qualified black and Hispanic candidates.  The Court has agreed to "consider such matters at an appropriate juncture as an exercise of its remedial authority."  September 13, 2010 Order (Dkt. No. 527, at n.7).  We believe this is the appropriate time to consider this matter, as it directly impacts upon the question of how the City may conduct interim hiring.

Hon. Nicholas G. Garaufis
September 30, 2010
Page 2

Just yesterday, Plaintiffs-Intervenors served the parties with a memorandum of law, and supporting affidavits and documentation, setting forth in detail the injunctive relief that is necessary to protect black and Hispanic candidates from the adverse effects of the FDNY's current candidate screening process, as well as the legal and evidentiary support for the proposed relief.[1] Because Plaintiffs-Intervenors have already extensively briefed this issue and provided our motion papers to the City and the United States, we ask the Court's permission to file those moving papers at this time, rather than after the motion has been fully briefed, which will not be until November 23, 2010. The argument and evidence contained in those papers is directly relevant to the question of candidate processing as it affects potential Exam 6019 interim hires as well as those hired after the new exam is developed.

As set forth more fully in the briefing papers that were served yesterday, Plaintiffs-Intervenors request: (i) that the FDNY be required to make reasonable efforts to contact candidates who fail to report for any step in the candidate selection process; and (ii) that the FDNY be ordered to comply with the EEOC's *Policy Guidance on the Consideration of Arrest Records in Employment Decisions under Title VII of the Civil Rights Act of 1964 (1990)*. Further, Plaintiffs-Intervenors propose that the Court provide an opportunity for Class Counsel, the United States, or an affected black or Hispanic candidate to object to disqualification decisions made by the FDNY's Personnel Review Board (PRB). Such PRB determinations should be subject to review by a Court-appointed Special Monitor, who will make recommendations to the Court. (The additional relief requested is set forth as Ex. A hereto). Each of these measures is important to achievement of Title VII's goal of preventing discrimination and achieving equal employment opportunity in the future.

1. <u>Contacts to Firefighter Candidates</u>. The record shows that a large number of black candidates on the Exam 6019 eligibility list were dropped from the FDNY's post-Exam screening process for failing to report for their initial candidate screening intake interview. An analysis by the City's expert, Dr. Christopher Erath, shows that 36.3% of all black candidates processed thus far by the FDNY have been disqualified for failing to report, while only 26.6% of all white candidates have been disqualified for this reason. <u>See</u> Ex. B.

This stems, at least in part, from the City's failure to do any follow-up regarding non-appearance, even in cases where the City's mailing of the pre-interview packet was returned as undeliverable. <u>See</u> Ex. C, Tow Dep. at 141-143. This practice

---

[1] Plaintiffs-Intervenors proposed injunctive relief is based upon the Court's order of January 13, 2010 finding the City liable for intentional discrimination (Dkt. No. 385), and it was served pursuant to the agreed-upon briefing schedule endorsed by the Court on September 21, 2010 (Dkt. No. 554).



Hon. Nicholas G. Garaufis
September 30, 2010
Page 3

disproportionately hurts black candidates because, as the Vulcans have learned over the past decade, a large number of black candidates change addresses during the several years – often 3-4 years – that pass between the date of the firefighter exam and the date the candidate is processed. Further, the Vulcans have been able to locate such candidates by simply calling them on the phone or, in some cases, visiting their homes. See Ex. D, excerpts from the Affidavit of Captain Paul Washington, dated September 29, 2010.

    2.    Screening For "Good Character and Satisfactory Background." Compelling anecdotal and statistical evidence exists concerning the subjective nature of the City's screening of firefighter candidates, the special consideration given to friends of FDNY officers and other incumbents, and the adverse impact that the screening process has on black candidates. Sherry Kavaler, former FDNY Assistant Commissioner for Human Resources, and former Personnel Review Board ("PRB") member, for example, has testified that

> A: People knew what was going on and who was going to the PRB.
>
> You would have lieutenants and captains, whatever, posting chief of department: This is the son of so and so. I lived next door to him for years, he's a good guy, he just had a fight in a disco, he got drunk, someone made a pass at his girlfriend, he socked him, he did community service.
>
> Something like that. Whatever it was. He beat his wife but his wife took him back so he shouldn't be considered a wife beater. He still could be a good firefighter.
>
> These types of things. That would be brought to the table. And people would say I know this guy, he's a good guy, his son has got to come on the job, I will vouch for him. I will bring him into my office tomorrow, I'll read him the riot act, say he's getting the chance of a lifetime and he better own up to it and make us proud and we would hire him.
>
> Q: Were there certain topics that would come up routinely? Was there sort of a checklist at the PRB, what to look for?
>
> A: No, it wasn't a checklist or anything like that.
> . . . .
> This is- boys being boys. That type of thing.

See Ex. E, Kavaler Dep. at 369:5-370:18.

56-001-00001: 115982.doc



Hon. Nicholas G. Garaufis
September 30, 2010
Page 4

The statistics show a gross disparate impact against black candidates in the PRB's screening for "good character and satisfactory background." Plaintiffs-Intervenors' expert, Dr. Joel P. Wiesen, conducted an analysis of Exam 7029 data which looked at the 4,795 black and white candidates who were processed for appointment. In that group, only 6.2% were black, but blacks were 23.1% of those who were "considered not selected" (CNS) for appointment, which is the code the FDNY uses to indicate that a candidate has been denied appointment by the PRB. In comparison, among the group of blacks and whites who were processed, 93.8% were white, but whites were only 76.9% of those classified as "CNS". See Ex. F, Wiesen Rep. at 35-36.

Analysis of data from Exam 6019 shows a similar disproportionate exclusion of candidates through the "character and background" screening. Of roughly 2,000 candidates from the Exam 6019 eligibility list who underwent post-exam screening as of August 2010, blacks represent 12.2% of all screened candidates but 19% of those rejected by the PRB, while whites represent 69% of all screened candidates but account for only 62% of those rejected by the PRB. See Ex. G, excerpts from the Declaration of Richard A. Levy, dated September 29, 2010, at ¶32. The briefing papers served on the parties yesterday, concerning Plaintiffs-Intervenors proposed injunctive relief order, includes specific examples of blacks and Hispanics who were disqualified by the PRB for offenses that were very similar to, or less serious than, those committed by white candidates who were appointed.

The lack of clear standards, and the informal and arbitrary decision-making process described by Assistant Commissioner Kavaler, calls for this Court's remedial hand. This Court, and others in the Second Circuit, have recognized that "subjective and ad hoc employment practices . . . bolster [a Title VII] plaintiff['s] claim that defendants discriminated against class members." *Wright v. Stern*, 450 F.Supp.2d 335, 365-66 (S.D.N.Y. 2006); *United States v. City of New York*, 07 Civ. 2083, 2010 U.S. Dist. LEXIS 47267, * 38 (S.D.N.Y. May 13, 2010) (same) (quoting *Wright*); see also *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1015 (2d Cir. 1980) (observing that "subjective, word of mouth hiring methods" are suspect and used to mask ongoing bias).

In light of the Court's finding of a long-standing pattern of intentional discrimination, as well the recent finding that Exam 6019 did not comport with Title VII standards, the Court's equitable powers authorize the broader relief being proposed by the Plaintiffs-Intervenors. "The bounds of the court's discretion are set by the purposes of Title VII, which are to prevent discrimination and achieve equal employment opportunity in the future . . . and to make whole the victims of past discriminatory practices." *Berkman v. City of New York*, 705 F.2d 584, 594 (2d Cir. 1983) (citations omitted); *ADE v. City of Bridgeport*, 647 F.2d at 279 (same). The monitoring of the City's screening of candidates is necessary to assure that meaningful Title VII relief is not foreclosed by the post-exam



Hon. Nicholas G. Garaufis
September 30, 2010
Page 5

screening process, whether or not such screening would constitute a separate unlawful practice.

Based on the above, and the additional evidence included in Plaintiffs-Intervenors' Memorandum of Law in Support of Proposed Order for Injunctive Relief (which we will file upon permission from the Court), we ask that if the Court permits the City to process and appoint candidates from the Exam 6019 list in a manner that complies with Title VII, the Court also order the additional requirements set forth in Exhibit A hereto.

Very truly yours,

/s/ Richard A. Levy

LEVY RATNER, P.C.
Richard A. Levy
Robert H. Stroup
Dana E. Lossia
80 Eighth Avenue
New York, New York 10011
T: (212) 627-8100
F: (212) 627-8182
rlevy@levyratner.com
rstroup@levyratner.com
dlossia@levyratner.com

Enclosures
TO: All Counsel Via ECF Only

56-001-00001: 115982.doc

