# LEVY RATNER, P.C.

Attorneys at Law
80 Eighth Avenue, 8th Floor
New York, New York 10011-5126

Telephone (212) 627-8100
Telecopier (212) 627-8182

www.levyratner.com

Richard A. Levy
Daniel J. Ratner
Daniel Engelstein°
Gwynne A. Wilcox[Δ]
Pamela Jeffrey
Owen M. Rumelt
Kevin Finnegan
Carl J. Levine[Δ]
David Slutsky[Δ]
Allyson L. Belovin
Suzanne Hepner◆
Richard Dorn
Robert H. Stroup

Dana E. Lossia[Δ]
Susan J. Cameron[Δ]
Micah Wissinger•
Ryan J. Barbur
Vanessa Flores[Δ]
Alexander Rabb

Counsel:
Paul Schachter[Δ]
Anthony DiCaprio
Michael Steven Smith
David P. Horowitz[†]

ELECTRONICALLY FILED                                    October 15, 2010

Hon. Nicholas G. Garaufis, U.S.D.J.
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:     *United States, et al. v. City of New York*
                   Civ. Action No. 07-cv-2067 (NGG) (RLM)

Dear Judge Garaufis:

      Plaintiffs-Intervenors and the United States have jointly responded to the City's letter of October 8, 2010 (Dkt. No. 561), stating its decision not to hire firefighters until a new examination has been implemented.  (Dkt. No. 566).  Plaintiffs-Intervenors write separately because we believe it is important to document the City's reversal of position on this issue, and to highlight the time and resources wasted by the parties, the Special Master, and the Court, as a result.

      As the attached timeline shows, the City's insistence upon its need to hire firefighters led to hundreds of hours of attorney work, including three expedited hearing dates, six meetings with the Special Master, voluminous correspondence, proposals and briefing, and a lengthy distraction from the work of developing a new exam and finalizing relief for the victims of Exams 7029 and 2043.  The time, work and expense laid out by the parties, the Special Master and the Court since they began litigating this issue was all based on the City's asserted need to address public safety and budgetary concerns through immediate hiring.  As the City represented in July:

      MR. LEMONEDES:  In continuing to have firefighters do more and more overtime, what concern, if any, is there regarding public safety?

      MS. QUEENAN:  Great concern to public safety, because you're then dealing with a work force that's overworked.

(7/20/2010 Hearing Tr. at 260:1-6)

56-001-00001: 120082.doc

°Admitted in NY, MA and DC    [Δ]Admitted in NY and NJ    ◆Admitted in NY and CT    •Admitted in NY and DC    [†]Admitted in NY and MA

Hon. Nicholas G. Garaufis
October 15, 2010
Page 2

      Now, the City says that its need to hire has vanished. The City's new priorities are: (1) to avoid hiring based on race, "which the City believes to be bad public policy," and (2) to hire "based on ability rather than ethnicity." (Dkt. No. 561, at 7).

      The City's reasoning on both of these issues is deeply flawed. First, the options that the Court made available to the City included the proportional processing of candidates, which does not involve hiring based on any fixed racial percentage. (Dkt. No. 527, at 10-20). The City does not address that option in its October 8, 2010 letter. (Dkt. No. 561). Second, there is no dispute that those individuals who were hired from the top of the Exam 6019 eligibility list were <u>not</u> necessarily the candidates with the top scores on the exam. Residency, legacy and veterans' often bump candidates well ahead of others with significantly higher written test scores.[1] And, of course, the exam has not been shown to bear a relationship to the actual skills and abilities relevant for the firefighter job. (Dkt. No. 505). In fact, nearly half of the EMTs who were promoted into the position of firefighter ahead of <u>all</u> of the candidates on the Exam 6019 list, scored in the 70s and 80s on the test (meaning some scored even lower than the cutoff score of 80 that was advanced by the City's expert, Dr. Cline).[2] The City has never suggested that these EMTs, or those who were hired based on bonus points in the past, have performed any less well than firefighters with higher exam scores.

      Clearly, the City's changing positions on the need for interim hiring have been based on something other than the actual operational requirements of the Fire Department[3] and have certainly been based on something other than the best interests of New York City residents. The record should be clear that interim hiring has been taken off the table by the City itself, and through no lack of time, expense or effort by the Plaintiffs-Intervenors, the United States, the Special Master or the Court.

      Very truly yours,

      /s/ Richard A. Levy
      Richard A. Levy
      Dana Lossia
      Robert H. Stroup
      LEVY RATNER, P.C.

---

[1] <u>See</u> Ex. A, Pl. 6019 Hearing Ex. 4(b), showing, for example, that a candidate who scored 90.252 on Written Exam 6019 was placed at List No. 81 because he had 15 bonus points, while a candidate who scored 97.929 on the test and had only 5 bonus points was placed at List No. 234.

[2] <u>See</u> Ex. B, showing the Exam 6506 candidates who were appointed, along with their list numbers (filed with the Court on July 31, 2009), <u>and</u> <u>see</u> Ex. C, an excel spreadsheet produced by the City entitled "Exam_6506_Current_Eligible_List_d073009," listing the written exam scores of Exam 6506 candidates in column D, with highlighted cells showing the appointed promotional candidates who scored in the 70s or 80s on the test.

[3] The Court may note that the City, which has sought reductions in fire engine staffing for years, has officially informed the Uniformed Firefighters Association that it will reduce staffing on 60 engines as of February 1, 2011. <u>See</u> EX. D, NEW YORK DAILY NEWS, Oct. 14, 2010.

Hon. Nicholas G. Garaufis
October 15, 2010
Page 3

       80 Eighth Avenue
       New York, NY 10011
       (212) 627-8100
       (212) 627-8182 (fax)
       rlevy@levyratner.com
       dlossia@levyratner.com
       rstroup@levyratner.com

       CENTER FOR CONSTITUTIONAL RIGHTS
       Darius Charney
       Anjana Samant
       666 Broadway, 7th Floor
       New York, NY 10012-2399
       (212) 614-6438
       (212) 614-6499 (fax)
       dcharney@ccrjustice.org
       asamant@ccrjustice.org

       SCOTT + SCOTT, LLP
       Judy Scolnick
       500 Fifth Avenue, 40th Floor
       New York, NY 10110
       (212) 223-6444
       (212) 223-6334 (fax)
       jscolnick@scott-scott.com

       *Attorneys for Plaintiffs-Intervenors*

To:  All Counsel Via ECF Only.

**ATTACHMENT**

| | |
|---|---|
| June 29, 2010 | City informs the parties and the Court that it intends to hire firefighters in late August or early September, 2010 due to "the City's immediate hiring needs." (Dkt. No. 456). |
| June 30, 2010 | The Court, with the assistance of the Special Master, accommodates the City by immediately scheduling a hearing on the validity of Exam 6019 on an expedited basis. (Dkt. No. 457). "[I]n light of the acceleration of the hearing schedule," the parties work on the development of a new exam – which had previously been the Court's top priority – is delayed. (Id. at ¶4) |
| July 9, 2010 | After many hours of reviewing documents and consulting with experts, Plaintiffs-Intervenors and the United States submit witness lists and exhibit lists. (Dkt. Nos. 468, 469); *see also* Dkt. No. 480 (7/15/2010). |
| July 16, 2010 | Plaintiffs-Intervenors and the United States submit proposed findings of fact, pre-hearing briefs, and motions to exclude and *in limine*, again after many hours of consultation with their experts, legal research, and drafting. (Dkt. Nos. 483, 484, 485, 486, 487, 488, 489, 490). |
| July 19, 2010 | The Court rules on the parties' motions *in limine* and motions to exclude. (Dkt. No. 494). |
| July 20 – 21, 2010 | The Court holds two days of hearings on the validity of Exam 6019, and directs the City to give the Court seven (7) days notice of any interim hiring. (7/21/2010 Hearing Tr., at 425-26). |
| July 27, 2010 | City informs the Court that it will appoint approximately 300 firefighters on August 30, 2010. (Dkt. No. 497). The City acknowledges its burden to propose an alternate hiring method if Exam 6019 is found to be invalid, but it nevertheless asks for permission to hire an August 2010 class from the Exam 6019 list in a manner that would result in adverse impact, so as to avoid any delay in hiring. (Id.) |
| July 28, 2010 | Plaintiffs-Intervenors and the United States jointly submit a letter objecting to the City's proposal that it be permitted to violate Title VII simply to avoid a hiring delay. (Dkt. No. 499). |
| July 29, 2010 | City submits a letter to the Court criticizing Plaintiffs for their skepticism about the City's asserted need to hire, and noting that the Court had not yet taken evidence about overtime and its impact on the safety of firefighters and the public. (Dkt. No. 500). The City writes: "In addition to dismissing the sworn testimony of an FDNY Assistant Commissioner that overtime can become a safety issue, plaintiff and intervenors conveniently ignore |

| | |
|---|---|
| | that the safety concerns flowing from delays in hiring new firefighters was not to be a topic at the [Exam 6019 validity] hearing." (Id., at 1). |
| July 29, 2010 | Plaintiffs-Intervenors respond to the City's letter by asking that "the City be required to produce evidence of any purported public safety concerns that it asserts would result from a delay in hiring." (Dkt. No. 502, at 1-2). Plaintiffs-Intervenors also note that "[t]his year, Mayor Bloomberg advocated the closure of 20 fire companies along with staffing reductions in 60 additional engine companies" and that "Fire Commissioner Salvatore Cassano told NY1 on June 4, 2010 that he did not think safety would be compromised as a result of the closure of 20 fire companies or the reductions in engine company staffing that were proposed by Mayor Bloomberg." (Id., at 2-3, Exhibits A, C). |
| August 4, 2010 | The Court finds that the City "failed to carry its burden to demonstrate that its use of Exam 6019 as a pass/fail and rank-ordering device is job related and justified by business necessity [and therefore] the City's use of Exam 6019 does not comply with Title VII." (Dkt. No. 505, at 37). |
| August 10, 2010 | Plaintiffs-Intervenors submit to the Court their position concerning lawful interim hiring. (Dkt. No. 507). |
| August 11, 2010 | The Court holds a conference with the parties and makes clear that "[u]nless the City is willing to pursue an interim hiring solution that does not rely on the 6019 eligibility list, it must demonstrate that the City's need for a new firefighter class is so compelling that this Court should overlook a Title VII violation in order to meet that need." (Conf. Tr. at 6:21-7:1). The Court, taking seriously the City's assertion of a need to hire, sets an evidentiary hearing on an expedited basis for August 19, 2010. The possibility of mediation with the Special Master is also discussed. |
| August 13, 2010 | At the request of the Special Master, Plaintiffs-Intervenors submit to the Special Master their position with respect to interim hiring. (The United States and City submit positions to the Special Master on 8/16/2010.) |
| August 17, 2010 | The parties meet with the Special Master in an effort to resolve the dispute concerning interim hiring. |
| August 18, 2010 | Plaintiffs-Intervenors submit their witness and exhibit list for the evidentiary hearing on the need for interim hiring. (Dkt. No. 513). Plaintiffs-Intervenors review Defendants hearing exhibits, confer with the United States, and prepare for the hearing. |
| August 19, 2010 | The Court holds a hearing on the City's asserted compelling need to hire. |

Hon. Nicholas G. Garaufis
October 15, 2010
Page 6

| | |
|---|---|
| August 24, 30, 31, September 1 and 3, 2010: | The parties meet five more times with the Special Master regarding the City's stated need for interim hiring. Outside of these meetings, the Plaintiffs-Intervenors and the United States review in detail the proposals made by the City, formulate their own proposals, consult with their experts, meet with their clients, and confer with each other concerning the many hiring options being considered. The Special Master and her colleagues also dedicate significant time and resources to analyzing the proposals and attempting to broker a settlement. |
| September 3, 2010 | The Special Master reports to the Court that the parties were not able to agree on an interim hiring method but did agree on the lawfulness of certain options. (Dkt. No. 521, "Hiring Report", as modified by Dkt. No. 522). |
| September 9, 2010 | Plaintiffs-Intervenors and the United States respond to the Hiring Report by urging that the Court permit the City to select a hiring method from among the menu of lawful options presented by the Special Master. (Dkt. Nos. 525, 526). The City's letter of the same day continues to criticize the hiring proposals made by Plaintiffs-Intervenors and the United States but fails to set forth any alternate proposal that would comply with Title VII. (Dkt. No. 524). |
| September 13, 2010 | After hearing the positions of the parties with respect to the Hiring Report, the Court sets forth five (5) lawful and equitable options for interim hiring, and permitted the City to choose from among the options presented. (Dkt. No. 527). The Court's willingness to permit hiring is based on the City's stated desire to hire two (2) classes, "one as soon as possible and one in January 2011". (Id., at 5). The Court is "satisfied that a temporary hiring delay will not imperil the safety of the city's residents or its firefighters" (Id., at 26). But, it takes seriously the City's assertions of a grave need to hire, and it offers options for hiring within a very short time frame to accommodate the City's stated need. The Court holds that: "If the City truly believes that public safety and the municipal fisc require the immediate appointment of a firefighter class, then the court will set aside its reservations and order applicant-flow hiring." (Id.) |
| September 17, 2010 | The City – after more than 10 weeks of asserting its need to hire entry-level firefighters – informs the Court that "using raced-based [*sic*] quotas to select firefighters is both illegal and unwise public policy" and that "for these reasons, the City declines to select any one of the five proposals offered by the Court." (Dkt. No. 532, at 1). |
| September 21, 2010 | Court sets a briefing schedule on the need for permanent injunctive relief. As the Court notes: "If the City's policy preferences compel it to forego hiring altogether – rather than to hire in accordance with its Title VII obligations – its claims about the urgency of its hiring needs lack credibility. Moreover, the City did not cite <u>any</u> authority in support of its |

Case 1:07-cv-02067-NGG -RLM   Document 567   Filed 10/15/10   Page 7 of 7

Hon. Nicholas G. Garaufis
October 15, 2010
Page 7

|  |  |
|---|---|
|  | claims about the illegality of the proposed hiring methods." (Dkt. No. 554, at 2-3, emphasis in original).  The Court also "counsel[s]" the City "that further obstructionism in this litigation will ill-serve the public interest." (Id., at 4). |
| September 30, 2010 | Plaintiffs-Intervenors and the United States spend time conferring regarding injunctive relief, conducting legal research, and drafting their positions.  They submit letters setting forth the need for injunctive relief, and pointing out the inconsistency in the City's position concerning   (Dkt Nos. 558, 559). |
| October 8, 2010 | The City asserts, for the first time, that "delaying hiring is not an unacceptable alternative," (Dkt. No. 561, at 5) and that "the City now plans to wait" to hire until a new test has been implemented (Id., at 7). |

56-001-00001: 120082.doc

Hon. Nicholas G. Garaufis
October 15, 2010
Page 7

|  |  |
|---|---|
|  | claims about the illegality of the proposed hiring methods." (Dkt. No. 554, at 2-3, emphasis in original).  The Court also "counsel[s]" the City "that further obstructionism in this litigation will ill-serve the public interest." (Id., at 4). |
| September 30, 2010 | Plaintiffs-Intervenors and the United States spend time conferring regarding injunctive relief, conducting legal research, and drafting their positions.  They submit letters setting forth the need for injunctive relief, and pointing out the inconsistency in the City's position concerning   (Dkt Nos. 558, 559). |
| October 8, 2010 | The City asserts, for the first time, that "delaying hiring is not an unacceptable alternative," (Dkt. No. 561, at 5) and that "the City now plans to wait" to hire until a new test has been implemented (Id., at 7). |