UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                                                                                                        :

UNITED STATES OF AMERICA,
                                                                                                                                                         :

            Plaintiff,

                                                                                                             :      **SPECIAL MASTER'S**
     -and-                                                                                               **REPORT NO. 3**
                                                                                                          :

THE VULCAN SOCIETY, INC., for itself and on behalf of    **07-cv-2067 (NGG)(RLM)**
its members, and MARCUS HAYWOOD, CANDIDO   :
NUÑEZ and ROGER GREGG, individually and on behalf
of a class of all others similarly situated,                                      :

                 Plaintiffs-Intervenors,                                       :

    -against-                                                                                            :

THE CITY OF NEW YORK,                                    :

            Defendant.                                          :

------------------------------------------------------------------------x

MARY JO WHITE, Special Master.

      The Special Master submits this report pursuant to paragraph 4 of the Court's June 1, 2010 Order Appointing Special Master (the "Appointment Order") (Dkt. No. 448, ¶ 4). The Appointment Order requires the Special Master to submit a report at least every 90 days after the parties begin the joint development of the New Test. As advised in the last report, that process formally began on August 20, 2010, and accordingly, this report

covers the 90-day period from the date of Special Master's Report No. 2, July 30, 2010, to the present. (Dkt. No. 503).[1]

## I. Conferences with the Parties

The Special Master continues to have a scheduled standing weekly conference with the parties, which are now calendared through the end of November. Conferences are held (or not) upon the Special Master's assessment of the need to convene the parties. Accordingly, since her last report, additional conferences were held on August 3rd, 20th, September 14th, 28th, October 14th, and 26th.[2]

## II. Written Exam 6019

As noted in Report No. 2, with the conclusion of the hearing on Exam 6019, and the Court's ruling on August 4th holding that Written Exam 6019 ("Exam 6019") does not comply with Title VII of the United States Code (Dkt. No. 505), the Special Master's

---

[1] Prior to the commencement of the development of the New Test, the Special Master, in accordance with the Appointment Order, submitted her first and second reports every 30 days. Special Master's Report No. 1 was submitted on July 1, and as noted, Report No. 2 was submitted on July 30, 2010. The Appointment Order further requires that the Special Master submit an itemized statement of fees and expenses every 60 days. (Appointment Order ¶ 14). The Special Master submitted her first statement on July 30th, and her second on September 28th, 2010. Because the Special Master and her law firm have agreed to work on a pro bono basis, these statements were limited to expenses. (Dkt. Nos. 504 & 557).

[2] At the Special Master's direction, certain of the conferences were conducted by the Special Master's partner, Mary Beth Hogan. As described in the Special Master's Report on Potential Interim Hiring Procedures (Dkt. No. 521) and below, the Special Master held additional conferences with the parties in connection with efforts to mediate the parties' disputes concerning interim hiring.

mandate to facilitate timely review of Exam 6019 by the Court under paragraph 2.a of the Appointment Order is completed. (Dkt. No. 503).

### III. Interim Hiring Measures

The Court's August 4, 2010 ruling also temporarily enjoined the City from hiring firefighters until the Court had an opportunity to hold a hearing on an appropriate interim hiring method. (Dkt. No. 505). Following that ruling, the Court requested that the Special Master meet with the parties in an effort to facilitate an agreement by the parties on a mutually acceptable interim hiring method. To that end, the Special Master began discussions with the parties on August 17th and held a total of six meetings and conferences, to explore whether they could agree on an interim method by which the City lawfully could hire new budgeted classes of firefighters before a new permanent selection procedure is developed. On September 3rd, the Special Master apprised the Court of the results of those discussions in a report that described seven proposals that the parties had discussed, as well as the parties' positions regarding the legality and desirability of each proposal. The report was supplemented on September 4th. (Dkt. Nos. 521, 522).[3]

Following the submission of her report on the outcome of those discussions and the Court's subsequent decision permanently enjoining the City from hiring firefighters

---

[3] A brief recap of subsequent events follows. On September 13th, the Court issued an order addressing those proposals. (Dkt. No. 527). It permitted the City to select from four, and one other that the Court proffered. (*Id.*). On September 17th, the City informed the Court that it would not be selecting any of those proposals. (Dkt. No. 532). On October 19th, the Court issued a Decision & Injunction permanently enjoining the City from hiring firefighters based on the results of Exam 6019, except under one of the interim approaches already endorsed by the Court. (Dkt. No. 569).

based on the results of Exam 6019, the Special Master's work on the interim hiring procedures is complete.

## IV. Development of New Firefighter Eligibility Test

In her last report, the Special Master reported that a number of preparatory steps for the development of a new entrance examination (the "New Test") had been completed. (Dkt. No. 503). Briefly, that report informed the Court that all parties had selected experts to advise them in connection with the New Test development process, that the Special Master had also selected an expert consultant to assist her in performing her duties related to the New Test, and that the Special Master set a date for the first meeting of experts concerning the development of the New Test. (*Id.*).

Since that report, the United States has also retained an additional expert – Dr. Leatta Hough – to assist its current expert, Dr. David Jones. The United States informs the Special Master that Dr. Hough is an expert on non-cognitive abilities. The Special Master continues to impress upon the parties and their experts the importance of working as expeditiously as possible in developing the New Test. What follows is a description of the additional progress the parties and their experts have made towards developing the New Test.

### A. Progress Towards Development of New Test
#### 1. Communications With and Among Experts

As advised in the last report, on August 20, 2010, the experts for all parties and the Special Master met to discuss a plan for developing the New Test. Also in attendance

were counsel for the parties and representatives from each of the Uniformed Firefighters Association ("UFA") and Uniformed Firefighters Officers Association ("UFOA") (collectively "Amici"), whom the Special Master invited to facilitate communication about the New Test development between the parties and their experts on the one hand and the union representatives on the other. (Dkt. No. 479).[4] The City's expert chaired the meeting and formulated an agenda based on submissions from all parties that listed preliminary issues that in their views, needed to be addressed.

All in attendance agreed to keep the ongoing discussions among the parties, their experts, and Amici confidential, and accordingly, the Special Master will provide only a high-level summary:

- Roles. All agreed that the test development should proceed as a joint effort among the parties, with the City's expert coordinating the process. All further agreed that UFA and UFOA, neither of which plan to retain an expert, will serve as a resource and will be consulted by the experts as they deem necessary. The Special Master also committed to keeping the union representatives informed of major milestones in the New Test development process. The Special Master also informed the parties that her expert's role will evolve as necessary, depending on the progress of the parties' experts. (*See* Dkt. No. 516, Ex. B).

- Scope. The parties discussed the scope of the New Test development, including statutory constraints that should be considered in designing the New Test.[5] All

---

[4] As previously reported, by order dated June 17, 2010, the Special Master permitted the UFA and UFOA to submit any recommendations and/or issues they wished to raise in connection with the development of the New Test by July 14, 2010, and directed that the parties should share those submissions with their experts. (Special Master's Order No. 5, Dkt. No. 455, ¶ 2). On July 8, 2010 and July 14, 2010, the UFOA and UFA submitted recommendations. (Dkt. Nos. 465 & 478).

[5] In follow-up to this discussion, on September 7, the City provided a list of constraints, which was supplemented on September 9.

5

agreed on the need for firefighter participation and Amici and counsel for the Vulcan Society committed to facilitating this cooperation.

- Methodology. The parties discussed project methodology, including validation techniques.

- Communications among experts. The Special Master instructed that the parties' experts can engage in one-on-one communications with each other, but should communicate with the Special Master or her expert only when all experts are included.

- Future meetings. At the Special Master's request, the experts also established a standing weekly telephonic conference with each other.

The experts have met several additional times, including in-person, since the Initial Experts Meeting on August 20th. Specifically, they met on August 25th, September 3rd, 10th, 15th, and 24th, October 4th, 11th, 15th, and 22nd.[6]

### 2. New Test Development Project Plan

Following the initial meeting and discussions among the experts, on September 1, 2010, the City's expert submitted a test development project plan, including a timeline, to the Special Master. The timeline lists four overarching categories of tasks: (*i*) job analysis; (*ii*) test development, design and development; (*iii*) validation; and (*iv*) deployment and scoring.

With the agreement of all the parties' experts, the City's expert revised the timeline, and submitted that revised timeline to the Special Master on October 18, 2010.

---

[6] With the agreement of all, and in view of scheduling issues, some of the meetings or parts of the meetings have taken place in the absence of Intervenors' expert, who has later received notes summarizing the meeting discussions from the City's expert. The Special Master's expert attends the meetings as appropriate and is kept informed of all the major developments in those meetings that she has not attended.

Under the current timeline, the job analysis survey is scheduled to be completed on January 14, 2011, which is two weeks later than provided in the original plan; the test development phase, including design and development, is scheduled to be completed on June 15, 2011; validation is scheduled to be completed on September 30, 2011; and deployment and scoring on November 30, 2011. The City's expert has, however, informed the Special Master that these timeframes may need to be refined depending on information learned during the job analysis process. It anticipates being able to provide the Special Master with an updated schedule in early December, after the experts have gone further in the job analysis.

The parties and experts have made significant progress towards completing the job analysis phase:

- On September 16th, they conducted job observations and interviews at multiple fire stations in order to get a better understanding of the Fire Department City of New York ("FDNY") environment and firefighter job. As the Court is aware, these are not "interviews" in the traditional sense, but rather an effort to solicit the FDNY firefighters' expertise in terms of the job and its demands.

- On September 17th, they conducted a workshop with firefighters to review and comment on the KSAs (knowledge, skills, and abilities) and tasks, which is an important part of the job analysis. The majority of the experts October 11th in-person meeting was devoted to refining these KSAs and task surveys.

- On October 19th, the experts held a webinar with a small group of firefighters to go over the surveys.

- These surveys were then administered during the week of October 25th.

- On October 26th, the experts also met with representatives of UFA and UFOA to share the surveys with them, update them on the New Test development, and answer questions.

- The experts have reached some agreement on validation techniques and continue to flesh out its parameters.
- The experts are conducting ongoing research into firefighter test publishers and tests, in an effort to inform the content of the New Test.

### 3. Updating Amici

On September 15, 2010, the Special Master convened a telephonic conference with Amici, in which counsel for the parties also participated. The Special Master informed the parties of the progress made towards the development of the test as of that date (described above). As already noted, Amici were also provided the opportunity to provide input on the test development process prior to the Initial Expert meeting, invited to attend that meeting, and, since the September 15, 2010 call, the experts have shared the KSA surveys with them.

### 4. Special Master's Expert

#### a) Role

On July 26, 2010, the Special Master sent an email to the parties outlining the role of her expert. (Dkt. No. 516, Ex. B). Following that communication, the United States and Intervenors requested clarification on the role of the Special Master's expert. On September 3, 2010, the Special Master reaffirmed that the parties' experts are responsible for the development of the New Test, but reiterated that the degree of involvement by the Special Master's expert, in addition to advising the Special Master, will ultimately depend on how efficiently and effectively the test development proceeds. Thus, the Special Master provided the following protocol:

8

- Dr. Pittman will be on all weekly conference calls and attend all other meetings at which overall strategy and test philosophy are discussed so that she can understand and follow the process in order to advise the Special Master on status, time schedules and on any disputes that the Special Master may need to resolve among the parties' experts.

- Although she should be informed of all meetings, Dr. Pittman will not plan to attend those that cover implementation and operational issues.

- When Dr. Pittman attends calls or meetings, the Special Master expects her to ask questions of the parties experts when something is unclear to her. She will also alert the Special Master to any concerns she has or issues that may require the Special Master's intervention.

- To the extent that the experts produce written materials, the City's expert should collect comments from the United States and Intervenors' experts in the first instance and then provide the written materials to Dr. Pittman and the Special Master.

- Dr. Pittman will then advise the Special Master about the written materials and about any areas of concern she might have. Dr. Pittman or the Special Master will then communicate with the parties' experts about those concerns. In communicating with the parties' experts by email, Dr. Pittman will copy all three experts.

- And, as already noted, any conversations between the parties' experts and Dr. Pittman should take place only where all three experts are present, or invited.

b) Fees

On September 3rd, the Court approved the Special Master's Application for Approval of Proposed Budget for Special Master's Expert Consultant, which projected monthly fees of between $7,000 to $17,000. (Dkt. Nos. 516, 519). As detailed in the Special Master's second Statement of Fees and Expenses, for August, Dr. Pittman's fees were $6,687.50, and her expenses were $320.84, totaling $7,008.34. Dr. Pittman received payment from the City on October 28, 2010.

* * * * * * * * *

Recognizing the importance and difficulty of expeditiously developing a New Test, the Special Master is substantially satisfied with the progress made to date by the parties and their experts towards developing the New Test. She thanks the parties, experts and Amici for their past and continued assistance and cooperation in this joint effort.

Pursuant to the Appointment Order, and in the absence of any requests from the Court for an interim report, the Special Master will submit her next report 90 days from today. (Appointment Order, ¶ 4).

/s/ Mary Jo White____

Mary Jo White

Dated: October 28, 2010