

**MICHAEL A. CARDOZO**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

June 24, 2011

VIA ECF FILING
Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  USA v. City, Civil Action No.: 07 CV 2067 (NGG)(RLM)
Law Dept. No.: 2007-017441

Dear Judge Garaufis:

I write pursuant to the Court's Order, dated June 22, 2011 (Dkt # 646) directing the City to file a brief explaining how the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, No. 10-277, slip. Op. __, 56 U.S. __ (June 20, 2011) affects the Court's May 11, 2009 Liability Phase Class Certification Order.  United States v. City of New York, 258 F.R.D. 47 (E.D.N.Y. 2009).

**The 23(b)(2) Certification of the Liability Phase Must be Vacated in Light of Wal-Mart**

The Court certified this class action only under Fed. R. Civ. P. Rule 23(b)(2) relying on the Second Circuit's decision in Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147 (2d Cir. 2001) which was overturned by Wal-Mart as to its holding on Rule 23(b)(2).  In granting certification, this Court concluded that "[in]junctive and declaratory relief sought by the Intervenors predominates over the requested monetary relief."  United States, at 66. Plaintiffs-Intervenors had also represented that monetary relief would be primarily backpay, which the Court noted is considered equitable relief. Id. at 61.

The Supreme Court has now specifically ruled that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  Wal-Mart, slip. Op. at 20-21.  Moreover, the Supreme Court

specifically rejected the contention that backpay claims may be certified under 23(b)(2) because backpay is an equitable remedy. Wal-Mart, slip Op. at 29 ("Finally, respondents argue that their backpay claims are appropriate for a (b)(2) class action because a backpay award is equitable in nature. The latter may be true, but it is irrelevant. The Rule does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments. As Title VII itself makes pellucidly clear, backpay is neither.")   Plaintiffs-Intervenors in this case seek not only backpay, but also compensatory damages which they seek to disguise as "noneconomic damages" or damages for "intangibles." Under the Wal-Mart decision, a class action that seeks such damages cannot be certified under 23(b)(2).   Continued certification of this case under 23(b)(2) is therefore, inappropriate and the class must be decertified.


**Certification under Rule 23(b)(3) Would Be Inappropriate Because of the Likely Difficulties of Managing the Class Action and Common Issues Do Not Predominate**


One of the considerations that a Court must take into account in determining the suitability of a proposed class action for certification under Rule 23(b)(3) is the "likely difficulties in managing a class action." Rule 23(b)(3)(D).   While the Court in its June 6, 2011 decision indicated that it would certify the calculation of the gross amount of back pay on a class-wide basis, it ruled that "the problems inherent in the parties' attempt to calculate class-wide mitigation are among the reasons the Second Circuit has cautioned that class-wide monetary relief "is the exception, not the rule: Where possible, 'there should be . . .  a determination on an individual basis as to which class members are entitled to [recovery] and the amount of such recovery.'" Dkt # 640 at 23.   This Court, moreover, ruled that "this [mitigation] inquiry requires a highly individualized, retrospective examination of the actions actually taken by a claimant in light of the particular circumstances faced by that claimant. Id.   The June 6, 2011 Order goes on to recognize that "numerous fact questions will need to be decided in the individualized claims process, all of which implicate questions of equity, basic fairness, and the due process rights of individual claimants." Dkt. 640 at 40.

Plaintiffs-Intervenors' argument that non-economic damages can be calculated on a class-wide basis because of the unique nature of the job is untenable.   As the Court's questions at the June 22, 2011 case management conference suggest, claimants may have pursued very different avenues in their lives and the value of the "intangibles" would vary as individual's satisfaction with their work and lives will vary:

> Let's talk about the individual non-economic intangible benefits loss to the plaintiffs in this class. Is that really susceptible to class treatment or do we have to have – or does that have to be a separate inquiry for each and every person because each and every person has a different set of intangible lack of benefits or harm in a case like this. In other words, one person could have gone out and become a truck driver, but another person could have gone out and become an electrician or a lawyer or opened a business and be very

successful in business.   The question then becomes how can you have a class wide determination as to what has to be intangibles?

Transcript, June 22, 2011 conference, p. 9, 15-17.

Similarly, Plaintiffs-Intervenors' argument that the value of camaraderie and time spent pursuing other interests or working other jobs can be valued equally for everyone ignores that such pursuits are quintessentially individualized and personal in nature.   While the firefighter position offers a unique work schedule that many enjoy, there may, in fact, be some firefighters who do not like spending nights away from their families.  The Court recognized that numerous questions such as these may have to be resolved for potentially "thousands of individual claimants." Dkt. 640 at 40.   Consequently, questions of law or fact do not appear to predominate over questions affecting individual issues.

The fact that the Court is considering appointment of a Special Master to make thousands of individualized determinations is strong evidence that the individualized determinations are so unmanageable that class action treatment is not superior to other available methods of fairly and efficiently adjudicating the claims.   The prospect of individualized discovery needs and hearings for up to 7,100 claimants is daunting to all concerned.   For example, assuming each claimant only had a one day trial, it would take a single judge over 27 years to process all claims.   Even if only 2,200 class members are likely to file claims[1] and demand one day trials, it would take approximately eight and a half years to try all of the claims.

Finally, assuming the Court had the power to appoint a special master without the consent of all parties, such appointment would not be a one size fits all solution.  Special masters do not have the power to conduct jury trials absent all parties' consent.   While counsel for the class may have waived the class' right to a jury, each claimant will be entitled to demand one and class counsel's waiver in all likelihood will be unenforceable as to individual claimants.  At this juncture, there is no way to even estimate how many claimants will exercise that right.

For the foregoing reasons, the class should be decertified in all respects.

Respectfully submitted,

Michael A. Cardozo

Cc:     All Counsel

---

[1] The United States estimates that 2200 applicants would meet the definition of Delay or Non-Hire Claimant.  June 24, 2011 Letter to Court regarding Eligibilty Criteria,  Dkt # 651, p. 8.