U.S. Department of Justice

Civil Rights Division

---

LK:MLB:EKB:JMS:AKT:BS  
DJ 170-51-358

*Employment Litigation Section - PHB*  
*950 Pennsylvania Ave, NW*  
*Washington DC 20530*  
*www.usdoj.gov/crt/emp*

June 27, 2011

Honorable Nicholas G. Garaufis  
United States District Court  
  for the Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York  11201

**Re:   United States v. City of New York, et al., 07-CV-2067 (NGG)(RLM)**

Dear Judge Garaufis:

The United States respectfully submits this letter to respond to the June 24, 2011 letter filed by the City of New York ("City") (Dkt. 652). The United States submits this response to address two issues: (1) the City's failure to explain any of the potential effects of decertifying the Plaintiffs-Intervenors' class action; (2) the City's speculative assertions regarding the "likely difficulties of managing the class action" in the remedial phase under Fed. R. Civ. P. 23(b)(3).

As to the first issue, the Court directed the City to file a brief "explaining how *Wal-Mart* affects the Court's Liability Phase Class Certification Order" by June 24. Dkt. 648 at 2. Although the City's letter states that the class should be decertified based on *Wal-Mart*, the City does not address the potential consequences that a decertification order regarding the liability phase class may have on this case. For example, the City fails to discuss whether, assuming that the requirements of Rule 23(b)(3) were otherwise met, certification of a (b)(3) class for purposes of liability (along with the required notice and opt-out procedures) would be appropriate now, after the Court has already determined liability.

The United States' ability to seek make-whole relief for individual victims of the City's disparate impact discrimination would be unaffected by a decertification order.[1] Therefore, it

---

[1] For example, even assuming for the sake of argument that the Court decertified the Plaintiffs-Intervenors' make-whole remedial relief class claims, the United States could still serve as the plaintiff with respect to make-whole remedial relief (backpay, priority hiring and retroactive seniority) during the remedies phase without compromising the rights of individual victims of the City's discrimination and without compromising all parties' interest in the finality of the Court's judgment as an adjudication of the rights of all persons whose interests it affects. The claims process contemplated by the Court calls for an eligibility determination to be made for each claimant and for the establishment of a procedure in which claimants can object to eligibility determinations made by the United States. Such a procedure would satisfy Section 703(n) of Title VII, which precludes a collateral attack on the Court's judgment provided that all

would appear that the effect of decertification of the liability phase class would most directly impact the claims for relief asserted solely by the Plaintiffs-Intervenors (non-economic damages and additional injunctive relief as set forth in Dkt. 596). The United States respectfully suggests that the parties who have a legal interest in these claims should address the potential consequences of decertification in the first instance. If the City and/or the Plaintiffs-Intervenors subsequently brief the Court regarding potential consequences of a decertification order, the United States respectfully requests the opportunity to respond to such briefs.

Regarding the second issue, the City argues that one consideration in determining whether a class should be certified in the remedies phase under Rule 23(b)(3) is "the likely difficulties in managing a class action." Dkt. 652 (quoting Fed. Civ. P. 23(b)(3)(D)). The City supports this argument by asserting that, based on the Court's June 6 Order, "the fact that the Court is considering appointment of a Special Master to make thousands of individualized determinations is strong evidence that the individualized determinations are so unmanageable that class action treatment is not superior to the other available methods of fairly and efficiently adjudicating the claims." Dkt. 652 at 3. These arguments are premature and speculative. In its June 6 Order, the Court established a briefing schedule under which the parties are to address several issues identified by the Court relating to the organization and management of the claims process in the remedial phase. Dkt. 640 at 45. Following the June 21 litigation management conference, the parties met and conferred on June 22 regarding various issues relating to the claims process that will be addressed in that briefing, which is now due on July 8 pursuant to the Court's June 22 Order. Dkt. 648 at 5. The parties agreed to have follow-up discussions on these issues on June 27 and/or June 28. The City's June 24 letter therefore makes assumptions about the scope of discovery that will be required and the procedures applicable to the claims process that are unwarranted given that the parties are continuing to discuss those issues to evaluate areas of agreement and to prepare their July 8 submissions.

Additionally, the Rule 23(b)(3) arguments in the City's June 24 letter assume that the Court will require individual hearings for each potential claimant regarding the fact-specific comparison of the intangible aspects of the claimant's job versus a firefighter job with the Fire Department of New York ("FDNY"). This argument appears to be based on the City's view that Plaintiffs-Intervenors are seeking class certification for purposes of individualized determinations of eligibility for, or amounts of, compensatory damages. However, the Plaintiffs-Intervenors argue in their June 24 letter that class-wide calculation and pro-rata distribution of compensatory damages is still appropriate under *Wal-Mart* and advocate for class certification under a more standardized approach. Dkt. 650 at 2-5. *See also* Dkt. 643 at 3 (defining non-economic loss class for which Plaintiffs-Intervenors seek certification).[2] Under this approach,

---

individuals whose interests may be affected were provided with notice and an opportunity to object as part of the claims process. *See* 42 U.S.C. § 2000e-2(n). If the Court determines that the injury for which the Plaintiffs-Intervenors seek compensatory damages is compensable and that it can be valued in the manner advocated by the Plaintiffs-Intervenors, that relief could be distributed under the same claims process.

[2] If the Plaintiffs-Intervenors seek to amend their request for class certification, the United States respectfully requests an opportunity to respond in writing to any request that class certification

2

according to the Plaintiffs-Intervenors, it would be unnecessary to evaluate each individual claimant's state of mind and the intangible aspects of his or her job during the damage period. *Id.* at 4. If the Court determines that compensatory damages may be awarded in this manner, then the City's arguments about the highly individualized nature of these hearings, as well as the effect of these hearings on the manageability and commonality of the class claims, may be moot.

Sincerely,

Eric K. Bachman
Senior Trial Attorney
(202) 305-7883
Civil Rights Division
United States Department of Justice

Elliot Schachner (EKB)
Assistant U.S. Attorney
Eastern District of New York
(718) 254-6053

be expanded to include issues encompassing each individual class member's eligibility for relief and/or the amount of any relief due to individual class members.