U.S. Department of Justice

Civil Rights Division

DK:MLB:EKB:JMS:AKT:BS
DJ 170-51-358

*Employment Litigation Section - PHB*
*950 Pennsylvania Ave, NW*
*Washington DC 20530*
*www.usdoj.gov/crt/emp*

July 15, 2011

Honorable Nicholas G. Garaufis
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **United States v. City of New York, et al., 07-CV-2067 (NGG)(RLM)**

Dear Judge Garaufis:

In accordance with the Court's June 22, 2011 Order (Dkt. 648) and the Court's July 8, 2011 Order granting an extension of time, Plaintiff United States of America ("United States") respectfully submits revised notice documents and a proposed order on behalf of all parties. The parties propose the following attached documents:

1. Notice of the Claims Process (Exhibit 1)
2. Claim Form with Instructions (Exhibit 2)
3. Notice of the Class Action (Exhibit 3)
4. Opt-out Form (Exhibit 4)
5. Notices for Newspaper and Radio Publication (Exhibit 5)
6. Proposed Order Governing the Distribution of Notice (Exhibit 6)

Pursuant to the Court's June 22, 2011 Order (Dkt. 648) and the Court's July 8, 2011 Order granting an extension of time, each party's objections to the contents of each notice document are set forth herein.

**Notice of the Claims Process (Exhibit 1)**

Position of the City

The City proposed that both the revised claims notice and the class notice should include language about the Plaintiffs-Intervenors' decision regarding jury trials. In the current drafts, that language appears only in the class notice. However, the claims notice, a hybrid document, includes information not only about the United States' claims, but also about the class claims. In fact, it affirmatively states that "Your rights and options [referring to the class claims as well] are explained in this notice." If the United States omits an explanation of the class members' right to opt out in light of class counsel decision to waive all jury trial rights, then the claims notice is misleading and the opt out might be subject to challenge. As an alternative, the United States

could remove all information about the class action from the revised claims notice. This alternative would be consistent with the parties' agreement to separate out the class action claims from the notice of the claims process.

Position of the United States and Plaintiffs-Intervenors

The United States and Plaintiffs-Intervenors disagree that the language about subclass representatives' decision regarding jury trials belongs in the Notice of the Claims Process. During the meet and confer process following the June 21, 2011 conference with the Court, the parties agreed to separate out the class action claims from the Notice of the Claims Process in order to render the notice less confusing. As such, the parties now propose a Notice of the Claims Process and a separate Notice of Class Action. Although the Notice of the Claims Process mentions the existence of class action claims, this notice does not discuss the class claims in detail; the Notice of Class Action serves that purpose. Indeed, the only relief set forth in the Notice of Claims Process is that to which all victims of the City's discrimination may be eligible (backpay, priority hiring relief, and seniority awards); the class members' claim to compensatory damages is not referenced. Because the Notice of Class Action discusses the class claims in detail, that is the proper document in which to reference the subclass representatives' decision regarding jury trials. Because the Notice of the Claims Process lacks any detailed discussion of the class claims, the United States and Plaintiffs-Intervenors believe that the subclass representatives' decision regarding jury trials should not be referenced there.

**Claim Form with Instructions (Exhibit 2)**

Position of the City

The City proposed adding a section regarding Educational Background on the claim form. Educational attainment would be relevant to eligibility for priority hiring, as well as to mitigation. The inclusion of a grid such as the one below would not significantly lengthen the claim form and may eliminate the necessity for a second mailing for some claimants.

Educational Record (List all schools attended beginning with high school. If you have a high school equivalency certificate, indicate year issued)

| Schools and Colleges Attended | Full Address of School | Dates Attended | Highest Class Completed | Diploma or Degree |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

The City contends that it is in the interest of all parties to gather the information for the claims process as efficiently as possible. As the parties know that this information will be needed for priority hiring decisions and mitigation issue, it makes no sense to delay requesting it until the Court makes determinations of the eligibility.

2

Position of the United States and Plaintiffs-Intervenors

      The United States and Plaintiffs-Intervenors disagree with the City's proposal that the claim form include a section on education. On July 1, 2011, the United States and the Plaintiffs-Intervenors objected to the City's proposal that high school graduation and/or GED attainment should constitute additional eligibility criteria. (Dkt. 657.) Given that the Court has not yet resolved the parties' dispute on eligibility criteria, the United States contends that the claim form should not include questions about education. Moreover, the proposed order regarding distribution of the notice allows the parties to propose new notice documents to the Court, if necessary, following the Court's decision on eligibility requirements.

      The United States and Plaintiffs-Intervenors also disagree with the City's contention that "the parties know that this information will be needed for priority hiring decisions and mitigation issue." The claim form will not be used to determine whether a claimant seeking priority hiring relief should actually be hired by the City, but rather whether he may be eligible to be considered for hire. As the parties agreed in the Joint Statement Regarding Relief Phase Issues:

> [A] determination by the Court, as set forth in the Final Relief Awards List, that a claimant is <u>eligible</u> for priority hiring relief will indicate only that the claimant may be considered by the City for priority hiring, not that the claimant will be hired or is currently qualified for hire. The parties expect that a determination regarding an eligible claimant's current qualifications will be made when (or shortly before) the City is prepared to begin an academy class into which priority hires will be appointed.

(Dkt. 400-1 at 29-30.) Because the City will examine the current qualifications of claimants who are eligible for priority hiring relief after the Court determines their eligibility for consideration for such relief, the claim form should not seek information about education.

      Additionally, the City's contention that educational information is relevant to mitigation is premature given the parties' dispute regarding the scope of discovery on mitigation. In its Brief on the Organization and Management of the Claims Process (filed July 15, 2011), the United States contends that the City has waived its affirmative defense that claimants failed to mitigate their damages. As such, the United States' position is that only a claimant's interim earnings should be taken into account in determining mitigation. Plaintiffs-Intervenors join that position, as set out in the brief they will file today regarding the claims process. Because the Court has yet to determine the proper scope of discovery on mitigation, the United States and Plaintiffs-Intervenors contend that the claim form should not include educational requirements.

      Finally, the City's contention that collecting this information on the claim form will increase efficiency in the claims process is unsupportable. There is no question that, if additional mitigation or eligibility discovery is permitted, additional discovery from all eligible claimants will be required, and the educational data can be sought at that time. If that discovery is not permitted, the information is not needed until claimants who are eligible for priority hiring are considered by the City for a job offer, at which time they will be required to go through the City's background investigation process and provide this information. Therefore, the only thing accomplished by

3

adding these criteria to the claim form is that the information will be collected (and must be processed by the United States) for thousands of claimants who are not eligible for individual relief.

**Notice of Class Action (Exhibit 3)**

<u>Position of the United States</u>

Based on the Court's July 8 Order, the United States notes its concern with the following language proposed by Plaintiffs-Intervenors in the Notice of Class Action: "The Subclass lawyers will represent you with respect to the noneconomic advantages of the job and will represent eligible Class members in their claims for compensatory damages, including helping claimants obtain a money award." The United States understands the Court's July 8 Order to hold that no class exists with respect to the amount of compensatory damages due to black claimants, nor with respect to black class members' individual eligibility for any relief (compensatory damages, backpay, retroactive seniority, and/or priority hiring). (Dkt. 665 at 34-35, 55-57.) As a result, because the United States did not assert any claim that would entitle it to seek compensatory damages on behalf of any claimant, class members who seek awards of compensatory damages lack representation by any party or counsel in this case. This raises substantial questions regarding the process for resolving compensatory damages claims that will require resolution. However, the United States does not believe it is presently appropriate for the Notice of Class Action to state that class counsel will represent class members in their claims for compensatory damages. The Plaintiffs-Intervenors propose in their brief regarding the claims process filed today (Dkt. 676), and reiterate in their position in this letter, that they – as subclass counsel – will provide individual representation to black claimants who seek compensatory damages. The United States will respond to this proposal when it files its response to the Plaintiffs-Intervenors' brief on July 22, 2011.

Additionally, the Plaintiffs-Intervenors also argue that they – as subclass counsel – can appropriately represent individual black claimants with respect to issues of mitigation if the court determines that discovery beyond interim earnings is appropriate. This suggestion is outside the scope of this submission, which is supposed to relate to objections to the various notice documents attached hereto. Nothing in the Plaintiffs-Intervenors' class notice relates to representation of individual black claimants with respect to mitigation. The United States has not had an appropriate opportunity to respond to this argument since it only received the Plaintiffs-Intervenors' argument late today. The United States intends to respond to this argument on July 22 in its response to the Plaintiffs-Intervenors brief regarding the claims process.

<u>Position of the City</u>

In view of the Court's July 8 Order, the City agrees with the United States that it would be inappropriate to include the following language in the class notice: "The Subclass lawyers will represent you with respect to the noneconomic advantages of the job and will represent eligible Class members in their claims for compensatory damages, including helping claimants obtain a money award."

Position of the Plaintiffs-Intervenors

First, the Subclass Representatives for both the Non-Hire Subclass and the Delayed-Hire Subclass have conferred with counsel for each Subclass and have opted to waive the right to a jury trial on remedial-phase issues on behalf of their respective Subclass members. Notice of that waiver is provided to absent class members in the proposed Notice of Class Action.

Second, counsel for the Non-Hire Victim Subclass (Levy Ratner) and Delayed-Hire Victim Subclass (the Center for Constitutional Rights) propose that they will provide representation to individual black claimants who request assistance with respect to their claims for compensatory damages. Once the Court has determined which black claimants are eligible for individual relief, those claimants will go through a separate process in front of the Special Master(s) to determine the extent of their noneconomic losses and the amount of money to which they are entitled. We are concerned that it would be very difficult for individuals to negotiate that process without the assistance of counsel, particularly where the City is represented by lawyers familiar with this matter. Nor would it be efficient, in terms of cost or time, for each of the eligible black claimants to retain his or her own attorney.

As we explain in greater detail in the Subclass Representatives' Memorandum of Law Regarding the Claims Process (*see* Issue Six, at p. 11), there is no risk of potential conflicts among the eligible black claimants as to their recovery for noneconomic losses. The City's proposal that each individual black claimant be required to take affirmative steps to locate counsel for the noneconomic damages hearings would convert the Notice of Class Action into an impediment on claimants' participation in this process. Of course, as always, if a subclass member wishes to retain her own counsel with respect to any issue, she may do so.

Third, with respect to mitigation, as noted above the Plaintiffs-Intervenors take the position that there should be no individualized inquiry as to a claimant's mitigation efforts since the City did not raise an affirmative defense of failure to mitigate. We share the United States' position that mitigation should be based solely on actual interim earnings as revealed by Social Security Administration records. If, however, the Court decides to permit such an inquiry, counsel for the Subclasses propose to represent individual eligible black claimants in any hearings that are necessary concerning each claimant's efforts to mitigate backpay losses. As is the case with respect to noneconomic losses, there is no conflict among the members of the Subclasses with respect to mitigation of backpay losses, because the extent of one individual's mitigation does not increase or reduce another individual's level of recovery.

If mitigation efforts are to be an issue, claimants will need the assistance of counsel in order to prepare themselves to explain and provide evidence in support of their job-seeking efforts, including such issues as their reasons for opting to go to school full- or part-time, or their care-taking obligations at home (which might have been compatible with a firefighter's schedule of 2 days per week, but would have prevented other types of interim employment). These and other circumstances would affect a claimant's ability to obtain mitigating employment at one point or another over the past nine to twelve years. Claimants should not be expected to assemble all the relevant evidence and make all of the available arguments on their own. Levy Ratner and the Center for Constitutional Rights represent these individuals with respect to their Subclass claims, and these firms are a natural fit for the representation needed here. Nor can the

United States fill this role, as it represents the interests of the Government, not those of any particular black claimant. For the reasons discussed above with respect to compensatory damages, we do not believe that asking claimants to retain hundreds of separate counsel is an efficient or practical course of action.

**Notices for Newspaper and Radio Publication (Exhibit 5) & Proposed Order Governing the Distribution of Notice (Exhibit 6)**

Position of the City

The City is concerned about the impact that publishing radio and newspaper ads referring to hiring discrimination will have on the recruitment campaign for Exam No. 2000. There will be simultaneous ads with conflicting messages, i.e. recruitment ads trumpeting the desirability of the job and claims notice ads with a message that the FDNY discriminates against blacks and Hispanics. Such a mixed message could negatively impact the recruitment effort. As the application period for Exam No. 2000 is scheduled to end on September 15, defendants respectfully suggest that the parties move ahead with the direct mailing of claims forms, but defer the start of the advertisements for the claims process at least until after the recruitment campaign ends in mid-September. At that time, responses to the direct mailing may also provide a better idea of where to target the advertisements. As an alternative, the parties could defer both the mailing of claims notices and the ad campaign until the completion of the recruitment campaign for Exam No. 2000. The selection of that alternative, however, would necessitate an extension of the claims filing period.

Position of the United States

Although the United States is mindful of the importance of the current recruitment effort, the United States is concerned that delaying advertising of the claims process will result in some black and Hispanic applicants being unable to claim eligibility for relief. The United States has undertaken extensive efforts to locate all black and Hispanic applicants who took Written Exam 7029 and/or Written Exam 2043. Unfortunately, however, we have been unable to obtain current mailing addresses for all 7,100 applicants to whom the notice documents will be mailed. As such, newspaper and radio advertisements are crucial tools to reach as many applicants as possible and encourage them to contact the United States to obtain the notice documents.

The timing of these advertisements is also important given that claim forms will be due within 45 days after the City mails the notice documents. The proposed order governing distribution of notice states that advertisements will begin on the day the City mails the notice documents. These advertisements will help ensure that applicants look for their notice documents to arrive in the mail and contact the United States early, in the event they do not receive the notice documents. Under the City's proposal, however, the deadline for returning claim forms may have already passed before advertising could even begin on September 15.

The City's proposed alternative that the claim form mailing and the advertising campaign be postponed until after the Exam 2000 recruitment period is inconsistent with the Court's decision on June 6 directing that the claimants be given notice, and the claims process begin, as soon as possible. (Dkt. 640 at 44.) Additionally, during the July 11 hearing regarding the Plaintiffs-Intervenors'

motion to reduce the filing fee for Exam 2000, the Plaintiffs-Intervenors represented that they may seek an extension of the recruitment period for Exam 2000 during the upcoming trial regarding injunctive relief. Were that to occur, a decision to defer the claims process until after the recruitment period for Exam 2000 closes could be an indefinite deferral, which the United States opposes.

Sincerely,

*Jennifer M. Swedish*

Jennifer M. Swedish
Trial Attorney
Civil Rights Division
United States Department of Justice
(202) 305-4069

*Elliot Schachner /jms*

Elliot Schachner
Assistant U.S. Attorney
Eastern District of New York
(718) 254-6053