Civil Action No. 07 CV 2067 (NGG) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-and-

VULCAN SOCIETY, INC., for itself and on behalf of its
members; MARCUS HAYWOOD, CANDIDO NUNEZ,
and ROGER GREGG, individually and on behalf of a
class of all others similarly situated,

Plaintiffs-Intervenors,

-against-

CITY OF NEW YORK; THE FIRE DEPARTMENT OF
THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES; MAYOR MICHAEL BLOOMBERG and
NEW YORK CITY FIRE COMMISSIONER
NICHOLAS SCOPPETTA, in their individual and
official capacities,

Defendants

---

## DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW CONCERNING PLAINTIFFS-INTERVENORS' MOTION FOR ADDITIONAL INJUNCTIVE RELIEF

---

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*


*Tel: (212) 788-1247*
*Law Dept. No.: 2007-017441-LE*

# TABLE OF CONTENTS

**Page**

Table of Cases.................................................................................i

ARGUMENT ................................................................................ 1

POINT I ......................................................................................... 1

THE RELIEF PLAINTIFFS-INTERVENORS ARE REQUESTING CANNOT
BE GRANTED BECAUSE IT EXCEEDS THE SCOPE OF THE LEGAL
VIOLATION BOTH BEFORE THE COURT AND ADJUDICATED BY THE
COURT ........................................................................................... 1

POINT II ........................................................................................ 6

BOTH FEDERAL AND STATE LAW COUNSEL AGAINST COURTS
MICROMANAGING LOCAL GOVERNMENT OPERATIONS ....................... 6

      A.   Principles Of Federalism Require Denying
           Plaintiffs-Intervenors' Request For Injunctive
           Relief................................................................... 6

      B.   Federal and State Principles of Governance
           Require that Courts Not Usurp and
           Micromanage Local Government Operations. ................ 9

POINT III........................................................................................ 12

THE FACTS OF THIS CASE DO NOT WARRANT THE RELIEF SOUGHT
AS THE ACTIONS OF THE FDNY MEET OR EXCEED THE REMEDY
REQUESTED .................................................................................. 12

      A.   Recruitment Activities ...................................... 12

      B.   The Fire Cadet Program................................... 14

      C.   Changes to the Candidate Screening Process ............. 14

      D.   Equal Employment Opportunity................................ 16

      E.   Appointment of a Special Monitor ........................... 16

CONCLUSION.................................................................................18

## TABLE OF CASES

**Cases** <span style="float:right">**Pages**</span>

ACORN v. Edgar,
   56 F.3d 791 (7th Cir. 1995)............................................................................10

Al-Alamin v. Gramley,
   926 F.2d 680 (7th Cir. 1991)...........................................................................4

Association of Surrogates & Supreme Court Reporters v. New York,
   966 F.2d 75 (2d Cir.), modified, on reh'g, 969 F.2d 1416 (2d Cir. 1992)........................6

Beazer v. New York City Transit Authority,
   440 U.S. 568......................................................................................16

Committee for First Amendment v. Campbell,
   962 F.2d 1517 (10th Cir. 1992).........................................................................8

Dean v. Coughlin, 804 F.2d 207
   (2d Cir. 1986)......................................................................................9

EEOC v. Harris Farms, Inc.,
   2005 U.S. Dist. LEXIS 37399 (E.D. Cal. Sept. 30, 2005)..........................................4

EEOC v. HBE Corp.,
   135 F.3d 543 (8th Cir. 1998).........................................................................4, 15

Hayes v. North State Law Enforcement Officers Ass'n,
   10 F.3d 207 (4th Cir. 1993)...........................................................................4

Horne v. Flores,
   ___ U.S. ___, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009)..........................................3

Jones v. Beame,
   45 N.Y.2d 402 (1978)...............................................................................10

Knox v. Salinas,
   193 F.3d 123 (2d Cir. 1999)...........................................................................8

Lewis v. Casey,
   18 U.S. 343,116 S. Ct. 2174 135 L. Ed. 2d 606 (1996)........................................3, 7, 8

Milliken v. Bradley,
   433 U.S. 267, 97 S. Ct. 2749, 53 L. Ed. 2d 745(1977)........................................3, 6

Missouri v. Jenkins,
    495 U.S. 33, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1990)……………………….....................6

Missouri. v. Jenkins,
    515 U.S. 70, 111-114 (1995).…………………………………………………….……...3

Morrow v. Harwell,
    768 F.2d 619 (5th Cir. 1985).………………………………………………….……8

Newark Branch, NAACP v. Harrison,
    940 F.2d 792 (3d Cir. 1991).………………………….....................................................5

Patrolmen's Benevolent Ass'n of N.Y. v. City of New York,
    2000 U.S. Dist. LEXIS 15179,
    97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), (S.D.N.Y. Oct. 13, 2000),
    aff'd. on other grounds, 310 F.3d 43 (2d Cir. 2002)…………………….....................10

Portland Police Assoc. v. City of Portland,
    658 F.2d 1272 (9th Cir. 1981).……………………......................................................10

Rajender v. University of Minnesota,
    546 F. Supp. 158 (D. Minn. 1982)……………………….............................................5

Reynolds v. Roberts,
    251 F.3d 1350 (11th Cir. 2001).……………………....................................................4

Rizzo v. Goode,
    423 U.S. 362, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).……………….....................3, 6

Rogers v. 66-36 Yellowstone Boulevard Coop. Owners,
    599 F. Supp. 79, 83-84 (E.D.N.Y. 1984) ).………………….....................................4

Schwartz v. Dolan,
    86 F.3d 315, 319 (2d Cir. 1996).…………………….............................................6, 8

Society for Good Will to Retarded Children, Inc. v. Cuomo,
    737 F.2d 1239, 1251 (2d Cir. 1984).……………………..............................................4

Swann v. Charlotte-Mecklenburg Bd. of Educ.,
    402 U.S. 1, 16 (1971).…………………….................................................................3

Todaro v. Ward,
    565 F.2d 48 (2d Cir. 1977).…………………….........................................................6

Tully v. Griffin, Inc.,
    429 U.S. 68, 97 S. Ct. 219, 50 L. Ed. 2d 227 (1976).……………….....................6

<u>Tyler v. City of Manhattan</u>,
    857 F. Supp. 800 (D. Kan. 1994)…………………........................................8

<u>United States v. City of New York</u>,
    683 F. Supp. 2d 225, 254-55 (E.D.N.Y. 2010)………………….....................................1

<u>United States v. City of New York</u>,
    Slip Op. (E.D.N.Y. 07-CV-2067 (NGG)(RLM))
    July 23, 2008, filed July 25, 2008, Docket No. 182)………………….....................2, 15

<u>Youakim v. McDonald</u>,
    71 F.3d 1274 (7th Cir. 1995), <u>cert. denied</u>,
    518 U.S. 1028, 116 S. Ct. 2571 (1996)………………….....................................7

Pursuant to this Court's Order of June 6, 2011, Defendants respectfully submit this memorandum of law in advance of the bench trial to be conducted concerning Plaintiffs-Intervenors' motion for further injunctive relief.  The relief Plaintiffs-Intervenors are requesting must be denied because it exceeds the scope of the claims found in the Complaint and exceeds the scope of the violations adjudicated by the Court.  Moreover, even if the issues encompassed by Plaintiffs-Intervenors' requested relief were properly before the Court, principles of Federalism, and State principles of judicial restraint, require the Court to deny the relief sought because the proposed remedies would improperly impose and impinge upon the operation of local government.

## ARGUMENT

### POINT I

### THE RELIEF PLAINTIFFS-INTERVENORS ARE REQUESTING CANNOT BE GRANTED BECAUSE IT EXCEEDS THE SCOPE OF THE LEGAL VIOLATION BOTH BEFORE THE COURT AND ADJUDICATED BY THE COURT

This Court previously declared that "[t]he issue in this case is not whether the City recruited enough black applicants, but whether the screening and ranking procedure that the City applied to those applicants was racially discriminatory." United States v. City of New York, 683 F. Supp. 2d 225, 254-55 (E.D.N.Y. 2010).  The only claims of discrimination brought before this Court relate to the development of Examinations 7029 and 2043 and the rank order processing of candidates based on the results from those examinations.  Plaintiffs-Intervenors' Complaint did not contain any claims relating to FDNY's recruitment, personnel processing, or EEO investigation or training activities and no such claims have ever been adjudicated.  Indeed, in June 2008, Plaintiffs-Intervenors moved to amend their Complaint to add claims asserting

intentional discrimination via the "FDNY's use of two discretionary bodies – the Candidate Investigation Division and the Personnel Review Board – to review the background and character of candidates;…" See United States v. City of New York, Slip Op. at 4, (E.D.N.Y. 07-CV-2067 (NGG)(RLM) July 23, 2008, filed July 25, 2008, Docket No. 182). This Court denied that motion. Id. at 6.

Despite the fact that both the Complaint and this Court's adjudications have been narrow, the Plaintiffs-Intervenors' are requesting remarkably broad injunctive relief. Indeed, the relief they seek is so broad, and entails micro-management to such an extent, that Plaintiffs-Intervenors' are essentially requesting that certain operations of the New York City Fire Department be placed into Federal Court receivership. Among the demands Plaintiffs-Intervenors articulated in their most recent memorandum of law are:

> To order the FDNY to hire a "professional" recruitment consultant, presumably to replace the FDNY's Assistant Commissioner for Recruitment.
>
> To order the FDNY to hire a media consultant, presumably to replace the FDNY's current consultant.
>
> To order staffing assignments by requiring the FDNY to assign a set number of full time, full duty freighters to recruitment activities.
>
> To order what forms of recruitment advertising the FDNY must purchase and use, including requiring detailed reporting to Class Counsel on when and where advertising will be placed and to include either the advertisement or a detailed description for Class Counsel to review.
>
> To appoint a "Special Monitor" answerable to this Court to review personnel hiring and EEO decisions with which Plaintiffs-Intervenors disagree and then have this Court, rather than the Fire Commissioner make the final determination as to who will be a firefighter and what out come should result from the OEEO investigation.

To circumvent New York State Civil Service Law to reinstitute a Fire Cadet Program.

The degree of intrusion demanded by Plaintiffs-Intervenors, and unwarranted by the facts and evidence of this case, would be unjustifiable transgression into the authority of local government officials. Plaintiffs-Intervenors want themselves and this Court to act as the Fire Commissioner of the City of New York.

Although Plaintiffs-Intervenors are correct that under Title VII the Court's injunctive remedial powers are broad, those powers are not without limitation. The remedy must be tailored to the violation adjudicated. The Supreme Court has been unwavering in holding that a trial court exceeds its authority when it imposes remedies that go beyond the injury adjudicated in the litigation. Horne v. Flores, ___ U.S. ___, ___, 129 S. Ct. 2579, 2606, 174 L. Ed. 2d 406, 433-4 (2009) (statewide injunction not justified when the only violation claimed or proven was limited to a single district.); Lewis v. Casey, 518 U.S. 343, 357 (1996)("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); Milliken v. Bradley, 433 U.S. 267, 282 (1977)("Because of this inherent limitation upon federal judicial authority, federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution or does not flow from such a violation, …"); Rizzo v. Goode, 423 U.S. 362, 378-379 (1976)("the nature of the violation determines the scope of the remedy."); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16 (1971)("The nature of the violation determines the scope of the remedy").

As Justice O'Connor's concurring opinion in Missouri. v. Jenkins, 515 U.S. 70, 111-114 (1995) stated:

> The necessary restrictions on our jurisdiction and authority contained in Article III of the Constitution limit the judiciary's institutional capacity to prescribe palliatives for societal ills. The unfortunate fact of racial imbalance and

-3-

bias in our society, however pervasive or invidious, does not admit of judicial intervention absent a constitutional violation.... For now, it is enough to affirm the principle that "the nature of the desegregation remedy is to be determined by the nature and scope of the constitutional violation." Milliken II, supra, at 280.

The Second Circuit similarly instructs that injunctive relief should be narrowly tailored to fit the specific legal violations adjudged. Society for Good Will to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1251 (2d Cir. 1984). This holding is consistent with those of other Circuits. See Al-Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991)("even when a violation is found, the power of a federal court to issue injunctive relief is circumscribed by the nature and extent of the constitutional violation. Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation") (citations and internal quotation marks omitted); Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993)("An injunction should be tailored to restrain no more than what is reasonably required to accomplish its ends.")(citations and internal quotation marks omitted). See also, EEOC v. Harris Farms, Inc., 2005 U.S. Dist. LEXIS 37399 at *5-6 (E.D. Cal. Sept. 30, 2005)("the court's discretion in fashioning injunctive is not unlimited and provisions of an injunction may be improper 'if they are broader than necessary to remedy the underlying wrong.'" (citing EEOC v. HBE Corp., 135 F.3d 543, 557 (8th Cir. 1998)); Rogers v. 66-36 Yellowstone Boulevard Coop. Owners, 599 F. Supp. 79, 83-84 (E.D.N.Y. 1984)(The general equitable principle that injunctive remedies must correspond to the nature and the scope of the legal violation extends to cases arising under civil rights legislation.).

Plaintiffs-Intervenors' memorandum of law is less then forthright in purporting to cite cases where courts awarded relief beyond the bounds of the alleged violations in the Complaint. For example, the relief given in the cases of Reynolds v. Roberts, 251 F.3d 1350

(11th Cir. 2001) and <u>Rajender v. University of Minnesota,</u> 546 F. Supp. 158 (D. Minn. 1982) resulted from a settlement and a consent decree.  The other cases cited by Plaintiffs-Intervenors also involve a critical difference from the instant matter.

In all the cases cited by the Plaintiffs-Intervenors the additional measures being ordered did not previously exist in another form.  For example, in <u>Newark Branch, NAACP v. Harrison,</u> 940 F.2d 792 (3d Cir. 1991), the court invalidated a residency requirement which had the effect of excluding minorities.  Prior to the invalidation of the ordinance there had not been any town program aimed at recruiting minorities for town employment.  The court ordered that such efforts be undertaken.  The court's action in <u>Harrison</u> did not undermine local government efforts which had not been challenged or adjudicated violative of law.  Rather, the court directed the town to undertake efforts it had not previously pursued.  Moreover, it did not instruct the town concerning the details, let alone the minutia, of such efforts.  It was up to the town to decide how to comply with the court's order.

Here, Plaintiffs-Intervenors ask this Court to wrest control of a local government program from a local government where that program was not the subject of the litigation nor adjudicated deficient.  In this case no "wrong" has been found concerning the operation of the FDNY's Candidate Investigation Division (CID), Personnel Review Board (PRB), Office of Recruitment and Diversity (ORD), nor the Office of Equal Employment Opportunity (OEEO).  Indeed, it was not alleged in the Complaint.  Plaintiffs-Intervenors request goes far beyond seeking to remedy the underlying wrong this Court found in connection with the development and administration of, and rank order selection from the results of, Examinations 7029 and 2043.  Consequently, such a relief order would be improper and must be denied.

## POINT II

## BOTH FEDERAL AND STATE LAW COUNSEL AGAINST COURTS MICROMANAGING LOCAL GOVERNMENT OPERATIONS

### A.   Principles Of Federalism Require Denying Plaintiffs-Intervenors' Request For Injunctive Relief

Even if Plaintiffs-Intervenors had pled, litigated, and then the Court adjudicated, claims concerning recruitment and the FDNY's CID, PRB and Equal Employment Opportunity program, the Courts' authority to grant the relief Plaintiffs-Intervenors seek is still constrained by principles of federalism when, as here, the proposed remedy would impose or impinge upon the operation of local government.  The Second Circuit noted that

> federal courts have broad discretion in fashioning equitable remedies for [] constitutional violations. See Todaro v. Ward, 565 F.2d 48, 54 n.7 (2d Cir. 1977).  However, the equitable relief must be "commensurate with the scope of the constitutional infraction." Id.   Discretion to frame equitable relief is limited by considerations of federalism, and remedies that intrude unnecessarily on a state's governance of its own affairs should be avoided. See Milliken v. Bradley, 433 U.S. 267, 280-81, 97 S. Ct. 2749, 53 L. Ed. 2d 745(1977); see also Rizzo v. Goode, 423 U.S. 362, 379, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) ("appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief"). Federal courts must take care to exercise "a proper respect for the integrity and function of local government institutions," Missouri v. Jenkins, 495 U.S. 33, 50, 110 S. Ct. 1651, 109 L. Ed. 2d 31 (1990), and recognize the strong "need of a State to administer its own fiscal operations." Tully v. Griffin, Inc., 429 U.S. 68, 73, 97 S. Ct. 219, 50 L. Ed. 2d 227 (1976).

Association of Surrogates & Supreme Court Reporters v. New York, 966 F.2d 75, 79 (2d Cir.), modified, on reh'g, 969 F.2d 1416 (2d Cir. 1992).  See also Schwartz v. Dolan, 86 F.3d 315, 319 (2d Cir. 1996)(District Court overstepped its authority in prescribing a plan to remedy violations

and not allowing the state to propose its own plan in the first instance.)  And See, Youakim v. McDonald, 71 F.3d 1274, 1293 (7th Cir. 1995), cert. denied, 518 U.S. 1028, 116 S. Ct. 2571 (1996)(agency should have been afforded the first opportunity to remedy an alleged violation prior to imposition by the court of a remedy).

        In Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) the Court was confronted with an injunction issued concerning prison conditions.  The District Court issued a 25 page injunction which, inter alia, "mandated sweeping changes."  "It specified in minute detail the times that libraries were to be kept open, the number of hours of library use to which each inmate was entitled (10 per week), the minimal educational requirements for prison librarians …,the content of a videotaped legal-research course for inmates…and similar matters." Id., 518 U.S. at 347, 116 S. Ct. at 2178, 135 L. Ed. 2d at 615.  Although, the majority invalidated the injunction for reasons other than federalism, Justice Thomas noted in concurrence the manner in which the District Court's injunction offended federalism.  He wrote:

> The District Court's opinion and order demonstrate little respect for the principles of federalism, separation of powers, and judicial restraint that have traditionally governed federal judicial power in this area.  In a striking arrogation of power, the District Court sought to micromanage every aspect of Arizona's "court access program" in all institutions statewide, dictating standard operating procedures and subjecting the state system to ongoing federal supervision.

Id., 518 U.S. at 389, 116 S. Ct. at 2198 (Thomas, J., concurring).  The principles of federalism counsel that the City should be afforded the opportunity to improve by its own initiative.  The fact that some of the recruitment efforts were undertaken after this litigation began does not warrant judicial intervention.  It has been noted that:

> If a public entity makes dutiful progress to remedy asserted violations, whether or not it is encouraged to do so by the pendency of a lawsuit, a federal court should exercise

restraint. See <u>Morrow v. Harwell</u>, 768 F.2d 619, 626 (5th Cir. 1985). While a court may grant injunctive relief even though the allegedly unlawful conduct has abated, the moving party must satisfy the court that the relief is needed because there is some cognizable danger of recurrent violation. <u>Committee for First Amendment v. Campbell</u>, 962 F.2d 1517, 1525 (10th Cir. 1992).

<u>Tyler v. City of Manhattan</u>, 857 F. Supp. 800, 820 (D. Kan. 1994).   Plaintiffs-Intervenors' motion must be denied.

Thus, even if candidate evaluation, recruitment and EEO issues were properly before the Court, and even if violations had been found, an injunction should not issue at this time.   Rather, the City would need to be accorded the opportunity to attempt to remedy the alleged problems.   <u>See</u> <u>Schwartz</u>, 86 F.3d at 319.   <u>And see</u> <u>Knox v. Salinas</u>, 193 F.3d 123, 130 (2d Cir. 1999)("It is for the courts to remedy past or imminent official interference with constitutional rights; it is for the political branches of the State and Federal Governments to manage public institutions in such fashion that official interference with constitutional rights will not occur.")(internal quotation marks and brackets omitted), <u>quoting</u> <u>Lewis v. Casey</u>, <u>supra.</u>, 518 U.S. at 349.

The foregoing cases reflect the notion that local governments should be accorded the first opportunity to remedy violations.   In essence, after a court has pointed out and declared there to be a violation the local governments should be allowed to do its job and fix the problem. Plaintiffs-Intervenors would have this Court deny that right to the local government, the City of New York.   Indeed, under Plaintiffs-Intervenors' proposed order the FDNY will not be given a broad instruction to fix a problem, but will have control of some of its operations stripped away and placed in the hands of the Vulcan Society, Class Counsel, or a Special Monitor.

**B.     Federal and State Principles of Governance Require that Courts Not Usurp and Micromanage Local Government Operations.**

        Plaintiffs-Intervenors are essentially asking that the Court place the FDNY into a receivership concerning matters of recruitment, candidate background investigations, selection and equal employment opportunity activities. The Plaintiffs-Intervenors seek to have themselves judicially invested as paid consultants with authority over some FDNY operations, despite the fact that they, unlike elected and appointed officials, are not answerable to the general public. Such action is directly contrary to the Second Circuit's dictates. In <u>Dean v. Coughlin</u>, 804 F.2d 207, 213 (2d Cir. 1986) the Second Circuit admonished District Courts that:

> We have repeatedly been cautioned (1) not to use a sledgehammer where a more delicate instrument will suffice, (2) not to move too quickly where it appears that the state, in the exercise of its administrative authority, will in its own way adopt reforms bringing its system into compliance with the Constitution, and (3) to give the state a reasonable opportunity to remedy a constitutional deficiency, imposing upon it a court-devised solution only if the state plan proves to be unfeasible or inadequate for the purpose.

        In a similar fashion the Seventh Circuit invalidated a District Court's injunction which went beyond simply enjoining state officials from failing to comply with a federal "motor voter" law. The Circuit Court found that a limited injunction enjoining state officials from failing to comply with the law was proper, but struck down additional elements requiring the state to designate an official to be responsible for coordinating the state's compliance with the law, ordering the official be delegated all necessary powers to achieve compliance and setting forth detailed instructions concerning compliance. In vacating that portion of the injunction the Circuit Court declared that

> We are forced to the conclusion that the Department of Justice, in proposing such a decree, and the district judge, in entering it, failed to exhibit an adequate sensitivity to the

principle of federalism.   The value of decentralized government is recognized more clearly today than it has been for decades.  This recognition, born of experience, enables us (and not only us) to see that federal judicial decrees that bristle with interpretive difficulties and invite protracted federal judicial supervision of functions that the Constitution assigns to state and local government are to be reserved for extreme cases of demonstrated noncompliance with milder measures. They are last resorts, not first.  Since the State of Illinois, rather than seeking a declaratory judgment that the "motor voter" law is invalid, decided not to comply with the law, an injunction commanding compliance with it was a proper remedy, and of course a lawful one.  But until it appears that the state will not comply with such an injunction, there is no occasion for the entry of a complicated decree that treats the state as an outlaw and requires it to do even more than the "motor voter" law requires.

ACORN v. Edgar, 56 F.3d 791, 797-98 (7th Cir. 1995)( Posner, J.)(citation omitted).  Just as the detailed injunction against the State of Illinois was over intrusive into state government operations, so too the Plaintiffs-Intervenors' proposed injunction is too broad and invalid. Indeed, even state courts are wary of imposing 'solutions' on municipalities because of, among other reasons, the separation of powers quagmire into which courts would be drawn by such actions.  See Patrolmen's Benevolent Ass'n of N.Y. v. City of New York, 2000 U.S. Dist. LEXIS 15179, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), (S.D.N.Y. Oct. 13, 2000)(Scheindlin, J.) aff'd. on other grounds, 310 F.3d 43 (2d Cir. 2002)(citing Portland Police Assoc. v. City of Portland, 658 F.2d 1272, 1274 n.3 (9th Cir. 1981)).

The laws of the State of New York also counsel restraint in issuing injunctions against governments.[1]  In Jones v. Beame, 45 N.Y.2d 402, 408 (1978) New York State's highest Court stated:

---

[1]    Although Plaintiffs-Intervenors point out that the New York City Human Rights Law is to be broadly construed, they have not cited any cases suggesting that the New York City Human

> The interference of the Supreme Court with the details of municipal administration is not to be encouraged. These details are entrusted by the people to officers chosen directly or indirectly by themselves. These officers are criminally responsible for a willful neglect of their duties, and upon them the responsibility for the government of our cities should usually be allowed to rest. The Supreme Court is not so organized as to enable it conveniently to assume a general supervisory power over their acts; and indeed such an assumption by it would be contrary to the whole spirit and intent of our government.

Respect for the limitations of Federalism, deference to local government, and judicial restraint, argue against granting the intrusive relief the Plaintiffs-Intervenors demand. Moreover, as explained below the facts that will be adduced at trial will not support the broad relief Plaintiffs-Intervenors request.

---

Rights Law, or the New York City Council, can overrule the highest New York state Court concerning the scope of injunctions.

## POINT III

## THE FACTS OF THIS CASE DO NOT WARRANT THE RELIEF SOUGHT AS THE ACTIONS OF THE FDNY MEET OR EXCEED THE REMEDY REQUESTED

Even if this Court were to consider the facts underlying Plaintiffs-Intervenors' motion, which it need not do based on the scope of this case and principles of Federalism, there is no evidence to support placing FDNY's recruitment, personnel processing and EEO programs under Court supervision.[2]  The Defendants anticipate calling the person named below to testify concerning the FDNY's recruitment, personnel processing and EEO programs.

### A.    Recruitment Activities[3]

Plaintiffs-Intervenors state in great detail what actions they want the Court to order defendants to undertake with respect to recruitment activities.  Many of the programs Plaintiffs-Intervenors propose are already in place while their other suggestions are poorly

---

[2]   As Plaintiffs-Intervenors note in footnote 3 of their pre-trial memorandum of law, they also sought additional relief concerning the frequency of Firefighter examinations and funding for Vulcan Society and awards for the class representatives.  In footnote 3 Plaintiffs-Intervenors seek to preserve those issues for possible future adjudication.  Similarly, Defendants reserve their rights to oppose those requests as well as all others contained in Plaintiffs-Intervenors' motion for additional injunctive relief which are not the subject of the upcoming Court hearing.

[3]   Captain Washington and the Vulcan Society want the Court to issue an order committing the FDNY to a Goal of recruiting a Firefighter applicant pool that reflects the City's racial and ethnic demographics in the 18 to 29 year old age group.  Without question the FDNY wants to have a diverse firefighting force which mirrors the population.  But the FDNY cannot force people to become Firefighters.  FDNY cannot guarantee that it can reach the goal.  Rarely does a workforce or applicant pool ever perfectly match the racial composition of society or the community as a whole.  Does the bench and bar mirror the ethnic make-up of the City?  Moreover, some members of the population who are-age eligible will self select out because they know they do not meet some of the unassailably objective criteria for being a firefighter.  This self-selection will decrease the percentage of applicants below that of all age-eligible blacks in New York City.  No matter how effective the FDNY's recruitment efforts are, and no matter how positively an FDNY career is viewed in diverse communities, at the end of the day firefighting will not be everyone's career choice.

reasoned or unwise.   Plaintiffs-Intervenors seek to have the FDNY retain a professional consultant with experience and demonstrated success in minority recruitment in uniform titles. Defendants already have such a person in the person of Michele Maglione, the FDNY's Assistant Commissioner for Recruitment and Diversity.

Defendants intend to call Ms. Maglione to testify concerning the FDNY recruitments efforts.   She will recount her past experience and detail the efforts she made since 2006 when she took over leadership of the FDNY's Office of Recruitment and Diversity (ORD). Ms. Maglione will relate the results ORD obtained for the 2006 Recruitment campaign compared to preceding the 2002 campaign.   She will also describe the ongoing efforts for the current campaign.

Commissioner Maglione testimony will include a description of the ORD's use of social media and plans for its further development.   Commissioner Maglione will also testify of the FDNY's efforts to increase awareness among minority youth concerning the FDNY.

The Vulcan Society asks this Court to order the FDNY not simply to have a targeted media campaign, but to order that the FDNY purchase particular types of advertising. The Vulcan Society would even mandate where and how the advertising will appear and have the City ordered to report to Class Counsel as to when and where the advertising will be placed and to include either the advertisement or a detailed description.   Neither the Vulcan Society, nor Class Counsel, has proposed to submit any evidence that they have expertise in this area let alone more expertise than Ms. Maglione.   Ms. Maglione will detail the targeted media and face-to-face campaign that was conducted in 2006, and the one now underway, including thousands of events the ORD held in communities of color.

**B.      The Fire Cadet Program**

The Vulcan Society wants the Court to order reinstitution of the Fire Cadet Program.  The Fire Cadet program was established to recruit, and hopefully hire, firefighters of diverse backgrounds.  The intent was to have direct promotion from the Fire Cadet title to the Firefighter or even the EMT title.  Yet, for this to occur the Fire Cadet title needed to be classified by the New York State Civil Service Commission as a permanent "non-competitive" title so people could to enter the Fire Cadet title without first taking a civil service examination.  See New York State Civil Service Law § 20(2).  Although the City submitted an application to the State Civil Service Commission for creation of the non-competitive title of Fire Cadet, the New York State Civil Service Commission did not act on the classification request.  As such, the Cadet program offered no advantage either to the FDNY or prospective firefighter candidates.  Donay Queenan, Assistant Commissioner of FDNY Human Resources will testify that the City is again attempting to have the New York State Civil Service Commission grant the necessary approval to classify the Fire Cadet title as "non-competitive."[4]

**C.      Changes to the Candidate Screening Process**

Perhaps the foremost managerial prerogative is deciding who to hire.  Even New York State Civil Service Law provides the City with the discretion to select any one of the top three candidates on a civil service list, the so called "1 in 3 rule."  See New York Civil Service Law § 61(1).  As explained above, the investigation procedures of the FDNY's Candidate Investigation Division (CID) and the hiring procedures of the FDNY's Personnel Review Board

---

[4]   It should be noted that if the Court were to order the Fire Cadet program to be reinstituted, the Court would need to override New York State Civil Service Law by directing that promotions could be made from a position that the State Civil Service Commission declined to create in the classified civil service.  Such action would offend the most basic notions of federalism.

(PRB) have never been part of this litigation.  Indeed, this Court denied Plaintiffs-Intervenors'
request to amend their Complaint to add claims asserting intentional discrimination via the
"FDNY's use of two discretionary bodies – the Candidate Investigation Division and the
Personnel Review Board – to review the background and character of candidates;…" See United
States v. City of New York, Slip Op. at 4, 6, (E.D.N.Y. 07-CV-2067 (NGG)(RLM) July 23,
2008, filed July 25, 2008, Docket No. 182).  However, even if the law of the case, and the
requirement that injunctive relief be related to a violation actually established, did not preclude
entertaining Plaintiffs-Intervenors' request, see e.g., EEOC v. HBE Corp., 135 F.3d 543, 557
(8th Cir. 1998)("the court's discretion in fashioning injunctive relief is not unlimited
and provisions of an injunction may be improper "if they are broader than necessary to remedy
the underlying wrong."), the fact of the matter is that the essential request made by the Vulcan
Society is already the practice of the FDNY and this will be demonstrated by Defendants'
evidence.

  Thus, much of what the Plaintiffs-Intervenors want the Court to order the
defendants to undertake has been standard practice by the FDNY for years.  However, it must
always be recalled that a New York City Firefighter has "peace officer" status.  See New York
State Criminal Procedure Law § 2.10(28).  The New York State Executive Law § 296(16)
prohibits any inquiry about, or adverse action based upon, "any arrest or criminal
accusation…not then pending against that individual which was followed by a termination of
that criminal action or proceeding in favor of such individual,…"  However, that same section
allows consideration of such arrests or criminal accusations in relation to an "application for
employment as a police officer or peace officer."  The statutory exemption makes manifest the
State legislature's opinion that because of the powers entrusted to peace officers, close scrutiny

of their background is warranted, even consideration of arrests and summonses that did not result in conviction. Moreover, the Supreme Court has acknowledge that it is sometimes appropriate to exclude persons from employment based on reasons that would impact on safety. See Beazer v. New York City Transit Authority, 440 U.S. 568, 587, n. 31 (legitimate goal of safety and efficiency allowed exclusion of methadone users from safety sensitive positions).

**D.    Equal Employment Opportunity**

Plaintiffs-Intervenors seek to introduce information concerning isolated alleged discriminatory incidents. From these incidents they would extrapolate and argue that the FDNY tolerates discrimination and must be ordered not to retaliate against people involved in this litigation and people who may benefit from this litigation. They asserts that the FDNY's EEO office is ineffective, that an EEO training program be instituted and a "zero tolerance" policy put into place. As with many other of Plaintiffs-Intervenors' requests, they are not based on data or competent evidence.

There is no evidence in the record suggesting that the FDNY tolerates discrimination or that it has, or will retaliate, against persons involved in, or benefiting from, this litigation. Moreover, Defendants belief that the evidence show that the City has in place an effective EEO policy and EEO training procedure and therefore the Court need not impose the ill defined "zero tolerance" policy requested by the Plaintiffs-Intervenors. Further, the existence of a Citywide EEO office shows that the City is able to police itself and does not require the appointment and intervention of a special monitor.

**E.    Appointment of a Special Monitor**

Plaintiffs-Intervenors call for the appointment of a "Special Monitor." They would have the Court invest this Special Monitor with powers and prerogatives belonging to local government. Plaintiffs-Intervenors want the Special Monitor to review PRB decisions and

then make a recommendation to the Court, which shall then make a final determination whether a candidate is fit for FDNY firefighter employment.  Plaintiffs-Intervenors would invest the Special Monitor with the power to investigate any Complaint through fact finding, including requesting documents from, and interviewing personnel of, the FDNY.  The Special Monitor would be given the broad and amorphous "authority to take appropriate action to assist in the resolution of Complaints."

This procedure would trample on state sovereignty.  Under New York State law candidates who are disqualified from appointment can appeal to the City Civil Service Commission and seer Article 78 review of the Civil Service Commission decision.  Candidates who are considered but not selected can appeal that decision to the New York State Supreme Court via an Article 78 proceeding.  There is no justification for eliminating this state court remedy by providing an appeal to the Federal District Court.  Moreover, there is nothing in the record to warrant such actions.  There is neither a claim nor evidence, nor an adjudication that the practices and procedures of the PRB are unlawful.  Nor is there any evidence that the FDNY's Office of Equal Employment Opportunity is not capable of conducting investigations and resolving EEO Complaints.  Nonetheless, Plaintiffs-Intervenors ask that the Special Monitor be empowered to consider and investigate EEO Complaints, completely usurping the administrative EEO process.

## CONCLUSION

For the foregoing reasons defendants respectfully request that Plaintiffs-Intervenors' motion for additional injunctive relief be denied

Dated:      New York, New York
            July 22, 2011

                                    Respectfully Submitted,

                                    **MICHAEL A. CARDOZO**
                                    Corporation Counsel of the City of New York
                                    Attorney for Defendants
                                    100 Church Street
                                    New York, New York 10007
                                    (212) 788-0881


                          By: _____
                                       Michael A. Cardozo
                                       Corporation Counsel


Georgia M. Pestana,
William S.J. Fraenkel,
Patricia Miller
Kathleen Comfrey,

Of Counsel.

-18