# SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

120 BROADWAY • NEW YORK • NEW YORK 10271
TELEPHONE: (212) 732-9000
FACSIMILE: (212) 266-4141
SPBMC-NY@TrialLaw1.com
www.TrialLaw1.com

| | | | | |
|---|---|---|---|---|
| Robert G. Sullivan | David J. Dean | | Matthew J. Jones | Terrence L. Tarver |
| Nicholas Papain | Hugh M. Turk | | Deanne M. Caputo | Michael J. Wells |
| Michael N. Block | Albert B. Aquila | | Beth N. Jablon | Clifford S. Argintar |
| Christopher T. McGrath | Brian J. Shoot | | Liza A. Milgrim | Thomas J. McManus |
| Vito A. Cannavo | Andrew J. Carboy | PLEASE REPLY TO: | Susan M. Jaffe | Michael W. Lever |
| John F. Nash | Mary Anne Walling | | Donte O. Mills | Lauren M. Pennisi |
| Frank V. Floriani | Eric K. Schwarz | New York City Office | Jeffrey B. Bromfeld | Laura M. Schaefer |
| Marie Ng | Elizabeth Montesano | | Wendell Y. Tong | Joseph N. Armao |
| Eleni Coffinas | | | | |

| | | |
|---|---|---|
| John M. Tomsky | Hon. Joseph N. Giamboi (ret.) | August 5, 2011 |
| George J. Pfluger | Stephen C. Glasser | |
| *Counsel to the Firm* | *Of Counsel* | |

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East - Room 659
Brooklyn, New York  11201

    Re:  U.S.A. vs. The Vulcan Society, et al. and the City of New York
         Civil Action No.: 07-cv-2067 (NGG) (RLM)

Dear Judge Garaufis:

    The undersigned, attorneys for *amicus curiae*, the Uniformed Firefighters Association of Greater New York ("UFA"), submit this letter as a Motion to Intervene as a "Non-Aligned Party" in this litigation pursuant to F.R.C.P. Rule 19(1).

    We also make this motion pursuant to the Court's recent Order of July 27, 2011 (Docket Entry #696), together with a companion motion seeking an Order directing that any one who is eligible for priority hiring relief into the New York City Fire Department ("FDNY"), must take and pass the written portion of Exam No. 2000 before the claimant can be hired.[1]

## PRIOR MOTIONS TO INTERVENE

    The UFA has previously made two unsuccessful motions seeking to intervene as a party to this litigation.

    The first motion, Docket Entry #15, was made shortly after commencement of this action.  The UFA sought to intervene as a party

---

[1] The Court's July 27, 2011 Order directed that, before the UFA could pursue such relief, it must move to intervene and make a separate motion for the relief itself.

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 2 of 8

defendant in the liability phase of this case to protect the safety of firefighters and the public by preserving the concept of hiring firefighters based upon merit and fitness and rank order.

The motion was opposed both by the plaintiff, United States of America ("USA"), and the Plaintiff-Intervenors. However, both parties recognized that the UFA could or should be involved as a "non-liability" party in the remedy phase of the proceedings. Both parties understood that the UFA had a roll to play regarding the seniority rights of incumbent firefighters (Docket Entry #22, pp. 6-7 and 13-14; and Docket Entry #41, p. 1).

In an Order dated September 5, 2007 (Docket Entry #47), the Court denied the UFA's motion to intervene, but invited the UFA to participate as a friend of the Court regarding issues raised in the litigation, "particularly the safety of firefighters" (Docket Entry #47, p. 10). Indeed, the Court noted that the UFA "deserves a place at the bargaining table" with regard to any remedy affecting the safety of firefighters.

Thereafter, in my motion dated August 10, 2009 (Docket #303), the UFA again moved to intervene. This time we sought intervention as a party defendant in the remedy phase. That motion focused on the issue of retroactive seniority and the UFA's concern that incumbent firefighters not be unfairly disadvantaged by the grant of retroactive seniority to new and delayed hires for promotional and transfer purposes (Docket #303, pp. 4-5).

Again, the U.S.A. and Plaintiff-Intervenors opposed intervention by the UFA, but again recognized that the UFA should be permitted to intervene as a Non-Aligned Party pursuant to Rule 19 with regard to the issue of retroactive competitor seniority (Docket Entry #310, pp. 2-3 and Docket Entry #311).

The Court, however, in an Order dated September 24, 2009 (Docket Entry #327), denied the UFA's second intervention motion without prejudice to renewal. The denial was based upon the Court's concern that the UFA's position on retroactive seniority might adversely affect the approximately 645 black or Hispanic firefighters hired from written Exam Nos. 7029 or 2043. The Court stated that it needed an accurate answer from the UFA as to how it could intervene on the seniority issue without violating its obligation "to fairly represent the interests of all of its members" (Docket Entry #327, p. 3).

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 3 of 8

## THE CURRENT MOTION TO INTERVENE

In a letter dated July 25, 2011 (Docket Entry #689) addressed to the Court, the undersigned expressed the view of the UFA that the Court should require that all candidates eligible for priority hire in the remedy phase of this case, be required to take and pass written Exam No. 2000 before they could be considered qualified for employment as firefighters.

In response, the Court issued its Order of July 27, 2011 requiring that the instant motion be made.

The Court and the parties to this case have all previously recognized that the UFA, as the exclusive bargaining agent of all firefighters in the FDNY, has a valid interest in the safety of its members.

Fire fighting is a profession that requires both physical and mental skills. Firefighters nearly always work as a team in very dangerous situations and depend upon each other to intelligently respond to commands and to the challenges posed by the dangers they encounter.

The Court has noted that the three most recent FDNY hiring exams were discriminatory to black and Hispanic candidates. It has directed that the parties and their experts fairly and promptly develop a new entrance examination (Exam No. 2000) that is properly validated and will not have any illegal disparate impact upon any group of applicants. The Court has also previously recognized that any candidate seeking employment as a firefighter must take the physical portion of the new examination to prove that he/she is currently physically qualified to perform the job.

However, an open question remains regarding whether the approximately 293 candidates who are eligible for priority hiring are obligated to take their written portion of the new test.

Unlike the hiring examinations that have been declared invalid by the Court, the new test will presumably be job-related and consistent with business necessity. The experts working for the parties and Special Master Mary Jo White have expended much time and effort to see that the new test can withstand any challenge to its validity.

Nevertheless, it appears that at least the City and Plaintiff-Intervenors will urge that the Court permit the priority hiring of the eligible candidates who scored a minimum passing grade on the now

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 4 of 8

invalid prior examinations without the need for them to take and pass the new written test.

The UFA is concerned that the position being urged by the City and Plaintiff-Intervenors raises the spectre that the individuals receiving priority hiring may not be qualified for employment as firefighters because they lack the reading, mathematical, cognitive, social and other skills being evaluated by the new written examination.

The UFA is not seeking to penalize potential priority hires by making them take and simply pass the new test. Rather, it seeks to make sure that priority hires, at least minimally posses the job related skills that the new written exam is designed to identify.

Furthermore, it is unrealistic to believe that incumbent firefighters and new firefighters who have to take and pass the written portion of the new examination will not view a priority hire who was not required to take the exam with a certain degree of skepticism, beyond even that to be normally expected regarding people receiving priority hiring relief.

The UFA has and will always treat all of its members, whether or not they receive priority hiring relief, in an equal even-handed fashion. The UFA will also urge all its members to do the same. However, to create a subset of priority hires, receiving back pay and retroactive seniority who did not have to take the written portion of the new hiring test is, we submit, bad policy and likely to stigmatize the individuals benefiting from that relief. It seems a small price to require all priority hires to take and minimally pass the written portion of the new examination rather than create issues that can be divisive within the work place.

It is also clear that the City's interest and the interest of the Plaintiff-Intervenors do not, on this issue, coincide with the interest of the UFA. As already noted, those parties would require only those candidates for priority hire relief who did not pass the prior written examinations to take the new written test.

## THE DUTY OF FAIR REPRESENTATION

Finally, the Court has raised the question of whether the UFA can seek to have candidates for priority hiring take and pass a new written examination, without violating any duty to fairly represent all of its members.

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 5 of 8

Review of the relevant authorities makes clear that the UFA's position does not violate any duty of fair representation.

Unlike the UFA's stance on the issue of retroactive competitive seniority, which could have disadvantaged black and Hispanic firefighters who are "delayed hires," the UFA's position on the new written examination has no detrimental effect on any of its current members. The UFA's stance affects only candidates for hire, not incumbent firefighters. The UFA does not represent candidates for priority hiring and has no duty to represent them.

Moreover, even if one could argue that the UFA's position on the issue at hand somehow disadvantaged individuals owed a duty of fair representation by the union, the UFA could still properly advance the argument that all priority hires should take and pass the new written test.

In this case, the UFA has consistently focused upon the issue of the safety of its members and their ability to smoothly function at fires and other emergencies. The UFA's stance on the requirement that priority hires taking the written examination is simply a further example of the UFA's safety concerns. If priority hires are all required to take the written test, then all of them would have presumably demonstrated they possess the essential intellectual and social skills required of firefighters. If the written examination is waived for a portion of the priority hires, then doubt about their intellectual skills will unnecessarily arise.

Priority hires who are not required to take the written examination will be stigmatized as the sole group of new employees who never passed the new basic written test - the test that took nearly two years and millions of dollars to create.

Generally stated, in the private sector a union must fairly represent all employees in its bargaining unit to enforce the provisions of any collective bargaining agreement. They are required, with respect to those members:

> . . . to make an honest effort to serve the interests of all of those members, without hostility to any. [Ford Motor Co. v. Huffman, 345 U.S. 330, 337; 73 S. Ct. 681, 686 (1953).]

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 6 of 8

Similarly, the Supreme Court, referring to the duty of fair representation in Vaca v. Sipes, 386 U.S. 171, 87 S. Ct. 903 (1967), stated:

> Under the doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. (386 U.S. at 177, 87 S. Ct. at 910.)

However, the duty of fair representation is breached only when the conduct of the union is "arbitrary, discriminatory or in bad faith" [Airline Pilots Ass'n. Intern. v. O'Neill, 499 U.S. 65, 111 S. Ct. 1127, 1129 (1991)].

Case law makes clear that the duty of fair representation does not prevent the union from recognizing differences in seniority, skill level and other employment-related criteria among its member. Thus, in Ford Motor Co. v. Huffman, supra., the Court noted:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

> [12] Compromises on a temporary basis, with a view to long range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences

SULLIVAN PAPAIN BLOCK MCGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 7 of 8

> based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary. (345 U.S. at 338-39; 73 S. Ct. at 686.)

In New York, a similar duty of fair representation has been recognized to govern the actions of public sector unions, like the UFA, which are not governed by the National Labor Relations Act. Indeed, the Civil Service Law, Section 209-(a)(2)(c), explicitly codifies the duty of fair representation.

However, just as in the case on a national level, the New York duty of fair representation does not mandate that a union adopt policies that result in equal benefits for all its members. Particularly relevant to this issue is Matter of Civil Service Bar Ass'n. v. City of New York, 64 N.Y.2d 188, 485 N.Y.S.2d 227 (1984) involving a challenge by a group of union members to the decision by the union to settle a pay dispute with the City. The union had prevailed in a salary-related grievance arbitration. The employer appealed that award. Uncertain of the outcome of that appeal, the union agreed to settle the dispute for terms that, for some union members, were less generous than the arbitration award. Those members challenged the settlement asserting that the union had breached its duty of fair representation toward them. The Court of Appeals held that, as a matter of law, no such breach had occurred. It stated:

> Unions must have leeway to resolve their obligations to employees who have conflicting interests. As stated by the Supreme Court: "Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken to the collective bargaining and grievance processes." (Humphrey v. Moore, 375 U.S. 335, 349-350, supra.) Where the union undertakes

SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.

The Honorable Nicholas G. Garaufis
August 5, 2011
Page 8 of 8

>  a good-faith balancing of the divergent interests of its membership and chooses to forgo benefits which may be gained for one class of employees in exchange for benefits to other employees, such accommodation does not, of necessity, violate the union's duty of fair representation. (64 N.Y.2d at 197.)

In this case, the decision by the UFA to urge the requirement that all priority hires take and pass the written portion of Exam No. 2000, is made out of concern for the safety of all of its members. It represents a good faith balancing of the divergent interests of all firefighters versus the interests solely of those priority hires.

The UFA is acting in good faith when it seeks to intervene for the purpose of protecting the safety interests of its members. Intervention as a Non-Aligned Party on this issue will not conflict with any of the UFA's obligations.

Moreover, by permitting the UFA to intervene as a Non-Aligned Party, it will help insure that the UFA can properly protect the safety interests of its members [F.R.C.P. Rule 19(a)(1)(B)(i)].

Accordingly, we respectfully urge that the Court permit the UFA to intervene as a Non-Aligned Party in this remedy phase of the case.

Very truly yours,

SULLIVAN PAPAIN BLOCK
McGRATH & CANNAVO P.C.

By: _____
Michael N. Block

MNB:law
cc: All Counsel Via ECF
(F-068518)