UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

        Plaintiff,

        -and-

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members,* JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief,*

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated;* and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated,*

        Plaintiff-Intervenors,

     -against-

THE CITY OF NEW YORK,

        Defendant.

------------------------------------------------------------X

**REMEDIAL ORDER AND PARTIAL JUDGMENT, PERMANENT INJUNCTION, & ORDER APPOINTING COURT MONITOR**

**07-CV-2067 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

      In August 2011, the court held a bench trial on the need for, and the scope of, injunctive relief in this case. As the court explained in its October 5, 2011 Memorandum and Order (Mem. and Order (Docket Entry # 743)), the court's findings of fact from that trial (Docket Entry # 741) necessitate this Remedial Order and Partial Judgment, Permanent Injunction, and Order Appointing Court Monitor ("Remedial Order"). Further background on this case can be found in the court's decisions on disparate impact and disparate treatment liability. (Docket Entries ## 294 & 385.) In the court's October 5, 2011 Memorandum and Order, the court informed the parties of its intention

to issue a remedial order and gave the parties the opportunity to comment on the terms of the proposed order. (Mem. and Order at 1.) The parties' comments have been filed (see Docket Entries ## 744 & 745), and, having given those comments due consideration, the court issues the following Remedial Order.

IT IS HEREBY ORDERED THAT:

## I.    DEFINITIONS

1.    The following definitions apply to this Order.

2.    "This Order" refers to these Definitions (Part I), all terms of the Permanent Injunction the court imposes on the City of New York (Part II), all terms of the Order Appointing Court Monitor (Part III), the terms of the court's Retention of Jurisdiction (Part IV), and all terms of the assessment of Costs and Fees (Part V).

3.    "The Parties" are: the United States of America, by its counsel the United States Department of Justice; The Vulcan Society, Inc. and the Injunctive Relief Subclass (through its appointed individual representatives Jamel Nicholson, and Rusebell Wilson), by their counsel Levy Ratner, P.C., Scott + Scott LLP, and the Center for Constitutional Rights; and the City of New York, by its counsel the Corporation Counsel of the City of New York.

4.    "City of New York" and "the City" refer to all commissions, agencies, offices, bureaus, departments, divisions, elected and appointed officials, managers, employees, volunteers, paid and unpaid interns, independent contractors, and other agents of the City of New York, any person or entity over which any of the foregoing exercise direct or indirect control because of their affiliation with the City of New York, and any person or entity acting in concert or participation with any of the foregoing, and includes, without limitation, the following agencies of the City of New York:

(a)    "FDNY" refers to the Fire Department of the City of New York;

(b)    "ORD" refers to the Office of Recruitment and Diversity of the FDNY;

(c)     "EEO Office" refers to the Equal Employment Opportunity Office of the FDNY;

(d)     "BITS" refers to the Bureau of Investigations and Trials of the FDNY;

(e)     "CID" refers to the Candidate Investigation Division of the FDNY;

(f)     "PRB" refers to the Personnel Review Board of the FDNY;

(g)     "DCAS" refers to the Department of Citywide Administrative Services of the City of New York;

(h)     "EEPC" refers to the Equal Employment Practices Commission of the City of New York; and

(i)     "Executive Office of the Mayor" refers to the Mayor of the City of New York, his deputy mayors, senior advisors, and the employees and agents of the City of New York employed or retained by the City of New York to assist the foregoing in the performance of their duties.

5.     "Document" refers broadly to the full range of materials and information specified in Federal Rule of Civil Procedure 34 without regard to the medium in which it is kept or stored.

6.     "Court Monitor" and "Monitor" refer to the person appointed by the court in Part III of this Order to oversee the City's compliance with the terms of this Order, and any persons retained or employed by the Monitor to carry out the Monitor's assigned duties.

7.     "Special Master" refers to Special Master Mary Jo White, who was appointed by the court on June 1, 2010 (Docket Entry # 448), and whose responsibilities include oversight of the development and administration of Exam 2000.  Among other things, the Special Master is monitoring the Parties' progress in connection with the following six phases or milestones in the development and administration of Exam 2000:  (i) job analysis; (ii) test development, which encompasses test design, development of exam content, content validation and pilot testing, criterion-related and construct validation, and development of various test forms and equivalency

studies; (iii) test administration; (iv) analysis and scoring; (v) computation of the final test results; and (vi) preparation of the final technical report. (See, e.g., Special Master's Report No. 7 (Docket Entry # 739) (filed September 29, 2011).) The Special Master's oversight over Exam 2000 shall end upon completion of these six phases or milestones. The Monitor shall thereafter have oversight over the FDNY's use of Exam 2000 as well as over the development of subsequent examinations to screen entry-level firefighter candidates.

8.      "Days" refers to calendar days unless otherwise specified clearly in the context of a particular provision of this Order. If any deadline referenced in this Order should fall on a Saturday, Sunday, or legal holiday, the deadline shall be moved to the next day that is not a Saturday, Sunday, or legal holiday.

9.      "Entry-level firefighter" refers to a person in the entry-level uniformed position in the FDNY regardless of whether the person may be called a "recruit," "trainee," "probie" or other title until the individual has completed academy training and/or a probationary period.   It does not refer to a person selected for promotion to the position of Firefighter from the position of Emergency Medical Technician or Paramedic through the City of New York's open-competitive promotional examination.

10.      "Firefighter candidate" refers to any person who applies to participate in any step of the process for the selection of entry-level firefighters administered by the City of New York to hire entry-level firefighters, until that person is formally appointed an entry-level firefighter.

11.      "Process for the selection of entry-level firefighters," "entry-level firefighter selection process," "entry-level firefighter hiring process," and similar terms, refer to any and all steps taken by the City of New York to hire entry-level firefighters including, without limitation: developing or validating a written or computer based-examination to screen entry-level firefighter candidates; recruiting people to be entry-level firefighter candidates; issuing a Notice of Examination to open

4

an application period for any person to apply to take any examination to be hired by the City of New York as an entry-level firefighter; administering a written or computer-based examination to entry-level firefighter candidates; assessing an entry-level firefighter candidate's physical fitness or ability; determining that an entry-level firefighter candidate has passed or failed any examination or assessment at any stage of his or her candidacy; determining to award or not award any credits (e.g., New York City residency credit) to an entry-level firefighter candidate; ranking or not ranking an entry-level firefighter candidate on any civil service hiring list; certifying a civil service list of entry-level firefighter candidates for hiring; determining to begin investigating any entry-level firefighter candidate's background or eligibility to be hired as an entry-level firefighter; the process of investigating an entry-level firefighter candidate's background and eligibility to be hired as an entry-level firefighter; determining to refer a candidate to any person or body for additional consideration of his or her character or fitness to be a an entry-level firefighter, and making any recommendations concerning the outcome of that consideration; determining that an entry-level a firefighter candidate possesses or does not possess the character or fitness to be a an entry-level firefighter; administering a medical and/or psychological examination to a an entry-level firefighter candidate; determining to make an offer to hire a an entry-level firefighter candidate to the position of entry-level firefighter; determining not to hire a an entry-level firefighter candidate for any reason, including that the an entry-level firefighter candidate is ineligible for hiring, failed to report to or cooperate with any step in the an entry-level firefighter selection process, does not possess the character or fitness necessary to be a an entry-level firefighter, is medically or psychologically unfit to be hired, or for any other reason.

12.     "EEO" refers to "equal employment opportunity," i.e., the opportunity to obtain employment without discrimination because of race, color, religion, sex, national origin, age,

or disability.

13.     "EEO Laws" refers to laws which protect an employee's or employment candidate's rights to equal employment opportunities, including, without limitation, and as interpreted by federal and state courts: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; New York State Human Rights Law, New York Executive Law §§ 290 et seq.; and New York City Human Rights Law, Administrative Code §§ 8-101 et seq.

## II.     PERMANENT INJUNCTION

### A.     General Terms

14.     The City of New York shall not use, in any way, Firefighter Exam 7029, Firefighter Exam 2043, or Firefighter Exam 6019 as part of any process for the selection of entry-level firefighters.[1]

15.     The City of New York shall not use as part of any entry-level firefighter selection process, any examination that in any way results in a disparate impact upon black or Hispanic applicants and is not job related for the position of entry-level firefighter and consistent with business necessity, or does not otherwise meet the requirements of federal, state, and City EEO laws.

16.     The City of New York shall not take any step in any process for the selection of entry-level firefighters, or use any examination as part of such process, without first obtaining the approval of the Court Monitor (the "Monitor") through the processes specified by the Monitor, except that with regard to steps set out in Paragraph 7 above, over which the Special Master continues to have oversight, and for which the City of New York shall obtain the approval of the Special Master.

---

[1] Paragraph 14 of this Order supersedes and replaces the court's order enjoining the City of New York from hiring entry-level firefighters using Exam 6019 except in compliance with the five authorized hiring options identified by the court in its Exam 6019 Hiring Options Order of September 13, 2010. (See Exam 6019 Hiring Options Order (Docket Entry # 526); Exam 6019 Injunction (Docket Entry # 569) at 19-20.) As provided in Paragraph 14, today's Remedial Order revokes the City of New York's permission to use Exam 6019 to hire entry-level firefighters.

17.     The City of New York shall not retaliate against or in any way adversely affect the terms or conditions of employment of any person because he or she has complained of discrimination against blacks or Hispanics on the basis of their race or national origin in the selection and hiring of entry-level firefighters, or has participated in the investigation or litigation of any claim or allegation of such discrimination, or has sought or obtained relief from the court in this case

18.     The City of New York shall not discriminate on the basis of race or national origin against black or Hispanic firefighter candidates in the development or implementation of any process for the selection of entry-level firefighters.

19.     The City of New York shall, with reasonable diligence, take all steps necessary to eliminate the vestiges of its pattern and practice of intentional discrimination against black firefighter candidates, to remove all barriers to the elimination of these vestiges of discrimination, and to end all policies and practices that perpetuate the effects of the City's past intentional discrimination against black firefighter candidates.  The City of New York shall also, with reasonable diligence, take all steps necessary to eliminate all policies and procedures that have a disparate impact on black and Hispanic firefighter candidates and all practices that perpetuate the effects of said disparate impact.

20.     The Parties shall timely comply with the instructions of the Court Monitor as provided in this Order.

21.     Except as set forth in Paragraphs 29, 35, 45, and 50 of this Order, any submission that this Order requires the City to file with the court shall be signed by the Fire Commissioner and the Corporation Counsel, who shall certify that the Mayor of the City of New York has reviewed and approved the submission.

### B. Specific Remedial Measures

Firefighter Test Development and Administration

22. The Court Monitor shall adopt a schedule which requires the City of New York to notify the Monitor and the Parties in writing before commencing any step in a process for the selection of entry-level firefighters, except for steps set out in Paragraph 7 above, over which the Special Master continues to have oversight.

23. The Court Monitor may require the City to disclose any information relating to any step in any process for the selection of entry-level firefighters before allowing the City to proceed to any step in the process. The Court Monitor may require the City to establish that it has satisfied conditions specified by the Monitor, except that with regard to steps set out in Paragraph 7 above, over which the Special Master continues to have oversight, and for which the City of New York shall obtain the approval of the Special Master.

24. At least 90 days prior to the establishment of any new eligible civil service list for the entry-level firefighter position, the City shall notify the Court Monitor, the United States, and the Injunctive Relief Subclass in writing that it intends to establish a new eligible list and shall provide to the Monitor, the United States, and the Injunctive Relief Subclass a detailed description of each step in the selection process from which the list was developed and of the manner in which the City intends to use the eligible list to make appointments. In addition, the City shall state in writing, separately by race (White, Black, Hispanic, American Indian/Alaskan Native, or Asian/Pacific Islander), the number of applicants who were eligible to proceed to each step in the process leading up to the establishment of the eligible list, the number of applicants to whom each step was administered, and the number of applicants who passed the step or were eligible to continue in the selection process.

Firefighter Candidate Recruitment

25.     The City of New York, specifically ORD and DCAS, shall, in consultation with the Court Monitor, the United States, and the Injunctive Relief Subclass, design an optional survey which the City of New York shall administer to all individuals who take Exam 2000 at the time they take Exam 2000. The purposes of the survey shall be to determine the effectiveness of ORD's various recruitment activities and strategies, to determine the reasons why firefighter candidates chose to apply to become entry-level firefighters, to determine how many firefighter candidates have friends or family members in the FDNY, and to obtain any other useful information. Each survey form provided to the firefighter candidates shall be pre-marked with the firefighter candidate's unique applicant identification number. The survey forms shall prominently state that survey responses shall not be used in any way by the City of New York to make hiring decisions.

26.     The City of New York shall, no later than January 15, 2012, retain an independent recruitment consultant, whose selection shall be subject to the approval of the Court Monitor. The independent recruitment consultant shall submit a final report that:

        (a)     identifies and evaluates the effectiveness of ORD's various recruitment activities at recruiting black and Hispanic firefighter candidates against the costs of those activities;

        (b)     identifies best practices for the recruitment of black and Hispanic employees generally and firefighter candidates in particular, both nationally and in New York City in particular;

        (c)     recommends tactics ORD can use to improve the effectiveness and efficiency with which it recruits black and Hispanic firefighter candidates;

        (d)     recommends changes to ORD's long-term black and Hispanic firefighter candidate recruitment strategy and intensive pre-exam recruitment strategy;

        (e)     recommends measureable short-term and long-term goals for the recruitment of

black and Hispanic entry-level firefighter candidates; and

(f)      in light of these findings and recommendations, identifies the resources needed by ORD to meet its goals, and recommends minimum and ideal budgets for ORD for those fiscal years in which no firefighter examination will be administered and separate minimum and ideal budgets for ORD for fiscal years in which the City of New York will administer a firefighter examination.

27.      The independent recruitment consultant, the City of New York, and the Court Monitor shall cooperatively develop a plan for the consultant's research subject to the approval of the Court Monitor. At the discretion of the Court Monitor, the United States and the Injunctive Relief Subclass may meet with the Court Monitor, the City of New York, and the consultant to recommend areas of inquiry for the consultant's research. The City shall fully cooperate with the consultant's research. The consultant shall regularly update the City and the Court Monitor on the scope and progress of the consultant's research in a written report or other format to be determined by the Court Monitor and shall inform the Court Monitor, on a schedule to be set by the Court Monitor, if the consultant has any difficulties acquiring information needed to complete the consultant's assigned tasks. The Court Monitor may, in the Monitor's discretion, use the Monitor's authority to obtain access to individuals, documents, places, or things to provide information to the consultant.

28.      The independent recruitment consultant's final report shall be filed with the court and submitted to the Parties and Court Monitor no later than March 31, 2013.

29.      The City of New York shall consider the recommendations in the independent recruitment consultant's final report and file a response with the court 90 days after the consultant's final report is filed with the court. In its response the City shall specifically indicate which of the recommendations it will carry out and how it plans to do so, providing a specific timetable for those recommendations that cannot be carried out immediately. For those recommendations the

City declines to carry out, the City shall explain why it declines to carry them out, and shall identify any alternative steps it intends to take to achieve the purposes of the recommendations. The response required by this paragraph shall be signed and certified by the Mayor of the City of New York.

30.    The Court Monitor shall file a reply with the court 30 days after the City of New York files its response. The Monitor's reply shall explain whether the Monitor believes the City's response to the consultant's final report is sufficient, and shall recommend to the court any additional action the Monitor believes is necessary to accomplish the remedial purposes of this Order. The United States and the Injunctive Relief Subclass may also file replies with the court no later than 30 days after the City files its response.

Attrition Mitigation Plan and Reassessment of Entry-Level Firefighter Selection

31.    The City, in consultation with the Court Monitor and the Parties, shall draft and implement a written plan to mitigate and diminish rates of voluntary candidate attrition between different steps of the City's process for the selection of entry-level firefighters. The written attrition mitigation plan shall focus particularly on the steps needed to prevent "voluntary" (as that term is used currently by the FDNY) candidate attrition from disproportionately affecting the retention rates for black and Hispanic firefighter candidates during the firefighter hiring process for Exam 2000. The City shall submit its first draft written attrition mitigation plan to the Parties by January 7, 2012. After the City submits its first draft written attrition mitigation plan, the Court Monitor or the Parties may propose amendments to the City's draft plan. The Parties and the Court Monitor shall subsequently discuss revisions to and implementation of the attrition mitigation plan as directed by the Court Monitor, on a schedule to be set by the Court Monitor. The Court Monitor shall make a recommendation to the court as to whether the attrition mitigation plan, either as drafted by the City or including amendments the Court Monitor or the Parties may propose, should

be adopted by the City in the Exam 2000 firefighter selection process.

32.    The City of New York, in consultation with its independent recruitment consultant, its EEO consultant, the Parties and the Court Monitor, shall conduct a comprehensive top-to-bottom assessment of all steps in its process for the selection of entry-level firefighters that evaluates the strengths and weaknesses of the City's current selection process as a whole and of individual steps in that process. As part of its review, the City shall also research and develop alternative selection processes that solve the problems the City identifies in its current selection process. The Parties and the Court Monitor (in consultation with consultants as needed) may also propose alternative selection processes for consideration. The City shall evaluate the strengths and weaknesses of the alternative selection processes and identify barriers to their implementation, including the need for legislative, administrative, or other governmental action.

33.    The scope of the City's review of its current entry-level firefighter selection process, and its plan to research alternative selection processes shall be subject to the approval of the Court Monitor. The City shall keep the Court Monitor and the Parties informed as to the progress of its research in regular meetings and, if the Court Monitor deems it necessary, provide written reports to the Parties and the Court Monitor, on a schedule to be set by the Court Monitor.

34.    Before the Mayor may file the City's final report on the City's comprehensive top-to-bottom assessment, the Court Monitor must certify that the City carried out its assessment of its current entry-level firefighter selection process and researched and evaluated alternative selection processes in good faith and with reasonable diligence.

35.    By December 2, 2012, the Mayor of the City of New York shall file with the court the City's final report.  In the final report, the Mayor shall (i) recommend which specific actions on the adoption of alternative selection processes or the modification of the City's current selection processes he or she will carry out immediately, (ii) provide a specific timetable for those

recommendations that cannot be carried out immediately, and (iii) explain the steps required in implementing each recommendation. The final report required by this paragraph shall be signed and certified by the Mayor of the City of New York.

36.     The Court Monitor or any Party may file a response to the Mayor's final report with the court 30 days after the Mayor files his or her final report. Any response filed with the court shall explain whether the Monitor or Party believes the Mayor's final report is sufficient, and shall recommend to the court any additional action the Monitor or Party believes is necessary to accomplish the remedial purposes of this Order.

Post-Examination Firefighter Candidate Screening

37.     Any elected or appointed official, manager, employee, volunteer, paid or unpaid intern, independent contractor, or other agent of the City of New York, who is involved or becomes involved, formally or informally, in any of the following specific steps of the process for hiring entry-level firefighters shall immediately create a written record of all oral communications in which they are involved, directly or through an intermediary, that concern any person who is a candidate to be hired by the City of New York as an entry-level firefighter. The duty created by this paragraph applies to the foregoing persons who are involved in the following steps of the process for hiring entry-level firefighters, including entry-level firefighter candidates under consideration after taking Exam 2000:

    (a)     background investigation of firefighter candidates;

    (b)     determination to create, and preparation of a consideration report to send to the PRB;

    (c)     recommendations to the PRB;

    (d)     PRB consideration, discussion, or review of firefighter candidates; and

    (e)     any review by the Fire Commissioner or other senior FDNY official of PRB

decisions or CID's background investigation.

38.     The written record required by Paragraph 37 shall:

    (a)     state the date and time the written record was created, and the name and title of the person who created it;

    (b)     include the date and time of the communication and any relevant information concerning the medium of the communication (e.g., in-person, telephone call, message left with assistant, etc.);

    (c)     identify the firefighter candidate(s) who is/are the subject of the communication;

    (d)     identify the participants to the communication, including the nature of each participant's relationship or source of knowledge about the firefighter candidate who is the subject of the communication and whether each participant is an elected or appointed official, manager, employee, volunteer, paid or unpaid intern, independent contractor, or other agent of the City of New York, and if so, their affiliation with the City of New York; and

    (e)     include a brief description of the substance and purpose of the communication, and a summary information provided by each participant concerning the firefighter candidate who is the subject of the communication.

39.     The City of New York shall designate a senior official, manager, or employee of the FDNY who is employed as an attorney, to be responsible for collecting, reviewing, and retaining the written records created pursuant to the duty created in Paragraphs 37 and 38. The designated senior official shall be responsible for creating and enforcing policies and procedures necessary to implement the duty to create these written records, subject to the approval of the Court Monitor.

40.     Before CID begins the process of investigating the background of any firefighter candidate, including any firefighter candidate under consideration after taking Exam 2000, the FDNY shall

create and adopt written policies and procedures for CID's operations, subject to the approval of the Court Monitor. At a minimum, those policies and procedures shall:

(a) Specify the circumstances under which CID will prepare a consideration report to the PRB and when CID will send that report to the PRB;

(b) Specify the circumstances under which CID will conduct a deeper investigation of a firefighter candidate's background, including for example, circumstances in which a candidate has been arrested for a crime but not subsequently convicted;

(c) Specify additional investigative steps CID investigators must take when deeper investigation of a firefighter candidate's background is determined to be warranted.

41. Before the PRB meets to discuss, consider, or review any firefighter candidate, including any firefighter candidate under consideration after taking Exam 2000, the FDNY shall create and adopt written policies and procedures for the operation of the PRB, subject to the approval of the Court Monitor. At a minimum, those policies and procedures shall:

(a) Require PRB members who may have a conflict of interest as to any particular firefighter candidate under review by the PRB to disclose to all members of the PRB the nature of their potentially-conflicting interest;

(b) Regulate the participation on the PRB of members who may have a conflict of interest regarding a firefighter candidate under review, including defining which conflicts of interest require a PRB member to recuse him- or herself from the PRB's consideration of that firefighter candidate;

(c) Require PRB members to disclose in writing whether they received any communications that were not sent to the PRB as a whole or have any personal knowledge concerning a firefighter candidate under review by the PRB;

(d)     Regulate the participation on the PRB of members who received any communications that were not sent to the PRB as a whole or have any personal knowledge concerning a firefighter candidate under review by the PRB;

(e)     Require the PRB to adopt an individualized and fact-specific statement of reasons for any adverse decision the PRB makes as to any firefighter candidate it reviews.

42.     Before CID begins the process of investigating any firefighter candidate's background, including any firefighter candidate who has taken Exam 2000, and before the PRB meets to discuss, consider, or review any firefighter candidate, including any firefighter candidate who has taken Exam 2000, each investigator and manager in CID, and each member of the PRB shall receive interactive training tailored to educate the recipients how to practically apply applicable equal employment opportunity laws and policies in the performance of their responsibilities in CID or on the PRB, respectively. The trainings shall be provided by an independent third-party provider approved by the Court Monitor. The curriculum for each of the training sessions shall be subject to approval by the Court Monitor. The Court Monitor and senior managers of the FDNY EEO Office shall attend both the CID training and the PRB training. No investigator or manager in CID may participate in investigating a firefighter candidate's background, and no PRB member may participate in a PRB meeting regarding a firefighter candidate until the Court Monitor certifies to the court that they have satisfactorily completed this training requirement.

43.     The Court Monitor shall attend all meetings of the PRB—in person, as a nonparticipating observer—that are held to consider any person who is a candidate to be hired as an entry-level firefighter off the eligible civil service list certified using the results of Exam 2000. No member of the PRB shall communicate orally or in writing with any other member of the PRB, either directly or through an intermediary, about any person who is a candidate to be hired as an entry-level firefighter off the list certified using the results of Exam 2000 outside the physical presence of the

16

Court Monitor. The FDNY shall provide the Court Monitor with copies of all materials submitted for consideration of the PRB no fewer than 14 days before any meeting of the PRB.

44.     Based on the Court Monitor's observations of PRB meetings, after such time as the Monitor believes it has had sufficient time to make such observations, the Monitor shall file a report critiquing the performance of the PRB and the information provided to it by CID, and recommending the adoption of any policies, practices, or procedures the Monitor believes are necessary to ensure that the CID adequately informs the PRB of necessary information, and that the PRB fairly considers all firefighter candidates consistent with the requirements of all applicable equal employment opportunity laws and policies. The Monitor's report shall preserve the anonymity of particular candidates reviewed by the PRB and, to the extent possible, preserve the confidentiality of PRB discussions by not disclosing the identities of particular speakers during PRB meetings.

45.     The City of New York shall consider the recommendations in the Court Monitor's report on the PRB and CID, and shall file a response with the court 90 days after the Monitor's report is filed with the court. In its response, the City shall specifically indicate which of the recommendations it will carry out and how it plans to do so, providing a specific timetable for those recommendations that cannot be carried out immediately. For those recommendations the City declines to carry out, the City shall explain why it declines to carry them out, and shall identify any alternative steps it intends to take to achieve the purposes of the recommendations. The response required by this paragraph shall be signed and certified by the Mayor of the City of New York.

46.     The Court Monitor shall file a reply with the court 30 days after the City of New York files its response. The Monitor's reply shall explain whether the Monitor believes the City's response to the Monitor's report is sufficient, and shall recommend to the court any additional action the

Monitor believes is necessary to accomplish the remedial purposes of this Order. The United States and the Injunctive Relief Subclass may also file replies with the court no later than 30 days after the City files its response.

EEO Compliance Reform

47.	The City of New York shall retain**,** by no later than January 15, 2012, an independent EEO consultant, whose selection shall be subject to the approval of the Court Monitor.  The independent EEO consultant shall submit a final report that:

(a)	identifies all equal employment opportunity law compliance activities currently performed by all FDNY offices, bureaus, divisions, boards, or other subdivisions, including without limitation the EEO Office, ORD, BITS, CID, and the PRB;

(b)	evaluates the effectiveness of the equal employment opportunity law compliance activities currently performed by each FDNY office, bureau, division, or other subdivisions;

(c)	identifies all tasks the FDNY's EEO Office ought to be performing under the City's EEO Policy;

(d)	identifies all tasks the EEO Office should be performing to ensure the FDNY's compliance with applicable equal employment opportunity laws and policies in light of the violations of the equal employment opportunity laws identified by the court in its Disparate Impact Opinion (Docket Entry # 294), Disparate Treatment Opinion (Docket Entry # 385), and Exam 6019 Validity Opinion (Docket Entry # 505), and in light of the deficiencies in the FDNY's EEO compliance program identified in the court's Findings of Fact as to the Need for and Scope of Injunctive Relief (Docket Entry # 740);

(e)	identifies best practices used by other offices responsible for ensuring a comparable municipal department's compliance with applicable equal employment opportunity laws and policies, and particularly, best practices used by EEO offices in other fire departments nationally;

(f)     recommends a detailed compliance program to be carried out by the EEO Office including specific compliance activities, and which references specific metrics and goals to be used to evaluate the EEO Office's performance in carrying out each activity;

(g)     identifies methods of detecting, deterring, and preventing acts of retaliation and discrimination against current and future City of New York employees involved with this litigation in any way[2] because of their involvement with this litigation;

(h)     recommends specific actions for the EEO Office, and any other relevant agency of the City of New York, to take to deter and prevent acts of retaliation or discrimination against any current and future City of New York employees because of their involvement with this litigation;

(i)     in light of these findings and recommendations, identifies the staff and other resources needed by the EEO Office to carry out the compliance program and retaliation deterrence program recommended by the consultant, and recommends a minimum and an ideal budget for the EEO Office to successfully meet expectations under the recommended compliance program and retaliation deterrence program;

(j)     evaluates the FDNY's policies, procedures, and actual practices for disciplining employees found to be responsible for substantiated equal employment opportunity law and policy violations;

(k)     identifies procedural, organizational, cultural, logistical, resource, policy, political and other barriers to the EEO Office's ability to ensure the FDNY's compliance with applicable federal, state, and City equal employment opportunity laws and policies;

(1)     recommends process, organizational, and policy changes within the EEO Office

---

[2] As that term is used in Paragraph 45(g) and (h) "involvement with this litigation" includes, without limitation, witnesses, declarants, and affiants who have offered oral or written testimony to the court in connection with the litigation of this case; past, present, and future members of the Vulcan Society, Inc.; individual subclass representatives; any person who may assert a claim that he or she was a victim of the City's discrimination identified in the court's Disparate Impact Opinion (Docket Entry # 294) or Disparate Treatment Opinion (Docket Entry # 385); and any person who claims to benefit from any order issued by the court in this litigation.

to eliminate barriers to the EEO Office's ability to ensure the FDNY's compliance with applicable federal, state, and City equal employment opportunity laws and policies;

(m)     recommends process, organizational, and policy changes within the FDNY as a whole to eliminate barriers to the EEO Office's ability to ensure the FDNY's compliance with applicable federal, state, and City equal employment opportunity laws and policies; and

(n)     recommends process, organizational, and policy changes within the City of New York as a whole, including DCAS and any other relevant agency, to eliminate barriers to the EEO Office's ability to ensure the FDNY's compliance with applicable federal, state, and City equal employment opportunity laws and policies.

48.     The independent EEO consultant, the City of New York, and the Court Monitor shall cooperatively develop a plan for the consultant's research subject to the approval of the Court Monitor. At the discretion of the Court Monitor, the United States and the Injunctive Relief Subclass may meet with the Court Monitor, the City of New York, and the consultant to recommend areas of inquiry for the consultant's research. The City shall fully cooperate with the consultant's research. The consultant shall regularly update the City and the Court Monitor, on a schedule to be set by the Court Monitor, on the scope and progress of the consultant's research and shall inform the Court Monitor if the consultant has any difficulties acquiring information needed to complete the consultant's assigned tasks. The Court Monitor may, in the Monitor's discretion, use the Monitor's authority to obtain access to individuals, documents, places, or things to provide information to the consultant.

49.     The independent EEO consultant's final report shall be filed with the court and submitted to the Parties and Court Monitor no later than March 31, 2013.

50.     The City of New York shall consider the recommendations in the independent EEO consultant's final report and file a response with the court 90 days after the consultant's final

report is filed with the court. In its response the City shall specifically indicate which of the recommendations it will carry out and how it plans to do so, providing a specific timetable for those recommendations that cannot be carried out immediately. For those recommendations the City declines to carry out, the City shall explain why it declines to carry them out, and shall identify any alternative steps it intends to take to achieve the purposes of the recommendations. The response required by this paragraph shall be signed and certified by the Mayor of the City of New York.

51.     The Court Monitor shall file a reply with the court 30 days after the City of New York files its response. The Monitor's reply shall explain whether the Monitor believes the City's response to the consultant's final report is sufficient, and shall recommend to the court any additional action the Monitor believes is necessary to accomplish the remedial purposes of this Order. The United States and the Injunctive Relief Subclass may also file replies with the court no later than 30 days after the City files its response.

### C.     Document Retention and Preservation

52.     The Court Monitor, in consultation with the Parties, shall prepare and file a Document Retention and Preservation Order, for approval by the court, directing the City of New York to retain, preserve, and maintain specified broad categories of documents that are relevant to evaluating the City's compliance with this Order, including documents currently in existence and any documents which will be created in the future.  The Court Monitor may amend or supplement the Document Retention and Preservation Order at any time.

53.     Following the court's issuance of the Document Retention and Preservation Order, counsel for the City of New York shall immediately issue a Document Retention and Preservation Notice advising all individuals currently subject to the Document Retention and Preservation Order of their continuing obligations under the order, and shall promptly issue a Document Retention and

Preservation Notice to any individual who may subsequently become subject to the duties and obligations created by the order. At least every 6 months, counsel for the City of New York shall remind individuals subject to the Document Retention and Preservation Order of their continuing obligations under the Court Monitor's order. In consultation with the Court Monitor, the City of New York shall periodically audit the effectiveness of the document retention and preservation practices and procedures followed by individuals subject to the document retention and preservation duties created by the Court Monitor's order. Counsel for the City of New York shall maintain a list of all persons subject to the Document Retention and Preservation Order and promptly inform the Court Monitor whenever a Document Retention and Preservation Notice is sent to any individual who is currently subject or may become subject to the document retention and preservation duties created by the court's order.

### D. Discovery by Parties

54. No later than 30 days after the United States or the Injunctive Relief Subclass so requests in writing, the City shall make available to the United States and the Injunctive Relief Subclass any records maintained in accordance with Paragraphs 52 and 53 and any additional documents relating to any dispute arising under this Order. In the event of a dispute among the Parties arising under this paragraph, the Court Monitor shall file on the docket a recommendation for resolution of the dispute.

55. No later than thirty 30 days after the United States or the Injunctive Relief Subclass so requests in writing, the City shall make available for interview or deposition (at the option of the United States or the Injunctive Relief Subclass) any agent, employee, or official of the City who has knowledge of information necessary to verify the City's compliance with the terms of this Order or to resolve a dispute arising under this Order. In the event of a dispute among the Parties arising under this paragraph, the Court Monitor shall file on the docket a recommendation

for resolution of the dispute.

### E. Sanctions

56. A violation of the terms of this remedial order, including but not limited to violations of the document retention, preservation, and discovery provisions, by any party, or any failure to timely comply with any of the deadlines imposed by this remedial order, may be punished by court-ordered sanction if another party or the Court Monitor moves for such sanction. Such sanction may include, but is not limited to, an adverse inference, waiver of a privilege, grant or expedition of relief for the opposing party, and the use of contempt proceedings if the alleged violation is of sufficient gravity to warrant such proceedings.

## III. ORDER APPOINTING COURT MONITOR

57. Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C) and the court's inherent equitable powers, Mark S. Cohen is appointed to serve as Court Monitor for post-trial compliance relief in this litigation. As Federal Rule of Civil Procedure 53(b)(3) mandates, the Court Monitor has filed an affidavit with the court affirming that he is "aware of no grounds for disqualification under 28 U.S.C. § 455." (See Court Monitor Aff. (Docket Entry # 764).)

### A. Duties

58. The duties of the Court Monitor shall include the following:

(a) Carrying out all responsibilities and tasks specifically assigned to the Monitor in this Order;

(b) Monitoring and reporting on the City's compliance with its obligations under this Order;

(c) Facilitating the Parties' resolution of any disputes concerning compliance with their obligations under this Order, and recommending appropriate action by the court in the event an issue cannot be resolved by the Parties with the Court Monitor's assistance; and

23

(d)     Proactively investigating any matters related to the Court Monitor's duties, and assisting the court to enforce any orders related to the matters set forth in this Order.

(e)     The Court Monitor shall have all authority provided under Federal Rule of Civil Procedure 53(c), except as modified by Paragraph 56 of this Order.

### B.     Periodic Reporting

59.     The Court Monitor shall provide periodic reports to the court and to the Parties concerning the status of the Parties' compliance with this Order and other orders of the court or the Court Monitor, including their progress, any barriers to compliance, and potential areas of noncompliance. The Court Monitor shall file a report with the court under this provision at least once every 90 days.

60.     The Court Monitor, in consultation with the Parties, shall require periodic reports from the City of New York on its compliance with and implementation of this Order and any other orders of the court, in a format specified by the Court Monitor, as reasonably required to enable the Court Monitor to perform the Monitor's duties under this Order.

### C.     Judicial Review

61.     Except as otherwise provided in this Order, the Parties may file objections to—or a motion to adopt or modify—the Court Monitor's report or recommendations no later than 10 calendar days after the report or recommendation is filed on the docket. The court will review these objections under the standards set forth in Federal Rule of Civil Procedure 53(f).

62.     If any Party desires to object to any decision made by the Monitor to grant or withhold approval of any request or action in cases where the Monitor's prior approval is required, or to any decision imposing any condition before the Court Monitor will give such approval, the Party shall notify the Monitor who shall promptly file on the court's docket a written report setting forth the Monitor's decision or conditions. The Party may then object to the Monitor's report in the manner

prescribed in this Order.

63.     The reports and recommendations of the Court Monitor may be introduced as evidence in accordance with the Federal Rules of Evidence.

64.     Before a Party seeks relief from the court for alleged noncompliance with any court order that is based upon the Court Monitor's report or recommendations, the Party shall: (i) promptly notify the other Parties and the Court Monitor in writing; (ii) permit the Party who is alleged to be in noncompliance five business days to provide the Court Monitor and the other parties with a written response to the notice, which either shows that the party is in compliance, or proposes a plan to cure the noncompliance.. Following that procedure, the Court Monitor shall review its report and/or recommendations and present any necessary revisions for review by the court as expeditiously as possible.

### D.     Recordkeeping

65.     The Court Monitor shall file all written reports and recommendations on the court's docket, along with any evidence that the Court Monitor believes will assist the court in reviewing the report or recommendation. The Court Monitor shall preserve any documents the Monitor receives from the Parties.

### E.     Access to Information

66.     The Court Monitor shall have access, on short notice, to individuals, information, documents, materials, programs, services, facilities and premises under the control of the City of New York that the Monitor requires to perform his or her duties under this Order.

67.     Within one week from execution of this Order, the City of New York shall designate persons responsible for handling inquiries by the Court Monitor, including without limitation persons responsible for the areas of document retention, CID, ORD, and PRB, which persons' duties shall include taking calls from the Court Monitor and promptly responding to the Court

Monitor's communications. Contemporaneous with selection of such persons, the City of New York shall provide the Court Monitor with their names, telephone numbers, and workplace electronic mail addresses, which list shall be promptly updated upon the departure of any such personnel with the same data for a person to be immediately substituted in their place as designee.

68.     The Court Monitor may compel the City of New York to make available, on short notice, any elected or appointed officials, managers, employees, volunteers, paid or unpaid interns, independent contractors, or other agents of the City of New York, any person or entity over which any of the foregoing exercise direct or indirect control because of their affiliation with the City of New York, or any person or entity acting in concert or participation with any of the foregoing, to be interviewed or deposed at the discretion of the Court Monitor.

69.     The Court Monitor may communicate with a Party or a Party's counsel or staff, or with third parties, on an ex parte basis if reasonably necessary to carry out the Monitor's duties under this Order. The Court Monitor may communicate with the court on an ex parte basis, provided that in no event shall the Court Monitor convey to the court in such communications any facts or information that the Court Monitor has obtained in an ex parte communication between the Court Monitor and any Party, Party's counsel or staff, or third party.

70.     The Court Monitor shall document all ex parte oral communications with a Party or a Party's counsel or staff in a written memorandum to file summarizing the substance of the communication, the participants to the communication, the date and time of the communication, and the purpose of the ex parte communication. At the time the Court Monitor submits his or her periodic reports to the court, the Monitor shall separately list his or her ex parte communications with the Parties in a letter to the court that shall not be filed on the court's docket or disclosed to the parties unless the court specifically directs it to be filed.

**F.     Engagement of Staff and Consultants**

71.     The Court Monitor may, consistent with a budget to be approved by the court, hire staff or expert consultants to assist the Monitor in performing his or her duties. The Court Monitor will provide the parties advance written notice of his or her intention to hire a particular consultant, and such notice will include a resume and a description of duties of the consultant.

**G.     Budget, Compensation, and Expenses**

72.     The City of New York shall fund the Court Monitor's work pursuant to a budget proposed by the Court Monitor and approved by the court. The Court Monitor shall incur only such fees and expenses as may be reasonably necessary to fulfill the Monitor's duties under this Order, or such other orders as the court may issue.

73.     Every 60 days, the Court Monitor shall submit to the court an itemized statement of fees and expenses, which the court will inspect for regularity and reasonableness. If the court determines the itemized statement is regular and reasonable, the court will sign it and transmit it to the parties. The City shall then remit to the Court Monitor any court-approved amount, within 20 calendar days of court approval.

**H.     Other Provisions**

74.     As an agent and officer of the court, the Court Monitor and those working at his or her direction shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts performing similar functions. Nevertheless, any Party or non-party may request that the court direct the Court Monitor to disclose documents or other information reasonably necessary to an investigation or the litigation of legal claims in another judicial forum that are reasonably related to the Court Monitor's work under this Order. This may include, for example, an investigation by the EEPC

into the FDNY's EEO policies and practices. The court shall not order the Court Monitor to disclose any information without providing the Parties notice and an opportunity to be heard.

75. As required by Rule 53(b)(2) of the Federal Rules of Civil Procedure, the court directs the Court Monitor to proceed with all reasonable diligence.

76. The Court Monitor shall be discharged or replaced only upon an order of this court.

77. The parties, their successors in office, agents, and employees will observe faithfully the requirements of this Order and cooperate fully with the Court Monitor, and any staff or expert consultant employed by the Court Monitor, in the performance of their duties.

## IV. RETENTION OF JURISDICTION

78. The Court will retain jurisdiction to enforce and modify this Order until such time as the court finds that the City of New York has established, by a preponderance of the evidence, that:

(a) the City does not currently use, and will not use in the future, any examination that in any way results in a disparate impact upon black or Hispanic applicants and is neither job related for the position of entry-level firefighter and nor required by business necessity, or does not otherwise meet the requirements of Title VII as part of any entry-level firefighter selection process;

(b) the City currently complies with, and will in the future continue to comply with, all applicable provisions of federal, state, and City equal employment opportunity laws in the use of any process to hire entry-level firefighters in the absence of court supervision;

(c) the City has established policies, procedures, and other institutional mechanisms that are—in practice and actual effect—sufficient to ensure that the City complies with all provisions of federal, state, and City equal employment opportunity laws and policies applicable to any process or step in a process used by the City to hire entry-level firefighters;

(d) the City currently provides, and in the future will continue to provide, financial resources and other support to its agencies, officials, and other institutions responsible for ensuring

its compliance with federal, state, and City equal employment opportunity laws and policies, that are—in practice and actual effect—sufficient to ensure that the City complies with applicable equal employment opportunity laws and policies with respect to any process or step in a process used by the City to hire entry-level firefighters;

(e)     the City has removed all barriers that perpetuate the effects of its intentional discrimination against black firefighter candidates; and

(f)     the City has eliminated all vestiges of its intentional discrimination against black firefighter candidates.

79.     Under no circumstances will the court's jurisdiction to modify or enforce this Order lapse before the later of:

(a)     January 1, 2022; or

(b)     the expiration date of the second of the City's next two civil service hiring lists for the position of entry-level firefighter that are certified after the issuance of this Order.

80.     On or after the occurrence of the last event specified in Paragraph 79, the City of New York may request that the court set a bench trial at which the City will be permitted to introduce evidence to satisfy its burdens of proof and persuasion under Paragraph 78.

## V.     COSTS AND FEES

81.     Except as otherwise set forth in this Order, the City shall bear all costs incurred by the City, the United States, and the Injunctive Relief Subclass in the prosecution and implementation of the remedy phase of this case, including reasonably-incurred attorneys' fees and expenses,  expert fees and the cost of all notification procedures, except that the United States shall bear its own attorneys' and expert fees and expenses.

82.     Upon filing by the United States of a bill of costs verified pursuant to 28 U.S.C. § 1924, the court will tax against the City all costs allowed by 28 U.S.C. § 1920 incurred by the United States,

as a prevailing party in this litigation.

83.     The Injunctive Relief Subclass being prevailing parties with respect to the disparate impact and disparate treatment claims that were the subject of this court's Disparate Impact and Disparate Treatment Opinions, the City shall make an interim payment to the Injunctive Relief Subclass of attorneys' fees, costs and expenses they reasonably incurred in prosecuting those claims, at a time and in an amount to be agreed upon by the City and Injunctive Relief Subclass provided that if agreement is not reached within 30 days of the entry of this Order, the Injunctive Relief Subclass will apply to the court for a determination of the amount of attorneys' fees, costs and expenses to be awarded.

SO ORDERED.

/s/ Nicholas G. Garaufis

Dated:  Brooklyn, New York
        December 8, 2011

NICHOLAS G. GARAUFIS
United States District Judge