UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA,

       Plaintiff,

  -and-

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members*, JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief*;

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated*; and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated*,

       Plaintiff-Intervenors,

  -against-

THE CITY OF NEW YORK,

       Defendant,

  -and-

THE UNIFORMED FIREFIGHTERS ASSOCIATION
OF GREATER NEW YORK,

       A Non-Aligned Party.

**MEMORANDUM & ORDER**

**07-CV-2067 (NGG) (RLM)**

------------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

  In this Memorandum and Order, the court addresses five requests by various entities:

Two motions to intervene by the Uniformed Firefighters Association of Greater New York (the

"Union"); one letter request to intervene by Gregory Della Valle ("Della Valle"); Defendant City

1

of New York's request that the court authorize changes in examination objection procedure; and Plaintiff-Intervenors' motion for an entry of partial final judgment, pursuant to Federal Rule of Civil Procedure 54(b), as to Defendants Mayor Michael Bloomberg and former Fire Commissioner Nicholas Scoppetta. For the reasons discussed below, the court DENIES the first of the Union's motions to intervene and GRANTS the second; DENIES Della Valle's request to intervene; GRANTS the City's motion for modifications of examination objection procedure; and GRANTS Plaintiff-Intervenors' request for partial final judgment.[1]

### I.    THE UNION'S MOTION FOR INTERVENTION REGARDING PRIORITY HIRING ELIGIBILITY

The Union has twice moved to intervene in this case. The first motion was a request to intervene as a party-defendant early in the litigation, before the court had issued either of its opinions on liability; the Union premised its request to intervene based on its interest in firefighter safety. (See Union July 27, 2007 Intervention Reply Mem. (Docket Entry # 28) at 3-5.) The court rejected the Union's request. (Sept. 5, 2007 Mem. and Order (Docket Entry # 47) at 10.) The court concluded that while the Union has an important role in protecting firefighters and therefore should be heard as an amicus, id. at 9-10, the City shared the Union's main objectives—public safety, managerial efficiency, and potential financial exposure to injured employees are all concerns of the City, which include an interest in firefighter safety—and so the Union's interests were adequately represented, id. at 6-8. The court also noted that the Union had not articulated a legally cognizable interest, i.e., a right, claim, or defense that would be affected by any liability decisions the court was considering: the Union simply could not be liable for the claims that the United States had brought against the City. (Id. at 5-6, 8-9.) The

---

[1]    This case has an extensive history which the court does not summarize here. That history is recounted in the court's prior opinions, most recently in the Memorandum and Order the court issued following its August 2011 bench trial on the need for affirmative relief. (Docket Entry # 743 at 2-5.)

court did, however, note that the Union might have cognizable rights that were not protected by the City in an eventual remedy stage. (Id. at 11-13.) The court invited the Union to move to intervene in the future if it believed its rights would be impacted by a remedial order. (Id. at 13.)

After the court concluded that the City had violated Title VII (see July 22, 2009 Mem. & Order (Docket Entry # 294)), the Union moved to intervene in the remedial stage of the case. (Union Aug. 11, 2009 Intervention Mot. (Docket Entry # 303).) The court considered whether the Union should be able to intervene so that it could be heard on any remedial plan that granted retroactive seniority for victims of the City's violations of Title VII. (Sept. 25, 2009 Order (Docket Entry # 327) at 2.) The court denied that request. The court explained in its Order that the Union owed a duty of fair representation to all of its members, including firefighters who are also delayed-hire victims, i.e., minority firefighter candidates who were eventually hired by the City but whose hiring was delayed due to their relatively low rank on the eligible hiring list. Those delayed-hire firefighters could benefit from a remedial plan that embraced retroactive seniority. (Id. at 2-3.) The court concluded that the Union had not explained how it could speak on an issue which would be advantageous to some of its members (the delayed hire victims who potentially would receive retroactive seniority) and adverse to others. (Id. at 3.)

More recently, the Union expressed concern about another remedial issue—priority hiring for "non-hire victims," i.e., minority firefighter candidates who took entry-level firefighter Examinations 7029 or 2043 and were never hired. (See Jan. 21, 2010 Mem. & Order (Docket Entry # 390) at 23-28.) The Union asked the court by letter to require that any such candidate take and pass entry-level firefighter Examination 2000 before being considered for priority

3

hiring.[2] (Union July 25, 2011 Letter (Docket Entry # 689) at 102.) The court responded by an Order which noted that the issue was open and, if the Union wished to be heard on it, the Union must move to intervene. (July 26, 2011 Order (Docket Entry # 696) at 2-3.) The Union has now done so. (Union Aug. 8, 2011 Intervention Mot. (Docket Entry # 704).)

The court must evaluate a motion for intervention as of right based on Federal Rule of Civil Procedure 24(a)(2), which allows intervention as of right only if: (1) the motion for intervention is timely; (2) the putative intervenor has interest in the existing litigation; (3) the intervenor's interest would be impaired by the outcome of the litigation; and (4) the intervenor's interest will not be adequately represented by the existing parties. See D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001). Unfortunately, the Union's motion for intervention is premised on the same interest in firefighter safety that the court considered in 2007. (Union Aug. 8, 2011 Intervention Mot. at 3-4.) As the court noted in its 2007 Memorandum and Order, the Union must prove that the City or another existing party in the litigation does not adequately represent its interest in this case. (Sept. 5, 2007 Mem. and Order at 6-7.) Just as it did then, the court concludes that the Union's interest in firefighter safety is protected by the City. A putative intervenor has a burden to prove that existing parties do not represent its interest, a burden that is "more rigorous" if the putative intervenor and an existing party share "the same ultimate objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 180 (2d Cir. 2001). The City has moral, legal, financial, and political reasons to be concerned with issues that affect public safety, employee safety, and managerial efficiency. The court concludes that firefighter safety is subsumed within these issues. Moreover, several of the individual Plaintiff-Intervenors

---

[2] Examination 2000 is the new entry-level firefighter exam which the City is developing in conjunction with the United States and Plaintiff-Intervenors and under the supervision of Special Master Mary Jo White. (Jan. 21, 2010 Mem. & Order (Docket Entry # 390) at 54; June 1, 2010 Order Appointing Special Master (Docket Entry # 448) at 2.)

4

are themselves current firefighters, and, the Vulcan Society, an organization that is made up entirely of current firefighters. (United States Aug. 12, 2011 Opposition to Intervention (Docket Entry # 707) at 4.) The court thus concludes that the Plaintiff-Intervenors share the same ultimate objective as the Union—that current firefighters be safe on the job—even if they disagree on the specific issue of whether priority hires should take Exam 2000. Finally, the United States has stated expressly its concern with firefighter safety as well. (See United States Aug. 18, 2009 Opposition to Intervention (Docket Entry # 310) at 3 n.3.) The Union's stated interest—firefighter safety—is well represented in this current litigation. Perhaps more importantly, two of the existing parties—the United States and the City—now argue for the exact relief the Union seeks, i.e., that non-hire victims take Exam 2000 before being considered for priority hiring relief. (See United States Aug. 12, 2011 Opposition to Intervention at 4-5; City Aug. 12, 2011 Response to Intervention (Docket Entry # 706) at 2.) Thus, both the Union's broad objective—safety—and its specific concern—the use of Exam 2000—are represented by existing parties. The Union's inability to prove the existence of the fourth requirement for intervention—inadequacy of representation—is fatal to their motion, even assuming the Union otherwise qualifies for intervention as of right.[3] See United States v. City of New York, 198 F.3d 360, 364 (2d Cir. 1999).

The Court noted in its 2007 Memorandum and Order that the Union may have legally cognizable interests that are not adequately represented by the existing parties in parts of the remedy stage of this case. (Sept. 5, 2007 Mem. and Order at 12-13.) The court was clear as to what those interests might be: the interests the Union has in seniority rights that are created

---

[3] The court notes that, according to the United States and Plaintiff-Intervenors, the Union does not have a legally cognizable right with respect to the method of selection of entry-level firefighters. (United States Aug. 12, 2011 Opposition to Intervention 2-3; Plaintiff-Intervenors Aug. 12, 2011 Opposition to Intervention (Docket Entry # 708) at 1-2.) Therefore, even if the Union's interest were inadequately represented, the Union's motion may have still failed due to lack of a legally protectable interest.

5

through the collective bargaining agreement between the Union and the City. (Id.) It is possible that priority hiring could implicate those rights. Moreover, the Union notes that the remedy of priority hiring, which is directed to individuals who are not currently firefighters, does not implicate the Union's duty of fair representation. (Union Aug. 8, 2011 Intervention Mot. at 5.) Therefore, the Union is encouraged to move for intervention as to the remedy of priority hiring and in protection of the rights given to it under a collective bargaining agreement or state law. As the court said in 2007, the Union should have a place at the bargaining table. (Sept. 5, 2007 Mem. and Order at 10.) But it must seek that place based on legally cognizable and otherwise un-represented rights. The motion to intervene is denied without prejudice.[4]

## II. THE UNION'S MOTION FOR INTERVENTION REGARDING EXAMINATION OBJECTION PROCEDURES

The Union moves to intervene as of right or, in the alternative, with the court's permission as a non-aligned party so that it may oppose the City's motion for a change in examination objection procedure. (Union Jan. 10, 2012 Intervention Mot. (Docket Entry # 789).) The City agrees that the Union should be able to intervene as of right or, in the alternative, permissively. (City Jan. 17, 2012 Intervention Reply Mem. (Docket Entry # 795) at 3-4 .) The United States and Plaintiff-Intervenors do not oppose a grant of permissive intervention and do not take a position on intervention as of right, except to disagree with how broadly the Union's interest should be characterized. (Id. at 4 n.1.)

Because the existing parties do not oppose the Union's permissive intervention on this issue, the court focuses its analysis on whether the Union's request for permissive intervention should be granted. Granting a request for permissive intervention is in the court's discretion. The first requirement for such intervention is a "claim or defense that shares with the main action

---

[4] The court reserves decision on the eligibility criteria for non-hire victims interested in becoming entry-level firefighters through priority hiring.

6

a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Rule 24(b)(3), and may consider additional factors such as whether the putative intervenor will benefit from the application, the nature and extent of its interests, whether its interests are represented by the existing parties, and whether the putative intervenor will contribute to the development of the underlying factual issues. United States Postal Serv. v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978) (quoting Spangler v. Pasadena City Board of Educ., 552 F.2d 1326, 1329 (9th Cir. 1977)).

The Union satisfies the requirement for permissive intervention. The Union claims certain statutorily-given rights for its nominee to the Exam 2000 Test Validation Board ("TVB"). (Union Jan. 10, 2012 Intervention Mem. (Docket Entry # 790) at 9-10.) As discussed in more detail in the next section, New York Civil Service Law § 50-a specifies that after the City administers a civil service entrance examination, it should create a TVB of three individuals: one chosen by the City's personnel director; one chosen by the personnel director from a list of incumbent employees nominated by the Union; and one chosen jointly by the first two. See N.Y. Civil Service Law § 50-a (McKinney 2011). Thus, one of the members of the TVB will be a member of the Union and nominated by the Union.[5] The Union's claims on behalf of its nominee to the TVB share a common question with the one aspect of this litigation because, as detailed in greater detail in the section below, the City asks the court to permit it to select the TVB's third member in a way which diminishes the Union's statutorily-given interest. (City

---

[5] The Union also suggests that, because the third member of the TVB is typically also a firefighter and member of the Union, it has a legal interest in ensuring that the third member is also a union member. (Union Jan. 10, 2012 Intervention Mem. at 10.) The United States and Plaintiff-Intervenors take issue with this characterization. (City Jan. 17, 2012 Intervention Reply Mem. at 4 n.1.) The court is also unconvinced that the tradition of selecting the third member from among the Union constitutes a legally protected interest. However, it is unnecessary for the court to resolve that issue as the Union's motion carries the day even without the court crediting that additional argument.

7

Dec. 15, 2012 Examination Objection Mem. (Docket Entry # 776-1) at 11.) Thus, on the issue of the relief the City requests with regard to the TVB, the Union's legal rights are implicated in this case.

The Union has moved to intervene on this issue on the schedule the court has set (see Dec. 16, 2011 Scheduling Order (Docket Entry # 780)), and presents its opposition to the City's requested relief together with its motion to intervene. Thus, the Union's intervention on this issue is timely and will not delay the court's consideration of the City's motion; no other prejudice to the rights of the existing parties is apparent; and, as noted above, none of them object to intervention on this issue. With respect to the discretionary considerations that guide the court's decision to permit permissive intervention, none of the existing parties are ready to protect the Union's interest. Indeed, the City actively seeks the diminution of the Union's interest, and the United States and Plaintiff-Intervenors do not oppose to the City's request. ( City Dec. 15, 2012 Examination Objection Mem at 3.) Finally, because the Union is the only opponent to the City's motion, the Union's input on this issue will contribute to the court's evaluation of the motion. For these reasons, the court exercises its discretion in favor of permissive intervention; the Union's request for permissive intervention limited to this issue is granted.

### III. THE CITY'S MOTION FOR MODIFICATION OF EXAMINATION OBJECTION PROCEDURE

As discussed above, New York Civil Service Law § 50-a specifies that after the City administers a civil service exam, it must convene a TVB to hear objections about test questions from disappointed applicants; the statute specifies that the TVB for a given examination will be composed of a nominee of the personnel director, a nominee of the relevant union, and a third member selected jointly by the first two. See N.Y. Civil Service Law § 50-a. Section 50-a also

8

instructs the City to give disappointed applicants 30 days to review the answer key and decide whether to object to the answer that the City believes is the correct one. Id. Once applicants have made objections, the TVB considers whether the objections demonstrate that the disappointed applicants gave an answer that was "as good or better" than the answer listed in the City's answer key. Id.

The City, with the consent of the United States and Plaintiff-Intervenors, now moves the court for permission to change two aspects of examination objection procedures for objections to questions in Exam 2000 in ways that contradict § 50-a. (City Dec. 15, 2012 Examination Objection Mem. at 3.) Specifically, the City requests that the court allow it to select Dr. Shane Pittman, a testing expert who has been a consultant to Special Master White, as the third member of the TVB, without the Union's consent. (City Dec. 15, 2012 Examination Objection Mem. at 3.) The City also asks the court to allow it to administer review sessions in which disappointed applicants can view their answers and the model ones on a computer and make a decision to object or waive the chance to do so during that session (rather than giving applicants a 30-day window for objections). (Id.)

As the City notes, the court has broad equitable power in post-liability Title VII cases. (City Dec. 15, 2012 Examination Objection Mem. at 9-10.) The Supreme Court has held that a district court presiding over a Title VII case should use that broad equitable power to "fashion the most complete relief possible" while fulfilling the court's "duty to render a decree which will so far as possible . . . bar like discrimination in the future." Bhd. of Teamsters v. United States, 431 U.S. 324, 364 (1977) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 418 (1975)). With respect to employment testing cases, district courts have the power to order compliance relief which specifies "procedures and standards for a new, valid selection

9

procedure . . . ." <u>Guardians Ass'n of the New York City Police Dep't v. Civil Serv. Comm'n</u>, 630 F.2d 79, 108 (2d Cir. 1980). In this case, the court has ordered compliance relief in the form of the development of a new entry-level firefighter exam. (Jan. 21, 2010 Mem. & Order at 31, 54.) As part of that compliance relief, the court has the power to authorize the City to alter the way exam objections are evaluated.

The court first considers the City's request to modify the method of selecting the third member of the TVB for Exam 2000. The City argues that the presence of two people who are not testing experts on the TVB—common under the existing TVB selection procedure—may undermine the months of work the parties have invested in creating a valid and legal exam. (City Dec. 15, 2012 Examination Objection Mem. at 7.) For example, the parties' testing experts are analyzing the results of sample questions distributed to current firefighters to develop a statistical correlation between successful job performance and success on the exam. (<u>Id.</u> at 5.) This form of validation is only one of several forms of review that the parties hope will ensure a job-related exam in compliance with the Second Circuit's seminal case on employment testing, <u>Guardians Association of the New York City v. Civil Service Commission</u>, 630 F.2d 79, 108 (2d Cir. 1980). (<u>Id.</u>) However, the City argues, if inexpert members of the TVB do not understand the connection between the exam questions and the position of entry-level firefighter, then those members may vote to accept additional answers or even invalidate questions. (<u>Id.</u> at 7.) The choices the TVB makes will shape the final composition of the exam, and, if those choices are done without the requisite care, then the City will have greater difficulty proving to the court that Exam 2000 complies with federal law. (<u>Id.</u>)

The Union argues that the City's motion is made without any statistical evidence in support of the idea that lay-dominated TVBs invalidate questions inappropriately. (Union Jan.

10

10, 2012 Intervention Mem. at 15-16.) The Union also argues that the City simply assumes that a TVB composed of two lay members will invalidate questions when invalidation is not appropriate. (Id. at 16-17.) In short, the Union argues that the City's motion is based on conjecture, and that the court should not alter the TVB composition based only on the City's conjecture. (Id. at 18-19.)[6]

The implication of the Union's argument is, essentially, that the court should wait until the end of the objection process and then consider whether the TVB did or did not reduce the job-relatedness of the exam. Certainly, waiting until the end of the objection process is a possible method of resolving the City's concern. However, that method would place a great burden on many actors: The parties and their experts would comb through the results of the TVB process and then file technical reports with the court about whether and to what extent the TVB's decisions reduced the validity of the overall exam. In the meantime, the 60,000 individuals who have signed up to take Exam 2000 would wait even longer to know their scores and whether the exam itself is valid. (See City Oct. 25, 2011 Letter (Docket Entry # 751) at 1.) The court is mindful of the Union's interest in the selection of the third member of the TVB; however, given the strong interest that multiple entities—the City, the United States, Plaintiff-Intervenors, and tens of thousands of applicants for the position of entry-level firefighter—have in the problem-free administration of Exam 2000, the court concludes that the Union's interest must yield. The City's request to appoint Dr. Shane Pittman as the third member of the TVB is granted.

---

[6] The Union further argues that Dr. Pittman is a co-developer of the exam, and it would be inappropriate for a co-developer of the exam to be involved in considering objections to the exam's model answers. (Id. at 19.) As the City's reply memorandum and supporting exhibits make clear, however, Dr. Pittman has not been a co-developer of Exam 2000. (City Jan. 17, 2012 Intervention Reply Mem. at 6-8.) She has been a technical advisor to Special Master White, who has been monitoring the development of the exam; as the City's attorney succinctly describes, "Dr. Pittman has functioned as a monitor and not as a creator of Exam 2000." (Decl. of Georgia Pestana (Docket Entry # 795-1) at 3.)

11

The court next considers the City's second request regarding the window for making objections. Because Exam 2000 will be a computer-based test that will include both multiple choice and open response questions, and that will exist in multiple versions to maintain the integrity of the exam, it would be difficult for the test administrators to create a single unified key to distribute to applicants. (City Dec. 15, 2012 Examination Objection Mem. at 7-8.) Administering review sessions where applicants may review their answers and the model answers on a computer is a logical adaptation in light of the new exam format. As the City explains in its request to shorten the period for objections, because Exam 2000 is designed to test skills, abilities, and other characteristics—rather than technical knowledge (which successful applicants will learn in the Fire Academy)—there are no technical manuals or other external resources against which applicants may compare the answer key. (Id. at 9.) The court agrees that a longer period for objections would not aid the applicants' ability to make decisions about whether to appeal or not. As the City suggests, a longer period for objections would only slow the process of grading the exam and finalizing the results. (Id.) The City also draws the court's attention to the regulations that govern most civil service examinations administered in New York State outside of New York City: Section 55 of Title 4 of the New York Compilation of Codes, Rules, and Regulations. Applicants who take exams administered under this regulation must make objections on the day they review their answers. See Id., § 55.4. The period for filing objections in other areas of the state, then, is equivalent to the period that the City proposes for Exam 2000. The court sees no problem with adhering to a format that has been used successfully in administering other New York civil service exams. Finally, none of the existing parties, nor the Union, have objected to this change, and no other third party has come forward

12

seeking to oppose it. Therefore, the City's request to modify the test objection procedure as proposed is granted.

## IV. DELLA VALLE'S REQUEST TO INTERVENE

Gregory Della Valle, acting through Attorney Keith Sullivan, has asked the court for leave to file a motion to intervene. Della Valle is a former United States Marine who took Exam 2043 as a candidate for an entry-level firefighter position before joining the military, and was placed on a special military list for an entry-level firefighter position. (Della Valle Dec. 13, 2011 Intervention Letter (Docket Entry # 771) at 3-4.) See N.Y. Military Law § 243(7) (specifying when a special military list may be created for members of the military who are placed on eligible hire lists after a competitive civil service examination). Della Valle seeks clarification on whether the City will utilize the Exam 2043 special military list in hiring firefighters and whether the court's prior orders permit or prohibit the use of a special military list composed of candidates from Exam 2043. (Della Valle Dec. 13, 2011 Intervention Letter at 1; Della Valle Jan. 3, 2012 Letter at 1.) The existing parties oppose Della Valle's request to intervene. (City Jan. 17, 2012 Letter in Opposition to Intervention (Docket Entry # 793) at 1; United States Jan. 17, 2012 letter in Opposition to Intervention (Docket Entry # 794) at 1.) The court denies this request to file an intervention motion; however, both the instant Memorandum and Order and the letters written by the parties in response to Della Valle's counsel's letter may provide the clarification that Della Valle seeks.

The City first offered Della Valle a position as an entry-level firefighter and then rescinded that offer in December 2008. (See Letter of Dec. 11, 2008 from Assistant Commissioner for Human Resources Donay Queenan to Gregory Della Valle (Della Valle Dec. 13, 2011 Intervention Letter at 10)).) As the letter the City sent to Della Valle explains, the City decided to rescind this offer of employment due to its budgetary concerns, not because of any

13

order of this court. (Id.) Indeed, when the City rescinded the job offer, the court had not yet ruled that the City's use of Exam 2043 violated Title VII. (See July 22, 2009 Mem. & Order (Docket Entry # 294).) The City apparently never renewed its job offer, and the special military list on which Della Valle had been placed expired in September 2010 in accordance with state law. See N.Y. Military Law § 243(7) (special military lists last for two years). (See also City Jan. 17, 2012 Letter in Opposition to Intervention at 1.) The City has never before raised the issue of Exam 2043 special military list candidates with the court, and the court neither prohibited nor endorsed the use of the list or an extension of the list's life.[7] The one document on the docket of this case that does reference Exam 2043 special military lists was not an order of the court, but rather a proposed order submitted by the United States, which the court did not endorse. (See United States' Revised Proposed Relief Order (Docket Entry # 619-4) at 7.) In short, the issue of Exam 2043 special military lists has not been litigated in this case, and to the best of the court's knowledge, the validity of those lists had not been affected by any of the court's decisions prior to December 8, 2011.

On December 8, 2011, the court issued its Remedial Order, Partial Judgment and Injunction, and Order Appointing Court Monitor. (Docket Entry # 765.) In that order, the court enjoined the City from using Exam 2043 in the selection of entry-level firefighter candidates. (Id. at ¶ 14.) The plain terms of the court's December 2011 Order would appear to enjoin the City from hiring from a special military list based on Exam 2043. However, if the City concludes that the referenced portion of the December 2011 Remedial Order conflicts with the City's obligations under state law, it is certainly free to move the court for a modification. As the City's reply to Della Valle's letter makes clear, it does not so move at this time, and it

---

[7] When, in the summer of 2010, the City did inform the court that it intended to end its budget-based hiring freeze and hire a new class of entry-level firefighters, it expressed the intent to hire from the Exam 6019 candidate list. (City June 29, 2010 Letter (Docket Entry # 456) at 1.)

14

believes that the list that Della Valle was part of is no longer valid. (City Jan. 17, 2012 Letter in Opposition to Intervention at 1.) Thus, the court's December 2011 Remedial Order did not impact Della Valle's legal interests. Della Valle has no grounds on which to seek intervention, and his request to do so is denied.

## V. PLAINTIFF-INTERVENORS' MOTION FOR PARTIAL FINAL JUDGMENT

Plaintiff-Intervenors move for a partial final judgment, pursuant to Rule 54(b), regarding Mayor Michael Bloomberg and former Fire Commissioner Nicholas Scoppetta (the "Individual Defendants"). Plaintiff-Intervenors brought claims against the Individual Defendants when they sought to intervene in this suit. (Pl.-Intervenors' Compl. (Docket Entry # 20) at ¶¶ 28-29.) Plaintiff-Intervenors alleged that the Individual Defendants, along with the City, violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; New York Executive Law §§ 290-296; and New York City Administrative Code §§ 8-101. (Pl.-Intervenors' Compl. ¶¶ 57-61.) The court dismissed Plaintiff-Intervenors' Title VII claims against the Individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), and granted summary judgment to the Individual Defendants on all the remaining claims against them, due to qualified immunity as to the remaining federal claims and official immunity as to the state law claims. (Jan. 12, 2010 Mem. & Order (Docket Entry # 385) (the "Disparate Treatment Opinion") at 20, 68.) The court thus disposed of all of Plaintiff-Intervenors' claims against the Individual Defendants. In the same opinion, the court also granted summary judgment against the City regarding Plaintiff-Intervenors' claims of disparate treatment in violation of federal, state, and local law; intentional discrimination of the Equal Protection Clause and 42 U.S.C. § 1981; and disparate impact in violation of state and local law. (Disparate Treatment Opinion at 40, 61, 63, 69.)

The City has now attempted to appeal the court's grant of summary judgment against the City on disparate treatment. See Br. for City at 68-84, United States et al. v. City of New York, No. 11-5113-cv (2d Cir. Jan. 17, 2012).[8] After the City filed its notice of appeal, Plaintiff-Intervenors moved this court for an entry of partial final judgment as to the Individual Defendants, so that they may cross-appeal of the court's rulings on the liability of the Individual Defendants. (Pl.-Intervenors Jan. 5, 2012 Letter (Docket Entry # 786).) Plaintiff-Intervenors argue that, in light of the City's appeal of the disparate treatment liability decision, a cross-appeal of the court's decisions in favor of the Individual Defendants would promote judicial economy. (Pl.-Intervenors Dec. 28, 2011 Rule 54(b) Mem. (Docket Entry # 798) at 9.) The City objects to Plaintiff-Intervenors' motion; it argues that partial final judgment should only be granted where there is a risk of hardship or injustice, and Plaintiff-Intervenors have not shown that either will result from waiting until the case fully concludes before appealing the court's rulings in favor of the Individual Defendants. (City Jan. 13, 2012 Opposition to Rule 54(b) Mem. (Docket Entry # 799) at 4.)

An entry of partial final judgment under Rule 54(b) is appropriate only where: (1) a case includes multiple defendants or claims; (2) at least one claim, or the rights of at least one party, have been finally adjudicated; and (3) the district court expressly determines that "there is no just reason for delay." Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1091 (2d Cir. 1992). The City and Plaintiff-Intervenors agree that in the current case there are multiple claims and defendants, and that the rights of the Individual Defendants have been finally adjudicated in the

---

[8] The City has filed an appeal of the Remedial Order and Partial Judgment, Permanent Injunction, and Order Appointing Court Monitor. (See Dec. 6, 2011 Notice of Appeal and Dec. 8, 2011 Notice of Appeal (Docket Entries ## 766, 770).) The City argues on appeal that the Disparate Treatment Opinion is so intertwined with the injunction it challenges that the Disparate Treatment Opinion is properly before the Court of Appeals as well. Br. for City at 3, United States et al. v. City of New York, No. 11-5113-cv (2d Cir. Jan. 17, 2012). The court will not opine on whether the City is correct in that belief, but does accept it as plausible for the purpose of deciding the instant motion.

court's Disparate Treatment Opinion. (Pl.-Intervenor Dec. 28, 2011 54(b) Mem. at 6-7; City Jan. 13, 2012 Opposition to Rule 54(b) Mem. at 1-2.) What remains is for the court to decide whether there is "no just reason to delay" in entering the judgment. The Second Circuit has instructed district courts that they may exercise their discretion to determine that there is no just reason for delay only if (1) the claims that remain before the district court are wholly separable from the claim that has been wholly adjudicated, so that the actions of the district court with regard to the remaining claims do not moot the issue pending before the Court of Appeals, Ginett, 962 F.2d at 1095; and (2) there exists "some danger of hardship or injustice through delay which would be alleviated by immediate appeal," e.g., "where an expensive and duplicative trial could be avoided . . . ." Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir. 1987) (internal quotations and citations omitted) (overruled on other grounds, Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143 (1987)). In exercising the discretion to order a partial final judgment, the district should be guided by "the goal of judicial economy as served by the 'historic federal policy against piecemeal appeals.'" O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 41 (2d Cir. 2003) (quoting Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980)).

As Plaintiff-Intervenors rightly note, the claims that they raised against the Individual Defendants are wholly separable from the issues that remain for this court to determine. The outstanding issues before this court (excepting those issues that have been brought to the Court of Appeals by the City's appeal of the partial judgment and injunction) are remedial issues which flow directly from the court's disparate impact liability finding. Specifically, the court must decide on an award of backpay; issue orders regarding priority hiring and retroactive seniority;

consider Plaintiff-Intervenors' request for an award of non-economic, compensatory damages;[9] and address compliance relief, including issues related to the validity of Exam 2000. None of these issues require the court to reconsider whether the Individual Defendants should be held liable for intentional discrimination. Thus, this court's remaining work will not interfere with the Court of Appeals' review of this court's conclusion that the Individual Defendants are immune from liability. The first criterion for partial final judgment is therefore met in this instance.

Additionally, the court believes that issuing a partial final judgment will alleviate potential hardships and promote judicial economy—both at the Court of Appeals and before this court. First, with regard to the efficiency of the appellate court, it is possible that the current appeal will be the only appeal of this case. The court remains hopeful, for all parties concerned, that the remaining remedial issues can be resolved consensually, leaving no reason for an appeal of the court's future remedial orders or the underlying disparate impact liability finding. If this hope comes to pass, then the only issue left for the Court of Appeals to review would be the court's rulings against Plaintiff-Intervenors and in favor of the Individual Defendants. Rather than require Plaintiff-Intervenors to wait until final judgment on all issues, and then take a piecemeal appeal of their claims against the Individual Defendants, the court will allow Plaintiff-Intervenors to take a cross-appeal now, when the court knows that the Court of Appeals has already been asked to review a portion of this case. Of course, it is impossible to force the parties to avoid piecemeal appeals—one party has already chosen to appeal a portion of the case now, and after the conclusion of the remaining issues of the case, the parties will have the right

---

[9] Plaintiff-Intervenors' request for compensatory damages for the loss of non-economic benefits is pursuant to both the court's finding of disparate treatment liability under federal law and its finding of disparate impact liability under state and local law. See N.Y. Exec. L.297(9); Cullen v. Nassau Cnty. Civil Serv. Comm'n, 53 N.Y.2d 492, 496 (1981). The court's finding of liability for disparate impact discrimination under state law was issued as part of the court's Disparate Treatment Opinion; however, the City has not challenged that decision on appeal. See Br. for City, United States et al. v. City of New York, No. 11-5113-cv (2d Cir. Jan. 17, 2012).

to appeal the court's decision on disparate impact discrimination and the resulting remedial orders.  Thus, it may be that the parties twice ask the Court of Appeals to review aspects of this one case.  However, even knowing that piecemeal appeals are a possibility, the court should allocate the claims against the Individual Defendants to one appeal or the other in a way that promotes judicial efficiency.  Allowing a cross-appeal now is clearly more efficient from the perspective of appellate review: The claims against the Individual Defendants were disposed of on the same summary judgment record and in the same opinion that the City has now brought before the Court of Appeals.  Granting partial final judgment on the claims against the Individual Defendants and allowing the cross-appeal means that the Court of Appeals may need to review that opinion and record once, even if the *case* comes before that court a second time.

  Second, the court is mindful of the greater efficiency for its own resources, and the resources of the litigants who appear before it, that can be gained by enabling a cross-appeal at this time.  If the City is correct that the Court of Appeals should review the court's decision on disparate treatment liability now, and is correct that the court's decision should be vacated, then the court would hold a trial on disparate treatment.  Such a trial would be a long and expensive ordeal for all concerned—the court, the City, and Plaintiff-Intervenors.  Then, after that trial, and after the conclusion of all the remaining issues of this case, Plaintiff-Intervenors would seek a cross-appeal of the court's determination that the Individual Defendants are immune from suit in this case.  If the Court of Appeals agrees with Plaintiff-Intervenors, then the court will be required to hold an additional trial, considering much of the same evidence and testimony which would be required for the first hypothetical trial.  The court, the City, and Plaintiff-Intervenors would again spend a great deal of time and resources on such a trial.  "Where an expensive and

duplicative trial could be avoided," a partial final judgment is an appropriate way to avoid hardship and promote judicial efficiency. Cullen v. Margiotta, 811 F.2d at 711.

For all of the foregoing reasons, the court concludes that there is no just reason to delay and determines that partial final judgment should issue on Plaintiff-Intervenors' claims against the Individual Defendants, pursuant to Rule 54(b).

## VI. CONCLUSION

As set forth above, the court DENIES the Union's request to intervene on the issue of whether priority hires must take Exam 2000 without prejudice; GRANTS the Union's request to intervene on the limited issue of the composition of the TVB; GRANTS the City's request to modify examination objection procedure for Exam 2000; DENIES Della Valle's request to intervene; and GRANTS Plaintiff-Intervenors' motion for partial final judgment. The Court directs the Clerk of Court to issue a partial final judgment on Plaintiff-Intervenors' claims against Defendants Mayor Michael Bloomberg and Fire Commissioner Nicholas Scoppetta.

SO ORDERED.

Dated: Brooklyn, New York  
      February 1, 2012

/S/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge