# LEVY RATNER, P.C.

Attorneys at Law
80 Eighth Avenue, 8th Floor
New York, New York  10011-5126

Telephone (212) 627-8100
Telecopier (212) 627-8182
www.levyratner.com

Richard A. Levy
Daniel J. Ratner
Daniel Engelstein°
Gwynne A. Wilcox ᐃ
Pamela Jeffrey
Owen M. Rumelt
Kevin Finnegan
Carl J. Levine ᐃ
David Slutsky ᐃ
Allyson L. Belovin
Suzanne Hepner •
Richard Dorn
Robert H. Stroup

Dana E. Lossia ᐃ
Susan J. Cameron ᐃ
Micah Wissinger •
Ryan J. Barbur
Vanessa Flores ᐃ
Alexander Rabb
Michael R. Hickson
Shira T. Roza
Laureve D. Blackstone ᐃ

Counsel:
Paul Schachter ᐃ
Anthony DiCaprio
Michael Steven Smith
David P. Horowitz †

February 27, 2012

*VIA ECF*

Hon. Nicholas G. Garaufis
United States District Court for
   the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

    Re:    United States, et al. v. City of New York
             Civ. Action No. 07-cv-2067 (NGG) (RLM)

Dear Judge Garaufis:

      Plaintiffs-Intervenors write to respond to the City of New York's letter of February 24, 2012 (Dkt. 817), which asks the Court to defer individual relief determinations regarding backpay, other equitable relief and noneconomic damages, pending the City's appeal of this Court's finding of intentional discrimination.  Plaintiffs-Intervenors oppose the City's request for both legal and practical reasons, and in the interest of justice for the victims of discrimination.

      As an initial matter, the City has not challenged the award of backpay, priority hiring or other equitable relief to which the Non-Hire and Delayed-Hired Subclass members are entitled.  While the City now purports to challenge the basis for an award of noneconomic damages, its appeal does not effectuate such a challenge.  The New York State and City Human Rights Laws both provide for the recovery of noneconomic compensatory damages, *see Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F.Supp.2d 555 (S.D.N.Y. 2008) (awarding compensatory and punitive damages under the State and City Human Rights laws), and – unlike Title VII – neither law contains language precluding such recovery where there is a finding of disparate impact liability without proof of intentional discrimination.  *See* NYC Admin. Code § 8-120(8) (providing for compensatory damages in the administrative process); § 8-502(a) (authorizing damages in civil action); N.Y. Executive Law § 297(4) (compensatory damages available in the administrative process); Exec. Law § 297(9) (compensatory damages available in a judicial proceeding).

      Accordingly, the Non-Hire Victim Subclass and the Delayed-Hire Victim Subclass are entitled to noneconomic damages pursuant to this Court's finding of disparate impact

Hon. Nicholas G. Garaufis
February 27, 2012
Page 2

discrimination under New York State law and New York City law, which are not being appealed. (Dkt. 385) The outcome of the City's appeal from the Court's finding of disparate treatment discrimination, therefore, has no bearing upon black victims' entitlement to noneconomic damages for their loss of enjoyment of life, inconvenience, loss of prestige, or other non-monetary harms resulting from the discriminatory denial of equal employment opportunity.

Moreover, it remains to be seen whether the Second Circuit Court of Appeals will even reach the question of the City's liability for disparate treatment in the current appeal. Substantial authority supports affirming the Court's grant of injunctive relief based upon a finding of disparate impact discrimination alone. *See, e.g., Local 28 of the Sheet Metal Workers International Association v. EEOC*, 478 U.S. 421, 433 (1986) (in a disparate impact case, noting that district court had appointed an administrator with broad powers to oversee, *inter alia*, "extensive recruitment and publicity campaigns aimed at minorities"); *Lewis v. City of Chicago*, No. 98 C 5596, 2007 U.S. Dist. LEXIS 24378 (N.D. Ill. Mar. 20, 2007), *aff'd in part and rev'd in part on other grounds*, 643 F.3d 201 (7th Cir. 2011) (after a finding of disparate impact discrimination, a special master was appointed to monitor treatment of black priority hires in Chicago Fire Department's fire academy); *Newark Branch, NAACP v. Harrison*, 940 F.2d 792, 806 (3d Cir. 1991) (in a disparate impact case, affirming an injunction requiring the City to "adopt and implement affirmative recruitment activities directed towards potential black applicants" including "paid radio station advertising and public service announcements on radio stations 'having a large black audience' and having as their goal 'the recruitment of black applicants for each position or examination in numbers reflecting their availability in the job category being filled'"); *NAACP v. Town of E. Haven*, 998 F. Supp. 176, 187-88 (D. Conn. 1998) (in a disparate impact case, ordering targeted recruitment relief to "achieve equal employment opportunity and to remove the barriers that have operated to favor white male employees over other employees," even though no recruitment claim was brought); *N.A.A.C.P. v. Town of E. Haven*, 259 F.3d 113, 117 (2d Cir. 2001) (noting that district court decree in disparate impact case had required the City to consult with independent testing agencies in selecting and administering hiring tests); *Commonwealth of Pennsylvania v. Glickman*, 370 F. Supp. 724, 737 (W.D. Pa. 1974) (in disparate impact case, ordering fire department to "take all necessary steps with all reasonable diligence to recruit eligible blacks to take the eligibility exam"); *McClain v. Lufkin Indus.*, No. 9:97-63 2010 WL 455351, at *4-*5 (E.D. Tex. 2010) (upon a finding disparate impact discrimination, appointing outside Ombudsperson to monitor compliance and to investigate and attempt to resolve discrimination and retaliation complaints from class members); *Gregory v. Litton Systems, Inc.*, 316 F. Supp. 401, 402-04 (C.D. Cal. 1970) (upon a finding of disparate impact discrimination, enjoining defendant from seeking information from applicants "concerning their prior arrests which did not result in conviction" and from using as a factor in hiring "any record of arrest which did not result in conviction"); *Reynolds v. Sheet Metal Workers Local 102*, 498 F. Supp. 972, 975 (D.D.C. 1980) (upon a finding of disparate impact discrimination, enjoining employer from relying on arrest records to select apprentice candidates and ordering it to take affirmative steps to notify the black community of the elimination of past discriminatory hiring practices).

56-001-00001: 10094866



LEVY RATNER, P.C.

Hon. Nicholas G. Garaufis
February 27, 2012
Page 3

      The injunctive relief imposed by this Court is particularly appropriate given the factual circumstances of this case, including *inter alia*, a 40-year history of discrimination ignored by successive administrations, resulting in the near-total exclusion of blacks from the FDNY. (Dkt. 385) The Court of Appeals should uphold this Court's injunctive relief order solely on the basis of the disparate impact finding, and thus would have no reason to reach this Court's finding of intentional discrimination.

      Finally, the City's request to halt the proceedings in this matter does not meet – or even purport to meet – the standard for granting a stay pending appeal.[1] The City has not made the requisite "strong showing that [it] is likely to succeed on the merits" nor has it demonstrated (or even claimed) that it "will be irreparably injured absent a stay." *Nken v. Holder*, 129 S. Ct. 1749, 1760 (2009). Rather, the City asserts an interest in the efficiency of the proceedings before a Special Master. That interest, however, is not sufficient to overcome the substantial injury that would result to the victims of discrimination by a lengthy delay in obtaining relief. The resolution of the Second Circuit appeal could take many months – perhaps even a year or more – given the numerous issues raised, the size of the record on appeal and the Circuit Court's decision not to expedite its consideration of the appeal. (2d. Cir. Dkt. 11-5113, Doc. No. 43). A further appeal to the United States Supreme Court is also conceivable, which would result in an additional lengthy delay.

      For the above reasons, Plaintiffs-Intervenors request that the City's motion to defer individual relief proceedings be denied in its entirety.

Respectfully submitted,

*Richard Levy* (DEL)

Richard A. Levy

DEL:del

TO:  All counsel via ECF.

---

[1] The one case cited by the City, *Wattleton v. Ladish Co.*, 520 F. Supp. 1329, 1350 (E.D. Wis. 1981), is outside of this Circuit and omits any discussion of that Court's reasons for deferring appointment of a special master until after the disposition of an appeal.

56-001-00001:  10094866