**COHEN & GRESSER LLP**

800 Third Avenue
New York, New York 10022
212 957 7600 phone
212 957 4514 fax
www.cohengresser.com

Mark S. Cohen
212 957 7601
mcohen@cohengresser.com

March 16, 2012

<u>VIA ECF</u>

Hon. Nicholas G. Garaufis
United States District Judge
U.S. District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:   <u>United States v. City of New York, No. 07-CV-2067(NGG)(RLM)</u>

Dear Judge Garaufis:

     This letter responds to the letter of March 8, 2012 (the "Letter") in which Defendant City of New York (the "City") requests that the Court direct the Monitor to provide the City with contemporaneous hourly billing records, and states that it was "surprised" by the Court Monitor's First Statement of Fees and Expenses (the "Statement").

     The Monitor respectfully submits that the City's request to review "contemporaneous hourly billing records" or other details related to the Monitor's fees beyond those contained in the Statement should be denied for the reasons set forth below.

### The Court's Orders Governing Compensation for the Monitor

     The procedures for the submission and evaluation of the Monitor's fees and expenses are plainly set forth in the Court's Order Establishing Rate of Court Monitor Compensation ("Order Establishing Monitor Compensation") (Docket # 768). The Court's Order Establishing Monitor Compensation provides:

> As set forth in the court's Remedial Order, the Court Monitor shall submit an itemized statement of fees and expenses to the court every 60 days. If the court determines the Monitor's fees and expenses are reasonable, and consistent with the hourly rates set forth above, the court will approve them and transmit a summary of fees and expenses to the parties.

**COHEN & GRESSER** LLP

Hon. Nicholas G. Garaufis
March 16, 2012
Page 2

Order Establishing Monitor Compensation at 4. The City did not object to the payment provisions of this Order when entered.

By its terms, the Order Establishing Monitor Compensation does not authorize the City to review the hourly billing records of the Monitor. Rather, the Order sets out exactly the procedure for submissions that has occurred, which is not disputed by the City's Letter.

### The Monitor's Role Vis-à-Vis the City

As reflected in the Letter, the City's apparent reason for seeking detailed invoices in advance of a specified objection date is to review the invoices with a view toward possibly challenging whether tasks, or aspects of tasks, were necessary or appropriate. Such review would be improper for two reasons.

*First,* the Monitor is not a vendor retained by the City to work at its direction. Rather, the Monitor is an agent of the Court, and works under the Court's supervision to oversee the City's remedial efforts. *See* Remedial Order ¶ 58 (charging the Monitor with "[m]onitoring and reporting on the City's compliance with its obligations under this Order").

In particular, the Monitor is tasked with substantial oversight of the City in the Remedial Order. During the first ninety days of the Monitorship, the Monitor has undertaken significant tasks expressly required by the Remedial Order: *e.g.*, review and approval of the City's consultants, review of the City's Draft Attrition Mitigation Plan and issuance of written recommendations regarding that effort, and creation of a document retention order. *See* Remedial Order ¶¶ 26, 31, 47, 52. In the coming months the Monitor will continue these efforts and will attend the Candidate Investigation Division and Personnel Review Board training sessions, attend all meetings of the Personnel Review Board, and submit a report on the performance of the Personnel Review Board and other post-examination firefighter candidate screening practices. *See* Remedial Order ¶¶ 42, 43, 44. Additionally, the Monitor has met with City personnel in the Monitor's investigative/fact-finding capacity, with a view toward ultimately recommending improvements in areas that may be identified as potentially needing remediation consistent with the Remedial Order. The Monitor has also addressed party disputes presenting serious privacy, Constitutional, and other issues raised by the parties, *id.* ¶ 58, and has twice made formal recommendations to the Court concerning acts recommended to be taken by the City.

As a Defendant in this litigation, it is inevitable that the City may at times take a different view of what is required under the Remedial Order than the Monitor. In such instances the Court, not the City, is the proper entity to determine whether the Monitor is properly carrying out

COHEN & GRESSER LLP

Hon. Nicholas G. Garaufis
March 16, 2012
Page 3

the Court's own Remedial Order. As noted above, the Court is receiving the Monitor's itemized bills, and can adjust them should the Court feel that any task listed there was not appropriately or efficiently undertaken under the Remedial Order. Further, as the Court noted in its Order Establishing Monitor Compensation, "to a great degree, the amount of money the City must expend is in its own hands. The City's overall conduct and level of cooperation will significantly impact the number of hours that the Court Monitor and his team must expend." Order Establishing Monitor Compensation at 4.

Moreover, there are no surprises in the Monitor's Statement. The Monitor's hourly rates were clearly defined – and held to be reasonable – in the Order Establishing Monitor Compensation. *See* Order Establishing Monitor Compensation at 3-4. Indeed, the Court expressly noted in its Order Establishing Monitor Compensation that not only were the Monitor's rates and staffing proposal reasonable, but that "[e]specially at the outset, this complicated project will require a significant expenditure of time." *Id.* at 4.

The Monitor's fees and expenses are fully in line with those in other monitorships. *See, e.g.,* Order Establishing Monitor Compensation at 2-3 (discussing hourly rates charged by monitors and special masters); Sue Reisinger, "Someone to Watch Over You," Law.com (October 1, 2007) (citing fees of $7.2 million over 16 months in monitorship involving public university); September 2011 Form 10-Q of Exactech, Inc. (reflecting quarterly costs associated with corporate monitorship of $951,000); October 2007 Form 8-K for Zimmer Holdings, Inc. (reflecting monitorship fees of $750,000 per month). The fees set out in the Monitor's Statement therefore are reasonable, given the substantial and significant tasks performed by the Monitor.

*Second,* the relief the City requests would improperly give the City access to the thought processes and strategy of the Monitor. The City should not be permitted to know, for example, what lines of research the Monitor may have pursued before reaching a conclusion, or to obtain details regarding the Monitor's drafting of recommendations directed toward the City itself. Were the City to have the chance to review and object to the Monitor's detailed time records, it would create a meaningful risk of collateral disputes over each task being performed by the Monitor, which in turn would be expensive and time consuming, and would divert focus from the remedial goals of the Monitorship. That result would be wholly inconsistent with the Monitor's role as envisioned in the Remedial Order.[1]

---

[1] The Remedial Order expressly protects the Monitor from being compelled to give testimony and accords the Monitor the same exemption from liability for damages as is offered to other federal judicial adjuncts performing similar functions. *See* Remedial Order ¶ 74.

**COHEN & GRESSER** LLP

Hon. Nicholas G. Garaufis
March 16, 2012
Page 4

      Precisely these types of concerns prompted the district court in *Cobell v. Norton*, 223 F. Supp. 2d 156, 159-60 (D.D.C. 2002), to reject a defendant's efforts to object in advance to the fees of the court-appointed monitor in that case, and to object to the adequacy of the monitor's fee disclosures and the nature and scope of the activities for which the monitor sought compensation.

      In particular, the *Cobell* decision notes that in that case – as in the present case – the appointing order specifically tasked the monitor with an investigative role and the ability to engage in confidential and *ex parte* interviews and communications in the course of its investigation. The court held that to require the monitor to provide detail on such tasks would undermine the entire purpose of the order. *See, e.g., id.* at 156 ("It would be manifestly improper for the Court Monitor's compensation requests to violate such confidences by naming the persons with whom he has met or describing the nature of their conversations. It is sufficient that the Court Monitor has advised this Court regarding his meetings and discussions with third parties."). As the *Cobell* court correctly concluded, "[t]o provide defendants access to information about the Court Monitor's discussions regarding defendants' trust reform activities, including the names of persons with whom he conducts such discussions, would allow defendants to influence or control the information that the Court Monitor receives." *Id.* at 160. Further, the court held that cases involving challenges to prevailing party fee awards did not provide useful guidance, "because the Court Monitor is not an adversarial party, and because both the Court Monitor's activities and his compensation requests are subject to monthly review by this Court." *Id.*

      Here, just as in *Cobell*, the Court will review the Monitor's detailed invoices. The Monitor's specific tasks and strategic choices in carrying out the Court's mandate should not be subject to disclosure to, or consent of, the party that is the subject of the judicially-imposed remedy in connection with which the Monitor has been appointed.

<u>Conclusion</u>

      For the foregoing reasons, the Monitor respectfully requests that the Court reject the City's request for contemporaneous hourly billing records from the Monitor.

                                                Respectfully submitted,

                                                Mark S. Cohen

cc:   All Counsel