

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

March 20, 2012

Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>USA v. City</u>, Civil Action No.: 07 CV 2067 (NGG)(RLM)
       Law Dept. No.: 2007-01744

Dear Judge Garaufis:

    I write on behalf of the City in response to the Court Monitor's letter dated March 16, 2012 (Dkt. # 830) regarding the City's request that the Court Monitor submit contemporaneous time records supporting his First Statement of Fees and Expenses.

    Paragraphs 72 and 73 of this Court's Remedial Order and Partial Judgment, Permanent Injunction, & Order Appointing Court Monitor ("Remedial Order") (Dkt. # 765) provide for the Court Monitor's Budget, Compensation and Expenses:

> 72. The City of New York shall fund the Court Monitor's work pursuant to a budget proposed by the Court Monitor and approved by the court. The Court Monitor shall incur only such fees and expenses as may be reasonably necessary to fulfill the Monitor's duties under this Order, or such other orders as the court may issues.
>
> 73. Every 60 days, the Court Monitor shall submit to the court an itemized statement of fees and expenses, which the court will inspect for regularity and reasonableness. If the court determines the itemized statement is regular and reasonable, the court will sign it and transmit it to the

parties. The City shall then remit to the Court Monitor any court-approved amount, within 20 calendar days of court approval.

The Court Monitor has not provided an itemized statement that would allow anyone to assess whether the fees and expenses claimed were reasonably necessary to fulfill the Monitor's duties under the Remedial Order. The very general descriptions of tasks listed in the summary provided by the Court Monitor (Dkt. # 822-1) appear to overlap significantly and do not provide sufficient information from which one could conclude that the extraordinary number of hours claimed for each task were, in fact, reasonably necessary. Further, although the summary covers the period from November 9, 2011-December 31, 2011, the Court Monitor was not appointed and did not actually have any duties to fulfill until the Court issued the Remedial Order on December 8, 2011.[1] Consequently, the period of time for which the Court Monitor seeks an extraordinary $310,758.90 is less than 60 days.

When the City and the Court Monitor were discussing the terms of the Court Monitor's compensation, the City raised the concern that the Court Monitor's proposed team comprised of four partners and two associates would lead to inefficiencies, duplication of effort, and wasteful expenditures of time. (See Dkt. # 762-3, pp. 4-5). While a real itemized billing record might demonstrate that such inefficiencies and duplication of effort did not occur, the summary provided by the Court Monitor in support of his application leads to the conclusion that the City's concerns were not misplaced.

While it is understandable that the Court Monitor, who had no previous involvement with this litigation, would spend time reviewing the Court's orders in this case, more than 147 hours were billed to "Detailed review of record materials and the Court's Orders." Based on the fact that the hours were billed at four different rates, one can conclude that more than one attorney reviewed the unspecified "record materials" and the Court Orders. However, it is not possible to determine how many people reviewed the documents or whether they all reviewed the same materials or to draw any conclusions as to whether it was reasonable for the Court Monitor to proceed in the manner that he did. Similarly, it is not possible to know whether it was really necessary for at least four attorneys to confer/communicate with the Special Master for more than a total of 24 hours or for at least three attorneys to spend more than 23 hours reviewing the City's optional survey for applicants and the scripts being used by the phone bank operated by the FDNY, none of which was a lengthy document.

Further, the general descriptions of the tasks are problematic because there appears to be overlap among the tasks. The Law Department attorneys with day-to-day responsibility for this case who regularly interface with the Court Monitor are unable to assess from the summary provided whether the time expended was reasonable or not. The Court, which is not involved in the day-to-day implementation of the Remedial Order cannot be expected to determine whether the amount billed is reasonable and proper. An itemized statement of fees

---

[1] The Court Monitor was identified in an order dated November 8, 2011 (Dkt. # 758) and filed the affidavit required by Federal Rule of Civil Procedure 53(b)(3) on December 6, 2011.

from which one could discern who was doing what and for how long could dispel the impression that multiple attorneys are duplicating one another's efforts under different task descriptions.

Particularly confounding are the entries for "Telephone conferences and meetings with the parties to discuss open issues and ongoing tasks" and "Miscellaneous conferences and correspondence related to the monitorship." The distinction between these tasks is not clear. Moreover, in light of the fact that, in December, the parties only had three telephone conferences, each of which lasted no more than 30-45 minutes and one meeting with the Court Monitor, which lasted about an hour, "Conferences with the parties . . . regarding the Vulcan Society's request to make home visits to applicants with incomplete applications" and "Assisting the parties in resolving a dispute concerning media coverage of home visits" may actually be the same conferences referred to in the other general entries about conferences with the parties. It may be that different members of the Court Monitor's team are labeling the same tasks differently, but that would still not justify the more than 227 hours attributed by the Court Monitor to conferences with the parties. Similarly, the time spent on ". . . legal research regarding the Vulcan Society's request for make home visits . . ." may overlap with "Drafting and submitting the Monitor's Recommendation to the Court concerning home visits," but it is impossible to determine from the vague summary which does not include the dates when activities occurred or even who performed them.

The justifications for the remarkable bill set forth in the Court Monitor's March 16, 2012 letter are also peculiar. While the Court Monitor asserts in his letter that he has undertaken certain tasks expressly required by Remedial Order (e.g., reviewing and approving the City's consultants) and has met with City personnel, these activities and others he notes in his letter occurred in January and February and are not encompassed within the billing period. Furthermore, the Court Monitor's suggestion that hourly billing records would disclose lines of research he conducted before reaching a conclusion is easily remedied by providing, as he did, a description of the issue (e.g., "legal research regarding the Vulcan Society's request to make home visits to applicants with incomplete applications") without delineating the lines of inquiry. Likewise, while the Court Monitor's duties allow him to have *ex parte* communications and, in fact, he met with FDNY officials and members of the Vulcan Society in January and February, counsel for the parties were aware that the meetings were going to occur and expect to be notified when the Court Monitor is meeting with our clients in the future. Itemizing who on the Court Monitor's staff attended meetings and how long they lasted without describing the substance of the meetings would not present confidentiality concerns, if any exist. Even if the Court Monitor were to interview individuals in the future but, for some reason, thought the parties' counsel should not know who he is interviewing, the Court Monitor should be required to disclose that interviews were occurring and notify the Court who he was interviewing. The case relied on by the Court Monitor, *Cobell v. Norton,* 223 F.Supp. 156 (Dist. Col. 2002), adopted that approach. *Id.* at 160.

The fact that the Court Monitor is not a vendor retained by the City does not give the Court Monitor the latitude to submit vague summaries from which it is impossible to discern how much time was spent by each attorney on particular tasks. As Justice Blackmun noted, " . . . fees and expenses charged by a Special Master, when allowed by this Court represent our assurance to the parties that the charges are reasonable and proper. A party's consent to the allowance of fees and expenses does not absolve this Court of its duty to make that

determination." *State of Kansas v. State of Colorado*, 498 U.S. 933 (1990).[2] This Court's requirement in paragraph 73 of the Remedial Order that the Court Monitor submit an itemized statement which the Court would inspect for regularity and reasonableness requires that the Court Monitor provide a true itemized statement of services that would, in fact, allow the Court to ascertain whether the Court Monitor's fees and expenses were reasonable and proper. It also is essential to ensure that an adequate factual record exists for appellate review. Moreover, as all of the costs associated with the Court Monitor ultimately will be borne by the taxpayers of the City of New York, a detailed accounting of the time and expenses expended by the Court Monitor is necessary to instill public confidence in this process. The vague summary statement provided by the Court Monitor does not comply with paragraphs 72 and 73 of the Remedial Order and do not permit the Court to determine whether the Court Monitor's request for fees is reasonable and proper. As most firms generate computerized billing records for their clients that include contemporaneous records of the work performed, the City requests that the Court Monitor be required to produce such records or a similar itemized statement.

Respectfully submitted,

Michael A. Cardozo

---

[2] This is especially true here as the City objected to the imposition upon it of the full cost of the Court Monitor