**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ APR 20 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                           Plaintiff,

        -and-

THE VULCAN SOCIETY, INC., *for itself and on
behalf of its members*, JAMEL NICHOLSON, *and*
RUSEBELL WILSON, *individually and on behalf
of a subclass of all other victims similarly situated
seeking classwide injunctive relief*;

ROGER GREGG, MARCUS HAYWOOD, *and*
KEVIN WALKER, *individually and on behalf of a
subclass of all other non-hire victims similarly
situated*; and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS,
*individually and on behalf of a subclass of all other
delayed-hire victims similarly situated*,

                    Plaintiff-Intervenors,

        -against-

THE CITY OF NEW YORK,

                    Defendant

        -and-

THE UNIFORMED FIREFIGHTERS ASSOCIATION
OF GREATER NEW YORK,

                    A Non-Aligned Party.

-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-2067 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

      In this Memorandum and Order, the court addresses how retroactive seniority is to be

awarded to Non-Hire and Delayed-Hire Claimants; the time potential claimants and class

members will be given to file claim forms and class opt-out forms; and the language of the

notices, claim forms, and opt-out form.[1]

## I.   Retroactive Seniority

As previously determined in the court's Initial Remedial Order ("I.R.O.") (Docket Entry

# 390 at 22-31), retroactive seniority is an equitable remedy that will be available for some

claimants in this case.  See Franks v. Bowman Transp. Co., 424 U.S. 747, 771 (1976) ("The

denial of seniority relief to victims of illegal racial discrimination in hiring is permissible 'only

for reasons which, if applied generally, would not frustrate the central statutory purposes of

eradicating discrimination throughout the economy and making persons whole for injuries

suffered through past discrimination.'" (quoting Albemarle Paper. Co. v. Moody, 422 U.S. 405,

421 (1975)).  The two categories of claimants who may benefit from this remedy are Non-Hire

Claimants who secure priority hire positions, and Delayed-Hire Claimants.  The court considers

each in turn.

In the I.R.O., the court anticipated that 293 individuals from among the Non-Hire

Claimants would be hired through a priority hiring remedy.  (I.R.O. at 20.)  The court also ruled

that each of these priority hires would be eligible for retroactive seniority.  (Id. at 28.)  The court

considered the difficulty inherent in fixing a presumptive hire date for the priority hires for the

purposes of determining retroactive seniority (id. at 23-25), and concluded that using the median

hire date of hires from the two written examinations was the best method possible under the

circumstances (id. at 28).  The parties now all agree that this method of determining the seniority

of the priority hires is the law of the case.  (See City Apr. 12, 2012 Ltr. (Docket Entry # 851) at

---

[1]      The procedural history of this case is extensive and the court will not summarize it here.  The court has
done so recently, in full or in part, in its Memorandum and Order denying the City's Motion for an Order to Show
Cause (Docket Entry # 846 at 2), its Memorandum and Order considering the extent of monetary liability and the
availability of the defense of mitigation (Docket Entry # 825 at 2-12), and its Memorandum and Order setting forth
its conclusions of law following an August 2011 bench trial (Docket Entry # 743 at 2-5).

2; United States Apr. 12, 2012 Ltr. (Docket Entry # 852) at 2; Non-Hire Subclass Apr. 12, 2012 Ltr. (Docket Entry # 853) at 2.)  Therefore, the seniority of the 293 hires will be based on presumptive hire dates of February 2, 2003, for those hires who took Exam 7029, and June 11, 2006, for those hires who took Exam 2043.

With regard to Delayed-Hire Claimants, the United States had proposed that they receive the same presumptive hire dates as Non-Hire Claimants: i.e., minority firefighters hired after February 2, 2003, from list 7029 or after June 11, 2006, from list 2043 would receive seniority back to those dates. (I.R.O. at 28.)  The effect of the United States' proposal was that a black or Hispanic firefighter hired after the median hire date for each list may be eligible for an increase in seniority, but a firefighter hired before the median hire date of his or her list would not receive any increase in seniority.  In the I.R.O., the court expressed reservations about this proposal (id. at 29) and considered the possibility that retroactive seniority could be distributed by allotting to each minority hire a pro rata share of the years of seniority that the United States' statistician had estimated had been lost (id. at 30 & n.24).  The court did not resolve the appropriate manner in which to determine which Delayed-Hire Claimants should receive retroactive seniority awards in the I.R.O.  (See id. at 30-31.)

The issue of how retroactive seniority is to be awarded to Delayed-Hire Claimants should be resolved now, so that potential claimants can be notified of the awards that they might receive if they file a claim.  The United States has reiterated its position that the court should use the median hire dates as the presumptive hire dates for Delayed-Hire Claimants seeking retroactive seniority.  (United States Apr. 12, 2012 Ltr. at 3.)  The United States argues that no one can say when individual candidates would have been hired absent the influence of the invalid written exams.  (Id. at 3-4.)  Using the actual sequence of when candidates were hired into academy

3

classes would perpetuate the influence of the exams (id. at 4 n.5); for example, the court cannot assume that a minority firefighter hired into the second fire academy class would have been hired into the first class absent the effect of the exams; it might have been the case instead that a firefighter hired into one of the last classes would have been hired into the first class absent the effect of the invalid exams (id. 3-4).

The Delayed-Hire Subclass Representatives agree with the United States' position, for largely similar reasons. (See Delayed-Hire Subclass Apr. 12, 2012 Ltr. (Docket Entry # 854) at 2-3.) The Subclass Representatives add that a pro rata distribution of seniority credit to Delayed-Hire Claimants would not provide "significant relief" to any Claimant. (Id. at 3.) A pro rata distribution would give each claimant additional seniority credit in an amount between three and four months, which, for most claimants, would be too small of an increase in seniority to change their standing relative to the firefighters inducted in the fire academy class hired before the claimant. (Id.) Moreover, Delayed-Hire Claimants hired after the median hiring date could be disadvantaged relative to the priority hires from the Non-Hire Subclass, whose seniority would be measured from that date. (Id.)

New York City opposes awarding retroactive seniority based on the median hire dates. (See City Apr. 12 Ltr. at 2.) The City endorses the counter-proposal that the court offered in the I.R.O.: a pro rata distribution of the amount of seniority the United States' statistician estimated was lost due to the rank-order usage of the exams to each eligible Delayed-Hire Claimant. (Id.) The City's justification for a pro rata approach is that "sufficient evidence exists to make more individualized determinations." (Id.) The City notes that black and Hispanic firefighters who

4

entered the fire academy in the first class hired from either list would not be eligible for relief.[2]
(Id.)

As the United States and the Subclass Representatives state in their letter briefs, it is
impossible for the court to know exactly who would have been hired into the first academy
classes and who would have been hired into the last ones if the invalidated exams had not
existed. Although the court has concluded, based on statistical evidence, that many hires were
delayed due to the invalid exam (see Mar. 8, 2012 Mem. & Order at 6-7; Disparate Impact
Liability Op. (Docket Entry # 294) at 20-22), there is no mechanism for determining which of
the minority firefighters were hired later than they would have been had there been a valid exam,
which were hired earlier than they would have been otherwise, and which, through chance, were
hired approximately when they would have been under a valid hiring regime. The exams that the
court has found to be invalid harmed (an unknowable) many and created windfalls for (an
unknowable) some. Given this reality, a pro rata distribution of lost years of seniority would
largely perpetuate the existing state of injuries and windfalls, with a slight increase for those who
have already received windfalls and a slight reduction in the extent of the harm for those who
have been harmed. The court concludes that the solution that minimizes the injuries and
windfalls created by the invalid exams, and therefore the more equitable solution, is to permit
eligible Delayed-Hire Claimants to receive seniority credit based on the median hiring dates.[3]

---

[2]     The City's comment about the availability of relief for hires from the first fire academy class hired from
each of the two exam lists would appear to have been addressed in the eligibility definitions jointly proposed by the
parties and approved by the court. (See Mar. 8, 2012 Mem. & Order (Docket Entry # 825) at 53.)

[3]     The court is aware that this method of awarding seniority minimizes, but does not necessarily eliminate, all
injuries and windfalls. The only way to do so would be to re-set the seniority of all black and Hispanic firefighters
to the median hire dates. The court will not upset the settled expectations of the firefighters who had been hired
before the median hiring dates in this manner; just as the court ruled in the I.R.O. that it would not upset the settled
expectations of white firefighters hired before the median hiring dates by awarding seniority to Non-Hire Claimants
earlier than the median hiring date. (See I.R.O. at 26-27.)

Because the eligibility criteria proposed by the parties and adopted by the court define an eligible Delayed-Hire Claimant as a black or Hispanic firefighter who was not hired in the first academy classes hired off of the two lists (see Mar. 8, 2012 Mem. & Order at 53), the rule the court adopts will create an asymmetry between backpay and seniority relief to a certain extent. However, the fact that there is an asymmetry between monetary and non-monetary relief is not by itself a reason to reject the United States' position. In the Non-Hire Victim context, the court's orders envision many more claimants receiving monetary relief than will receive priority hire positions. Moreover, the rule the court chooses makes up for this asymmetry with two additional advantages: it uses the same method of awarding seniority for Delayed-Hire Claimants as will be used with the priority hires, and thus places most of the victims of the invalid exams on equal footing; and, because of its simplicity, it is the most administratively efficient rule to apply.

Finally, the court notes that the parties agree that the seniority awards should not displace minimum time-in-grade requirements that exist under preexisting FDNY rules (for example, a requirement that a firefighter spend a minimum number of years as an entry-level firefighter before sitting for a promotional exam). (Delayed-Hire Subclass Apr. 12, 2012 Ltr. at 4.) The court agrees that seniority awards will not displace such rules, to the extent they exist. With that caveat in mind, the court approves using the median hiring date of candidates from each exam

6

for awards of seniority for both priority hires from the Non-Hire Claimants and eligible Delayed-Hire Claimants.[4]

## II.    Length of Time for Putative Claimants/Class Members to Mail Forms

The parties have proposed that putative claimants and subclass members be instructed that they must mail their claim forms and opt-out forms by forty-five days after the date the City mails out the notices and claim forms. (See Proposed Remedial Phase Timeline (Docket Entry # 844-2) at 1.) The special masters for individual relief determinations have recommended that putative claimants be given thirty days to mail claims and opt-out forms. (See Report and Recommendation (Docket Entry # 849) at 3.) After considering the issue, the court believes that thirty days will be an insufficient time for the City to receive notifications of undeliverable notices and re-send notices to new addresses; the court therefore agrees with the parties that claimants and subclass members be given forty-five days.

## III.   The Notices, Claim Form, SSA Consent Form, and Opt-Out Form

The court has reviewed the draft claim and class notices for mailing, publication, and broadcast; the instructions for the claim form, the claim form itself, and the consent form for the release of information from the SSA; and the class opt-out form. (See United States Apr. 10, 2012 Ltr. Exs. 1-5 (Docket Entry ## 850-1—5).) The court approves the use of all the documents as they are, except for the class notice. In light of the unresolved issue of whether

---

[4]     The court notes that the City expressed concern that a Delayed-Hire Claimant should not benefit from increased seniority if his or her delay in being hired was self-induced. (City Apr. 12, 2012 Ltr. at 3.) The City's point is unclear—on the one hand, it is pellucid that only victims of discrimination should receive a remedy, see Ingram v. Madison Square Garden Center, Inc., 709 F.2d 807, 812-13 (2d Cir. 1983); on the other hand, it was the court's understanding that the eligibility criteria the parties jointly proposed and the court endorsed were designed to render ineligible any claimant who was not a victim of the unlawful hiring practices (see Mar. 8, 2012, Mem. & Order at 53). If the City now believes that the criteria are insufficient to do so in the case of Delayed-Hire Claimants, then it must explain why, propose additional qualifications that the City believes are necessary to resolve its concerns, and explain why the City did not include these qualifications in the joint proposals that the parties submitted in their joint June 2011 letter (see United States June 24, 2011 Ltr. (Docket Entry # 651) at 4-5); the City should include these explanations and proposal in the briefing due May 3, 2012, and the other parties should respond on May 17, 2012.

Levy Ratner, P.C., and the Center for Constitutional Rights may represent claimants on an

individual basis (see United States Apr. 10, 2012 Ltr. (Docket Entry # 850) at 2-4)), the court

concludes that the class notice's language should be re-drafted.  The court proposes the

following revised language for the topic "Do I need my own lawyer?" located on pages 3-4 of

the class notice:

> Class members may hire their own lawyers, but are not required to do so.
> The Court has decided that the lawyers for each Subclass are qualified to
> represent the best interests of that Subclass as a group.  If you want to hire a
> lawyer to appear in the case on your behalf, regarding the Class claims or your
> individual claim for an award, you may do so.  If you are considering opting out
> of the Class Action (as explained below), you should consult an attorney
> immediately about how to proceed.
>
> If you do not opt-out of the Class Action, the Subclass lawyers will
> represent you concerning the method of distributing backpay, seniority, job offers,
> and other issues that affect the subclass as a whole.
>
> If you would like legal representation on individual issues, such as your
> eligibility for and amount of your compensatory damages or if there is a dispute
> about how much backpay you should receive, you may ask Levy Ratner, P.C., the
> law firm for the Non-Hire Subclass, or The Center for Constitutional Rights, the
> law firm for the Delayed-Hire Subclass, to represent you individually, to the
> extent permitted by the Court.  You may also hire your own lawyer, but you may
> be required to pay for that lawyer's services.
>
> The Subclass lawyers, Levy Ratner, P.C. and The Center for
> Constitutional Rights, will not ask you to pay any of their fees or expenses.  They
> will ask for payment from the City.

The parties shall submit a revised draft of the class notice to the court within five days of

the date of this Order, along with any objections they have to the proposed language.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York     NICHOLAS G. GARAUFIS
April ⎽19⎽, 2012       United States District Judge

8