Civil Action No. 07 CV 2067 (NGG) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-and-

THE VULCAN SOCIETY, INC. *for itself and on behalf of its members,* JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief;* ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated;* and CANDIDO NUNEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated,*

Plaintiffs-Intervenors,

-against-

CITY OF NEW YORK, THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, MAYOR MICHAEL BLOOMBERG and NEW YORK CITY FIRE COMMISSIONER NICHOLAS SCOPPETTA, in their individual and official capacities,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW
## ON RELIEF PHASE ISSUES

**MICHAEL A. CARDOZO**

*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Law Dept. No.: 2007-017441-LE*

# TABLE OF CONTENTS

**Page**

POINT I ............................................................................................. 1

    Should Priority Hires Take & Pass Exam 2000? ........................................ 1

POINT II ............................................................................................ 2

    What Should the Probationary Period and Salary
    Rate be for Priority Hires? ........................................................... 2

POINT III ........................................................................................... 3

    Should Notice of Fairness Hearing I Be Given to
    All Exam 2000/2500 applicants? ................................................... 3

POINT IV ........................................................................................... 3

    How Should Each Non-Hire and Delayed Hire
    Claimant's Backpay Award Be Determined? ........................................... 3

        A.   Non-Hire Claimants. ............................................................. 3

        B.   Delayed-Hire Claimants. ....................................................... 5

POINT V ............................................................................................ 7

    Who Should Pay the Cost of Obtaining Interim
    Earnings Information from the Social Security
    Administration? ......................................................................... 7

POINT VI ........................................................................................... 8

    Should the Court Adopt the Recommendations of
    the Special Masters Regarding the Claims Process? ................................. 8

        A.   Assignment of Claimants to Special Masters. ........................... 8

        B.   Discovery Disputes. ........................................................... 9

        C.   Timing of Discovery. .......................................................... 9

        D.   Submission of Helpful Material by Claimants. ......................... 9

        E.   The Claims Process. ......................................................... 10

## PRELIMINARY STATEMENT

In accordance with the Proposed Briefing Schedule for Outstanding Remedial Issues (Dkt. # 844-1), the City sets forth its position on the following issues which the Court directed the parties to address: 1) whether priority hires must take and pass Exam 2000; 2) whether Exam 2000/2500 applicants are affected by a priority hiring remedy and, if so, whether and how much notice of Fairness Hearing I should be provided; 3) what the appropriate probationary period and salary level is for the priority hires; 4) the methodology for determining each claimant's backpay award and prejudgment interest; 5) whether New York City must pay the cost of obtaining interim earnings information from the Social Security Administration; and 6) the recommendations of the Special Masters regarding the claims process.

## POINT I

### SHOULD PRIORITY HIRES TAKE & PASS EXAM 2000?

All applicants for entry-level firefighter positions, including the priority hires, should take Exam 2000, assuming that it is approved by the Court. In light of the crucial role that firefighters play in the protection of life and property, it is imperative that the City hire entry-level candidates who are capable of completing their Fire Academy training and of adequately performing the entry-level firefighter role.  In light of the fact that this Court has found that Exams 7029 and 2043 were not proven to be job related, there is currently no assessment of the ability of potential priority hires who took those exams to perform in the job of firefighter.  If priority hires are not required to take and pass Exam 2000, neither the Court nor the City will have any valid assessment of whether they are qualified for the position.  The interests of no one will be served if unqualified candidates are selected for priority hire positions and then drop out of the Academy, fail probation or struggle on the job.  The City's hope and objective is that each

person appointed as a priority hire will have a long and productive career with the FDNY.  To achieve that goal, it is imperative that the candidates selected for the priority hire positions possess the knowledge, skills and other characteristics that have been found to be job related during the exam development phase of Exam 2000 and that Exam 2000 assesses.

## POINT II

### WHAT SHOULD THE PROBATIONARY PERIOD AND SALARY RATE BE FOR PRIORITY HIRES?

The parties have agreed that the shorter, one year probationary period applicable to Exam 2000 and 2500 applicants should apply to the priority hires.

The parties disagree as to the applicable salary.  The City believes that the Exam 2000 starting salary of $39,370 should be applicable to the priority hires.   That salary is considerably higher than the entry-level salaries for Exams 7029 ($30,872) and 2043 ($32,724). Priority hire candidates from Exam 7029 who pass the probationary period will be stepped up to the salary level of firefighters who joined the Department as of  February 2, 2003, the median hire date for that exam; priority hire candidates from Exam 2043 who pass the probationary period will be stepped up to the salary level of firefighters who joined the Department as of  June 11, 2006, the median hire date for that exam.  All of the priority hires who pass probation will receive a lump sum payment representing the differential between their probationary salary and the salary of entry-level firefighters hired as of the median hire date for whichever exam is the basis for their claim, either Exam 7029 or 2043, plus interest ("retroactive salary rate").

This approach will minimize attrition amongst the priority hires who join the Department and also will avoid a windfall to those who drop out.  As priority hires who start the Academy, but drop out, are counted against the 293 priority hires, it is important to incentivize them to stay the course and pass probation.  Moreover, the City seeks to minimize potential

antagonism from new hires who will be in the same Academy classes as the priority hires and, under the proposal advanced by Plaintiff and Plaintiffs-Intervenors would earn less than the priority hires while undergoing the same training.

## POINT III

### SHOULD NOTICE OF FAIRNESS HEARING I BE GIVEN TO ALL EXAM 2000/2500 APPLICANTS?

The parties agree that all applicants who took Exam 2000/2500 should be given notice of Fairness Hearing I to ensure that they have a reasonable opportunity to file objections to any provision of the relief order which they believe may adversely affect them.  Absent such notice, any judgment granting equitable relief by this Court could be collaterally attacked by a person claiming to have been injured by it.  Under 42 U.S.C. § 2000e-2(n), "an employment practice that 'implements and is within the scope of a [Title VII] litigated or consent judgment or order' may not be challenged by a person who had actual notice of the proposed judgment or order and a 'reasonable opportunity' to 'present objections to such judgment or order by a future date certain.'"  Briscoe v. City of New Haven, 654 F.3d 200, 254 (2d Cir. 2011).

The Court, therefore, should give a minimum of 60 days notice of Fairness Hearing I to all applicants who took Exam 2000/2500 and 45 days to file objections.

## POINT IV

### HOW SHOULD EACH NON-HIRE AND DELAYED HIRE CLAIMANT'S BACKPAY AWARD BE DETERMINED?

A.      **Non-Hire Claimants.**

The City proposes the following methodology for calculating the backpay distribution to Non-Hire Claimants, as that term is defined in the Court's March 8, 2012 Order, Dkt. # 825 at 51-52.

First, credit each Non-Hire Claimant who submits a claim with the earnings he might have received had he been hired as an entry-level firefighter (which could be done by assuming each would have entered the median class for the applicable exam).

Second, deduct actual mitigation/interim earnings or, for Non-Hire Claimants who failed to properly mitigate, an estimate of what the Non-Hire Claimant would have earned if he had mitigated appropriately.

Third, multiply the difference between steps one and two by the probability of hire. This probability would be equal to 293[1] divided by the total number of test takers who meet the Court approved definition of Non-Hire Claimant, that is, the actual shortfall divided by the total number of potentially wronged test takers. The chart below sets out the probability of hire formula applicable to each exam and subgroup:

| Claimants | Probability of Hire |
|---|---|
| Black        Non-Hires: 7029 | 114/Total # of Non-Hire Claimants |
| Hispanic      Non-Hires: 7029 | 62/Total # of Non-Hire Claimants |
| Black        Non-Hires: 2043 | 72/Total # of Non-Hire Claimants |
| Hispanic      Non-Hires: 2043 | 45/Total # of Non-Hire Claimants |

---

[1] To simplify the description of the methodology, the City is treating the approximately $125 million of gross damages for Non-Hire Claimants as a single damage amount. In the actual distribution, the gross wages will have to be divided by exam and racial group. For example, only the black Non-Hire candidates for Exam 7029 would be eligible for a distribution from the $62.2 million estimated by Dr. Siskin as gross wages (without pre-judgment interest) for that group. In calculating the distribution to actual claimants from that group, instead of using 293 as the numerator, we would use 114 to determine the probability of hire.

Fourth, add prejudgment interest calculated by using a yearly interest rate equal to the average rate for 52 weekly Treasury bills. Dr. Siskin used this method in his December 2009 report (Dkt. # 538 at 18).

The methodology described above is fair and appropriate because it does not depend on the number of individuals who submit claims. The amount received by each eligible claimant should not depend on the number of claims received because each applicant had the same likelihood of being hired and presumably some actual mitigation. The damages necessary to make each claimant whole should not be affected in any way by the decisions of others to pursue damage claims or not.

**B.      Delayed-Hire Claimants.**

The City proposes the following methodology for calculating the backpay distribution to Delayed-Hire Claimants, as that term is defined in the Court's March 8, 2012 Order (Dkt. # 825 at 51-52).

For example, if there are 68 or fewer black Delayed-Hire Claimants for Exam 7029, divide the "Total Class Earnings Lost" for black Delayed-Hires for Exam 7029 ($1,056,218) by the number of black delayed-hires for that exam (68). Siskin Relief Phase Report at 44 (Dkt. # 825 at 44). The maximum amount any black Delayed-Hire Claimant could receive as a backpay award, therefore, would be $15,532.62. That amount should not be increased in the event that fewer than 68 black delayed hires for Exam 7029 make claims. If more than 68 black Delayed Hire Claimants submit claims, $15,532.62 should be multiplied by the following fraction: 68 divided by the number of claimants. The following chart sets out the application of this formula by exam and subgroup prior to any reduction for the number of claimants exceeding the number of delayed hires.

| Claimants | Total Class Earnings Lost | Dr. Siskin's Estimate of Delayed-Hires | Maximum Backpay Award |
|---|---|---|---|
| 7029 Black Delayed-Hire Claimants = ≤ 68 | $1,056,218 | 68 | $1,056,218/68 = $15,532.62 |
| 7029 Hispanic Delayed-Hire Claimants = ≤ 86 | $1,289,743 | 86 | $1,289,743/86 = $14,497.01 |
| 2043 Black Delayed-Hire Claimants = ≤ 44 | $494,169 | 44 | $494,169/44 = $11,231.11 |
| 2043 Hispanic Delayed-Hire Claimants = ≤ 51 | $429,590 | 51 | $429,590/51 = $8,423.33 |

Second, determine the average delay per delay hire and the mitigation period. Using Exam 7029 as an example for a Black Delayed-Hire, the delay would be Dr. Siskin's "Average Lost Years of Wages/Seniority Per Delayed African American" of 0.29 years (which represents the aggregate delay for Black applicants for Exam 7029 divided by 68, the number of delayed hire African Americans estimated by Dr. Siskin) and the mitigation period would be the 0.29 year period prior to each claimant's actual hire.   As an alternative, we could place each Delayed-Hire Claimant in the Academy class that immediately preceded the one in which each participated.  Under this approach, the mitigation period would be the time period between the two classes.

Third, after the mitigation period is determined, the backpay award should be reduced by interim earnings during that period.  If the number of actual claimants exceeds the number of delayed hires, mitigation earnings should be reduced.  For instance, if 100 blacks submit claims for Exam 7029, mitigation would be reduced by 68/100.

Fourth, determine to what extent any delay experienced by a Delayed-Hire Claimant was attributable to self-delay.  This can be determined by comparing the Delayed-Hire

- 6 -

Claimant's first certification date (and the typical date of hire for those certified at that time) to his actual appointment date. For example, if the Delayed-Hire Claimant was certified for hire in 2002 and those certified at that same time were typically hired in 2002, the Delayed Hire Claimant's backpay award should be reduced if he declined to be appointed in 2002 or failed to submit his paperwork in time to procure a 2002 appointment.

Fifth, add prejudgment interest calculated by using a yearly interest rate equal to the average rate for 52 weekly Treasury bills. Dr. Siskin used this method in his December 2009 report (Dkt. # 538 at 18). The date from which pre-judgment interest is calculated should be the estimated date of appointment used for the mitigation period, calculated by using one of the two approaches described above.

### POINT V

### WHO SHOULD PAY THE COST OF OBTAINING INTERIM EARNINGS INFORMATION FROM THE SOCIAL SECURITY ADMINISTRATION?

Title VII specifically provides that "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against *shall operate* to reduce the backpay otherwise allowable. 42 U.S.C. § 2000e-5 (emphasis added). Therefore, it would be patently improper for the United States, a party to this action, to withhold discoverable information it has in its possession that must be considered in determining the amount of backpay allowable to the claimants. In fact, if the City were required to make a document request for this information while conducting mitigation discovery, the United States would be obligated to produce it without charge to the City. The fact that one of the United States' divisions normally charges the public a fee for obtaining this information, presumably to cover its administrative costs, does not warrant shifting that cost to the City. Therefore, the City

- 7 -

respectfully requests that the Court direct the United States to provide the interim earnings information for each of the claimants it deems eligible to the parties and the Court without cost.

**POINT VI**

**SHOULD THE COURT ADOPT THE RECOMMENDATIONS OF THE SPECIAL MASTERS REGARDING THE CLAIMS PROCESS?**

The parties agree that the Special Masters and parties' counsel should meet and confer to discuss the Recommendations of the Special Masters Regarding the Claims Process (Dkt. # 849) ("SM Recommendations") before the Court makes any rulings as to them.  The parties will be in a much better position to make meaningful recommendations after the June 18, 2012 deadline for filing claim forms passes and the Court rules on the various issues currently being briefed that must be decided before the notice of Fairness Hearing I can be distributed.

The City does have concerns about several of the SM Recommendations including the following:

**A.      Assignment of Claimants to Special Masters.**

While the City agrees with the recommendation in Section II of the SM Recommendations that the claimants should be randomly assigned to the Special Masters, the City does not believe that the caseload should be periodically rebalanced just because the caseload may become uneven due to settlements, for example.  This could result in unnecessary duplication of work and delays for certain claimants if a Special Master has already been involved with the case.  Cases should be reassigned only if the Special Master concludes that recusal is warranted or if the Court concludes that the claims process is not proceeding expeditiously.

- 8 -

**B.      Discovery Disputes.**

The recommendation in Section III of the SM Recommendations about resolving discovery disputes through meetings and majority rule of all four Special Masters is quite cumbersome.   The City proposes that one Special Master be designated as the decision maker with respect to all discovery disputes.  In the event of a conflict, the dispute could be referred to another Special Master.   Utilizing one Special Master for discovery purposes will ensure uniformity in the rulings and also obviate the need for allocating the claimants amongst the Special Masters early in the process.    If a party objects to the decision, the objection can be submitted to the Court for resolution.

**C.      Timing of Discovery.**

The Special Masters' proposal that discovery be conducted exclusively by the United States deprives the City of its right to conduct mitigation discovery.    The City should be permitted to conduct its own discovery.  After the City obtains the list of eligible claimants and the interim earnings information from the United States, it will be in a much better position to ascertain how much discovery is appropriate and approximately how long it should take to complete that discovery for all claimants.  Consistent with its discovery obligations, the City will furnish discovery responses it receives from claimants to the United States and Plaintiffs-Intervenors.

**D.      Submission of Helpful Material by Claimants.**

Section IV.A.6 of the SM Recommendations provides that the United States must submit to the Special Masters any material that the Claimants deem helpful to their cases, including evidence of emotional distress.  Whatever information the United States receives from

the Claimants should be promptly produced to the City and Plaintiffs-Intervenors also.[2]  The City respectfully suggests that the United States be required to turn over that information on a rolling basis to the other parties in the litigation within seven days of its receipt.  As for emotional distress evidence, none is required or relevant as no claim for emotional distress damages was made by either the United States or the Plaintiffs-Intervenors.

**E.      The Claims Process.**

In their Proposed Remedial Phase timeline at p. 4, § IV, the parties indicated that they would propose details regarding Phase IV (Determinations on Monetary Relief, Retroactive Seniority, and Non-economic Damages) once the scope of mitigation discovery permitted by the Court and the volume of claimants is known.  Therefore, the City respectfully submits that a decision on the substantive recommendations made in Section IV of the SM Recommendations should be deferred and that the parties should be directed to address them in their proposal for Phase IV.  In the event that the Court does not defer its decision on the recommendations made in Section IV, the City has the following concerns.

1.      The recommendation in § IV.B as to the timing of the City's and the claimants' objections to the preliminary relief list recommended by the United States is not workable.  The proposal would require the City to submit its response to potentially thousands of individual reward recommendations within three weeks of receipt of the list and before the individual claimants submit objections and/or supplement the United States' submission to the Special Masters.  A more efficient procedure would require the claimant to object and/or supplement the record first.  This would enable the City to address the claimant's objection and supplemental materials at the same time it submits its objection, if any to the award.  It also

_____
[2] The Special Masters incorporate this point in Section 4.B at footnote 7.

would give the City a more reasonable time period in which to determine whether to object to an award.

       **2.**      The recommendation as to the structure of the hearing makes no mention of giving the City the opportunity to submit questionnaires, take depositions or seek other discovery of particular claimants before filing its objections.

       **3.**      The recommendation as to the structure of the hearing also limits each "party" to 15 minutes. The City respectfully submits that the time allotted for the hearing should be divided equally between the plaintiffs (the United States and Plaintiffs-Intervenors) and defendants. Moreover, a one size fits all time limit is impractical as the hearing for some claimants will need to address only one issue, e.g., mitigation, whereas others will need to address retroactive seniority, fringe benefits and non-economic damages as well. Moreover, hearings on disputes involving the delayed hire claimants in all likelihood will be more streamlined as only some, those who the City contends self-delayed, may have to present mitigation evidence.

       **4.**      It also is unclear whether the 15 minute rule applies to just the opening/closing "arguments" at individual hearings or to evidentiary presentations as well. *Compare* 4.B. 3 to 4.D.2 of the SM Recommendations.

       **5.**      The City objects to the Special Masters functioning as the both fact finder and settlement overseer in any given case. A better approach would be either to designate one Special Master to oversee all settlement discussions or refer the matters, as needed, to other Special Masters if the parties request the intervention of a Special Master to facilitate settlement.

## CONCLUSION

       Wherefore, defendants respectfully request that the Court enter an order directing that: 1) priority hires be required to take and pass Exam 2000; 2) priority hires be subject to a

one year probationary period; 3) priority hires be paid the starting salary of $39,370 applicable to Exam 2000 hires; 4) priority hires who pass probation receive a step up in salary to the salary level of firefighters who took the exam that forms the basis of the priority hire's claim and joined the Department as of the median hire date for that exam; 5) the City make a lump sum payment to each priority hire who passes probation equal to the difference between their probationary salary and the salary of entry-level firefighters hired as of the median hire date for whichever exam is the basis for the priority hire's claim, plus interest; 6) the parties give a minimum of 60 days notice of Fairness Hearing I to all applicants who took Exam 2000/2500 and 45 days to file objections; 7) the distribution methodology for backpay awards proposed by the City be adopted; 8) the United States produce the interim earnings information in its possession for each claimant deemed eligible to the parties and Court without cost;  and 9) the parties' counsel meet with the Special Masters after the Court rules on the various relief phase disputes that must be resolved before notice of Fairness Hearing I can be given.

Dated:      New York, New York
            May 3, 2012

                                             Respectfully Submitted,

                                             **MICHAEL A. CARDOZO**
                                             Corporation Counsel of the City of New York
                                             Attorney for Defendants
                                             100 Church Street
                                             New York, New York 10007
                                             (212) 788-0862

                                      By: _____
                                             Michael A. Cardozo
                                             Corporation Counsel

Civil Action No. 07 CV 2067 (NGG) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-and-

THE VULCAN SOCIETY, INC. *for itself and on behalf of its members,* JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief;* ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated;* and CANDIDO NUNEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated,*

Plaintiffs-Intervenors,

-against-

CITY OF NEW YORK, THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, MAYOR MICHAEL BLOOMBERG and NEW YORK CITY FIRE COMMISSIONER NICHOLAS SCOPPETTA, in their individual and official capacities,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW ON RELIEF PHASE ISSUES

### *MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*
*Law Dept. No. 2007-017441-LE*

*Due and timely service is hereby admitted.*

*New York, N.Y.* ........................................................................ *, 201...*

.................................................................................... *Esq.*

*Attorney for* ................................................................................