UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                 Plaintiff,

               -and-

THE VULCAN SOCIETY, INC., *for itself and on behalf
of its members,* JAMEL NICHOLSON *and* RUSEBELL
WILSON, *individually and on behalf of a subclass of
all other victims similarly situated seeking classwide
injunctive relief;*

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN
WALKER, *individually and on behalf of a subclass of
all other non-hire victims similarly situated;* and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually
and on behalf of a subclass of all other delayed-hire
victims similarly situated,*

                      Plaintiffs-Intervenors,

               -against-

THE CITY OF NEW YORK,

                            Defendant.
-------------------------------------------------------------------X

Case No. CV 07 2067
(NGG) (RLM)

## NON-HIRE AND DELAYED-HIRE SUBCLASSES'
## MEMORANDUM OF LAW ON RELIEF PHASE ISSUES

### <u>Introduction</u>

      Counsel to the Non-Hire Victim Subclass and the Delayed-Hire Victim Subclass jointly

submit this memorandum concerning several issues on which the parties seek resolution prior to

the distribution of Fairness Hearing notices.  The issues we address are:  (1) eligibility criteria for

priority hire, including whether priority hires must take and pass Exam 2000, (2) the starting

salary that should be paid to priority hires during their 12-month probationary periods, (3)

whether candidates for Exam 2000 and Exam 2500 should receive notice of Fairness Hearing I,

56-001-00001:  10105994

(4) how to determine each Non-Hire and Delayed Hire Claimant's backpay award and pre-judgment interest, (5) whether the City should pay the cost of obtaining interim earnings information from the Social Security Administration, and (6) comments on the recommendations of the Special Masters regarding the claims process.

### I.  Priority Hires Who Scored 70 or Higher on Exam 7029 or Exam 2043 Should Not Be Required to Take and Pass Exam 2000

The parties agree that to obtain a priority appointment Non-Hire Claimants must meet the lawful qualifications currently in place for entry-level firefighters, other than the maximum age requirement.  Dkt. 619-4, ¶ 34.  Accordingly, those seeking priority hire would undergo the same post-exam selection process as current entry-level candidates, Dkt. 400 at 29-30, unless they are already employed by the FDNY as emergency medical technicians, in which case they would undergo the same process as other promotional candidates.  The parties also agree that priority hires will be subject to the 12-month probationary period that was announced on the Notices of Exam for Exams 7029 and 2043, rather than the 18-month probationary period currently in place for Exam 2000.

The parties disagree, however, about whether Non-Hire Claimants should be required to take and pass the computer-based portion of Exam 2000 prior to priority appointment.  The Non-Hire Subclass opposes such a requirement for any otherwise-eligible Claimant who scored at least 70 on one of the challenged exams, because the City has already determined those individuals to be qualified for post-exam screening.

Taking a new exam has not been found to be a necessary qualification for priority appointment in similar litigation concerning employment testing.  *See, Lewis v. Chicago*, No. 98 C 5596, Dkt. 470 (N.D. Ill. Aug. 17, 2011) (Gottschall, J.) (Ex. A); *see also Ass'n Against*

2

*Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 281-82 n.24 (2d Cir. 1981).  Title VII places upon the courts the duty "to make the victims of unlawful discrimination whole," which "requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975), citing 118 Cong. Rec. 7168 (1972).  To require black and Hispanic applicants to overcome an additional hurdle that was not imposed upon other Exam 7029 and Exam 2043 applicants would fail to restore them to the position they would have been in absent the City's discrimination.

Exam 2043.  All non-hire claimants who passed Exam 2043 (*i.e.*, scored at least 70 on the written test and passed the PPT), have already been deemed by the City to be eligible for appointment into the firefighter title, subject to post-exam screening.  The City – which continues to maintain that its exams were lawful – should not be permitted now to place an additional hurdle in the path of black and Hispanic victims that it did not impose upon other applicants.

Exam 7029.  The passing score for Exam 7029, which was set at 84.705, was a departure from the City's default passing score of 70 for Civil Service exams.  *See* Ex. B.  Because Exams 7029 and 2043 were, by design and by admission, virtually identical, Dkt. 294 at 37, Dkt. 344 at ¶ 117; Dkt. 364 at ¶ 117, a score of 70 on Exam 2043 is indistinguishable from a score of 70 on Exam 7029.  It would be unfair to require Exam 7029 victims who scored 70 or above to take and pass Exam 2000 if the Exam 2043 victims and other incumbents are not faced with the same requirement.  In fact, the City has admitted that "individuals who achieved at least a 70 on either exam should be able to pass the Fire Academy."  Dkt. 706 at 2 n.1.

3

II.     **Priority Hires Are Entitled To a Salary Commensurate With The Presumptive Hire Date, From the Start of Their Priority Appointment**

The City takes the position that priority hires – who absent discrimination would have been hired as firefighters years ago – should enter the Fire Academy at the pay rate of Exam 2000 probationary firefighters, *i.e.*, $39,370.  According to the City, priority hires would not be entitled to the rate of pay commensurate with their presumptive hire date until after they complete their probationary year, at which point they would receive a lump sum payment reflecting the difference between the lower probationary rate and the higher presumptive hire rate for that year.

This proposal would serve as a powerful deterrent to black and Hispanic victims who would otherwise be interested in joining the FDNY and incrementally building its diversity. These individuals have likely been in the workforce for 10 – 13 years and today may be earning considerably more than a probationary starting salary.  Anyone who has been working for that long, and may be supporting a family or carrying other financial burdens, is unlikely to be able to afford a sizable pay cut without a great disruption to their economic lives.  This is no less true for victims who have dreamed of a career in firefighting.

Moreover, the City's proposal would undermine make-whole relief because the Court's backpay award (Dkt. 825) already factors into its analysis the lower pay earned by probationary firefighters during the period of time when Non-Hire victims would have served their probationary periods.  To require priority hires to absorb this lower pay rate a second time would fail to place them in the position they would have been in absent the City's discrimination, even if they received the difference in a lump sum at a later time.  The incumbents hired from the Exam 7029 and Exam 2043 eligibility lists were not asked to take a 12-month pay cut in the

4

10105994

middle of their careers and let the City hold a part of their earnings.  Neither should priority hires be required to undergo such a procedure.

Finally, the City's justification for its salary proposal is to avoid the risk that priority hires who do not complete their probationary periods would be "overpaid."  The City essentially seeks to shift the burden of that risk onto the victims of discrimination.  It should not be permitted to do so.  It is impossible for any party to know what would have happened had priority hire victims undergone their probationary periods many years ago, as they were entitled to do.  "Any uncertainty" as to whether the victim would have completed the probationary period should be "resolved against the defendant, since it is the defendant's discriminatory employment practices which are the source of the uncertainty."  *EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Indus.*, 186 F.3d 110, 122 (2d Cir. 1998), citing *Bridgeport*, 647 F.2d 289.  In any event, the City's data show that the number of firefighter appointees who fail to complete their Academy training is exceedingly small.   Only three (3) black probationary firefighters failed to complete the FDNY's January 2008 Academy class and only two (2) black probationary firefighters failed to complete the July 2008 Academy class.  *See* Ex. C, produced by City in discovery in November 2010.

For these reasons, the Non-Hire Victim Subclass asks the Court to find that priority hires are entitled to a salary commensurate with their presumptive hire date from the time they begin their probationary year.

10105994

III.    **Candidates Who Actually Took, or Remain Eligible to Take, Exam
2000 or 2500 Should Receive a Fairness Hearing Notice**

All parties agree that the best course is to provide notice of Fairness Hearing I to
individuals who actually sat for Exam 2000 or 2500 or who, because of a military deployment,
may take the Exam at a later date.  These individuals may be affected by a grant of retroactive
seniority to priority hires.[1]  Specifically, for those candidates who are appointed, their seniority
could be diluted to some extent by the *subsequent* appointment and grant of retroactive seniority
to priority hires.  Because priority hiring will be accomplished over the course of several
Academy classes, some Exam 2000/2500 candidates will likely be appointed prior to the
appointment of some priority hires.[2]  Their opportunity to be appointed, and the timing of their
appointment, may also be affected by the placement of priority hires into Academy classes ahead
of them.

For these reasons, and without conceding that Exam 2000/2500 candidates have any
property interest at stake in these proceedings or would have any meritorious objection, both the
Non-Hire Victim Subclass and the Delayed-Hire Victim Subclass agree that the best course is to
provide each of them with actual notice and an opportunity to object at the Fairness Hearing,
prior to the entry of the Individual Relief Order, in order to protect the Court's final order on
relief from collateral attack.  *See* 42 U.S.C. §2000e-2(n)(1)(B).

---

[1] They would not be affected by the grant of retroactive seniority to Delayed-Hire Claimants
because every Delayed-Hire Claimant already has a greater level of seniority than any potential
appointee from the Exam 2000 or Exam 2500 eligibility lists.

[2] Because the City intends to exhaust the Exam 2500 eligibility list before making appointments
from the Exam 2000 eligibility list, it may be that Exam 2500 promotional candidates are the
only ones who risk being impacted by the grant of retroactive seniority to priority hires.
However, out of an abundance of caution, notice of the Fairness Hearing should be provided to
Exam 2000 candidates as well.

6

10105994

**IV.    Method of Distribution of Backpay and Prejudgment Interest**

The Non-Hire Subclass and the Delayed-Hire Subclass join the proposal submitted by the United States in its letter brief of today regarding the calculation and distribution of backpay and prejudgment interest.

Without responding in depth to the City's proposal, which we will do in reply on May 17, 2012, it is worth noting two aspects of the proposal that should be rejected.  First, the City's use of the median hire date as the start of the backpay period fails to account for the fact that actual victims of the City's discrimination began experiencing losses when the first Academy class from Exam 7029 was installed.  While the median hire date is being used for purposes of retroactive seniority, the Court has previously noted that there would be "an asymmetry between backpay and seniority relief."  Dkt. 861 at 6.  The actual liability period begins when hiring from the unlawful exam began, and that is the date that should be used to apportion and distribute backpay.  Second, the City's proposal artificially deflates the probability of hire by dividing the non-hire shortfall figures by "the total number of potentially wronged test takers," whether or not they submit a claim form and are found to be eligible for monetary relief.  This unorthodox approach would greatly reduce the City's backpay exposure, but it does not accurately reflect probabilities of hire.  The Subclasses will address these and other issues in greater detail on May 17, 2012.

**V.    The City Should Bear Any Cost Associated with SSA Earnings Information**

For the reasons stated by the United States in its motion of today, Dkt. 867, the Non-Hire Subclass and the Delayed-Hire Subclass agree that any costs associated with obtaining earnings information from the SSA should be borne by the Defendants in this matter.

7

10105994

## VI.    The Recommendations of the Special Masters Regarding the Claims Process

The Recommendations of the Special Masters Regarding the Claims Process ("Recommendations"), Dkt. 849, raised several issues that the parties agree would be most effectively addressed in an in-person meeting with the Special Masters.  These meetings will permit a broader discussion of the options for structuring the claims process.  The parties are also mindful that the number of claims received, and the number of claimants deemed eligible, will greatly affect the shape of the process.  We have provided commentary on the Recommendations to highlight areas of concern, *see* Ex. D, and below are several examples of issues that we believe must be addressed:

- The Special Masters do not have a mechanism in place for expediting the hearings for Claimants seeking priority hire.

- The time period allotted for discovery will largely depend upon the number of claims received from apparently-eligible claimants and the rulings of the Court regarding the scope of permissible discovery.  *Id.* at 7.

- The Recommendations omit reference to the Subclass counsel in several areas where Subclass counsel will play an important role in the process.  *See* Ex. D at 8, 9, 10, 12, 13.  For example, the Special Masters propose that the United States collect evidence regarding noneconomic damages, but the United States did not assert a claim for noneconomic damages.  *Id.* at 9.

- We believe the Special Masters should consider a formal mediation process, wherein either one of the Special Masters or another skilled professional attempts to resolve claims that would otherwise require countless hours of attorney, Special Master and Court time to address issues of mitigation, out-of-pocket expenses for benefits and noneconomic damages.  *Id.* at 11.

- The Recommendations appear to place the burden upon claimants to establish the value of their claims, even though the aggregate amount of losses and the formula for distributing losses will have been set by the Court and the City bears the burden of establishing any failure to mitigate.  *Id.* at 12.

- The time limits established for individual hearings may not be sufficient where issues of mitigation, out-of-pocket benefit expenses and noneconomic damages are all in play.  *Id.* at 13.

8

There may be other opportunities to increase the efficiency and fairness of the process, such as, for example, dividing the claims so that each Special Master may "specialize" in a particular area, rather than dividing them randomly, as was proposed. *Id.* at 5. For example, if one Special Master hears the noneconomic damages claims, which are apt to be less precisely-calculable, there will be less opportunity for widely differing results in those awards.

For these reasons, the Non-Hire and Delayed-Hire Subclasses respectfully ask the Court to defer ruling on the Special Masters' Recommendations until the parties and Special Masters have had the chance to meet and confer and, if possible, provide a joint recommendation.

We thank the Court for its continued assistance with this matter.

Respectfully submitted,

LEVY RATNER, P.C.

/s/

By:     Richard A. Levy
        Dana E. Lossia
        Robert H. Stroup
        80 Eighth Avenue
        New York, NY 10011
        (212) 627-8100
        (212) 627-8182 (fax)

        *Attorneys for the Non-Hire Subclass*

CENTER FOR CONSTITUTIONAL RIGHTS

/s/

By:     Darius Charney
        Ghita Schwarz
        666 Broadway, 7th Floor
        New York, NY 10012-2399
        (212) 614-6438
        (212) 614-6499 (fax)

        *Attorneys for the Delayed-Hire Subclass*

9

10105994

SCOTT + SCOTT, LLP
Judith S. Scolnick
500 Fifth Avenue
New York, NY 10110
(212) 223-6444
(212) 223-6334 (fax)

TO:  All Counsel via ECF

10105994