UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
UNITED STATES OF AMERICA,
:
               Plaintiff,
:    **SPECIAL MASTER'S**
  -and-    **REPORT NO. 10**
:
THE VULCAN SOCIETY, INC., for itself and on behalf of    **07-cv-2067 (NGG)(RLM)**
its members, and MARCUS HAYWOOD, CANDIDO  :
NUÑEZ and ROGER GREGG, individually and on behalf
of a class of all others similarly situated,    :

        Plaintiffs-Intervenors,   :

  -against-    :

THE CITY OF NEW YORK,    :

        Defendant.    :

------------------------------------------------------------------------x

MARY JO WHITE, Special Master.

      The Special Master submits this report pursuant to paragraph 4 of the Court's June 1, 2010 Order Appointing Special Master (the "Appointment Order"). (Dkt. No. 448, ¶ 4.) The Appointment Order requires the Special Master to submit a report at least every 90 days after the parties begin the joint development of a new firefighter eligibility exam (the "New Test"). The Special Master's last report was submitted on March 27, 2012. (Dkt. No. 841.) This report covers developments since the March 27th report through the administration of the New Test and provides an overview of the next steps in the test development process.

I.      **Progress Towards Development of the New Test**

As previously reported to the Court, the current project plan includes six milestones: (i) job analysis; (ii) test development, which encompasses test design, development of exam content, content validation and pilot testing, criterion-related and construct validation, and development of various test forms and an equivalency study; (iii) test administration; (iv) analysis and scoring; (v) computation of the final test results; and (vi) preparation of the final technical report.[1]  At the Special Master's instruction, the parties certify in writing at various points across these milestones that the test development process should proceed to the next phase in the project plan.  To date, all parties – the United States, the Vulcan Society and the City – have agreed that the development process should proceed.[2]

A.      **Test Administration**

The New Test has now been fully administered to all applicants, except, possibly, for a small number of applicants who were in active military service during the administration period.  Assuming the New Test is approved by the Court, until the list that will be generated from the New Test expires, the City intends to continue testing registered

---

[1] The Special Master's prior reports provide an overview of these earlier phases, including a description of the validation methods and the equivalency study.  (*See* Dkt. Nos. 691, 739, 785, 841).

[2] To facilitate this progress, the Special Master continues to hold scheduled standing weekly telephonic conferences with the parties.  These conferences are held (or not) based on the Special Master's assessment of the need to convene the parties.  Since her last report, additional conferences were held on April 10th, 17th, and 24th; and May 1st and 8th.  At the Special Master's direction, certain of the conferences were conducted by her partner, Mary Beth Hogan.  The experts also continue to hold regular telephonic (sometimes virtual) conferences with each other.  Since the Special Master's previous report, the experts have held telephonic conferences on March 30th, April 16th, and May 1st.

applicants who were in active military service during the time period the New Test was administered as they return from military service and request to be tested.

The test administration period began on March 15, 2012 and concluded on April 26, 2012. The test was administered every day from March 15th through April 20th during this period, and additional sessions were held on April 26th. The majority of the testing sessions were held in locations in Brooklyn, Manhattan, and Queens, with additional sites in the northern suburbs, upstate New York, Connecticut, Philadelphia and Boston.

In total, 59,377 people registered and were scheduled to sit for the New Test. As the City has publicly reported, out of those potential candidates, 42,161 took the New Test. The demographic breakdown of those 42,161 was as follows: 40,206 candidates (95.4%) were male and 1,955 (4.6%) were female; 22,894 (54.3%) were White; 8,192 (19.4%) were Black; 9,583 (22.7%) were Hispanic; 1,314 (3.15%) were Asian; and 178 (.42%) were Native American.

To ensure applicants were given every opportunity to appear for the exam, the City permitted all candidates to reschedule their exam from their initial random assignment, subject to availability of open dates, times and locations. As test administration proceeded, the City determined that it also would permit any candidate who did not show up on their assigned test date the opportunity to reschedule and take the test on another date. Accordingly, the City called candidates to inform them of the opportunity to reschedule. Following requests, the City also provided the Vulcan Society and the United Women Firefighters Association of New York City with the contact information for absent African-American and female candidates, respectively, so that those organizations could attempt to contact them. The City scheduled additional test sessions on April 26th to

ensure that candidates who were scheduled to take the exam during the end of the original administration period, but did not appear, were afforded the same opportunity to reschedule that other test takers had been given. The April 26th date also afforded an opportunity for a limited number of candidates who experienced technical problems (*e.g.*, malfunctions with the computer program) during the last few days of the administration period to re-take the exam.

The City has reported that test administration proceeded smoothly and that there were no significant logistical or security issues. The experts took several steps to ensure that the test content remained secure throughout the administration period and the additional April 26th sessions, including randomly assigning different test forms to candidates at and across test sites and introducing some of the forms into test administration at later dates. *See* Dkt. Nos. 785, at 4; 841, at 3. This approach helped ensure that candidates who took the New Test at a later date did not have an advantage over those who took it at an earlier date. The City's expert has been monitoring test results, and has reported that initial results confirm that the experts' efforts to ensure test security were successful.

### B. Overview of Next Steps in the Test Development Process

#### 1. Candidate Protest and TVB Review Process

The New Test is subject to the examination objection procedures required by New York Civil Service Law § 50-a, as modified by the Court's Order of February 1, 2012. *See* Dkt. No. 802, at 8-13. Pursuant to New York Civil Service Law § 50-a, after the City administers a civil service exam, it must convene a three-member panel called a Test Validation Board ("TVB") to review objections about test questions from examinees.

4

As part of this process, the City has scheduled "Protest Review Sessions," during which candidates will have the opportunity to review their exam, as well as the answers they selected and those that the experts have identified as correct. Candidates can then decide whether to object to the answers designated as correct by filing a protest. *See* Dkt. Nos. 776-1, at 8-9; 802, at 12. Once candidates have filed objections, the TVB considers whether the objection demonstrates that the candidate gave an answer that was "as good or better" than the answers identified as correct by the experts, and whether to therefore accept the candidate's proposed answer as the correct response.

Protest review sessions are scheduled to take place from May 11 through May 19, 2012. Thereafter, the TVB will convene to review and resolve all valid protests in sessions scheduled to continue through the end of June. The TVB process is part of the test development process, and accordingly, the answer keys cannot be finalized and scoring of the exam cannot occur until it is concluded. *See* Dkt. No. 776-1, at 6.

        2.        Scoring of the New Test

After the TVB process is complete, the experts will review and analyze the final test results, incorporating any changes made to the New Test as a result of the TVB process. The City's expert then will propose its final recommended scoring methodology to the parties and the Special Master. In accordance with City regulations, the passing grade will be set at 70, which will be a scaled score. Thus, the experts will determine the raw score that constitutes a passing score and that score will be assigned a value of 70 on a 100-point scale. Other scores will be scaled to reflect a score out of 100 possible points. The City's recommended process for creating the eligibility list for the exam also will be finalized at the conclusion of the TVB process. The City's expert's scoring

5

recommendations as well as the reasoning behind them will be described in the final technical report that will be prepared at the end of the test development process. If any of the other parties disagree with the City's expert's recommendations, they may offer alternative proposals.

### 3. Submission of Exam 2000 to the Court

The parties anticipate that the City's expert will complete the final technical report for the exam in September 2012. The City anticipates submitting the exam and a proposed eligibility list to the Court for approval soon thereafter. As noted, it is possible that the other parties may offer alternative proposals to the City's, which also will be presented to the Court for consideration.

## II. Updating *Amici*[3]

As the Court is aware, since May 27, 2011, the Special Master has held teleconferences with the union representatives, Chief Gala of the FDNY and the parties in order to provide them with updates on the status of the test development effort.[4] Since our last report, and in lieu of regularly-scheduled teleconferences, the Special Master and the parties have spoken with counsel for the union representatives on an as-needed basis.

## III. Expenses & Fees

The Special Master and her law firm have agreed to work on a pro bono basis and accordingly, have not requested the payment of fees. The Special Master and her law firm

---

[3] As noted, *Amici* are the UFOA and UFA. The meetings and conferences held with *Amici* prior to this report and prior to May 27, 2011 are described in the Special Master's prior reports.

[4] The experts have also participated in certain of these calls.

6

seek reimbursement only for out-of-pocket expenses and disbursements, as well as the fees and expenses of the Special Master's expert consultant, Dr. Shane Pittman. On September 3, 2010 the Court approved the Special Master's Application for Approval of Proposed Budget for Special Master's Expert Consultant, which projected monthly fees of between $7,000 to $17,000. (Dkt. Nos. 516, 519.) The Special Master has submitted her expert's fees, which as reported in the Statements of Fees and Expenses, have fallen either under or within that projected range. Her expert, Dr. Shane Pittman, has received approved expenses and fees from the City for her fees and expenses through March 2012. (Dkt. No. 855).

* * * * * * * * *

The Special Master reiterates her thanks to the parties, experts, unions, and Chief Gala of the FDNY for their past and continued assistance and cooperation in this joint effort. All engaged in this process recognize both the importance and difficulty in developing a valid and legally compliant New Test that will serve to select new firefighters for the City. To do so requires the coordination, discussion, and consideration of the views and input of several interested parties. The Special Master is satisfied with the progress made to date by the parties and their experts in developing and administering the New Test.

Pursuant to the Appointment Order, the Special Master will submit her next report within 90 days from today. (Appointment Order, ¶ 4.)

/s/ Mary Jo White\_\_\_\_

Mary Jo White

Dated: May 11, 2012