

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

June 8, 2012

Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:  USA v. City, Civil Action No.: 07 CV 2067 (NGG)(RLM)
             Law Dept. No.: 2007-01744

Dear Judge Garaufis:

        I write on behalf of the City to object to the Court Monitor's recommendation with respect to jurisdiction set forth in the Monitor's June 5, 2012 letter to the Court. The City respectfully submits that the assertion of jurisdiction over a dispute among the parties over the City's response to alleged violations of FDNY policies, particularly, its policy allowing Limited Use of Office Technology and Resources ("Limited Use Policy") and its regulation regarding the posting of materials on firehouse bulletin boards, is well beyond the scope of the Remedial Order (Dkt. # 765).

        In its October 5, 2011 Memorandum and Order explaining its intent to impose a remedial order and appoint a monitor, the Court asserted that the draft remedial order attempted to "strike a balance between the need for close supervision of the City's compliance with applicable equal employment opportunity laws and the court's orders, and the court's preference for leaving the City in charge of the day-to-day minutiae of administering the FDNY's firefighter hiring process and EEO compliance activities." *United States et al. v. City of New York*, 2011 U.S. Dist. LEXIS 115074 at * 37 (E.D.N.Y. 2011) (Dkt. # 743, p. 21). The City respectfully submits that the Court Monitor's assertion of jurisdiction over matters involving the FDNY's policies governing the use of fax machines and bulletin boards not only intrudes into areas outside the scope of the Remedial Order, but is also contrary to the Court's stated preference that the City remain in charge of "the day-to-day minutiae of administering the FDNY's . . . EEO compliance activities."

As set forth in the Court Monitor's letter, despite questioning the Monitor's jurisdiction over the issues raised by Plaintiff-Intervenors, the City has participated in discussion of the issues, responded in writing to questions posed by the Court Monitor and to submissions by the Plaintiff and Plaintiff-Intervenors, and produced copies of policies and regulations. The City also disclosed the steps taken to investigate suspected violations of its Limited Use Policy, the findings of that investigation, and the conclusion reached. The City also explained its conclusion that the EEO policy had not been violated and why the relief sought by Plaintiff-Intervenors presented First Amendment issues. In short, the City has cooperated fully with the Court Monitor's requests in an attempt to resolve the dispute, despite the City's view that the dispute does not concern compliance with its obligations under the Remedial Order.

Plaintiff and Plaintiff-Intervenors point to paragraphs 17 and 19 of the Remedial Order and contend that the City has not complied with them. Paragraph 17 prohibits the City of New York from retaliating against or adversely affecting the terms and conditions of employment of any person who has "complained of discrimination against blacks or Hispanics on the basis of their race or national origin in the selection and hiring of entry-level firefighters, or has participated in the investigation or litigation of any claim or allegation of such discrimination, or has sought or obtained relief from the court in this case." While Plaintiff-Intervenors are clearly protected by the provisions of paragraph 17, they have not alleged any conduct by the City that would constitute retaliation or an adverse affect on the terms and conditions of their employment.

Paragraph 19 of the Remedial Order requires the City of New York to eliminate the vestiges of intentional discrimination against black firefighter candidates, remove all barriers to the elimination of such vestiges and end all policies and practices that perpetuate the effects of the City's past discrimination against black firefighter candidates. The dispute does not concern policies and practices that perpetuate the effects of any past discrimination by the City against black firefighter candidates. The Remedial Order and the Court's prior orders focus on civil service tests, recruitment, EEO policies and practices, and candidate investigation practices. The FDNY's Limited Use Policy[1], which was promulgated in March 2005, cannot fairly be said to perpetuate the effects of any past discrimination against black firefighter candidates. While a practice of allowing violations of the Limited Use Policy to perpetuate the effects of past discrimination against black firefighter candidates would implicate paragraph 19, the investigation into Plaintiff-Intervenors allegations revealed no such practice. Plaintiff-Intervenors complained that Merit Matters' press releases were faxed from one battalion to all firehouses on December 6, 2011 and January 10, 2012 and from another battalion to all firehouses on August 16, 2011. The FDNY subpoenaed the records for those fax machines from the telephone service provider. Based on its review of those records, neither battalion sent faxes to all 218 firehouses in the City and, in fact, review of the usage of the fax machines on the dates in question did not support a conclusion that the FDNY's Limited Use Policy was violated. The City shared its review of the fax machine usage and the conclusions drawn with the Court Monitor and the parties. There is no basis for concluding that the City has a practice of allowing

---

[1] A copy of the Limited Use Policy is annexed for the Court's convenience.

violations of its Limited Use Policy, much less violations of that policy to perpetuate the effects of past discrimination against black firefighter candidates. Consequently, paragraph 19 of the Remedial Order does not provide the Court Monitor with jurisdiction over this matter.

With respect to the FDNY's policy regarding the posting of materials on bulletin boards in firehouses, following receipt of an EEO complaint concerning materials posted on bulletin boards, the FDNY issued a Department Order on December 29, 2011 which revised an FDNY regulation governing the Use of Quarters by prohibiting all materials presenting opinions or viewpoints anywhere in quarters. Upon further consideration and legal analysis a conclusion was reached that the new regulation was too broad. As a result, the Department Order that was issued on December 29, 2011 was superseded by a new Department Order issued on January 25, 2012. The January 25, 2012 order no longer prohibits materials presenting opinions or viewpoints. Rather, the January 25, 2012 Order states, "Bulletin boards in facilities shall be used only for official Department business or important information relating to approved Departmental organizations.[2] This restriction applies to the posting of material anywhere in quarters, not just on bulletin boards. Similarly, EEO restrictions apply anywhere in quarters." There is no basis for any claim that the Department Order regarding posting of materials perpetuates the effects of any past discrimination by the City against black firefighter candidates. Consequently, the FDNY's posting policy does not provide a basis for jurisdiction under paragraph 19 of the Remedial Order.

Plaintiff has asserted that the City should have sought input from the EEO consultant, retained under paragraph 47 of the Remedial Order, in evaluating whether the faxes at issue violated the EEO policy and contends that because the Court Monitor is tasked with oversight of the City's EEO consultant, the Court Monitor has jurisdiction over this matter. Plaintiff points specifically to paragraphs 47 (b) and (h) of the Remedial Order as encompassing the fax issue in the EEO consultant's obligations. However, paragraph 47(b) and (h) are among the paragraphs delineating the substance of the final report that the EEO consultant must file no later than March 31, 2013. Specifically, the City's EEO consultant is required by paragraph 47(b) to submit a final report that "evaluates the effectiveness of the equal employment opportunity law compliance activities currently performed by each FDNY office, bureau, division, or other subdivision" and by 47(h) to include recommendations of "specific actions for the EEO office, and any other relevant agency of the City of New York, to take [sic] to deter and prevent acts of retaliation or discrimination against any current and future City of New York employees because of their involvement with this litigation." While it is appropriate for the EEO consultant to review the faxes and be aware of the issues raised by Plaintiff and Plaintiff-Intervenors and the City's response[3], his role as set forth in paragraph 47 is not to supervise or

---

[2] Merit Matters is not an approved Departmental organization.

[3] It should also be noted that the Plaintiff-Intervenors sent the Court Monitor and parties a letter about the faxes on January 25, 2012. The City's EEO consultant, Professor Merrick Rossein, had only been retained ten days earlier on January 15 and, therefore, was in the earliest stages of developing a research plan when the fax issue arose. Although he has since become familiar with the issues raised, it was not reasonable to expect Professor Rossein to have been in a

Continued…

supplant the FDNY's Assistant Commissioner for EEO, but to gather and evaluate information from many sources and, ultimately, make recommendations for change. While he is a valuable resource and has been consulted for his views on several matters, Paragraph 47 does not require the City to obtain Professor Rossein's input in evaluating the faxes at issue.

The City respectfully submits that the assertion of jurisdiction over the FDNY's policies governing the use of fax machines and bulletin boards is not contemplated by the Remedial Order and would, contrary to the Court's stated intention, involve the Court Monitor in the minutiae of administering the FDNY. Consequently, the Court Monitor's recommendation with respect to jurisdiction should not be adopted.

Respectfully submitted,

Michael A. Cardozo

---

position to evaluate and opine on the matter in January and February as Plaintiff seem to suggest he was obligated to do, despite no support for that conclusion in paragraph 47.

4

A.U.C. 327<br>
EMSC OGP 113-06<br>
March 15, 2005

# POLICY ON LIMITED USE OF OFFICE AND TECHNOLOGY RESOURCES

## 1. INTRODUCTION

The New York City Fire Department hereby promulgates this Policy on Limited Use of Office and Technology Resources in accordance with the Citywide Protocol for the use of Office and Technology Resources. This policy applies to all civilian and uniformed employees, and agents of the Fire Department.

## 2. DEFINITIONS

2.1 "BTDS" means Bureau of Technology Development and Services located at 9 MetroTech Center, 6th Floor, Brooklyn, NY 11201.

2.2 "Bureau of Communications" means the Fire Department's Bureau of Communications located at 9 MetroTech Center, 7th Floor, Brooklyn, NY 11201.

2.3 "FDNY" means the Fire Department of the City of New York, with its headquarters located at 9 MetroTech Center, Brooklyn, NY 11201.

2.4 "FDNY Facility" means a FDNY division or battalion office, firehouse, ambulance station, or other location owned, leased or operated by FDNY.

2.5 "FDNY Network" means all computer software, hardware (including, but not limited to, desktop computers, whether stand alone or online, laptops, cable modems and telephone lines), databases and applications (including, but not limited to, Oracle, Novell, Microsoft, UNISYS, Operating Systems and CAD systems or platforms) as well as access to facilities and services (including, but not limited to, FDNY Intranet, City Mail, the Internet and other forms of electronic communications) maintained, provided or subscribed to, by the City of New York or FDNY now or in the future.

2.6 "FDNY Office and Technology Resources" includes, but is not limited to, the FDNY Network as defined above, telephones, cellular telephones, pagers, Blackberries and other wireless communication devices, facsimile machines, photocopiers, computer printers, cable modems, Internet connectivity and infrastructure, and access to Internet services and e-mail, whether purchased by, or donated to the City of New York or FDNY.

2.7 "Information Technology" means any equipment or interconnected system or subsystem of equipment that is used in the automation, acquisition, storage, manipulation, management, movement, control, display, switching, interchange, transmission, or reception of data or information.

2.8 "Minimal additional expense" means that an employee's personal use of the FDNY's Office and Technology Resources is limited to those situations where the City of New York ("City") or FDNY is already providing equipment or services and (1) the employee's use of such equipment or services will not result in more than a minimal additional expense to the City or FDNY; or (2) the use will result in only normal wear and tear and will employ only small amounts of electricity, ink, toner or paper; or (3) the FDNY has created mechanisms for employees to reimburse the FDNY for the costs associated with their personal use and the employee makes such a reimbursement for his or her personal use.

2.9 "Personal use" means activity that is conducted for purposes other than accomplishing official City or FDNY business-related activity. Personal use under this Policy does not include any use that is unlawful, violates the City's Conflicts of Interest rules or other applicable laws, rules and regulations, or is specifically prohibited by this Policy or another applicable Fire Department or City policy, rule or regulation.

2.10 "Policy" means this Policy as amended, modified, or supplemented from time to time in accordance with the Citywide Protocol for the use of Office and Technology Resources or as determined by the needs of the Fire Department.

2.11 "Supervisor" means a manager or supervisor of civilian or uniformed employees.

## 3. USE OF FDNY OFFICE AND TECHNOLOGY RESOURCES

### 3.1 General Guidelines

3.1.1 FDNY Office and Technology Resources shall be used primarily to conduct official City or FDNY business. FDNY employees may make limited use of FDNY Office and Technology Resources for personal or non-business matters in a manner consistent with this policy.

3.1.2 By using the FDNY Office and Technology Resources, whether for official or other permissible purposes, the user consents to the monitoring and recording of any such use with or without cause, including, but not limited to, records of access to the Internet and e-mail usage.

3.1.3 Any use of FDNY's Office and Technology Resources is made with the understanding that such use is generally not secure, is not private, and is not anonymous. To the extent that employees wish that their personal activities remain private, they should not use the FDNY's Office and Technology Resources for such activities.

3.1.4 Employees are required to conduct themselves appropriately in the workplace and to refrain from using the FDNY Office and Technology Resources for activities that are unauthorized by this Policy, another applicable agency policy, or other applicable laws, rules or regulations.

### 3.2 Limited Personal Use

3.2.1 FDNY employees are permitted limited personal use of FDNY's Office and Technology Resources provided that the use is not prohibited pursuant to this or another applicable agency policy, rule or regulation, does not interfere with or otherwise impede the FDNY's operations or employee productivity, and involves no more than a minimal additional expense to the FDNY. FDNY employees may engage in the personal use of FDNY's Office and Technology Resources permitted by this Policy only at times that do not conflict with the employee's official duties and responsibilities and the employee is not required to perform services for the FDNY or the City.

3.2.2 The opportunity to engage in limited personal use of FDNY's Office and Technology Resources extended by the FDNY is a privilege, and as such it can be revoked at any time. This privilege does not create in any FDNY employee a right to use the FDNY's Office and Technology Resources for non-FDNY or non-City business.

3.2.3 Limited personal use of FDNY's Office and Technology Resources is subject to monitoring and other restrictions that may be indicated by the FDNY. Furthermore, such limited personal use is at the sole risk of the employee. The FDNY is not responsible for any loss or damages resulting from such personal use. Employees agree to indemnify FDNY for any claims arising out of illegal or otherwise unauthorized use of FDNY Office and Technology Resources.

3.2.4 Limited Personal Use includes such things as occasionally making a photocopy, sending a one or two page fax, using a printer to print out a few pages of material, making a brief personal telephone call, sending a short personal e-mail message, or making limited use of the Internet for personal reasons.

### 3.3 Unauthorized Personal Use

Unauthorized and prohibited personal use of the FDNY's Office and Technology Resources includes, but is not limited to, the following:

3.3.1 Any personal use of the FDNY's Office and Technology Resources that could cause congestion, delay, or disruption of service to any of the City's Office and Technology Resources. For example, electronic greeting cards, video, sound, digital images, or other large computer file attachments can degrade the performance of the entire FDNY Network. "Push" technology on the Internet and other continuous data streams can also degrade the performance of the entire FDNY Network.

3.3.2 Any personal use of the FDNY's Office and Technology Resources as a staging platform to gain unauthorized access to other systems or in furtherance of unauthorized computer use.

Case 1:07-cv-02067-NGG-RLM   Document 896   Filed 06/08/12   Page 8 of 15 PageID #: 22375

| | |
|---|---|
| FDNY | A.U.C. 327, EMSC OGP 113-06 |
| March 15, 2005 | LIMITED USE OF OFFICE AND TECHNOLOGY RESOURCES |

3.3.3   Any personal use of FDNY's Office and Technology Resources in the creation, copying, transmission, or retransmission of chain letters or e-mails, petitions, or other unauthorized mass mailings or mass e-mails regardless of the subject matter.

3.3.4   Any personal use of the FDNY's Office and Technology Resources for activities that are inappropriate to the workplace or are prohibited by applicable laws, rules, regulations or agency policy.

3.3.5   Any personal use of the FDNY's Office and Technology Resources for the creation, downloading, viewing, storage, copying, or transmission of any material that is: obscene, sexually explicit or sexually oriented; hate speech; threatening; defamatory; known to be fraudulent; or ridicules others on the basis of race, creed, religion, color, gender, disability, national origin, or sexual orientation.

3.3.6   Any personal use of the FDNY's Office and Technology Resources in furtherance of a non-City business or non-City employment, including, without limitation, consulting for pay, sales or administration of business transactions (not including personal finances), or sale of goods or services, including assisting relatives, friends or other persons in such activities.

3.3.7   Any personal use of the FDNY's Office and Technology Resources to engage in any outside fund-raising activity, to endorse any product or service, participate in any lobbying activity, or to engage in any prohibited political activity.

3.3.8   Any personal use of the FDNY's Office and Technology Resources to post agency information to external newsgroups, chat rooms, bulletin boards or other forums without prior written authorization.

3.3.9   Any personal use of the FDNY's Office and Technology Resources to participate in chat room discussions.

3.3.10  Any personal use of the FDNY's Office and Technology Resources in the unauthorized acquisition, use, reproduction, transmission, or distribution of any information, computer software or data, including, without limitation: private or confidential information about any individual, business or other entity including, but not limited to, medical information; copyrighted, patented or trademarked material or material with otherwise legally protected intellectual property rights; proprietary data; or export controlled software or data.

3.3.11  Any unauthorized modification of the FDNY's Office and Technology Resources, including, but not limited to, loading personal software or making configuration changes, such as installing and using a different Internet browser.

3.3.12 Attempting to or gaining unauthorized access to any part of the FDNY Network, including, but not limited to, confidential databases maintained by, or to which the FDNY has access, including databases maintained by other State or City agencies.

3.3.13 Any installation of telephone lines, cable modems, high speed data lines, cable or satellite television or other wireless connections in any FDNY Facility without prior written approval from the Assistant Commissioner of BTDS, or his or her designee.

3.3.14 Sending messages that contain personal opinions expressed in such a way that it may be interpreted as FDNY or City policy. It is general practice in such cases to include a disclaimer such as: "The opinions expressed here are my own and do not necessarily reflect the policy of the Fire Department of the City of New York."

3.3.15 Any personal use of FDNY's office supplies, including, but not limited to, paper, pens and postage, other than a minimal use of supplies incidental to the limited use of FDNY Office and Technology Resources.

## 4. USE OF THE FDNY NETWORK

### 4.1 Guidelines

4.1.1 Access to the FDNY Network shall be authorized only by the Assistant Commissioner of BTDS, or his or her designee.

4.1.2 All requests for authorization shall be made in writing on the appropriate BTDS Access Forms. Any request for access to additional data or applications should include justification as to how such use will enhance/support current job responsibilities and performance.

4.1.3 FDNY Network security is of the highest priority. Security is essential for the effective and efficient operation of the FDNY Network. It is the responsibility of all persons authorized to use the FDNY Network to help maintain the highest possible degree of FDNY Network security. If a security problem is discovered (e.g. unauthorized use of an account or password, attempt to access secured records), such problem shall be immediately reported to the FDNY Network administrator.

4.1.4 FDNY and other City Agencies reserve the right to monitor and revoke permission to access FDNY Network, modem and/or Internet services in the event of a violation of this policy, other City or FDNY policy, or any threat to the operation of the FDNY Network.

4.1.5 All users of City Network and FDNY Network have a responsibility to use their Internet access in compliance with this policy and with customary Internet netiquette, and all other applicable laws, rules and regulations.

4.1.6 Use of Internet access for activities that are not acceptable under this policy may subject a user to disciplinary action, including the removal of a user's access from the system and/or any additional disciplinary action that may be appropriate. FDNY reserves the right to review violations of this policy on a case-by-case basis.

## 4.2 Requirements

Persons authorized to use the FDNY Network are required to do the following:

4.2.1 Carefully safeguard their individual FDNY Network accounts. Accordingly, passwords and/or accounts shall not be publicized or shared, except within the agreed parameters for common accounts.

4.2.2 Read their e-mail on a regular basis, during those days that they are in the office. Any unwanted messages should be deleted on a regular basis, as directed by BTDS.

4.2.3 Select passwords that are not easy to guess or to find using a password-decoding program. The password should be a minimum of 8 characters in length and consist of alpha and numeric characters or two or more unrelated words.

4.2.4 Keep the password confidential and file it in a safe place. The password should never be shared with anyone except as authorized in writing by BTDS.

4.2.5 Change passwords at least once a month.

4.2.6 Immediately notify the BTDS if a password has been lost, stolen, otherwise obtained by another person, or if there is a reason to believe that someone has obtained unauthorized access to an FDNY Network account. Indications of unauthorized access include, but are not limited to:

- Strange files appearing in the authorized FDNY Network user's directory; or
- Unaccounted for log-ins during a time when the authorized FDNY Network user was not using the FDNY Network; or
- Files or programs changing size or no longer functioning properly.

## 4.3 FDNY Network Administration and Audits

4.3.1 FDNY Network administrators and certain other City representatives have access to records, files and data maintained by FDNY Network users and other City agencies. FDNY Network administrators and staff shall not disclose any such information to others, unless authorized in writing by BTDS and appropriate clearance is obtained from the Bureau of Legal Affairs, the Bureau of Investigations and Trials, or other City representatives, as required.

Case 1:07-cv-02067-NGG-RLM   Document 896   Filed 06/08/12   Page 11 of 15 PageID #: 22378

| | |
|---|---|
| FDNY | A.U.C. 327, EMSC OGP 113-06 |
| March 15, 2005 | LIMITED USE OF OFFICE AND TECHNOLOGY RESOURCES |

4.3.2 BTDS will periodically conduct FDNY Network audits of all accounts to ensure compliance with Fire Department guidelines as set forth herein. FDNY Network audits shall be in compliance with all City Comptroller Directives, as well as U.S. General Accounting Office (GAO) Generally Accepted Government Auditing Standards (GAGAS) or other applicable Federal, State or City standards.

**4.4 Disclosure of FDNY Network Information**

4.4.1 Any FDNY Network electronic communication or data may be subject to disclosure under the New York State Freedom of Information Law, and in certain instances may be discoverable in litigation.

## 5. USE OF FDNY LANDLINE TELEPHONES

**5.1 Guidelines**

5.1.1 FDNY employees may make limited personal use of FDNY landline telephones. Such limited personal use should not result in more than a minimal additional expense to the FDNY.

5.1.2 The FDNY shall be reimbursed for all non-business related long distance call(s).

**5.2 Call Validation and Reimbursement Procedures**

5.2.1 The employee must review bills for long distance charges and identify the nature of each call by coding the call as Business related (B), Non-Business related (N) or Unknown (U). Unknown calls may be forwarded to the New York City Department of Investigation for follow-up.

5.2.2 An employee's failure to review the long distance bill, code usage details and reimburse the FDNY for personal usage, if applicable, may result in all calls being classified as non-business related and could subject the employee to disciplinary action.

5.2.3 After review of the bill, the employee shall return the bill with the first page signed and call usage details coded, to the designated FDNY coordinator. A copy of the reimbursement form, if applicable, should accompany the bill. Uncoded or unsigned bills will not be accepted.

5.2.4 Checks are to be made payable to the *New York City Fire Department* and forwarded to the designated FDNY coordinator. The check and reimbursement forms should reference the landline telephone number and the billing month.

5.2.5 All billing inquiries should be directed to the Assistant Commissioner for the Bureau of Communications.

## 6. USE OF FDNY ISSUED WIRELESS EQUIPMENT

### 6.1 Guidelines for Issuance of Wireless Equipment

6.1.1 All requests for new wireless service shall be made in writing and shall be accompanied by a memo signed by the designated FDNY executive and which specifically documents the need for the wireless service. Wireless equipment includes, but is not limited to, cellular telephones, Nextel two-way radio/phones and handheld devices such as Blackberries.

6.1.2 Cellular telephones may be issued to individuals whose:

A) Primary functions are public safety, emergency service, assistance and resolution of public safety/emergency activities; or

B) Work requires that they respond immediately to agency mission critical objectives.

6.1.3 If a request is made for a Nextel radio with cellular capability, for an individual who has already been issued a cellular telephone from either AT&T Wireless or Verizon Wireless, the latter must be returned to Bureau of Communications at the time of delivery and activation of the Nextel unit.

### 6.2 Guidelines for the Use of Wireless Equipment

6.2.1 The wireless equipment must be secured and its whereabouts known at all times to the user and the designated FDNY executive responsible for cellular equipment.

6.2.2 The equipment is for the sole use of the user listed in the request and should not be given to any other group or individual for use. The user of record will be held responsible for all usage charges.

6.2.3 FDNY employees may make limited personal use of FDNY cellular phones. Cellular service is not intended to replace landline telephone service. A landline phone should be used whenever one is readily available. The user of record shall reimburse the FDNY for all non-business related calls.

6.2.4 Nextel radios are to be used as a 2-way radio to fulfill communication needs of small groups. Although the radio may have cellular cap ability, the function should only be used when absolutely necessary.

### 6.3 Procedures for Notification for Loss or Theft of Wireless Equipment

6.3.1 The wireless equipment user shall notify the agency designated coordinator of any problems with the wireless equipment including loss or theft, as soon a possible but no later than within two (2) business days after the occurrence.

6.3.2 In the case of theft, a copy of the police report must accompany the request for replacement equipment. The request for replacement must be signed by the designated FDNY coordinator.

6.3.3 The wireless equipment user may be required to reimburse the FDNY for the cost of replacing lost or stolen wireless equipment.

### 6.4 Billing Procedures

6.4.1 Once cellular service has been established for a user, the individual's bills will be sent directly from the service provider to the Bureau of Communications.

### 6.5 Call Validation and Reimbursement Procedures

6.5.1 The user must review cellular telephone usage bills and identify the nature of each call by coding the call as Business related (B), Non-Business related (N) or Unknown (U). Unknown calls may be forwarded to the Department of Investigation for follow-up.

6.5.2 Cellular equipment users must reimburse the City for all non-business related calls that result in more than a minimal additional expense to the FDNY. Since cellular service may include bundled free minutes, the FDNY shall be reimbursed for those non-business calls, for which there is no charge on the bill. This may be done by multiplying the number of minutes per non-business calls times the cost per minute as specified by the minute rate accompanying the code for that call (peak, off-peak, etc.) as it appears on the first page of the bill which summarizes the minutes usage and rates. Cellular equipment users are not entitled to any free minutes for non-business use.

6.5.3 Failure to review your cellular bill, code usage details and reimburse for personal usage, if applicable, may result in the suspension or cancellation of cellular service.

6.5.4 After review of the bill, the cellular equipment user shall return the bill, with the first page signed and call usage details coded to the designated FDNY coordinator. A copy of the reimbursement form, if applicable, should accompany the bill. Uncoded or unsigned bills will not be accepted.

6.5.5 Checks are to be made payable to the *New York City Fire Department* and forwarded to the designated FDNY coordinator. The check and reimbursement forms should reference the cellular telephone number and the billing month.

6.5.6 All billing inquiries should be directed to the Assistant Commissioner for the Bureau of Communications.

| FDNY | A.U.C. 327, EMSC OGP 113-06 |
|---|---|
| March 15, 2005 | LIMITED USE OF OFFICE AND TECHNOLOGY RESOURCES |

### 7. PRIVACY EXPECTATIONS

7.1  The FDNY Network e-mail system and the messages sent on it are the property of the FDNY. Messages received and stored on the FDNY Network servers are monitored on a regular basis. Accordingly, FDNY Network users do not have a right to privacy associated with any information published or stored on the FDNY Network or sent or received via electronic communications through the FDNY Network, the FDNY Intranet and City Share.

7.2  By using the FDNY's Office and Technology Resources, whether for official or other permissible purposes, FDNY employees consent to the monitoring and recording of any such use with or without cause, including, but not limited to, records of access to the Internet and e-mail usage whether internal or external, and archived documents or information.

7.3  Any use of the FDNY's Office and Technology Resources is made with the understanding that such use is generally not secure, is not private, and is not anonymous. To the extent that employees wish that their personal activities remain private, they should not use the FDNY's Office and Technology Resources for such activities.

7.4  Any use of the FDNY's infrastructure, or Internet connectivity, including any use via a desktop or laptop computer not owned by the FDNY or the City will subject the user to the restrictions and sanctions set forth in this Policy or any other applicable laws, rules, regulations or agency policies.

7.5  Any use of a computer (whether desktop or laptop) including a civilian employee's, uniformed member's, or agent's personal computer at an FDNY Facility shall subject the user to the restrictions and sanctions set forth in this Policy or any other applicable laws, rules, regulations or agency policies.

7.6  The FDNY Commissioner or his or her designees may access any electronic communications that are made using the FDNY's Office and Technology Resources.

### 8. SUPERVISION

8.1  Supervisors shall be aware of activities in areas under their jurisdiction and shall review with their staff the appropriate use of FDNY Office and Technology Resources including any of the electronic communications methods provided within the FDNY Network for professional activities and career development during working hours, to ensure that authorized FDNY Network users do not violate the personal use restrictions set forth in this Policy.

8.2  Supervisors shall be aware of and monitor their staff's use of FDNY's Office and Technology Resources to ensure that (1) misuse does not occur; and (2) that the authorized limited personal use does not result in more than a minimal additional expense to the FDNY.

8.3 Supervisors shall monitor their employees' use of landline and cellular telephones to ensure that limited personal use does not (1) violate the guidelines set forth in this Policy; (2) does not result in more than a minimal additional expense to the FDNY; and (3) does not impede FDNY's operations or interfere with the employee's productivity.

8.4 Supervisors shall ensure that all employees under their supervision acknowledge and respond to bills forwarded to them by the Bureau of Communications.

## 9. SANCTIONS FOR UNAUTHORIZED PERSONAL USE

9.1 Use of the FDNY Office and Technology Resources in a manner contrary to the terms and conditions of this Policy may result in: (1) loss of use or limitations on use of the FDNY Office and Technology Resources; (2) financial liability for the cost of such use; (3) disciplinary or other adverse personnel actions, up to and including termination; and/or (4) civil and/or criminal penalties.

## 10. REIMBURSEMENT

10.1 The FDNY shall be reimbursed for the following:

- Any limited personal use that results in more than a minimal additional expense to the FDNY;
- Any costs incurred by the FDNY resulting from unauthorized use.

10.2 All Checks are to be made payable to the *New York City Fire Department* and forwarded to the designated FDNY coordinator.

**BY ORDER OF THE FIRE COMMISSIONER AND CHIEF OF DEPARTMENT**