UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        PLAINTIFF,

    -AND-

THE VULCAN SOCIETY, INC., *for itself
and on behalf of its members,* JAMEL
NICHOLSON *and* RUSEBELL WILSON,
*individually and on behalf of a subclass
of all other victims similarly situated
seeking classwide injunctive relief;*

ROGER GREGG, MARCUS HAYWOOD,
*and* KEVIN WALKER, *individually and
on behalf of a subclass of all other non-
hire victims similarly situated;* and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS,
*individually and on behalf of a subclass
of all other delayed-hire victims
similarly situated,*

        PLAINTIFFS-INTERVENORS,

    V.

CITY OF NEW YORK, ET AL.,

        DEFENDANTS.

CIV. ACTION NO. 07-CV-2067
(NGG)(RLM)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS-INTERVENORS' MOTION TO RECONSIDER ORDER ON FRINGE BENEFITS

On the brief:  Dana E. Lossia, Esq.

10125297_4

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.   The Class Nature of this Action, the Lack of Notice to Potential Victims, and
     the Unusual Length of the Liability Period All Argue Against Requiring
     Victims to Produce Proof of Years'-Old Medical Expenses ...................................... 2

II.  The Statutory Purposes of Title VII Require Uncertainties to Be Resolved
     Against the City, Not the Victims of Discrimination ................................................ 5

III. Plaintiffs-Intervenors' Proposal Avoids Under- or Over-Compensation ................ 6

IV.  Plaintiffs-Intervenors' Proposal Utilizes the Correct Burdens of Proof ................. 8

CONCLUSION .................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aramony v. United Way of America*,
254 F.3d 403 (2d Cir. 2001)................................................................................................1

*Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*,
604 F. Supp. 962 (E.D. Pa. 1985) .......................................................................................4

*Bigelow v. RKO Radio Pictures, Inc.*
327 U.S. 251 (1946)............................................................................................................5

*Broadnax v. City of New Haven*,
415 F.3d 265 (2d Cir. 2005)................................................................................................8

*Equal Employment Opportunity Commission v. Dial Corp.*,
469 F.3d 735 (8th Cir. 2006) ..............................................................................................3

*Equal Employment Opportunity Commission v. Serv. News Co.*,
898 F.2d 958 (4th Cir. 1990) ..............................................................................................7

*Equal Employment Opportunity Commission v.*
*Enter. Association Steamfitters Local No. 638 of U. A.*,
542 F.2d 579 (2d Cir. 1976)................................................................................................5

*Equal Employment Opportunity Commission v. Kallir, Philips, Ross Inc.*,
420 F. Supp. 919 (S.D.N.Y. 1976), *aff'd* 559 F.2d 1203 (2d Cir. 1977) ...........................8, 9

*Green v. U.S. Steel Corp.*,
640 F. Supp. 1521 (E.D. Pa. 1986) .....................................................................................3

*Hanna v. American Motors Corp.*,
724 F.2d 1300 (7th Cir. 1984) ............................................................................................8

*In re Nassau County Strip Search Cases*,
461 F.3d 219, 230 (2d Cir. 2006) .......................................................................................3

*Interational Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977)...........................................................................................................5, 6

*Johnson v. Goodyear Tire & Rubber Co.*,
491 F.2d 1364 (5th Cir. 1974) ...........................................................................................4, 6

*Jones v. Kayser-Roth Hosiery, Inc.*,
748 F.Supp. 1292 (E.D.Tenn. 1990)...................................................................................3

*Millsap v. McDonnell Douglas Corp.*,
No. 94-CV-633-H, 2002 WL 31386076 (N.D. Okla. Sept. 25, 2002)..................................3, 7

*Mister v. Illinois Central Gulf R. Co.,*
790 F. Supp. 1411 (S.D. Ill. 1992) ...........................................................................3

*Nord v. U.S. Steel Corp.*,
758 F.2d 1462 (11th Cir. 1985) ...............................................................................8

*Pettway v. American Cast Iron Pipe Co.*,
494 F.2d 211 (5th Cir. 1974) ...................................................................................8

*Raishevich v. Foster*,
247 F.3d 337 (2d Cir. 2001).................................................................................5, 9

*Roberts v. Wal-Mart Stores, Inc.*,
CIV.A. 95-0059-H, 1997 WL 38138 (W.D. Va. Jan. 28, 1997)...............................7

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931)................................................................................................5

*Taylor v. Central Pennsylvania Drug & Alcohol Services Corp.*,
890 F. Supp. 360 (M.D. Pa. 1995) ..........................................................................4

*Wooldridge v. Marlene Industries Corp.*,
875 F.2d 540 (6th Cir. 1989) ...........................................................................6, 7, 8

## INTRODUCTION

On March 8, 2012, the Court found that eligible victims of the City's discrimination are entitled to recover for their lost fringe benefits as part of their back pay recovery.  Dkt. 825 at 15. Although recognizing that other courts have fixed a defendant's liability for such losses as "the amount [the defendant] would have paid in premiums for an employee's health insurance," the Court utilized "a contrary rule – that an employer is liable for an employee's out-of-pocket expenses that would have been covered under the employer's health plan."  Dkt. 825 at 15-16. The effect of this finding will be to "require[] victims to prove that they suffered an out-of-pocket expense due to the denial of access to the defendant's health insurance."  Dkt. 825 at 39. The Court also found that while the premium rule advanced by the Plaintiffs "would be administratively the simplest method of proceeding . . . that simple method would create non-trivial opportunities for over– or under compensation."  Dkt. 825 at 40.  "Therefore, the [C]ourt conclude[d] that this issue is one that cannot be resolved on a class-wide basis and must be addressed in the individual claims processes."  *Id.*

Plaintiffs-Intervenors move the Court to reconsider, in a limited way, its finding as to the appropriate method for valuing the loss of health benefits.  The Court has discretion to reconsider any of its decisions prior to the entry of final judgment in the case.  *See, e.g., Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).  Intervenors do not suggest a departure from the individualized process for evaluating losses and do not seek a class-wide valuation of losses. Rather, in the interests of accuracy of calculating make-whole relief, fairness to all parties, and efficiency of the process, Intervenors urge the Court to adopt a modified approach to evaluating each victim's individual losses.

As set out in greater detail below, Intervenors propose a three-step process that would (a) afford the City an opportunity to mitigate its exposure and (b) avoid penalizing victims for failing to retain a decade's worth of receipts for out-of-pocket medical expenses, when they had no notice that such records might in the future be relevant to a claim for reimbursement.

## ARGUMENT

**I.   The Class Nature of this Action, the Lack of Notice to Potential Victims, and the Unusual Length of the Liability Period All Argue Against Requiring Victims to Produce Proof of Years'-Old Medical Expenses**

The Court's March 8, 2012 Order seems to contemplate that eligible victims of discrimination – a group that could run into the thousands of individuals – would be required to reconstruct, either from memory or from available documentation, each visit by themselves or their dependents to a physician, dentist, clinic or therapist, each prescription purchase, and each visit to the emergency room or other hospital stay starting in 2001 (for victims of Exam 7029) or 2004 (for victims of Exam 2043). To the extent that the victims can recall the medical services provided to them and their dependents over this lengthy time period, they would then need to produce records, receipts or other evidence of the medical expenses they incurred. These firefighter applicants and incumbents, however, are unlike the plaintiffs in the majority of employment discrimination lawsuits in several important respects. Primarily, they were not, as a class, aware that they were members of a group of plaintiffs, or of the existence of this litigation, until May 2012, and no notice was provided to them that records of medical expenditures going back as much as eight (8) to eleven (11) years might be needed. For victims of Exam 7029, such notice reached them more than eleven (11) years after the start of the liability period (February 2001), and for victims of Exam 2043, it was nearly eight years after the start of the liability period (June 2004).

It is no wonder that in discriminatory failure-to-hire class actions, such as this one, where victims will normally be ill-equipped to recall much less recreate their losses, courts have utilized a premium-based approach to evaluating the loss of fringe benefits.  *See Equal Employment Opportunity Comm'n. v. Dial Corp.*, 469 F.3d 735, 744 (8th Cir. 2006); *see also Mister v. Illinois Cent. Gulf R. Co.,* 790 F. Supp. 1411, 1418 (S.D. Ill. 1992); *Green v. U.S. Steel Corp.*, 640 F. Supp. 1521, 1530 (E.D. Pa. 1986), *vacated in part on other grounds*, 843 F.2d 1511 (3d Cir. 1988).[1]  While the typical named plaintiff in an individual employment action was aware of the pending claim for equitable relief, including fringe benefits, and was likely advised early and often by counsel to retain records of reimbursable losses, the victims in this class action case had no such awareness or advice.   As this Court has previously recognized, "[a]lthough this litigation has received some attention in the media, 'without class notification, most putative class members will not even know that they suffered a violation of their constitutional [and statutory] rights.'"  Dkt. 665 at 50 (citing *In re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006)).

Not knowing they were plaintiffs in this action, class members would have had no reason to suspect that their years-old medical expenditures might be reimbursed in the future.  Even the most diligent and deserving class member cannot be expected to have retained eight to eleven

---

[1] Courts have also found the premium approach to be the correct one in class actions under the Worker Adjustment and Retraining Notification ("WARN") Act and the Employee Retirement Income Security Act ("ERISA").  *See Jones v. Kayser-Roth Hosiery, Inc.*, 748 F.Supp. 1292, 1295 (E.D.Tenn. 1990) (holding in a WARN Act case that employees were entitled to recover the cost per employee of the employer's total insurance program when an employer is self-insured); *Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H, 2002 WL 31386076, at *8 (N.D. Okla. Sept. 25, 2002) (holding in an ERISA case that "the value of the lost health benefits will be measured, at a minimum, by the cost of the premiums Defendant would have paid for each employee."), *rev'd in part on other grounds*, 368 F.3d 1246 (10th Cir. 2004).

years' worth of medical expense records, and what records they may have retained cannot be expected to represent a complete or accurate accounting of their costs.

Notably, none of the cases cited by the City in its brief concerning monetary relief involved actions based on an employer's discriminatory failure to hire. Dkt. 543. An extensive search by the Intervenors failed to locate any case in which a court required claimants to prove their actual medical costs in a discriminatory failure-to-hire class action. The cases cited by the City are ones in which, for example, victims suffered discriminatory discharge from employment. *See, e.g.*, *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 604 F. Supp. 962, 964 (E.D. Pa. 1985) (former employee brought action alleging discriminatory termination under the ADEA); *Taylor v. Cent. Pennsylvania Drug & Alcohol Servs. Corp.*, 890 F. Supp. 360, 363 (M.D. Pa. 1995) (former employees alleged their discharge was due to sexual harassment). In those cases, as noted above, the plaintiff would have been notified by counsel to retain records of medical expenses for which he or she sought reimbursement in the complaint.

Here, as in many Title VII cases, "it is now impossible for an individual discriminatee to recreate the past with exactitude." *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1379 (5th Cir. 1974). It is unlikely that many or most of the victims will be able to recall or re-create accurate proof of their losses, since payments over the years to dentists, eye doctors, clinics and pharmacies may have been made in cash and may not have been entered into any centralized computer system by the service provider. The losses suffered by these victims are, under the present approach, likely to go substantially uncompensated simply because of lost records of amounts expended. "The constant tendency of the court is to find some way in which damages can be awarded where a wrong has been done." *Id.* at 1380 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 565-66 (1931)). Intervenors suggest that

4

the premium method of valuing medical benefits is integral to a fair and accurate process for determining individualized back pay awards.

## II.     The Statutory Purposes of Title VII Require Uncertainties to Be Resolved Against the City, Not the Victims of Discrimination

When the nature of the wrong prevents the calculation of damages with certainty, as is the case here, "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts." *Story Parchment*, 282 U.S. at 563.  An approach that requires victims to produce proof of expenditures that were made years ago, to a variety of providers, perhaps for several family members, and possibly across multiple states, is inconsistent with the purposes of Title VII because it is very likely to fail to make class members whole, or even substantially whole, and will instead allow the City to escape responsibility.  *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 364 (1977) (Title VII backpay remedy is to make victims of discrimination whole and to deter employment discrimination).

Courts have considerable discretion, consistent with the statutory goals of Title VII, to fashion back pay remedies that are tailored to the facts presented by a particular case.  "In determining the specific remedies to be afforded, a district court is 'to fashion such relief as the particular circumstances of a case may require to effect restitution.'"  *Teamsters*, 431 U.S. at 364 (quoting *Franks v. Bowman*, 424 U.S. 747, 764 (1976)).  Unrealistic precision is not necessary in back pay calculations; rather, where uncertainties arise, they should be resolved in favor of the victim and against the wrongdoer.  *See, e.g., Equal Employment Opportunity Comm'n v. Enter. Ass'n Steamfitters Local No. 638 of U. A.*, 542 F.2d 579, 587 (2d Cir. 1976); *Raishevich v. Foster*, 247 F.3d 337, 343 (2d Cir. 2001) ("The *Bigelow* principle thus applies to situations in which the amount of damages, although not specifically ascertainable because of misconduct by

5

the defendant, falls within a certain range. It provides the plaintiff with the benefit of a more liberalized standard of proof and prevents the defendant from 'profit[ing] by his wrongdoing at the expense of his victim.'") (citing *Bigelow v. RKO Radio Pictures, Inc.* 327 U.S. 251, 264 (1946)); *Wooldridge v. Marlene Indus. Corp.*, 875 F.2d 540, 546 (6th Cir. 1989) ("Victims of discrimination are entitled to a presumption in favor of relief; because 'recreating the past will necessarily involve a degree of approximation and imprecision,' [*Teamsters*, 431 U.S. at 372], all doubts are to be resolved against the proven discriminator rather than the innocent employee."); *Johnson*, 491 F.2d at 1380 ("Any doubts in proof should be resolved in favor of the discriminatee giving full and adequate consideration to applicable equitable principles."). Although a court must be mindful of equitable considerations, "onerous and speculative limitations should not be utilized as a bar to the restoration process." *Johnson*, 491 F.2d at 1380.

### III. Plaintiffs-Intervenors' Proposal Avoids Under- or Over-Compensation

Plaintiffs-Intervenors urge the Court to adopt a modified approach to assessing the value of victims' lost health benefits. This approach is a fairer and more accurate alternative that is consistent with the Court's individualized framework for calculating back pay:

1. The Special Masters begin with a rebuttable presumption that each eligible victim is entitled to recover the cost of the premiums the City would have paid to insure him or her as an employee in the title of firefighter.

2. Each victim has the opportunity to assemble and present evidence that he or she was unable to obtain substitute medical coverage and incurred actual costs beyond the value of the premiums the City would have paid.

3. The City has the opportunity to gather discovery and present evidence that the victim and his or her dependents received insurance from a collateral source, such as an employer or Medicaid. The City also has the opportunity to determine the nature, scope and cost to the victim of such coverage, and its start and end dates. If a victim opts to present evidence based on actual costs beyond the value of the premiums, the City may also attempt to rebut the victim's showing. If the Special Master credits such evidence, the victim's recovery for medical benefits costs will be reduced accordingly.

This approach is likely to be more accurate than a pure out-of-pocket cost-based method because those victims who are unable to produce evidence of their out-of-pocket costs (which may nevertheless have been substantial) are not automatically assigned a recovery of zero. Instead, Intervenors' proposal re-sets the "default" recovery from zero to the cost of health care coverage for an FDNY firefighter, while providing both the City and the victim the opportunity to move that default figure up or down, as the evidence dictates.[2]  The City preserves its ability to mitigate its damages by showing that a particular victim was insured, and the nature, scope and duration of such insurance, in which case the claimant would not recover the full value of the cost of FDNY coverage.  At the same time, victims who may have suffered unusually costly medical histories, and who can present proof of such expenditures, retain their ability to be made whole.  In this way, the proposed modification avoids both under- and over-compensation, and it respects the Court's concern that it not "close its eyes to the expenses individuals actually incurred."  Dkt. 825 at 39.

---

[2] *Cf. Millsap v. McDonnell Douglas Corp.*, 94-CV-633-H, 2002 WL 31386076, at *8 (N.D. Okla. Sept. 25, 2002) ("Therefore, in the instant case, the value of lost health benefits will be measured, at a minimum, by the cost of premiums Defendant would have paid for each employee. If a plaintiff's claimed medical expenses exceed the cost of premiums Defendant would have paid and plaintiff made an earnest but failed attempt to obtain substitute insurance, the Court will measure recovery based on actual expenses incurred."), *rev'd in part on other grounds,* 368 F.3d 1246 (10th Cir. 2004); *Equal Employment Opportunity Comm'n. v. Serv. News Co.*, 898 F.2d 958, 964 (4th Cir. 1990) ("Phillips was unable to obtain other insurance because her pregnancy was a pre-existing condition which was excluded from coverage. Therefore, the measure of damages was properly calculated as the benefits which would have been paid, rather than the cost of the premiums."); *Roberts v. Wal-Mart Stores, Inc.*, CIV.A. 95-0059-H, 1997 WL 38138 (W.D. Va. Jan. 28, 1997) ("There being no evidence that plaintiff undertook a serious effort to obtain substitute medical insurance and that he incurred out-of-pocket medical expenses that would otherwise have been covered under his insurance through Wal-Mart, this court is bound to conclude that plaintiff's recovery is limited to the value of the premiums that Wal-Mart would have paid had plaintiff continued working.").

## IV.   Plaintiffs-Intervenors' Proposal Utilizes the Correct Burdens of Proof

In addition to being fairer and more accurate, Plaintiffs-Intervenors' approach is more consistent with the proper burdens of proof in determining a back pay award. Generally, the defendant bears the burden of proof in the damages phase. *Wooldridge*, 875 F.2d at 546. The initial burden for the back pay claimant should be light, "with a heavier weight of rebuttal on the employer." *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 259 (5th Cir. 1974); *see also Wooldridge*, 875 F.2d at 546. The individual class member merely must produce enough information to enable his or her damages calculation. *Id.*, at 547.

> Once a plaintiff in a Title VII case has established a prima facie case and established what he or she contends to be the damages resulting from the discriminatory acts of the employer, the burden of producing further evidence on the question of damages in order to establish the amount of interim earnings or lack of diligence properly falls to the defendant.

*Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1470 (11th Cir. 1985); *see also Equal Employment Opportunity Comm'n v. Kallir, Philips, Ross Inc.*, 420 F. Supp. 919, 924 (S.D.N.Y. 1976) (after a victim has produced a back pay demand, "the burden shifts to the defendant to prove what should be deducted therefrom as '[i]nterim earnings or amounts earnable with reasonable diligence'") (quoting 42 U.S.C. § 2000e-5(g)), *aff'd*, 559 F.2d 1203 (2d Cir. 1977); *Hanna v. Am. Motors Corp.*, 724 F.2d 1300, 1307 (7th Cir. 1984); *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005) ("Generally, an employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate.").

Plaintiffs-Intervenors' proposal conforms to these burdens by requiring the individual victim to produce his or her demand for the value of lost benefits, based upon either the City's costs or, if he or she so chooses, evidence of out-of-pocket medical costs incurred. The burden then shifts to the City to mitigate its liability or otherwise rebut the damages claim.

As noted above, applying the out-of-pocket cost method would require each individual victim to recreate his or her medical billing history over an eight to eleven year period without having been put on notice of the possibility of recovery. Such an approach, in a failure-to-hire class action, with a lengthy liability period, would place an undue burden on discriminatees that is inconsistent with the principle "that where [a wrongdoer's] conduct has prevented a precise computation of damages, the injured party is not to be deprived of adequate damages." *Kallir, Philips, Ross Inc.*, 559 F.2d at 923; *see also Raishevich*, 247 F.3d at 343. For victims who retained no medical bills, the out-of-pocket cost approach could bar any restitution. We respectfully urge that the Court reject this result and adopt the modified approach suggested here.

## CONCLUSION

For these reasons, the Non-hire Subclass and the Delayed-Hire Subclass respectfully move the Court for an Order modifying its March 8, 2012 Order consistent with the proposal set forth above.

Dated: New York, New York
      June 29, 2012

Respectfully submitted,

LEVY RATNER, P.C.

/s/
_____

By:    Richard A. Levy
        Dana E. Lossia
        Robert H. Stroup
        80 Eighth Avenue
        New York, NY 10011
        (212) 627-8100
        (212) 627-8182 (fax)

        *Attorneys for the Non-Hire Subclass*

CENTER FOR CONSTITUTIONAL RIGHTS

/s/

By:    Darius Charney
       Ghita Schwarz
       666 Broadway, 7th Floor
       New York, NY 10012-2399
       (212) 614-6438
       (212) 614-6499 (fax)

       *Attorneys for the Delayed-Hire Subclass*

TO:  All Counsel via ECF