FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ JUL 0 5 2012 ★

BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>THE VULCAN SOCIETY INC., for itself and on behalf of its members, JAMEL NICHOLSON, and RUSEBELL WILSON, individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief;<br><br>ROGER GREGG, MARCUS HAYWOOD, and KEVIN WALKER, individually and on behalf of a subclass of all other non-hire victims similarly situated; and<br><br>CANDIDO NUÑEZ and KEVIN SIMPKINS, individually and on behalf of a subclass of all other delayed-hire victims similarly situated,<br><br>      PLAINTIFFS-INTERVENORS<br>V.<br><br>CITY OF NEW YORK, ET AL.,<br><br>      DEFENDANTS. | CIV. ACTION NO. 07-CV-2067 (NGG)(RLM) |

**RELIEF ORDER**

In 2007, the United States brought suit against the City of New York ("City"), alleging that certain aspects of the City's policies for selecting entry-level firefighters for the New York City Fire Department ("FDNY") violated Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). The United States alleged that the City's use of two exams – Written Exams 7029 and 2043 – as pass-fail screening and rank-ordering devices had a disparate impact on black and Hispanic candidates for entry-level firefighter. The Vulcan Society and several individuals ("Plaintiffs-Intervenors") intervened in the lawsuit as plaintiffs, alleging similar claims of disparate impact and also alleging disparate treatment (raising both theories of liability under federal, state, and local law) on behalf of a class of black-entry-level firefighter candidates.[1]

In July 2009, the Court granted summary judgment in favor of the United States and Plaintiffs-Intervenors and found that the City's pass-fail and rank-order uses of Written Exams 7029 and 2043 had an unlawful disparate impact under Title VII. Dkt. 294 (July 22, 2009). In addition, in January 2010, the Court granted the Plaintiffs-Intervenors' motion for summary judgment regarding disparate treatment liability, holding that the City's use of Written Exams 7029 and 2043 constituted intentional discrimination in violation of Title VII, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as

---

[1] The factual and procedural background of this case is extensive, and will not be recounted in full here. Only the events that are relevant to the issues in this Relief Order will be summarized. A more complete history can be found in the Court's previous rulings, most recently in the Memorandum & Order issued after the Court's August 2011 bench trial on the need for and scope of affirmative injunctive relief. Dkt. 743 at 2-5 (October 5, 2011).

disparate impact and disparate treatment liability under state and local laws. Dkt. 385 (January 13, 2010).[2]

After issuing these 2009 and 2010 rulings against the City, the Court proceeded to the remedial phase of the case. To remedy the City's discrimination, the Court has determined that victims of the City's discrimination who timely submit claim forms and are determined to be eligible may be awarded individual relief (*see* Section III below as to eligibility). The Court also has issued several rulings defining the scope of individual relief that will be available and the eligibility criteria for an award of relief. This Relief Order summarizes those rulings for purposes of a Fairness Hearing pursuant to Section 703(n) of Title VII, 42 U.S.C. § 2000e-2(n), which the parties have requested. Under the Relief Order, the Court will award individual relief only to individuals who the Court determines, through the claims process for individual relief, were victims of the City's discriminatory practices. However, only black and Hispanic applicants who took Written Exams 7029 or 2043 will be eligible to receive individual relief. Individuals who took Written Exam 6019 (given primarily in 2007) and/or Written Exam 2000 (given in 2012), but did not take Written Exam 7029 or 2043, are not eligible for relief in this case.

Section I of the Relief Order provides definitions applying to this Order. In Section II, the Court sets the date for a fairness hearing regarding the terms of the Relief Order. The eligibility criteria for individual relief are summarized in Section III. As set forth in Section IV, the three types of individual relief available are: (1) back pay to remedy wages and benefits lost due to discrimination, including pre-judgment interest; (2) priority hiring consideration for FDNY firefighter job offers for up to 293 black and Hispanic victims of discrimination; and (3)

---

[2] The City has appealed the Court's decision regarding disparate treatment liability, and the appeal is currently pending in the United States Court of Appeals for the Second Circuit.

retroactive seniority awards to current FDNY firefighters and up to 293 individuals who receive priority hiring relief. In addition, as described in Section V, the Court has found that black victims may be eligible for noneconomic damages (*i.e.*, compensatory damages) for the lost enjoyment and job satisfaction of working as a FDNY firefighter. Section VI sets forth the general framework under which a person's eligibility for, and amounts of, individual relief awards will be determined.

This Relief Order refers to the Court's prior orders, including the docket number of the relevant order. These orders provide the reader with more detailed information related to the forms of individual relief. Copies of these orders are available to the public free of charge at www.justice.gov/fdnycase. Copies also may be obtained from the Clerk of this Court.

Pending the resolution of any objections following the fairness hearing ("Fairness Hearing"),[3] the Court hereby ORDERS:

## I. DEFINITIONS

1. The "Parties" are the United States, by its counsel the United States Department of Justice; the City of New York, by its counsel the Corporation Counsel of the City of New York; and the Plaintiffs-Intervenors, which includes the Non-hire Subclass, by their counsel Levy Ratner, P.C., the Delayed Hire Subclass, by their counsel the Center for Constitutional Rights, and the Injunctive Relief Subclass, by their counsel Levy Ratner, P.C., the Center for Constitutional Rights, and Scott + Scott LLP.

2. "Claimant" refers to a Delayed-Hire Claimant or Non-hire Claimant, as defined below in Section III.

---

[3] Notice of this Relief Order as well as the Fairness Hearing will be distributed to individuals who might be affected by the proposed individual relief. The details of the notice distribution process will be set forth in a separate order.

3

3. "Entry-level firefighter" refers to a person in the entry-level uniformed position in the FDNY, regardless of whether the person may be called a "recruit," "trainee," "proby" or other title before completing academy training and/or a probationary period.

4. "Individual relief" refers to an award of back pay, including fringe benefits and other benefits, prejudgment interest, an offer of priority hire and/or retroactive seniority, and noneconomic damages (if applicable), which a claimant may receive either separately or in combination.

5. "Median hire date" or "presumptive hire date" means:

    (a) February 2, 2003 for a Claimant who took Written Exam 7029;

    (b) June 11, 2006 for a Claimant who took Written Exam 2043; or

    (c) February 2, 2003 for individuals who qualify as Claimants with respect to both Written Exams 7029 and Exam 2043.

6. "Special Masters" refers to Special Masters Steven M. Cohen, Hector Gonzalez, Mitra Hormozi, and Breon S. Peace, who were appointed by the Court on May 22, 2012 (Dkt. 883) to oversee the claims process for individual relief.

## II. FAIRNESS HEARING REGARDING RELIEF ORDER

In accordance with Section 703(n) of Title VII, the Court will conduct the Fairness Hearing related to the Relief Order. The purpose of the Fairness Hearing is to provide all individuals who may be affected by the terms of this Relief Order an opportunity to present objections prior to the implementation of individual relief. The Fairness Hearing shall be held on September 28, 2012 at 9:00 a.m., at the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York in Courtroom number 4D.

4

Prior to the Fairness Hearing, and in accordance with the terms of the Order Governing Distribution of Notice of the Fairness Hearing, the City will distribute notice of the Fairness Hearing to all individuals whose interests may be affected by the terms of this Relief Order. Individuals who wish to object to the terms of this Relief Order must submit a written objection in accordance with the instructions set forth in the notice. Individuals who submit objections may attend the Fairness Hearing, but attendance is not required in order for the Court to consider an objection.

## III. ELIGIBILITY CRITERIA FOR INDIVIDUAL RELIEF

The Court has adopted the following eligibility criteria for an applicant who was not hired as a result of the City's discrimination ("Non-hire Claimant") and an applicant whose hiring was delayed by the City's discrimination ("Delayed-Hire Claimant").

### A. Non-hire Claimant

Any black or Hispanic person who:

(a) failed Written Exam 7029 with a score of 25 or higher and was not later appointed as an entry-level firefighter;

(b) failed Written Exam 2043 with a score of 25 or higher and was not later appointed as an entry-level firefighter;

(c) passed Written Exam 2043, had a list number higher than 5646 on the Exam 2043 eligible list, was not appointed as an entry-level firefighter, and was not given by the City's Department of Citywide Administration Services ("DCAS") (as indicated in the data produced by the City to the other parties on September 21, 2011 in a file entitled "Copy of EXAM2043 D092011 REV.xls") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased), FRA (failed to report after accepting appointment), FRI (failed to report for

5

interview), NQA (not qualified for appointment), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 2043 eligible list. Dkt. 825 at 51-52 (March 8, 2012), as modified by the Court's minute order dated March 22, 2012.

Part "c" of this definition encompasses victims of the City's discrimination who passed Written Exam 2043, but whose rank on the eligible list had the same practical effect as failing the Written Exam by preventing their hiring as an entry-level firefighter. To this end, Part "c" properly excludes individuals who passed Written Exam 2043 but were not hired for a reason unrelated to their rank on the Exam 2043 eligible list. This definition appropriately excludes individuals who are demonstrably not victims of the discrimination in the hiring process that gave rise to the City's liability and, therefore, are not eligible for individual relief.

### B. Delayed-Hire Claimant

Any black or Hispanic person who:

(a)     passed Written Exam 7029, was given a list number on the Exam 7029 eligible list and was appointed as an entry-level firefighter after February 4, 2001 (date of the first Exam 7029 academy class), and was not given by DCAS (as indicated in the data produced by the City to the other parties in November 2007 on a disk labeled "Exam 7092 Corrected Applicant Data") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased), FRA (failed to report after accepting appointment), FRI (failed to report for interview), NQA (not qualified for appointment), OVA (overage), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 7029 eligible list;

6

  (b) passed Written Exam 2043, was given a list number on the Exam 2043 eligible list and was appointed as an entry-level firefighter after May 25, 2004 (date of the first Exam 2043 academy class), and was not given by DCAS (as indicated in the data produced by the City to the other parties on September 21, 2011 in a file entitled "Copy of EXAM2043 D092011 REV.xls") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased), FRA (failed to report after accepting appointment), FRI (failed to report for interview), NQA (not qualified for appointment), OVA (overage), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 2043 eligible list;

  (c) failed Written Exam 7029 and was appointed as an entry-level firefighter after February 4, 2001 from an eligible list other than the Exam 7029 eligible list; or

  (d) failed Written Exam 2043 and was appointed as an entry-level firefighter after May 25, 2004 from an eligible list other than the Exam 2043 eligible list. Dkt. 825 at 52-53, as modified by the Court's minute order dated March 22, 2012.

### C. Other lawful qualifications

In addition to meeting the definition of a Non-hire Claimant or a Delayed-Hire Claimant, in order to be eligible for individual relief, a black or Hispanic individual must also satisfy "other lawful qualifications" that were mandatory, minimum qualifications at the time the claimants applied for a position of entry-level firefighter. These "other lawful qualifications" are as follows:

> [An applicant must meet] the following minimum qualifications required at the time the [applicant] applied to be an entry-level firefighter as stated in the relevant Notices of Examination:

7

    (a)    Was not younger than 17 ½ years of age by the end of the application period for the relevant examination, which was October 16, 1998 for Exam 7029 and October 31, 2002 for Exam 2043;

    (b)    Was not older than 29 by the beginning of the application period for the relevant examination, which was September 2, 1998 for Exam 7029 and June 28, 2002 for Exam 2043 (after a deduction of time, not to exceed six years, spent in military duty as defined in Section 243 of the New York State Military Law);

    (c)    Can presently understand and be understood in English;

    (d)    Had obtained citizenship by four years after the date of the establishment of the relevant eligible list: the relevant eligible list for Exam 7029 was established on November 15, 2000; and the relevant eligible list for Exam 2043 was established on May 5, 2004;

    (e)    Had not been convicted of a felony as of four years after the date of the establishment of the relevant eligible list: the relevant eligible list for Exam 7029 was established on November 15, 2000; and the relevant eligible list for Exam 2043 was established on May 5, 2004; and

    (f)    Had not received a dishonorable discharge from the Armed Forces as of four years after the date of the establishment of the relevant eligible list: the relevant eligible list for Exam 7029 was established on November 15, 2000; and the relevant eligible list for Exam 2043 was established on May 5, 2004.

Dkt. 825 at 53-54 (alterations in original).

    Only individuals who satisfy the definition of Non-hire Claimant or Delayed-Hire Claimant, as well as the other lawful qualifications, will be eligible to receive an individual award of back pay (including pre-judgment interest), retroactive seniority, and/or noneconomic damages. Additionally, such individuals will be eligible for priority hiring relief only if they *presently* satisfy the other lawful qualifications set forth above. Moreover, in order to be hired, such individuals must, among other things, take and pass Exam 2000 if it is found to comply with Title VII (*see* Section IV.B).

## IV. INDIVIDUAL RELIEF THAT WILL BE AVAILABLE TO ELIGIBLE CLAIMANTS

### A. Back pay awards

"Back pay" refers to a monetary award that represents the value of some or all of the wages and benefits that a Claimant would have received from the City if the City had hired the Claimant as an entry-level firefighter on his or her presumptive hire date.

In its March 8, 2012 order (Dkt. 825), the Court determined that the aggregate, pre-mitigation back pay due to eligible Claimants through December 31, 2010 is $128,696,803.[4] Dkt. 825 at 46-47. The City will have the opportunity to reduce this aggregate amount during individual proceedings in the claims process. The $128,696,803 in aggregate back pay wages is allocated as follows:

---

[4] This amount excludes the value of back pay and prejudgment interest that began to accrue on January 1, 2011 and will continue to accrue through the date when the priority hires have joined the FDNY. Once the priority hires have joined the FDNY, the parties may move for a finding as to the additional aggregate wage loss suffered from the end of 2010 to the date the priority hires joined the FDNY (the date that the loss will no longer accrue). Dkt. 825 at 46 n. 12. This amount also excludes the value of fringe benefits, which the Court indicated should be calculated based on unreimbursed expenses actually incurred by Claimants. *Id.* at 39-40. The parties are submitting additional briefing to the Court regarding the Court's decision on the method for calculating fringe benefits.

9

|  | **Exam 7029** | **Exam 2043** | **Both exams** |
|---|---|---|---|
| Black Non-hire Claimants | $62,202,409 | $18,193,080 | $80,395,489 |
| Hispanic Non-hire Claimants | $33,754,299 | $11,403,654 | $45,157,953 |
| Black Delayed-Hire Claimants | $1,015,579 | $487,987 | $1,503,566 |
| Hispanic Delayed-Hire Claimants | $1,228,608 | $411,187 | $1,639,795 |
| TOTAL | $98,200,895 | $30,495,908 | $128,696,803 |

The numbers reflected above are based on the Court's determination of the additional number of black and Hispanic individuals who would have been hired, or who would have been hired earlier, in the absence of discrimination. The aggregate amount of back pay damages available to black Claimants is larger than the aggregate amount available to Hispanic Claimants because the Court previously determined that the City's use of Written Exams 7029 and 2043 excluded a greater number of black candidates from being hired, or from being hired earlier, as compared to Hispanic candidates. During the claims process, the aggregate back pay amount will be divided among eligible Claimants proportionately to determine each Claimant's gross back pay award. This proportionate distribution is necessary because the number of eligible Claimants will most likely exceed the hiring shortfalls that the City's violations of Title VII produced. Each Claimant's gross award will then be reduced by a proportion of that Claimant's interim earnings.[5] The proportion of interim earnings to be deducted will be calculated by

---

[5] The City shall bear all costs incurred by the City, the United States, and the Plaintiffs-Intervenors in the prosecution and implementation of the remedy phase of this case, including reasonably-incurred attorneys' fees and expenses, expert fees and the cost of all notification procedures, except that the United States shall bear its own attorneys' and expert fees and

reducing the Claimant's total interim earnings by the same fraction of the aggregate award that the Claimant's gross award represents. The method that will be used to allocate the back pay awards can be summarized as follows:

1. <u>Non-hire Claimants</u>

    (1) Place an eligible Non-hire Claimant in the appropriate back pay category: black Exam 7029 Non-hire Claimants, Hispanic Exam 7029 Non-hire Claimants, black Exam 2043 Non-hire Claimants, or Hispanic Exam 2043 Non-hire Claimants;

    (2) Calculate the aggregate back pay of one shortfall hire for the specific back pay category for which the Claimant is eligible;

    (3) Calculate each Claimant's pro rata (proportionate) share of the aggregate amount of back pay ("gross back pay award");

    (4) Determine the "back pay reduction ratio" (equivalent to the "probability of hire") by dividing the amount determined at the third step by the amount determined at the second step;

    (5) Discount the Claimant's interim earnings by the back pay reduction ratio determined in step 4;

    (6) Determine each Claimant's net (post-mitigation) back pay award for each year of the claimant's back pay period (*i.e.*, subtract the Claimant's discounted interim earnings in step 5 from the Claimant's gross back pay award in step 3; this equals the "net back pay");

---

expenses. No amount of the back pay, or any other monetary award that the Court may order, shall be used to pay the attorneys' and expert fees, expenses, and costs for which the City is liable.

(7) Apply the pre-judgment interest rate to the Claimant's net back pay award for each year of his or her back pay period and compound the interest annually; and

(8) Add the annual net back pay amounts, and the compounded interest, to determine the total net back pay award for each Claimant.

*See* Dkt. 888 at 9-11 (June 3, 2012).

### 2. Delayed-Hire Claimants

(1) Place an eligible Delay Claimant in the appropriate back pay category: black Exam 7029 Delayed-Hire Claimants, Hispanic Exam 7029 Delayed-Hire Claimants, black Exam 2043 Delayed-Hire Claimants, or Hispanic Exam 2043 Delayed-Hire Claimants ;

(2) Calculate the value of each month of delay for the Delayed-Hire Claimants of a particular category;

(3) Determine the value of each month of delayed hiring for the eligible Claimants in each category;

(4) Determine each Claimant's gross share of the back pay losses by multiplying the number of months that the Claimant's hiring was delayed by the pro rata (proportionate) value of one month as calculated in step 3;

(5) Determine the back pay reduction ratio, by dividing the amount determined at the third step by the amount determined at the second step;

(6) Determine the discounted interim earnings of the Claimant between the first academy class and when he or she joined the fire academy;

(7) Determine a net back pay award by subtracting the discounted interim earnings (step 6) from the Claimant's gross award (step 4); and

(8) Apply the pre-judgment interest rate and compound the interest annually.

12

*See* Dkt. 888 at 13-15.[6]

A monetary award to compensate Non-hire and Delayed-Hire Claimants for lost fringe benefits may also be added to their back pay awards.

## B. Priority Hiring Relief

The Court will award priority hiring relief for up to 293 eligible Non-hire Claimants. Dkt. 390 at 20 (January 21, 2010); Dkt. 861 at 2 (April 20, 2012). Specifically, priority hiring relief will be awarded to up to one hundred eighty-six (186) eligible black Non-hire Claimants and up to one hundred seven (107) eligible Hispanic Non-hire Claimants. Non-hire Claimants who seek priority hiring relief ("priority hire claimants") must undergo the same entry-level firefighter selection process as all other applicants, including taking and passing Exam 2000, assuming the Court ultimately permits the City to use Exam 2000 to select entry-level firefighters. Dkt. 888 at 18. Thus, in order to receive a job offer and enter the Fire Academy, priority hire claimants must take and pass Exam 2000 (if approved), take and pass the Candidate Physical Ability Test ("CPAT"), and undergo the background screening process, which includes a review of the claimant's criminal, employment, medical and psychological background. The Court will ultimately approve a list of eligible priority hire claimants and require the City to appoint up to 293 of these individuals to the Fire Academy.[7]

After the Court approves the list of priority hire claimants, two (2) of every five (5) individuals that the City hires for the entry-level firefighter position shall be black Claimants from the approved list of priority hire claimants. The City shall continue to hire at this 2:5 ratio

---

[6] The City asserts that, if a Delayed-Hire Claimant caused the delay in hiring, his or her award should be reduced accordingly. The Court has not yet ruled on this issue.

[7] The specific procedural steps and deadlines by which the City must evaluate and make job offers to eligible priority hire claimants will be set forth in a subsequent order by the Court.

13

until it has hired one hundred eighty-six (186) black Claimants from the approved list of priority hire claimants or until the group of black Claimants on the approved list has been exhausted, whichever occurs first.

Similarly, after the Court approves the list of priority hire claimants, one (1) of every five (5) individuals that the City hires for the entry-level firefighter position shall be Hispanic Claimants from the approved list of priority hire claimants. The City shall continue to hire at this 1:5 ratio until it has hired one hundred seven (107) Hispanic Claimants from the approved list of priority hire claimants or until the group of Hispanic Claimants on the approved list has been exhausted, whichever occurs first.

In the event there are more than 186 black and 107 Hispanic individuals eligible for priority hiring relief, the City may determine the order in which it processes eligible claimants to determine whether they are currently qualified to be appointed as entry-level firefighters, provided that the City's processing is not discriminatory, retaliatory, or otherwise unlawful and enables it to meet the other requirements of this Order and other orders entered in this case. A Claimant is considered hired only when the Claimant begins his or her first day of paid employment as an entry-level firefighter.

Nothing in this Order precludes any Claimant from applying for hire or a promotion from the position of Emergency Medical Technician ("EMT") to entry-level firefighter, or being hired or promoted from EMT into the entry-level firefighter position under any of the City's regular selection, hiring, or promotion processes. However, hire or promotion of a Claimant under one of the City's regular selection, hiring, or promotion processes shall not be counted toward fulfillment of the City's priority hiring obligations. Hire or promotion of a Claimant under one of the City's regular selection, hiring, or promotion processes shall not affect the Claimant's

14

eligibility for monetary relief. The City may not refuse to select or hire an individual in one of its regular selection, hiring or promotion processes because that individual is a Claimant eligible for priority hiring relief.

Finally, the City will pay priority hire claimants their retroactively higher salary and provide them with retroactive seniority on the date of their admission to the Fire Academy. Dkt. 888 at 18-19.

Claimants do not need to seek priority hiring relief in order to be eligible for an award of back pay and (for black Claimants) noneconomic damages.

### C. Retroactive Seniority

The Court will award retroactive seniority relief to eligible claimants who were victims of the City's discrimination. "Retroactive seniority" refers to seniority credit in the entry-level firefighter position as of a Claimant's presumptive hire date. Retroactive seniority is comprised of retroactive "benefits seniority" and retroactive "competitive seniority." Retroactive benefits seniority includes seniority for purposes of the amount of salary or other pay, pension benefits, and future accrual of leave, including vacation, personal, and sick leave, as well as any other purposes for which seniority is used in determining the amount of or eligibility for employee benefits. Retroactive competitive seniority is seniority used for any purpose in which an incumbent competes with other incumbents, including but not limited to transfers, special assignments, promotions, and layoffs/recall, except that Retroactive seniority awards may not be used to satisfy minimum time-in-grade requirements for promotion under preexisting FDNY rules.

Non-hire Claimants who are awarded priority hiring relief, as well as Delayed-Hire Claimants, will automatically be eligible to receive an award of retroactive seniority, which will

be based on the median dates of hires from the relevant examination: February 2, 2003 for Exam 7029; and June 11, 2006 for Exam 2043. Dkt. 861 at 2-3, 5.

## V. NONECONOMIC DAMAGES MAY BE AVAILABLE TO ELIGIBLE BLACK CLAIMANTS

The Plaintiffs-Intervenors have requested non-economic damages on behalf of the black victims of the City's discrimination. The noneconomic losses sought are the lost intangible benefits of being a firefighter such as: prestige, job satisfaction, camaraderie, unique excitement, enjoyment of flexible scheduling, unusual employment stability, feeling of security derived from retiring with a full pension and lifetime medical benefits, and the potential for career advancement. Dkt. 640 at n. 14 (June 6, 2011). Black Claimants may be awarded noneconomic damages.

## VI. GENERAL FRAMEWORK OF CLAIMS PROCESS

In order to determine which claimants are eligible for an award of individual relief and the amount of any such award, the Court has ordered that each individual who submits a claim form will be evaluated during a claims process, as outlined below. *See* Docket entry dated April 12, 2012, endorsing the parties' proposed claims process framework (Dkt. 844-2) (April 4, 2012). Further, four Special Masters appointed by the Court will oversee the claims process, including, as necessary, individual hearings. Dkt. 883 at 2-3 (May 22, 2012). The Court will set specific steps and deadlines for the claims process in a subsequent order(s), which will include the following steps as well as others that may be recommended by the Special Masters and adopted by the Court, but provides at this time a summary of the steps involved in the claims process:

(1) Mailing of notice and claim form documents to individuals who may be eligible for individual relief, and the return of such claim forms;

16

(2) United States to make initial eligibility determinations for everyone who returned a claim form based on the objective eligibility criteria set forth in Section III;

(3) Mailing of notice and objection documents related to the Fairness Hearing;

(4) The City will have the opportunity to object to the United States' initial eligibility determinations regarding Claimants;

(5) Court holds the Fairness Hearing;

(6) The Court enters the Relief Order as a final order (or as modified by the Court);

(7) The Claimant will have the opportunity to object to the United States' initial eligibility determination regarding his or her claim;

(8) The Special Masters will review the United States' initial eligibility determinations and make an independent assessment of each Claimant's eligibility, which will be submitted as a recommendation to the Court;

(9) The Claimant and the parties will have an opportunity to object to the Special Masters' recommendations to the Court regarding the Claimant's eligibility and award amount;

(10) The Court will independently evaluate the Special Masters' recommendations regarding Claimant eligibility and award amounts; and

(11) Individual relief awards will be distributed to Claimants.

**Provisionally entered, pending consideration of any objections submitted and completion of the Fairness Hearing,** this  5TH  day of July , 2012, in Brooklyn, New York.

s/Nicholas G. Garaufis

---
HON. NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT JUDGE