UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        PLAINTIFF,

-AND-

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members,* JAMEL NICHOLSON *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief;*

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated;* and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated,*

        PLAINTIFFS-INTERVENORS,

        V.

CITY OF NEW YORK, ET AL.,

        DEFENDANTS.

CIV. ACTION NO. 07-CV-2067 (NGG)(RLM)

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF PLAINTIFFS-INTERVENORS' MOTION
TO RECONSIDER ORDER ON FRINGE BENEFITS**

On the brief: Dana Lossia, Esq.

10130402

Plaintiffs-Intervenors submit this memorandum in further support of their motion for reconsideration of the Court's March 8, 2012 Order concerning fringe benefits.  Dkt. 825.

I.   **Plaintiffs-Intervenors' Proposal Is Necessary to Prevent Manifest Injustice**

Reconsideration is proper because Plaintiffs-Intervenors' proposal is necessary "to correct a clear error or prevent manifest injustice."  *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (Sifton, J.) (granting plaintiffs' motion to reconsider).  *See also VR Global Partners, L.P. v. Bennett (In re Refco Capital Markets)*, 2008 U.S. Dist. LEXIS 97016 (S.D.N.Y. Nov. 20, 2008) (Lynch, J.) (reconsidering "in order to prevent a manifest injustice"); *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 502-03 (S.D.N.Y. 2008) (Conner, J.) (same).

The Court's March 8, 2012 Order did not consider that in *no* case involving a failure to hire has a court required the victims of discrimination to produce records of out-of-pocket medical insurance costs in order to obtain a recovery for lost medical benefits.  Dkt. 913 at 7-8.  Neither Plaintiffs-Intervenors, after an exhaustive search, nor the City were able to locate any such case.  It would be unjust and inequitable to place that burden, for the first time, upon the failure-to-hire victims here, who had no basis for retaining medical records since they were unaware of the pendency of the case, and who will likely be unable to reconstruct with any accuracy the costs they incurred over the course of the past eight (8) to eleven (11) years.

Nor did the Court of Appeals intend for District Courts in this Circuit to be limited in their authority to refine or modify their prior rulings as litigation proceeds.  *See, e.g., United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) ("A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment . . ., and there is no provision in the rules or any statute that is inconsistent with this power."); *United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991) (law of the case doctrine does not limit the court's

power, and the party advancing a law of the case argument is not prejudiced unless it lacked sufficient notice and opportunity to prepare for a change in a prior ruling); *Weitzman v. Stein*, 908 F. Supp. 187, 193 (S.D.N.Y. 1995) ("[I]t is clear that all federal courts retain power to reconsider if they wish," and "[a]t the trial court level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment.") (citing 18 Charles A. Wright *et al.,* Federal Practice & Procedure § 4478 (1981), 1B James W. Moore, *et al.*, Moore's Federal Practice P 0.404[1] (1995)).

Nowhere in its submission does the City contend that Plaintiffs-Intervenors' proposal would be unfair or would prejudice the City. To the contrary, the proposed approach preserves all of the City's rights, while providing a rebuttable presumption that victims are entitled to some non-zero recovery for their extended denial of medical coverage.

## II. Plaintiffs-Intervenors Do Not Seek to Relitigate Class-Wide Treatment of Losses, But Rather to Refine the Process for Calculating Individual Victims' Losses

The City asserts that Plaintiffs-Intervenors may only rely upon arguments and authority asserted in their initial motion for summary judgment as to back pay, which was briefed in June and September 2010. Dkts. 539-542, 550. But the 2010 briefing was submitted prior to the Supreme Court's intervening decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), upon which this Court relied in its March 8, 2012 Order. Accordingly, in compliance with the instruction that parties should "avoid repetitive arguments on issues that have been considered fully by the Court," *In re New York Cmty. Bancorp., Inc., Sec. Litig.*, 244 F.R.D. 156, 157 (E.D.N.Y. 2007), Plaintiffs-Intervenors do not seek reconsideration of this Court's core holding that each victim's losses must be assessed individually, rather than using a class-wide formula. However, Plaintiffs-Intervenors have never previously submitted briefing concerning the proper method for applying the post-*Wal-Mart* individualized approach to evaluating victims' losses.

2

On this motion, instead of rearguing positions taken in 2010, Plaintiffs-Intervenors put forward a practical and equitable mechanism for evaluating individual losses within the framework ordered by the Court.

The method Intervenors propose would avoid penalizing claimants for failing to have retained complete and accurate medical records for the past 8-11 years, without forewarning of that requirement. It also preserves the rights of both the City and the claimants to establish the value of damages where the necessary information is reasonably obtainable through discovery. The primary difference between the proposed framework and the one that seems to be suggested by the Order, Dkt. 825 at 39-40, is that it accounts for the likelihood that some victims' losses will be unknowable, despite reasonable discovery efforts, in light of the extended liability period and the victims' lack of notice that they should have maintained records of out-of-pocket costs for themselves and their dependents. Where damages information is not available, such uncertainty should not result in a zero-dollar recovery for the victim, but rather the value of the cost to the City of having provided the victim with coverage. *See* Intervenors' moving brief, Dkt. 913 at 5-6.

### III. The Nature and Timing of the Action Are Critically Relevant Here

The City next argues that the class action nature of this lawsuit, the length of the liability period, and the length of time that elapsed before class members were notified of the pendency of the action, are irrelevant to the manner in which fringe benefits losses should be evaluated. Dkt. 926 at 4-6. As noted above, this position runs counter to the reasoning of *every* court which has considered the best way of evaluating lost fringe benefits in failure-to-hire actions, where the victims – as here – were unlikely to be on notice of a potential future recovery. *See* Intervenors' moving brief, Dkt. 913 at 7-8.

3

The City's assertion that these failure-to-hire cases should be viewed differently in light of *Wal-Mart* is unpersuasive. Those cases arise from a principle of law unaffected by the *Wal-Mart* decision. While agreeing that individualized assessments are appropriate, the Intervenors urge the Court to proceed from the presumption – which may be rebutted by either the City or the claimant – that the value of the claimant's losses equals the cost to the City of having to provide that individual and his or her dependents with medical insurance coverage. No formula is involved.

As discussed further below, each claimant would participate in discovery and make available to the City information concerning periods of health insurance coverage obtained through employment or otherwise and any documentation within his or her custody or control relating to out-of-pocket expenses. The City could use that information to show that the claimant's losses were lower than the *presumed* loss, for example, as a result of relatively continuous coverage from an employer or from a government-funded health insurance program such as Medicaid. Or, a claimant could provide records that show expenditures greater than the presumed loss.

While the City maintains that "Plaintiffs-Intervenors' counsel was on notice of the decisional split on this issue and could have sought an order pursuant to Rule 23(d) of the Federal Rules of Civil Procedure advising potential class members to preserve and retain documentary evidence," Dkt. 926 at 5, that argument ignores the prior positions taken by the parties in this case. As early as October 2009, Plaintiffs-Intervenors moved the Court for entry of a Proposed Relief Order that would include the provision of notice to class members within 30 days, noting that "[f]or some class members, it has been more than ten years since they took Examination 7029 for hire as a firefighter, and Plaintiffs-Intervenors believe notice at this time is

important for there to be an effective remedy." *See* Exhibit A, Cover letter to Court and pages from redlined modifications to the United States' Proposed Relief Order, Dkt. 328 at 2, 39-40. Thus, Intervenors did move for an order providing notice to the class, more than two years and nine months ago.[1] In the intervening time, entry of the Proposed Relief Order was deferred because of multiple issues arising in the case that required the Court's attention, including a hearing on the validity of Exam 6019 and a later hearing, requested by the City, on the purported immediate need for interim firefighter hiring. Of course, even if notice had been approved and distributed in 2009, or earlier, it would not have alleviated the problems arising from evidence being lost over the preceding five to eight years.[2]

### IV. Plaintiffs-Intervenors do Not Seek to Reallocate the Appropriate Burdens of Proof

Finally, the City asserts that Plaintiffs-Intervenors' proposal, which the United States supports, Dkt. 925, removes from claimants "the initial burden of production on the issue of fringe benefits." Dkt. 926 at 6. This is not so. Plaintiffs-Intervenors agree that claimants have an initial burden of production which, as the City acknowledges, is a "light" one which may be satisfied by a statement of an estimation of the amount of requested relief. Dkt. 926 at 7, citing *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 259-60 (5th Cir. 1974). Plaintiffs-Intervenors

---

[1] Plaintiffs-Intervenors raised this issue again in the parties' February 24, 2010 and February 8, 2011 conferences with the Court.

[2] The City would have the Court find that the Vulcans are to blame because they could have filed their lawsuit sooner. Dkt. 926 at 5. But, the City cites no authority suggesting that a plaintiff who timely commences an action, and prevails, should nevertheless be limited in his or her relief because the action *could* have been brought earlier. Thus, the *Bigelow* principle, cited by Plaintiffs-Intervenors, Dkt. 913 at 5-6, remains applicable to the facts here, where "the wrongdoer [is] insist[ing] upon specific and certain proof of the injury *which it has itself inflicted*" by violating anti-discrimination laws. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 567 (1981) (relying upon principle articulated in *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946)) (emphasis added).

submit that, under their proposal, a claimant's presentation of evidence of the City's costs of providing medical coverage would satisfy his/her initial burden of production, and the burden then would shift to the employer, which bears "the heavier weight of rebuttal." *Id*. at 259.

While matters of individual discovery will be overseen by the claims process Special Masters, subject to approval by the Court, Plaintiffs-Intervenors contemplate that claimants will be asked to (a) state the time periods, if any, during which they received employer-sponsored or government-provided medical coverage or, alternately, lacked coverage, and (b) produce all records they have retained relating to out-of-pocket coverage costs during the liability period. As noted in Plaintiffs-Intervenors' moving brief, the City retains the opportunity to show offsets to those damages by showing that a particular claimant was insured, and the nature, scope and duration of such insurance, in which case the claimant would not recover the full value of the cost of FDNY coverage. Cases will undoubtedly arise, however, in which claimants who lacked coverage for a significant period of time, and who paid significant out-of-pocket costs for themselves and their dependents, will be unable to provide proof of those costs, despite reasonable efforts. Even if claimants can recall the names of their health care service providers – a difficult feat in itself with the passage of many years – those providers will not necessarily have retained such records or may even have gone out of business.

Local Rule 6.3 prevented Plaintiffs-Intervenors from filing affidavits from particular claimants who would be injured by the March 8, 2012 Order. *See* L. Civ. R. 6.3 ("No affidavits shall be filed by any party unless directed by the Court.") But the presentation of such evidence is not necessary at this stage. The Court need only find that where, despite reasonable discovery efforts, a claimant cannot reconstruct his or her out-of-pocket losses and the City cannot show

that the claimant received medical coverage from another source, such claimant would be entitled to the value of the cost to the City of providing medical benefits.

## Conclusion

For these reasons, and those advanced in Plaintiffs-Intervenors' moving brief, we respectfully request that the Court grant the motion to reconsider to prevent manifest injustice.

Dated: July 20, 2012
      New York, New York

LEVY RATNER, P.C.

/s/
By:  Richard A. Levy
Robert H. Stroup
Dana Lossia
80 Eighth Avenue
New York, NY 10011
(212) 627-8100
(212) 627-8182 (fax)

CENTER FOR CONSTITUTIONAL RIGHTS

/s/
Darius Charney
Ghita Schwarz
666 Broadway, 7th Floor
New York, NY 10012-2399
(212) 614-6438
(212) 614-6499 (fax)