UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                                                                  :

UNITED STATES OF AMERICA,

                                                                                                   :

                Plaintiff,

                                                                                                    :      **SPECIAL MASTER'S**

     -and-                                                                                                         **REPORT NO. 11**

                                                                                                   :

THE VULCAN SOCIETY, INC., for itself and on behalf of    **07-cv-2067 (NGG)(RLM)**
its members, and MARCUS HAYWOOD, CANDIDO    :
NUÑEZ and ROGER GREGG, individually and on behalf
of a class of all others similarly situated,                          :

              Plaintiffs-Intervenors,              :

     -against-                                                                    :

THE CITY OF NEW YORK,                                       :

              Defendant.                                :

------------------------------------------------------------------------x

MARY JO WHITE, Special Master.

      The Special Master submits this report pursuant to paragraph 4 of the Court's June 1, 2010 Order Appointing Special Master (the "Appointment Order"). Dkt. No. 448, ¶ 4. The Appointment Order requires the Special Master to submit a report at least every 90 days after the parties begin the joint development of a new firefighter eligibility exam (the "New Test"). The Special Master's last report was submitted on May 11, 2012. Dkt. No. 875. This report covers further developments since the May 11th report through the candidate protest and Test Validation Board ("TVB") process and reviews the next steps in the test development process.

I.    **Progress Towards Development of the New Test**

As previously reported to the Court, the current project plan includes six milestones: (i) job analysis; (ii) test development, which encompasses test design, development of exam content, content validation and pilot testing, criterion-related and construct validation, and development of various test forms and an equivalency study; (iii) test administration; (iv) analysis and scoring; (v) computation of the final test results; and (vi) preparation of the final technical report.[1]  At the Special Master's instruction, the parties certify in writing at various points across these milestones that the test development process should proceed to the next phase in the project plan.  To date, all parties – the United States, the Vulcan Society and the City – have agreed that the development process should proceed.[2]

A.    **Test Administration**

As set out in detail in our last report to the Court, the New Test was administered to 42,161 candidates from March 15, 2012 through April 26, 2012.  *See* Dkt. No. 875, at 3-4.  Since then, a small number of registered applicants who were in active military service

---

[1]   The Special Master's prior reports provide an overview of these earlier phases, including a description of the validation methods, the equivalency study, and the administration of the New Test.  *See* Dkt. Nos. 691, 739, 785, 841, 875.

[2]   To facilitate this process, the Special Master continues to hold scheduled standing weekly telephonic conferences with the parties.  These conferences are held (or not) based on the Special Master's assessment of the need to convene the parties.  Since her last report, additional conferences were held on May 17th, 22nd, and 30th; June 6th, 19th, and 28th; and July 10th and 24th.  At the Special Master's direction, certain of the conferences were conducted by her colleagues Mary Beth Hogan or Philip Fortino.  The experts also continue to hold regular telephonic (sometimes virtual) conferences with each other.  Since the Special Master's previous report, the experts have held conferences on March 30th; April 16th; May 1st and 14th; June 28th; and July 23rd and 26th.

during the administration period took the New Test, and the City expects to continue to test other such applicants as they return from military service and request an opportunity to take the New Test.

As previously reported, the experts took several steps to ensure that the test content remained secure throughout the test administration. *See id*. at 4. The City's expert monitored test results throughout the test administration and observed no evidence to suggest that these security measures were unsuccessful.

### B. Candidate Protest and TVB Review Process

The New Test is subject to the examination objection procedures required by New York Civil Service Law § 50-a, as modified by the Court's Order of February 1, 2012. *See* Dkt. No. 802, at 8-13. Pursuant to New York Civil Service Law § 50-a, after the City administers a civil service exam, it must convene a three-member panel called a Test Validation Board ("TVB") to review objections to test questions from examinees. The TVB panel for the New Test had the following three members: Mr. John Weiner, appointed by the City; a firefighter representative appointed by the Uniformed Firefighters Association (the "UFA"); and Dr. Shane Pittman, whose appointment at the request of the City was approved by the Court. *Id*. at 11.

As part of the candidate protest and TVB review process, the City held "Protest Review Sessions" from May 11, 2012 through May 19, 2012, during which candidates had the opportunity to review their exams, as well as the answers they selected and those that the experts had identified as the best/keyed answer or answers. Candidates were then able to decide whether to object to the keyed answers by filing a protest. *See* Dkt. Nos. 776-1, at 8-9; 802, at 12. Following the Protest Review Sessions, the TVB convened to review

3

and resolve filed protests in several sessions held between June 7, 2012 and June 26, 2012. As part of this process, the TVB determined whether protests were valid or invalid (*e.g.*, where a candidate did not specify the desired answer or the reason for changing the correct answer). It further reviewed valid protests, and in doing so, considered whether each candidate's objection(s) demonstrated that the candidate gave answers that were "as good or better" than the answers identified as the best answers by the experts, and whether to therefore accept the candidate's proposed answer as the keyed response. Because the TVB process is part of the test development process, the answer keys and scoring of the exam were modified as appropriate based on the TVB results. *See* Dkt. No. 776-1, at 6.

At this time, the TVB is in the process of finalizing its report documenting the process and results of the TVB. The TVB Guidelines state that the TVB's deliberations are confidential and they therefore are not discussed in detail here. *See* Dkt. 795-2, Ex. A, ¶ 9. The TVB report (with candidates' identifying information omitted) will be made available to candidates who filed protests for review at a Department of Citywide Administrative Services ("DCAS") facility, and the results will be incorporated into the final technical report.

### C. Overview of Next Steps in the Test Development Process

The next steps in the test development process include finalizing the scoring methodology following the TVB review, computing the final test results, and preparing the final technical report. To that end, the experts are continuing to review and analyze the final test results, including the results of the TVB process. In conducting this review, they will assess what impact, if any, the TVB's conclusions may have on the validity and scoring methodology selected by the City.

The parties anticipate that the City's expert will complete the final technical report for the exam in September 2012. The City anticipates submitting the exam and a proposed eligibility list to the Court for approval soon thereafter. Alternative proposals, if any, will be presented to the Court for consideration.

## II.     Updating *Amici*[3]

As the Court is aware, since May 27, 2011, the Special Master has held teleconferences and in-person meetings with the union representatives, Chief Gala of the FDNY and the parties in order to provide them with updates on the status of the test development effort.[4] Since our last report, and in lieu of regularly-scheduled teleconferences, the Special Master and the parties have spoken with counsel for the union representatives on an as-needed basis. In particular, the City's counsel has spoken with the UFA's counsel about the TVB process and the UFA's nomination of a representative to the TVB.

## III.    Expenses & Fees

The Special Master and her law firm have agreed to work on a *pro bono* basis and accordingly, have not requested the payment of fees. The Special Master and her law firm seek reimbursement only for out-of-pocket expenses and disbursements, as well as the fees and expenses of the Special Master's expert consultant, Dr. Shane Pittman. On September 3, 2010 the Court approved the Special Master's Application for Approval of Proposed

---

[3]     As noted, *Amici* are the UFOA and UFA. The meetings and conferences held with *Amici* prior to this report and prior to May 27, 2011 are described in the Special Master's prior reports.

[4]     The experts have also participated in certain of these meetings and calls.

Budget for Special Master's Expert Consultant, which projected monthly fees of between $7,000 to $17,000.  Dkt. Nos. 516, 519.  The Special Master has submitted her expert's fees, which as reported in the Statements of Fees and Expenses, have fallen either under or within that projected range.  Her expert, Dr. Shane Pittman, has received approved expenses and fees from the City for her fees and expenses through May 2012.  Dkt. No. 887.

* * * * * * * * *

The Special Master reiterates her thanks to the parties, experts, unions, and Chief Gala of the FDNY for their past and continued assistance and cooperation in this joint effort.  All engaged in this process recognize both the importance and difficulty in developing a valid and legally compliant New Test that will serve to select new firefighters for the City.  To do so requires the coordination, discussion, and consideration of the views and input of several interested parties.  The Special Master remains satisfied with the progress made to date by the parties and their experts in developing and administering the New Test.

Pursuant to the Appointment Order, the Special Master will submit her next report within 90 days from today.  Appointment Order, ¶ 4.

/s/  Mary Jo White____
Mary Jo White

Dated:  July 30, 2012