IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           PLAINTIFF,

-AND-

THE VULCAN SOCIETY, INC., *for itself
and on behalf of its members,* JAMEL
NICHOLSON *and* RUSEBELL WILSON,
*individually and on behalf of a subclass
of all other victims similarly situated
seeking classwide injunctive relief;*

ROGER GREGG, MARCUS HAYWOOD,
*and* KEVIN WALKER, *individually and
on behalf of a subclass of all other non-
hire victims similarly situated;* and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS,
*individually and on behalf of a subclass
of all other delayed-hire victims
similarly situated,*

           PLAINTIFFS-INTERVENORS,

V.

CITY OF NEW YORK, ET AL.,

           DEFENDANTS.

CIV. ACTION NO. 07-CV-2067
(NGG)(RLM)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS-INTERVENORS' CLAIM FOR COMPENSATORY DAMAGES

**(Responding to Issues Raised in the Court's Order of July 25, 2012)**

On the Brief:   Richard A. Levy
                 Robert H. Stroup
                 Dana E. Lossia
                 Ghita Schwarz

10133807_3

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.   THE COURT'S DIRECTION OF INDIVIDUAL
PROCEEDINGS IS NOT CHALLENGED ........................................................... 3

II.  COMPENSATORY DAMAGES ARE AVAILABLE
UNDER FEDERAL LAW FOR THE FULL RANGE OF
VICTIMS' ACTUAL NONPECUNIARY LOSSES ............................................ 4

     A.   Victims Are Entitled to "Plenary" Compensatory Damages
under 42 U.S.C. § 1981 ............................................................................ 4

     B.   The Civil Rights Act of 1991 Made the Full Range of Make-
Whole Compensatory Relief Available under Title VII as Well ............... 5

     C.   Victims May Recover for the Full Range of Their Actual
Nonpecuniary Losses, Whether or Not Enumerated by § 1981a ............... 7

     D.   Viewing Title VII and § 1981 Damages as "Tort-Like"
Remedies Does Not Alter Plaintiffs-Intervenors' Entitlement
to Compensatory Damages .................................................................... 19

III. COMPENSATORY DAMAGES ARE EVEN MORE READILY
AVAILABLE UNDER STATE AND CITY HUMAN RIGHTS LAWS ............ 21

CONCLUSION .................................................................................................................. 25

56-001-00001: 10133807_3

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abrams v. Baylor College of Medicine,*
  805 F.2d 528 (5th Cir. 1986) ............................................................................17

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975)...................................................................................3, 21

*Ali v. Federal Bureau of Prisons,*
  128 S. Ct. 831, 169 L. Ed. 2d 680 (2008) ............................................................18

*Annis v. Westchester County,*
  136 F.3d 239 (2d Cir. 1998)..............................................................................14

*Banai v. U.S. Dep't of Hous. & Urban Dev. ex rel. Times,*
  102 F.3d 1203 (11th Cir. 1997) .......................................................................8, 9

*Banks ex rel. Banks v. Yokemick,*
  177 F. Supp. 2d 239 (S.D.N.Y. 2001).................................................................19

*Carey v. Piphus,*
  435 U.S. 247 (1978)........................................................................................19

*Connolly v. Bidermann Indus. U.S.A., Inc.,*
  56 F. Supp. 2d 360 (S.D.N.Y. 1999)....................................................................8

*Cowan v. Prudential Insurance Co. of America,*
  852 F.2d 688 (2d Cir. 1988)...............................................................................4

*Cozzo v. Parish of Tangipahoa,*
  2000 U.S. Dist. LEXIS 32 (E.D. La. Jan. 3, 2000)................................................11

*Crews v. County of Nassau,*
  612 F. Supp. 2d 199 (E.D.N.Y. 2009) .................................................................19

*Cruz v. Globe Realty Mgmt. Co.,*
  2005 U.S. Dist. LEXIS 33386 (N.D. Ill. Dec. 13, 2005) ........................................11

*Daniel v. Virgin Atlantic Airways Ltd.,*
  59 F. Supp. 2d 986 (N.D. Cal. 1998) ..................................................................12

*Dejesus v. Village of Pelham Manor,*
  282 F. Supp. 2d 162 (S.D.N.Y. 2003)..................................................................14

*DeMarco v. Sadiker*,
  952 F. Supp. 134 (E.D.N.Y. 1996) ......................................................................20

*Felder v. Casey*,
  487 U.S. 131 (1988)..............................................................................................19

*Fort Stewart Sch. v. FLRA*,
  495 U.S. 641 (1990)..............................................................................................18

*Gorniak v. National R.R. Passenger Corp.*,
  889 F.2d 481 (3d Cir. 1989)...................................................................................4

*Hogan v. Bangor & Aroostook R. Co.*,
  61 F.3d 1034 (1st Cir. 1995)..................................................................................7

*Imbler v. Pachtman*,
  424 U.S. 409 (1976)..............................................................................................19

*Kurncz v. Honda N. Am., Inc.*,
  166 F.R.D. 386 (W.D. Mich. 1996) ......................................................................7

*Loeffler v. Staten Island University Hospital*,
  582 F.3d 268 (2d Cir. 2009)................................................................................23

*Lynch v. Household Fin. Corp.*,
  405 U.S. 538 (1972)................................................................................................5

*Migis v. Pearle Vision, Inc.*,
  135 F.3d 1041 (5th Cir. 1998) .......................................................................12, 13

*Mirandy v. Allstate Ins. Co.*,
  1998 U.S. App. LEXIS 10915 (4th Cir. June 1, 1998)........................................11

*Muldrew v. Anheuser-Busch, Inc.*,
  728 F.2d 989 (8th Cir. 1984) .................................................................................5

*Norton v. Lakeside Family Practice*,
  382 F. Supp. 2d 202 (D. Maine 2005) ...................................................................8

*Olsen v. County of Nassau*,
  615 F. Supp. 2d 35 (E.D.N.Y. 2009) ...................................................................15

*Patrolmen's Benevolent Association of City of New York v. City of New York*,
  310 F.3d 43 (2d Cir. 2002)...................................................................................13

*Patterson v. McLean Credit Union*,
  491 U.S. 164 (1989)................................................................................................4

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
132 S. Ct. 2065 (2012) .................................................................................. 18-19

*Rufino v. United States*,
829 F.2d 354 (2d Cir. 1987) .................................................................................. 7

*Stallworth v. Shuler*,
777 F.2d 1431 (11th Cir. 1985) ............................................................................. 5

*Sullivan v. Little Hunting Park, Inc.*,
396 U.S. 229 (1969) ............................................................................................. 19

*Tucker v. Red Apple Supermarkets, Inc.*,
No. 88 CIV. 5582 (LBS), 1989 WL 34056 (S.D.N.Y. Mar. 31, 1989) ................... 4

*Tullis v. Townley Engineering & Mfg. Co.*,
243 F.3d 1058 (7th Cir. 2001) ............................................................................. 11

*U.S. v. Balistrieri*,
981 F.2d 916 (7th Cir. 1992) ............................................................................... 13

*U.S. Dep't of Hous. & Urban Dev. ex rel. Guard*,
HUDALJ 04-90-0231-1, 1993 WL 343530 (Bankr. D. Minn. Sept. 3, 1993) .......... 9

*U.S. Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell*,
908 F.2d 864 (11th Cir. 1990) ............................................................................... 9

*Uddin v. New York City Administration for Children's Servs.*,
2001 WL 1512588 (S.D.N.Y. Nov.28, 2001) ....................................................... 14

*United States v. Amato*,
540 F.3d 153 (2d Cir. 2008) ................................................................................ 18

*Walters v. City of Atlanta*,
803 F.2d 1135 (11th Cir. 1986) ............................................................................. 5

*Williams v. Pharmacia, Inc.*,
137 F.3d 944 (7th Cir. 1998) ............................................................................... 16

## STATE CASES

*Albunio v City of New York*,
16 N.Y.3d 472 (2011) .......................................................................................... 23

*Club Swamp Annex v. White*,
167 A.D.2d 400 (2d Dep't 1990) .......................................................................... 22

*Consolidated Edison Co. v. New York State Div. of Human Rights*,
 77 N.Y.S. 2d 411 (1991) ............................................................................................21

*Cullen v. Nassau County Civil Service Commission.*,
 53 N.Y. 2d 492 (1981) .........................................................................................21, 22

*Italiano v. New York State Executive Dep't, Div. of Human Rights*,
 36 A.D.2d 1009 (4th Dep't 1971) ...............................................................................22

*Matter of Argyle Realty Assoc. v. New York State Div. of Human Rights*,
 65 A.D. 3d 273 (2d Dep't 2009) ..................................................................................22

*Matter of Mukattash v. Human Rights Comm'n of Westchester*,
 2012 N.Y. Slip. Op. 5422, 2012 N.Y. App. Div. LEXIS 5302 (2d Dep't, July 5, 2012) ........22

*Matter of New York State Div. of Human Rights v. Caprarella*,
 82 A.D. 3d 773 (2d Dep't 2011) ..................................................................................22

*New York City Transit Auth. v. State Div. of Human Rights*,
 163 A.D.2d 315 (2d Dep't 1990) .................................................................................22

*New York City Transit Auth. v. State Div. of Human Rights*,
 78 N.Y. 2d 207 (1991) ...............................................................................................22

*Sears v. New York State Div. of Human Rights*,
 73 A.D. 2d 913 (1980) ...............................................................................................21

*Sorrenti v. City of New York,*
 17 Misc.3d 1102(A), 851 N.Y.S.2d 61, 2007 WL 2772308 (N.Y.Sup.), 2007 N.Y.
 Slip Op. 51796(U) ......................................................................................................23

**ADMINISTRATIVE CASES**

*Batieste v. Peters*,
 EEOC Doc. 01974616, 2000 WL 731990 (EEOC May 26, 2000) ....................................15, 17

*Boone v. U.S. Postal Service*,
 EEOC Doc. 01A31199, 2004 WL 1040180 (EEOC April 28, 2004) ....................................14

*Browne v. Department of Agriculture*,
 EEOC Doc. 01944256, 95 F.E.O.1. 3230, XII-151 (1995). .................................................15

*Carpenter v. Department of Agriculture,*
 EEOC Doc. 01945652, 1995 WL 434072 (EEOC July 17, 1995) .........................................13

*Colwell v. Henderson,*
 EEOC Doc. 01985789, 2001 WL 704248 (EEOC June 13, 2001) ........................................17

56-001-00001: 10133807_3

*Danzie v. Department of the Army,*
    EEOC Doc. 01A42575, 2004 WL 1763834 (EEOC Jul. 28, 2004)........................................15

*Flowers v. Potter, Postmaster General, U.S. Postal Service,*
    EEOC Doc. 01A43114, 2004 WL 2330987 (EEOC Oct. 7, 2004) ...................................9, 15

*Harris v. Department of Agriculture,*
    EEOC Doc. 01966746, 1998 WL 897680 (EEOC Dec. 11, 1998)........................................14

*Hegmann v. Village 99 Cents,*
    NYSDHR No. 10106482 at *4 (December 11, 2008) ..........................................................22

*Johnson v. Bryson,*
    NYSDHR No. 10119554 at *6 (July 9, 2009) ....................................................................22

*Lawrence v. Runyon,*
    EEOC Doc. 01952288, 1996 WL 197403 (EEOC April 18, 1996)........................................13

*O'Laco v. Department of Veteran Affairs,*
    EEOC Doc. 07A10089, 2002 WL 31639581 (EEOC Nov. 18, 2002) ...................................15

*Terrell v. Department of Housing and Urban Development,*
    EEOC Doc. 01961030, 1996 WL 637242 (EEOC Oct. 25, 1996) ........................................15

*Watts v. Vilsack,*
    EEOC Doc. 0120093410, 2012 WL 2356809 (EEOC June 11, 2012)....................................13

## FEDERAL STATUTES

42 U.S.C. § 1981 .......................................................................................................... passim

42 U.S.C. § 1983 ....................................................................................... 1, 5, 11, 13, 19-20, 25

42 U.S.C. § 1981a .......................................................................................................... passim

42 U.S.C. § 3613 ...................................................................................................................8

Title VII of the Civil Rights Act of 1964 .......................................................................... passim

## STATE STATUTE

New York Executive Law § 297(4)(c)...................................................................1, 21, 25

## LOCAL STATUTES

Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) ..........................23

New York City Administrative Code § 8-502(a) ...................................................................1, 25

**OTHER AUTHORITIES**

137 CONG. REC. H9505 (daily ed. Nov. 7, 1991) .............................................................6

American Heritage Dictionary of the English Language (4th ed., 2009) ......................................20

EEOC Enforcement Guidance:  Compensatory & Punitive Damages
    Available under § 102 of the Civil Rights Act of 1991 ................................................... passim

H.R. REP. 102-40, 68-69, 1991 U.S.C.C.A.N. 549, 606-07 (1991)..............................................17

Webster's Third New International Dictionary Unabridged, Merriam-Webster (1986) ...............10

## INTRODUCTION

The Non-Hire Subclass and the Delayed-Hire Subclass (collectively "Plaintiffs-Intervenors") jointly submit this memorandum of law in response to the Court's July 25, 2012 Order requesting additional briefing on Plaintiffs-Intervenors' request for compensatory damages. Dkt. 932. As discussed in greater detail below, ample legal authority establishes that eligible subclass members who suffered noneconomic injuries are entitled to recover the full range of compensatory damages that have been awarded under the federal and state laws the City was found to have violated, 42 U.S.C. §§ 1981 & 1983; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981a; the New York State Human Rights Law, N.Y. Exec. Law § 297(9); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(a). The Court has previously directed that each eligible black claimant's entitlement to compensatory damages will be assessed individually based upon the evidence of actual injury caused by the City's discrimination. Dkt. 665.

At this stage in the claims process, neither Subclass Counsel nor the Subclass representatives are prepared to set out, *ex ante*, each of the losses that subclass members may have sustained. For example, Non-Hire Subclass representative Marcus Haywood and Non-Hire Subclass member Jamel Nicholson have each described the circumstances of their interim employment and some of the emotional impacts of their work situations. *See* Affidavit of Marcus Haywood, dated July 13, 2010, annexed as Exhibit A (stating that he has only been able to obtain part-time, night-shift work (¶¶ 3-4), which requires him to choose between sleep and spending time with his children and sometimes leaves him "completely exhausted" (¶ 5); that he must go to work when he is sick or risk losing his job (¶ 6); that he cannot take time away from work to adequately respond to family crises, such as the death of his stepfather (¶ 7); that he would be proud to be a firefighter (¶ 8) and is embarrassed, stressed and ashamed by his inability

to earn more for his family (¶ 9)); *see also* Affidavit of Jamel Nicholson, dated July 1, 2010, annexed as Exhibit B (stating that he was unemployed for about four months (¶ 3); that he subsequently became a train conductor for the Metropolitan Transit Authority (MTA) and for 18 months only filled open shifts or covered for workers who had called out sick, meaning he would call the job each day to find out which shift he would work, and the work was normally during the middle of the night (¶ 4); that he now works in the afternoons, when his children are home from school, he does not have weekends off, and he cannot use his vacation time to take more than 5 days off in a row or take vacation during the summer months or the winter holidays (¶¶ 5-7); that all this has impacted his ability to spend time with his children and has affected him emotionally (¶¶ 8-9, 12); that if he had more flexibility [as firefighters do], he would do plumbing work "and one day I could have my own small plumbing business" (¶ 12); and that he receives abusive treatment from members of the public as an MTA conductor (¶ 14) as compared with the "sincere respect and gratitude" that New Yorkers seem to direct toward firefighters in the FDNY (¶ 15)).

Each claimant must be given a similar opportunity to describe his or her circumstances, and the effects of those circumstances on him or her as an individual. The Special Masters can then compare the evidence of noneconomic harm to the claimant with the noneconomic characteristics of the FDNY firefighter job, so as to evaluate the particular losses suffered by each victim as a result of the City's unlawful racially-exclusionary hiring process.

As we show below, victims here are entitled to "plenary" compensatory damages under both federal and local law, of which "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" are but illustrative examples provided by 42 U.S.C. § 1981a(b)(3). Victims' entitlement to compensatory damages for any and all

proven adverse consequence of racial discrimination is necessary to effectuate the purposes of antidiscrimination law. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417-419 (1975) ("It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination," and as such "[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.") (quoting *Wicker v. Hoppock*, 6 Wall. 94, 99 (1867)).

## ARGUMENT

I.    **THE COURT'S DIRECTION OF INDIVIDUAL PROCEEDINGS IS NOT CHALLENGED**

The July 25, 2012 Order indicates that "[t]he court is not currently convinced that the denial of the noneconomic benefits of the job of firefighter on its own entitles a claimant to damages . . . without an additional individualized showing." Dkt. 932 at 3. The Order also asks Plaintiffs-Intervenors to "support their apparent belief that New York law permits an award of compensatory damages to claimants who have not suffered provable emotional trauma." Dkt. 932 at 4. Plaintiffs-Intervenors wish to clarify that they do not challenge the Court's July 8, 2011 Memorandum & Order, Dkt. 665, which denied Plaintiffs-Intervenors' motion for summary judgment as to class-wide compensatory damages and found that each eligible member of the Non-Hire Subclass or Delayed-Hire Subclass must demonstrate *actual* noneconomic injury as a result of being denied the firefighter job. As the Court found, such a "determination is necessarily a subjective one that requires an individualized assessment." Dkt. 665 at 26.

Accordingly, Plaintiffs-Intervenors ask the Court to direct the claims process Special Masters to hold individualized proceedings for those eligible black victims who have sought noneconomic damages, in order "to compare the world as it is with the world as it should have been in the absence of discrimination," Dkt. 665 at 30, and determine the actual losses each

3

claimant suffered.  The Special Masters should use the Court's findings of fact as to the unique characteristics, advantages and values inherent in the firefighter job, which the City calls "the best job in the world," as the yardstick against which to assess the noneconomic losses suffered by victims who, instead of serving as FDNY firefighters, held employment with different – often vastly inferior – rewards and consequences.[1]

## II.  COMPENSATORY DAMAGES ARE AVAILABLE UNDER FEDERAL LAW FOR THE FULL RANGE OF VICTIMS' ACTUAL NONPECUNIARY LOSSES

### A.  Victims Are Entitled to "Plenary" Compensatory Damages under 42 U.S.C. § 1981

Even before the passage of the Civil Rights Act of 1991, which for the first time made compensatory damages available to victims of discrimination under Title VII, it was well established that prevailing parties under 42 U.S.C. § 1981 were entitled to "plenary compensatory damages."  *Patterson v. McLean Credit Union*, 491 U.S. 164, 182 n.4 (1989).[2] The full range of "plenary compensatory damages" available under § 1981 prior to adoption of the 1991 Act is too broad to catalog here, but examples of the types of damages awarded are found in *Cowan v. Prudential Ins. Co. of Am.*, 852 F.2d 688, 690 (2d Cir. 1988) (affirming award of compensatory damages in § 1981 failure-to-promote case based on "severe emotional distress, humiliation, and loss of self-esteem"); *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481, 484 (3d Cir. 1989) (award of damages for future lost earning capacity); *Tucker v. Red Apple Supermarkets, Inc.*, No. 88 CIV. 5582 (LBS), 1989 WL 34056 (S.D.N.Y. Mar. 31, 1989) (under

---

[1] Plaintiffs-Intervenors and the City have discussed the possibility of asking claimants to complete and return a survey or questionnaire which seeks information about the characteristics of their interim employment (or unemployment) and the actual noneconomic damages they assert.  This may be preferable to taking the deposition of each eligible black claimant.  The parties will work with the Special Masters to structure this process further in the coming weeks.

[2] The Supreme Court's limitation on the scope of 42 U.S.C. § 1981 liability in *Patterson* was reversed legislatively by the passage of the 1991 Act.

§ 1981 "damages may include recovery for emotional harm, degradation and humiliation"); *Walters v. City of Atlanta*, 803 F.2d 1135, 1146 (11th Cir. 1986) (affirming "mental anguish" damages based upon the "frustration and emotional 'wear and tear'" of being denied a job plaintiff had desired his entire life); *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) (affirming award of $100,000 in compensatory damages for "emotional stress, loss of sleep, marital strain and humiliation" suffered from racially-discriminatory denial of job promotion); *Muldrew v. Anheuser-Busch, Inc.*, 728 F.2d 989, 992 (8th Cir. 1984) (affirming award of $125,000 for "mental anguish and emotional distress" stemming from loss of job).

Nor is it necessary to prove physical injury in the employment context in order to recover compensatory damages under § 1981. *See Stallworth*, 777 F.2d at 1435 ("The injury in civil rights cases may be intangible . . . It need not be financial or physical but may include damages for humiliation and emotional distress.")

The wide-ranging damages that have been awarded under § 1981 are also available in the broader context of civil rights actions under § 1983. *See Lynch v. Household Fin. Corp.*, 405 U.S. 538, 544 (1972) (noting that the legislative history of § 1983 demonstrates that Congress sought to protect "*the enjoyment of life* and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety") (emphasis added).

**B.    The Civil Rights Act of 1991 Made the Full Range of Make-Whole Compensatory Relief Available under Title VII as Well**

In adopting the Civil Rights Act of 1991, 42 U.S.C. § 1981a (the "1991 Act"), one of Congress's purposes was to ensure that the *same* range of compensatory damages available to victims of race discrimination under § 1981 was also available to victims of discrimination under Title VII.  As Congressman Don Edwards, Chair of the House Subcommittee that wrote the original bill to amend Title VII to expand the availability of compensatory damages, testified:

> With Section 1981 thus restored [through the 1991 Act's legislative reversal of *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)], it is simply untenable to continue any longer the disparity in the civil rights laws which permits the recovery of compensatory and punitive damages in cases of intentional race discrimination [under § 1981] but to deny these same remedies to victims of other forms of discrimination [under Title VII].

137 CONG. REC. H9505 (daily ed. Nov. 7, 1991) (statement of Rep. Edwards).

In this context, the provision for "compensatory damages" in 42 U.S.C. § 1981a(a)(1) should be read as incorporating the full range of "plenary" compensatory damages available under § 1981.  While § 1981a(b)(3) places caps on compensatory damage awards, it also broadly describes the scope of compensable damages to include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."[3]  Congress's inclusion of such expansive terms as "mental anguish," "inconvenience," "loss of enjoyment of life" and "other nonpecuniary losses" is clear evidence of its intent to provide damages for the broadest range of harms that an employee or applicant subject to discrimination might experience, just as were available under § 1981 prior to passage of the 1991 Act.[4]  As shown below, numerous types of harms have been treated as compensable under this rubric.

---

[3] Even Congressman Edwards' testimony just prior to passage of the 1991 Act describes damages not expressly listed in the Act:  "Compensatory damages are necessary to make discrimination victims whole for the terrible injury to their careers, to their mental, physical, and emotional health, to their self-respect and dignity, and for other consequential harms."  137 CONG. REC. H9505 (daily ed. Nov. 7, 1991) (statement of Rep. Edwards).

[4] In fact, according to the text of § 1981a(a)(1), the Court need not reach the question of the scope of damages available under Title VII because the Court also found discrimination under 42 U.S.C. § 1981.  *See* 42 U.S.C. § 1981a(a)(1) (providing compensatory damages under Title VII only when they are not available under § 1981).  Accordingly, the Court may apply § 1981 law, rather than Title VII.  However, this is a distinction without a difference since, except for the inapplicability of the caps provided by § 1981a(b)(3), Congress intended for the scope of compensatory damages to be the same under both § 1981 and Title VII.  *See, inter alia,* testimony of Congressman Edwards, *supra*.

6

**C.      Victims May Recover for the Full Range of Their Actual
Nonpecuniary Losses, Whether or Not Enumerated by § 1981a**

Plaintiffs-Intervenors anticipate that subclass members, given their individual circumstances,

may have suffered losses that fall within some or all of § 1981a(b)(3)'s specifically enumerated

categories of damages, as well as within the catch-all category of "other nonpecuniary losses."[5]

The Court's clear authority to award damages within each of the enumerated categories and the

catch-all category is discussed below.

<u>Loss of Enjoyment of Life</u>

Upon an appropriate individual showing, subclass members are entitled to recover

damages for their loss of enjoyment of life without proving physical injury or other impairment

of the senses.  *Rufino v. United States*, 829 F.2d 354 (2d Cir. 1987), cited in the July 25, 2012

Order, Dkt. 932 at 2-3, is inapposite, as it applied the concept of "loss of enjoyment of life" in

the context of a personal injury case arising under the Federal Tort Claims Act.  Courts awarding

damages in civil rights cases have not imposed the same restrictions that are applied in the state-

law personal injury context and have not required physical injury, impairment of senses or loss

of the ability to perform functions previously performed, as was required by *Rufino*, 829 F.2d at

359 n.8.[6]  *See, e.g., Hogan v. Bangor & Aroostook R. Co.*, 61 F.3d 1034, 1037-38 (1st Cir. 1995)

---

[5] For example, an applicant who was denied the opportunity, available to FDNY firefighters, to
spend significant time caring for their children or ailing parents may assert losses that encompass
each category of harm, from "emotional pain, suffering, inconvenience, mental anguish [and]
loss of enjoyment of life" to "other nonpecuniary losses."  Captain Paul Washington, Lieutenant
Michael Marshall and Firefighters John Coombs and Candido Nuñez all testified that they were
able to spend significant time raising their young children, which brought them highly valued
emotional rewards, greater enjoyment of life, convenience, and marital and economic benefits.
*See* Plaintiffs-Intervenors' Proposed Findings of Fact ("PFOF"), Dkt. 911 at ¶¶ 5-8.

[6] As discussed in Point II(D) *infra*, federal common law is as applicable as state law in crafting
tort remedies.  Nor do the tort laws of all jurisdictions impose the same *Rufino* restrictions as
applied in New York.  *See, e.g., Kurncz v. Honda N. Am., Inc.*, 166 F.R.D. 386, 387-88 (W.D.

(upholding award of compensatory damages for emotional distress, inconvenience, mental anguish and loss of enjoyment of life where plaintiff suffered loss of income and benefits, his wife stopped staying at home with their children and began working in a shoe factory, and he became depressed and stopped enjoying his "usual activities."); *Connolly v. Bidermann Indus. U.S.A., Inc.*, 56 F. Supp. 2d 360, 363 (S.D.N.Y. 1999) (upholding jury award of $50,000 for "past pain and suffering and loss of enjoyment of life's pleasures."); *Norton v. Lakeside Family Practice*, 382 F. Supp. 2d 202, 204-06 (D. Maine 2005) (awarding $7,500 for "loss of enjoyment of life, loss of self-esteem, emotional distress, pain and suffering and other non-pecuniary losses" under the Rehabilitation Act, where plaintiff was "overwhelmed by stress and emotional distress.")

Fair housing cases provide a particularly useful analogy to failure-to-hire cases because, in both situations, plaintiffs generally do not suffer from a direct physical injury but rather from the lost opportunity for a more enjoyable, convenient, secure and/or socially respectable career or residence. Just as Title VII and § 1981 seek to assure equal opportunity in employment, the Fair Housing Act seeks the same in the housing context. These cases, which are also outside the Federal Tort Claims Act context, do not limit recovery for loss of enjoyment of life to cases where the plaintiff becomes unable to perform a function he or she *previously* performed. Rather, federal courts have interpreted the statutory grant of "actual damages" under 42 U.S.C. § 3613 to authorize compensation for loss of *future* opportunities for enjoyment. *See, e.g., Banai v. U.S. Dep't of Hous. & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1208 (11th Cir. 1997) (affirming damages award for "emotional distress for humiliation, embarrassment, anger, inconvenience, and lost housing opportunity" to a black couple who were denied a rental because

Mich. 1996) (noting that under Michigan law, "prior enjoyment of a particular activity [is not] a prerequisite to an award for denial of the pleasures of life.")

of their race but did not suffer physical symptoms of emotional distress, and finding it sufficient that plaintiffs were "rendered . . . uncomfortable and insecure" and experienced a lack of other housing options); *U.S. Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell*, 908 F.2d 864, 873 (11th Cir. 1990) (affirming award of $40,000 in compensatory damages for racially discriminatory repudiation of sales contract, based on plaintiffs' "embarrassment, humiliation, and emotional distress" and their testimony that "our lives have been put on hold because we are not allowed to live where we can afford and choose to live."); *U.S. Dep't of Hous. & Urban Dev. ex rel. Guard*, HUDALJ 04-90-0231-1, 1993 WL 343530, *21 (Bankr. D. Minn. Sept. 3, 1993) (awarding $13,500 for, *inter alia*, "emotional distress [and] humiliation," where the refusal to accommodate a mobility impairment denied plaintiff a "housing opportunity" that "would have been very therapeutic, as well as pleasurable.")

Notably, the federal Equal Employment Opportunity Commission ("EEOC") does not impose *Rufino*-type limitations upon the "loss of enjoyment of life" provisions of 42 U.S.C. § 1981a. *See, e.g., Flowers v. Potter*, EEOC Doc. 01A43114, 2004 WL 2330987 (EEOC Oct. 7, 2004) (finding that "complainant's economic deprivation caused her loss of enjoyment of life [and] loss of relationship with her family" entitling her to an award of compensatory damages for discriminatory refusal to hire, without discussing a requirement to show physical injury, impairment of senses or the loss of the ability to perform functions previously performed). "Compensatory damages 'may be had for *any* proximate consequences which can be established with requisite certainty.'"  EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991 (hereinafter "EEOC Guidance"), *available at* http://www.eeoc.gov/policy/docs/damages.html (last accessed July 26, 2012), at II(A), citing 22 Am. Jur. 2d Damages § 45 (emphasis added).  Loss of enjoyment of life is treated as one of

the emotional harms covered by 42 U.S.C. § 1981a, rather than as a physical harm, and the EEOC Guidance makes no mention of the need to show physical injury or sensory impairment.

Given the above, restricting recovery for loss of enjoyment of life to cases where plaintiffs suffer a physical injury would contravene the underlying purposes of Title VII and 42 U.S.C. § 1981, *i.e.*, to make employment discrimination victims whole for the denial of employment opportunities, where physical injuries are unlikely to be at issue.  This Court set the standard correctly in its July 8, 2011 Order, finding that "[f]or Plaintiffs-Intervenors to prove that they have lost the enjoyment of life, . . . they must prove that they have actually enjoyed life *less* than they would have if they had been hired by the City."  Dkt. 665 at 31 (emphasis in original). Nothing more is required.

Here, unrebutted trial testimony established that FDNY firefighters are able to experience enjoyment of life through, *inter alia*, the opportunity to raise their children (PFOF ¶¶ 5-8) and the freedom from financial stress and anxiety that comes with knowing "I can buy this house . . . I can start this family – I'm going to be able to put money aside to send my kids to [ ] college. . . [W]e're going to be able to retire and live a good life once we retire."  (PFOF ¶ 22).  As one Deputy Chief described his work life, it is "getting to live out my dream."  (PFOF ¶47).  Eligible black claimants should have the opportunity to provide evidence about their own experiences, so that the Special Masters can evaluate the extent of their losses of enjoyment of life.

<u>Inconvenience</u>

Subclass members will likely also assert damages based upon inconvenience.  The term "inconvenience" is regularly understood to mean something that is "unsuited or unadapted to personal needs or comfort" or "something that gives trouble, embarrassment, or uneasiness," and that "disturbs or impedes."  *Webster's Third New Int'l Dictionary Unabridged*, Merriam-

Webster (1986).  There is no apparent basis to depart from that plain meaning.  Indeed, the breadth of the term itself provides an indication of the scope of damages that Congress intended to be compensable.  While cases providing a remedy for inconvenience under § 1891 or Title VII do not discuss that term separately, cases from other areas provide insight into how "inconvenience" should be interpreted.  *See, e.g., Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1068-1069 (7th Cir. 2001) (upholding compensatory damages award to discharged worker for inconvenience under the Illinois Workers' Compensation Act where he "was without work for nine to ten months, and this affected his personal life, including that he had to borrow money from family and friends and he had his lights and phone shut off. . . his family life was disrupted in that he was not able to buy his children new school clothes, pay his child support, or take his children out dining and shopping, [and his] new job [ ] was as a trucker, which required him to be away from home," and noting that the proof of inconvenience justified a higher award than in cases that "involved emotional distress only and not inconvenience"); *Mirandy v. Allstate Ins. Co.*, 1998 U.S. App. LEXIS 10915 (4th Cir. June 1, 1998) (affirming compensatory damages for inconvenience under the West Virginia Unfair Claim Settlement Practices Act where plaintiffs worried for two years that they might be liable for claims not paid by their insurance company); *Cruz v. Globe Realty Mgmt. Co.*, 2005 U.S. Dist. LEXIS 33386, *11-14 (N.D. Ill. Dec. 13, 2005) (awarding compensatory damages to disabled plaintiff for inconvenience – which was considered separate from emotional damages – where landlord failed to install ramp necessary for her to access front entrance); *Cozzo v. Parish of Tangipahoa*, 2000 U.S. Dist. LEXIS 32, *8 (E.D. La. Jan. 3, 2000) (upholding jury award of compensatory damages for inconvenience under 42 U.S.C. § 1983 where sheriff evicted woman from her home based upon her ex-husband's assertion that he owned the home, and plaintiff "was inconvenienced in having to reside with her

11

daughter, and her presence caused inconvenience and distress to her daughter's family, which also upset the plaintiff"); *Daniel v. Virgin Atl. Airways Ltd.*, 59 F. Supp. 2d 986, 994 (N.D. Cal. 1998) (where passengers were subject to a 25-hour delay in their international flight, finding that "the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel under the Warsaw Convention and domestic law, even in the absence of economic loss or physical injury" and that "damages for inconvenience do not fall within the rubric of 'emotional distress'").

Here, FDNY firefighters have the convenience of up to 22-23 free days per month (PFOF ¶ 2), the ability to take time off essentially as they desire (PFOF ¶ 3, 16), the ability to care for their children themselves without arranging for others to do so (PFOF ¶¶ 5-8), the ability to take time to attend to their health (PFOF ¶ 17), and the ability to concomitantly pursue other jobs or further schooling (PFOF ¶¶ 10-11), among other advantages.  The inconvenience to claimants who were either unemployed for periods of time, or who found positions with many more limiting, unpleasant, monotonous or dangerous characteristics (*e.g.*, perhaps, as a sanitation worker), will be shown in the individual hearings.

<u>Emotional Pain, Suffering and Mental Anguish</u>

Claimants may also assert that they endured emotional pain, suffering and mental anguish as a result of the lost opportunity to obtain the firefighter job.  Contrary to the opinion of the Fifth Circuit in *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1053 (5th Cir. 1998), referenced in the July 25, 2012 Order, Dkt. 932 at 3, the EEOC does not require physical manifestations in order to recovery for emotional harm.  The EEOC Guidance states:

> Emotional harm *may* manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous

> breakdown. Physical manifestations of emotional harm *may* consist
> of ulcers, gastrointestinal disorders, hair loss, or headaches.

*Id*. at II(A)(2) (emphasis added).

Thus, the EEOC simply describes a number of conditions that "*may*" constitute physical manifestations of emotional harm, but never states that such physical manifestations are required. In fact, several manifestations of emotional harm listed by the EEOC – such as "loss of self esteem" and "marital strain" – would not necessarily have physical effects. *Migis* is also contrary to Second Circuit authority. *See Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 56 (2d Cir. 2002) (holding that physical manifestations are not required to prove emotional distress under 42 U.S.C. § 1983, and stating expressly that prior precedent "should not be read to require physical symptoms of emotional distress.").

To the extent that *Migis* relies on the statement in the EEOC Guidance that "the Commission will typically require medical evidence of emotional harm to seek damages for such harm in conciliation negotiations," it ignores the immediately following statement that "*evidence of emotional harm may be established by testimony*." EEOC Guidance at II(A)(2) (emphasis added). In fact, the EEOC does *not* require medical evidence of emotional harm in awarding compensatory damages to federal employees. *See, e.g., Lawrence v. Runyon*, EEOC Doc. 01952288, 1996 WL 197403 (EEOC April 18, 1996) (holding that medical evidence "is not a mandatory prerequisite for recovery of compensatory damages," citing *Carpenter v. Dep't of Agric.*, EEOC Doc. 01945652, 1995 WL 434072 (EEOC July 17, 1995), and noting that "a complainant's own testimony, along with the circumstances of a particular case, can suffice to sustain his/her burden in this regard," citing *U.S. v. Balistrieri*, 981 F.2d 916, 932 (7th Cir. 1992), *cert. denied*, 114 S. Ct. 58 (1993)); *Watts v. Vilsack*, EEOC Doc. 0120093410, 2012 WL 2356809 (EEOC June 11, 2012) (affirming award of $2,000 in nonpecuniary compensatory

13

damages where "Complainant testified that she was 'very upset' and 'couldn't talk' when she was not selected"); *Boone v. U.S. Postal Serv.*, EEOC Doc. 01A31199, 2004 WL 1040180 (EEOC April 28, 2004) (affirming award of $2,000 in nonpecuniary damages where complainant's job offer was withdrawn due to discrimination and there was testimony that he was angry, frustrated, and withdrawn due to this action); *Harris v. Dep't of Agric.*, EEOC Doc. 01966746, 1998 WL 897680 (EEOC Dec. 11, 1998) ($2,000 in nonpecuniary damages in non-selection case based on complainant's testimony that she was stressed and depressed).

The Court also raised a question concerning the need for "concrete evidence to establish emotional distress damages."  Dkt. 932 at 2-3, citing *EEOC v. Yellow Freight Sys., Inc*., No. 98-CV-2270 (THK), 2002 WL 31011859, at *34 (S.D.N.Y. Sept. 9, 2002).  While concreteness has not been defined, and has been used in many different ways, it is clear that an individual's testimony concerning losses can be sufficient, standing alone, to establish entitlement to compensatory damages.  The Second Circuit's holding in *Annis v. Westchester County*, 136 F.3d 239 (2d Cir. 1998) is the principal case cited in *Yellow Freight* for the "concrete evidence" standard, but the holding in *Annis* has been interpreted narrowly, based "on the particularly minimal evidence provided by the plaintiff in that case."  *Dejesus v. Village of Pelham Manor*, 282 F. Supp. 2d 162 (S.D.N.Y. 2003), citing *Mahoney v. Canada Dry Bottling Co. of New York,* No. 94 Civ. 2924, 1998 WL 231082, at *5 (E.D.N.Y. May 7, 1998) ("The Court is not convinced that *Annis* should be read so broadly as to preclude any award of compensatory damages for mental anguish absent corroborating testimony."); *Uddin v. New York City Admin. for Children's Servs.,* No. 99 Civ. 5843, 2001 WL 1512588, at * 6 (S.D.N.Y. Nov.28, 2001) ("[T]he *Annis* Court itself indicated that its holding was based on the nature of plaintiff's testimony, rather than

14

the absence of corroboration, explaining that 'her testimony fails to establish that she suffers from any concrete emotional problems.'").

Thus, the prevailing rule in Second Circuit and EEOC decisions is that compensatory damages for emotional harm may be awarded on the basis of the plaintiff's testimony alone; medical evidence or other outside corroboration of emotional harm is not necessarily required. *See, e.g., Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46-47 (E.D.N.Y. 2009) (noting that while "egregious" emotional distress claims require medical corroboration, evidence of "garden-variety" emotional distress "is generally limited to the testimony of the plaintiff," and even "significant" emotional distress claims do not necessarily require evidentiary support from medical professionals); *Danzie v. Dep't of the Army*, EEOC Doc. 01A42575, 2004 WL 1763834 (EEOC Jul. 28, 2004) (citing "multiple cases where complainants have been awarded large compensatory damages when there were not medical records, familial testimony, or other evidence of non-pecuniary injuries"); *Flowers*, 2004 WL 2330987 at *3 (finding compensation appropriate without medical evidence); *O'Laco v. Dep't of Veteran Affairs*, EEOC Doc. 07A10089, 2002 WL 31639581, *2-3 (EEOC Nov. 18, 2002) (relying on complainant's own testimony about emotional distress, including loss of self-esteem and loss of enjoyment of life, as a result of losing his position); *Batieste*, 2000 WL 731990, *1, citing *Carle v. Dep't of the Navy*, EEOC Doc. 01922369, 1993 WL 1504728 (EEOC Jan. 5, 1993); *Terrell v. Dep't of Hous. & Urban Dev.*, EEOC Doc. 01961030, 1996 WL 637242 (EEOC Oct. 25, 1996) (explaining that objective evidence of compensable harm includes complainant's own statements about loss of enjoyment of life, injury to professional standing, injury to credit standing, injury to character and reputation, etc.).

Where external corroboration is deemed to be necessary, it can come from many kinds of sources.  *See Browne v. Dep't of Agric.*, EEOC No. 01944256, 95 F.E.O.1. 3230, XII-151 (1995) ("Statements from others, including family members, friends, health care providers, [and] other counselors (including clergy) could address the outward manifestations or physical consequences of emotional distress.") Here, a survey or questionnaire[7] could elicit information concerning "[t]he existence, nature, and severity of emotional harm."  EEOC Guidance at II(A)(2).  The Special Masters could then make a recommendation based on findings and assessments of the value of such harm, after individualized proceedings or after taking testimony as appropriate to each case.

Other Nonpecuniary Losses

a.    Lost Future Earning Capacity:    Lost future earning capacity, another nonpecuniary injury for which subclass members may seek compensation, is distinct from the loss of income that would have been earned from the job itself (which is remedied by an award of back and front pay).  Instead, it compensates victims for the intangible loss of experiences that would have resulted in enhanced earning capacity, such as additional schooling, experience in a trade or profession, or the building of a business.  *Williams v. Pharmacia, Inc.,* 137 F.3d 944, 952-53 (7th Cir. 1998) (finding that the discriminatory termination of the plaintiff's employment diminished her future earning capacity "in the same way that a physical injury may diminish the earning capacity of a manual laborer.") Given that FDNY firefighters have significant opportunity to pursue further education, *e.g.*, studying "to become nurses and lawyers" (PFOF ¶

---

[7] While a questionnaire has advantages in terms of ease of administration of the claims process, it will be important to ensure that claimants understand the uses that will be made of their answers, as well as their option to seek the assistance of counsel with respect to the formulation of their responses.

11), and to work a second job or run a business (PFOF ¶ 10), many subclass members may assert a claim for lost future earning capacity.

The legislative history of the 1991 Act shows that the unavailability of this remedy in Title VII cases was a problem that the supporters of the 1991 Act sought to rectify. *See* H.R. REP. 102-40, 68-69, 1991 U.S.C.C.A.N. 549, 606-07 (1991) ("All too frequently, Title VII leaves prevailing plaintiffs without remedies for their injuries and allows employers who discriminate to avoid any meaningful liability. . . For example . . . [i]n *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 535 (5th Cir. 1986), the court concluded that a hospital had "intentionally excluded Jews from its beneficial and educational rotation program," [which] offered lucrative compensation, attractive benefits, and unique and professionally valuable clinical experience. Although the plaintiffs received back pay, they were not made whole for the professional injuries and lost future earnings they suffered as a result of their exclusion from the program."); *see also* Statement of Congressman Edwards, *supra* at 5-6 (noting that "terrible injury to [victims'] careers" was among the injuries prompting Congress to adopt the 1991 Act).

b. Other Losses:  "Other nonpecuniary losses could include injury to professional standing, injury to character and reputation, injury to credit standing, loss of health, and *any other* nonpecuniary losses that are incurred as a result of the discriminatory conduct."  EEOC Guidance at II(A)(2) (emphasis added).  As this list indicates, multiple types of harm – separate and apart from those enumerated in § 1981a(b)(3) – can appropriately be compensable.  Injury to professional standing, injury to character and reputation, and injury to credit standing can all be proven objectively and do not necessarily involve or require the subjective experience of emotional pain, suffering or mental anguish.  *See, e.g., Colwell v. Henderson*, EEOC Doc. 01985789, 2001 WL 704248, *2 (EEOC June 13, 2001) (awarding damages for, *inter alia*, loss

17

of credit standing and loss of professional standing); *Batieste v. Peters*, EEOC Doc. 01974616, 2000 WL 731990, *5 (EEOC May 26, 2000) (awarding damages for, *inter alia*, loss of credit standing where complainant was forced to declare bankruptcy after being removed from her job).

Several witnesses also described the reputational benefits of employment as an FDNY firefighter, including the attendant respect of other professionals and members of the community (PFOF ¶¶ 23-26) and the assumption "when people know you're a firefighter . . . that you're a good person, a nice person, an honest person." (PFOF ¶ 27). Loss of this extraordinary prestige easily falls within the "injury to character and reputation" noted by the EEOC at II(A)(2).[8]

Nor do canons of statutory construction undermine a broad reading of "other nonpecuniary losses." *See United States v. Amato*, 540 F.3d 153, 160-161 (2d Cir. 2008) ("we do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase"), citing *Harrison v. PPG Indus.*, 446 U.S. 578, 589, n. 6 (1980) (rejecting an argument that *ejusdem generis* must apply when a broad interpretation of the clause could render the specific enumerations unnecessary); *see also Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 839-40, 169 L. Ed. 2d 680 (2008) (reasoning that Congress might sometimes use specific terms not to limit the succeeding general ones, but instead simply to remove any doubt that the specific terms are included under the statute, particularly where the drafters fear that courts will overlook certain types of losses unless those items are specifically named); *Fort Stewart Sch. v. FLRA*, 495 U.S. 641, 646 (1990) (noting that "technically unnecessary" examples may have been "inserted out of an abundance of caution.").[9] Because claimants have not yet had

---

[8] Of course, this loss may also be considered under other categories as well, such as loss of enjoyment of life or inconvenience.

[9] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012), which is cited by the Court, Dkt. 932 at 4, is readily distinguishable. In *RadLAX*, the petitioner argued that one provision of the statute at issue should be read to permit the very conduct that the following

the opportunity to proffer evidence of the variety of noneconomic harms they may have suffered, it is premature to place any limitations on the types of harms they may assert.

### D.    Viewing Title VII and § 1981 Damages as "Tort-Like" Remedies Does Not Alter Plaintiffs-Intervenors' Entitlement to Compensatory Damages

In interpreting the availability of damages under 42 U.S.C. §§ 1981 & 1983, the Supreme Court has recognized that Congress intended to "'[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the constitution." *Carey v. Piphus,* 435 U.S. 247, 253 (1978) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976)).  Determining which remedies are available for violations of the Civil-War-era Civil Rights Acts (42 U.S.C. §§ 1981, 1982, 1983 and 1985) is a matter of federal law.  *See Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 240 (1969) (holding that, in a case arising under 42 U.S.C. § 1982, § 1988 provides "that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired.").

Assessments of the applicability of state law to federal civil rights litigation "must be made in light of the purpose and nature of the federal right," *Felder v. Casey,* 487 U.S. 131, 139 (1988), and the "burdening of a federal right . . . is not the natural or permissible consequence of an otherwise neutral, uniformly applicable state rule."  *Id.*, at 144.  Just as the Supreme Court in *Felder* declined to incorporate provisions of Wisconsin law that did not further the underlying

provision expressly proscribed.  Thus, *RadLAX* does not stand for the proposition that a list of specific terms followed by a general term prohibits the inclusion of additional types of items in the list.  Rather, *RadLAX* held that the "[g]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment."  285 U. S., at 208, 52 S. Ct. 322, 76 L. Ed. 704.  Thus, the statutory construction issue present in *RadLAX* is not present here.  Intervenors simply argue that the general language in §1981a(b)(3) was intended to provide for additional types of compensatory damages not already specifically listed by name.

purposes of § 1983, so a number of federal courts within the Second Circuit have rejected the applicability of provisions of New York law in determining the scope of remedies under § 1983. *See, e.g., Crews v. County of Nassau*, 612 F. Supp. 2d 199, 211-12 (E.D.N.Y. 2009) (refusing to apply N.Y. contribution law to § 1983 action); *Banks ex rel. Banks v. Yokemick*, 177 F. Supp. 2d 239, 263 (S.D.N.Y. 2001) (refusing to apply setoff provisions of N.Y. General Obligations Law § 15–108 because they were inconsistent with the policies § 1983 was intended to promote); *DeMarco v. Sadiker*, 952 F. Supp. 134, 142 (E.D.N.Y. 1996) (finding expungement to be an appropriate remedy despite its unavailability under state law).

In light of these principles, it is inappropriate to import limits upon recovery for loss of enjoyment of life from New York personal injury law. First, requiring physical injury as a prerequisite to recovery in a personal injury tort framework is far different from doing so when interpreting statutes devised to remedy employment discrimination, where physical injury rarely accompanies the discriminatory conduct. Requiring physical injury to accompany emotional harm would leave most victims who experience a loss of enjoyment of life or emotional harm because of racial discrimination without any compensatory damages. As to 42 U.S.C. § 1981a, both federal courts and the EEOC have interpreted "loss of enjoyment of life" to have a different meaning from that given by the New York courts when interpreting state tort law. *See* authorities cited *supra* at 7-8. Those authorities make clear that § 1981a seeks to remedy the broad range of *emotional harm* arising from racial discrimination – without physical injury.

Second, limiting recovery in the context of employment *opportunity* laws to the losses of pleasures *already* enjoyed makes no sense. Applying such a rule to laws designed to assure equal employment *opportunities* is particularly perverse, since opportunity is a forward, not

10133807_3

backward, looking concept.[10] Persons discriminatorily denied a new job – whether through a failure to promote or a failure to hire – suffer emotional harm in terms of diminished enjoyment of life due to the denial of those opportunities, without regard to whether the victim has previously experienced the emotional benefits made available by the new opportunity. Requiring the victim to have previously experienced those denied opportunities before the victim can recover for that loss fails to place the victim in the position he or she would have been in, but for the discriminatory act, as required by *Albemarle*, 422 U.S. at 417-419.

## III.   COMPENSATORY DAMAGES ARE EVEN MORE READILY AVAILABLE UNDER STATE AND CITY HUMAN RIGHTS LAWS

New York State Human Rights Law

The New York State Human Rights Law ("NYSHRL") permits the award of "compensatory damages to the person aggrieved by discrimination," N.Y. Exec. Law § 297(4)(c), and the authority to award compensatory damages for "mental anguish occasioned by the discrimination is firmly established" in cases alleging failure to hire or promote.  *Consol. Edison Co. v. New York State Div. of Human Rights*, 77 N.Y.S. 2d 411, 421 (1991) (collecting cases) (upholding award for "hurt, humiliation, and mental anguish" in discriminatory failure to promote case); *Sears v. New York State Div. of Human Rights*, 73 A.D. 2d 913, 914 (1980) (remanding for an award of compensatory damages in discriminatory failure to hire case). Unlike federal law, the NYSHRL does not limit compensatory damages to cases involving intentional discrimination.  *See Cullen v. Nassau County Civ. Serv. Comm'n.*, 53 N.Y. 2d 492, 496 (1981) ("the fact that compensation may be allowed for emotional trauma does not depend on a showing that the discrimination that produced it was intentional.").

---

[10] *The American Heritage Dictionary of the English Language* (4th ed., 2009) defines "opportunity" as "a chance for progress or advancement."

Further, there is no need for plaintiffs to demonstrate physical injury or physical manifestations of emotional damage to recover compensatory damages. *See, e.g., Hegmann v. Village 99 Cents,* NYSDHR No. 10106482 at *4 (December 11, 2008) (awarding $10,000 in compensatory damages based on testimony that complainant felt "confused, upset and hurt emotionally" due to discriminatory failure to hire); *Johnson v. Bryson*, NYSDHR No. 10119554 at *6 (July 9, 2009) (awarding $5,000 in compensatory damages to complainant who felt "disappointed and 'very bad'" due to discriminatory failure to hire).[11]

State courts have upheld compensatory damages awards for a broad range of injuries in discrimination cases. *See, e.g., Matter of Mukattash v. Human Rights Comm'n of Westchester*, 2012 N.Y. Slip. Op. 5422, 2012 N.Y. App. Div. LEXIS 5302 at *4 (2d Dep't, July 5, 2012) (upholding award for "inconvenience and stress" in case of housing discrimination); *Matter of Argyle Realty Assoc. v. New York State Div. of Human Rights*, 65 A.D. 3d 273, 285 (2d Dep't 2009) (where building superintendent was discriminatorily discharged, upholding award for mental anguish, humiliation and "distress [over] the decline in maintenance of the buildings").

As under federal law, a claimant's own testimony as to mental anguish is sufficient to support such an award. *See, e.g., Matter of New York State Div. of Human Rights v. Caprarella*, 82 A.D. 3d 773, 776 (2d Dep't 2011); *New York City Transit Auth. v. State Div. of Human Rights*, 78 N.Y. 2d 207, 216 (1991) ("Mental injury may be proved by the complainant's own testimony, corroborated by reference to the circumstances of the alleged misconduct."); *Club Swamp Annex v. White*, 167 A.D.2d 400, 402-403 (2d Dep't 1990) (upholding award of $5,000 for mental anguish based solely upon complainant's testimony and noting that it is "well settled that a complainant's testimony as to the mental anguish he suffered is sufficient to support such

---

[11] These two administrative decisions are not readily available to the public and are therefore annexed as Exhibit C.

an award."); *Cullen*, 53 N.Y. 2d at 497; *New York City Transit Auth. v. State Div. of Human Rights*, 163 A.D.2d 315, 316 (2d Dep't 1990) ("It is well settled that an award of compensatory damages to a person aggrieved by an illegal discriminatory practice . . . may be based solely on the complainant's testimony"); *Italiano v. New York State Executive Dep't, Div. of Human Rights*, 36 A.D.2d 1009 (4th Dep't 1971) ("Medical testimony is not likely to be practically or economically feasible in the majority of these cases. To require such evidence would, in effect, preclude most awards of compensatory damages.").

New York City Human Rights Law

The New York City Council has made clear that the City Human Rights Law ("HRL") is to be construed such that federal rights and recoveries serve as a floor, not a ceiling, to the rights and recoveries available under the City HRL.  *See* Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005) at § 1 (stating that "similarly worded provisions of federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall.").  As the Second Circuit has recognized, "claims under the City HRL must be reviewed independently from and 'more liberally' than their federal and state counterparts." *Loeffler v. Staten Island Univ. Hospital*, 582 F.3d 268, 278 (2d Cir. 2009), citing *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 66-69, 872 N.Y.S. 2d 27, 31 (1st Dep't, 2009).  Thus, at the very least, any damages compensable under Title VII or § 1981 are likewise compensable under the City HRL, and the City law requires an independent liberal construction of its terms in favor of civil rights victims - even when its language is similar to federal law.  *See, e.g., Sorrenti v. City of New York,* 17 Misc.3d 1102(A), 851 N.Y.S.2d 61 (Table), 2007 WL 2772308 (N.Y.Sup.), 2007 N.Y. Slip Op. 51796(U), affirmed, sub nom *Albunio v City of New York*, 16 N.Y.3d 472, 477-78 (2011)

10133807_3

(upholding damage award based in part upon the impact on plaintiff's "mental and emotional state" of defendants' "discriminatory denial of . . . career opportunity.")

Like the New York State Division of Human Rights, the New York City Commission on Human Rights awards compensatory damages for a broad range of injuries without requiring physical manifestations of distress. *See, e.g., Leventhal v. Louis Harris & Assoc.*, Compl. No. 10174356-E, 1991 NYC HRC LEXIS 14, *52-53 (May 23, 1991) (awarding $20,000 in compensatory damages for "humiliation, outrage, and mental anguish" in failure-to-hire case where complainant felt "awful," that his "voice broke" in a call to his friend, and that he felt pessimistic about his employment prospects given that he "was not able to work at something he was so clearly qualified for"); *Nemhauser v. NMU Pension and Welfare Plan*, NYCCHR Compl. No. EM00377, 1989 NYC HRC LEXIS 2, *46 (July 27, 1988) (awarding $6,000 in compensatory damages for humiliation and mental anguish, based on testimony that complainant was "deeply frustrated" when job offer was rescinded due to her disability); *Dixon v. Singer Company,* Compl. No. 6316-J, 1976 NYC HRC LEXIS 5, *30-31 (August 31, 1976) (finding sufficient evidence of mental anguish in a complainant's testimony of "the inference she drew from Respondent['s] discriminatory treatment of her that black people were inferior," to award compensatory damages).

Neither New York State nor New York City law requires a finding of intentional discrimination in order to justify an award of compensatory damages. Thus, in keeping with long-standing state and local law, individual claimants in this case should be permitted to proffer evidence demonstrating that they are entitled to compensatory damages independently of their right to do so under federal laws.

**CONCLUSION**

For these reasons, Plaintiffs-Intervenors Non-Hire and Delayed-Hire Subclasses respectfully request entry of an order finding that, upon a sufficient showing of actual harm, individual victims of the City's discrimination may be entitled to noneconomic compensatory damages pursuant to 42 U.S.C. §§ 1981 and 1983; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981a; the New York State Human Rights Law, N.Y. Exec. Law § 297(9); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(a).

Dated: August 8, 2012
       New York, New York

Respectfully submitted,

LEVY RATNER, P.C.

/s/
_____

By:   Richard A. Levy
      Dana E. Lossia
      Robert H. Stroup
      80 Eighth Avenue
      New York, NY 10011
      (212) 627-8100
      (212) 627-8182 (fax)

*Attorneys for the Non-Hire Subclass*

CENTER FOR CONSTITUTIONAL RIGHTS

/s/
_____

By:   Darius Charney
      Ghita Schwarz
      666 Broadway, 7th Floor
      New York, NY 10012-2399
      (212) 614-6438
      (212) 614-6499 (fax)

*Attorneys for the Delayed-Hire Subclass*

TO:  All Counsel via ECF

25