FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ AUG 22 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

UNITED STATES OF AMERICA,

Plaintiff,

-and-

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members*, JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief*;

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated*; and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated*,

Plaintiff-Intervenors,

-against-

THE CITY OF NEW YORK,

Defendant.

---------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-2067 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

The parties in this case have asked the court to resolve several issues relating to individual relief proceedings that the parties and the court envision as a manner of determining the relief owed to victims of the City's discriminatory entry-level firefighter exam. The court assumes the reader's familiarity with its previous rulings in this case, especially its March 8, 2012, Memorandum and Order (Docket Entry # 825) and its June 3, 2012, Memorandum and Order (Docket Entry # 888), both of which relate to individual relief proceedings. In this

Memorandum and Order, the court rules on several issues about discovery in anticipation of the individual relief proceedings and the evidence that the City may offer at those relief proceedings. The court's resolution of these issues follows.

## I SUBSTANTIALLY EQUIVALENT EMPLOYMENT

The parties' primary dispute is whether the City will be able to prove that employment substantially equivalent to the position of entry-level firefighter for the Fire Department of the City of New York (the "FDNY") existed in the New York City area. The court will not foreclose this possibility entirely, but concludes that this inquiry must be narrower than the City argues.

A victim of employment discrimination has a duty to attempt to mitigate his or her damages by using "reasonable diligence in finding other suitable employment." Ford Motor Co. v. EEOC, 458 U.S. 219, 231 (1982); see 42 U.S.C. §2000e-5(g)(1). "This obligation is not onerous and does not require [the victim of discrimination] to be successful" in the attempt to mitigate. Hawkins v. 1115 Legal Service Care, 163 F.3d 684, 695 (2d Cir. 1998). A Title VII defendant has the burden of proving that the victim failed in his or her duty to mitigate, usually by proving that "(1) suitable work existed and (2) that the employee did not make reasonable efforts to obtain it."[1] Id. "Suitable work" is often described as "a job substantially equivalent to the one [the victim of discrimination was denied]." Id. To be substantially equivalent to the illegally deprived position, another position must be similar to the lost position in "promotional opportunities, compensation, job responsibilities, working conditions, and status." Rasimas v. Michigan Dep't of Mental Health, 714 F.2d 614, 624 (6th Cir. 1983). The victim of discrimination "need not go into

[1] A defendant can avoid the requirement of proving that suitable work existed if it can prove that the victim did not attempt to pursue employment at all. Broadnax v. City of New Haven, 415 F.3d 73, 85 (2d Cir. 2005). The parties agree that the City should be entitled to attempt to prove that individual claimants did not attempt to find a replacement job at all.

discrimination "need not go into another line of work, accept a demotion, or take a demeaning position." Ford Motor Co., 458 U.S. at 231.

The United States' position is that the City will be unable to prove the existence of substantially equivalent employment, at least for New York City residents, because the FDNY is the only employer of entry-level firefighters in New York City. (United States Mem. (Docket Entry # 884) at 7-11.) The Plaintiff-Intervenors agree with the United States' argument. (Pl.-Intervenors Mem. (Docket Entry # 885) at 1.) The City, on the other hand, argues that individual claimants could have found substantially equivalent employment by (1) applying to another City department, particularly the Police Department; (2) applying to fire departments in other areas of New York or in New Jersey; or (3) for those applicants who took Exam 7029 and were not too old to apply again when Exam 2043 was administered, by applying to take Exam 2043. (City Opp'n Mem. (Docket Entry # 900) at 4-12.)

Turning to the City's first argument, it claims that because entry-level police officers, like entry-level firefighters, are peace officers who work for the City, and are paid the same base wage and have, for the most part, the same benefits, as entry-level firefighters, that a position as a police officer is substantially equivalent employment. (City Opp'n Mem. at 8-11.) However, the court is not persuaded. While the City is correct that salary and other financial benefits are relevant to determining substantially equivalent employment, the financial similarity is not sufficient to determine equivalence. Carrero v. N.Y.C. Housing Auth., 890 F.2d 569, 580 (2d Cir. 1989). The Supreme Court has stated that a victim of discrimination need not "go into another line of work," Ford Motor Co., 458 U.S. at 231, and despite the fact that both firefighters and police officers are peace officers under New York State law, the court believes it fairly clear that the two jobs are different lines of work and are perceived as such by the incumbents of both

jobs as well as by the public at large. Phrased another way, the two jobs are very dissimilar in job responsibilities and working conditions. As a matter of law, they are dissimilar employment. Cf. Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 735-36 (8th Cir. 1996) (emergency room admissions clerk position dissimilar to general hospital admissions clerk); Hemphill v. City of Wilmington, 813 F. Supp. 2d 592, 599 (D. Del. 2011) (available positions at defendant municipality are not automatically substantially equivalent employment to victim's lost position); Reilly v. Cisneros, 835 F. Supp. 96, 102 (W.D.N.Y. 1993) (a position practicing in the same area of law, for the same government agency, was substantially equivalent employment to illegally terminated position).[2] Moreover, even if their job responsibilities were not dissimilar, the schedule of a firefighter is significantly different than that of a police officer (City Opp'n Mem. at 1); as a result of their unique schedule, firefighters are uniquely able to hold a second job (Aug. 1, 2011 Bench Trial Tr. (Docket Entry # 756) at 206). These differences would also be sufficient to render a police officer position dissimilar employment for the purposes of this case. Cf. NLRB v. Thalbo Corp., 171 F.3d 102, 114-15 (2d Cir. 1999) (a position working nights and weekends not equivalent to prior position working weekday shifts). As the City has not offered any other type of position that is more similar to firefighter than police officer is, the court concludes that there is no form of substantially equivalent employment to the position of firefighter other than the position of firefighter itself. Cf. Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 125 (2d Cir. 1996) (no substantially equivalent employment existed for former superintendent of trains at regional railroad other than that position).

---

2 The court's ruling does not affect the aspect of the duty to mitigate that requires that if a claimant has taken a job as a police officer, or any other dissimilar job that could not have been held in combination with the position of firefighter, then his or her wages from that job will reduce the claimant's backpay award. See Ford Motor Co., 458 U.S. at n.16.

The City next argues that it can prove that there were entry-level firefighter positions available in New York counties outside of the City and in New Jersey, and as evidence of this, cites to several exam notices from, inter alia, the Cities of Newburgh, White Plains, and Yonkers (see City Opp'n Mem. Ex. A. (Docket Entry # 900-1) at 20-37); the United States argues that such positions would not be within a reasonable geographical distance for New York City residents to accept as alternative employment and, in any case, that the City has not offered sufficient evidence that the entry-level firefighter positions it refers to were equivalent in terms of pay or schedule flexibility (United States Reply Mem. at 5-7). The court agrees that the notices, by themselves, do not prove the existence of substantially equivalent employment, but the court does not believe that the City should be prohibited from offering additional evidence about these positions in individual relief proceedings. However, the City must prove first that these positions were within a reasonable geographic distance from the residences of individual claimants. See, e.g., Donlin v. Philips Lighting North Am. Corp., 581 F.3d 73, 89 (3rd Cir. 2009). Furthermore, the reasonableness of a commute from New York City to another county or another state cannot be judged without reference to the location of the particular residence of the claimant—and so the court cannot determine at this point whether any New York City resident lived within a reasonable geographic distance to the positions to which the City refers. Once the parties have a complete list of eligible claimants and their residential addresses, then the City may attempt to prove that entry-level firefighter positions existed within a reasonable distance of a particular claimant, and that the positions would not have required the claimant to change residences to be eligible, and that the positions offered virtually identical responsibilities, pay, benefits, and scheduling as the FDNY.

Finally, the court rejects the City's third argument that claimants who sat for Exam 7029 and were not above the eligible age when Exam 2043 was administered are required to have sat for Exam 2043. The court agrees with the United States that victims of a discriminatory exam do not need to subject themselves to an identically crafted and administered exam in order to perfect their rights to relief from the first exam. Using the terms of the duty to mitigate, such a rule would require victims to engage in unreasonable efforts to attempt to mitigate their damages, and using the terms of equity, such a rule would be inequitable.

## II. COLLATERAL SOURCE PAYMENTS AND PAYMENTS FROM THE CITY

The parties appear to be in agreement that income from collateral sources—such as state-administered unemployment insurance payments or social security disability payments—will not be used to reduce a claimant's potential recovery from the City; the parties also agree that worker's compensation or unemployment insurance payments the City may have made to claimants who were City employees, however, should reduce a claimant's recovery. (See City Opp'n Mem. at 14-17; United States Reply Mem. at 9-10; Pl.-Intervenors June 22, 2012 Ltr. (Docket Entry # 909) at 1.) The court agrees with the parties' proposals and rules that payments in the nature of worker's compensation or unemployment insurance the City made as a self-insurer to individual claimants shall be deducted from claimants' awards. The City shall search its own records for evidence of such payments and provide that evidence, if any, to the relevant claimant and the United States. Payments that were not from the City are collateral source payments and shall not reduce a claimant's backpay award. See Dailey v. Societe Generale, 108 F.3d 451, 460-61 (2d Cir. 1997). Discovery on collateral source payments is unnecessary and shall not be sought. However, the court orders the United States to provide successful claimants with a written warning that any claimant who received collateral source payments may be

required to repay those payments out of their award and that they should consult with an attorney to determine whether they are obligated to do so.

## III. DISCOVERY REGARDING LIKELIHOOD OF DEPARTURE

The United States requested that the court prohibit the City from seeking discovery about claimants' educational, medical, psychological, criminal, or character backgrounds; the United States believes that the City is interested in this material as a way to determine whether a particular claimant would have left the FDNY had he or she been hired. (United States Mem. at 12-16.) The United States argues that line of argument would be inappropriate because (1) it would call on the fact-finder to speculate about essentially unknowable counterfactual situations; and (2) the calculations of pre-mitigation backpay took into account the likelihood that a firefighter would have left the FDNY between the date of hire and today. (Id. (citing Mar. 8, 2012 Mem. & Order at 29).) The City offers no opposition to the United States' request. The court agrees with the United States and accordingly orders that the City may not seek discovery designed to provide evidence that a particular claimant was likely to have left the FDNY had he or she been hired.

## IV. DISCOVERY ON INTERIM EARNINGS

The parties disagree on whether the City should be permitted to take discovery from claimants regarding their interim earnings (beyond the information United States will collect from the Social Security Administration on the City's behalf). (See United States Mem. at 16-19; City Opp'n Mem. at 22-23; United States Reply Mem. at 22-23.) The court agrees with the United States that the information from the Social Security Administration is likely to be sufficient for most claimants, but the court also agrees with the City that in at least some cases that data source will not be enough. Therefore, when the City believes that the Social Security

information for a particular claimant is insufficient or inaccurate, the City may move the Special Master overseeing that claimant's claim for leave to take discovery from the claimant in the form of the claimant's tax records or other potential evidence of the claimant's income. The claimant and the United States shall have the chance to respond to the City's request.

## V. SELF-INDUCED DELAY IN HIRING

The City wishes to be able to offer evidence that some portion of the delay some Delayed-Hire Claimants experienced was self-induced.[3] (City. Opp'n Mem. at 17-22.) The City argues that proving self-induced delay would be a relatively straightforward process of comparing the date a claimant was first certified to the date he or she was appointed, together with an examination of a claimant's candidate investigation record. The United States disagrees with the City on this issue; it argues that the City's proposal would not account for the possibility that the City may have caused the delay in processing claimants, and would force the fact-finder to make indefensible guesses about what might have caused the delay in a given claimant's processing. (United States Reply Mem. at 12-16.)

The court believes that the City should be given the chance to prove that certain Delayed-Hire Claimants created some months of the delay they experienced. However, the court agrees with the United States that the City's records of a claimant's certification date, processing date, and disposition code in his or her candidate investigation record should not be accepted naively; more conclusive evidence that demonstrates what the claimant did or did not do likely will be required. The City must prove that a claimant created part of his or her own delay, as opposed to the City's actions or the negligence of some third party. To the extent there is a lack of certainty

[3] The parties had previously jointly proposed Delayed-Hire Claimant eligibility criteria that did not include self-induced delay, and the court has adopted those criteria. (Mar. 8, 2012 Memorandum & Order at 52-53.) As the City does not style its briefing as a motion for reconsideration, the court understands the City to be arguing that self-induced delay should reduce a claimant's recovery, not render the claimant ineligible for relief entirely.

as to whether the claimant created any month of delay, that uncertainty will be resolved against the City. See Rasimas, 714 F.2d at 628; Ass'n Against Discrimination in Employment v. City of Bridgeport, 647 F.2d 256, 289 (2d Cir. 1981). The court further notes that it has already expressed concerns about the City's post-examination processing (see Sept. 30, 2011 Findings of Fact (Docket Entry # 741) at 47-60), and has refused to engage in any inquiry that would require estimating what that process would have concluded about specific claimants (see Mar. 8, 2012, Memorandum & Order at 55-57). The court's ruling today is not intended to overturn the court's previous opinions or to permit a Special Master to guess as to what the City might have done in response to a claimant's application. However, if the City believes it can prove that, for example, a certain claimant received notice of his or her certification and processing dates and simply refused to submit medical documentation, then it may attempt to do so.

## VI. CONCLUSION

For the reasons discussed above, the City shall have the opportunity to prove that substantially equivalent employment, in the form of firefighter positions with similar pay, benefits, and scheduling flexibility, existed within a reasonable geographic distance of an individual Non-Hire Claimant's residence, but shall not offer evidence of other government positions as substantially equivalent positions; the City shall not take discovery about collateral source payments but may offer evidence of payments it made to a particular claimant; the City may not take discovery regarding the likelihood that a particular Non-Hire Claimant may have left the FDNY; the City may take discovery regarding a claimant's interim earnings upon a showing of need to the Special Master presiding over that claimant's relief proceeding; and, the City may attempt to prove that particular Delayed-Hire Claimants caused a portion of their delay.

The Special Masters are directed to develop an individual relief procedure that is consistent with the court's rulings.

SO ORDERED.

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

Dated: Brooklyn, New York
August 22, 2012