**U.S. Department of Justice**

Civil Rights Division

DK:MLB:EKB:JMS:AKT:BS:KL
DJ 170-51-358

*Employment Litigation Section - PHB*
*950 Pennsylvania Ave, NW*
*Washington DC 20530*
*www.usdoj.gov/crt/emp*

October 24, 2012

Honorable Nicholas G. Garaufis
United States District Court
 for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

   Re: <u>United States v. City of New York, et al.</u>, 07-CV-2067 (NGG)(RLM)

Dear Judge Garaufis:

  In accordance with the Court's October 18, 2012 Order, the United States submits this letter to address certain objections related to the eligibility criteria that will be applied in the claims process for individual relief.

  The key issue raised by the objections is whether individuals should be eligible for individual relief if they passed Written Exam 7029 or 2043 but were not hired by the City because, for example, the City failed to notify them about, or discriminated against them during, the post-written examination screening steps.  Under the eligibility criteria previously agreed to by the parties and adopted by the Court (Dkt. 825), such individuals would not be eligible for individual relief because, as described below, they were not harmed by the specific employment practices on which the City's liability – and the corresponding individual relief – is based.  However, the Plaintiffs-Intervenors have recently asserted that these individuals should perhaps be eligible for individual relief and the Special Masters should hear and decide these issues during the claims process.  In order for the Special Masters to be able to recommend that any such individuals are eligible for individual relief, the Court would have to change the eligibility criteria to incorporate these additional individuals – who will likely number in the thousands.

  For the reasons stated below, the Court should not modify the eligibility criteria because they appropriately limit the availability of relief to only individuals who were victims of the discriminatory employment practices that gave rise to the City's liability.  Further, as stated in Section III, modifying the eligibility criteria in the manner proposed by the Plaintiffs-Intervenors will significantly delay the claims process – including the appointment date of any priority hires – because it will require the claims process to be reopened to allow the parties and the claimants to litigate claims related to the post-written examination screening process.

I.   **Background**

    A.   Liability Phase

Shortly after the United States filed its complaint in this case, the Court birfurcated this lawsuit into a liability phase and a remedial phase. Dkt. 47. During the liability phase, the United States and Plaintiffs-Intervenors challenged four specific employment practices: the City's pass/fail and rank-order use of Written Exam 7029, as well as the pass/fail and rank-order use of Written Exam 2043. Based on the evidence presented regarding these four employment practices, the Court determined that the United States and Plaintiffs-Intervenors had established a *prima facie* case of disparate impact discrimination against black and Hispanic applicants, and that the City had failed to establish that these four employment practices were job-related and consistent with business necessity, as required by Title VII. Dkt. 294 at 93. Accordingly, the Court held the City liable for disparate impact discrimination regarding these four employment practices. *Id.* at 92-93. The Court further held that the Plaintiffs-Intervenors had established the City's liability for intentional discrimination related to these employment practices. Dkt. 385 at 69-70.

During the liability phase, no party presented the Court with any evidence that the City's post-written examination screening steps, including the City's alleged failure to notify applicants about the post-written examination screening steps, had a disparate impact on black and/or Hispanic applicants. Nor did any party attempt to establish that a shortfall existed regarding these employment practices, which the Court could have used as a basis to award back pay or priority hiring relief for these claims. Further, no party presented the Court with evidence of whether these post-written examination steps were job related and consistent with business necessity. As a result, the Court's liability ruling was limited to the employment practices that were actually challenged, and did not include a finding of either disparate impact or disparate treatment discrimination against black and/or Hispanic applicants related to the post-written examination screening steps.

    B.   Remedial Phase

During the remedial phase of this lawsuit, the Court determined that victims of the City's discriminatory employment practices *i.e.,* the pass/fail and rank-order uses of Written Exams 7029 and 2043, would be eligible for individual, make whole relief, including back pay, priority hiring relief, and retroactive seniority. In addition, the Court held that black victims of the City's employment practices would be eligible for compensatory damages related to non-economic harm.

Based on its disparate impact and disparate treatment holdings, the Court determined that injunctive (*i.e.,* compliance and affirmative) relief related to the City's post-written examination screening procedures was warranted. Dkt. 765. However, no party requested and, thus, the Court did not order individual, make whole relief related to post-written examination screening procedures.

    C.   Claims Process for Individual Relief

Shortly after the Court's disparate impact liability decision in July 2009, the Court established the general parameters of the claims process for individual relief. Dkt. 390 at 54-57. Over the following two years, the parties engaged in extensive briefing regarding the specific

2

procedures and eligibility criteria to be applied in the claims process. *See, e.g.,* Dkts. 649, 651, 657, 814. On March 8, 2012, the Court held that the eligibility criteria, which were in large part agreed to by the parties, were appropriate and should be adopted. Dkt. 825 at 51-57. Despite numerous opportunities to do so, no party argued that test-takers who passed one of the written examinations but did not receive an eligibility list number should be eligible for individual relief.

Regarding the elibility criteria, the parties agreed, and the Court has held, that a claimant should be eligible for individual relief if: (1) he or she meets the Non-Hire or Delay Claimant definition; and (2) satisfied, at the time he or she applied for employment, certain "other lawful qualifications" that were used by the City as objective minimum qualifications for hire.[1]

The Court established these definitions of Non-hire and Delay Claimant to ensure that only actual victims, who suffered an adverse effect as a result of the specific employment practices found to be discriminatory, received relief. The "other lawful qualifications" are intended to ensure that applicants who satisfy the definition of Delay Claimant or Non-hire Claimant also met certain objective minimum qualifications that the FDNY required of all applicants at the time they applied. Because the FDNY would not have hired these applicants even absent the specific employment practices that the Court found to be discriminatory, they did not suffer any harm as a result of the City's discriminatory practices and, therefore, should not be eligible for relief. Accordingly, these criteria allow claimants' eligibility to be evaluated based on objective standards that were applied to actual applicants during the time the City hired firefighters using Written Exams 7029 an 2043.

The definition of a Non-hire Claimant is as follows[2]:

[A]ny black or Hispanic person who:

(a) failed Written Exam 7029 with a score of 25 or higher and was not later appointed as an entry-level firefighter;

(b) failed Written Exam 2043 with a score of 25 or higher and was not later appointed as an entry-level firefighter; or

(c) passed Written Exam 2043, had a list number higher than 5646 on the Exam 2043 eligible list, was not appointed as an entry-level firefighter, and was not given by the City's Department of Citywide Administration Services ("DCAS") (as indicated in the data produced by the City to the other parties on September 21, 2011 in a file entitled "Copy of Exam2043 D092011 REV.xls") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased),

---

[1] The six "other lawful qualifications" that must be evaluated are: the minimum age requirement; the maximum age requirement; the ability to communicate in English; United States citizenship; no felony convictions; and no dishonorable discharges from the military. Dkt. 825 at 53-54.

[2] This letter does not address issues related to "Delay Claimants" (*i.e.,* applicants who were ultimately hired by the City but whose hiring was delayed) because the objectors discussed by the Plaintiffs-Intervenors and the Court are individuals who were not hired by the City.

FRA (failed to report after accepting appointment), FRI (failed to report for interview), NQA (not qualified for appointment), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 2043 eligible list.

> The Court accepted this definition of Non-Hire Claimant and held:
>
> The third prong of the definition properly excludes individuals who took Exam 2043, passed it, and were then not hired for a reason unrelated to their rank on the 2043 eligible list. The implication of this definition is that, for example, an applicant who passed Exam 2043 but then did not report to take the physical exam, or who took the physical exam and failed, is not an eligible claimant . . . . *The court finds that these definitions appropriately exclude individuals who are demonstrably not victims of the discrimination in the hiring process that gave rise to the City's liability and, therefore, are not eligible for monetary compensation.*

Dkt. 825 at 52 (citation omitted) (emphasis added).

## II. Legal Argument

Under the traditional *Franks/Teamsters*[3] framework, "[t]he Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination," and then the burden shifts to the employer "to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons," *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 362 (1977). Application of this framework to the claims in this case must be consistent with the disparate impact provisions of Title VII and relevant case law, which require the identification of a particular discriminatory employment practice unless the steps in a hiring process cannot be separated for analysis.

### A. Title VII Disparate Impact Standards

A *prima facie* showing of disparate impact "requires plaintiffs to establish by a preponderance of the evidence that the employer 'uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001), *overruled in part on other grounds, Wal-Mart v. Dukes,* 131 S.Ct. 2541 (2011), (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). "To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Id.* at 160. As to the first prong, to establish a disparate impact claim, a plaintiff must identify a specific discriminatory employment practice. *See Wal-Mart,* 131 S.Ct. at 2555-56 ("[R]espondents have identified no 'specific employment practice'.... Merely showing that Wal–Mart's policy of discretion has produced an overall sex-based disparity does not suffice."); *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994 (1988) ("Especially in cases where an employer combines subjective criteria with the use of more rigid standardized rules or tests, the

---

[3] *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976), and *Int'l Bhd of Teamsters v. United States*, 431 U.S. 324 (1977).

4

plaintiff is in our view responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.").[4]

If the plaintiff establishes a Title VII disparate impact violation, in order to obtain individual relief (*e.g.,* back pay), each class member must show that "he or she was among those adversely affected *by the challenged policy or practice.* If this showing is made, the class member is entitled to individual relief unless the employer in turn can establish by a preponderance of the evidence that a legitimate non-discriminatory reason existed for the particular adverse action." *Robinson*, 267 F.3d at 162 (emphasis added and citation omitted); *Waisome v. Port Authority of New York and New Jersey*, 948 F.2d 1370, 1375 (2d Cir. 1991) ("To prove disparate impact, a plaintiff must first identify the specific employment practice he is challenging*, and then show that the practice excluded him or her,* as a member of a protected group, from a job or promotion opportunity") (emphasis added, citations omitted).[5] Application of the eligibility criteria through the claims process permits streamlining of this burden-shifting approach, consistent with the *Franks/Teamsters* framework, by rendering ineligible those claimants who were not hired by the City for non-discriminatory reasons.

B. Ineligible Claimants Were Not Victims of the Specific Discriminatory Employment Practice

Here, the discriminatory employment practices are the City's pass/fail and rank-order use of Written Exams 7029 and 2043. Thus, individuals who were screened out of the City's hiring process based on other factors are not victims of the employment practices found to be discriminatory. For example, an individual who took and passed Written Exam 7029 was not harmed by the City's pass/fail use of the test. Similarly, an individual who passed Written Exam 7029 but did not report to take the Physical Peformance Test ("PPT") – whether due to the City's failure to notify the applicant or the applicant's decision not to take the PPT – did not receive an eligibility list number and, thus, was not harmed by the City's rank-order use of Written Exam 7029. Under either scenario, the harm suffered by the individual is based on claims other than the particular employment practices on which the City's liability is based.[6] Another federal district court has

---

[4] Title VII, however, expressly provides that "if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." 42 U.S.C. § 2000e–2(k)(1)(B)(i). Here, the parties identified the specific employment practices challenged and, thus, this analysis is inapplicable.

[5] As to the prospective injunctive relief ordered by the Court regarding the recruitment and post-written examination screening steps, this relief is authorized in a disparate impact discrimination case when persistent or egregious discrimination exists. *See, e.g., Local 28 of Sheet Metal Workers Int'l Ass'n v. EEOC,* 478 U.S. 421, 475 (1986); *Guardians Ass'n of the N.Y. City Police Dep't, Inc. v. Civil Serv. Comm'n*, 630 F.2d 79, 112 (2d Cir. 1980).

[6] The post-written examination screening processes are different employment practices than the City's pass/fail and rank-order use of Written Exams 7029 and 2043. To determine whether individual relief related to post-written examination processing claims should be awarded, the parties would have needed to litigate, and have had the Court adjudicate, this claim to determine whether

5

recently adopted this approach in a Title VII case involving the discriminatory rank-order use of a written examination for entry-level firefighters. *See Lewis v. City of Chicago,* No. 98c5596 at 2, ¶ 1, (N.D. Ill. Aug. 17, 2011) (attached as Ex. 1) (excluding from eligibilty individuals who were disqualified, for example, because they failed the physical abilities test); *see also Lewis v. City of Chicago,* 130 S. Ct. 2191, 2195-96 (2010) (describing the challenged employment practice).

### C. Changing the Claimant Definition Will Dilute the Individual Relief Available to Applicants Who Were Harmed by the City's Discrimination

It is important to remember that victims of the City's specific discriminatory employment practices are eligible to be considered for a finite number of priority hiring vacancies, as well as a *pro rata* share of a fixed amount of aggregate back pay. This finite amount of individual relief was based upon the harm caused by the City's discriminatory pass/fail and rank-order uses of Written Exams 7029 and 2043. As stated above, during the liability phase, no party litigated the issue of whether any post-written examination screening process (other than the ranking of candidates) was discriminatory. If additional individuals, who were not victims of the City's pass/fail and rank-order uses of the written exam, are now permitted to share in this limited pool of individual relief, this will decrease the likelihood that a discrimination victim can be selected for priority hiring relief and will dilute his or her *pro rata* share of the back pay award.

### III. Changing the Claimant Definition Will Cause Significant Delay to the Claims Process and the Appointment of Priority Hires

Plaintiffs-Intervenors have intimated that the Court, the Special Masters, and the parties need only evaluate the handful of individuals who objected regarding the eligibility criteria. However, this is incorrect. As stated above, in order for the Special Masters to be able to recommend such individuals are eligible for relief, the eligibility criteria must be changed.[7] If the eligibility criteria are changed, then the other thousands of claimants should be notified and given an opportunity to present any claims they may have that they were not notified of, or were discriminated against during, the post-written examination screening process.

---

the City's post-exam processing steps had a disparate impact (or constituted disparate treatment) upon black or Hispanic applicants. If a difference existed between the rates at which black or Hispanic applicants, as compared to white applicants, were excluded from post-written examination processing then the shortfall based on each of these employment practices (such as the PPT and the background screening steps) would needed to have been determined. Based on that shortfall, individual relief related to the specific employment practices could have been awarded if the City had been found liable for these employment practices. But this litigation was not conducted and it is not appropriate or efficient to do so now. In particular, this litigation would essentially require the Special Masters to make liability determinations, which would be beyond the scope of their appointment. Dkt. 883.

[7] Of course, no reason exists for the Court, the Special Masters, and the parties to review the claims of these objectors if they cannot be deemed eligible for individual relief (as is currently the case).

6

If the Court were to expand the eligibility criteria so that black or Hispanic individuals who (1) took and passed Written Exams 7029 and 2043 and (2) were not disqualified based on the "other lawful qualifications," are eligible for individual relief – regardless of whether they failed to appear for the PPT or were disqualified during other post-written examination screening steps – this will significantly complicate and delay the claims process for individual relief. Likewise, as detailed below, doing so will likely prevent the priority hire claimants from joining the Fire Academy class in summer 2013, as is currently planned.

In accordance with the Court's direction that the claims process for individual relief should proceed without delay so that priority hire claimants can be hired at approximately the same time as the City begins to hire candidates from Exam 2000 (Court's March 22, 2012 docket entry), the United States provided the City with notice and claim form documents that the City sent to 7,070 people on May 3, 2011. A total of 4,955 individals returned claim forms to the United States. Consistent with the claims process timeline approved by the Court, the United States proceeded to make its initial eligibility determinations – based on the objective criteria previously established – regarding these 4,955 individuals. Dkt. 963 at 5-7. In order to meet the claims process deadlines, the United States is in the process of generating 4,955 letters to mail to claimants notifying them of, among other things, the United States' preliminary determination, the reasons for it, and their opportunity to object to this determination to the Special Masters.

If the Court changes the eligibility criteria so that individuals may be eligible if, for example, they alleged that the City discriminated against them in post-written examination screening steps, the United States respectfully submits that it should not make initial judgments about whether these individuals are eligble for relief. As the United States has previously stated in a related context, because these evaluations would involve subjective criteria and legal issues rather than the current objective standards, it would be inappropriate for the United States to play this role. Dkt. 678 at 18-22. Instead, the traditional *Franks/Teamsters* burden-shifting formula should be applied, which will likely substantially prolong the claims process for individual relief as well as the hiring of priority hire claimants.

Accordingly, if the definition of an eligible claimant is expanded as described above, at least 2,400 of the United States' preliminary eligibility determinations will need to be reevaluated. The United States has preliminarily deemed these approximately 2,400 individuals, who took Written Exam 7029 and/or 2043, ineligible because they do not meet the definition of Non-Hire Claimant, which is set forth *supra* at 3-4. This reevaluation will, in turn, require additional mailings to these thousands of individuals seeking information about how the City's post-written examination screening processes may have adversely affected them. These responses from claimants must then be received, evaluated, and shared with the parties and the Special Masters. Additional discovery related to the post-written examination process would then likely be conducted among the claimants and/or the parties. And, for the reasons stated above, the United States will not make initial eligibility determinations regarding these individuals. Thus, the number of individual hearings necessary for simply determining eligibility for relief – including priority hiring relief – will likely increase significantly, as will the delay to the claims process and any appointment date of priority hire claimants. Because the applicants who would participate in this process were not harmed by the employment practices the Court

7

found to be discriminatory, the inevitable delay and expense entailed by engaging in this evaluation cannot be justified.

**IV.** **Conclusion**

      For the reasons stated above, the United States submits that the Court should not modify the eligibility criteria for individual relief.

                                  Sincerely,

                                  /s/ Eric K. Bachman
                                  Special Litigation Counsel
                                  (202) 305-7883
                                  Civil Rights Division
                                  United States Department of Justice


                                  /s/ Elliot M. Schachner
                                  Assistant U.S. Attorney
                                  Eastern District of New York
                                  (718) 254-6053