UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                      Plaintiff,                  **MEMORANDUM & ORDER**

        -and-                                   **07-CV-2067 (NGG) (RLM)**

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members*, JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief*;

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated*; and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated*,

                     Plaintiff-Intervenors,

       -against-

THE CITY OF NEW YORK,

                     Defendant.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      This Memorandum and Order addresses objections to the court's Proposed Relief Order, made through written submissions and a four-day Fairness Hearing in accordance with the remedial procedures of Title VII and the court's previous orders. The court will assume familiarity with the background and facts of this case.[1]

---

[1]     The factual and procedural background of this case is extensive. A full recount can be found in the court's previous rulings, most recently in the Memorandum and Order issued after the court's August 2011 bench trial on the need for and scope of affirmative injunctive relief. (Mem. & Order re Inj. Relief (Dkt. 743).)

1

The objections process was held so that nonparties potentially affected by the Proposed Relief Order could voice their concerns about the proposed relief. Unfortunately, the overwhelming majority of the objectors used the process to express displeasure with the court's liability rulings, malign the court for daring to interfere with the culture of the FDNY, and make the utterly baseless suggestion that those individuals who receive priority hiring relief will be unqualified to be firefighters. Most disturbingly, several FDNY supervisors brazenly informed the court that they will not welcome priority hires into their ranks, and will lack respect for priority hires because they do not believe they deserve to be firefighters. These comments reinforce the court's concern that some personnel within the FDNY will resist or refuse to comply with the specific terms and spirit of the relief orders. The court will not hesitate to exercise its equitable authority to enforce all of its orders.

The substantive objections addressing issues relevant to the proposed relief were taken seriously by the court and are discussed herein. The court has considered all of the objections and ultimately concludes that none of them merit altering the relief set forth in the Proposed Relief Order. Accordingly, contemporaneously with this Memorandum and Order, the court will enter a separate Final Relief Order providing for back pay, priority hiring, retroactive seniority, and limited forms of compensatory damages for noneconomic harm to eligible individuals who can demonstrate that they were victims of the City's discrimination.

**I.    BACKGROUND**

After issuing rulings that the City was liable for disparate impact and disparate treatment under Title VII[2] (see Dkts. 294, 385), the court proceeded to the remedial phase of the case and

---

[2] The City has appealed only the court's decision regarding disparate treatment liability, and the appeal is currently pending in the United States Court of Appeals for the Second Circuit.

issued several rulings defining the scope of individual relief that will be available and the eligibility criteria for an award of relief (see Dkts. 390, 825, 861, 888). Under this framework, the court will award individual relief to individuals who the court determines, through the claims process for individual relief, were victims of the City's discriminatory practices.

The court issued a Proposed Relief Order on July 10, 2012. (Proposed Relief Order (Dkt. 921).) The Proposed Relief Order provided for the submission of written objections and for a Fairness Hearing pursuant to Section 703(n) of Title VII, 42 U.S.C. § 2000e-2(n). The parties agreed upon notice documents and sent them to all potential claimants and interested third parties. (See Mem. & Order re Proposed Notice Docs. (Dkt. 907).) Objectors submitted 2,625 timely written objections. (See United States Mem. in Supp. of Final Relief Order (Dkt. 978).) The court held a four-day Fairness Hearing to allow objectors to address the court in person. (Dkts. 1000-03.) In addition, the court entertained submissions from the parties on their responses and arguments relating to the objections. (See United States Mem. in Supp. of Final Relief Order; Pl.-Int. Mem. in Supp. of Final Relief Order (Dkt. 979); Def. Mem. in Resp. to Final Relief Order (Dkt. 993).) The court ordered further briefing on two issues of concern. (See Oct. 5, 2012, Supp. Briefing Order; Oct. 18, 2012, Supp. Briefing Order.)

II. **ADEQUACY OF THE FAIRNESS PROCEEDINGS**

Generally, a person cannot be deprived of his or her rights by a proceeding to which he or she is not a party. Briscoe v. City of New Haven, 654 F.3d 200, 204 (2d Cir. 2011) (citing Martin v. Wilks, 490 U.S. 755, 759 (1989)). In order to ensure the finality of Title VII dispositions, however, Congress enacted 42 U.S.C. § 2000e-2(n) to "create[ ] a way by which litigants to a Title VII suit can bind nonparties who might otherwise stay on the sidelines [of the lawsuit]." Id. (citing 42 U.S.C. § 2000e-2(n)). Under this statutory provision, an employment

3

practice ordered by a court to remedy a Title VII violation that "implements and is within the scope of a Title VII litigated or consent judgment or order may not be challenged by a person who had actual notice of the proposed judgment or order and a reasonable opportunity to present objections to such judgment or order by a future date certain." Id. at 205 (citations omitted). This framework "protect[s] valid decrees from subsequent attack by individuals who were fully apprised of their interest in the litigation and given an opportunity to participate, but who declined that opportunity." Id. (quoting 137 Cong. Rec. 29,039 (1991)). The statute's requirements may be satisfied through a formal notice and objections process. Id.

In this case, individuals affected by the Proposed Relief Order received notice via first class U.S. mail and/or email and had approximately one month to submit a completed objection form.[3] (Order re Notice (Dkt. 917) at 2-3.) Every individual who filed a written objection and indicated a desire to speak at the Fairness Hearing received an additional notice of the hearing. (See Sept. 20, 2012, Minute Entry.)

---

[3] The court ordered that notice be sent via first-class U.S. mail to: (1) each black and Hispanic applicant who took Written Exam 7029 and/or Written Exam 2043; (2) each applicant who took Written Exam 2000 and/or Written Exam 2500 but who had not provided the City with an email address; (3) the Uniformed Firefighters Association and the Uniformed Fire Officers Association; and (4) the United Women Firefighters. The court ordered that notice be sent via email to each applicant who took Written Exam 2000 and/or Written Exam 2500 and provided the City with an email address. In addition, the court ordered that notice be distributed to current firefighters of the FDNY through a Department Order to be read at every roll call for four consecutive days. (See Order re Notice at 2-3; Consent Mot. to Amend (Dkt. 927).)

4

After issuing the Proposed Relief Order, the court issued several Orders regarding individual relief.[4] These Orders were thus not addressed by the nonparties' objections. However, these Orders were directed only to specific aspects of the claims process and the types of damages to which certain individual claimants may be entitled. They do not alter the impact of the Proposed Relief Order on nonparties to this suit but merely further define interactions between parties to this suit. Thus, the Orders, and the subsequent changes to the Proposed Relief Order to incorporate the Orders into the Final Relief Order, did not need to be subject to objections by nonparties. The Final Relief Order will be different from the Proposed Relief Order only in that it incorporates the court's subsequent Orders.

The process undertaken by the parties and the court is sufficient to satisfy 42 U.S.C. § 2000e-2(n)'s requirements for notice and a reasonable opportunity to object. Therefore, the Final Relief Order may not be challenged by any nonparty who received the notice discussed above. See 42 U.S.C. § 2000e-2(n).

## III. STANDARD OF REVIEW

The court must now determine the standard for reviewing the objections of nonparties affected by the relief who participated in the objections process. The United States suggests that because Title VII relief typically involves a consent decree or settlement agreement, current precedent provides little guidance for how to review objections to court-ordered relief. (United

---

[4] These Orders are: (1) a Memorandum and Order concluding that the City shall have, within certain parameters, the opportunity to present mitigating evidence of a claimant's damages (Mem. & Order re Mitigating Ev. (Dkt. 952)); (2) an Order adopting in part the Report and Recommendation of the Special Masters regarding the claims process (Sept. 7, 2012, Order); (3) a Memorandum and Order determining that black victims of the City's discriminatory entry-level firefighter exams may be entitled to compensatory damages for noneconomic harms only if they can establish, on an individual basis, one or more specific forms of compensatory damages previously recognized at the common law (Mem. & Order re Noneconomic Damages (Dkt. 974)); and (4) a Memorandum and Order approving the City's use of Exam 2000 to create a list of eligible candidates for the position of entry-level firefighter (Mem. & Order Approving Exam 2000 (Dkt. 986)).

States Mem. in Supp. of Final Relief Order at 8-9.) Joined by Plaintiff-Intervenors, the United States suggests that the court must ask only whether the challenged relief is authorized by law. (Id.) The City does not address the issue. (See Def. Mem. in Resp. to Final Relief Order.)

Having undertaken its own review, the court is also unaware of any precedent that specifically addressed the standard a court should use to review objections to proposed judicially-ordered relief. In reviewing objections to a consent decree or settlement agreement, courts have analyzed whether the proposed settlements are fair, reasonable, and legal, and whether any of the objections has sufficient merit to overcome the presumption of validity accorded to the relief agreement. See, e.g., United States v. N.Y. City Bd. of Educ., 85 F. Supp. 2d 130, 157 (E.D.N.Y. 2000) (vacated and remanded on other grounds by Brennan v. N.Y. City Bd. of Educ., 260 F.3d 123 (2d Cir. 2001)); United States v. New Jersey, Nos. 88-CV-5087 (WGB), 88-CV-4080 (MTB), 87-CV-2331 (HAA), 1995 WL 1943013, at *9 (D.N.J. Mar. 13, 1995). In a Title VII case decided before enactment of § 2000e-2(n), the Second Circuit approved a district court's analysis of a settlement agreement where the district court reviewed objections and ultimately asked whether the proposed remedies were (1) "substantially related to the objective of eliminating the alleged instance of discrimination," and (2) did not "unnecessarily trammel the interests of affected third parties." Kirkland v. N. Y. State Dep't of Corr. Servs., 711 F.2d 1117, 1132 (2d Cir. 1983).

Although this case does not involve a settlement agreement, the court finds it appropriate to apply the Kirkland standard because it directly addresses the purpose of the fairness proceedings. The court's prior orders have already established that the first part of this standard has been satisfied. Title VII provides the court with broad powers to remedy past discrimination. Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 770 (1976). After a finding of liability for

employment discrimination under Title VII, there is a presumption that back pay, priority hiring, and retroactive seniority are the proper forms of relief to remedy past employment discrimination. Wrenn v. Sec'y, Dep't of Veterans Affairs, 918 F.2d 1073, 1076 (2d Cir. 1990). Accordingly, because there has been a finding of liability, the Proposed Relief Order enacts the presumptively appropriate relief to remedy the harms in this case.

Therefore, the court must review the objections to determine whether the proposed relief unnecessarily trammels on the interests or rights of affected nonparties. As discussed below, the court concludes that under this standard none of the objections merit any change to the Proposed Relief Order.

IV. **APPLICATION**

The objections fall into several categories. The United States submitted a memorandum of law in support of the Final Relief Order, summarizing and addressing the various issues raised in the written objections.[5] (United States Mem. in Supp. of Final Relief Order (Dkt. 978).) Plaintiff-Intervenors submitted a memorandum of law joining in the United States' submission and addressing objections to the grant of compensatory damages for certain noneconomic harms and the proposed eligibility criteria for relief. (Pl.-Int. Mem. in Supp. of Final Relief Order.) The City filed a response reasserting objections raised in its opposition to summary judgment with regard to damages and opposing arguments raised in Plaintiff-Intervenors' submission. (Def. Mem. in Resp. to Final Relief Order (Dkt. 992).)

The court considered all of the written objections, the Fairness Hearing testimony, and the parties' submissions, and ordered further briefing on two issues: (1) the use of retroactive

---

[5] The United States' submission in support of the Final Relief Order provides a thorough breakdown of the various categories of objections raised in the written submissions and indices to the objections arranged by topic, number, and last name of the objector. (See United States Mem. in Supp. of Final Relief Order (Dkt. 978), Exs. 1-29.)

seniority in the promotions process (Oct. 5, 2012, Supp. Briefing Order), and (2) the objections of individuals who claim that they are excluded from relief under the eligibility criteria but should be considered for relief because of their unique circumstances (Oct. 18, 2012, Supp. Briefing Order). Ultimately, the court concludes that none of the objections warrant any change to the Final Relief Order.

### A. General Objections to the Court's Rulings

Most of the objections raise arguments that are general in nature and can be categorized as follows: (1) the court's liability rulings are wrong; (2) the proposed relief is unlawful; (3) firefighters have difficult jobs and make tremendous sacrifices, and thus the court should not interfere with their traditional hiring and promotions practices.

Although the notices to potential objectors explained the limited purposes of the objections process and the United States read a statement to the same effect at the beginning of each day of the Fairness Hearing, many of the objectors merely voiced disagreement with the court's prior rulings. The court has already ruled on the City's liability for disparate impact, disparate treatment, and on the necessity for relief. (See Dkts. 294, 385 (regarding liability); Dkts. 390, 743, 825, 861, 888 (regarding the need for, and parameters of, individual relief).) Because these issues were not the subject of the objections period, objections relating to these issues need not be addressed.

Numerous objections asserted that the awards of back pay, priority hiring, and retroactive seniority are unlawful. These objectors argued that granting relief based on race constitutes discrimination and thus violates Title VII, the Constitution of the United States, and various other laws. It is the purpose of Title VII, however, to make victims whole for injuries suffered on account of unlawful employment discrimination. Ablemarle Paper Co. v. Moody, 422 U.S.

8

405, 418 (1975). Accordingly, this court has "broad authority under Title VII to fashion the most complete relief possible." Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC, 478 U.S. 421, 465 (1986). It has "not merely the power but the duty" to "bar like discrimination in the future." Ablemarle Paper Co., 422 U.S. at 418 (quoting Louisiana v. United States, 380 U.S. 145, 154 (1965)). To remedy violations of Title VII, there is a presumption that back pay, retroactive seniority, and priority hiring are the proper relief to make the victims whole. Wrenn, 918 F.2d at 1076. Thus, the Final Relief Order is not only authorized by Title VII, but is necessary to fulfill the court's duty to remedy the City's proven past wrongs.

In addition, the Proposed Relief Order does not draw distinctions on the basis of race or institute quotas. It draws distinctions based on an individual's status as a victim of the City's discrimination. Such distinctions are lawful under well-established case law. See Teamsters, 431 U.S. at 375 n.61 (explaining that allowing victims of past discrimination to participate in a remedy is not the type of preference prohibited by Title VII); Acha v. Beame, 531 F.2d 648, 656 (2d Cir. 1976) (holding that relief granted to individuals who have been discriminated against is a remedial device within the court's power, not an illegal preference).

The overwhelming majority of the objections touched on the difficulty of being a firefighter, and, in particular, the devotion and sacrifices of those in the FDNY. These objectors expressed outrage that the court would interfere with the longstanding practices of such an esteemed institution. An institution's desire to maintain its traditions, however, is not an acceptable defense to claims of employment discrimination under Title VII—in fact, it is precisely the problem Title VII was enacted to address.

The court is mindful of the important role firefighters play in keeping New York City safe and the bravery they display in doing so. However, the implementation of relief in this case

is necessary to remedy the City's past discrimination—it is not a punishment to firefighters, nor is it a statement about the value of firefighters in society. The court would shirk its obligations under Title VII if it were to refuse to remedy past discrimination simply on the basis that the discrimination occurred within an entity that society holds in high esteem. Therefore, such objections do not merit any change to the Proposed Relief Order.

### B. Objections to specific forms of relief

#### 1. Objections to Back Pay

Some objections argued that the award of back pay is unfair because it will create a windfall that the individual claimants do not deserve, or that the money should be used in other ways within the FDNY. None of these objections, however, indicate that ordering back pay will infringe on the rights of third parties, or will have any unusual adverse impact overcoming the presumption that this relief must be granted. See Franks, 424 U.S. at 769 n.41 (explaining that presumptive relief in Title VII cases must only be denied "on the basis of unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases.") (emphasis added).

#### 2. Objections to Priority Hiring

Objectors raised two categories of objections to the priority hiring provisions in the Proposed Relief Order. Some objections argued that priority hiring is unfair to those who want to be firefighters and will not be hired or will be delayed in hiring because the spots were filled by priority hires. Other objections argued that priority hiring will result in unqualified individuals joining the FDNY.

As to the first category, it is true that nonvictim individuals who took Exam 2000 and are otherwise eligible for hire as a firefighter might have their potential hiring impacted by the

priority hiring relief. However, under New York law "a person on an eligibility list does not possess 'any mandated right to appointment or any other legally protectable interest.'" Kirkland, 711 F.2d at 1134 (quoting Cassidy v. Mun. Civil Serv. Comm'n, 37 N.Y.2d 526, 529 (1975)). Therefore, nonvictim prospective hires cannot claim that the priority hiring relief unnecessarily infringes on any legally-protected right.

Many objectors argued that priority hiring will result in inexperienced individuals being hired as firefighters. These objections are based on the misconception that the court will be ordering that firefighter jobs be simply handed out to any black or Hispanic person who scored above a 25 on one of the invalid written exams. To the contrary, individuals who claim eligibility to receive priority hiring relief must fulfill all of the requirements to be a firefighter, including taking and passing Exam 2000, taking and passing the Candidate Physical Ability Test (CPAT), and meeting other lawful qualifications.[6] (See R&R re Claims Process (Dkt. 963) at 10 (adopted in relevant part by the Sept. 7, 2012, Order) (detailing the hiring process of individuals seeking priority hiring relief).)

Thus, none of the objections relating to priority hiring demonstrates that it unnecessarily trammels on the rights of third parties or is an unreasonable means to achieve relief for the victims.

### 3. Objections to Retroactive Seniority

The overwhelming majority of the objections came from current firefighters. The firefighters argued that the award of retroactive seniority is unfair and that it raises safety concerns. Neither of these arguments merit any change to the award of retroactive seniority.

---

[6] The requirements a candidate must meet are: minimum age, maximum age, ability to communicate in English, United States citizenship, no felony convictions, and no dishonorable discharges from the military. (Order (Dkt. 825) at 53-54.)

11

Many current firefighters objected that retroactive seniority is unfair to them because it lowers their relative position in the FDNY. But such an effect is present in nearly every award of retroactive seniority, and does not justify denying relief to the victims of past discrimination. See United States v. Bethlehem Steel Corp., 446 F.2d 652, 663 (2d Cir. 1971) (dismissing the argument that the morale of employees who did not suffer discrimination would suffer if seniority awards were issued to remedy employment discrimination). Indeed, "[i]f relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed." Id. To the extent that current firefighters who have not been the victims of discrimination feel that the relief in this case lowers their hopes for advancement, "their hopes arise from an illegal system." Id.; see also Kirkland, 711 F.2d at 1126 ("Non-minorities do not have a legally protected interest in the mere expectation of appointments which could only be made pursuant to presumptively discriminatory employment practices.")

Apart from this notion of unfairness, numerous objectors voiced concern that the use of retroactive seniority in the promotions process would result in inexperienced or unqualified individuals being promoted to leadership positions. (See, e.g., Oct. 3, 2012, Tr. at 30:13-22; Oct. 4, 2012, Tr. at 23:2-24:6, 61:2-62:1; Written Objections (United States Mem. in Supp. of Final Relief Order, Ex. 6 at USARP_OBJ_1152-57, Ex. 8 at USARP_OBJ_1720-22, Ex. 11 at USARP_OBJ_002645-48).) In light of these objections, the court ordered further briefing on the use of retroactive seniority in the computation of a candidate's position on a promotional list. (Oct. 5, 2012, Order.)

The parties' submissions explained that after taking a promotional exam, a candidate's overall score for promotional consideration is comprised equally of: (1) his or her score on the

12

written promotional exam, and (2) the candidate's seniority and job performance. (See United States Oct. 10, 2012, Ltr. (Dkt. 997); Def. Oct. 10, 2012, Ltr. (Dkt. 998).) For the purposes of the latter calculation, an award of retroactive seniority could improve a candidate's position on the promotional list by adding to the candidate's seniority score. (Id.) The United States points out that this would result in at most a 4.5 percent increase in a candidate's overall score. (United States Oct. 10, 2012, Ltr. (Dkt. 997) at 2). The court assumes that this percentage could make a significant difference on a candidate's position on the seniority list. Nevertheless, for the following reasons, the court concludes that this does not merit any reconsideration of the award of retroactive seniority.

Retroactive seniority, along with job offers and back pay, is one of the basic components of "make whole" relief in hiring discrimination cases. See Wrenn v. Sec'y, Dep't of Veterans Affairs, 918 F.2d at 1076. That is why there is a presumption in favor of awarding retroactive seniority to remedy violations of Title VII. Franks, 424 U.S. at 767-69 n.41. Such relief "may not be denied on the abstract basis of adverse impact upon interests of other employees" but may be denied only "on the basis of unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases." Id. at 769 n.41 (emphasis added).

That is not the case here for two reasons. First, awards of retroactive seniority will give an advantage only to candidates who meet all other qualifications for the promotions they seek and pass the written promotional exam. Concerns that retroactive seniority would result in the promotion of unqualified individuals are largely based on misinformation. Retroactive seniority cannot be used to satisfy time-in-grade requirements that a firefighter must satisfy before sitting for a promotional exam. (Mem. & Order re Retro. Seniority (Dkt. 861) at 6-7.) This means that

13

a candidate must work as a firefighter for a requisite number of years, depending on the position, and meet all other requirements in order to be eligible for the promotion he or she seeks.

Second, consideration of retroactive seniority is already a part of the City's promotions process. According to the New York City Code, any candidate appointed as a firefighter between 1998 and 2006 with prior service as a member of the New York City Police Department, Housing Authority Police, or Transit Police had his or her prior service counted for purposes of determining promotion in the FDNY. (Pl.-Int. Ltr. re Retro. Seniority (Dkt. 1005)); see also Def. Ltr. re Retro. Seniority (Dkt. 998), Ex. 1 (Notice of Examination for several promotional exams).) The Notice of Examination for each promotional exam lists in its terms that prior police service will be considered as part of seniority, and also advises that "[a]ny employee who, pursuant to court order or otherwise, has been accorded retroactive seniority by the Department of Citywide Administrative Services in the title of Firefighter or other eligible title shall be given appropriate credit." (Def. Oct. 10, 2012, Ltr., Ex. 1 at 3.) Thus, the retroactive seniority granted by the Proposed Relief Order is consistent with the City's procedures already in place, and places delayed-hire claimants in a similar position to firefighters appointed before 2006 who had prior service counted in the promotions process. The court sees no reason to treat these groups differently, given that the beneficiaries of the retroactive seniority under the City's procedures had no more experience as firefighters than will the recipients of retroactive seniority under this Final Relief Order.

The aforementioned reasons demonstrate that the award of retroactive seniority will have no unusual adverse impact on the FDNY. Therefore, objections arguing against the award do not merit any change to the Proposed Relief Order.

### C. Objections by Individuals Presenting Unique Factual Circumstances

Several black and Hispanic objectors who took Written Exams 2043 or 7029 and were not hired by the FDNY raised concerns about the application of the eligibility criteria to their individual circumstances. (See Pl.-Int. Mem. in Supp. of Final Relief Order.) These objectors claimed, for example, that they had not appeared for physical testing or some other step in the hiring process because they had not received notice from the City of their opportunity to advance in the hiring process. (Id. at 3-4 (citing and summarizing written objections).) Other objectors claimed that they had been subject to intentional discrimination by the City during the post-examination screening process. (Id.) Plaintiff-Intervenors argued that "[t]hese individual eligibility issues should be the subject of consideration and recommendations by the claims process Special Masters." (Id. at 4.)

The United States and the City both briefly addressed these objections in their submissions, opposing any change to the eligibility criteria. (United States Mem. in Supp. of Final Relief Order at 10-13; Def. Mem. Resp. to Final Relief Order at 1.) Because these objectors raised the concern that they were victims of the City's discrimination but would not be able to seek relief and the parties had only briefly addressed this issue, the court ordered further briefing. (Oct. 18, 2012, Order.)

In their supplemental submission, both the United States and the City argued that no change should be made to eligibility criteria and that claimants alleging that the City intentionally discriminated against them in the post-exam hiring process should not be eligible for relief. (See U.S. Oct. 24, 2012, Ltr. (Dkt. 1009); Def. Oct. 24, 2012, Ltr. (Dkt. 1008).) Plaintiff-Intervenors clarified that they do not believe eligibility criteria should be amended, and indicated that they merely sought to "ensure that claimants who object to the application of the

15

eligibility criteria to them will have a forum in which to raise such objections." (Pl.-Int. Oct. 24, 2012, Ltr. (Dkt. 1010) at 1.) They pointed out that the claims process that has been already proposed and adopted provides that those claimants preliminarily deemed ineligible may object to the determination of the Special Masters and, if necessary, seek review from the court. Id.

The court agrees that the claims process already provides any potential claimant with the opportunity to object to the eligibility determinations of the Special Masters and to have his or her individual circumstances considered. Individuals in the claims process may argue that they should not be excluded from eligibility because, based on the facts as they existed at the time of the designation, they should not have been given a particular designation code. Special Masters may consider these claims, and the court will review the Special Master determinations on these individuals.

There is a difference, however, between contesting the application of the eligibility criteria (e.g., that an individual was mistakenly or improperly given a designation code excluding him or her from eligibility) in an individual case, and alleging that the City intentionally discriminated against the individual in the post-exam process. As the United States and the City point out, individuals claiming that the City discriminated against them in the post-examination screenings would be claiming discrimination for which there has been no finding of liability. (See U.S. Oct. 24, 2012, Ltr.; Def. Oct. 24, 2012, Ltr. (citing the court's previous orders on liability and the scope of relief).) Accordingly, the court concludes that no change need be made to eligibility criteria, and clarifies that individuals may not claim eligibility for relief by seeking to demonstrate that the City intentionally discriminated against them in the post-exam screenings.

It is important to note that the parties to this suit challenged only the City's use of Written Exams 7029 and 2043, and thus nonparties to the suit who wish to challenge the City's other past hiring procedures are not precluded under §2000e-2(n) from bringing such a lawsuit. (See Part II, supra.)

### D. Testimony of FDNY Supervisors

One recurring theme in the Fairness Hearing testimony caused the court great concern. Several FDNY supervisors—battalion chiefs, captains, lieutenants, and fire academy instructors—issued ominous forecasts about the implementation of the court's orders and the treatment that will be given to the priority hires. For example, according to Battalion Chief Daniel Murray,

> The effectiveness of this Department is based on esprit de corps teamwork, trust, and honor. To single out certain members based on race and then to hire, compensate and reward them financially based on their skin color is not just unfair and immoral but will have a disastrous effect on these aforementioned qualities within the membership.

Oct. 3, 2012, Tr. at 51:16-52:4. Several supervisors phrased their comments less diplomatically: "If these plaintiffs were to be awarded with retroactive seniority, they would get zero respect," (Captain Kevin Albert, Oct. 1, 2012, Tr. at 16:3-17:23); "[T]hey do not belong, and more importantly, do not deserve what they have not earned," (Lieutenant Clifford Freer, Oct. 2, 2012 Tr. at 30:23-31:23 (referring to anyone who tries to enter the firefighter culture with the aid of the relief provided in this lawsuit)); "In my opinion, anyone who failed test 7029 and 2043 is a moron and their becoming a New York City firefighter by judicial decree is a joke," (Lieutenant David Pace, Oct. 3, 2012, Tr. at 54:21-55:25). Indeed, although many objectors repeatedly referred to the integrity and teamwork within the ranks of the FDNY, none of them testified that the incumbent firefighters will ultimately put aside their personal feelings and welcome the new

17

hires into the FDNY ranks. Comments such as those listed above only reinforce the court's concerns about the FDNY's willingness to comply with its orders.

As discussed above, this court has broad authority to fashion the most complete relief possible, and has the duty to bar like discrimination in the future. Ablemarle Paper Co., 422 U.S. at 418; Local 28, 478 U.S. at 465. The City is directed to follow the procedures set forth in the Final Relief Order, in accordance with the court's prior orders and under the supervision of the Court Monitor. Any intentional failure to adhere to the court's instructions with regard to any step of the hiring process may result in contempt proceedings and sanctions to the extent authorized by law. See Local 28, 478 U.S. at 443-44. This is especially true for those in management and leadership positions within the FDNY.[7]

Hopefully, having now been presented with the tools to end discrimination in their ranks, the civil servants of the FDNY will rise to the task. The court acknowledges that the recent approval of Exam 2000 was the result of a successful collaboration between testing design specialists, the Plaintiffs, Special Master Mary Jo White, and the City, and is hopeful that this recent success is a bellwether for the implementation of the remaining relief. The court expects that just as the firefighters of the FDNY honor New York City with their sacrifices and

---

7   Every firefighter in the FDNY ranks is required to take the following oath:

> I . . . having been appointed Firefighter in the Fire Department of the City of New York, do solemnly swear that I will support the Constitution of the United States, and the Constitution of the State of New York, and that I will faithfully discharge the duties of a member of a Fire Department of the City of New York, according to the Laws, Regulations and Orders governing the Department, and will obey the orders and directions of my superiors, to the best of my ability.

Oath of Office, available at http://www.nyc.gov/html/doi/downloads/pdf/fire_exhibits2-25-05.pdf (last visited October 26, 2012). Title VII was enacted to implement the Fourteenth Amendment to the United States Constitution. Davis v. Bolger, 496 F. Supp. 559, 564 n.19 (D.D.C. 1980) ("Title VII was enacted largely to effectuate the guarantees of equal protection provided by the 5th and 14th Amendments [to the United States constitution].") The court expects that all firefighters will adhere to their oath and recognize implementing the relief in this case as part of their sworn obligations.

18

dedication, they will honor New York City and its over eight million residents with their willingness to follow the law.

## V. CONCLUSION

The court has considered all of the objections and submissions from the parties and determined that none merits any change to the Proposed Relief Order. Accordingly, the Proposed Relief Order is amended to incorporate the court's subsequent rulings and shall be entered as the Final Relief Order to remedy the City's past discrimination.

SO ORDERED.

Dated: Brooklyn, New York
October 26, 2012

/s/
NICHOLAS G. GARAUFIS
United States District Judge