UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                      Plaintiff,                      **FINAL RELIEF ORDER**

           -and-                                   07-CV-2067 (NGG) (RLM)

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members*, JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief*;

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated*; and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated*,

                      Plaintiff-Intervenors,

           -against-

THE CITY OF NEW YORK,

                      Defendant.

------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      In 2007, the United States brought suit against the City of New York ("City"), alleging that certain aspects of the City's policies for selecting entry-level firefighters for the New York City Fire Department ("FDNY") violated Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The United States alleged that the City's use of Written Exams 7029 and 2043 as pass-fail screening and rank-ordering devices had a disparate impact on black and Hispanic candidates for entry-level firefighter. The Vulcan Society and several

1

individuals ("Plaintiff-Intervenors") intervened in the lawsuit as Plaintiffs, alleging similar claims of disparate impact and also alleging disparate treatment (raising both theories of liability under federal, state, and local law) on behalf of a class of black entry-level firefighter candidates.

In July 2009, the court granted summary judgment in favor of the United States and Plaintiff-Intervenors and found that the City's pass-fail and rank-order uses of Written Exams 7029 and 2043 had an unlawful disparate impact under Title VII.  (Dkt. 294.)  In addition, in January 2010, the court granted the Plaintiff-Intervenors' motion for summary judgment regarding disparate treatment liability,[1] holding that the City's use of Written Exams 7029 and 2043 constituted intentional discrimination in violation of Title VII, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as disparate impact and disparate treatment liability under state and local laws.  (Dkt. 385.)

To remedy the City's discrimination, the court has determined that victims of the City's discrimination who timely submit claim forms and are determined to be eligible may be awarded individual relief.  The court has also issued several rulings defining the scope of individual relief that will be available and the eligibility criteria for an award of relief.  Under this Final Relief Order, the court will award individual relief only to individuals who the court determines, through the claims process for individual relief, were victims of the City's discriminatory practices.  Only black and Hispanic applicants who took Written Exams 7029 or 2043 will be eligible to receive individual relief.  Individuals who took Written Exam 6019 (given primarily in 2007) and/or Written Exam 2000 (given in 2012), but did not take Written Exam 7029 or 2043, are *not* eligible for relief in this case.

---

[1] The City has appealed the court's decision regarding disparate treatment liability, and the appeal is currently pending in the United States Court of Appeals for the Second Circuit.

2

This Order sets forth the applicable definitions, individual eligibility criteria, types of relief that may be awarded, and general framework of the claims process through which individuals may seek relief.  This Order incorporates all previous orders of the court determining the proper relief in this case, and the parameters for such relief.  As discussed in the court's Memorandum and Order issued contemporaneously with this Final Relief Order, all third parties impacted by the relief issued in this Order have been given the chance to object to the Proposed Relief Order in written form or at a Fairness Hearing.  (See Mem. & Order Addressing Objections (Dkt. 1011).)  This Final Relief Order varies from the Proposed Relief Order only in that it incorporates several orders of the court issued subsequent to the Proposed Relief Order.

The court hereby ORDERS:

## I. DEFINITIONS

1. The "Parties" are the United States, by its counsel the United States Department of Justice; the City of New York, by its counsel the Corporation Counsel of the City of New York; and the Plaintiff-Intervenors, which include the Nonhire Subclass, by its counsel Levy Ratner, P.C., the Delayed Hire Subclass, by their counsel the Center for Constitutional Rights, and the Injunctive Relief Subclass, by its counsel Levy Ratner, P.C., the Center for Constitutional Rights, and Scott + Scott LLP.

2. "Claimant" refers to a Delayed-Hire Claimant or Nonhire Claimant, as defined below in Section II.

3. "Entry-level firefighter" refers to a person in the entry-level uniformed position in the FDNY, regardless of whether the person may be called a "recruit," "trainee," "proby," or other title before completing academy training and/or a probationary period.

4. "Individual relief" refers to an award of back pay, including fringe benefits and other benefits, prejudgment interest, an offer of priority hire and/or retroactive seniority, and compensatory damages for certain noneconomic harm (if applicable), which a claimant may receive either separately or in combination.

5. "Median hire date" or "presumptive hire date" means:

    (a)    February 2, 2003, for a Claimant who took Written Exam 7029;

    (b)    June 11, 2006, for a Claimant who took Written Exam 2043; or

    (c)    February 2, 2003, for individuals who qualify as Claimants with respect to both Written Exams 7029 and Exam 2043.

6. "Special Masters" refers to Special Masters Steven M. Cohen, Hector Gonzalez, Mitra Hormozi, and Breon S. Peace, who were appointed by the court on May 22, 2012, to oversee the claims process for individual relief. (See Mem. & Order Appointing Special Masters (Dkt. 883).)

## II.    ELIGIBILITY CRITERIA FOR INDIVIDUAL RELIEF

The court has adopted the following eligibility criteria for an applicant who was not hired as a result of the City's discrimination ("Nonhire Claimant") and an applicant whose hiring was delayed by the City's discrimination ("Delayed-Hire Claimant").

### A.    Nonhire Claimant

Any black or Hispanic person who:

    (a)    failed Written Exam 7029 with a score of 25 or higher and was not later appointed as an entry-level firefighter;

    (b)    failed Written Exam 2043 with a score of 25 or higher and was not later appointed as an entry-level firefighter;

4

(c) passed Written Exam 2043, had a list number higher than 5646 on the Exam 2043 eligible list, was not appointed as an entry-level firefighter, and was not given by the City's Department of Citywide Administration Services ("DCAS") (as indicated in the data produced by the City to the other parties on September 21, 2011 in a file entitled "Copy of EXAM2043 D092011 REV.xls") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased), FRA (failed to report after accepting appointment), FRI (failed to report for interview), NQA (not qualified for appointment), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 2043 eligible list. (See Order (Dkt. 825) at 51-52, as modified by the court's minute Order dated March 22, 2012.)

Part "c" of this definition encompasses victims of the City's discrimination who passed Written Exam 2043, but whose rank on the eligible list had the same practical effect as failing the Written Exam by preventing their hiring as an entry-level firefighter. To this end, Part "c" properly excludes individuals who passed Written Exam 2043 but were not hired for a reason unrelated to their rank on the Exam 2043 eligible list. This definition appropriately excludes individuals who are demonstrably not victims of the discrimination in the hiring process that gave rise to the City's liability and, therefore, are not eligible for individual relief. As discussed in the Memorandum a Order addressing third-party objections to the Proposed Relief Order, the Special Masters may consider whether an individual's unique circumstances warrant an equitable exception to the eligibility criteria, but may not consider allegations that the City intentionally discriminated in its post-exam procedures. (Mem. & Order Addressing Objections (Dkt. 1011) at 15-17.)

**B.     Delayed-Hire Claimant**

Any black or Hispanic person who:

(a)     passed Written Exam 7029, was given a list number on the Exam 7029 eligible list and was appointed as an entry-level firefighter after February 4, 2001, (the date of the first Exam 7029 academy class) and was not given by DCAS (as indicated in the data produced by the City to the other parties in November 2007 on a disk labeled "Exam 7029 Corrected Applicant Data") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased), FRA (failed to report after accepting appointment), FRI (failed to report for interview), NQA (not qualified for appointment), OVA (overage), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 7029 eligible list;

(b)     passed Written Exam 2043, was given a list number on the Exam 2043 eligible list and was appointed as an entry-level firefighter after May 25, 2004, (date of the first Exam 2043 academy class) and was not given by DCAS (as indicated in the data produced by the City to the other parties on September 21, 2011, in a file entitled "Copy of EXAM2043 D092011 REV.xls") a disposition code of CNS (considered not selected), DEA (declined), DCE (deceased), FRA (failed to report after accepting appointment), FRI (failed to report for interview), NQA (not qualified for appointment), OVA (overage), UNA (underage at time of appointment), or UNF (underage at time of filing) the last time the person was certified from the Exam 2043 eligible list;

(c)     failed Written Exam 7029 and was appointed as an entry-level firefighter after February 4, 2001, from an eligible list other than the Exam 7029 eligible list; or

6

(d)     failed Written Exam 2043 and was appointed as an entry-level firefighter after May 25, 2004, from an eligible list other than the Exam 2043 eligible list. (See Order re Compens. Relief (Dkt. 825) at 51-52, as modified by March 22, 2012, Order.)

### C.     Other Lawful Qualifications

In addition to meeting the definition of a Nonhire Claimant or a Delayed-Hire Claimant, in order to be eligible for individual relief, a black or Hispanic individual must also satisfy "other lawful qualifications" that were mandatory, minimum qualifications at the time the Claimants applied for a position of entry-level firefighter. These "other lawful qualifications" are as follows:

> An applicant must meet the following minimum qualifications required at the time the applicant applied to be an entry-level firefighter as stated in the relevant Notices of Examination:
>
> (a)     Was not younger than 17 ½ years of age by the end of the application period for the relevant examination, which was October 16, 1998, for Exam 7029 and October 31, 2002, for Exam 2043;
>
> (b)     Was not older than 29 by the beginning of the application period for the relevant examination, which was September 2, 1998, for Exam 7029 and June 28, 2002, for Exam 2043 after a deduction of time, not to exceed six years, spent in military duty as defined in Section 243 of the New York State Military Law;
>
> (c)     Can presently understand and be understood in English;
>
> (d)     Had obtained citizenship by four years after the date of the establishment of the relevant eligible list: the relevant eligible list for Exam 7029 was established on November 15, 2000; and the relevant eligible list for Exam 2043 was established on May 5, 2004;
>
> (e)     Had not been convicted of a felony as of four years after the date of the establishment of the relevant eligible list: the relevant eligible list for Exam 7029 was established on November 15, 2000; and the relevant eligible list for Exam 2043 was established on May 5, 2004; and
>
> (f)     Had not received a dishonorable discharge from the Armed Forces as of four years after the date of the establishment of the relevant eligible list:

> the relevant eligible list for Exam 7029 was established on November 15, 2000; and the relevant eligible list for Exam 2043 was established on May 5, 2004.

(Order re Compens. Relief at 53-54 (alterations omitted).)

Only individuals who satisfy the definition of Nonhire Claimant or Delayed-Hire Claimant, as well as the other lawful qualifications, will be eligible to receive an individual award of back pay (including prejudgment interest), retroactive seniority, and/or compensatory damages for certain noneconomic harms. Additionally, such individuals will be eligible for priority hiring relief only if they *presently* satisfy the other lawful qualifications set forth above. Moreover, in order to be hired, such individuals must have taken and passed Exam 2000.

## III.   INDIVIDUAL RELIEF THAT WILL BE AVAILABLE TO ELIGIBLE CLAIMANTS

### A.   Back Pay Awards

"Back pay" refers to a monetary award that represents the value of some or all of the wages and benefits that a Claimant would have received from the City if the City had hired the Claimant as an entry-level firefighter on his or her presumptive hire date.

In its March 8, 2012, Order, the court determined that the aggregate, premitigation back pay due to eligible Claimants through December 31, 2010, is $128,696,803.[2] (Order re Compens. Relief at 46-47.) The City will have the opportunity, in accordance with the court's August 22, 2012, Order, to reduce this aggregate amount during individual proceedings in the claims process based on either the Claimant's mitigation of his or her damages or the Claimant's

---

[2] This amount excludes the value of back pay and prejudgment interest that began to accrue on January 1, 2011, and will continue to accrue through the date when the priority hires have joined the FDNY. Once the priority hires have joined the FDNY, the parties may move for a finding as to the additional aggregate wage loss suffered from the end of 2010 to the date the priority hires joined the FDNY (the date that the loss will no longer accrue). (Dkt. 825 at 46 n. 12.) This amount also excludes the value of fringe benefits, which the court indicated should be calculated based on unreimbursed expenses actually incurred by Claimants. (Id. at 39-40.) The court set forth the parameters for the calculation of fringe benefits in its August 22, 2012, Memorandum & Order. (Dkt. 952.)

failure of his or her duty to mitigate. (See Mem. & Order re Mitigation (Dkt. 952).) The $128,696,803 in aggregate back pay wages is allocated as follows:

|  | **Exam 7029** | **Exam 2043** | **Both exams** |
|---|---|---|---|
| Black Nonhire Claimants | $62,202,409 | $18,193,080 | $80,395,489 |
| Hispanic Nonhire Claimants | $33,754,299 | $11,403,654 | $45,157,953 |
| Black Delayed-Hire Claimants | $1,015,579 | $487,987 | $1,503,566 |
| Hispanic Delayed-Hire Claimants | $1,228,608 | $411,187 | $1,639,795 |
| TOTAL | $98,200,895 | $30,495,908 | $128,696,803 |

The numbers reflected above are based on the court's determination of the additional number of black and Hispanic individuals who would have been hired, or who would have been hired earlier, in the absence of discrimination. The aggregate amount of back pay damages available to black Claimants is larger than the aggregate amount available to Hispanic Claimants because the court previously determined that the City's use of Written Exams 7029 and 2043 excluded a greater number of black candidates from being hired, or from being hired earlier, as compared to Hispanic candidates. During the claims process, the aggregate back pay amount will be divided among eligible Claimants proportionately to determine each Claimant's gross back pay award. This proportionate distribution is necessary because the number of eligible Claimants will most likely exceed the hiring shortfalls that the City's violations of Title VII produced. Each Claimant's gross award will then be reduced by a proportion of that Claimant's

9

interim earnings.[3]  The proportion of interim earnings to be deducted will be calculated by reducing the Claimant's total interim earnings by the same fraction of the aggregate award that the Claimant's gross award represents.  The method that will be used to allocate the back pay awards can be summarized as follows:

1. <u>Nonhire Claimants</u>

(1) Place an eligible Nonhire Claimant in the appropriate back pay category:  black Exam 7029 Nonhire Claimants, Hispanic Exam 7029 Nonhire Claimants, black Exam 2043 Nonhire Claimants, or Hispanic Exam 2043 Nonhire Claimants;

(2) Calculate the aggregate back pay of one shortfall hire for the specific back pay category for which the Claimant is eligible;

(3) Calculate each Claimant's pro rata (proportionate) share of the aggregate amount of back pay ("gross back pay award");

(4) Determine the "back pay reduction ratio" (equivalent to the "probability of hire") by dividing the amount determined at the third step by the amount determined at the second step;

(5) Discount the Claimant's interim earnings using the back pay reduction ratio determined in step 4;

(6) Determine each Claimant's net (post-mitigation) back pay award for each year of the claimant's back pay period (i.e., subtract the Claimant's discounted interim earnings

---

[3] The City shall bear all costs incurred by the City, the United States, and the Plaintiff-Intervenors in the prosecution and implementation of the remedy phase of this case, including reasonably-incurred attorneys' fees and expenses, expert fees, and the cost of all notification procedures, except that the United States shall bear its own attorneys' and expert fees and expenses.  No amount of the back pay, or any other monetary award that the court may order, shall be used to pay the attorneys' and expert fees, expenses, and costs for which the City is liable.

      in step 5 from the Claimant's gross back pay award in step 3; this equals the "net back pay");

(7) Apply the prejudgment interest rate to the Claimant's net back pay award for each year of his or her back pay period and compound the interest annually; and

(8) Add the annual net back pay amounts, and the compounded interest, to determine the total net back pay award for each Claimant.

(See Mem. & Order re Indiv. Back Pay (Dkt. 888) at 9-11.)

      2.   Delayed-Hire Claimants

(1) Place an eligible Delay Claimant in the appropriate back pay category: black Exam 7029 Delayed-Hire Claimants, Hispanic Exam 7029 Delayed-Hire Claimants, black Exam 2043 Delayed-Hire Claimants, or Hispanic Exam 2043 Delayed-Hire Claimants;

(2) Calculate the value of each month of delay for the Delayed-Hire Claimants of a particular category;

(3) Determine the value of each month of delayed hiring for the eligible Claimants in each category;

(4) Determine each Claimant's gross share of the back pay losses by multiplying the number of months that the Claimant's hiring was delayed, and accounting for any evidence from the City that the Claimant may have caused a portion of the delay, by the pro rata (proportionate) value of one month as calculated in step 3;

(5) Determine the back pay reduction ratio by dividing the amount determined at the third step by the amount determined at the second step;

(6) Determine the discounted interim earnings of the Claimant between the first academy class and when he or she joined the fire academy using the back pay reduction ration determined in step 5;

(7) Determine a net back pay award by subtracting the discounted interim earnings (step 6) from the Claimant's gross award (step 4); and

(8) Apply the prejudgment interest rate and compound the interest annually.

(See Mem. & Order re Indiv. Back Pay at 13-15; Mem. & Order re Mitigation at 8-9.)

A monetary award to compensate Nonhire and Delayed-Hire Claimants for lost fringe benefits may also be added to their back pay awards.

**B.      Priority Hiring Relief**

The court will award priority hiring relief for up to 293 eligible Nonhire Claimants. (Mem. & Order re Remedial Phase Issues (Dkt. 390) at 20; Mem. & Order re Retro. Seniority (Dkt. 861) at 2.)  Specifically, priority hiring relief will be awarded to up to one hundred eighty-six (186) eligible black Nonhire Claimants and up to one hundred seven (107) eligible Hispanic Nonhire Claimants.  Nonhire Claimants who seek priority hiring relief ("priority hire claimants") must undergo the same entry-level firefighter selection process as all other applicants, including taking and passing Exam 2000.  (See Mem. & Order re Indiv. Back Pay (Dkt. 888) at 18; Mem. & Order Approving Exam 2000 (Dkt. 986).)  Thus, in order to receive a job offer and enter the Fire Academy, priority hire claimants must take and pass Exam 2000, take and pass the Candidate Physical Ability Test ("CPAT"), and undergo the background screening process, which includes a review of the claimant's criminal, employment, medical, and psychological background.  The court will ultimately approve a list of eligible priority hire claimants and require the City to appoint up to 293 of these individuals to the Fire Academy.  The timeline and

procedures for eligibility determinations and the City's processing of the eligible priority hire claimants are set forth in Section V. (See Rpt. & Rec. of Special Masters re Claims Process (Dkt. 963) at 6-10, adopted in relevant part by Sep. 7, 2012, Order.)

After the court approves the list of priority hire claimants, two (2) of every five (5) individuals that the City hires for the entry-level firefighter position shall be black Claimants from the approved list of priority hire claimants. The City shall continue to hire at this 2:5 ratio until it has hired one hundred eighty-six (186) black Claimants from the approved list of priority hire claimants or until the group of black Claimants on the approved list has been exhausted, whichever occurs first.

Similarly, after the court approves the list of priority hire claimants, one (1) of every five (5) individuals that the City hires for the entry-level firefighter position shall be Hispanic Claimants from the approved list of priority hire claimants. The City shall continue to hire at this 1:5 ratio until it has hired one hundred seven (107) Hispanic Claimants from the approved list of priority hire claimants or until the group of Hispanic Claimants on the approved list has been exhausted, whichever occurs first.

In the event that there are more than 186 black and 107 Hispanic individuals eligible for priority hiring relief, the City may determine the order in which it processes eligible claimants to determine whether they are currently qualified to be appointed as entry-level firefighters, provided that the City's processing is not discriminatory, retaliatory, or otherwise unlawful, and enables it to meet the other requirements of this Order and other orders entered in this case. A Claimant is considered hired only when the Claimant begins his or her first day of paid employment as an entry-level firefighter.

Nothing in this Order precludes any Claimant from applying for hire or a promotion from the position of Emergency Medical Technician ("EMT") to entry-level firefighter, or being hired or promoted from EMT into the entry-level firefighter position under any of the City's regular selection, hiring, or promotion processes. However, hire or promotion of a Claimant under one of the City's regular selection, hiring, or promotion processes shall not be counted toward fulfillment of the City's priority hiring obligations. Hire or promotion of a Claimant under one of the City's regular selection, hiring, or promotion processes shall not affect the Claimant's eligibility for monetary relief. The City may not refuse to select or hire an individual in one of its regular selection, hiring or promotion processes because that individual is a Claimant eligible for priority hiring relief.

Finally, the City will pay priority hire claimants their retroactively higher salary and provide them with retroactive seniority on the date of their admission to the Fire Academy. (Mem. & Opinion re Individual Back Pay Awards at 18-19.)

Claimants do not need to seek priority hiring relief in order to be eligible for an award of back pay and (for black Claimants) compensatory damages for noneconomic harms.

C.     **Retroactive Seniority**

The court will award retroactive seniority relief to eligible claimants who were victims of the City's discrimination. "Retroactive seniority" refers to seniority credit in the entry-level firefighter position as of a Claimant's presumptive hire date. Retroactive seniority is comprised of retroactive "benefits seniority" and retroactive "competitive seniority." Retroactive benefits seniority includes seniority for purposes of calculating an individual's salary or other pay, pension benefits, and future accrual of leave, including vacation, personal, and sick leave, as well as any other purposes for which seniority is used in determining the amount of or eligibility for

14

employee benefits. Retroactive competitive seniority is seniority used for any purpose in which an incumbent competes with other incumbents, for, among other things, transfers, special assignments, promotions, and layoffs/recall, except that retroactive seniority awards may not be used to satisfy minimum time-in-grade requirements for promotion under preexisting FDNY rules.

Nonhire Claimants who are awarded priority hiring relief, as well as Delayed-Hire Claimants, will automatically be eligible to receive an award of retroactive seniority, which will be based on the median dates of hires from the relevant examination: February 2, 2003, for Exam 7029; and June 11, 2006, for Exam 2043. (Mem. & Order re Retro. Seniority at 2-3, 5.)

## IV. DAMAGES MAY BE AVAILABLE TO ELIGIBLE BLACK CLAIMANTS FOR CERTAIN NONECONOMIC HARMS

Eligible black claimants will be entitled to compensatory damages for noneconomic harm only if they can establish on an individualized basis one or more specific forms of compensatory damages that have been previously recognized in the common law of tort, including but not limited to emotional distress, loss of enjoyment of life, inconvenience, and lost future earning capacity. Such compensatory damages must be consistent with the definitions and case law set forth by the court in its Sept. 24, 2012, Memorandum and Order. (See Mem. & Order re Compensatory Damages (Dkt. 974).)

## V. GENERAL FRAMEWORK OF CLAIMS PROCESS

In order to determine which claimants are eligible for an award of individual relief and the amount of any such award, the court has ordered that each individual who submits a claim form will be evaluated during a claims process, as outlined below. The claims process involves four phases:

> (I) Mailing and return of notice and claim form documents, and gathering of Social Security earnings data;
>
> (II) Holding of a Fairness Hearing;
>
> (III) Priority hiring determinations;
>
> (IV) Determinations of monetary relief and retroactive seniority for all claimants, as well as (a) eligibility determinations for those claimants whose eligibility was not determined during Phase III, and (b) determinations of damages for noneconomic harm due to eligible black claimants.

At the time of this Final Relief Order, Phase I is near completion, and Phase II is complete.

In Phase III, the eligibility determinations by Special Masters will proceed simultaneously with the City's administration of Exam 2000 and post-examination screening. The court will approve lists of eligible candidates from Reports and Recommendations filed on a rolling basis by the Special Masters. The City will appoint eligible priority hire claimants as entry-level firefighters.[4] (See Rpt. & Rec. re Claims Process (Dkt. 963) at 6-10 (adopted in relevant part by Sept. 7, 2012, Order).)

After the Special Masters complete their individual relief determinations for individuals seeking priority hiring relief during Phase III, the Special Masters will proceed to evaluate the eligibility of the remaining claimants during Phase IV. The Specials Masters will file a Report and Recommendation proposing the particular steps and deadlines for Phase IV on December 14, 2012. (See Sept. 7, 2012, Order (deferring ordering on the recommendations and issues relating to Phase IV of the claims process).)

---

[4] The timeline for this process is set forth in full in the Report and Recommendation regarding the claims process, adopted in relevant part on Sept. 7, 2012.

16

Generally speaking, within Phase III and Phase IV, the review process with respect to individual each Claimant shall be as follows:

(1) Each Claimant will be notified as to the United States' initial eligibility determination regarding his or her claim;

(2) The Claimant will have the opportunity to object to the United States' initial eligibility determination;

(3) The Special Masters will review the United States' initial eligibility determinations and make an independent assessment of each Claimant's eligibility, which will be submitted as a recommendation to the court;

(4) The Claimant and the parties will have an opportunity to object to the Special Masters' recommendations to the court regarding the Claimant's eligibility and award amount;

(5) The court will independently evaluate the Special Masters' recommendations regarding Claimant eligibility and award amounts; and

(6) Individual relief awards will be distributed to Claimants.

SO ORDERED.

Dated: Brooklyn, New York
October 26, 2012

/s/
NICHOLAS G. GARAUFIS
United States District Judge