d/f

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

-and-

THE VULCAN SOCIETY, INC., *for itself and on behalf of its members*, JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief*;

ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated*; and

CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated*,

                Plaintiff-Intervenors,

-against-

THE CITY OF NEW YORK,

                Defendant.

**ORDER**

07-CV-2067 (NGG) (RLM)

------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Claimant 200008298's objection regarding his designation. Because this objection presents a particularly unusual set of circumstances, the court will consider the late objection. The court ADOPTS Special Master Gonzalez's Report and Recommendation (R&R) with respect to this claimant.

1

I.  **BACKGROUND**

A. **Overview of the Case**

In 2007, the United States brought suit against the City of New York ("City"), alleging that certain aspects of the City's policies for selecting entry-level firefighters for the New York City Fire Department ("FDNY") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). The United States alleged that the City's use of Written Exams 7029 and 2043 as pass-fail screening and rank-ordering devices had a disparate impact on black and Hispanic candidates for entry-level firefighter positions. The Vulcan Society and several individuals ("Plaintiff-Intervenors") intervened in the lawsuit as Plaintiffs, alleging similar claims of disparate impact and also alleging disparate treatment (raising both theories of liability under federal, state, and local law) on behalf of a class of black entry-level firefighter candidates.

On July 22, 2009, the court granted summary judgment in favor of the United States and Plaintiff-Intervenors and found that the City's pass-fail and rank-order uses of Written Exams 7029 and 2043 had an unlawful disparate impact under Title VII. (Mem. & Order (Dkt. 294).) In addition, on January 13, 2010, the court granted Plaintiff-Intervenors' motion for summary judgment on disparate treatment liability. (Mem. & Order (Dkt. 385).) Although the Second Circuit later overturned the latter holding, the Circuit left in place the court's disparate impact judgment as well as its remedial scheme. United States v. City of New York, 717 F.3d 72 (2d Cir. 2013). The court then entered a modified remedial order. (June 6, 2013, Modified Remedial Order (Dkt. 1143).)

After a finding of liability for employment discrimination under Title VII, there is a presumption that back pay, priority hiring, and retroactive seniority are the proper forms of relief

to remedy past employment discrimination. <u>Wrenn v. Sec'y, Dep't of Veterans Affairs</u>, 918 F.2d 1073, 1076 (2d Cir. 1990). In this case, the court determined that victims of the City's discrimination who timely submit claim forms and are determined to be eligible may be awarded individual relief including priority hiring to the FDNY, back pay, retroactive seniority, and, for black claimants only, certain noneconomic damages. (Oct. 26, 2012, Final Relief Order (Dkt. 1012); <u>see</u> Oct. 26, 2012, Mem. & Order Addressing Objs. to Proposed Relief Order (Dkt. 1011).)

### B. Individual Eligibility Determinations

As part of the claims process, the court has appointed Steven M. Cohen, Hector Gonzalez, Mitra Hormozi, and Breon S. Peace as Special Masters pursuant to Federal Rule of Civil Procedure 53(a)(1)(B)(i). (May 22, 2012, Mem. & Order Appointing Special Masters (Dkt. 883).) The court tasked the Special Masters with several duties, including "recommending to the court a revised framework for the efficient and just processing of claims for relief of injured individuals" and "[c]onducting hearings and issuing findings of fact and conclusions of law on the eligibility for equitable monetary and hiring relief of individual claimants." (<u>Id.</u> at 2.)

The Special Masters collaborated with the parties and made several recommendations to the court about the claims process. (<u>See</u> Sept. 7, 2012, R&R (Dkt. 963); Sept. 7, 2012, Order Adopting in Part Sept. 7, 2012, R&R; Dec. 17, 2012, R&R (Dkt. 1026); Jan. 14, 2013, Order Adopting Jan. 14, 2013, R&R.) Based in part on their recommendations, the court adopted a framework that proceeded over the last several months as follows: (1) the United States made preliminary determinations of eligibility for priority hiring and monetary relief and notified the City and Plaintiff-Intervenors of their determinations; (2) the City and Plaintiff-Intervenors were given the opportunity to object to the United States' determinations; (3) the United States

notified via letter each claimant who submitted a claim form regarding his or her preliminary eligibility determination, and included instructions in the mailing for objecting and a form via which to do so; (4) the claimants were divided equally between the Special Masters, and the Special Masters began individualized determinations of claimants' eligibility and issued R&Rs with their recommendations; and (5) the Special Masters notified via letter each individual claimant of his/her eligibility determination and included instructions in the mailing for objecting and a form via which to do so. (See Sept. 7, 2012, R&R at 5-10; Final Relief Order at 15-16.)

According to the Final Relief Order, each claimant was notified of his/her eligibility for relief by November 9, 2012, and had until November 30, 2012 to contest the determination. Each claimant was informed that a Special Master would review the claim and make an independent determination regarding eligibility for relief. (Id.)

In order to provide finality and promote the speedy resolution of claims, the court entered an order on May 16, 2013, stating that no claims submitted after June 10, 2013 would be considered for relief. (May 16, 2013, Order re Special Master's Ltr. (Dkt. 1118).)

### C. The Claimant

Claimant 200001018 was referred to Special Master Gonzalez for an independent assessment. (Final Relief Order.) On June 27, 2013, Special Master Gonzalez issued a recommendation that, based on the information submitted, Claimant 200001018 was not eligible for relief. (June 27, 2013, R&R (Dkt. 1155-2).) The Claimant filed an objection, but on August 9, 2013, the court entered an order adopting Special Master Gonzalez's recommendation.

However, in October 2013, Special Master Gonzalez learned of unique circumstances regarding Claimant 200001018 and promptly informed the court of the problem. Specifically, the information about this claimant submitted to the court had been submitted by the wrong

4

person. A father and son with the same name, both of whom applied to be New York firefighters, had the same mailing address. (Oct. 28, 2013, R&R (Dkt. 1230) at 4.) The father mistakenly completed the son's claim form and the son did not learn about it until Special Master Gonzalez issued his R&R. (Id.) The son objected, stating: "I had just turned 20 years old on July 25, 1998—why do you have me as 29 years old before Sept 2, 1998? My birthday is 7/25/78. How could I have been 29? This needs to be corrected. There is a mistake here in your records. I object to your ruling. See attached Birth Certificate." (Id.)

However, the court failed to credit this objection because it relied on the claimant's Social Security number, which, it wrote, "does not match any individual who took" the firefighter examinations in question. (Id.; Aug. 9, 2013, Mem. & Order (Dkt. 1182), at 20.) The Social Security number listed on the claim form belonged to the father, not the son. (Oct. 28, 2013, R&R at 5.)

Having finally clarified the events that led the court to deny his objection, the son has requested that his claim be reconsidered. He has been assigned claimant number 200008298. (Id.) Based on these unique and extenuating circumstances, Special Master Gonzalez recommended that the claim be considered and that Claimant 200008298 be found eligible for relief. (Id.) The United States and Plaintiff-Intervenors have no objection to this course of action; however, the City has filed objections with the court.

### D. The City's Objection

The City's objection is that June 10, 2013, represented a hard deadline for claimants, and that it is unfair to all involved for the court to alter that deadline for any reason. (Def. Obj. (Dkt. 1232).) The City further expresses concern that allowing a new claimant into the Phase III

claims process may delay Phase IV, and thus affect resolution for many, if not all, claimants. (Id. at 3-4.)

## II. DISCUSSION

The process of providing relief in this case is an equitable process. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975). Equity requires that considerations of efficiency be given their proper place, but it denies that efficiency should be in conflict with justice. Instead, efficient resolution of individual claims promotes justice by providing relief, such as hiring priority and monetary compensation, which is more valuable the sooner it is provided. An equitable process involving hundreds of claims necessarily provides rough rather than fine-grained justice. But it must also provide enough flexibility to prevent egregious errors. Given the extremely unlikely circumstances that led to this error, the diligence of Claimant in correcting it, and the fact that delay partially resulted from the court's misunderstanding, consideration of this claim is not fundamentally unjust to other claimants.

In most situations, claimants had adequate notice of the deadlines to submit their claims. Moreover, the court and the Special Masters were in possession of basic information such as names and Social Security numbers, which would allow a determination to be made. In this unique situation, neither the Claimant, nor the court, had proper information. Claimant 200008298's circumstances are unlikely to be replicated in any other claim.

Moreover, it is not the case that Claimant 200008298 submitted nothing before the June 10, 2013 deadline. He submitted a response, including his birth certificate, and that response was eligible for consideration by Special Master Gonzalez and the court. (Aug. 9, 2013, Mem. & Order, at 20-21; Oct. 28, 2013, R&R at 4.) However, the court made an error in considering Claimant 200008298's objection because it relied on the wrong Social Security number. (Id.)

Processing this claim need not prejudice the parties in their efforts to complete Phase IV of the relief plan. Adding Claimant 200008298's file will produce some negligible increase in the amount of work to be done overall, but given the hundreds of claims involved—adding one more claim does not so increase wait-times as to make doing so unjust. The court is fully confident that the parties can continue with Phase IV of the claims process even if one more claim from Phase III must be added. Given that the circumstances weigh heavily in favor of accepting this claim, the court will do so.

### III. CONCLUSION

In light of the foregoing, the court ADOPTS Special Master Gonzalez's R&R and finds Claimant 200008298 eligible to be considered and eligible for monetary relief as a Nonhire Claimant.

SO ORDERED.

Dated: Brooklyn, New York
November 18, 2013

s/Nicholas G. Garaufis
/NICHOLAS G. GARAUFIS
United States District Judge