UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
   UNITED STATES OF AMERICA,

                    Plaintiff,                  **MEMORANDUM & ORDER**

       -and-                             07-CV-2067 (NGG) (RLM)

   THE VULCAN SOCIETY, INC., *for itself and on behalf of its members*, JAMEL NICHOLSON, *and* RUSEBELL WILSON, *individually and on behalf of a subclass of all other victims similarly situated seeking classwide injunctive relief*;

   ROGER GREGG, MARCUS HAYWOOD, *and* KEVIN WALKER, *individually and on behalf of a subclass of all other non-hire victims similarly situated*; and

   CANDIDO NUÑEZ *and* KEVIN SIMPKINS, *individually and on behalf of a subclass of all other delayed-hire victims similarly situated*,

                    Plaintiff-Intervenors,

      -against-

   THE CITY OF NEW YORK,

                    Defendant.

-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

     On August 30, 2013, the court issued a memorandum and order granting in part and denying in part Plaintiffs' motion for attorney's fees and expenses. (Fees Order (Dkt. 1194).) At that time, the court declined to decide whether Plaintiff-Intervenors were entitled to be reimbursed for all or part of the fees they claimed for expert assistance because it lacked sufficient information regarding the experts' activities. (Id. at 25-26.) Plaintiff-Intervenors then filed affidavits providing detailed billing statements to the court, and Defendant filed a letter

1

opposing the request. (Sept. 20, 2013, Ltr. (Dkt. 1203), Lossia Decl. (Dkt. 1203-1), Scolnick Decl. (Dkt. 1203-2), Schwarz Decl. (Dkt. 120-3); Oct. 4, 2013, Def. Opp'n to Pl. Appl. for Expert Costs (Dkt. 1212).) The court must now decide whether to award additional compensation to Plaintiff-Intervenors based on their more detailed statements regarding expert fees. The court assumes familiarity with its August 30, 2013 Memorandum and Order and with the facts of this case.

An award of fees under Title VII explicitly includes award of expert fees. 24 U.S.C. § 2000e-5(k); Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO (AFSCME) v. Cnty. of Nassau, 96 F.3d 644, 650 (2d Cir. 1996). However, these fees are typically awarded only when the expert aided the plaintiff in claims on which he or she was successful. See Port Auth. Police Asian Jade Soc. of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J., 706 F. Supp. 2d 537, 543 (S.D.N.Y. 2010) (declining to award expert costs in a Title VII case because the expert's testimony was excluded at trial); Trout v. Winter, 464 F. Supp. 2d 25, 32-33 (D.D.C. 2006) (declining to award fees because expert only aided in pursuit of an unsuccessful claim), aff'd sub nom., Trout v. Sec'y of the Navy, 540 F.3d 442 (D.C. Cir. 2008). A court may also "refuse to grant fee requests that are excessive or redundant." BD v. DeBuono, 177 F. Supp. 2d 201, 208 (S.D.N.Y. 2001).

The submissions from Plaintiff-Intervenors, including the affidavits of Dana Lossia, Judith Scolnick, and Ghita Schwarz, detail expert assistance Plaintiff-Intervenors received in relation to two broad categories: the adverse impact of previous written firefighter examinations and design of new examinations, and the eligibility of the class for backpay relief.

With regard to adverse impact, Plaintiff-Intervenors retained the services of Dr. Joel Wiesen, an industrial psychologist who works for Applied Personnel Research. Dr. Wiesen's

2

billing rate was $270 per hour. (Lossia Decl. ¶ 4.) The court considers Dr. Wiesen's hourly rate to be a reasonable one for a professional. Scott + Scott consulted Dr. Wiesen regarding the adverse impact of firefighter examinations, incurring expenses of $264,953.48 over the course of several years. (Scolnick Decl. ¶ 3.) Scott + Scott has provided the court with a detailed breakdown of Dr. Wiesen's work. (Id. ¶ 6.) Defendant considers this work to duplicate that of Plaintiff U.S. Government's experts. (Def. Opp'n at 6-9.) Even with the availability of these experts, however, it is reasonable for a client to seek independent advice on such a key part of his case. The court also credited Dr. Wiesen's report at several points in its opinion granting summary judgment on the issue of the adverse impact of the written examinations. (July 22, 2009, Disp. Impact Op. (Dkt. 294) at 16-20, 72, 75-77.) Although the Second Circuit overturned the court's grant of summary judgment on the Plaintiff's disparate treatment claim, that appeal did not challenge the disparate impact judgment or the court's determination that a newer examination, Exam 6019, was invalid. See United States v. City of New York, 717 F.3d 72, 77 (2d Cir. 2013). Thus, Scott + Scott is entitled to some degree of reimbursement for Dr. Wiesen's assistance. However, the court declines to award Scott + Scott the full amount claimed. Given the very large amount of time devoted to certain tasks (assuming that all entries reflect billing at a $270 hourly rate) and the overlap between Dr. Wiesen's work and that of Government experts, which should tend to reduce the time needed for these tasks, the court considers that there may have been some inefficiencies in Dr. Wiesen's work. Thus, a twenty-five percent reduction in Dr. Wiesen's bill is appropriate to both recognize his work and to bring his final bill more in line with what a reasonable client would be willing to pay for that work. As a result, Scott + Scott is awarded $198,715.11 to reimburse the cost of Dr. Wiesen's work.

Levy Ratner paid $5,856.00 for Dr. Wiesen's services in connection with analysis of Exam 6019 and Exam 2000 and provided the court with a detailed invoice of Dr. Wiesen's work. (Id. at ¶¶ 3, 5.) The time entries listed by Levy Ratner appear to be reasonable for the tasks described. Defendant nonetheless challenges these entries because the court did not specifically mention Dr. Wiesen's work on Exam 6019, and because the parties did not discuss Dr. Wiesen's work in a letter submitted to Special Master Mary Jo White regarding Exam 2000. (Def. Opp'n at 9-10.) The court considers that it was reasonable for the parties to consult with their own expert with regards to both these examinations because of their importance to the provision of relief in this case. The failure to mention Dr. Wiesen's work in their letter to Special Master White is not fatal to the claim. Accordingly, Levy Ratner is entitled to be reimbursed $5,856.00 for the services of Dr. Wiesen.

The Center for Constitutional Rights (CCR) paid $33,642.00 for Dr. Wiesen's services with respect to analysis of Exam 6019. (Schwarz Decl. ¶¶ 3-6.) Dr. Wiesen would already have been familiar with Exam 6019 from his work for Levy Ratner. (See Lossia Decl. ¶ 5 (2009 time entries).) However, his work for CCR involved additional aspects of the examination and critique of other experts' work. Plaintiff-Intervenors were justified in hiring their own expert even though a Government expert did similar work. (See July 16, 2010, Pl.-Intervenors Pre-Hrg Br. (Dkt. 490).) Determining the validity of Exam 6019 involved extensive discovery and the production of a very large volume of material by the City. (See May 26, 2010, Mem. & Order Appointing Special Master (Dkt. 441) (describing discovery problems related to Exam 6019).) This production took place during the months in 2010 for which CCR claims that it sought Dr. Wiesen's assistance. (Schwarz Decl. ¶¶ 3-6.) CCR is awarded $33,642.00 to reimburse these expenses.

With regard to backpay issues, Plaintiff-Intervenors retained the services of Dr. Louis Lanier, managing director of Econ One, and his associates, Adrienne Ingrum and Mark Sussman. Dr. Lanier's hourly rate was $225 and that of his associates was $125. (Schwarz Decl. ¶ 7.) These are reasonable hourly rates for professionals in the field of economics. Levy Ratner paid a total of $4,980.82 to Econ One in connection with backpay analysis and CCR paid an additional $24,087.50 for the same. However, as Defendant points out, the court rejected Dr. Lanier's method of calculating backpay and denied Plaintiffs' motion for summary judgment on backpay. (See Def. Opp'n at 5-6; Mar. 8, 2012, Backpay Order (Dkt. 825) at 37-40.) As a result, Plaintiff-Intervenors are not entitled to an award of fees for Dr. Lanier because they did not prevail on the issue for which they sought his testimony. See Trout, 464 F. Supp. 2d at 32-33.

In light of these factors, the court GRANTS IN PART Plaintiff-Intervernors' Application for Expert Fees and Costs. Scott + Scott is awarded a total of $198,715.11; Levy Ratner is awarded a total of $5,856.00, and CCR is awarded a total of $33,642.00.

SO ORDERED.

Dated: Brooklyn, New York
January 2͞4͞, 2014

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge